E-SERVED
02/18/04
01:20 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re: BAYCOL PRODUCTS LITIGATION

This Document Relates To:

All Actions

MDL No. 1431 (MJD/JGL)

**DEFENDANT BAYER CORP.'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH ATTORNEY'S LIEN AND FOR EXPEDITED CONSIDERATION**

## I. INTRODUCTION

In PTO 106, this Court made clear that the 6% set-aside provision of PTOs 25 and 53 does not and cannot apply to cases that are not before this Court. Nevertheless, four days after PTO 106 was entered, the PSC filed a Notice of Attorney's Lien which unilaterally attempts to extend the 6% assessement to settlements between Bayer Corporation ("Bayer") and various third party payer health insurers and health benefit plans ("TPPs"), none of whom had filed a lawsuit in this Court, and none of whom are under this Court's jurisdiction. In essence, the PSC wants a 6% cut of the settlement proceeds, despite the fact that neither the PSC itself nor any of the individual lawyers that comprise it ever represented any of the settling parties. The Notice of Attorney's Lien is improper under Minnesota Statutes § 481.13, and it is directly contrary to this Court's orders. It should be quashed. In light of the time-sensitive nature of this issue, Bayer asks that the PSC's response be submitted via Verilaw no later than 3:00 pm on Monday, February 23, 2004, so that argument may be heard at the status conference scheduled for Tuesday, February 24, 2004.

## II. THE MOTION SHOULD BE HEARD ON AN EXPEDITED BASIS

Bayer asks that this motion be heard on an expedited basis, and that the PSC's response be provided no later than 3:00 pm on Monday, February 23, 2004, so that argument may be

E-SERVED
02/18/04
01:20 PM ET
Baycol MDL 1431

heard at the Tuesday, February 24 status conference. The PSC's Notice of Attorney's Lien purports to encumber settlement payments that have been paid or are due under the Settlement Agreement. Such purported encumbrance prejudicially interferes with the ability of Bayer to settle the TPP claims -- settlements which benefit plaintiffs who have had their medical bills paid for by the settling TPPs because of the release of the settling TPPs' claims against their insureds for reimbursement of medical expenses. Thus the purported lien has an indirect adverse impact on settlement negotiations with plaintiffs claiming injury from Baycol. The issues raised by this motion have been addressed in prior filings by the PSC. Accordingly, an immediate resolution of this matter is called for.

## III. FACTUAL AND PROCEDURAL BACKGROUND

Many individuals who took Baycol (whether plaintiffs in this MDL, plaintiffs outside the MDL, or the vast majority of Baycol users who are not plaintiffs at all) had their medication paid for (in whole or in part) through direct payment or reimbursement by TPPs – that is, health insurers or health benefit plans. In addition, many of those individuals who allege that they suffered Baycol-related injuries had their related medical bills paid for by TPPs. Counsel representing several of these TPPs approached Bayer in late 2001 to determine if Bayer was interested in reaching a settlement of all actual and potential claims that these TPPs might have. Other TPPs, some represented by different lawyers, also approached Bayer. Although some TPPs had filed suit in Philadelphia and in one instance (now two) in this Court, the TPPs who approached Bayer indicated that they would prefer to attempt to reach a settlement. To resolve these disputes, Bayer engaged in settlement negotiations with these TPPs.

In July 2003, the PSC moved to intervene in these settlement discussions between TPPs and defendants. The PSC filed a Motion Regarding Third Party Payer Negotiations and Settlements on July 10, 2003, in which the PSC, among other arguments, claimed that PTOs 25

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

and 53 gave them a right to 6% of the settlement proceeds in any negotiated resolution between defendants and the TPPs. Defendants opposed this motion on a variety of grounds, including the ground that the PSC has no basis on which to invoke this Court's powers to inject the PSC into private settlement discussions with non-parties. This motion has been fully briefed and is currently pending before this Court.

