UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION MDL No. 1431 (MJD/JGL)

This Document Relates to All Actions PTO 115

---

Richard A. Lockridge, and Robert K. Shelquist, Lockridge Grindal Nauen, PLLP, for and on behalf of Lockridge Grindal Nauen, PLLP

Kenneth B. Moll, Kenneth B. Moll & Associates, Ltd., and Warren Lupel, for and on behalf of Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd.

Peter W. Sipkins, Dorsey & Whitney LLP; Philip S. Beck, Adam L. Hoeflich, and Tarek Ismail, Barlit Beck Herman Palenchar & Scott; Susan A. Weber, Sidley Austin Brown & Wood; and Gene C. Schaerr, and Frank R. Volpe, Sidley Austin Brown & Wood, for and on behalf of Bayer Corporation

---

Before the Court is Bayer's Motion for Sanctions Arising From the PSC's Interactions with the Prosecutor in Turin, Italy (Doc. No. 3743). On July 15, 2003, the Court granted Bayer's motion to conduct discovery on this issue. Discovery is now complete, and the matter has been fully briefed. Oral argument was heard at the February 24, 2004 status conference.

## I. INTRODUCTION

In June 2003, Bayer first learned of possible unethical conduct on the part of Kenneth Moll ("Moll") and his law firm, Kenneth B. Moll & Associates, Ltd. ("KBM"), regarding the Plaintiffs' Steering Committee's ("PSC's") interactions with a certain Italian prosecutor, Raffaelle Guariniello ("Guariniello"). Moll is a



FILED APR 12 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

member of the PSC's Executive Committee. (PTO 3 at 3.) Bayer asserts that during discovery, the following facts have been established:

(1) That Moll prepared and filed a motion and supporting documents that were not authorized by the person in whose name the documents were ostensibly filed;

(2) That Moll abused the electronic signature device feature of the Verilaw filling system;

(3) That in so doing so, Moll made false statements of fact under oath;

(4) That Moll attempted to conceal his misconduct for almost a week, until Bayer discovered the falsehood; and

(5) That Moll knowingly disclosed protected confidential documents without permission.

(Bayer Mem. Supp. Mot. Sanctions at 1-2.)

Bayer alleges that Moll was assisted in this conduct by an associate at KBM named Amy Lemon ("Lemon"). Bayer further alleges that the above conduct violated federal and Minnesota perjury laws, the Minnesota Rules of Professional Conduct, and this Court's orders regarding confidential information and the filing of motions. Bayer seeks the following sanctions against Moll and KBM: (1) $50,000 in monetary sanctions, and (2) Moll's and KBM's removal not only from the PSC, but also from these proceedings all together.

Moll responds that the facts prove that Moll's conduct in filing the motion was in concert with the way Moll and Guariniello had interacted for months prior to the motion's filing date. Moll further argues that the eight-month long

relationship between Moll and Guariniello establishes that Moll was justified in thinking that Guariniello supported Moll's filing of the motion.

The local law firm of Lockridge, Grindal, Nauen ("LGN") is a member of the PSC. LGN assisted KBM with the mechanics of the Verilaw filing, but did not write any part of the motion. (LGN Mem. Re: Sanctions Mot. at 1.) Bayer, KBM, and LGN have all filed sealed briefs regarding the instant motion.

## II. FACTUAL BACKGROUND

After a thorough review of the evidence, the Court adopts the following as fact. This recitation is a compilation of the Parties' submissions and representations made during oral argument.

### A. Guariniello's Relationship with KBM

In August 2002, Moll scheduled a meeting with the Department of Public Prosecution in Torino, Italy to discuss that Department's criminal investigation of Bayer A.G. managers and to review related documents. (Moll Mem. Opp. Mot. Sanctions at 3; Moll Ex. 1, 2; Moll Dep. Bayer Ex. A at 56:4-57:7.) During planning for this meeting, Moll advised Guariniello that the PSC could provide Guariniello with non-confidential documents, but that he would need to petition the Court before allowing Guariniello to review confidential documents. (Id. at 68:3-71:4, 81:10-15, 91:7-14, 114-15.)

Moll met with Guariniello and other Italian officials in October 2002. At this meeting, Moll provided Guariniello with certain nonprivileged documents, and was told that by late fall Guariniello would provide the PSC with documents secured during the Italian investigation. (Id. at 85:6-19,113:10-23.) According to Moll, it was at this meeting that Moll promised to file a motion to intervene, which would allow Guariniello access to privileged documents ("the motion"). (Id. at 153:9-23.)

The October meeting included a teleconference with other members of the PSC who were located in the United States. During the teleconference, the participants discussed sharing nonprivileged documents with Guariniello. (Id. at 102:18-21.) Participants were instructed to "gather as many documents as [they could] or any documents [they] felt were not privileged" for Guariniello to review. (Id.; Moll Mem. Opp. Mot. Sanctions at 5.) Following the teleconference, Ron Goldser ("Goldser") of Zimmerman Reed e-mailed Guariniello, and attached two documents he felt Guariniello should see. (Moll Dep. Bayer Ex. A at 96:13-97:12.) The documents were created by the PSC, but contained Bayer's confidential information. In the e-mail, Goldser told Guariniello to let Moll review the attached documents – a PowerPoint presentation entitled "Baycol Hot Documents Seminar" (Bayer Ex. N), and a document entitled "Baycol-MDL 1431 Liability Summary" (Bayer Ex. O) – for confidentiality before viewing them. However, Guariniello did not read Goldser's message before opening the attachments. (Id. at 104:2-105:17.)

Moll viewed the PowerPoint attachment with Guariniello. (Id. at 96:23-97:7,103:11-105:22.) Every page of both documents contained the following: "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." (Bayer Ex. N, O.) Goldser copied Moll on this e-mail, but Moll did not read the e-mail until after Guariniello viewed the documents. (Id. at 101:5-10, 104:6-10.)

On October 21, 2002, after returning from Italy, Moll received an e-mail from Guariniello's assistant, Patrizia Solia ("Solia"), asking Moll if he had any news regarding Guariniello's access to privileged documents. (Moll Ex. 7.) During December 2002, Moll and a KBM associate, Hal Kleinman ("Kleinman") exchanged e-mails with Solia regarding information KBM needed to prepare a motion to get Guariniello access to privileged documents. (Moll Ex. 7, 11, 12, 13.)

On January 20, 2003, Kleinman e-mailed Solia and Guariniello stating that he was working on a final draft of the motion to intervene, and requesting some additional information. (Moll Ex. 17.) Solia responded to Kleinman on the same day and, among other things, thanked Kleinman for "helping us to receive Baycol documents." (Moll Ex. 18.)

