**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LITIGATION** **MDL No. 1431 (MJD/JGL)**

**This Document Relates to All Actions** **PRETRIAL ORDER 119**

---

Richard A. Lockridge, and Robert K. Shelquist, Lockridge Grindal Nauen, PLLP; and Charles Zimmerman, and Ronald S. Goldser, Zimmerman Reed, PLLP, for and on behalf of Plaintiffs.

Peter W. Sipkins, and Elizabeth S. Wright, Dorsey & Whitney LLP; Philip S. Beck and Adam L. Hoeflich, Barlit Beck Herman Palenchar & Scott; Susan A. Weber, Eugene A. Schoon, Steven J. Ellison, and John M. Rushing, Sidley Austin Brown & Wood; Gene C. Schaerr, Sidley Austin Brown & Wood; and Richard K. Dandrea, Eckert Seamens Cherin & Mellott LLC, for and on behalf of Bayer Corporation.

Tracy J. Van Steenburgh, Halleland Lewis Nilan Sipkins & Johnson, P.A.; and Fred T. Magaziner, Dechert Price & Rhoads, for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

---

Before the Court are the PSC's Motion Regarding Third Party Payor Negotiations and Settlements (Doc. No. 3587), and Bayer's Motion to Quash Attorney's Lien (Doc. No. 3805). The issues have been fully briefed, and oral arguments were heard on December 9, 2003, and February 24, 2004.

In its Motion Regarding Third Party Payor Negotiations, the PSC requests an order compelling notice of all negotiations between Defendants and third party payors, and the right to participate in such negotiations. Third party payors ("TPPs") include health insurance plans, health and welfare plans, union plans,

and employer funded health benefit plans that payed, or are responsible to pay, for health benefits associated with Baycol use. The PCS also requests that all settlements and/or judgments between TPPs and Defendants be subject to the six percent hold back authorized by PTO 25 and PTO 53.

In its Motion to Quash Attorney's Lien, Bayer asks the Court to find that it does not have jurisdiction to order hold backs in cases not transferred to this MDL. According to Bayer, it follows that the PSC's lien on those hold backs must be quashed. In addition, Bayer argues that the PSC has no statutory right to file an attorney lien on the settlements reached between the TPPs and Defendants.

## I. BACKGROUND

Baycol was a prescription cholesterol-lowering drug used by almost a million patients in the United States. Many TPPs paid prescription costs for Baycol on behalf of their insureds. In addition, TPPs paid for medical care associated with injuries and illnesses resulting from the use of Baycol. After Baycol was removed from the market, many of these TPPs approached Bayer to discuss negotiating settlement of actual and potential claims associated with Baycol use. None of these TPPs have filed suit against Bayer. Bayer has subsequently reached settlements with a number of TPPs. These settlements are the subject of the instant motions.

Pursuant to PTOs 25 and 53, all settlement and/or judgment payments

made in conjunction with this MDL are subject to a six percent hold back which is used to reimburse costs and attorneys' fees to the PSC, and other attorneys authorized by the PSC, for work done on behalf of Plaintiffs in this MDL. (PTO 25, PTO 53.) PTO 106, signed by the Court on January 29, 2004, amended PTO 53 to exclude cases filed in federal court, but not transferred to this MDL. (PTO 106 at 2.) The PSC is concerned about the impact TPP settlements have on both past and future plaintiff settlements. On February 9, 2004, the PSC filed a Notice of Attorney's Lien seeking six percent of the amount of any settlements negotiated between the TPPs and Bayer.

## II. PSC'S MOTION REGARDING THIRD PARTY PAYOR NEGOTIATIONS

The PSC argues that fundamental fairness requires that the Court grant this motion because it is the PSC's "work product that's brought [the TPPs] into the loop [so] that now they are getting X number of dollars and they are getting a free ride." (Dec. 9, 2003 Hr'g Tr. 74:11-14.) As of this date, only one TPP, Allied Services Division Welfare Fund ("ASDWF"), has voluntarily submitted to the jurisdiction of this Court in this MDL.[1] The Court will first discuss TPPs that have not voluntarily submitted to the Court's jurisdiction, and will then discuss ASDWF.

---

[1]The Court notes that Blue Cross and Blue Shield of Minnesota has filed a separate action, not part of this MDL, against Bayer. See Blue Cross and Blue Shield of Minnesota v. Bayer et al., No. 03-CV-4648 (MJD/JGL). This action was filed on August 7, 2003.

