E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

# EXHIBIT 1

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

FILED
02 AUG -7 PM 3:45
DEBBIE ... BARRETT
CLERK
_______________ D.C.

**CIRCUIT COURT OF THE STATE OF TENNESSEE**
**COUNTY OF WILLIAMSON**

| | | |
|---|---|---|
| DIANE MASON, an individual,<br><br>Plaintiff,<br>v.<br><br>BAYER AG, a foreign corporation; BAYER CORPORATION, an Indiana corporation and subsidiary of BAYER AG; SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, a Pennsylvania corporation; GLAXOSMITHKLINE, PLC; and ARTHUR E. WILLIAMS, D.O.,<br><br>Defendants | ) | Case No. **02484**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Dianne Mason ("Plaintiff"), on behalf of herself, for her multiple causes of action against the above-named Defendants, alleges and states the following:

**INTRODUCTION**

1. Plaintiff brings this action to recover damages for personal injury, restitution, refund and/or for equitable, injunctive relief against Defendants Bayer AG, a foreign corporation ("Bayer AG"); Bayer Corporation, an Indiana corporation ("Bayer") and a subsidiary of Bayer AG; SmithKline Beecham Corporation d/b/a GlaxoSmithKline, a Pennsylvania corporation ("GSK"); and a subsidiary of GlaxoSmithKline, plc; GlaxoSmithKline, plc, a foreign corporation; and Arthur E. Williams, D.O. ("Williams") (collectively referred to herein as "Defendants"), who all, in some respect, tested, marketed, distributed, promoted, sold, prescribed

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

and filled Baycol, which the Plaintiff took after it was prescribed to her, and, as a result thereof, suffered damages.

2. Baycol has been linked to over 52 deaths worldwide, including, but not limited to, cases of fatal rhabdomyolysis. This number is believed to be mounting even higher.

3. A spokesman for GSK stated that he believed the death toll was higher than the 52 disclosed by Bayer.

4. Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of these muscle cells into the bloodstream. This condition, if not timely diagnosed and properly treated, results in permanent injury and/or death.

5. According to the 2001 edition of the Physicians Desk Reference ("PDR"), concurrent treatment of Baycol with Gemfibrozil was contraindicated, due to the risk of rhabdomyolysis.

**PARTIES**

6. Plaintiff, Diane Mason, is a resident of Franklin, Williamson County, Tennessee.

7. Defendant, Bayer AG, is a foreign corporation headquartered and with its principal place of business in Leverkusen, Germany. Bayer AG, in conjunction with its wholly owned subsidiaries, affiliates and other related entities, manufactures, markets and distributes Baycol throughout the world, including California.

8. Defendant Bayer is an Indiana corporation and a wholly owned subsidiary of Bayer AG. The corporate headquarters for Bayer is Pittsburgh, Pennsylvania. Bayer manufactures, markets and/or distributes Baycol throughout the world, including California.

9. Defendant GlaxoSmithKline ("GSK"), is a Pennsylvania corporation. On information and belief, GSK markets and/or distributes Baycol throughout the world, including

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

California. GSK was formed by the merger of Glaxo Wellcome and Smith Kline Behcam on December 27, 2000.

10. Defendant GlaxoSmithKline, plc, is a foreign corporation headquartered and with its principal place of business at GlaxoWelcome House, Berkeley Avenue, Greenford, Middlesex, England. GlaxoSmithKline, plc, has a principal place of business in Pennsylvania at One Franklin Plaza, Philadelphia, PA. At all relevant times, GlaxoSmithKline, plc, was the holding company and successor in interest to the holding company that wholly owns Defendant GSK. Hereinafter both will be referred to collectively as "GSK."

11. Defendant Williams holds himself out as a doctor of Osteopathic Medicine licensed by the State of Tennessee, and practicing in Franklin, Tennessee.

12. Plaintiff was co-prescribed Baycol by Defendant Williams while at the same time being prescribed Lopid ("Gemfibrozil").

13. Plaintiff purchased and took both Baycol and Lopid ("Gemfibrozil") as recommended and prescribed by Defendant Williams.

14. As a result of Plaintiff's prescribed use of both Baycol and Lopid, Plaintiff suffered various serious physical illnesses and injuries, including rhabdomyolysis.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this Complaint pursuant to the laws of the State of Tennessee.

16. Venue is proper in this Court pursuant to Tennessee Code of Civil Procedure. Plaintiff is a resident of Williamson County, Tennessee. Defendants, Bayer AG, Bayer and GSK, manufactured, marketed, promoted, distributed and/or sold and prescribed Baycol within Williamson County, Tennessee.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

**FACTUAL BACKGROUND**

17. Baycol, also known as Cerivastatin, is a medication commonly prescribed to patients to aid in lowering cholesterol and triglycerides. Baycol lowers cholesterol by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol. Baycol is a member of a class of cholesterol lowering drugs referred to as "statins".

18. Statins have been associated with reports of rhabdomyolysis. Rhabdomyolysis is a condition that results in muscle cell breakdown and the release of the contents of these muscle cells into the bloodstream. Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting. In severe cases, patients develop potentially fatal kidney failure and other organ failure, which can be fatal.

19. The Food and Drug Administration ("FDA") approved Baycol for use in the United States in 1997.

20. Baycol was the sixth and last statin introduced into the United States pharmaceutical market.

21. According to the PDR, during 1998-1999, Baycol was supplied in tablets containing 0.2 or 0.3 mg. In 2000, Baycol was also supplied in 0.4mg tablet. In 2001, Baycol was introduced in a 0.8mg tablet, its highest dosage.

22. An estimated 6,000,000 people worldwide, including 700,000 Americans, have been prescribed Baycol for use everyday. Baycol is sold outside the United States under the name Lipobay.

23. In 2000, sales of Baycol exceeded $550 Million and Bayer predicted that this year's sales would top $900 Million.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

24. On January 16, 1998, *The Medical Letter* (which provides unbiased reviews of new drugs), stated that the "Effects of Cerivastatin on morbidity and mortality from coronary heart disease remain to be established." Further, in its conclusion, it stated "Cerivastatin in presently recommended dosages is less expensive but appears to be less effective than maximum FDA-approved doses of some other HMG-CoA reductase inhibitors. Until the safety and effectiveness of higher doses of Cerivastatin have been determined, the more effective older drugs are preferred."

