E-SERVED
07/13/04
06:17 PM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**In re: BAYCOL PRODUCTS LITIGATION** | **MDL No. 1431 (MJD/JGL)**

**This Document Relates To:**

**All Actions**

---

**DEFENDANTS' MEMORANDUM IN**
**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

## INTRODUCTION

Case-specific discovery, following plaintiffs' own motion, was stayed in these MDL cases. Plaintiffs nevertheless have moved to compel defendants to provide a list of former sales representatives, for the purpose of contacting, interviewing, and deposing defendants' former employees. Defendants already have produced documents and tapes pertaining to sales representative training and marketing information, and the PSC already has deposed Bayer and GSK marketing personnel. In short, plaintiffs already have obtained broad discovery concerning sales representatives' training and practices. The demand for a list of approximately six thousand names has nothing to do with general discovery, and would lead, at best, only to information relevant to specific cases. Plaintiffs' demand for a head-start on case-specific discovery is neither fair nor reasonable, and the information they seek is far broader than is necessary or appropriate. The motion to compel should be denied.

## I. PROCEDURAL AND FACTUAL BACKGROUND

In PTO 6, this Court issued a document preservation order, requiring defendants to preserve potentially relevant documents. *See* PTO 6 (Mar. 4, 2002) at ¶ 1(a). Later, this Court issued a Supplemental Order for Preservation of Records (Oct. 17, 2003), which required defendants to mail to "non-employees" a copy of the document preservation order. *See id.* at ¶ 3.

E-SERVED
07/13/04
06:17 PM ET
Baycol MDL 1431

Following subsequent briefing, this Court clarified that defendants were to contact all former employees, regardless of their status during the pendency of the MDL. *See* Order (Mar. 10, 2004). Defendants complied with each of these Orders. In ensuring that this Court's Orders were satisfied, defendants sent letters to over 1,600 former Bayer employees and over 4,000 former GSK employees who had served as sales representatives. Many of these former Bayer and GSK employees had never detailed Baycol, but were included to ensure that no one was missed.

By their terms, the document preservation orders were a prophylactic measure, and were not issued based on any actual loss of evidence or act of spoliation. Indeed, as this Court is aware, defendants in this MDL have cooperated with massive discovery requests pursued by plaintiffs. Defendants have responded to hundreds of interrogatories and produced millions of pages of documents. Indeed, Bayer Corporation alone has produced in excess of five million pages of documents, Bayer AG has produced approximately 2.7 million pages of documents, and GSK has produced over 1.2 million pages of documents. Scores of defendants' representatives have been deposed, both in the United States and in Europe.

Much of the information provided by defendants directly pertains to marketing and sales force training issues, including video and audio tapes of marketing presentations and sales training, as well as the depositions of a number of defendants' current and former marketing personnel. The depositions already taken by plaintiffs (some of which took three days to complete) include:

- Joseph Carofano (Bayer Corporation's Vice President of Global Strategic Marketing)
- Carol Clark (Bayer Corporation's Deputy Director of Marketing)
- Donna Conder-Flanery (Bayer Corporation's Vice President of Business Operations and Analysis)

E-SERVED
07/13/04
06:17 PM ET
Baycol MDL 1431

- Tig Conger (Bayer Corporation's Vice President of Anti-Infectives)
- Karen Dawes (Bayer Pharmaceutical Senior Vice President of Sales and Marketing)
- Richard Goodstein (Bayer Corporation's Vice President of Scientific Relations)
- Steven Hanceford (Bayer Corporation's Director of Internal Managed Markets)
- Eric Pauwels (Bayer Corporation's Vice President – Global Strategic Marketing)
- Laurie Simpson (Bayer Corporation's Project Manager)
- Patricia Stenger (Bayer Corporation's Acting Director Global Scientific Affairs)
- Mitchell Trujillo (Bayer Corporation's Director of Scientific Affairs)
- Enrique N. Zalamea (Bayer Corporation – Marketing)
- David Brand (GSK Vice President of U.S. Metabolic and Endocrine Marketing)
- Rachel Hlay (GSK Manager; Marketing Analysis and Consulting Services)
- Richard King (GSK Former Product Director for Cardiovascular Products)
- David Pernock (GSK Senior Vice President Sales and Marketing)
- Siobhian Quinn-Robinson (GSK Senior Product Manager for Baycol)
- Gayle Rienhart (GSK Former Product Manager for Baycol)
- Richard Van Thiel (GSK Former Product Director for Baycol)

