E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| | : | |
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 |
| | : | (MJD/JGL) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**EXHIBITS TO DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO COMPEL MATERIALS FROM PSC EXPERT MEETING**

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

# EXHIBIT A

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

IN RE BAYCOL PRODUCTS : MDL NO. 1431
LITIGATION : (MJD/JGL)
This Document Relates :
To: All Cases

ORIGINAL

- - -

CONFIDENTIAL

- - -

February 23, 2004

- - -

Continued videotape deposition of THOMAS M. ZIZIC, M.D., held in the offices of Lieff Cabraser Heimann & Bernstein, 48th Floor, 780 Third Avenue, New York, New York, commencing at 2:06 p.m., on the above date, before Linda L. Golkow, a Registered Diplomate Reporter and Certified Shorthand Reporter.

- - -

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

Filipovitch on behalf of various Texas physicians.

MS. SCHAUM: Meredith Schaum on behalf of Pfizer and Warner-Lambert.

THE VIDEOTAPE TECHNICIAN: The witness has been previously sworn.

MR. MIZGALA: Dr. Zizic, we seem to do this as a standard part of your depositions. We have to get something on the record first, and then we'll start.

Wendy, it's my understanding that because of the events of yesterday and Pierce is no longer going forward, Dr. Zizic is not going to provide any case-specific testimony on the Pierce case today; correct?

MS. FLEISHMAN: Yes.

MR. MIZGALA: And that we're going to have an hour of generic deposition testimony time today,

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

A. I would agree with that.
Q. Doctor, would you believe that comparisons of drug safety cannot be made from accumulated case report data?
A. I do not agree with that proposition.
Q. Doctor, were you in Miami this last week?
A. I was.
Q. For what?
A. We were instructed to give a video presentation to inform the judge of our views on the medicine and science as regards to our specific specialties in terms of the Baycol litigation.
Q. Who gave you this instruction to give a video presentation?
MS. FLEISHMAN: Objection.
THE WITNESS: I was told by Ms. Fleishman that this was to teach the judge.
BY MR. MIZGALA:
Q. Did you give such a presentation?

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

A. I did.

Q. Did you prepare any presentation materials as part of that?

A. I presented -- I prepared some slides, PowerPoints, that were used in the presentation.

Q. And you were videotaped?

A. It was videotaped.

MR. MIZGALA: Are we going to get a copy of the slides?

MS. FLEISHMAN: I am under the impression, or it was my understanding that the defense is doing the same thing and the defense will produce a copy of this instructional videotape, as will the plaintiffs.

MR. MIZGALA: You think we're making videotapes to present to the judge?

MS. FLEISHMAN: To the judge.

MR. MIZGALA: I don't know. I haven't --

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

MS. FLEISHMAN: That's what we were told. So, yes, of course. The whole --

MR. MIZGALA: Wait. Who told you this?

MS. FLEISHMAN: We can go off the record and we can discuss it at length.

Yes, of course we'll make copies of the slides available to you.

BY MR. MIZGALA:

Q. Okay.

Who else was there, Doctor, besides you? Was Ms. Fleishman there?

A. Yes.

Q. Who else?

A. Well --

Q. Start with the other -- I'm sorry. Let's do this kind of in a less than haphazard fashion. How about the other expert witnesses, were there other expert witnesses there?

A. Yes.

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

Q. Who else was there?
A. Dr. Kapit, Dr. Mayer, Dr. Bolt, Dr. Raskin, Dr. Farquhar, Dr. Smith by video, myself, Dr. Richman, Dr. Austin. I'm trying to think -- I might be forgetting someone. I don't know, but I think that's to the best of my ability.
Q. Dr. Corbitt?
A. I don't believe he was there, nor Dr. Fiflis.
Q. Okay. Dr. Phillips there?
A. No.
Q. Dr. Chengelis?
A. No.
Q. Dr. Carlson?
A. Yes.
Q. I think we've got them all now.
So, nine experts including you. And you said Dr. Smith by videoconference?
A. Videotape. It wasn't live. It was a taped presentation.
Q. Well, what happened during

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

this conference? Did you -- in terms of your video presentation, when did that occur?

