E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/JGL) |
| This Document Relates to: *All Actions* | : | |

**DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF MOTION TO COMPEL EXPERT REPORTS, PURSUANT TO PTO 114, WHICH COMPLY WITH RULE 26(a)(2)(B) AND TO PROHIBIT USE OF FORM REPORTS, AND REQUEST FOR EXPEDITED CONSIDERATION**

This motion arises from an attempt by the PSC to turn the PTO 114 narrowing process into a hollow exercise. Rather than instructing plaintiffs' counsel to review their cases, to dismiss those cases that do not warrant discovery, and to serve proper expert reports on injury and causation for the remaining cases, the PSC has concocted a two-page fill-in-the-blank and check-off form that can be completed with little or no case review, and that provides no meaningful evidence on injury or causation.

Use of this form violates PTO 114, in which this Court ordered plaintiffs to submit case-specific expert reports on injury and causation that comply with Rule 26(a)(2). PTO 114 §§ I.A., I.B.2., I.C. That rule mandates an expert report to provide "a complete statement of all opinions to be expressed and the basis and reasons therefore" and "the data or other information considered by the witness in forming the opinions . . . ." Fed. R. Civ. P. 26(a)(2)(B). A form "expert" report does not meet this standard by baldly asserting that a plaintiff's myalgia was caused by Baycol because the plaintiff's medical records describe myalgia that was "***reasonably*** contemporaneous" with Baycol use — particularly when the records, in fact, contain no such description. *See,*

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

*e.g.*, Ex. 9[1] and *infra* p. 12 (discussing Mae Dean Newton[2] PTO 114 report) (emphasis added); *see also infra* pp. 8-10.

To date, defendants have been served with 115 of these useless form reports — more than 55 percent of the PTO 114 § I.A. responses received thus far. Moreover, at least one opinion mill has been established to churn out form reports, *see infra* p. 11, even though the PSC promised there would be no opinion mills in this litigation.

This Court should not allow its narrowing order to be transformed from a groundbreaking case management mechanism to an empty bureaucratic exercise. Accordingly, defendants request the Court to compel Phase I plaintiffs who have submitted deficient form reports (identified in Exhibit A) to submit unique, case-specific expert reports on injury and causation that comply with Rule 26(a)(2) within 30 days, and Phase III plaintiffs identified in Exhibit A to submit unique, case-specific expert reports on injury and causation that comply with Rule 26(a)(2) by September 20, 2004, *i.e.*, the applicable Phase III deadline set forth in PTO 114 § III.[3] To avert deficient filings by other plaintiffs, defendants request the Court to enter an expedited order barring use of the form report on the ground that it does not meet the requirements of PTO 114 and Rule 26(a)(2).

---

[1] For ease of reference, the form expert reports at issue are attached in three volumes of exhibits numbered 1-115. All other supporting materials are attached in a volume of exhibits denoted A-J.

[2] Mae Dean Newton is one of the four surviving plaintiffs from the PTO 89 Program.

[3] Defendants are not currently moving to compel a PTO 114 report which complies with Rule 26(a)(2) from any Phase II plaintiffs.

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

## BACKGROUND

It is necessary to recount the events which led up to entry of PTO 114 in order to put the current problems into perspective.

On May 30, 2003, defendants filed a motion for entry of a *Lone Pine* order requiring plaintiffs in approximately 500 early-filed cases to produce Rule 26(a)(2) case-specific expert reports on injury and causation. *See* Bayer & GSK's Motion for Entry of a Pretrial Order Requiring Plaintiffs to Produce Case-Specific Expert Reports on Injury & Causation. The parties fully briefed that motion, but resolution was deferred upon entry of PTO 89, which established a pilot program for case-specific discovery and the preparation of cases for trial. *See* PTO 89 ¶ 5.C.