While the PSC's motion to intervene in the settlement discussions was pending, Bayer and certain TPPs have reached a Settlement Agreement, a copy of which is attached to the PSC's sealed motion. That agreement provided for payment of certain amounts to the settling TPPs and released defendants from any claims the TPPs had and, to a large extent, released plaintiffs from any obligations to reimburse their health care plans. None of the settling TPPs have filed an action in this Court or any court against the Bayer Defendants relating to Baycol. Apparently not content to wait for this Court's decision on its motion, on February 9, 2004, the PSC filed a purported Notice of Attorney's Lien asserting a lien upon "all proceeds of settlements paid or to be paid pursuant to the Settlement Agreement" attached thereto. *See* Notice of Attorney's Lien at 1.

## IV. <u>THE PSC'S NOTICE OF ATTORNEY'S LIEN SHOULD BE QUASHED</u>

In its motion to intervene in TPPs negotiations, the PSC asked that this Court expand the PSC's claim to set-asides by including settlements with TPPs who had not filed suit and were not represented by PSC counsel. The defendants' brief in opposition explained that the PSC's motion should be denied because, among other grounds, PTOs 25 and 53 did not reach the TPPs' claims, *see* Bayer and GSK's Opp'n to PSC Request Regarding Third Party Payer Negotiations and Settlements (Oct. 30 , 2003) at 5-6 ("Defendants' TPPs Br."); did not meet the criteria for the exercise of supplemental jurisdiction because 28 U.S.C. § 1367(a) only applied to "claims,"

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

which in this context meant pled causes of action, *see* Defendants' TPPs Br. at 4; and, because there was no diversity jurisdiction over unfiled litigation. *Id.* at 2. This motion still is pending.

While defendants explained why the Court should not *expand* the PSC's rights to set-asides to include settlements with TPPs who are not before this Court, the PSC has now taken a giant step further. Rather than wait for this Court to rule on its prior motion, the PSC now *assumes* that it has the rights for which it moved, and on the basis of those presumptively assumed rights has asserted an attorney's lien against the Bayer Defendants and settling TPPs. Such presumptive action should not and need not be countenanced by this Court. The Notice of Attorney's Liens should be quashed.

**A. PTO 106 Is Clear That Cases Not Before This Court Are Not Included In the 6% Set-Aside**

The right the PSC claims simply does not exist. There is no current order of this Court which permits the PSC to assert its purported attorney's lien, a fact made even more clear by this Court's PTO 106 in which the limitations of PTOs 25 and 53 were explained.

PTOs 25 and 53 provide that parties settling Baycol cases in this MDL are required to set aside 6% of the settlements which is to be deposited in a Court-administered fund from which the PSC may be compensated for work provided for all Baycol MDL plaintiffs. *See* PTO 25 at 5-8; PTO 53 at 2. In PTO 25, this Court limited the set-aside "to all cases over which the Court in MDL 1431 has jurisdiction." PTO 25 at 1. PTO 25 provides that:

> Before making any claim payment to a plaintiff in a state court action qualifying for state-federal coordination or a federal action that has been subject to coordinated pretrial proceedings in MDL 1431, defendants shall deduct from such payments an amount equal to six percent (6%) of the aggregate of the amount being paid and any amounts to be paid to the plaintiff in the future . . . .

PTO 25 at 6, ¶ 9. PTO 53 enumerates six categories of cases to which the set-aside applies:

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

> a) all cases transferred to this MDL, except those remanded by order of the Court to state court for lack of jurisdiction;
>
> b) all cases filed in federal court not yet transferred, except those dismissed for lack of jurisdiction;
>
> c) all cases with lawyers voluntarily submitting to the jurisdiction of this Court pursuant to a written joint prosecution agreement;
>
> d) all cases with lawyers voluntarily submitting to the jurisdiction of this Court by signing a written engagement letter agreeing to participate in settlement conferences arranged by the PSC and the PSC Settlement Committee;
>
> e) all cases of Plaintiffs lawyers and their law firms who are a member of the PSC or a member of a committee of the PSC (other than LAC); and
>
> f) all cases subsequently ordered by this Court to be subject to this Order.

PTO 53 at 1, ¶ 2.