During January and February 2003, Kleinman and Solia exchanged more e-mails regarding the motion. (Moll Ex. 19-24.) During these exchanges, Solia always responded promptly to Kleinman's requests. (Id.) In her February 27, 2003 e-mail, Solia asked Kleinman, "How is going your Motion for Permission to provide us

copies of Bayer documentation?" (Id.) During early March 2003, KBM and Solia continued to exchange e-mails in which they discussed discovery issues, including sharing documents. (Moll Ex. 25-28.)

B. Preparing the Motion

In late May 2003, the PSC instructed KBM to finalize the motion, and provide it to the law committee by June 6, 2003. (Moll Ex. 29.) On June 5, 2003, Lemon faxed a copy of the Guariniello declaration to Solia for Guariniello's signature, stating that KBM intended to file the motion "within the next week." (Moll Ex. 30.) On June 10, Lemon made a call to Solia regarding the signature, which was still missing, but could not get through. (Moll Ex. 31, 33.) Lemon also sent the motion and supporting documents, including the Guariniello declaration, to members of the law committee. (KBM Mem. Opp. Mot. Sanctions at 10; Moll Ex. 31.) During the following week, neither Moll nor Lemon was able to secure Guariniello's signature, or his consent to file the motion. (Lemon Dep. Bayer Ex. I at 114:10-117:8; Moll Dep. Bayer Ex. A at 155:24-156:22, 172:23-173:5.)

On June 12, 2003, the filing deadline for the 2003 status conference, Guariniello still had not signed his declaration. At this point, KBM and LGN's versions of the facts diverge. Lemon testified that at Moll's urging, she called Robert Shelquist ("Shelquist") at LGN on that morning to tell him that the Guariniello declaration had not been signed, and to seek his advice. (Lemon Dep.

Bayer Ex. I at 125:6-22.) According to Lemon, Shelquist told her to file the motion without Guariniello's signature, but to insert an electronic signature. (Id. at 81:14-18,125:18-22.) Lemon testified that she obtained this permission during an approximately ten minute long phone conversation with Shelquist that took place on the morning of June 12. (Id. at 128:16-19.) However, Lemon, Moll, and KBM make no attempt to justify Lemon's version of events with the phone records in evidence, other than to say that the records support Lemon's version of events.

Shelquist disputes Lemon's account of the conversation, testifying that he did not speak with Lemon until after 4:00 p.m. on June 12, after Lemon had e-mailed him the final draft of the motion and supporting documents, and that based on this conversation, Shelquist believed that KBM had Guariniello's signed declaration in hand. (Shelquist Dep. Bayer Ex. J. at 23:9-15, 25:4-14, 29:19-25.) Shelquist insists that he did not order Lemon to file the unsigned declaration. (Id. at 33:21-22.) In fact, Shelquist testified that he did not find out the declaration was unsigned until July. (Id. at 69:9-13.)

### C. The Telephone Records

The Parties have provided the June 12, 2003 phone records of both law firms. As mentioned above, KBM, Moll, and Lemon have not provided any information regarding these phone calls, other than to say that Lemon talked to Shelquist on the morning of June 12. When given the opportunity to address this

issue at the hearing, Moll's counsel was unable to provide any further information. (Tr. Feb. 24, 2004 Status Conf. at 126:15-23.) The phone records reveal that on June 12, 2003, ten phone calls were exchanged between KBM and LGN. (Lockridge Aff. Ex. 14, 15.) Based on the Court's review of all the evidence, including the transcript of the oral argument and the phone records, the Court finds that the following is a true representation of the June 12, 2003 phone calls, and adopts the following as fact.

1. <u>10:37 a.m. Call from KBM to LGN General Number (1.00 minute)</u>

Shelquist testified that he did not receive a call from Lemon on the morning of June 12. (Shelquist Dep. Bayer Ex. J at 33:7-34:25.) Shelquist, however, did receive a message from the LGN receptionist stating that "Ken Moll's office had called," and was given a return telephone number of 312-588-6444. (Shelquist Aff. ¶ 4.) The message memorializes this 10:37 a.m. call.

2. <u>10:43 a.m. Attempted Call from Shelquist to KBM</u>

Shelquist called 312-588-6444 at 10:43 a.m., and found that the number was not in service. (<u>Id.</u>) The notations "awnc" and "n/c" on the phone bill indicate that there was no connection and no charge for the call.

3. <u>10:48 a.m. Call from Shelquist to KBM (2.6 minutes)</u>

At 10:48 a.m., after looking up KBM's correct number, 312-558-6444, Shelquist called KBM, told the receptionist he was returning a call from Moll's

office, and was placed on hold. After a short wait, Shelquist hung up to take another call, without ever speaking to Moll. Shelquist placed no further calls to KBM that morning. (Id. ¶ 5.)

4. 10:57 a.m. Call from KBM to LGN General Number (4.00 minutes)

At 10:57 a.m., Lemon called the LGN general number, and was transferred to Barbara Gilles, a secretary at LGN. (Lockridge Aff. Ex. 15; Gilles Aff. ¶ 2.) During this conversation, Lemon stated that she was having trouble reaching Shelquist, and that she would need help filing a motion on Verilaw later in the day. (Id.) Gilles and Lemon also discussed the particulars of formatting documents for Verilaw filing, and Gilles said that she would check with Lockridge or Shelquist regarding filing on Verilaw. (Id.) At no time during the conversation did Lemon mention that the Moll and Guariniello affidavits were unsigned. (Id. ¶ 11.)

5. 2:30 p.m. Call from Gilles to KBM (.9 minutes)

At 2:30 p.m., Gilles called Lemon to find out if Lemon still intended to file the motion via Verilaw on that day. (Id. ¶ 4.) Lemon indicated that she did intend to file, and that she had questions about exhibits for Gilles. (Id.)

6. 3:10 p.m. Call from Gilles to KBM (4.00 minutes)

During this conversation, Lemon told Gilles that the exhibits had been scanned, and that she would add the "signature on file" notation before e-mailing

the motion and supporting documents for Verilaw filing. (Id. ¶ 5.) Lemon also stated that she still had not reached Shelquist. (Id.)

7. 3:18 p.m. Call from Gilles to KBM (2.7 minutes)

Gilles called Lemon, and told her that Lockridge and Shelquist would be in the office until the late afternoon. (Id. ¶ 6.) During this conversation, Lemon told Gilles that she would be e-mailing the motion shortly, and that it would be in the final form, ready for filing on Verilaw. (Id.)

8. 3:55 p.m. Attempted Call from Gilles to KBM

Gilles attempted to call KBM at 3:55 p.m., but the call never went through.

Lemon e-mailed the motion and supporting documents to Gilles at approximately 4:00 p.m. (Id. ¶ 7.) After the filing was okayed by Lockridge, Gilles filed the documents "exactly as they had been e-mailed to [her]." (Id. ¶ 8.)