### A. Third Party Payors Who Have Not Submitted to This Court's Jurisdiction

#### 1. Jurisdiction Based on 28 U.S.C. § 1332

28 U.S.C. § 1332 provides, in pertinent part, that the federal courts shall have original jurisdiction over "all civil actions" where the amount in controversy exceeds $75,000, and where complete diversity exists between the parties. 28 U.S.C. § 1332(a).

The PSC argues that the Court has jurisdiction over all TPP claims based on diversity of citizenship. Specifically, the PSC asserts that since one TPP, ASDWF, has filed a direct class action complaint in this case, see Allied Serv. Div. Welfare Fund v. Bayer, No. 02-CV-1255 (MJD/JGL), and because ASDWF has also joined the PSC's motion for class certification on economic loss claims, original jurisdiction exists. (PSC Mem. Supp. Mot. at 1, 5.) The PSC also argues that any negotiated lump sum reimbursements will likely exceed the $75,000 jurisdictional amount. (Id. at 5.) Thus, according to the PSC, "to the extent that any TPP files a lawsuit against Bayer for reimbursement of its subrogation interest, there would be diversity between Plaintiffs and Defendants." (Id.)

Defendants respond that the Court does not have diversity jurisdiction over the TPPs because diversity jurisdiction extends only to "civil actions" filed in, or removed to, federal court, and that most TPPs have not filed any litigation at all,

while a few have filed cases in various state courts. Defendants also argue that merely because one TPP has moved for class certification in this MDL proceeding, that does not mean that the PSC is entitled to participate in discussions with all TPPs. Defendants note that no TPP class has yet been certified, so absent members of any putative class are not bound by the proceedings in this MDL. Lastly, Defendants argue that since the Court does not have jurisdiction over the TPPs, forcing Defendants to allow the PSC to participate in private conversations between TPPs and Defendants would be an unreasonable restraint on free speech.

Defendants cite In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig., 953 F.2d 162, 166 (4th Cir. 1992) for the proposition that an MDL court's jurisdiction is limited to cases and controversies between persons who are proper parties to the transferred case. In Showa Denko, the Fourth Circuit struck the portion of an MDL judge's order which provided that plaintiffs' expense fund assessments applied not only to cases already included in the MDL, but also to "actions venued in state courts, untransferred federal cases, and unfiled claims in which any MDL defendant is a party or payor." Id. at 164. The court found that "[c]laimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process. The district court simply has no power to extend the obligations of its order to them." Id. at 166.

The Showa Denko court relied, at least in part, on Hartland v. Alaska Airlines, 544 F.2d 992, 1002 (9th Cir. 1976) which ordered an MDL court to return contributions obtained from non-party claimants as a condition of approving settlements. Id. at 165-66 (stating that any attempt to reach persons who are not proper parties without service of process "is beyond the court's power"); See also In re Linerboard Antitrust Litig., 292 F. Supp.2d 644, 664(E.D. Pa.2003) (finding that the court lacked jurisdiction over cases not formally transferred into the MDL, and refusing to order sequestration of funds from settlements and other recoveries in untransferred cases).

The Court finds that only one TPP has submitted to the jurisdiction of this Court. By filing its class action complaint, and joining in the PSC's motion for class certification, ASDWF has brought itself under the jurisdiction of this Court. Other TPPs, however, have not. 28 U.S.C. § 1332 applies only to "civil actions." Most of the TPPs have not filed any action at all, while a few have filed state court actions that are not yet a part of this MDL, and may never become part of this MDL. The Court concurs with the Showa Denko and Linerboard courts: "a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred." Showa Denko, 953 F.2d at 165-66; Linerboard, 393 F. Supp.2d at 664.

In addition, since no TPP class has yet been certified, Defendants have a right to negotiate settlements with prospective class members. At this point, TPPs who choose to settle are merely opting out of the class. Cada v. Costa Line, Inc., 93 F.R.D. 95, 98 (N.D. Ill. 1981); See also Manual for Complex Litigation (Third) § 30.24 (1995) ("Defendants ordinarily are not precluded from communications with putative class members, including discussions of settlement offers with individual class members before certification") (citing Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981)); In re Airline Ticket Comm'n Antitrust Litig., No. MDL 1058, 1996 WL 585301, at * 2 (D. Minn. Aug. 12, 1996) ("Had [putative plaintiffs] . . . wished to . . . seek a private settlement with defendants, they were free to do so prior to expiration of the opt-out period"). Thus, the Court finds that it does not have original jurisdiction over TPPs who have not previously submitted to its jurisdiction, and that private negotiations between Defendants and these TPPs are entirely proper.