25. On January 4, 1999, the FDA announced drug labeling changes for Baycol. The changes included the following:

**WARNINGS:**

**Skeletal Muscle:** Subsection revised (new text in italics)-
"Rare cases of rhabdomyolysis (*some* with acute renal failure secondary to myoglobinuria) have been reported with *Cerivastatin and* other ["HMG CoA reductase inhibitors" deleted] *drugs in this class.*"

**PRECAUTIONS:**

**Other Concomitant Therapy:** Subsection deleted-
"Although specific interaction studies were not performed, in clinical studies, Cerivastatin sodium was used concomitantly with angiotensin-converting enzyme (ACE) inhibitors, beta-blockers, calcium-channel blockers, diuretics, and nonsteroidal anti-inflammatory drugs (NSAIDs) without evidence of clinically significant adverse interactions."

**ADVERSE REACTIONS:**

**Post-Marketing Adverse Event Reports** (new subsection):
"The following events have been reported since market introduction. While these events were temporally associated with the use of Baycol, a causal relationship to the use of Baycol cannot be readily determined due to the spontaneous nature of reporting medical events, and the lack of controls: hepatitis, myositis, rhabdomyolysis, some with associated renal failure (most cases involved concomitant Gemfibrozil), urticaria, angioedema, visual disturbance, blurred vision."

26. On October 25, 1999, the Division of Drug Marketing, Advertising, and Communications (DDMAC), of the FDA, notified Bayer, that it "[h]as become aware of

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

promotional material for Baycol (Cerivastatin sodium) that is false, lacking fair balance, or otherwise misleading." DDMAC also stated that "[t]he dissemination of this material by Bayer Corporation (Bayer) and/or their agents, violates the Federal Food, Drug, and Cosmetic Act and its implementing regulations."

27. On May 21, 2001, a "Dear Health Care Professional" Letter was distributed. Therein, it states "[i]n December 1999, Bayer Corporation changed the Baycol prescribing information to include a contraindication with Gemfibrozil. **The combined use of Cerivastatin and Gemfibrozil is contraindicated due to a risk for rhabdomyolysis and concurrent use should not occur under any circumstances.**"

28. The 2000 edition of the PDR listing for Baycol was modified under Skeletal Muscle, to state the following: "The combined use of Cerivastatin and Gemfibrozil should be avoided unless the benefit of further alterations in lipid levels is likely to outweigh the increased risk of this drug complication."

29. The 2001 edition of the PDR listing for Baycol was once again modified under Skeletal Muscle to state the following: "The combined use of Cerivastatin and Gemfibrozil is contraindicated due to a risk for rhabdomyolysis (see Contraindication)."

30. On July 16, 2001, France's drug control agency, AFSSAPS, issued a warning of problems related to Baycol after learning that there were three reported deaths in Spain.

31. On August 8, 2001, the FDA announced that Bayer voluntarily withdrew Baycol from the U.S. market in light of 31 reported cases of death due to severe rhabdomyolysis in association with the use of Baycol. In addition to the 31 American deaths, the FDA has reports of at least 9 other related deaths in foreign countries. The latest report links Baycol/Lipobay to 52 deaths worldwide.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

32. On August 9, 2001, Noel Wathion, head of European Medicines Evaluation Agency ("EMEA") stated that 480 reports of rhabdomyolysis had been received globally from patients taking Baycol.

33. The German Government has criticized Bayer AG claiming that said Defendant waited too long to advise patients and their health care providers of the dangers of Baycol, choosing instead to first inform its shareholders about its withdrawal.

34. On or about August 23, 2001, Bayer confirmed a German Government report that Baycol was linked to 1,100 cases of muscle weakness.

35. On or about August 23, 2001, Bayer withdrew Baycol/Lipobay from Japan.

36. Health Canada has received reports of 32 cases of serious illness associated with the use of Baycol, including 10 cases of kidney failure and at least one death.

37. In or about 1999, Defendant Williams prescribed Plaintiff 600 mg of Lopid (Gemfibrozil) twice daily.

38. Thereafter, in December 2000, while leaving Plaintiff on the above Lopid dosage, Defendant Williams prescribed Plaintiff Baycol at .4mg once daily.

39. Thereafter, in or about June, 2001, Defendant Williams increased Plaintiff's Baycol dosage to .8 mg per day while continuing to prescribe the above Lopid dosage.

40. Plaintiff took these prescriptions as directed until approximately August 2001 when she was diagnosed with rhabdomyolysis.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Products (Strict) Liability**

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

41. Plaintiff restates and realleges paragraphs 1 through 40 of this Complaint and in addition, states matters as set forth below:

42. The Pharmaceutical Defendants Bayer, Bayer, A.G., and GSK were engaged in the business of manufacturing, creating, designing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning, distributing, prescribing and/or filling Baycol, which they sold and distributed throughout the world, including Williamson County, Tennessee, to the Plaintiff.

43. Plaintiff was using Baycol in a manner for which it was intended and/or in a reasonably foreseeable manner.

44. Baycol was expected to and did reach the Plaintiff without substantial change in its condition as manufactured, created, designed, tested, labeled, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

45. Plaintiff was not aware of, and reasonably could not have discovered, the dangerous nature of Baycol.

46. Defendants' Baycol increased the risks of rhabdomyolysis upon consumption, and therefore constitutes a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and the Defendants' misrepresentations and inadequate fact disclosures to the Plaintiff.

47. As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, packaging, marketing, selling, advertising, prescribing, filling, warning and otherwise distributing Baycol into commerce, Plaintiff has suffered serious and permanent physical injury, including rhabdomyolysis and has suffered compensatory damages in an amount to be proven at trial.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

48. Defendants, therefore, are strictly liable to the Plaintiff. In addition, Defendants' conduct was willful, reckless and posed a substantial risk of serious injury and/or death which entitles Plaintiff to punitive damages in the maximum amount allowed by law.

49. All of the Defendants are jointly and severally liable to the Plaintiff for all general, special and punitive damages as well as for all equitable relief to which the Plaintiff may be entitled.

**COUNT II**
**Negligence (As To the Pharmaceutical Defendants)**

50. Plaintiff restates and realleges paragraphs 1 through 49 of this Complaint and in addition, states matters as set forth below:

51. The Pharmaceutical Defendants owed a duty to the Plaintiff to use reasonable care in the manufacturing, creating, designing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing Baycol to be prescribed by healthcare professionals for the purpose for which it was intended.