Plaintiffs recently raised an informal demand for a copy of the correspondence provided to former employees, *see* E-mail from Ronald S. Goldser to Adam Hoeflich, Susan Weber, and Fred Magaziner (Apr. 29, 2004) ("Goldser e-mail"), att'd as exhibit to Plaintiffs' Motion to Compel. Counsel for Bayer Corporation provided a copy of the form letter sent to former employees. *See* Letter from Douglas R. Marvin to Ronald S. Goldser (May 3, 2004), enclosing copy of Letter from Brian P. Conway to Former Bayer Employees (Mar. 29, 2004), att'd (with enclosure) as exhibit to Plaintiffs' Motion to Compel. Contrary to plaintiffs' incorrect assertion that counsel for GSK did not respond to plaintiffs' informal request, *see* Plaintiffs' Motion to

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

Compel at 1 n.1, counsel for GSK also responded to plaintiffs' informal request. *See* E-mail from Fred Magaziner to Ronald Goldser (May 24, 2004), enclosing Mar. 31, 2004 form letter from James K. Grasty to Former GSK Employees, att'd as Defendants' Exhibits A & B.

Boot-strapping onto the preservation order, plaintiffs also informally demanded a mailing list of the over 1,600 former Bayer employees and over 4,000 GSK employees to whom the letters were sent. *See* Goldser e-mail. This request had nothing to do with the preservation of documents, and rather, as plaintiffs admit in their brief, was an effort by plaintiffs to engage in *ex parte* communications with defendants' former employees. *See* Plaintiffs' Motion to Compel at 2. The only relevant information these individuals might have would pertain to specific cases, and has no bearing on general issues in this MDL. Case-specific discovery had been stayed, at plaintiffs own request. *See* PTO 89 (Jul. 18, 2003) at ¶ 6. Even with respect to case-specific discovery, only one or two individuals among the almost 6,000 sales representatives might have information relevant to any given plaintiff's case. Accordingly, defendants declined to provide this case-specific information.

## II. PLAINTIFFS' MOTION TO COMPEL SEEKS CASE-SPECIFIC DISCOVERY AND SHOULD BE DENIED AS PREMATURE AND OVERBROAD

### A. Case-Specific Discovery Has Been Stayed at Plaintiffs' Request

Plaintiffs' discovery is premature at best, and clearly overbroad. This Court stayed case-specific discovery in most MDL cases. *See* PTO 89 (Jul. 18, 2003) at ¶ 6. PTO 89 established a trial plan whereby all Minnesota resident cases originally filed in the District of Minnesota and 200 additional Program Cases would be prepared for trial. Full discovery was permitted in those cases, while case-specific discovery in all other matters was stayed. Subsequently, every one of the Minnesota cases and almost all of the Program Cases were voluntarily dismissed by plaintiffs; some in response to settlements, others simply because plaintiffs did not wish to

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

pursue their cases. Only four program cases remain pending. In none of these cases have plaintiffs sought case-specific discovery regarding sales representatives.

In light of this recent experience, it is no secret that a large number of cases in this MDL, and perhaps the vast majority, have little merit and by the plaintiffs' choosing will not proceed to case-specific discovery. This Court recently entered PTO 114, which will require plaintiffs to produce individual expert reports. It is unknown how many plaintiffs will comply with PTO 114, and how many will dismiss their cases to avoid doing so. When the time is ripe, when the field has been narrowed through the plaintiffs' self-selection process, then case-specific discovery can proceed in an appropriate and cost-effective manner.

Plaintiffs breeze over the issue of timing with barely a sentence in their brief, declaring without explanation that case-specific discovery is "a red herring." Plaintiffs' Motion to Compel at 2. Over a year ago, defendants sought to pursue case-specific discovery in MDL cases, including the depositions of individual plaintiffs. The PSC sharply opposed case-specific discovery. *See* Memorandum in Support of Plaintiffs' Motion for Protective Order (Jul. 3, 2003) at 1-2. According to plaintiffs:

> With common discovery underway, it makes little sense to conduct case-specific discovery that would detract from the ability of the parties to fulfill the common discovery goals of this MDL. Resources that are currently dedicated to common discovery would be diverted to case-specific depositions. Truly case-specific discovery, like individual plaintiff depositions, is best left until after remand.