A. On Wednesday afternoon.

Q. Who else was in attendance when you were being videotaped?

A. I wouldn't know all the people. I certainly -- the attorneys that I knew were Ms. Fleishman, Mr. Black, Mr. Hopper, Mr. Arbit -- and Mr. Zimmerman. There were other attorneys there, but I don't know the other attorneys that were there.

Q. How many people were in the audience?

A. Approximately 20, 25, something like that.

Q. Were the other experts in the audience when you were giving your presentation?

A. Some of them were.

Q. People came and went at different times?

A. Yes. They came based on

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

when they arrived and when they were preparing their presentations. So, some were out doing -- preparing for their presentation. So, I don't know who was actually in the audience during my presentation. I was worried about giving my own, not who was there, frankly.

Q. And you, personally -- or you got a chance to see Dr. Smith's presentation on videotape?

A. Yes.

Q. Who -- we'll go through the list. Whose other -- who other -- what other presenters did you see? Did you see Dr. Carlson?

A. All of them.

Q. Carlson, Kapit, Mayer, Bolt, Raskin, Farquhar, Richman and Austin; is that right?

A. Yes. Now, I may have missed 5 or 10 or 15 minutes of some presentations, and I can't remember, frankly, which ones I didn't hear all of for various reasons.

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

Q. Did any of the lawyers give any presentations?

A. No.

Q. Did you have a chance to talk with these various doctors about their presentations after they gave them?

A. There was an opportunity to ask questions of some of the presenters. Some were running a little late or went a little long and there wasn't an opportunity to ask questions, but some of them, there was an opportunity to query them.

Q. Doctor, with respect to your presentation, is this, you got up in front of the audience and you had these slides being presented, and you just gave a talk, a lecture basically?

A. Correct. A didactic lecture directed at the judge. And we were instructed to look at the video camera because the purpose of this was to instruct the judge as to what the medicine and science spoke to in terms of

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

this issue.

Q. You said you were --

A. And it was -- pardon me. And the other instruction was -- it was basically to follow the report that you had written.

Q. Did yours follow the report that you've written and produced in this case?

A. Yes, it did.

Q. Was there anything in your presentation that did not follow the report?

A. You know, I'm sure there was, because unless you write a 300-page report, you can't put everything in the report that you end up talking about. So, there were several things I'm sure that were not -- may have been mentioned in my report or the exhibits to my report, and I can't even remember what they were. But I realized as I went through my report and made the slides that there were some other things, some

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

of which we covered in the last deposition in discovery that were opinions that I hadn't fully elaborated on because I thought my report was already too lengthy when I wrote it.

Q. Doctor, you said your presentation was on Wednesday. When did you get down there?

A. I got down there late Tuesday evening.

Q. How long did you stay?

A. I left after the Thursday program.

Q. Were you paid your expert rate to attend this meeting?

A. I assume so. I haven't specifically asked about that.

Q. You intend on billing them for your time?

A. I intend on billing them, yes.

Q. Are you going to bill for two days or three days, or what are you going to bill for?

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

A. I will bill the two days that I was down there plus travel time.

Q. I take it your hotel was paid for; correct?

A. I actually paid for it, but I assume I'm going to get reimbursed for it.

Q. How is that place?

A. It was very nice. It was on the water, and the pool was wonderful. I got my mile swim every night. It was just looking at the water, the skyline, the music, while you're swimming in the pool. You can't beat that for an hour before sushi.

Q. Restaurant good there?

A. The restaurant was excellent. The samba sushi roll with eel and crab was very good.

Q. One of my favorites.

A. Mine also.

MR. BERGHOLTZ: That sounds like case-specific testimony to me.

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

MS. FLEISHMAN: That sounds like completely irrelevant testimony, but if they want to chat about food during their hour, they can.