Pursuant to PTO 89, approximately 200 cases were randomly selected along with all 38 cases filed by Minnesota residents in this District. The list was subsequently reduced to about 215 cases after some cases were removed for various administrative reasons. As directed by PTO 89, plaintiffs' counsel reviewed this list to determine which cases it believed warranted discovery and which should be dismissed. Of the approximately 215 Program cases, plaintiffs' counsel determined that 94 cases ("Eligible cases") warranted discovery. Accordingly, defendants commenced discovery in each of those 94 cases, collecting and reviewing medical records, gathering other case-specific documents, preparing for depositions of plaintiffs and fact witnesses and, in some instances where plaintiffs did not drop the case in the face of a deposition notice, examining witnesses. While defendants were spending substantial time and money in undertaking discovery in these cases, plaintiffs signed more and more stipulations dropping their cases until now only four PTO 89 Eligible cases are left (and one of those four plaintiffs is now seeking dismissal).

E-SERVED
07/08/04
05:41 PM ET
Baycol MDL 1431

As a result of this experience with PTO 89, it became clear to the PSC and defendants that a docket management device was needed to winnow out cases lacking factually and legally sufficient support. Therefore, in December 2003, the PSC proposed that the parties confer about a protocol for eliminating such cases from the MDL. In mid-January 2004, the PSC and defense counsel submitted a proposed narrowing order to the Court. It was distributed to counsel as an exhibit to PTO 102, which was entered by the Court on January 16, 2004. Pursuant to PTO 102, the parties were required to show cause by February 5, 2004, as to why the proposed narrowing order should be modified.

After several plaintiffs filed objections to PTO 102, counsel for the parties went back to the drawing board. At the end of February 2004, after careful negotiations, the PSC and defense counsel were close to reaching a final agreement as to the revised narrowing order. However, at the eleventh hour, the PSC tried to dilute the requirements of that order. Specifically, the PSC requested that a form report be provided as an exhibit to the narrowing order. *See* Email chain of Feb. 25 and 26, 2004, Ex. B. The PSC also requested that experts be required only to attest that the plaintiff had experienced injuries caused by Baycol without further explanation, and that the reports not be binding on plaintiffs. *See id.*

Defendants objected to the PSC's last-minute proposed revisions. *See id.* In particular, defendants argued that implementation of the PSC's scheme would lead to the generation of large numbers of boilerplate reports containing minimal amounts of information, with little or no narrowing accomplished. *Id.* Defendants further argued that such an approach was contrary to the express requirements of Rule 26(a)(2). *Id.*

E-SERVED
07/08/04
05:41 PM ET
Baycol MDL 1431

The Court had this exchange in its possession before it entered PTO 114. And the Court chose not to implement the PSC's form order, or its other eleventh-hour proposals. *See* PTO 114.

Nonetheless, following entry of PTO 114, the PSC developed a two-page, check-off, fill-in-the-blank form report for PTO 114 submissions and circulated it to plaintiffs' counsel in this MDL. Upon information and belief, the PSC also has held and will be holding conferences for plaintiffs' counsel to instruct them how to (purportedly) comply with PTO 114 by using the PSC's form report. *See* Ex. C (conference agenda).

As a result of the PSC's promotion of the form report, the concerns raised by defense counsel in February have now become a reality — *i.e.*, the majority of plaintiffs' counsel and their experts are not conducting a thorough examination of their cases. Instead, they are dashing off boilerplate reports in an attempt to jump through what they see as nothing more than a procedural hoop. *See infra* pp. 10-12 (discussing examples of form reports submitted by plaintiffs) and Exs. 1-115.

As early as May 17, defense counsel raised their concerns about the use of form reports with the PSC, which contended that the forms complied with Rule 26(a)(2). *See* Mizgala Decl., Ex. D. Defense counsel also sent a letter to counsel representing the plaintiffs at issue, asking them to serve expert reports which comply with Rule 26(a)(2) within 30 days. *See, e.g.,* Ex. E. Despite these efforts to confer in good faith, defendants were not able to secure commitments to produce disclosures which comply with Rule 26(a)(2) from the plaintiffs listed in Exhibit A,[4] and were not

---

[4] Three plaintiffs committed to serving experts reports which comply with Rule 26(a)(2) within 30 days: Paul Fernandez, No. 02-1348; Michael Rau, No. 02-4314, and Maria Ballard, No. 03-5984. *See* Ex. F.