The TPPs' Settlement Agreement is not within any of the categories described above. It does not involve a "state court action qualifying for state-federal coordination or a federal action that has been subject to coordinated pretrial proceedings in MDL 1431" under PTO 25. It does not fit into any of the categories of PTO 53; it involves neither a case filed in state or federal court; the TPPs lawyers have not voluntarily agreed to give the PSC 6% of the settlement proceeds; and, the PSC does not represent the TPPs. Indeed, none of the lawyers involved for the TPPs has a filed case in this MDL. Under the plain language of these Orders, no set-aside is permissible in this matter.

This Court's intent to limit the scope of the assessment orders was made more clear by the recent decision in PTO 106. PTO 106 expressly amended PTO 53 to exclude cases filed in federal court and not transferred to this Court. *See* PTO 106 at 3. PTO 53 previously applied to all Baycol cases in federal court, including those not yet transferred to this District. Non-MDL

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

federal court plaintiffs objected to PTO 53's set-aside, arguing that it would be beyond this Court's jurisdiction to order a set-aside for settlements in cases not before the Court. This Court agreed, quoting *In Re Showa Denka K.K. L-Trypotophan Products Liability Litigation – II*, 953 F.2d 162, 165-66 (4th Cir. 1992):

> While § 1407 provides for a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court. As in any other case, a transferee court's jurisdiction is limited to cases and controversies between persons who are properly parties to the cases transferred.

PTO 106 at 3. This Court held that "it appears this Court does not have jurisdiction to order a holdback in cases not transferred to this Court, [and therefore] PTO No. 53 must be amended to exclude cases filed in federal court and not transferred to this Court by the JPML." *Id.*

To the extent that the PSC previously argued that there was a penumbra in PTOs 25 and 53 beyond their plain language, PTO 106 makes clear that this Court intended what it said and would order a set-aside ***only in cases before it.*** If the set-aside does not apply to cases filed in federal court and not transferred, it cannot apply to cases that were never filed. As explained at length in Defendants' TPP Brief, there is no case or controversy before this Court brought by these TPPs, and as this Court concluded in PTO 106, the Court does not have jurisdiction to mandate the set-aside of 6% of the non-party TPPs' settlement proceeds.

### B. The PSC Cannot Establish an Attorney's Lien Pursuant to Minnesota Statutes § 481.13 Because No Attorney-Client Relationship Exists Between the PSC and TPPs

It is fundamental that an attorney's lien can only be filed by the attorney *for* a party. Here, aside from the fact that the set-aside orders do not otherwise apply, the PSC does not represent any of the settling parties, and its lien is invalid on this basis.

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

The PSC purports to base its attorneys lien on Minnesota Statute § 481.13 which provides in pertinent part as follows:

> (a) an attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the Summons in the action, or the commencement of the proceedings, and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of the filing of the notice of the lien claim, as provided in this section.

The PSC fails to meet any of the statutory requirements for asserting an attorney's lien against settlement proceeds to be paid to TPPs

To be entitled to an attorney's lien under the statute, it is first necessary that an attorney-client relationship exists. *See* Minn. Stat. § 481.13 (requiring the attorney to have a pre-existing agreement for compensation); *see also Hammond v. Nebraska Natural Gas Co., et al.,* 309 N.W.2d 75, 82 (Neb. 1981); *Ins. Corp. of Hanover, Inc. v. Latino Americana DeReaseguros, S.A.,* 868 F. Supp. 520, 527-28 (F.D.N.Y. 1994). In *Hammond*, the Supreme Court of Nebraska, interpreting an analogous Nebraska statute, invalidated attorney's liens because at no time did an attorney-client relationship exist between the purported lien holder and three plaintiffs in the case. *Hammond*, 309 N.W.2d at 82. Similarly, in *Ins. Corp. of Hanover*, the court refused to impose an attorney's lien upon a trust fund because the law firms asserting the lien failed to perform any legal services which resulted in the creation of the trust fund or any affirmative recovery for the benefit of that client. *Ins. Corp. of Hanover*, 868 F. Supp. at 528.