9. 4:50 p.m. Call from KBM to LGN General Number (2.00 minutes)

A call was made from KBM to the LGN general number at 4:50 p.m. (Lockridge Aff. Ex. 15), however no one at LGN remembers receiving a call from KBM that late in the day. (Lockridge Aff. ¶¶ 11-12; Shelquist Aff. ¶ 11; Gilles Aff. ¶ 14.) Neither Lemon nor Moll make any representations regarding this call. The Court, therefore, concludes that this call is insignificant.

10. 4:54 p.m. Call from Shelquist to Lemon (3.6 minutes)

After receiving a voice-mail from Gilles asking if it was okay to file the

motion Lemon had sent, Shelquist opened up the Lemon e-mail as he placed a call to Lemon, and briefly reviewed the documents, not realizing that the motion had already been filed. (Shelquist Dep. Bayer Ex. J at 22-26.) During this conversation, Lemon told Shelquist that KBM would retain the original exhibits which accompanied the motion. (Id. at 25:3-14.) Lemon gave no indication during this conversation that she knew the motion had been filed half an hour earlier, and Shelquist did not know that Gilles had already heard from Lockridge. (Id. at 34-35.) At no time during this conversation did Lemon inform Shelquist that there were signatures missing, or that the originals KBM was holding were unsigned. (Id. at 25, 29.)

After filing the motion, Gilles received an inter-office voice-mail message from Shelquist stating that he had spoken to Lemon, that Lemon was not waiting for any more comments, and that the motion could be filed. (Gilles Aff. ¶ 10; Shelquist Dep. Bayer Ex. J at 34-35.) The message to Gilles memorializes this conversation between Lemon and Shelquist.

D. Filing and Withdrawing the Motion

The motion was filed on Verilaw by LGN at approximately 4:15 p.m. on June 12, 2003. The following notations appeared on documents submitted with the motion:

(1) A notation of "/s/ Signature on File," signifying that Moll had signed

his declaration (Lockridge Aff. Ex. 5 at Italy 705);

(2) A notation that Guariniello had executed his declaration on June 12, 2003 (Id. at Italy 689); and

(3) A notation of "/s/ Signature on File," signifying that Guariniello had executed his declaration. (Id.; Bayer Ex. C, D.)

Also accompanying the motion was Moll's declaration that he represented Guariniello in connection with the motion. (Bayer Ex. D ¶ 1.) However, in his deposition, Moll admitted that he had never been retained by Guariniello. (Moll Dep. Bayer Ex. A at 58:6-11, 61:2-4.) Although the electronic signature lines indicated otherwise, neither Moll nor Guariniello had actually signed their declarations. (Lemon Dep. Bayer Ex. I at 136:2-22; Moll Dep. Bayer Ex. A at 184:7-9, 191:23-192:3, 210:5-6; Tr. Feb. 24, 2004 Status Conf. at 126:15-21.) Moll knew that Guariniello's declaration was unsigned at the time the motion was filed, and that he did not have permission to file the motion. (Moll Dep. Bayer Ex. A at 155:24-156:8,171:23-24.) Moll testified that he was surprised that Shelquist had given Lemon permission to file the motion without proper signatures, and that he told Lemon that doing so was wrong. (Id. at 177:18-178:14.)

Once the motion was filed, Moll made no attempt to inform anyone at LGN or the PSC that Moll and Guariniello had not signed their declarations, or that Moll and Lemon continued to request Guariniello's signature. (Lockridge Aff. Ex. 7; Moll

Dep. Bayer Ex. A at 197:7-14, 200:19-21.) In fact, Lemon tried to secure Guariniello's signature after the motion was filed. (Lemon Dep. Bayer Ex. I at 160:9-16; Moll Dep. Bayer Ex. A at 198:5-13, 200:19-201:1.)

On June 16, 2003, Solia sent Lemon an e-mail stating that Guariniello had decided to pursue the documents through a rogatory, rather than a motion to intervene, and that Guariniello would therefore not sign his declaration. (Moll Ex. 32; Moll Dep. Bayer Ex. A at 202:4-8; Lemon Dep. Bayer Ex. I at 165:19-166:1.) This was the first Lemon and KBM had heard of Guariniello's desire to obtain the documents through alternative channels. (Id. at 166:7-11; Moll Dep. Bayer Ex. A at 203:4-5.)

Moll testified that after he found out Guariniello was not going to sign the declaration, Moll decided that the motion should be withdrawn. (Id. at 203:9-22.) Lemon and Moll did not inform Guariniello that the motion had already been filed. Rather, on June 20, 2003 Lemon sent Guariniello an e-mail in which she said, "Please know that we have already prepared the motion on your behalf . . . and feel the court will rule in our favor." (Bayer Ex. M at Italy 846) (emphasis added). Lemon discussed the contents of the e-mail with Moll before it was sent. (Lemon Dep. Bayer Ex. I at 175:15-176:5.) On this same day, Moll also sent Guariniello an e-mail stating, "You may sign your affidavit . . . so that we may attach it to the motion." (Bayer Ex. M at Italy 847.) In the same e-mail, Moll also informed

Guariniello that he could pursue the documents both ways: by using a rogatory, and by filing the motion to intervene. (Moll Dep. Bayer Ex. A at 204:18-205:11; Bayer Ex. M at Italy 847; Moll Ex. 36.) Guariniello responded that he did not feel comfortable pursuing both options, and never signed the declaration. (Moll Dep. Bayer Ex. A at 205:15-18.) At the June 20, 2003 status conference, no one acknowledged that a signed copy of the declaration did not exist, in spite of the fact that Bayer asked for such a copy. (Bayer Mem. Supp. Mot. Sanctions at 7; Tr. Feb. 24, 2004 Status Conf. at 37:15-17.)

On June 23, 2003, Moll instructed Lemon to e-mail Shelquist to obtain Shelquist's verification that Shelquist had indeed instructed Lemon to file the Guariniello declaration with an electronic signature, knowing that there was no original on file. Lemon never asked Shelquist for this verification. (Lemon Dep. Bayer Ex. I at 195:1-196:29; Moll Dep. Bayer Ex. A at 179:14-20.)

In a June 23, 2003 letter to both Moll and Lockridge, Susan Weber, counsel for Bayer, asked for a signed copy of Guariniello's declaration. (Bayer Ex. E at 2.) In response to this request, Moll admitted to Weber that the PSC did not have a signed copy of Guariniello's declaration, that Guariniello had decided to pursue discovery through other channels, and that the motion to intervene would be withdrawn. (Id. 2-3; Moll Dep. Bayer Ex. A at 210:4-5.) Moll also admitted to

Weber that filing the motion before receiving Guariniello's signature was a mistake. (Id.)

On this same day, Lemon notified Shelquist that the motion should be withdrawn. (Shelquist Aff. Ex. 1.) The sole reason Lemon gave for this request was that Guariniello had decided to pursue the privileged documents through a rogatory, instead of by motion. (Id.) Moll and Lemon dispute whether Moll instructed Lemon to give this reason, or whether Moll told Lemon to inform Shelquist that they still did not have a signed declaration. (Moll Dep. Bayer Ex. A at 214:15-217:4; Lemon Dep. 193:22-194:24.) The motion was withdrawn on June 26, 2003. (Bayer Ex. F.)