**2. Supplemental Jurisdiction**

The PSC also argues that this Court has supplemental jurisdiction over the TPPs under 28 U.S.C. § 1367. That statute provides, in pertinent part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that

> they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). The PSC argues that by their very nature the TPPs' subrogation and reimbursement claims derive from Plaintiffs' original claims. According to the PSC, if the Court has jurisdiction over the claims of even one of a particular TPP's insureds, it has supplemental jurisdiction over all of that TPP's reimbursement claims. The PSC notes that TPPs "have apparently chosen to engage in reimbursement negotiations on account of all Baycol claimants, not just those who have claims in this litigation." (PSC Mem. Supp. Mot. at 6-7.) Defendants respond that the PSC's assertions are baseless because 28 U.S.C. § 1367(a) applies only to claims, and that to establish a cause of action before the Court, one must actually file a complaint and assert that the federal courts have jurisdiction over this additional cause of action.

The Court concludes that it does not have supplemental jurisdiction over non-party TPPs. Supplemental jurisdiction under § 1367(a) applies only to "claims." There can be no jurisdiction where there is no claim. Hammond v. Clayton, 83 F.3d 191, 194-95 (7th Cir. 1996); See also generally, Charland v. Little Six, Inc., 112 F. Supp.2d 858, 865 (D. Minn. 2000), aff'd 2001 WL 717353 (8th Cir. 2001) (unpublished opinion) (citing several instances in which the compliant failed to state a claim over which the court had jurisdiction). To establish

jurisdiction, Plaintiffs must take formal steps to bring third parties under the Court's jurisdiction. See Showa Denko, 985 F.2d at 166.

The PSC argues that the TPPs' subrogation and reimbursement claims are derived through Plaintiffs' claims, and therefore if original jurisdiction exists over Plaintiffs' claims, it also exists over the TPPs' claims. (PSC Mem. Supp. Mot. at 6 (citing Williams v. Globe Indem. Co., 507 F.2d 837, 840 (8th Cir. 1974)). The Court does not find this argument persuasive. The fact that the TPPs may have derivative rights does not establish jurisdiction, but simply establishes limits on the claims TPPs may file. The case relied on by the PSC merely stands for the proposition that an insurer "takes no rights other than those which the insured had." Williams, 507 F.2d at 840 (finding that insurer was subject to same statute of limitations as its insured).

The Court finds further support for this conclusion in the language of its own Orders. PTO 25 subjects all payments from Defendants to Plaintiffs to the six percent hold back. (PTO 25 ¶¶ 9, 10.) PTO 53 states that the provisions of PTO 25 apply to the following:

> a) all cases transferred to this MDL, except those remanded by order of the Court to state court for lack of jurisdiction; b) all cases filed in federal court not yet transferred, except those dismissed for lack of jurisdiction; . . . [and] all cases subsequently ordered by this Court to be subject to this Order.

(PTO 25 ¶ 2a.) The Court finds that non-party TPPs do not fit into any category listed in PTO 53. Moreover, PTO 106 makes it clear that the Court only has jurisdiction to order hold backs in cases that are part of this MDL. (PTO 106 at 2.) Thus, PTOs 25 and 53 do not apply to non-party TPPs.

In conclusion, the Court finds that it does not have jurisdiction over non-party TPPs. These TPPs do not have claims pending before this Court, and have not submitted to the Court's jurisdiction. Accordingly, the Court is unable to grant the relief the PSC requests regarding non-party TPPs. Settlements negotiated between Defendants and non-party TPPs are not subject to the six percent hold back. Thus, this part of the PSC's motion is denied.

**B. Allied Services Division Welfare Fund**

By filing a lawsuit in this MDL, ASDWF has voluntarily submitted to the jurisdiction of this Court. See Allied Serv. Div. Welfare Fund v. Bayer AG et al., No. 02-CV-1255 (MJD/JGL). The questions regarding ASDWF and any TPPs that subsequently come under this Court's jurisdiction are: 1) should the PSC be allowed to participate in negotiations between the TPPs and Defendants, and 2) should any settlement reached in those negotiations be subject to the hold back provisions of PTOs 25, 53, and 106?