52. Defendants breached said duty and are guilty of one or more of the following careless and negligent acts and/or omissions:

a. Failed to adequately and properly test and inspect Baycol so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

b. Failed to utilize and/or implement a reasonably safe design in the manufacture of Baycol;

c. Failed to manufacture Baycol in a reasonably safe condition for which it was intended;

d. Failed to adequately and properly warn Plaintiff before her purchase of Baycol of the risks of complications when used in the manner for which it was intended;

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

e. Failed to adequately and properly "warn" Plaintiff before her purchase of Baycol of the risks of diseases when used in the manner for which it was intended;

f. Failed to adequately and properly label Baycol so as to "warn" the Plaintiff of the risk of complications, including, but not limited to, rhabdomyolysis and possible death.

g. Manufactured Baycol which constituted a hazard to health;

h. Manufactured Baycol which caused adverse side effects;

i. Misrepresented to the market worldwide, including patients and health care professionals, the effectiveness and safety of Baycol;

j. Provided mixed messages to the market worldwide, including patients and health care professionals, by use of its sales force and promotions regarding the potential benefits, effects, risks and dangers that could result from the use of Baycol, including, but not limited to concurrent/contraindication between it and Gemfibrozil and other medications;

k. Failed to properly protect the consumers by withdrawing Baycol from the market sooner than August 8, 2001, despite repeated reports of severe physical injury and death attributable to Baycol; and,

l. Were otherwise careless and negligent.

53. As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning, prescribing and otherwise distributing Baycol in the marketplace, Plaintiff suffered severe physical injury and is entitled to special and compensatory damages, jointly and severally against the Defendants, in an amount in an amount which will be proved at trial.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

54. Defendants' conduct was willful, reckless and posed a substantial risk of serious injury and/or death which entitles Plaintiff to punitive damages in the maximum amount allowed by law.

**COUNT III**
**Negligence Per Se (As To All Defendants With Exception of Williams)**

55. Plaintiff restates and realleges paragraphs 1 through 54 of this Complaint and in addition, states matters as set forth below:

56. Defendants had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Baycol.

57. Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law and other applicable laws, statutes and regulations. This was established by DDMAC in its letter to Bayer dated October 25, 1999. Despite this notification, Defendants continued to violate the law in its manufacture, promotion and selling of Baycol.

58. Plaintiff as a purchaser and consumer of Baycol, was within the class of persons the statutes and regulations described above are designed to protect, and Plaintiff's injuries are the type of harm these statutes are designed to prevent.

59. Defendants' acts and omissions constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act and constitutes a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under the theory of negligence per se.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

60. Defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendants negligent per se:

a. The labeling lacked adequate information on the use of the drug Baycol [21 C.F.R. §201.56(a) and (d)];

b. The labeling failed to provide adequate warnings of severe and disabling medical conditions including without limitations, muscle pain, weakness, fatigue, tenderness, malaise, fever, dark urine, joint pain, nausea, vomiting, kidney failure, rhabdomyolysis, and death as soon as there was reasonable evidence of their association with the drug [21 C.F.R. §201.57(e)];

c. There was inadequate information for patients for the safe and effective use of Defendants' drug [21 C.F.R. §201.57(f)(2)];

d. There was inadequate information regarding the unique and special care to be exercised by the doctor for safe and effective use of Baycol [21 C.F.R. §201.57(f)(1)]; and,

e. The labeling was misleading and promotional [21 C.F.R. §201.56(b)].

61. As a result of the violations of the statutes described above, Plaintiff suffered injuries, including potentially fatal rhabdomyolysis and damages as alleged herein for which Defendants are jointly and severally liable.

**COUNT IV**
**Medical Malpractice (As To Defendant Williams)**

62. Plaintiff restates and realleges paragraphs 1 through 61 of this Complaint and in addition, states matters as set forth below:

63. Defendant Williams, who holds himself out as a doctor of osteopathic medicine, treated the Plaintiff. Williams, in or about 1999, increased Plaintiff's previously prescribed

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

Lopid to 600 mg twice daily. On or about December 2000, in addition to Lopid, Williams prescribed Plaintiff 0.4 mg. of Baycol daily. Thereafter, while leaving Plaintiff on the prescribed Lopid, Williams increased Plaintiff's Baycol dosage to 0.8 mg daily.

64. Williams provided and/or prescribed Baycol to Plaintiff without properly disclosing its dangerous potential, or discussing the risks and benefits of taking the drug.

65. Williams provided and/or prescribed Baycol to Plaintiff without revealing to her that Baycol was not as effective nor had as proven a safety record as other potential alternatives, including other drugs of the same class.

66. Williams knew or should have known that Plaintiff had previously been prescribed Lopid/Gemfibrozil, despite this knowledge as well as published warnings against concurrent treatment issued previously, and the statement that the same was contraindicated by Bayer information in December 1999 and was stated in 2001 edition of the PDR to be contraindicated due to a risk for rhabdomyolysis;. Williams provided and/or prescribed Baycol to the Plaintiff.

67. Thereafter, on or about August 9, 2001, due to Plaintiff's symptoms and injuries, she was diagnosed with rhabdomyolysis.

68. Thus, Defendant Williams is liable to Plaintiff. Plaintiff was a patient of Defendant Williams. As such, he owed her a standard of care in her treatment. By prescribing and/or providing to Plaintiff both Baycol and Gemfibrozil in concurrent treatment his care breached that standard of care due to the prior warnings, and indeed, contraindication as listed in the PDR which every doctor is charged with consulting. The breach of this duty resulted in the exact complication/risk warned of in the published materials, including the PDR, when Plaintiff

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

developed rhabdomyolysis. As such, Defendant Williams is liable to Plaintiff for special, compensatory, and punitive damages in an amount to be proved at trial.

**COUNT V**
**Unjust Enrichment**

69. Plaintiff restates and alleges paragraphs 1 through 68 of this Complaint and in addition, states matters as set forth below:

70. As an intended and expected result of their conscious wrongdoing, the Pharmaceutical Defendants have profited and benefited from the purchases of Baycol by Plaintiff.

71. Defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiff and others, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiff did not receive a product of quality, nature of fitness that had been represented by Defendants or that Plaintiff, as a reasonable consumer, expected.

72. By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff, who is entitled to in equity, and hereby seeks the disgorgement and restitution of Defendants' wrongful profits, revenue and benefits, or the extent, and in the amount, deemed appropriate by the Court; and such other relief as this Court deems just and proper to remedy the Defendants' unjust enrichment, including but not limited to, the imposition of punitive damages in the maximum amount allowed by law.

**COUNT VI**
**Breach of Express Warranty**

73. Plaintiff restates and realleges paragraphs 1 through 72 of this Complaint and in addition, states matters as set forth below:

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

74. The Pharmaceutical Defendants expressly warranted to the market, including Plaintiff, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials to the health care community, that Baycol was safe, effective, fit and proper for its intended use.