*Id.* at 1. Indeed, during oral argument on this issue, plaintiffs' counsel made it clear that the PSC did not want to engage in case-specific discovery at all:

> What should the role of this MDL be and what duty do we have to the courts and to the clients around the country who are looking to us for direction in their cases. Where should the PSC spend their time and money. Should we be spending our time and money chasing down plaintiff fact sheets, finding plaintiffs' depositions to

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

> take? Where is Mrs. Smith? Where is Mrs. Jones? Where is the doctor for Mr. Smith? Where is the doctor for Mr. Jones? Or should we be deciding the issues that apply to all the cases at the same time? I submit the latter.

Tr. of Status Conference (Jul. 15, 2003) at 78 (statements of Charles S. Zimmerman).

Somewhat flippantly, plaintiffs now declare that "Bayer assumes that detailed deposition practice is relevant only to the specifics of an individual case. While that is partly true, that is not exclusively true." Plaintiffs' Motion to Compel at 2. No further explanation is provided of why this is not "exclusively true." To the extent that plaintiffs seek general information, it has already been provided in the 7.7 million page document production. Defendants already have produced the promotional materials provided to sales representatives. Defendants have already produced the training modules for detailing Baycol. Defendants have already provided for depositions the individuals responsible at the managerial level for marketing Baycol and training sales representatives. Individual sales representatives would add little or nothing to the abundant global information already provided. Instead, the only relevant information individual sales representatives would have relates to specific cases. Individual sales representatives who had detailed Baycol could speak of the individual doctors that they contacted. Some of these doctors received promotional materials; some of these doctors received samples of Baycol. Some of these doctors provided samples to individual plaintiffs. But the nature of this information is related exclusively to these specific cases; the detailing of a Texas doctor by a Texas sales representative is irrelevant to a Missouri plaintiff's Missouri doctor who had been contacted by a Missouri sales representative.

Because the information possessed by each former sales representative will, at best, relate only to specific cases, plaintiffs' demands for a list of almost 6,000 names clearly makes little sense. Of the approximately 6,000 former employees plaintiffs contend they wish to contact, a

E-SERVED
07/13/04
06:17 PM ET
Baycol MDL 1431

significant number never detailed Baycol at all – they were included in the mass notification of this Court's preservation orders simply to ensure that no one was missed. Only a fraction of those sales representatives who actually detailed Baycol had contact with doctors who treated plaintiffs in this MDL. Given the ongoing voluntary dismissals and settlements, it is likely that only a very small number had contact with doctors who treated plaintiffs whose cases will continue to the point of case-specific discovery.

When case-specific discovery is permitted, discovery concerning sales representatives should also proceed on a case-specific basis. Defendants will provide to the individual plaintiffs the names of relevant sales representatives; that is, the sales representatives who detailed these plaintiffs' doctors. Permitting discovery of thousands of irrelevant former employees makes no sense, and would be extremely wasteful and burdensome.

Plaintiffs made a strategic decision that they did not want to permit defendants to have access to case-specific discovery. Pursuant to plaintiffs' request, this Court shielded the vast majority of plaintiffs from providing case-specific discovery. Until the Court concludes that the time is ripe for all parties to conduct case-specific discovery, any request for information about specific sales representatives is premature, and even once case-specific discovery begins, such information will only be discoverable in the context of individual cases. Accordingly, plaintiffs' motion should be denied.

**B. Plaintiffs' Demands Would Place a Substantial Burden on Defendants**

Plaintiffs' wave away any possible burden engendered by their request, stating merely that creation of a mailing list should be easy. *See* Plaintiffs' Motion to Compel at 2. This, of course, is not the burden that is at issue. Rather, the burden is the mutual efforts that defendants would be required to undertake were plaintiffs to begin contacting six thousand former

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

employees. *See, e.g.*, *Marvin Lumber and Cedar Co. v. PPG Indus.*, 177 F.R.D. 443, 445 (D. Minn. 1997). As the *Marvin Lumber* court explained:

> The obligation of a party to monitor an opponent's discovery, as allowed by Rule 45 Subpoenas, is no less burdensome or expensive than that demanded by the other methods of formal discovery and, in fact, can be considerably more burdensome and expensive than those forms of discovery which are unquestionably regulated by Rule 16. Frequently, Rule 45 Subpoenas *duces tecum* are served, and enforced, at great distances from the residences of the parties, and from the forum in which the underlying legal proceedings pend, thereby necessitating the expenditure of travel time and money that can be avoided by the employment of other discovery mechanisms.