BY MR. MIZGALA:

Q. Doctor, did you talk about Randy Pierce, the plaintiff, the last plaintiff when you were down there?

A. Actually, he never came up, at least in my conversation with anybody.

Q. Doctor, before today, did you know Randy Pierce had been dropped as a plaintiff?

A. I did not.

Q. No one consulted you on whether or not to proceed with his case?

A. No. I was informed of that.

Q. When were you informed that the case was dropped?

MS. FLEISHMAN: I don't think the case has been dropped. I think it's just been withdrawn as the case-specific trial.

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

THE WITNESS: I mean, I heard basic -- I just heard that it's not clear that they're going forward with Randy Pierce, and there may be some other -- I heard about as much from you as we started this deposition as I heard earlier. So, I don't --

BY MR. MIZGALA:

Q. You just found out today?

A. I just found out today.

Q. Doctor, were there any handouts at this meeting?

A. No. I didn't see anybody with handouts.

Q. Did you take any notes?

A. I took a few notes, which I destroyed, just for helping me comprehend. I sometimes can follow better when I take some notes.

Q. The other presenters, did they use PowerPoint or slides?

A. All of them used, I think. There may have been one presenter that I

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

recall that -- I don't know if Dr. Bolt used slides. My recollection is he didn't, but every other presenter did.

Q. Did any of the plaintiffs' lawyers present ask any questions of the presenters or make any statements?

MS. FLEISHMAN: Objection.

THE WITNESS: They asked some questions, as did the audience in general.

BY MR. MIZGALA:

Q. Do you remember any of them?

MS. FLEISHMAN: Objection.

THE WITNESS: I can't recall any off the top of my head. Let me see if I can visualize somebody and the question they might have asked. You know, the presentations pretty much followed everybody's expert report, and I had read the expert reports. I would imagine -- it seemed to me that a few of the lawyers may not have read some of the expert

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

reports or didn't understand them, but it was basically along those lines, or didn't understand a part of it. I certainly understood all of it. So -- but I had read all the reports, as well, and I'm pretty familiar with what this is all about.

BY MR. MIZGALA:

Q. Were there -- was there any discussion of the depositions that had taken place up to that date?

MS. FLEISHMAN: Objection.

THE WITNESS: You know, not any specific discussion. That was done on that conference call about three or four weeks ago. But there was a -- as I mentioned at the last deposition, some of the questions that were being asked were more or less to give us a heads up, but I didn't hear any. I mean, there may have been.

BY MR. MIZGALA:

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

Q. Was there any discussion of the defense experts in this case?
MS. FLEISHMAN: Objection.
THE WITNESS: I didn't hear any discussion of the defense experts.
BY MR. MIZGALA:
Q. Do you know Dr. Leslie Dorfman?
A. I don't know Dr. Dorfman. I read the report.
Q. But you don't know of him or his reputation?
A. No, I don't.
Q. In the evening, was there any discussion among you and your colleagues in attendance about this litigation?
MS. FLEISHMAN: Objection.
THE WITNESS: You know, there wasn't any evening -- there was a...
BY MR. MIZGALA:
Q. The sun never goes down in

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

Miami?

A. No. I didn't mean it that way. There wasn't any formal dinner or -- there was a reception, and I met a few people there on Wednesday night with some wine. And it was more general, friendly talk and meeting people and getting to know people, and then I went and swam. I don't know what anybody else did. I didn't have any dinner beyond what was there.

And then the next night I swam again, and people had -- I think the lawyers had gone out to dinner each night to discuss something, but the experts were sort of left to fend for themselves. And the second night I ended up having dinner with one of the participants from a jury project or something, but we didn't really talk about the case. It was just how she got into this, her work, through her husband, who asked her to do something and 20 years later, she's still doing it.