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

able to secure an agreement from the PSC that the form report will not be used. *See* Mizgala Decl., Ex. D.

It is time for this Court to step in and ensure compliance with Rule 26(a)(2), so that the underlying purposes of PTO 114 can be fulfilled. If the situation is not remedied now, this litigation will be needlessly protracted because use of form reports will impair the ability of the parties and the Court to narrow this MDL by eliminating cases that do not warrant further discovery.

**ARGUMENT**

PTO 114 requires the parties to "serve a Rule 26(a)(2) case-specific expert report from a medical expert attesting that Baycol caused the plaintiff to suffer injuries or damages." PTO 114 §§ I.A. and I.B(2). PTO 114 also provides that "[t]he Rule 26(a)(2) case-specific expert report must include an explanation of the bases of the attestation that Baycol caused the plaintiff to suffer injuries or damages and a description of the specific injuries or damages suffered." PTO 114 § I.C. Rule 26(a)(2) further requires that:

> this [expert] disclosure shall . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

Pursuant to Rule 26(a)(2), expert reports must be "detailed and complete." *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (*quoting* Fed. R. Civ. P. 26 Advisory Committee's note). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.* Expert reports do not comply with Rule 26(a)(2) if they are "sketchy and vague" as to the basis for an expert's opinion, or "uninformative, boilerplate renditions" which fail to disclose an expert's opinion and the facts and rationale for it. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. ), *cert. denied*, 516 U.S. 822 (1995); *Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1440 (D. Minn. 1996); *see also Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340-41 (5th Cir. 2000) (affirming dismissal of case where plaintiffs, pursuant to a *Lone Pine* order, served form affidavits from a single expert); Fed. R. Civ. P. 26 Advisory Committee's note.

Here, the PSC has told plaintiffs' counsel that they can comply with PTO 114 and Rule 26(a)(2) by submitting a two-page form completed by a physician. That form allows the opining physician to check off whether he or she has examined the plaintiff or seen the plaintiff's medical records, write in the alleged injury, and then select from a PSC list of reasons for attributing the alleged injury to Baycol. 115 of the 205 reports that have been submitted to date pursuant to PTO 114 use this two-page check-off, fill-in-the-blank form.[5]

This form does not provide a detailed and complete statement of an expert's opinions, much less the basis and reasons therefor. In particular, in order to

[5] Additional PTO 114 submissions have utilized the form report but complied with PTO 114 and Rule 26(a)(2) because a *separate letter from the expert* was submitted *with* the form report, or because the expert *added significant information* into the form.

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

reach a reliable opinion on causation, a physician cannot merely claim that an injury was caused by Baycol use because the alleged injury is described in a plaintiff's medical records and is "***reasonably*** contemporaneous" with Baycol use. *See, e.g.*, Ex. 17 (emphasis added). Indeed, a conclusion about causation based merely on a temporal relationship is no expert opinion at all. *See, e.g.*, *Roche v. Lincoln Property Co.*, 278 F. Supp. 2d 744, 752 (E.D. Va. 2003) (causation opinion based solely on temporal relationship is not derived from scientific method and does not satisfy Rule 702); *Downs v. Perstorp Components, Inc.*, 126 F. Supp. 2d 1090, 1097 (E.D. Tenn. 1999) (same and collecting cases).