Minnesota courts will not find an implied agreement for attorneys fees simply because a third party might benefit from an attorney's work. In *Johnson v. Blue Cross and Blue Shield of Minnesota*, 329 N.W.2d 49 (Minn. 1983), an attorney who successfully represented an employee in a worker's compensation case attempted to assert a lien pursuant to Minn. Stat. § 481.13

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

against a health care insurer who intervened in the workers' compensation case and recovered on its right of reimbursement. The attorney in *Johnson* argued that in establishing his client's case, he also established the health care insurer's right to reimbursement and therefore should be compensated by the health care insurer for the services rendered. *See id.* at 51. The Minnesota Supreme Court disagreed and held that the health care insurer and attorney never had an implied-in-fact contract for service, nor an implied-in-law contract for services. *See id.* at 51-52. Without an agreement for services, an attorney's lien cannot be asserted. *See id.* at 53. Furthermore, the *Johnson* court noted that attorney's lien statute does not itself create an agreement to pay attorney's fees; the statute only imposes a lien to protect attorneys who already had such an agreement in place. *See id.*

The same holds true in cases where a co-plaintiff benefits from the services an attorney rendered for the attorney's own client. In *Williams v. Dow Chemical Co*., 415 N.W.2d 20 (Minn. Ct. App. 1987), the court noted that there is no unjust enrichment or unfairness in denying a co-plaintiff's attorney fees and costs for services that he "essentially had to perform anyway in representing his client." *See id*. at 25 (quoting *Johnson*, 329 N.W.2d at 52).

The statute limits an attorney's lien to a recovery based "upon the interest of his *client*." *Williams*, 415 N.W.2d at 26 (quoting Minn. Stat. § 481.13) (emphasis in original). Accordingly, an attorney's lien based on a settlement agreement is limited to the rights held by the attorney's client. *See Spence Law Firm v. Douglas Bell Inc*., No. C0-02-1304, 2003 WL 890696 at *2 (Minn. Ct. App. March 4, 2003) (Harten, J.).

The PSC has no express or implied agreement for compensation with the TPPs. Instead, the PSC claims that "legal services rendered by the plaintiffs steering committee, directly or indirectly, to the beneficiaries of said Settlement Agreement, based on the claims of the and the

E-SERVED 02/18/04 01:20 PM ET Baycol MDL 1431

[sic] beneficiaries and the beneficiaries insureds which are claims under the jurisdiction of this Court," gives rise to an attorney's lien pursuant to Minn. Stat. § 481.13. Notice of Attorney's Lien at 1. The issue, however, is not whether the PSC can somehow chart a vague, indirect benefit provided to someone's beneficiary. The question posed by the statute is whether the PSC and the TPPs have a pre-existing attorney-client relationship, that is, an express or implied contract for services. *See* Minn. Stat. § 481.13; *Johnson*, 329 N.W.2d at 51-52. They do not, and the attorney's lien is invalid.[1] The PSC's Notice of Attorney's Lien should be quashed.

## V. CONCLUSION

For the forgoing reasons defendants respectfully request this Court quash the PSC's Attorney's Lien.

Dated: February 18, 2004

Respectfully submitted,

//Original Signature on File//
Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Gene C. Schaerr
Frank R. Volpe
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

[1] Not only is the "indirect" rendering of legal services irrelevant, but the lack of the PSC's services to the TPPs is clear from the PSC's own prior motion to inject itself into settlement discussions between the TPPs and defendants. In settling the TPPs retained their own counsel, and that counsel is being compensated under the terms of the Settlement Agreement. .

E-SERVED
02/18/04
01:20 PM ET
Baycol MDL 1431

Susan A. Weber
Eugene A. Schoon
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Philip S. Beck
Adam Hoeflich
Tarek Ismail
BARTLIT BECK HERMAN PALENCHAR
& SCOTT
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400
*Counsel for Bayer Corporation and Bayer A.G*

E-SERVED
02/18/04
01:20 PM ET
Baycol MDL 1431

**CERTIFICATE OF SERVICE**

I, Rebecca Ostlund, certify that a true and correct copy was electronically served to counsel of record via Verilaw on February 18, 2004.

/Signature on File/
Rebecca Ostlund