## III. DISCUSSION

Bayer is seeking a variety of sanctions against Moll. Although Moll admits that he knew Guariniello had not signed his declaration at the time it was filed, Moll insists (1) that there is no evidence that the motion was filed in bad faith, that Moll in fact admits that filing an unsigned declaration is wrong, and was surprised when it occurred; (2) that it is undisputed that the motion was timely withdrawn once it became clear that Guariniello would not sign his declaration; and (3) that there is no indication that any Party was harmed or prejudiced by the filing, and therefore, Bayer's instant motion is without merit.

Moll insists that the imposition of sanctions based on these facts would defeat the purposes of the safe harbor provision of Fed. R. Civ. P. 11. That rule provides the following:

> A motion for sanctions under this rule . . . shall describe the specific conduct alleged to violate subdivisions (b). It . . . shall not be filed with or presented to the court unless, within 21 days after service of the motion. . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. 11(c)(1)(A). This provision was enacted in 1993 to provide protection against sanctions when a litigant withdraws contentions once violations are called to his or her attention. See Fed. R. Civ. P. 11 advisory committee notes (1993 amendments).

According to Moll, since KBM withdrew the motion fourteen days after filing, which was weeks before Bayer filed its motion for leave to conduct discovery on this issue, and six months before Bayer filed its sanctions motion, Bayer is barred from bringing the instant motion.

The Court finds Moll's argument misplaced. Bayer did not bring the instant motion based on Rule 11, but rather based on the Court's inherent authority to impose sanctions "for conduct which abuses the judicial process." (Bayer Reply Mem. at 9 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44-45(1991).) Rule 11 "does not repeal or modify [the] existing authority of federal courts to deal with abuses . . . under the court's inherent power." Chambers, 501 U.S. at 48-49

(ellipses in original) (citation omitted). Accordingly, the Court will not discuss Rule 11.

### A. Whether the Facts Support a Finding that Moll and KBM Committed Perjury

The federal perjury statute provides, in pertinent part:

> Whoever –
>
> (1) having taken an oath . . . that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
>
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. ¶ 1621. The Minnesota perjury statute provides:

> Whoever makes a false material statement not believing it to be true in any of the following cases is guilty of perjury. . . :
>
> (1) In or for an action, hearing, or proceeding or any kind in which the statement is required or authorized by law to be made under oath or affirmation; or
>
> (2) In any writing which is required or authorized by law to be under oath or affirmation.

Minn. Stat. ¶ 609.48 subd.1.

To be guilty of perjury, the person making the statement must know the testimony is untrue at the time it is made. Bronston v. United States., 409 U.S. 352, 359 (1972); In re Priebe, 290 N.W. 552, 553 (Minn. 1940).

1. Bayer's Arguments

According to Bayer, Moll's action of filing Guariniello's unsigned declaration under oath and Moll's false representation in his own declaration that he represented Guariniello, support a finding of perjury. Bayer asserts that it is undisputed that Moll knew at the time that he filed the motion that the declaration contained material false statements. Specifically, Moll admitted that he did not have authority to file the motion, and does not even dispute the fact that he knew that Guariniello had not signed his declaration prior to filing the motion.[1] Therefore, according to Bayer, these statements were patently perjurious under both federal and Minnesota law. Bayer also argues that it is irrelevant that KBM never meant to hurt Bayer, and that KBM subsequently withdrew the motion. According to Bayer, the focus must remain on what Moll and KBM knew at the time of the actual filing on June 12, 2003.

Lastly, Bayer argues that Lemon's insistence that Shelquist ordered her to file the Guariniello declaration without a signature is not important to resolution of the instant motion. Bayer suggests that while any discussions between Lemon and Shelquist may have some bearing on Lemon's culpability, they have no bearing on Moll's culpability because Moll authorized the filing knowing that it lacked the

---

[1]An original signature must be on file when one uses the electronic signature device. PTO 18 ¶ 6.

appropriate signature. Bayer asserts that "[e]ven if, as KBM claims, [Moll's] instruction had been seconded by Mr. Shelquist, that second (and hypothetical) wrong could not right the first one." (Bayer Reply Mem. at 5.)

2. Moll's Response

Moll responds that it is obvious that sanctions are not warranted under the facts of this case. Moll argues that, contrary to Bayer's assertions, any misrepresentations in the declarations were actually mistakes, not the result of any willful attempt to deceive. Moll states that he never approved the version of Guariniello's declaration which contained the "/s/ Signature on File." Moll directs the Court to Moll Ex. 33 at Italy 657-59, the version of the motion and supporting documents Lemon sent to Moll for his approval. This version of Guariniello's declaration contains an ordinary blank signature line. Lemon's deposition testimony supports this assertion. (Lemon Dep. Bayer Ex. I at 126:2-12.) Moll argues that he never approved the filing of the unsigned Guariniello declaration by using the electronic signature and, therefore, he cannot be held liable for the willful intent to deceive, which is necessary to sustain a finding of perjury.

Moll further argues that Bayer's assertion that Moll made perjurious statements in his declaration filed along with the motion is meritless. In that declaration, Moll stated that he was "counsel for the purpose of [the motion to intervene]." (Bayer Ex. D ¶ 1.) Moll admitted in his deposition that Guariniello was

not his client. (Moll Dep. Bayer Ex. A at 58:6-11.) Moll avers that the statement in his declaration is not at odds with the truth since the declaration states neither that Guariniello was his client, nor that Guariniello retained him. Moll argues that the language used in his declaration was merely explanatory, and was inserted to clarify that Moll was filing the motion so that Guariniello could obtain the privileged documents KBM and Guariniello had been discussing for eight months. (Moll Mem. Opp. Mot. Sanctions at 20.) Again, Moll asserts that there was no willful intent to deceive when he identified himself as "counsel for the purpose" of the motion.

In short, Moll argues that the facts support his contention that he was right to file the motion because his eight-month long relationship with Guariniello led him to believe that Guariniello wanted him to do so. Moll understood that Guariniello "would do anything to cooperate to get [the privileged] documents." (Moll Dep. Bayer Ex. A at 326:6-7.) According to Moll, "it was clear [from e-mail communications] that Guariniello was very interested in working with the PSC to file a motion seeking access to the confidential documents which had been produced by Bayer to the PSC." (Moll Mem. Opp. Mot. Sanctions at 6.) Moll proffers that given the "history of responsiveness and cooperation between KBM and Guariniello's offices," Guariniello's "repeated inquiries" about the status of the motion, and Guariniello's interest in reviewing Bayer's confidential documents, KBM

had a reasonable belief that Guariniello wanted the motion filed, and would sign his declaration. (Id. at 10, 11.)