### 1. Whether the PSC Should be Allowed to Participate in Negotiations Between the ASDWF and Defendants

The Court can find no precedent for granting the extraordinary relief of allowing the PSC to participate in negotiations between ASDWF and Defendants. Indeed, the PSC does not cite to any such authority. The PSC does argue that agreements reached during these private negotiations will very likely "impact[] the rights of the Plaintiffs, . . . [and] directly and meaningfully impact[] this MDL." (PSC Reply Mem. at 1.) Be that as it may, many things outside the Court's control impact this MDL. The Court cannot be responsible for every contingency that affects this MDL or any other case on its docket. The Court is also not convinced that allowing the PSC to participate in private negotiations will have a positive effect on this litigation. Private negotiations between parties in multi-party suits (or in this case, between parties and non-parties) are a common occurrence, and the Court will not needlessly interfere with these oftentimes helpful communications. Thus, this part of the PSC's motion is denied.

Notwithstanding the above, the Court notes that during oral argument on this issue, the PSC spent much time proffering hypotheticals that resulted in TPPs receiving double compensation, mostly due to the fact that the PSC would not know when a particular TPP reached an out-of-court settlement with Defendants. Since oral argument was heard on this issue, the Parties have developed a system

whereby Defendants notify the PSC when they reach settlements with TPPs. Thus, this part of the PSC's motion is moot.

### 2. Whether Settlements Between ASDWF and Defendants are Subject to the Provisions of PTOs 25, 53, and 106

PTO 25 states that Defendants' payments to Plaintiffs shall be subject to a six percent hold back which shall be deposited into the MDL 1431 Fee and Cost Accounts. (PTO 25 ¶ 9.) PTO 53 provides, in pertinent part, that PTO 25 applies to "all cases transferred to this MDL, except those remanded by order of the Court to state court for lack of jurisdiction; [and] . . . all cases subsequently ordered by this Court to be subject to this Order." (PTO 53 ¶ 2a, f.) PTO 106 states that only cases transferred into this MDL are subject to the provisions of PTO 53. (PTO 106 at 2.)

The Court finds that ASDWF is subject to the provisions of PTOs 25 and 53. ASDWF is a Plaintiff in this MDL, and is seeking payment from Defendants. Therefore, any payment Defendants make to ASDWF is subject to the six percent hold back. It follows that any TPP that comes under the jurisdiction of this Court is also subject to the provisions of PTOs 25 and 53, and any payments those TPPs receive from Defendants will be subject to the six percent hold back. Thus, this part of the PSC's motion is granted.

## III. BAYER'S MOTION TO QUASH ATTORNEY'S LIEN

### A. Whether Any PTOs Support the PSC's Position

The PSC's Notice of Attorney's Lien seeks six percent of the amount of any settlements negotiated between the TPPs and Bayer. Bayer seeks to quash this lien because, according to Bayer, the PSC's action of filing the lien demonstrates that the PSC simply assumes that the Court has already granted the relief it sought in its Motion Regarding Third Party Payor Negotiations and Settlements. Bayer argues that the express language of PTOs 25, 53, and 106 does not allow the PSC to get six percent of settlements reached in cases that are not under this Court's jurisdiction.[2]

The PSC responds that it makes no difference that the TPPs have not filed claims in this action. What does count, according the PSC, is that the claims of thousands of Plaintiffs are currently before this Court. According to the PSC, their claims all include claims for economic injury, and under Minnesota law these claims include any type of lien or subrogation interest that a TPP may be able to re-claim. For support, the PSC cites Keene v. Stattman, 256 N.W.2d 295 (Minn. 1977) in which the Minnesota Supreme Court found that an attorney representing an auto accident victim in an action against the offending driver was

---

[2]The arguments proffered regarding this motion all seem to be directed toward TPPs that have not submitted to this Court's jurisdiction.

entitled to attorney's fees from the portion of the settlement reserved for hospital expenses. Id. at 298.

The Court finds that Keene does not support the PSC's position. Keene can be distinguished from the instant case in two ways. First, the attorney in Keene told the hospital that he would "protect their bills in the event that the plaintiff was successful in his lawsuit." Id. at 296. This promise created a prior lien on any recovery. Id. at 298. Second, the hospital never sued on its own because the injured plaintiff was indigent. Id. This failure to seek any recovery on its own meant that the only funds now available to the hospital were those resulting from the attorney's efforts. Id. Thus, the Keene court concluded that equity required that the hospital pay attorney's fees out of its recovery. Id. In the instant case, the TPPs' settlements are due to the efforts of their own counsel. It is undisputed that TPP attorneys approached Bayer to negotiate these settlements.