75. In using Baycol, Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of the Defendants. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended.

76. As a direct and proximate result of Defendants' breaches of warranties, Plaintiff developed rhabdomyolysis and suffered special, compensatory and punitive damages to be proven at trial.

**COUNT VII**
**Breach of Implied Warranty**

77. Plaintiff restates and realleges paragraphs 1 through 76 of this Complaint and in addition, states matters as set forth below:

78. Prior to the time that Baycol was used by Plaintiff, the Pharmaceutical Defendants impliedly warranted to the market, including the Plaintiff, that Baycol was of merchantable quality and safe and fit for the use for which it was intended.

79. Plaintiff, as a layperson, was unskilled in the research, design and manufacture of Baycol and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using Baycol.

80. Baycol was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

81. As a direct and proximate result of Defendants' breaches of warranties, Plaintiff developed rhabdomyolysis and has suffered special, compensatory and punitive damages in an amount to be proven at trial.

**COUNT VIII**
**Corporate Responsibility:**
**Joint Ventures, Parent/Subsidiaries and/or Successor Corporations**
**(As to All Defendants Except Williams)**

82. Plaintiff restates and realleges paragraphs 1 through 81 of this Complaint and in addition, states matters as set forth below:

83. As a result of their participation in various joint ventures, parent/subsidiary relationships, and/or successor corporations, Defendants are jointly liable to Plaintiff.

84. As a result of their negligent supervision and actual supervision of various joint ventures, parent/subsidiary relationships, and/or successor corporations, Defendants are liable to Plaintiff.

85. As a result of the invalidity of various indemnification agreements, Defendants are liable to the Plaintiff.

86. Defendants are liable to the Plaintiff, as alter egos of their joint ventures, parent/subsidiary relationships, and/or successor corporations.

**COUNT IX**
**Punitive Damages**

87. Plaintiff restates and realleges paragraphs 1 through 86 of this Complaint and in addition, states matters as set forth below:

88. Defendants' conduct and actions or inactions, the awareness of the Defendants of the serious immediate and life-threatening hazard of said medication, and the failure by

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

Defendants to fully disclose and publicize the dangers of said medication, subject Defendants to exemplary damages to the fullest extent of the law.

89. As a direct and proximate result of the conduct of Defendants and the imminent hazard posed to the general public as a result thereof, including the Plaintiff who as a result suffered the life-threatening condition of rhabdomyolysis as well as the accompanying emotional distress, should be awarded, in addition to special and compensatory damages, exemplary damages in the maximum amount allowed by law.

**COUNT X**
**Medical Monitoring**

90. Plaintiff restates and realleges paragraphs 1 through 89 of this Complaint and in addition, states matters as set forth below:

91. Plaintiff has been significantly exposed to proven hazardous substances through the intentional, negligent, or wrongful actions of the Pharmaceutical Defendants.

92. As a proximate result of this exposure, Plaintiff suffers or suffered significantly increased risks of developing serious, latent diseases.

93. That increased risk makes periodic diagnostic medical examinations reasonably necessary.

94. Monitoring and testing procedures exist which make the early detection and treatment of disease possible and beneficial.

95. Defendants' actions render them liable to pay all costs of a comprehensive court-supervised medical monitoring program, to provide diagnostic and treatment services for the benefit of Plaintiff.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

96. As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Baycol in interstate commerce, Plaintiff was and/or is at an increased risk of developing rhabdomyolysis and other processes and has suffered compensatory and punitive damages in an amount to be proven at trial.

## COMBINED PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment against the Defendants in her favor, and to award the following relief:

a. Declare that Baycol is dangerous and defective, and that Defendants are financially responsible for the results thereof;

b. Declare that Defendants must disgorge, all or part of their ill-gotten gains and benefits received from the sale of Baycol, and/or make full restitution to Plaintiff;

c. Determine each Defendant's liability for punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

d. Award compensatory damages for the acts complained of herein, in an amount to be proven at trial;

e. Award special damages for the emotional distress that accompanied the life-threatening injury sustained, as well as for the loss of the enjoyment of life's activities in the future, in an amount to be proven at trial;

f. Award punitive damages in an appropriate amount to protect the Plaintiff and the community as a whole from future actions complained of herein, the amount of which will be proven at trial;

g. Award attorneys' fees and costs, plus interest, as allowed by law.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

h. Order Defendants to fund Court-supervised or Court-approved program to medically monitor Plaintiff and to pay or reimburse the cost of medical treatment of Plaintiff; and

i. Order such other relief, as may be appropriate under the circumstances under the Court's exercise of its equitable jurisdiction and inherent authority in this proceeding.

Respectfully submitted,

Kathryn E. Barnett w/ permission by 2ein

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Kathryn E. Barnett TN Bar #15361
Alistair E. Newbern TN Bar #21618
3319 West End Ave. Suite 600
Nashville, TN 37203
(615) 313-9000
(615) 313-9965 facsimile

Elizabeth J. Cabraser, CB#083151
Richard M. Franco, CB#170970
275 Battery Street, 30th Floor
San Francisco, CA. 94111
(415) 956-1000
(415) 956-1008 facsimile
-and-

William B. Federman, OBA #2853
Stuart W. Emmons, OBA #12281
FEDERMAN & SHERWOOD
2720 First National Center
120 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
(405) 235-1560/(405) 239-2112 facsimile
-and-

A. Daniel Woska, OBA #9900
T. David Hasbrook, OBA #3961
John E. Barbush, OBA #17837
WOSKA & HASBROOK, P.L.L.C.
120 N. Robinson Avenue, Suite 2720
Oklahoma City, Oklahoma 73102

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

(405) 235-1551/(405) 239-2112 facsimile
-and-

Don S. Strong, OBA #13874
G. Stephen Martin, II, OBA #17091
STRONG, MARTIN & ASSOCIATES, P.L.L.C.
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102
(405) 604-7500/(405) 604-7503
**ATTORNEYS FOR PLAINTIFF**

I, Kathryn E. Barnett and my firm, Lieff Cabraser, Heimann & Bernstein LLP are surety for costs accrued in this case.