*Id*. The timing of discovery often determines its burdensomeness. In *Marvin Lumber*, a party had issued subpoenas after the discovery deadline. The court concluded that this alone was sufficient grounds to quash, because the late timing detracted from other matters at hand:

> Moreover, to allow a party to continue with formal discovery--that is, discovery which invokes the authority of the Court--whether in the guise of Rule 45, or any of the other discovery methods recognized by Rule 26(a)(5), after the discovery deadline unnecessarily lengthens discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for Trial, to continued involvement in the discovery, and in the nondispositive motion process we can find no plausible reason to exempt Rule 45 discovery from the time constraints that are applicable to all of the discovery methods recognized by the Federal Rules of Civil Procedure.

*Marvin Lumber*, 177 F.R.D. at 445.

Plaintiffs' demand for a list of 6,000 names, if granted, inevitably would lead to a substantial and unnecessary burden on defendants. Even though most of the former sales representatives would likely have no relevant information, defendants would still be required to match plaintiffs' broad discovery efforts. As explained above, many of the MDL cases likely will be dismissed or settled before case-specific discovery is appropriate. Moreover, many former sales representatives never detailed Baycol at all, and few of those who did will have

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

information relevant to any given plaintiff's case. Rather than permitting plaintiffs and forcing defendants to undertake this massive burden of unfocused shot-gun discovery, this Court should direct that case-specific discovery be case-specific. Sales representative discovery, at an appropriate time, should proceed on a case-by-case basis, limited to the sales representatives having relevant information regarding the individual plaintiff at issue.

### C. Determining Whether Former Employees May Be Contacted Requires a Case-By-Case Analysis

Plaintiffs' principally argue against a position that defendants never raised: that plaintiffs are ethically barred from contacting the ex-employees of a represented party. In making their argument, however, plaintiffs cite a Minnesota court applying the Minnesota Rules of Professional Conduct. *See* Plaintiffs' Motion to Compel at 2 (citing *FleetBoston Robertson Stephens, Inc. v. Innovex, Inc.*, 172 F. Supp.2d 1190 (D. Minn. 2001)). Plaintiffs' reliance on Minnesota law is misplaced. First, it is not clear whether Minnesota law controls whether plaintiffs can contact these former employees, and second, plaintiffs have misinterpreted Minnesota law.

As the very case cited by plaintiffs makes clear, U.S. jurisdictions are divided over whether and under what circumstances a former employee may be contacted by opposing counsel. *Fleet Boston* at 1194-95. The almost 6,000 former employees whom plaintiffs wish to contact are located all across the country. Likewise, the individual plaintiffs and cases to which these employees' testimony might be relevant also come from across the country. Given this, where plaintiffs wish to contact a non-Minnesota resident sales representative or where the lawyers doing the contacting are licensed in states other than Minnesota, or are seeking information regarding the cases of non-Minnesota resident plaintiffs, there will be a choice of law question. *See* Comment to Rule 8.5 of the Minnesota Rules of Professional Conduct ("If the

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

rules of professional conduct in [two applicable] jurisdictions differ, principles of conflict of laws may apply."); *see also White Consol. Indus., Inc. v. Island Kitchens, Inc.*, 884 F. Supp. 176 (E.D. Pa. Mar 21, 1995) (applying choice of law principles to decide whether Pennsylvania or New York ethical rules governed whether New York attorney could withdraw from representing a New York defendant in case filed in Pennsylvania by a Pennsylvania plaintiff). A choice of law analysis will necessarily turn on the individual facts relating to each case and will need to be done case-by-case and contact-by-contact.