E-SERVED 07/21/04 06:20 PM ET Baycol MDL 1431

Q. What was the jury project?
MS. FLEISHMAN: Objection.
THE WITNESS: I think it's called American Jury Project. I don't honestly know, but I think that's the name of the nonprofit that she belongs to.
BY MR. MIZGALA:
Q. And she was in attendance there?
A. She was.
Q. For this conference?
A. Yes.
Q. Did she hear your presentation?
A. I can't swear that she heard my presentation, but she was certainly in the room at various presentations. Whether she was in the room for all of them or not, I don't know.
Q. Was she giving any comments on the presentations?
A. No.
Q. Was anyone besides the

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

# EXHIBIT B

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

ZIMMERMAN REED
ATTORNEYS AT LAW

June 14, 2004

**ROBERT R. HOPPER**
**Admitted in Minnesota**
**rrh@zimmreed.com**

REPLY TO MINNEAPOLIS

Mr. Tarek Ismail, Esq.
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard, Suite 300
Chicago, IL 60610

Mr. Fred T. Magaziner, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, Pennsylvania 19103

Mr. James W. Mizgala, Esq.
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603

*RE: Baycol Products Litigation, MDL 1431*

Dear Counsel:

Pursuant to PTO 120, the PSC hereby designates the following generic experts it intends to use in MDL cases.

1. Dr. Harlan Austin, D.Sc.
2. Dr. Charles Boult, M.D., M.P.H., M.B.A
3. Dr. Bruce Carlson, M.D., Ph.D.
4. Dr. Michael Corbett, Ph.D.
5. Dr. John Farquhar, M.D.
6. Ted Fiflis, L.L.B.
7. Dr. Richard Kapit, M.D.
8. Dr. R. Samuel Mayer, M.D.
9. Dr. Stephen Raskin, M.D.
10. Dr. David Richman, M.D.
11. Dr. Erich Schinagl, M.D.
12. Dr. Martyn Smith, Ph.D.
13. Dr. Thomas Zizic, M.D.

Copies of the reports required by Fed.R.Civ.P 26 were previously submitted. The PSC intends to rely on the previously submitted expert reports and supplemental reports as contemplated by PTO 120.

Very truly yours,

ZIMMERMAN REED, P.L.L.P.

Randy Hopper

Robert R. Hopper

RRH:lag

L:\WPDATA\Baycol\MDL\Letters\Ltr738 (TarekIsmail).wpd

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

**EXHIBIT C**

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

SIDLEY AUSTIN BROWN & WOOD LLP

BEIJING
BRUSSELS
CHICAGO
DALLAS
GENEVA
HONG KONG
LONDON

BANK ONE PLAZA
10 S. DEARBORN STREET
CHICAGO, ILLINOIS 60603
TELEPHONE 312 853 7000
FACSIMILE 312 853 7036
www.sidley.com

FOUNDED 1866

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
TOKYO
WASHINGTON, D.C.

WRITER'S DIRECT NUMBER
(312) 853-7081

WRITER'S E-MAIL ADDRESS
jmizgala@sidley.com

March 2, 2004

**Via Fax (212-355-9502)**

Wendy R. Fleishman, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue
48th Floor
New York, NY 10017-2024

Re: *Baycol Products Litigation*, MDL No. 1431
Production of Expert Materials

Dear Wendy:

As you appear to be in the supplementing mood, can you please let us know when can we expect to receive our copies of the videotapes and presentation materials from the recent PSC Expert Meeting in Miami, which you promised to produce at the February 23, 2004 deposition of Dr. Thomas Zizic.

Very truly yours,

James W. Mizgala

JWM/lk

cc via fax: Hope Freiwald
Donald Arbitblit
Bert Black
Randy Hopper
Tarek Ismail
Susan Weber

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

# EXHIBIT D

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

WENDY R. FLEISHMAN
PARTNER

780 THIRD AVENUE, 48TH FLOOR
NEW YORK, NEW YORK 10017-2024
TELEPHONE: (212) 355-9500
FACSIMILE: (212) 355-9592
mail@lchb.com
www.lchb.com

SAN FRANCISCO
WASHINGTON, D.C.
NASHVILLE

March 8, 2004

**BY FIRST CLASS MAIL**

James W. Mizgala, Esq.
Sidley Austin Brown & Wood
Bank One Plaza
10 S. Dearborn Street
Chicago, IL 60603

Re: In re: Baycol Products Liability Litigation, MDL No. 02-0457

Dear James:

I am writing with respect to your ongoing request for a copy of the videotape of Dr. Zizic's tutorial. The video will be presented to you and Judge Davis when we provide for the tutorial exchange. There is no need to engage in further letter writing on this issue because, as we discussed in open court at the last status conference, Plaintiffs have agreed to meet and confer on the issue of the tutorial and provide our mutual thoughts to the Court on how to proceed. In the meantime, we are taking the position that the tutorial videotape is privileged as a work product.