In order to reach a credible opinion that Baycol caused a plaintiff to experience injury, a physician must sort through and exclude alternative causes of the alleged injury. Exclusion of any alternate causes is of particular importance here because many plaintiffs are older persons who have experienced a variety of ailments and take an assortment of medications which may cause their symptoms. For example, muscle pain and weakness – the injuries alleged by most plaintiffs in this MDL – are common complaints that can be caused by many disorders. Deposition of Thomas M. Zizic, M.D. (Ex. G) at 42-43, 185-90; Deposition of George Kaysen, M.D. (Ex. H) at 50-51. A physician, therefore, must perform a differential diagnosis in order to determine what condition may be responsible for any muscle pain or weakness. Zizic Dep., Ex. G, at 184-85; Kaysen Dep., Ex. H, at 38-39, 41. As this Court has recognized:

> [P]ursuant to one of the medical experts retained by the Plaintiffs' Steering Committee ("PSC"), the alleged injuries sustained by the plaintiffs that ingested Baycol, including muscle pain and weakness, require a physician to perform a differential diagnosis to determine the origin of such injury. Deposition of Thomas M. Zizic, M.D. at 184. Relevant to the causation inquiry is a particular plaintiff's medical history, and any medications taken at the same

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

> time as Baycol to determine whether concomitant illnesses or medications could be the cause of such injuries. *Id.* at 185. Similarly, another medical expert retained by the PSC testified at his deposition that it is important to investigate alternative causes of injury when making a diagnosis. Deposition of George Kaysen, M.D. at 38-39, 41.

Court's Order of June 15, 2004, at 8. A form report does not take into account the unique circumstances of a plaintiff's medical history, or identify potential alternative causes of an ailment that the physician may have considered, much less explain why those alternative diagnoses were rejected.

For instance, plaintiff Ernest Garrett produced a two-page form report from his treating physician, Dr. R. Kyle Roper. *See* Ex. 60. Mr. Garrett's medical records indicate that he took Baycol from January 25, 2001 through withdrawal without making any complaint of muscle pain. *See* Ex. I at EAG100, EAG105; RKR44-46. On August 9, 2001 – the day after Baycol was withdrawn – Mr. Garrett was placed on Lescol. *Id.* at EAG100. Then, during the Fall of 2001, Dr. Roper gave Mr. Garrett samples of Lipitor. *Id.* at EAG100. On September 14, 2001, Mr. Garrett reported myalgia and caramel-colored urine to Dr. Roper. *Id.* at RKR43. These symptoms resolved after Mr. Garrett discontinued Lipitor. *Id.* at RKR37, RKR39-40.

There is absolutely no mention of this history in Dr. Roper's form report. *See* Ex. 60. Any thorough and responsible expert report on injury and causation would address the specific circumstances contained in these records and would explain how and why Dr. Roper attributes Mr. Garrett's ailment to Baycol rather than to Lescol or Lipitor. But instead, plaintiff's expert submitted a form report that merely asserts that Mr. Garrett developed rhabdo at a time "reasonably contemporaneous" with his taking Baycol and that the symptoms were of "new onset" with use of Baycol. *Id.*

E-SERVED
07/08/04
05:41 PM ET
Baycol MDL 1431

Similarly, a physician does not, simply by filling in the form, provide a detailed and complete explanation as to how and why the physician reached a particular opinion, or the data or other information considered in forming the opinion. For example, plaintiff Dale White submitted a two-page check-off form report from Dr. Alan Rogers. *See* Ex. 70. Dr. Rogers describes Mr. White's alleged Baycol-related injuries as:

> ***Unknown***. Started Baycol 0.4 around 11/99. Developed acute inflammatory arthritis 6/8/01 requiring in-p[atien]t admission. Baycol stopped 6/8/01. Continued to have arthritis requiring Plaquenil, methotrexate, cylosporine through 1/04. Symptomatologically improved at this time.

(Emphasis added). Even if it were Dr. Rogers' opinion that Mr. White's arthritis was somehow related to his Baycol use (which is not clear from the description of injuries as "unknown"), Dr. Rogers provides absolutely no basis for such an opinion. In fact, Dr. Rogers did not even bother to circle any of the five predetermined "grounds" (listed on the form) for his opinion. *See id.*

The PTO 114 submissions for Mr. Garrett and Mr. White are just the tip of the iceberg. One physician, Dr. Raul Reyes, single-handedly has submitted 60 of the form reports currently at issue. *See* Exs. 1, 2, 8, 9, 16, 27-31, 43-57, 78-79, 83-115. And a plaintiffs' counsel known to use this "expert" has represented that another 400 such reports will soon be coming. Therefore, despite the PSC's repeated reassurances to defendants and to the Court that the PSC had no intention of establishing an expert mill for the production of case-specific expert reports, the tactics of the PSC have resulted in just that.