Furthermore, according to Moll, filing the motion without Guariniello's signature was reasonable since both Moll and Lemon thought Guariniello's signature was "on the way" or imminent at the time the motion was filed. Moll directs the Court to his deposition (Moll Dep. Bayer Ex. A at 198:9-23, 200:22-24, 326:10-19), and Lemon's deposition (Lemon Dep. Bayer Ex. I at 55:2-22, 94:22-96:3, 135:4-5, 166:2-23, 237:9-10). Moll avers that filing without a signature was merely the result of miscommunication between Lemon and Shelquist, and that Shelquist admitted that such filings sometimes occur. (Shelquist Dep. Bayer Ex. J at 17:20-18:7) ("[I]n a couple of instances, when we were pushing up against the 5:00 p.m. deadline, we e-mailed the affidavit to Verilaw and then faxed the signature page when it came in. . . . For motions where we had some involvement in either drafting or reviewing it, I don't believe [we ever filed a declaration noting signature on file when we did not have the signature at the time of filing]").

Moll insists that there is no evidence that the motion was filed in bad faith or to gain any sort of tactical advantage. Moll further asserts that he was right to file Guariniello's declaration without Guariniello's original signature because Shelquist told Lemon to file the declaration with an electronic signature line. Although Moll admits that the motion should not have been filed without Guariniello's signature

(Moll Dep. Bayer Ex. A at 187:10-12; 193:22-194:1), Moll also argues that if the Court finds any misconduct on the part of Moll or KBM, that misconduct was not done with any willful intent to deceive or be untruthful, and therefore sanctions are inappropriate.

### 3. Conclusion

The Court finds that Moll committed perjury. It is undisputed that Moll knew that Guariniello had not signed his declaration at the time it was filed. Filing an unsigned declaration, or allowing an unsigned declaration to be filed while representing that it is signed, is willful misconduct. The Court is not persuaded by Moll's argument that his relationship with Guariniello led him to reasonably believe that Guariniello wanted Moll to act as his attorney, and file the motion. Any prior conduct is not important in light of the fact that Guariniello failed to sign his declaration, and that Guariniello "disappeared" and did not respond to e-mails when asked to sign the declaration. (Tr. Feb. 24, 2004 Status Conf. at 120:2-4.)

The Court is unimpressed with Moll's testimony that he was surprised the motion was filed without Guariniello's signature. Moll testified that on June 12, upon learning that the declaration had been filed without Guariniello's signature and his own signature, he told Lemon that such a filing was wrong. (Moll Dep. Bayer Ex. A at 177:18-24.) If Moll thought such a filing was wrong, he had an obligation to inform the Court immediately. Instead, Moll did nothing but try to

obtain Guariniello's after-the-fact signature, and after-the-fact confirmation of Shelquist's approval. (Id. at 179:7-20; 200:19-21.) In short, Moll allowed the PSC to file a motion he knew to be improper. This behavior evidences a desire on Moll's part to put his own needs before the needs of the PSC. As a member of the Executive Committee, Moll had an obligation to prevent improper filings, and to protect the PSC and the people it represents from embarrassment. Instead of immediately withdrawing the improper filing, or at least questioning Shelquist about the propriety of the filing, Moll let it sit for days, and then attempted only to obtain documentation that would place any potential blame on LGN. (Moll Dep. Bayer Ex. A at 17:14-20; Lemon Dep. Bayer Ex. I at 195:1-196:29.)

The Court also finds that Moll committed perjury when he stated in his declaration that he was "counsel for the purposes" of filing the motion. (Bayer Ex. D at 1.) The clear import of the statement was that Moll was Guariniello's attorney, and the Court declines to engage in a semantics argument over the language. Since there can be no other reasonable interpretation of this statement, and since the statement is false, the statement is perjurious.

The Court finds that Moll also committed perjury when he failed to sign his declaration. Our entire justice system is premised on the dependability and truthfulness of documents which are signed by members of the bar. This is especially true when the Court and the parties to this litigation must rely on the

veracity of the electronic signature device, a device that requires signatures to actually be on file. Moll's declaration contained an electronic signature, and the parties and the Court had a right to depend on the veracity of the statements contained therein. If Moll was not willing to sign, he never should have filed.

<u>Shelquist and LGN Did Nothing Wrong</u>

The Court, after a thorough review of the evidence, finds that Shelquist and LGN did not commit any wrongdoing in connection with filing the motion. The Court believes that Lemon lied, and that she did not speak with Shelquist on the morning of June 12, 2003. In addition, the Court finds that Lemon compounded her lie by perjuring herself in her deposition. Lemon's purported conversation with Shelquist is not only in conflict with the telephone records, but is also in conflict with Lemon's statements, made during phone conversations with Gilles, that she had not spoken with either Shelquist or Lockridge. Further support for this finding is the fact that when Lemon was given the opportunity to back up her story by obtaining after-the-fact confirmation from Shelquist regarding his direction to file the motion without Guariniello's signature, Lemon never sought the confirmation. Lemon testified that she did not seek this confirmation because she did not want to sound like an "asshole." (Lemon Dep. Bayer Ex. I at 195:11-18.) The Court finds it more plausible that Lemon did not seek confirmation because she never had the June 12, 2003 conversation she purported to have with Shelquist. The Court can

conceive of no other reason why Lemon, a first year associate, would deliberately ignore Moll's order.

The fact that Lemon lied, however, does not absolve Moll of his wrongdoing. Moll is not only a partner at KBM, but also Lemon's supervising partner on this project. Moll should not have filed a document containing an electronic signature line knowing that the original signature was not on file. Doing so amounts to more than "negligent supervision." It amounts to willful misconduct.

Likewise, Moll's argument that he never saw the "electronic signature version" of Guariniello's declaration is no defense. Rather, it is even more outrageous that Moll would file a declaration that so obviously contained a blank signature line. Moll surely knew that something had to go on that line – if not the actual signature, which was obviously missing, then an electronic signature which comported with the safeguards outlined in PTO 18. See n. 1, supra. Once Moll saw that the declaration was not signed, he had an obligation to find out why, and to make sure it was signed before filing. In this case, that meant doing more than relying on Lemon's uncorroborated representation that Shelquist told her to affix an electronic signature. Any first year law student can see the logic of this. As discussed at the hearing, this is "basic ethics 101." (Tr. Feb. 24, 2004 Status Conf. at 119:7-8.) Moll, a member of the PSC, has no excuses, especially in light of the

fact that Moll discovered shortly after the filing that the declaration was unsigned, declared that such a filing was wrong, and then did nothing.

Moll should have also attended to the truth of his own unsigned declaration. The fact that Moll did not have enough confidence in the motion to sign his own declaration is telling. Moll used the electronic signature line on his own declaration, knowing full well what the electronic signature line represented, yet chose not to sign the original. Although given the opportunity at the hearing to explain why Moll did not sign his own declaration, Moll's counsel was unable to do so. Once again, Moll has no excuses. Even were the Court inclined to accept an excuse regarding Guariniello's declaration, Moll cannot possibly claim ignorance regarding his own declaration.