The PSC also argues that the "interdependence of interests between TPPs and individual plaintiffs cannot be disaggregated for the sake of convenience if the TPPs decide to ignore this Court's jurisdiction over claims that have been pending for, in the majority of cases, years." (PSC Response Mot. Quash Atty. Lien at 3.) According to the PSC, since the interests that are the subject of the settlements are "inextricably linked to the interests presently being litigated before this Court," the settlements should be subject to the six percent

assessment. (Id. at 3-4.)

The Court does not agree. The fact that the TPPs' and Plaintiffs' interests may be aligned does not create jurisdiction. As discussed in Section II, supra, the Court does not have jurisdiction to order hold backs in cases that are not part of this MDL. These settlements are not being negotiated in the context of MDL cases. In fact, the settlements are not part of "cases" at all. The Court agrees with Bayer that these settlements are not subject to the six percent hold back.

### B. Whether the PSC Can File an Attorney's Lien Under Minn. Stat. § 481.13

The PSC filed its attorney lien pursuant to Minn. Stat. § 481.13. That statute provides, in pertinent part, the following:

> An attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the summons in the action, or the commencement of the proceeding, and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of the lien claim, as provided in this section.

Minn. Stat. § 481.13(a).

The Court finds that the PSC does not meet any of the above requirements. First, the language of the statute makes it clear that there must be some kind of express or implied agreement for compensation. There is no such agreement

between the TPPs and the PSC. The TPPs hired their own counsel to negotiate the settlements at issue in this motion. See Insurance Corp. of Hanover, Inc. v. Latino Americana DeReaseguros, S.A., 868 F. Supp. 520, 528 (S.D.N.Y. 1994) (refusing to impose an attorney's lien on trust fund because the law firms asserting the lien failed to perform any legal services which resulted in the creation of the trust fund or any affirmative recovery for the benefit of that client); Hammond v. Nebraska Natural Gas Co., 309 N.W.2d 75, 82 (Neb. 1981) (invalidating attorneys' liens because there was no attorney-client relationship between the purported lien holder and the three plaintiffs in the case).

Second, Minnesota courts will not find an implied agreement for attorney's fees just because a third party benefits from the attorney's work. Johnson v. Blue Cross and Blue Shield of Minnesota, 329 N.W.2d 49, 52-53 (Minn. 1983). In Johnson, an attorney who successfully represented a client in a worker's compensation case asserted a lien against Blue Cross, who intervened in the case and then recovered on its right of reimbursement. The attorney argued that in establishing his client's case, he had also established the health insurer's right to reimbursement, and therefore should be compensated for services rendered. Id. at 51. The Minnesota Supreme Court disagreed, and held that Blue Cross had neither an implied-in-fact contract for service, nor an implied-in-law contract for service. Id. at 51-52. The court found that absent an express or implied

agreement for services, an attorney's lien could not be asserted. Id. at 53. The Johnson court also held that Minn. Stat. § 481.13 does not itself create an agreement to pay attorney's fees. Id. Rather, the statute merely imposes a lien to protect attorneys who already have such an agreement in place. Id.

The PSC responds that the instant case can be distinguished from Johnson because the Johnson court found that Blue Cross had a statutory right to reimbursement without contribution for attorney fees. According to the PSC, since the settlements at issue in this case are a direct benefit of the PSC's work, denying the PSC attorney's fees would be inequitable.

The Court finds that the PSC misconstrues Johnson. The Johnson court's holding was not based solely on the statutory right to reimbursement. The court also concluded that although Blue Cross had been enriched, it had not been unjustly enriched, and therefore it was not unfair to deny the attorney compensation from Blue Cross for services the attorney "had to perform anyway in representing his client, the employee." Id. at 52-53. The Johnson court specifically declined to impose a lien in the absence of some agreement to pay attorney fees. Id. at 53. The court also held that an "attorney's statutory lien, where there is one, is on the cause of action and the client's interest in any money or property." Id. (emphasis added). The TPPs are not the PSC's clients. Moreover, the PSC did not do any extra work on behalf of the TPPs. Rather, the

TPPs had their own attorneys negotiate the settlements. The possibility that the TPPs benefitted in some way from the PSC's work is not enough to establish the right to file an attorney lien in this case. See Id. at 52-53; Williams v. Dow Chem. Co., 415 N.W.2d 20, 25-26 (Minn. Ct. App. 1987)(holding that it is not unfair to deny attorney fees for services that benefitted a non-client co-plaintiff, that an attorney's lien must be based on "the interest of his client," and that Minn. Stat. § 481.13 only imposes liens to protect attorneys who already have fee agreements).[3]