Kathryn E. Barnett
w/ permission by zem

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests and demands that the claims and rights stated in her above and foregoing Complaint be adjudicated in a jury trial.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

WOSKA & HASBROOK
120 North Robinson, Suite 2720
Oklahoma City, Oklahoma 73102

K KIRKWOOD

VIA CERTIFIED MAIL
BAYER CORPORATION
100 BAYER ROAD
PITTSBURG PA 15205-9741

7000 1670 0006 4257 1443

CERTIFIED MAIL

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

# EXHIBIT 2

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

**Stuart W. Emmons (WBF)**

| | |
|---|---|
| **From:** | Beck, Douglas (SHB) [DBECK@shb.com] |
| **Sent:** | Thursday, April 01, 2004 10:11 AM |
| **To:** | Stuart W. Emmons (WBF); Haydock, Roger; DeShong, Leanne (SHB); Ronald S. Goldser (E-mail) |
| **Cc:** | dss@strongmartin.com; WFLEISHMAN@lchb.com; RFRANCO@lchb.com; darbitblit@lchb.com; kbarnett@lchb.com; William B. Federman (WBF) (AOL); GSM@strongmartin.com |
| **Subject:** | RE: MDL Withholding Issue Re Diane Mason Settlement |

S.M. Haydock:

Contrary to Mr. Emmons recent email, withholding in the Mason and Edwards cases is not effected by PTO 106. PTO 106 dealt with jurisdiction to assess the withholding in cases filed in federal court and not yet transferred to the MDL. The assessment in such cases was initially established by PTO 53, para. 2(b). Pursuant to PTO 106, PTO 53 was amended by PTO 113, which changed only the language of para. 2(b) of PTO 53.

In both Mason and Edwards, the basis for withholding, if any, is the "involvement" of a PSC law firm in representing the claimant, in this case by filing the Complaint. The basis for such withholding is established by PTO 53, para. 2(e). A withholding based upon involvement by a PSC law firm was not addressed by PTO 106 and PTO 113 did not change or amend para. 2(e) of PTO 53.

Jurisdiction to assess the withholding in cases where a PSC firm is involved is proper because the PSC law firms, including Lieff, have voluntarily submitted to the jurisdiction of the MDL for their cases.

As such, only one issue presented here. If the fact Lieff, a PSC law firm, filed claimant's Complaint is sufficient "involvement" to warrant an assessment under PTO 53, para. 2(e), then jurisdiction is proper because Lieff has voluntarily submitted to jurisdiction in the MDL. If such action by Lieff is not sufficient "involvement" to fall under PTO 53, para. 2(e), then there is no other basis for withholding and the jurisdictional issue is moot.

While Bayer continues to take no affirmative position on whether having a PSC law firm file the complaint is sufficient to warrant withholding under PTO 53, para. 2(e), Bayer notes this issue was decided in the Edwards challenge in favor of withholding.

Doug Beck
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 559-2106 Phone
(816) 421-5547 Fax

-----Original Message-----
From: Stuart W. Emmons (WBF) [mailto:SWE@federmanlaw.com]
Sent: Wednesday, March 31, 2004 10:53 AM
To: Haydock, Roger; Beck, Douglas (SHB); DeShong, Leanne (SHB); Ronald S. Goldser (E-mail)
Cc: dss@strongmartin.com; WFLEISHMAN@lchb.com; RFRANCO@lchb.com; darbitblit@lchb.com; kbarnett@lchb.com; William B. Federman (WBF) (AOL); GSM@strongmartin.com
Subject: RE: MDL Withholding Issue Re Diane Mason Settlement

Dear MR. Haydock,

This e-mail serves as Dianne Mason's response to Bayer's request that you require Ms. Mason and her attorneys to pay as an MDL assessment 6% of the $100,000 in proceeds Ms. Mason received from the settlement of her lawsuit against Bayer.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

At the time the lawsuit was settled it was pending in the Circuit Court of Tennessee. lawsuit could not have been removed to federal court because it involved purely state claims between non-diverse plaintiffs and defendants. See Mason Complaint, attached to Bayer's 3/16/04 e-mail. The Complaint was signed by the Lieff Cabraser law firm and thus Bayer was aware of Lieff Cabraser's involvement in the case, which by the way as noted by Lieff Cabraser in its 3/16/04 e-mail, involved only filing the Complaint as a courtesy to Mason's counsel. The Mason settlement proceeds from which Bayer requests you make the assessment have long since been dispersed.

In any event the Court simply does not have jurisdiction to grant the request of Bayer and the PSC which has joined in Bayer's request. PTO No. 106 (attached hereto) is dispositive of the issue. In PTO No. 106 Judge Davis vacated Assessment Decision No.15. In Assessment Decision No. 15 the Special Master overruled a plaintiff's objection to Bayer's withholding of 6% of the proceeds from the plaintiff's settlement with Bayer. Although the plaintiff's case was pending in the United States District Court for the Northern District of Texas it had not been transferred to the MDL Court. Judge Davis found that the MDL Court lacked jurisdiction to make the 6% assessment.

In the present case the facts are even more favorable for Mason than they were for the plaintiff in PTO No. 106. The Mason case was pending in state court at the time of the settlement. It did not involve federal claims or diverse parties and federal subject matter jurisdiction was wholly absent. "A transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred." In re Showa Denko K.K. L-Tryptophan Products Liability Litigation -II, 953 F.3d 162, 165 (4th Cir. 1992); see also PTO No. 106. Accordingly, Bayer's request should be denied.

Finally, Bayer and the PSC have cited Assessment Decision No. 30 in support of their request that the Special Master order Mason and her attorneys to pay the 6% assessment. In Assessment Decision No. 30, you ruled that the Betty Edwards case was subject to the MDL assessment. The facts of the Edwards case are the same as those in the Mason case. In light of PTO No. 106 it is clear that the ruling in Assessment Decision No. 30 was wrong and that the Court did not have jurisdiction to make the 6% assessment against Edwards. We also served as Counsel for Edwards and take this opportunity to invite you to reconsider Assessment Decision No. 30 in light of Judge Davis' ruling in PTO No. 106. The Court simply lacked jurisdiction to order the Edwards assessment. Moreover, the parties cannot waive subject matter jurisdiction. Continental Insurance Company v. M/V Orsula 354 F.3d 603, 606 n. 1 (7th Cir. 2003).

-----Original Message-----
From: Haydock, Roger [mailto:rhaydock@arb-forum.com]
Sent: Tuesday, March 16, 2004 11:15 AM
To: Beck, Douglas (SHB); DeShong, Leanne (SHB); Ronald S. Goldser (E-mail)
Cc: Stuart W. Emmons (WBF); dss@strongmartin.com; WFLEISHMAN@lchb.com; RFRANCO@lchb.com; darbitblit@lchb.com; kbarnett@lchb.com
Subject: RE: MDL Withholding Issue Re Diane Mason Settlement

Ron: The position of the PSC?