Even if, as plaintiffs contend, Minnesota law alone governs whether plaintiffs can contact former employees, a case by case analysis will still be necessary. Similar to the rules followed by most states, Minnesota's Rule of Professional Conduct 4.2 provides that "a lawyer shall not communicate about the subject of representation with a party the lawyer knows to be represented by another lawyer in the matter . . . ." The question raised is whether a corporate defendant's former employee is constructively represented by the corporation's counsel. There is a decisional split around the country, with one set of authorities holding that contact with at least some former employees is ethically barred. *See, e.g.*, *Camden v Maryland*, 910 F. Supp. 1115, 1119-21 (D. MD 1996) (collecting cases, and noting that "the logic of extending both the privilege and the no-contact rule to at least some former employees seems irresistible"). Other courts, echoing ABA Formal Opinion 91-359, have held that counsel may contact former employees of the opposing party. *See, e.g.*, *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 961 F. Supp. 1288, 1295 (E.D. Mo. 1997).

In *Olson v. Snap Products, Inc.*, 183 F.R.D. 539, 544-45 (D. Minn. 1998), Magistrate Erickson concluded that a third line of cases, the "flexible approach," made the most sense. This line of authority "call[ed] for an assessment of the likelihood that the contact in question has

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

actually impaired the policy underlying Rule 4.2, of protecting privileged information from being disclosed to an opponent in litigation." *Id.* In contrast to plaintiffs' apparent contention, *FleetBoston* also adopted this more nuanced position which prohibits contact in particular circumstances. *See FleetBoston*, 172 F. Supp.2d at 1195. This flexible approach is fact and case-specific, and requires an analysis of whether *ex parte* contact will lead to the improper disclosure of privileged information.

Defendants operate in a highly-regulated field, where adherence to federal regulatory and statutory standards is critical. In such an environment, legal advice from counsel is from time to time disseminated to employees. It is possible that any given former employee will have been informed, either directly or through managers, of the legal advice of counsel. Of course, it may be that, in a given case, a particular former employee will not possess privileged information. In other cases, it is likely that a former employee shall possess such information. Moreover, as plaintiffs surely know, some of Bayer's and GSK's former employees have been deposed in non-MDL cases. Where appropriate, Bayer and GSK have entered into joint representation agreements with some of their former employees. Plaintiffs clearly have no right to contact these individuals who are represented by counsel. *See State v. Miller*, 600 N.W.2d 457, 464 (Minn. 1999) ("The focus of MRPC 4.2 is on the obligation of attorneys to respect the relationship of the adverse party and the party's attorney. The right belongs to the party's attorney, not the party, and the party cannot waive the application of the no-contact rule - only the party's attorney can approve the direct contact and only the party's attorney can waive the attorney's right to be present during a communication between the attorney's client and opposing counsel." (citations omitted)).

E-SERVED 07/13/04 06:17 PM ET Baycol MDL 1431

When case-specific discovery is appropriate, plaintiffs should not be permitted willy-nilly *ex parte* contact with some 6,000 former employees for a fishing expedition which could yield privileged information. Rather, such discovery, when appropriate, should proceed on a case-by-case basis, with *ex parte* communications limited to unrepresented individuals not in possession of privileged information.

Accordingly, when case-specific discovery is appropriate, and after the plaintiffs who do not wish to pursue their cases have fallen to the side, the parties can meet and confer as to which of defendants' former employees may be subject to *ex parte* contacts. At that time, if disagreement exists, then the parties can turn to the Court for a ruling. Until that time, however, such efforts simply are not ripe.

## CONCLUSION

Plaintiffs' Motion to compel should be denied.

Dated: July 13, 2004

Respectfully Submitted,

//Original Signature on File//
Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
Elizabeth S. Wright (#184111)
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402
Phone: 612-340-2600

Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Phone: 312-853-7000

//Original Signature on File//
Joseph O'Connor
Fred T. Magaziner
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
Phone: 215-994-4000

Tracy J. Van Steenburgh (#141173)
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402-4501
Phone: 612-338-1838

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

E-SERVED
07/13/04
06:17 PM ET
Baycol MDL 1431

Philip S. Beck
Adam L. Hoeflich
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 W. Hubbard Street, Suite 3000
Chicago, IL 60610
Phone: 312-494-4400

Gene C. Schaerr
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street N.W.
Washington, D.C. 20005
Phone: 202-736-8000

Richard K. Dandrea
ECKERT SEAMANS CHERIN & MELLOTT LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Phone: 412-566-6000

Douglas R. Marvin
Williams & Connolly LLP
725 Twelfth Street, N.,W.
Washington, D.C. 20005
Phone: 202-434-5000
*Counsel for Bayer Corporation and Bayer AG*