If you require anything further, please do not hesitate to contact me.

Very truly yours,

Wendy R. Fleishman

WRF:jak

cc: Charles S. Zimmerman, Esq.
Robert R. Hopper, Esq.
Hope Freiwald, Esq.
Donald C. Arbitblit, Esq.

307039.1

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

# EXHIBIT E

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

SIDLEY AUSTIN BROWN & WOOD LLP

BEIJING
BRUSSELS
CHICAGO
DALLAS
GENEVA
HONG KONG
LONDON

BANK ONE PLAZA
10 S. DEARBORN STREET
CHICAGO, ILLINOIS 60603
TELEPHONE 312 853 7000
FACSIMILE 312 853 7036
www.sidley.com

FOUNDED 1866

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
TOKYO
WASHINGTON, D.C.

WRITER'S DIRECT NUMBER
(312) 853-7081

WRITER'S E-MAIL ADDRESS
jmizgala@sidley.com

July 7, 2004

**Via Fax (612-341-0844)**

Robert R. Hopper
Zimmerman Reed
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402

Re: *Baycol Products Litigation*, MDL No. 1431
Production of Expert Materials

Dear Randy:

Now that the PSC has made its generic expert designations pursuant to PTO 120, Defendants Bayer Corporation and Bayer AG request that you provide us with copies of the videotapes and presentation materials from the PSC Expert Meeting in Miami, which took place earlier this year for any and all of the experts that the PSC has designated pursuant to PTO 120. As your are aware, it is Bayer's position that, given how that meeting was conducted and the nature of these materials, they are clearly discoverable and not subject to work product protection. Please let us know by COB on Monday, July 12, 2004 whether the PSC intends on complying with this request, for if it chooses not to, Defendants will seek appropriate relief from the Court.

Sincerely,

James W. Mizgala

JWM:lk
enclosures

cc via fax: Wendy R. Fleishman
Fred Magaziner
Tarek Ismail
Joseph Piorkowski
Susan Weber

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

# EXHIBIT F

E-SERVED
07/21/04
06:20 PM ET
Baycol MDL 1431

ZIMMERMAN REED
ATTORNEYS AT LAW

July 12, 2004

ROBERT R. HOPPER
Admitted in Minnesota
rrh@zimmreed.com

REPLY TO MINNEAPOLIS

***Via Facsimile and U.S. Mail***

James Mizgala
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn St.
Chicago, IL 60603

*RE:* *Baycol Products Litigation, MDL No. 1431*
Production of Expert Materials

Dear James:

I am in receipt of your letter dated July 7, 2004 regarding the above referenced matter. In that correspondence, you requested that the PSC provide you with copies of videotapes and presentation materials from the PSC expert meeting in Miami held earlier this year.

In response to your request, it is the PSC's firm position that these videotapes are not discoverable. These videotapes were prepared pursuant to the Court's direction and solely for the purpose to provide the Court with a science and medicine tutorial related to this instant litigation. To that end, and having met and conferred with defendants on this matter several times, the PSC urges defendants Bayer Corporation, Bayer AG and GSK to produce its own tutorial videotapes, DVD, or other medium they may choose; advise the PSC when such tutorial work product is complete; and, at such designated time, the PSC will mutually exchange such work product with defendants as well as provide such work product to the Court, as the court has directed.

Very truly yours,

ZIMMERMAN REED, P.L.L.P.

Randy Hopper

Robert R. Hopper

RRH:rle

cc: Charles S. Zimmerman
Richard A. Lockridge
Wendy Fleishman
Bert Black
Don Arbitblit