Review of one of Dr. Reyes' reports – submitted for Mae Dean Newton – demonstrates that his form reports are of no value and, in fact, are a particularly egregious example of some plaintiffs' efforts to thwart PTO 114. Dr. Reyes opined that

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

Ms. Newton has "[m]yalgia, muscle weakness, muscle cramps, arthralgia, memory loss, anxiety and insomnia" related to her ingestion of Baycol. Ex. 9. As the basis for this opinion, Dr. Reyes adopted two of the five predetermined "grounds": (a) "There is a claim of injury as described above in the patient's medical records"; and (b) "The claim of injury in the medical records is reasonably contemporaneous with the patient's ingestion of Baycol." *Id.* Contrary to the representations made on the form that Dr. Reyes signed, there is nothing in Ms. Newton's medical records indicating that Ms. Newton experienced myalgia, muscle weakness, muscle cramps, arthralgia, memory loss or anxiety while taking Baycol from October 15, 2000 to August 10, 2001. *See* Ex. J at VB12-13, VB25-26, VB29, VB58, VB63-64; MM37. Ms. Newton did complain of insomnia on December 20, 2000, for which she was prescribed Restoril (a sedative), but there is nothing pointing to Baycol as the cause of her insomnia. *See id.* at VB64. In fact, Ms. Newton complained of insomnia as early as October 8, 1999 — long before she ever took Baycol. Ex. J at VB43; *see also* VB40 (complaints of insomnia on Feb. 9, 2000).

In short, the form reports at issue (Exs. 1-115) are vague, cursory, uninformative, boilerplate reports which fail to provide a detailed and complete disclosure of the experts' opinion and the facts and rationale, in violation of Rule 26(a)(2). *See Sylla-Sawdon*, 47 F.3d at 284; *Salgado*, 150 F.3d at 741 n.6; *Upsher-Smith Labs.*, 944 F. Supp. at 1440; *see also* Fed. R. Civ. P. 26 Advisory Committee's note. Defendants therefore request that the Court order plaintiffs listed in Exhibit A to serve an expert report which complies with Rule 26(a)(2).

Defendants also request the Court to bar further use of the form report. The form is an invitation to plaintiffs' counsel and their experts to err. It misleads

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

counsel into thinking that if a physician fills in the blanks of the form, a plaintiff will have complied with the requirements of PTO 114 and Rule 26(a)(2).

The use of form reports threatens to turn the entire PTO 114 process into a meaningless exercise. Preparation of a form report relieves counsel and their experts from conducting a thoughtful examination of their cases. Form reports will not enable the parties to eliminate non-merit cases from this MDL and advance the remaining cases toward trial. Defendants therefore ask the Court to make clear immediately that the PSC-created form does not meet the requirements of PTO 114, so that the PSC can advise plaintiffs' attorneys of their true obligations under PTO 114 and Rule 26(a)(2).

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court enter an order compelling plaintiffs identified in Exhibit A to produce an expert report which complies with Fed. R. Civ. P. 26(a)(2) and PTO 114, and prohibiting all plaintiffs in MDL-1431 from submitting "form" reports under PTO 114.

E-SERVED 07/08/04 05:41 PM ET Baycol MDL 1431

Dated: July 8, 2004

/signature on file/
Susan A. Weber
James W. Mizgala
Sherry A. Knutson
SIDLEY AUSTIN BROWN & WOOD LLP
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Gene Schaerr
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901
(202)434-5000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

*Counsel for Bayer Corporation and Bayer AG*

/signature on file/
Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402
(612) 338-1838

Fred T. Magaziner
Robert A. Limbacher
Hope S. Freiwald
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline and GlaxoSmithKline plc*