### B. Whether Moll's and KBM's Actions Violated this Court's Orders

#### 1. PTO 18

PTO 18 states that when an attorney submits a document bearing an electronic signature, the attorney "shall make an original signature available to any registered [Verilaw] user upon request." PTO 18 ¶ 6. The Order further provides the following:

> By submitting such a document, the filer certifies that each of the other signatories has expressly agreed to the form and substance of the document and that the filer has their actual authority to submit the document electronically. The filer must maintain any records evidencing this concurrence for subsequent production to the Court if so ordered or for inspection upon request by a party.

(Id.) Bayer asserts that Moll's filing of the Guariniello declaration violated this order.

Moll responds that, as discussed above, there is no evidence that Moll knew that the declaration would be filed without Guariniello's signature, and that the version of the Guariniello declaration which Moll approved contained a traditional blank signature line, rather than an electronic signature line. Moreover, Moll argues that he did not electronically file the Guariniello declaration. According to Moll, the actual filing was done by Shelquist after Shelquist instructed Lemon to insert the electronic signature line. At all times, Moll believed that Guariniello's signature was on its way or imminent. Therefore, according to Moll, he did not act in bad faith regarding the filing of Guariniello's declaration. (Moll Mem. Opp. Mot. Sanctions at 23.)

The Court finds that Moll violated PTO 18 when he filed the motion. The mandate of PTO 18 is clear: by filing a document with an electronic signature, the signatory has "expressly agreed to the form and substance of the document and that the filer has their actual authority to submit the document electronically."

Moll's argument that his past dealings with Guariniello made it reasonable to believe that Guariniello wanted the motion filed borders on specious. A collection of e-mails and discussions between people is a far cry from an express agreement to file the motion, and is nowhere near actual authority to file the motion. This is

especially true under these facts in which Guariniello failed to provide a signature when requested, and indeed, seemed to "disappear" when asked to sign the declaration. (Tr. Feb. 24, 2004 Status Conf. at 120:2-4.) Once again, Moll cannot hide behind the fact that he did not see an electronic signature version of Guariniello's declaration. Moll knew that the declaration was not signed. Moll had an obligation to obtain the signature before filing. Moll admitted as much to Lemon shortly after the motion was filed.

While it is true that June 12, 2003 was the filing deadline for the July status conference, the Court notes that during oral argument on this motion Mr. Lockridge stated that as far as he knew, the PSC did not view this as a vital motion, and that Lockridge could not understand Moll's haste to file. The Court further notes that in this MDL, the parties have been very good about stipulating to filing extensions when necessary. Moreover, the Court routinely grants filing extensions to accommodate practical obstacles as they arise. It seems that with a bit of communication, this entire situation could have been avoided.

The Court must again note that LGN did not engage in any wrong-doing regarding this motion. Although LGN filed the motion and supporting documents on Verilaw, it is clear that LGN merely did this as a professional courtesy, and that Shelquist and Lockridge did not have any control over the documents prior to filing them. (Gilles Aff. ¶ 8 (stating that the documents were filed "exactly as they had

been e-mailed to me").) Lemon never informed LGN that the signatures were missing, and LGN reasonably believed that the integrity of the electronic signature line was preserved by having signed originals on file since that is what the Court ordered the electronic signature line to represent.

2. PTO 24

PTO 24 provides that "[c]onfidential discovery material shall be used solely for the purposes of this litigation and for no other purpose without prior written approval from the Court or the prior written consent of the producing person or party." PTO 24 ¶ 5. Paragraph 6 of PTO 24 lists the persons who may receive confidential information. Guariniello is not listed in paragraph 6. Bayer argues that Moll violated PTO 24 when he "knowingly disclosed" excerpts from Bayer's confidential documents to Guariniello during the meetings in Italy. (Bayer Mem. Supp. Mot. Sanctions at 10.)

Bayer argues that Moll's contention that he did not know that Goldser's e-mail contained confidential information is untenable given that Moll was in the same room as Guariniello when the e-mail was opened, and that, according to Bayer, there is not "even a wisp of a contention" that Moll made any effort to correct the error. (Bayer Reply Mem. at 8.) Thus, Bayer proffers that the undisputed evidence demonstrates that Moll was complicit in the dissemination of confidential documents, and that sanctions are warranted. (Id. at 14.)

Moll responds that he did not knowingly disclose confidential documents to Guariniello. Rather, according to Moll, the facts demonstrate that Moll was unaware that the documents attached to the Goldser e-mail were confidential because he never saw Goldser's message prior to reviewing the documents with Guariniello. In fact, Moll testified that prior to viewing the attachment, he was not even aware of its content. (Moll Dep. Bayer Ex. A at 102:16.)

Moll points out that Goldser was asked to send Guariniello only nonprivileged documents; that Moll was not familiar with the contents of the PowerPoint presentation; and that the e-mail containing the confidential information was sent directly to Guariniello, who immediately opened the attachment containing the PowerPoint presentation before Moll could read Goldser's message. Thus, according to Moll, there is no evidence that Moll acted in bad faith regarding PTO 24.

The Court finds that Moll violated PTO 24 when he allowed Guariniello to see the documents containing Bayer's confidential information. While it may be true that Guariniello opened the attachments before Moll could read the explanatory e-mail, once Moll saw the documents, he should have been alerted to their potential confidential nature. The documents are clearly marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." PTO 24 clearly states that documents bearing this designation shall be disclosed only to specific people. (PTO 24 ¶ 6.) The Court

finds it particularly problematic that Moll apparently made no attempt to discover if the documents were confidential before or after allowing Guariniello to view them, and took no steps to protect the documents once he knew they were confidential. Even without the designation, Moll should have been on alert. Instead, Moll testified that upon learning that the documents may be confidential, Moll felt he was not in a position to caution Guariniello because "once [Guariniello] received it, pulled it up, [he'd] already viewed it." (Moll Dep. Bayer Ex. A at 103:11-17; 105:22.) While it is true that the participants in the teleconference agreed to only provide non-privileged documents, it is also true that Moll, as the only member of the PSC in Italy, had a heightened obligation to protect confidential information.

Although the Court realizes that it is impossible for every member of the PSC to know the confidential status of every document in this case, the Court finds that Moll was careless in handling these documents, and carelessness cannot be tolerated when dealing with protective orders and confidential information. The very purpose of a protective order is to avoid carelessness by, *inter alia*, carefully enumerating the trusted people who can view confidential documents. Moll abused that trust. The breach is especially troublesome in this case because Moll, a member of the PSC, cannot claim ignorance as a reason for violating his own stipulated protective order. As a member of the PSC, Moll had a heightened obligation to protect confidential information. Instead of taking the obligation seriously, Moll

cavalierly disregarded it. Moreover, the documents at issue are clearly stamped "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER."