Lastly, the PSC encourages the Court to find an implied agreement to pay attorney fees in this case. The PSC correctly notes that "an agreement to pay fees need not be express; its existence can be inferred from the conduct of the parties (implied-in-fact agreement), or it can be implied-in-law when the equities of the situation result in unjust enrichment." (PSC Response Mot. Quash Lien at 4) (quoting Dow Chem., 415 N.W.2d at 24). For support, the PSC cites Robertson v. Johnson, 200 N.W.2d 316, 319 (Minn. 1972). In Robertson, the Minnesota

[3]The PSC argues that this case can be distinguished from Dow Chem. because the Dow Chem. court determined that the attorney lien was not enforceable against a third party because the client had assigned his license interests to a third party prior to retaining counsel. Dow Chem., 415 N.W.2d at 26. In our case, there has been no assignment. The Court does not agree that the security agreement was the only reason the Dow Chem. court did not uphold the lien. The court also found that under the facts of the case there was no implied-in-fact or implied-in-law agreement which could be enforced. Id. at 25-26. The court also held that an attorney can only impose a lien to protect an existing agreement for fees. Id. at 26 (citing Johnson, 329 N.W.2d at 53.) Since the parties were not the attorney's clients, no lien could attach. Id.

Supreme Court interpreted a statute that provides that a county welfare board providing medical care to an indigent person "shall have a lien for the cost of such care upon all causes of action accruing to the person to whom such care was furnished . . . subject, however, to any attorney's lien." Robertson, 200 N.W.2d at 318 (quoting Minn. Stat. § 393.10). The indigent person in Robertson received county treatment following an auto accident, and subsequently was awarded damages for his personal injuries. Id. at 317. The court held that the language "subject . . . to attorney's lien" means that when a county has not participated in seeking recovery from tortfeasers, it must bear its fair pro rata share of attorney's fees incurred in obtaining its medical reimbursement. Id. at 319. The Robertson court reasoned, *inter alia*, that any other holding would undermine Minn. Stat.
§ 393.10's primary intent of relieving the tax burden.[4] Id. at 320.

The Court finds that the instant case can be distinguished from Robertson because the settlements are not the result of the PSC's work. Rather, the settlements are the result of the TPPs' own attorneys' work. It is not unfair for the

---

[4]The county welfare board in Robertson argued that since the award at issue was large enough to cover both expenses, the attorney fees should be paid only after the county had received reimbursement for the full amount of its expenses. The court disagreed, reasoning that such a holding would greatly reduce the plaintiff's share of the award, thus creating the potential for the plaintiff to end up back on the county medical roles, a result at odds with the statute's intended purpose of providing tax payer relief. See Robertson, 200 N.W.2d at 205.

PSC to be denied attorneys' fees under these circumstances. Moreover, unlike the situation in Robertson, there is no overriding public policy that makes denying fees in this instance unfair. If anything, the Court is loath to discourage private discussions which can lead to settlements, something which this District's policies have long promoted. The Court is also not persuaded that the TPPs' attorneys relied on the PSC's work to such an extent that "the TPPs will reap an unjust enrichment at the expense of the PSC and plaintiffs' individual counsel." (PSC Mem. Opp. Mot. Quash Lien at 2.) In fact, the PSC has proffered no evidence that any of its work product is being used in negotiations between TPPs and Defendants, or that the PSC has done anything other than represent its clients. The PSC has failed to establish either an implied-in-fact or implied-in-law agreement for attorneys' fees in this situation. Accordingly, the PSC has no right to file a lien under Minn. Stat. § 481.13, and the attorney lien filed on February 9, 2004 must be quashed.

**IT IS HEREBY ORDERED:**

1. PSC's Motion Regarding Third Party Payor Negotiations and Settlements [Doc. No. 3587 in MDL 1431] is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order;

2. Only Third Party Payors currently under this Court's jurisdiction and Third Party Payors that come under this Court's jurisdiction in the future are subject to the hold back provisions of PTO 25, PTO 53, and PTO 106; and

3. Bayer's Motion to Quash Attorney's Lien [Doc. No. 3805 in MDL 1431] is **GRANTED**.

DATED: May 3, 2004

/s/ Michael J. Davis
MICHAEL J. DAVIS
United States District Court