-----Original Message-----
From: Beck, Douglas (SHB) [mailto:DBECK@shb.com]
Sent: Tue 3/16/2004 11:04 AM
To: Haydock, Roger; DeShong, Leanne (SHB); Ronald S. Goldser (E-mail)
Cc: swe@federmanlaw.com; dss@strongmartin.com; WFLEISHMAN@lchb.com; RFRANCO@lchb.com; darbitblit@lchb.com; kbarnett@lchb.com
Subject: MDL Withholding Issue Re Diane Mason Settlement

S.M. Haydock:

An issue concerning the MDL assessment for the settlement of the Diane Mason

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

case has arisen. Bayer settled the Mason case in July 2003 after negotiations with claimant's counsel, Mr. Don Strong (Strong, Martin & Associates, Oklahoma City, Oklahoma). Mr. William Federman (William & Sherwood, Oklahoma City, Oklahoma) was associated claimant's counsel. At the time of the settlement, Bayer's settlement counsel was unaware of any criteria which would have subjected the Mason case to the 6% withholding. The case was filed in Williamson County, TN and has not been removed. The Strong firm and the Federman firm are not PSC firms. Consequently, the Mason case was processed as a Non-MDL case and final payment of the total settlement amount of $100,000 was made in September 2003 to the claimant via Mr. Federman.

After a subsequent settlement with the Strong firm in the Betty Edwards case, Bayer's settlement counsel learned that the PSC firm of Lieff, Cabraser, Heimann & Bernstein appeared on the Mason Complaint, a copy of which is attached for the Court's convenience. At that time, Bayer settlement counsel contacted Mr. Strong to inform him that Bayer believed the Mason case must be assessed pursuant to this Court's orders due to the appearance of a PSC firm on the Complaint and requested Mr. Strong return $6,000 of the settlement monies for deposit in the MDL account. Mr. Strong disagreed and refused to return the requested funds which were erroneously not withheld.

As the Court will recall, the same issue was the subject of a challenge in the Betty Edwards case, where Lieff, Cabraser also appeared on the Complaint. In Assessment Decision No. 30, the Court ruled that the Edwards case was subject to the MDL assessment.

After several discussions with Mr. Strong about this issue, he has indicated he does not intend to return the $6,000 at issue to Bayer for deposit into the MDL account. Pursuant to the MDL Court's Orders, Bayer feels obligated to bring this issue before the Court for resolution. As such, we request the Court instruct the return of the funds at issue for deposit into the account or rule the Mason case is not subject to the MDL assessment.

Doug Beck
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 559-2106 Phone
(816) 421-5547 Fax

<<Mason Complaint.pdf>>

"MMS <shb.com>" made the following
annotations on 03/16/2004 11:05:02 AM

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and /or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

IN THE U.S., please contact:
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
816-474-6550

IN EUROPE, please contact:
Shook, Hardy & Bacon International LLP
25 Cannon Street
London EC4M 5SE
44-020-7332-4500

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

**Stuart W. Emmons (WBF)**

**From:** Arbitblit, Donald C. [DARBITBLIT@lchb.com]
**Sent:** Tuesday, March 16, 2004 11:35 AM
**To:** Haydock, Roger; Beck, Douglas (SHB); DeShong, Leanne (SHB); Ronald S. Goldser (E-mail)
**Cc:** Stuart W. Emmons (WBF); dss@strongmartin.com; Fleishman, Wendy R.; RFRANCO@lchb.com; Barnett, Kathryn E.
**Subject:** RE: MDL Withholding Issue Re Diane Mason Settlement

Dear Special Master Haydock:

This email is in response to Mr. Beck's correspondence, below. I write on behalf of Lieff, Cabraser, Heimann and Bernstein (LCHB), and not on behalf of the PSC, to provide background information that may be relevant to the Special Master's consideration of this matter.

I have investigated the circumstances to the extent possible within LCHB. Based on that investigation, I have determined that LCHB filed two cases in states where LCHB has offices (TN and CA), as a courtesy to the Strong and Federman firms, without any further involvement in the cases. LCHB did not have any written or verbal agreement to share any portion of the fee, nor to do any work on the cases. LCHB was not informed that settlement had occurred until receipt of an email from Bayer's counsel last week. LCHB has not received any portion of the recovery or fee on either case, and has no expectation of receiving a fee.

We would be happy to answer any questions that you may have regarding this matter. I hope this information is helpful.

Respectfully submitted,

Don Arbitblit

-----Original Message-----
From: Haydock, Roger [mailto:rhaydock@arb-forum.com]

Sent: Tuesday, March 16, 2004 9:15 AM
To: Beck, Douglas (SHB); DeShong, Leanne (SHB); Ronald S. Goldser (E-mail)
Cc: swe@federmanlaw.com; dss@strongmartin.com; Fleishman, Wendy R.; RFRANCO@lchb.com; Arbitblit, Donald C.; Barnett, Kathryn E.
Subject: RE: MDL Withholding Issue Re Diane Mason Settlement

Ron: The position of the PSC?

> -----Original Message-----
>
> From: Beck, Douglas (SHB) [mailto:DBECK@shb.com]
>
> Sent: Tue 3/16/2004 11:04 AM
>
> To: Haydock, Roger; DeShong, Leanne (SHB); Ronald S. Goldser (E-mail)
>
> Cc: swe@federmanlaw.com; dss@strongmartin.com; WFLEISHMAN@lchb.com; RFRANCO@lchb.com; darbitblit@lchb.com; kbarnett@lchb.com
>
> Subject: MDL Withholding Issue Re Diane Mason Settlement

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

S.M. Haydock:

An issue concerning the MDL assessment for the settlement of the Diane Mason case has arisen. Bayer settled the Mason case in July 2003 after negotiations with claimant's counsel, Mr. Don Strong (Strong, Martin & Associates, Oklahoma City, Oklahoma). Mr. William Federman (William & Sherwood, Oklahoma City, Oklahoma) was associated claimant's counsel. At the time of the settlement, Bayer's settlement counsel was unaware of any criteria which would have subjected the Mason case to the 6% withholding. The case was filed in Williamson County, TN and has not been removed. The Strong firm and the Federman firm are not PSC firms. Consequently, the Mason case was processed as a Non-MDL case and final payment of the total settlement amount of $100,000 was made in September 2003 to the claimant via Mr. Federman.

After a subsequent settlement with the Strong firm in the Betty Edwards case, Bayer's settlement counsel learned that the PSC firm of Lieff, Cabraser, Heimann & Bernstein appeared on the Mason Complaint, a copy of which is attached for the Court's convenience. At that time, Bayer settlement counsel contacted Mr. Strong to inform him that Bayer believed the Mason case must be assessed pursuant to this Court's orders due to the appearance of a PSC firm on the Complaint and requested Mr. Strong return $6,000 of the settlement monies for deposit in the MDL account. Mr. Strong disagreed and refused to return the requested funds which were erroneously not withheld.