Moll also cannot escape culpability by relying on Bayer's admission that as of August 2002, the PSC was under the mistaken impression that PTO 24 did not cover the disclosure of excerpts of confidential documents. (Moll Mem. Opp. Mot. Sanctions at 23; Bayer Mem. Supp. Mot. Sanctions at 10 n.5.) The documents Guariniello viewed were created by the PSC, but contained portions of Bayer's confidential information. PTO 74, which was signed April 17, 2003, makes it clear that excerpts were always to be protected in the same way as entire documents. (PTO 74.) In that order, the Court noted the following about the language of PTO 24:

> [I]t is clear that any memoranda that quotes, summarizes or otherwise discloses the contents of confidential material shall be filed under seal, and will remain under seal pending further order of this Court. By this language, it is also clear that all discovery material will remain under seal pending further order of the Court. The Court thus rejects Plaintiffs' argument that use of such confidential material by parties in open court acts to unseal such material.

(PTO 74 at 2.) Moll will not be allowed to hide behind his then-faulty interpretation of PTO 24. Moreover, Moll never argued in his deposition that he was relying on this faulty premise when he failed to take corrective action. Moll

only stated that once Guariniello saw the documents, he felt it was useless to do anything about it.

### C. Whether Moll's and KBM's Actions Violated Ethical Rules

#### 1. Minn. R. Prof. Conduct 3.3(a)

The Minnesota Rules of Professional Conduct provide that a "lawyer shall not knowingly . . . make a false statement of fact to a tribunal." Minn. R. Prof. Conduct 3.3(a)(1). The comment to the rule states that an assertion in an affidavit may be made only when the filing attorney "knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." Minn. R. Prof. Conduct 3.3 comment (1985).

Bayer argues that the filing of the motion, and the signature-less Moll and Guariniello declarations violated this rule. According to Bayer, Moll's months-long "diligent inquiry" actually informed Moll that these submissions were false. (Bayer Mem. Supp. Mot. Sanctions at 11.)

Moll responds that for the same reasons he did not commit perjury, he did not violate this rule: to wit, he did not "knowingly" make any false or misleading statement. Moll avers that he was always under the impression that Guariniello's signature was forthcoming, and that he was authorized to file the motion on Guariniello's behalf.

The Court finds that Moll violated this rule. There is no question that Moll knew Guariniello's declaration was unsigned when it was filed. It follows, therefore, that filing a declaration with an electronic signature constituted a false statement made to this Court. It is also disingenuous for Moll to argue that he thought the signature was forthcoming when the evidence is clear that Guariniello had "disappeared," and was not responding to e-mails seeking his signature, although responses had been prompt in the past. Moll also violated the rule by filing his own unsigned declaration with an electronic signature. Once again, filing an electronic signature constitutes a false statement when the filer knows that there is no original signature on file.

### 2. Minn. R. Prof. Conduct 3.4(c)

The Minnesota Rules of Professional Conduct also provide that a lawyer shall not "[k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Minn. R. Prof. Conduct 3.4(c). Bayer argues that Moll's violations of PTO 18 and PTO 24 are also violations of this rule.

Moll responds that for the same reasons he did not violate PTO 18 and PTO 24, he did not violate this rule. In addition, Moll avers that to the extent he may have violated either of the PTOs, he did so inadvertently and did not "knowingly disobey" the PTOs.

The Court finds that Moll also knowingly disobeyed this rule by violating PTOs 18 and 24. As discussed above, Moll clearly violated the mandates of both of these orders.

### 3. Minn. R. Prof. Conduct 8.4

Minnesota Rule of Professional Conduct 8 provides, in pertinent part:

> It is professional misconduct for a lawyer to:
>
> . . .
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
>
> (d) engage in conduct that is prejudicial to the administration of justice.

Minn. R. Prof. Conduct 8.4(b)-(d).

Bayer argues that Moll's perjury implicates paragraph (b), and that Moll's and Lemon's actions related to the preparation and filing of the motion, "including the cover-up efforts," implicate paragraphs (c) and (d). (Bayer Mem. Supp. Mot. Sanctions at 11.) Bayer avers that, contrary to Moll's representation, withdrawal of the motion was not effected in a timely manner once Moll knew that Guariniello would not sign his declaration. Bayer asserts that even if Moll still believed for a week after filing that Guariniello would sign the declaration, that did not excuse "Moll's conscious decision to keep the false filing under wraps in the interim." (Bayer Reply Mem. at 6.) Bayer proffers that the appropriate course of action

would have been for Moll to notify the Court immediately upon discovering the error, withdraw the motion, and refile the motion once he had received the signature. (Id. at 6-7.)

Moll reiterates that he did not engage in dishonest behavior in connection with filing the motion. In addition, Moll avers that he did not attempt to cover-up anything. Moll also argues that Bayer fails to identify any "prejudice to the administration of justice" caused by Moll's conduct.

Moll's perjury constitutes a violation of paragraph (b). In addition, the Court finds that Lemon lied in her deposition when she stated that Shelquist ordered her to file the motion without a signature on file. This is also perjury under 18 U.S.C. §1621(1), and a violation of paragraph (b) of the Minn. R. Prof. Conduct 8.4.

Furthermore, the Court finds that Moll and Lemon tried to cover-up the fact that the motion was filed when Guariniello had not signed his declaration. On June 12, the motion was knowingly filed without Guariniello's signature. Moll and Lemon tried to obtain the signature after the motion was filed, and continued to do so even after they knew Guariniello wanted to use a rogatory and did not want to file the motion. As far as the Court can tell, Moll and Lemon never informed Guariniello that the motion had been filed on June 12. As of June 16, Moll knew definitively that Guariniello would never sign the declaration. However, Moll did not tell anyone about the missing signature until June 23, and then only after direct

questioning from Susan Weber. Moll never told Guariniello that the motion had been filed, and never told Shelquist, the PSC, or the Court that the missing signature was the real reason for withdrawing the motion. These actions violated paragraphs (c) & (d) of the rule. Contrary to Moll's assertion, his actions have prejudiced the administration of justice in this case by calling into question the veracity of electronic signatures and the integrity of Moll and Lemon, and by forcing the Court and the parties to focus on this issue, rather than the main issues of this MDL.

### D. Whether Moll's Conduct Justifies the Imposition of Sanctions

Moll cites Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991) and Vandanacker v. Main Motor Sales Co., 109 F. Supp.2d 1045, 1046 (D. Minn. 2000) for the proposition that a finding of bad faith is required before the Court can award sanctions under its inherent power. (Moll Mem. Opp. Sanctions at 25-26.) Moll goes on to argue that his actions do not rise to the level of bad faith and, therefore, sanctions are inappropriate in this case.