As the Court will recall, the same issue was the subject of a challenge in the Betty Edwards case, where Lieff, Cabraser also appeared on the Complaint. In Assessment Decision No. 30, the Court ruled that the Edwards case was subject to the MDL assessment.

After several discussions with Mr. Strong about this issue, he has indicated he does not intend to return the $6,000 at issue to Bayer for deposit into the MDL account. Pursuant to the MDL Court's Orders, Bayer feels obligated to bring this issue before the Court for resolution. As such, we request the Court instruct the return of the funds at issue for deposit into the account or rule the Mason case is not subject to the MDL assessment.

Doug Beck
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 559-2106 Phone
(816) 421-5547 Fax

<<Mason Complaint.pdf>>

"MMS <shb.com>" made the following
annotations on 03/16/2004 11:05:02 AM

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and /or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

IN THE U.S., please contact:

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
816-474-6550

IN EUROPE, please contact:
Shook, Hardy & Bacon International LLP
25 Cannon Street
London EC4M 5SE
44-020-7332-4500

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, send an email to postmaster@lchb.com

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

# EXHIBIT 3

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

**In re: Baycol Products Litigation**
**MDL No. 1431**

**Special Master PTO 78**
**Assessment Decision No. 34**
**Mason Decision**

Bayer has submitted a Request seeking a determination regarding the application of the 6% MDL holdback to the Diane Mason Case. Stuart Emmons of Federman & Sherwood submitted responses on behalf of Diane Mason. Donald Artbitblit submitted a response on behalf of Lieff, Cabraser, Heimann & Bernstein. Ronald Goldser submitted a response on behalf of the Plaintiffs Steering Committee, and Douglas Beck submitted replies on behalf of Bayer.

Case Summary

This state court action was originally filed in Williamson County, Tennessee, and was not removed to federal court. The following lawyers and law firms appear on the complaint representing Diane Mason:

> Kathryn E. Barnett and Alistair E. Newbern of Lieff, Cabraser, Heimann & Bernstein, LLP (Nashville, Tennessee Office);
>
> Elizabeth J. Cabraser and Richard M. Franco of Lieff, Cabraser, Heimann & Bernstein, LLP (San Francisco, California Office);
>
> William B. Federman and Stuart W. Emmons of Federman & Sherwood (Oklahoma City, Oklahoma);
>
> A. Daniel Woska, T. David Hasbrook and John E. Barbush of Woska & Hasbrook, PLLC (Oklahoma City, Oklahoma); and
>
> Don S. Strong and G. Stephen Martin, II of Strong, Martin & Associates, PLLC (Oklahoma City, Oklahoma)

In July, 2003, Diane Mason and Bayer entered into a settlement of this case. Lawyers from Strong, Martin & Associates and from Federman & Sherwood [collectively, Oklahoma City Lawyers] negotiated a settlement for Ms. Mason. No MDL assessment was held back as Bayer's settlement counsel was unaware of any criteria that would have subjected this settlement to the MDL withholding. Bayer paid the total settlement amount in September, 2003.

Subsequently, Bayer's settlement counsel learned that the PSC law firm of Lieff, Cabraser, Heimann & Bernstein [Lieff, Cabraser] was counsel for Ms. Mason. Bayer advised the lawyers for Ms. Mason of the $6,000 MDL assessment, and they refused to return the funds.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

Federman & Sherwood assert that the Oklahoma City Lawyers represented Diane Mason and that the Lieff, Cabraser law firm signed the Tennessee state court complaint only as a "courtesy." Lieff, Cabraser admits that its lawyers had no "involvement" in the case other than signing the complaint as a "courtesy" to the Oklahoma City Lawyers, that it did not have any written or verbal agreement to share any portion of the fee, that its lawyers did not do any work on the case, that its lawyers were not involved in the settlement, that it did not receive any fee for the settlement, and that it has no expectation of receiving a fee.

The Lieff, Cabraser law firm has and had at the time of the filing of the state court complaint an office in Tennessee. Two Lieff, Cabraser lawyers licensed to practice in Tennessee signed the complaint. None of the other law firms or lawyers listed on the complaint was or is licensed to practice in Tennessee.

At the time of the Diane Mason settlement, the Lieff, Cabraser firm was listed as one of Ms. Mason's law firms, and no notice or request to withdraw as her attorneys was ever filed. The Lieff, Cabraser is very actively engaged in this MDL, has contributed to the common benefit of all parties, and has been involved in settlements of Baycol cases.

The position of Bayer is that pursuant to PTO 53 it would have withheld the MDL 6% assessment had it known that the Lieff, Cabraser firm represented Diane Mason. The position of the Oklahoma City Lawyers is that no assessment need have been withheld and that this Court does not have jurisdiction over them because they filed a case in state court that was not removed and have never submitted to the jurisdiction of this Court. The position of the PSC is that an assessment is warranted because PTO 53 requires a withhold in these circumstances. Lieff, Cabraser did not in its submission state whether or not an assessment should have been made.

<u>Decision</u>

The issue that all parties agree on is whether PTO 53 mandates a holdback in this case. Paragraph 2 of PTO 53 states that an assessment applies:

> "e) in all cases of Plaintiffs lawyers and their law firms who are a member of the PSC or a member of the committee of the PSC."

The Lieff, Cabraser law firm was and is a member of the PSC, and none of the other law firms representing Ms. Mason are members or serve on a PSC committee. The Oklahoma City Lawyers argue that there was insufficient "involvement" by the Lieff, Cabraser firm in this case requiring a holdback. The PSC argues that a previous decision by this Special Master (The Betty Edwards Decision, Assessment Order No. 29) held that an assessment applies in these circumstances.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

In Edwards, as in this case, Lieff, Cabraser was a law firm appearing on the state court complaint (which was not removed to federal court) and represented the plaintiff. Unlike in the Edwards case, the Lieff, Cabraser firm in this case submitted a factual summary of its representation of Diane Mason. It claims it did nothing but permit the names of its lawyers to appear on the Tennessee state court complaint as a "courtesy" to the other law firms representing Ms. Mason who were unlicensed in Tennessee.

PTO 53 explicitly states that a holdback is to be assessed in all cases of a PSC law firm member. Subdivision (e) does not establish the extent of the "involvement" of a law firm in a case, nor does it provide an exception if a law firm signs a complaint out of "courtesy." Accordingly, an assessment is warranted in this case and should have been withheld.