Contrary to Moll's assertions, the Eighth Circuit has determined that the bad faith requirement only applies to cases in which the Court assesses attorneys' fees against a party or its counsel. Harlan v. Lewis, 982 F.2d 1255, 1260 (8th Cir. 1993). The Eighth Circuit explained its reasoning in the following way:

> Both Roadway and Chambers . . . discuss the narrow requirement that a district court assessing attorneys' fees against a party or its counsel

> find that the party had "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." . . . Although Roadway ends with a statement that a finding of bad faith "would have to precede any sanction under the court's inherent powers," the entire opinion discusses only the assessing of attorneys' fees. . . . We do not believe Roadway extends the "bad faith" requirement to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power. . . . We find no statement in Roadway, Chambers, or any other decision cited by the parties, that the Supreme Court intended this "bad faith" requirement to limit the application of monetary sanctions under the inherent power.

Id. at 1260 (internal citations omitted).

Vandanacker, another case upon which Moll relies, recognizes this fact. "The Eighth Circuit has held that there is not a bad faith requirement that extends to every disciplinary action the court makes, such as monetary sanctions. . . . However, [b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Vandanacker, 109 F. Supp.2d at 1055 (bracket in original) (citations omitted). Thus, a finding of bad faith is not required before the Court can assess sanctions in this case.

Moll argues that the instant case can be distinguished from the cases cited by Bayer because the parties in those cases all engaged in "blatant patterns of abusive misconduct." (Moll Opp. Mot. Sanctions at 26.) The Court disagrees. Although the persons sanctioned in some of Bayer's cited cases did preposterous things,[2] the

[2]In Chambers, the defendant and his attorney engaged in outrageous conduct designed to thwart the legitimate sale of defendants' media outlets,

Court finds that an appropriate reading of the cases merely establishes the principle that the federal court has the "inherent power to regulate practice before it," should the facts warrant it. Greiner v. City of Champlin, 152 F.3d 787, 789 (8th Cir. 1998) (citing Chambers, 501 U.S. at 43).

In Harlan v. Lewis, 982 F.2d 1255, 1257-61(8th Cir. 1993), an attorney was sanctioned for engaging in two separate ex parte communications with treating physician witnesses. In Greiner, an attorney violated a protective order by failing to file a confidential psychological report under seal, and took no steps to prevent his expert witness from causing a third person to contact a defendant who was represented by counsel, in spite of the fact that the attorney know of the expert's intent. Greiner, 152 F.3d at 788-90.

The Court does not find Moll's conduct readily distinguishable from the conduct at issue in Harlan and Greiner. Ex parte communications with represented parties implicates honesty, and an attorney's obligation to refrain from such conduct. Attorneys need not be reminded of this basic rule every time they work on

---

including trying to place the properties out of the court's jurisdiction, refusing to allow the buyer to inspect the books, filing meritless motions, and applying to build a new transmitter on the property which was the subject of the sale. See Chambers, 501 U.S. at 36-39. In Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 939-41(8th Cir. 2000), the plaintiff repeatedly refused to turn over DayTimer calendars which likely listed appointments and activities that would undermine his disability claims, and admitted to altering DayTimer entries to help his case.

a new case, and every party has a right to expect that all attorneys are abiding by it. The same can be said for the filing of signed documents. It is axiomatic that a signed document means that the information contained in the document is what it purports to be, and that the signature means that the signatory authorized the filing and believes the contents to be true. As stated above, this is "basic ethics 101."

Moreover, like the attorney in Greiner, Moll failed to stop offensive conduct once he knew of it. Moll knew that Guariniello's declaration was filed without a signature on the day it was filed. Moll also knew for days after the filing that he still did not have Guariniello's signature. Most importantly, once Moll had absolute confirmation that Guariniello would never sign the declaration, Moll did nothing to withdraw the document. These acts all demonstrate bad faith, and would merit sanctions even under that heightened standard.

Likewise, preventing the dissemination of confidential information, whether by failing to file under seal, as in Greiner, or by failing to take appropriate precautions to prevent improper release, is sanctionable conduct. The Court finds that Moll, Lemon, and KBM engaged in sanctionable conduct. The Court agrees with Bayer that "KBM's casual 'no-harm-no-foul' approach to attorney misconduct is neither appropriate nor supported by the law." (Bayer Reply Mem. at 14.)

The Court has broad authority and discretion to impose sanctions "for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45. The

Court is free to craft the kind of sanctions it finds appropriate . See Id. at 49; Keefer, 238 F.3d at 941; Greiner, 152 F.3d at 790; Harlan, 982 F.2d at 1259-60. Bayer suggests that the following sanctions are proper in this case:

(1) Removing Moll from the PSC. According to Bayer, Moll's "pattern of wilful dishonesty" has proven him unfit for the privilege of serving on the Committee;

(2) Disqualifying KBM from further participation in this MDL as counsel for individual Plaintiffs, and voiding any retention or fee agreements with KBM's individual Plaintiffs. If the Court imposes this sanction, Bayer suggests that the PSC oversee the transition of KBM's individual cases to new counsel; and

(3) Fining KBM for its misconduct. Bayer suggests an amount of $50,000, with a requirement that the payment amount is not passed on to KBM's clients.

The Court has reviewed Bayer's submissions, and concludes that some of Bayer's suggestions are appropriate, and will therefore be adopted.

By allowing a motion to be filed without signatures and by failing to correct the problem in a timely manner, Moll exhibited poor judgment and a profound lack of the appropriate forthrightness and candor necessary from a member of the PSC. Moll deliberately tried to cover-up his actions and mislead the Court and the parties

as to the true status of the motion. In addition, Moll failed to exercise due care regarding the handling of confidential documents. This improper handling, and failure to even attempt to correct the problem, demonstrate that Moll is not qualified to perform the duties of a PSC member with the zeal and integrity this Court requires.

Moreover, although Bayer does not seek sanctions against Lemon, the Court cannot ignore the fact that Lemon lied not only to Moll, but also under oath in her deposition. This conduct proves that Lemon does not posses the proper candor and honesty necessary to practice law in this jurisdiction.

Accordingly, **IT IS HEREBY ORDERED**:

(1) Bayer's Motion for Sanctions Arising From the PSC's Interactions with the Prosecutor in Turin, Italy (Doc. No. 3743) is **GRANTED IN PART AND DENIED IN PART**;

(2) Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd. are removed from the Plaintiffs' Steering Committee in this case;

(3) Kenneth B. Moll is personally sanctioned in the amount of $50,000, which shall be tendered to the Clerk of Court of the United States District Court for the District of Minnesota within seven (7) days of this Order;

(4) Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd. may continue to represent individual plaintiffs in this case;

(5) K. Amy Lemon is prohibited from practicing law in the United States District Court for the District of Minnesota; and

(6) The Clerk of Court shall send copies of this Order to the following:

Illinois Attorney Registration and Disciplinary Commission
130 E. Randolph Dr., Suite 1500
Chicago, IL 60601

and

Thomas B. Heffelfinger
United States Attorney for the District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Date: April 12, 2004

Michael J. Davis
United States District Court