Further, the rules of civil procedure for both state and federal courts impose initial and continuing obligations on lawyers who sign pleadings. They are to, among other responsibilities, certify that the complaint is supported by facts and law and that it is not interposed for any improper purpose.

The rules of professional conduct also require lawyers who hold themselves out as representing a client to conduct themselves accordingly. They are to, among other obligations, assure that a plaintiff receives an appropriate settlement or a fair resolution of a claim. These rules provide that lawyers and a law firm who sign a pleading and who hold themselves out as attorneys representing a plaintiff are responsible to that plaintiff.

In this case, Lieff Cabraser lawyers cannot avoid that obligation by claiming they knew nothing about the case and were only involved as a courtesy to lawyers who were not licensed to practice in the state where the complaint was filed. Nor does a lack of involvement relieve the Lieff, Cabraser law firm of its obligations under PTO 53.

The remaining issue is which law firm is to replace the $6,000. The Lieff, Cabraser firm is responsible for the assessment and it is to pay $6,000 to the Common Benefit Fund. Whether or not the Oklahoma City Lawyers should return the $6,000, it is the obligation of a PSC member law firm to comply with PTO 53.

Therefore, it is ORDERED that Lieff, Cabraser, Heimann & Bernstein pay $6,000 to the MDL Common Benefit Fund within 15 days of the date of this Order and notify Bayer and this Special Master of the payment.

**April 29, 2004** **/s/ Roger S. Haydock**

**Special Master**

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

# EXHIBIT 4

E-SERVED
05/17/04
04:36 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Baycol Products Litigation MDL No. 1431

This Document Relates to: Pretrial Order No. 106

Kathy Moreno et al. v. Bayer Corp. et al., U.S. District Court, Northern District of Texas, Dallas Division, Case. No. 3-03-CV1197-K;

Emma Lou Stemen et al. v. Bayer Corp. et al., U.S. District Court, Northern District of Texas, Dallas Division, Case No. 3-03-CV1198-D.

---

Craig P. Niedenthal, Cory, Watson, Crowder & Degaris, P.C. for and on behalf of Plaintiffs.

Charles S. Zimmerman, Ronald Goldser, Robert R. Hopper, Zimmerman Reed P.L.L.P. and Richard A. Lockridge, Hugh V. Plunkett, Robert K. Shelquist, and Yvonne M. Flaherty, Lockridge Grindal Nauen, P.L.L.P. for and on behalf of the Plaintiffs' Steering Committee.

Peter W. Sipkins, Dorsey & Whitney LLP, for and on behalf of Bayer Corporation.

---

This matter is before the Court upon the Plaintiffs' motion to vacate alternative appeal of Special Master PTO 78, Assessment Decision No. 15.[1]

Pursuant to the terms of PTO No. 53[2], for certain defined cases, prior to a any claim payment to a plaintiff, defendants shall deduct 6% percent of such payment to be

[1]The Plaintiffs' Steering Committee asserts that this motion is not timely under Fed.R.Civ.P. 53. Prior to filing the motion, this Court granted Plaintiffs permission to file the instant motion according to the proposed amendments to Rule 53 that became effective December 1, 2003.

[2]PTO No. 53 is a stipulated order that resulted from negotiations involving the PSC, Defendants and state lawyers on the Liaison Advisory Committee.

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

paid into the MDL 1431 Fee and Cost Account. PTO No. 53, ¶ 3. The cases to which the terms of PTO No. 53 are listed in paragraph 1, including all cases transferred to this MDL by the Judicial Panel on Multidistrict Litigation ("JPML"), and any case filed in federal court and not yet transferred by the JPML. Id. ¶ 1.

The Plaintiffs referenced above filed their cases in the United States District Court, Northern District of Texas in May 2003. Settlements were reached in both cases in July 2003. At the time of settlement, neither case had been transferred to the District of Minnesota by the JPML. Bayer notified Plaintiffs that the settlements were subject to the 6% holdback as provided in PTO No. 53. Plaintiffs thereafter submitted an objection to the holdback to Special Master Haydock, pursuant to the terms of PTO No. 78. Special Master Haydock thereafter found Plaintiffs' challenge to be without merit, as PTO No. 53 specifically provided that holdbacks apply to cases filed in federal court, even though the case was settled prior to transfer to the MDL proceedings. Plaintiffs now appeal Special Master Haydock's decision to this Court pursuant to Fed. R. Civ. P. 53.

In support of the appeal, Plaintiffs argue that although their cases were originally filed in federal court, the cases had not been the subject of a conditional transfer order at the time of settlement. As such, this Court never acquired jurisdiction over these cases, and the terms of PTO No. 53 should not apply.

Whether or not a transferee court in multidistrict litigation has jurisdiction to assess fees and costs against plaintiffs who filed their cases in state or federal court, and whose cases had not yet transferred to the MDL proceeding, was addressed by the Fourth Circuit Court of Appeals in In re: Showa Denka K.K. L-Trypotophan Products Liability

E-SERVED 05/17/04 04:36 PM ET Baycol MDL 1431

Litigation-II, 953 F.2d 162 (4th Cir. 1992).

> While § 1407 provides for a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court. As in any other case, a transferee court's jurisdiction is limited to cases and controversies between persons who are properly parties to the cases transferred . . ." Id. at 165-166.

Therefore, the court reasoned, a transferee court does not have jurisdiction to assess fees and costs against parties whose cases had not been transferred pursuant to § 1407. Id. at 166. See also, Hartland v. Alaska Airlines, 544 F.2d 992 (9th Cir. 1976); In re: Linerboard Antitrust Litigation, 292 F. Supp.2d 644, 664 (E.D. Pa. 2003(order sequestering funds from settlements in tag-along cases should not extend to nontransferred cases); In re: Pantopaque Products Liability Litigation, 1996 U.S. Dist. LEXIS 17144 * 15 (D. N. J. 1996). Neither the Plaintiffs' Steering Committee or Bayer Corporation provided the Court any contrary authority.

As it appears this Court does not have jurisdiction to order a holdback in cases not transferred to this Court, PTO No. 53 must be amended to exclude cases filed in federal court and not transferred to this court by the JPML. Plaintiffs' motion will be granted, and the Special Master's Assessment Decision No. 15 is vacated.

IT IS HEREBY ORDERED that Plaintiffs' Motion to Vacate Alternative Appeal of Special Master PTO 78, Assessment Decision No. 15 is GRANTED and Assessment Decision 15 is VACATED.

Date:

Michael J. Davis
United States District Court