E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431

# Exhibit A

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| In re: Baycol Products Litigation | File No. MDL 1431 (MJD/JGL) |
| | Minneapolis, Minnesota<br>December 9, 2003<br>10:00 a.m. |

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES

| | |
|---|---|
| For the Plaintiffs: | CHARLES ZIMMERMAN, ESQ.<br>RONALD GOLDSER, ESQ.<br>RANDY HOPPER, ESQ.<br>JOHN CLIMACO, ESQ.<br>MARGARET BRANCH, ESQ.<br>JAMES DUGAN, ESQ. |
| For Defendant Bayer: | ADAM HOEFLICH, ESQ.<br>PETER SIPKINS, ESQ.<br>KIMBERLY KOERNER, ESQ.<br>EUGENE SCHOON, ESQ. |
| For Defendant GlaxoSmithKline: | FRED MAGAZINER, ESQ. |
| For Blue Cross Blue Shield of Minnesota: | KIMBERLY WEST, ESQ. |
| For Richard Medalie: | DAVID STANLEY, ESQ.<br>ROBERT CYNKAR, ESQ. |
| For Weitz & Luxenberg | VICTORIA MANIATIS, ESQ. |
| Court Reporter: | LORI A. CASE, RMR-CRR<br>1005 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, Minnesota 55415 |

Proceedings recorded by mechanical stenography; transcript produced by computer.

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431



later on. I wouldn't mind seeing both sides' experts. That would help the Court in evaluating where it is going to go on certainly these -- not on the cases, but how we should deal with some of these issues on how we are going to screen out cases. That would be very helpful for me.

MR. ZIMMERMAN: And that was the offer, because I think it is very useful. At least you know where each side is coming from with regard to how we define what is and what isn't. And so it was in that spirit that I wanted to offer them.

THE COURT: It would be helpful. So if you can meet and confer and figure out a schedule that you can get them to me, that would be great.

Because, again, I don't want to be the odd man out when we start having discussions about -- at some point you all are going to discuss what cases should be dismissed out and what cases are going to be cases that are going to be tried. And so it would be nice for the Court to know how you're making that evaluation and who you relied on in making those decisions.

MR. ZIMMERMAN: One of the things we can also discuss, Your Honor, as has happened in other courts in these complex MDLs, is the courts have asked for -- not tutorials, that may not be the right word, but a presentation of summaries by the experts or by counsel so

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431

# Exhibit B

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| In re: Baycol Products Litigation | ) | File No. MDL 1431 (MJD/JGL) |
| | ) | Minneapolis, Minnesota<br>January 15, 2004<br>10:00 a.m. |

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES

For the Plaintiffs: CHARLES ZIMMERMAN, ESQ.
RICHARD LOCKRIDGE, ESQ.
RONALD GOLDSER, ESQ.
DANIEL BECNEL, ESQ.
VICTORIA MANIATIS, ESQ.

For Defendant Bayer: PHILIP BECK, ESQ.
ADAM HOEFLICH, ESQ.
PETER SIPKINS, ESQ.
SUSAN WEBER, ESQ.
DOUGLAS MARVIN, ESQ.
EUGENE SCHOON, ESQ.

For Defendant GlaxoSmithKline: FRED MAGAZINER, ESQ.

Court Reporter: LORI A. CASE, RMR-CRR
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
(612) 664-5104

Proceedings recorded by mechanical stenography; transcript produced by computer.

LORI A. CASE, RMR-CRR
(612) 664-5104

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431



stay on task and it's very helpful in these kinds of things and I appreciate it very much, although I certainly didn't like all of it, but I endured it.

Other matters, Your Honor. Just talking about -- this is just a pick-up item. We are still working on scheduling some kind of science tutorial before the trials in June.

The specifics of this are very much in play and I don't really have anything to report on it other than we do think it's an excellent opportunity to give the Court and everybody really an understanding of where the experts are coming from.

We will spend some time, now that we are off of narrowing, into this issue and come up with something that both parties can live with and we think will be productive.

There's no attempt here to try and do anything that gives either side an advantage. We are trying to do -- you know, present the Court with good balanced science so they can see where the issues are and be prepared for what they're going to hear.

And this is not, in my view, something to try to take advantage of one side and blindside the other or, you know, do something that anybody is going to be fearful of. We want it to be a learning experience for everyone, and I think with that spirit we'll go that route.

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431

# Exhibit C

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

IN RE BAYCOL PRODUCTS : MDL NO. 1431
LITIGATION : (MJD/JGL)
This Document Relates :
To: All Cases

COPY

\- - -

C O N F I D E N T I A L

\- - -

February 10, 2004

\- - -

Videotape deposition of THOMAS M. ZIZIC, M.D., held in the offices of Lieff Cabraser Heimann & Bernstein, 48th Floor, 780 Third Avenue, New York, New York, commencing at 9:56 a.m., on the above date, before Linda L. Golkow, a Registered Diplomate Reporter and Certified Shorthand Reporter.

\- - -

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

MS. PASSARETTI: Rachel Passaretti from Skadden Arps for Pfizer.

THE VIDEOTAPE TECHNICIAN: Folks on the phone, please.

MS. MEADERS: This is Kim Meaders for pharmacies.

THE VIDEOTAPE TECHNICIAN: Anyone else?

MR. FILIPOVITCH: Stephan Filipovitch for various Texas doctors.

THE VIDEOTAPE TECHNICIAN: Will the court reporter please administer the oath.

\- - -

THOMAS M. ZIZIC, M.D., after having been duly sworn, was examined and testified as follows:

\- - -

EXAMINATION

\- - -

BY MR. MIZGALA:

Q. Good morning, Dr. Zizic.

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

mouth, the nose, the gastrointestinal tract, the lungs, the heart, the kidney, the liver, the spleen, the pancreas, muscles, nerves, brain, spinal cord, skin, joints. And so if one is going to be able to differentiate what lupus or arteritis, for example, is doing in an end organ, then one must know what all other diseases are doing in that end organ so you can differentiate whether it is due to the connective tissue disease or something else. So, to have that breath of knowledge, one has to stay abreast of all internal medicine, which is why rheumatologists, particularly the Hopkins-trained rheumatologists, have had a reputation over the years of being superb diagnosticians, starting with Sir William Osler to Mac Harvey to Phil Tumulty, all of the Hopkins greats.

Q. Doctor, would you say in your patient population that muscle pain and weakness is a common symptom?

A. It is indeed.

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

Q. And that that muscle pain and weakness, those symptoms, are not diagnostic of any single disorder in and of themselves?

A. Muscle pain more than muscle weakness. Once one has muscle weakness, particularly not of a generalized sort, but proximally, one is generally dealing with a myopathy of some sort or another. So, with that caveat, I think you're correct.

Q. But there are a variety of myopathies that can cause proximal muscle weakness; correct?

A. Relatively limited, frankly. One has an inflammatory myositis. One may have an alcohol-induced myopathy. One may have an endocrine-induced myopathy. One may have a toxin or drug-induced myopathy. But relatively limited differential diagnosis when one gets muscle weakness proximally.

Q. But still in doing this superb diagnostician job that you

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

Q. Would you also use things like quantitative strength testing?

MS. FLEISHMAN: I'm sorry, quantitative --

MR. MIZGALA: Strength testing.

THE WITNESS: I think one may use evidence such as manual muscle strength testing in the hands of a proper observer like myself, who has done a lot of manual muscle testing on patients over the years. Yes, I think that's objective evidence of weakness.

BY MR. MIZGALA:

Q. Doctor, would you agree that when evaluating a patient for muscle pain, myalgia, with or without weakness, it is necessary to perform a differential diagnosis?

A. Yes.

Q. Would you agree that muscle pain is one of the most common complaints

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

encountered in the practice of medicine, especially in the elderly?

A. Yes.

Q. And that muscle pain has a myriad of possible causes?

A. Yes.

Q. And in doing this diagnosis or evaluating a patient for muscle pain, you have to review the medical record and analyze it to ascertain whether potential causes of muscle pain were present prior to symptom onset; correct?

A. Correct.

Q. Concomitant illnesses must be considered as potential causes of muscle pain; correct?

A. Correct.

Q. Common disorders that potentially cause muscle pain and/or weakness include stroke; right?

A. Well, clearly, when you get a hemiparesis or hemiplegia, but, yes, and that'd be very discernible. It's unilateral most often, and it's going to

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

be -- well, go on.

Q. Mononeuropathies could cause muscle pain and/or weakness?

A. A mixed mononeuritis multiplex could cause muscle pain and weakness almost invariably of the distal muscles, usually responsible for a wrist drop or a foot drop. So, again, easily differentiatable, but, yes, it could cause if you know what you're looking for. It takes about a nanosecond and a half to exclude it, but that's right.

Q. Doctor, I'm just talking about pain and weakness generally.

A. I understand what you're talking about. When you give me specific diagnoses like that, I don't want someone to think that there's this nebulous kind of thing. If you've got a hemiparesis or hemiplegic, you know it. If you have got a mononeuritis multiplex, you know it. I mean, you can see it. That is a host of differential diagnoses. Some can be -- I wouldn't even put them in my paper. As I

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

was thinking about them, they go through my head and I exclude them. So, those two would be immediately excludable if they are not present.

Q. Polyneuropathies can cause pain and weakness?

A. Polyneuropathy can cause pain and weakness, but it's usually generalized distal pain. The weakness is associated with the motor part. Again, it's distal, but, yes --

Q. Radiculopathies?

A. Radiculopathies can cause pain going down a specific dermatome from neck, shoulder to hand or finger or trunk to foot and can cause weakness as a late result.

Q. Motor neuron disease?

A. Motor neuron disease causes weakness. It's not generally a cause of pain.

Q. Parkinson's disease?

A. Parkinson's, again, generally not pain. One gets rigidity,

08/12/04
04:29 PM ET
Baycol MDL 1431

muscle rigidity and significant weakness, but not pain usually.

Q. Peripheral vascular disease?

A. Peripheral vascular disease can cause pain, cramping particularly of a claudicatory nature, i.e., pain at exercise that goes away with rest, again, usually very differentiatable, shouldn't be a problem for even a second year Hopkins med student.

Q. Polymyalgia rheumatica?

A. Polymyalgia rheumatica, generally causes pain much more than weakness, proximal muscles, and weakness is not a part of the picture. You can have perceived or suggested weakness because the patient has pain, but you can get positions where you can show that the muscles are perfectly strong. They just have pain in the proximal extremities.

Q. Arthritis?

A. Well, certainly arthritis, and there's a multiplicity of arthropathies from spondyloarthropathies

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

to rheumatoid arthritis, to psoriatic arthritis to osteoarthritis, but, again, the pain is clearly related to joints, movement of the joints. Most often in the conditions there's some inflammation within the joints, therefore, increased synovial fluid and swelling in the joints. I can't imagine missing that for -- I mean, mistaking that for myopathy.

Q. And, Doctor, concomitant medications can also cause muscle pain and weakness; correct?

MS. FLEISHMAN: Do you mean in combination therapy?

MR. MIZGALA: No.

BY MR. MIZGALA:

Q. I just mean like corticosteroids can cause drug-induced muscle weakness; correct?

A. Corticosteroids -- that's like concomitant was --

Q. I'm sorry.

A. Corticosteroids can

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431

certainly cause atrophy of type II muscle fibers, and so one can see weakness, again, of the proximal muscles, but not pain.

MS. FLEISHMAN: Let's take a break.

THE VIDEOTAPE TECHNICIAN: Off the record, 2:18.

- - -

(Whereupon, there was a recess.)

- - -

THE VIDEOTAPE TECHNICIAN: On the record, 2:34.

BY MR. MIZGALA:

Q. Doctor, we were just discussing objective types of evidence you could use to diagnose a myopathy; correct?

A. I thought we were discussing the various disorders which could cause muscle pain and --

Q. You're right.

Before that we were

E-FILED
08/12/04
04:29 PM ET
Baycol MDL 1431

# Exhibit D

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

| | | |
|---|---|---|
| In re: Baycol Products Litigation | ) | File No. MDL 1431 (MJD/JGL) |
| | ) | Minneapolis, Minnesota |
| | ) | February 24, 2004 |
| | ) | 10:00 a.m. |

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES
For the Plaintiffs: CHARLES ZIMMERMAN, ESQ.
RICHARD LOCKRIDGE, ESQ.
RONALD GOLDSER, ESQ.
RANDY HOPPER, ESQ.
VICTORIA MANIATIS, ESQ.
KEN SUGGS, ESQ.

For Defendant Bayer: ADAM HOEFLICH, ESQ.
GENE SCHAERR, ESQ.
PETER SIPKINS, ESQ.
SUSAN WEBER, ESQ.
DOUGLAS MARVIN, ESQ.
EUGENE SCHOON, ESQ.

For Defendant FRED MAGAZINER, ESQ.
GlaxoSmithKline:

Court Reporter: LORI A. CASE, RMR-CRR
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
(612) 664-5104

Proceedings recorded by mechanical stenography;
transcript produced by computer.

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431



MR. ZIMMERMAN: And I think we did just address that, so we will move on. Would that also apply to F as well?

MR. HOEFLICH: It would apply to F, but it would not apply to G.

MR. ZIMMERMAN: All right. G is a matter of some concern to the PSC. G is -- at the last conference or it may have been at the conference before this we had indicated to the court that we felt it was very important for what we call a science and medicine tutorial, which isn't the best of words, but that's what we have been calling it, a presentation to the court of what the science and medicine is saying on one side and what the science and medicine is saying on another, be provided to the court so we are not talking about this in abstractions and that the court and all parties really understand a little bit about the medicine when we are talking about what Bayer does -- what Baycol does in the system, what a muscle injury is, what it looks like, et cetera, et cetera.

And we have begun to prepare for that and recently we had a conference where the experts were brought together to start preparing for that and we did some videotaping of their presentations to the court, for the court.

Defendants through some -- during depositions saw

E-SERVED
08/12/04
04:29 PM ET
Baycol MDL 1431



a document that one of the experts had, which was the instructions on where this was taking place and, you know, where the expert was supposed to be for his -- for this meeting with the other experts and with counsel, and now defendants are making a motion that they want copies of all the videotapes or all of the -- all of the taping that was done at this conference.

We object to that and we want the court to know that this is bubbling up into a concern that's going to be brought before the court probably with some -- for some motion practice. We have yet to respond formally to this request. It just occurred. The conference was just last week in Miami.

But it's not the kind of thing that we expect to be the subject of discovery, when we are preparing something for the court pursuant to a disclosure that we made to the court, I think, about 30 or 60 days ago.

But it is going to become the subject of some disagreement and dispute, whether or not this is the type of thing that has to be exchanged between counsel. We consider it work product. We consider it confidential information. They somehow think it's important for them to review.

And so this issue isn't joined at this point. It's bubbled up into a concern that I wanted to tell the

08/12/04
04:29 PM ET
Baycol MDL 1431



court about because it's part and parcel of what I told the court last time and I believe the court supported wholeheartedly, which was a presentation of both sides' science so that we could have a better understanding of the mechanisms of injury, if you will, that were brought about by Baycol.

MR. HOEFLICH: Your Honor, when a plaintiff's lawyer has a conversation of any sort with a testifying expert whom they've paid and retained to give testimony at trial, the opposing counsel is entitled to discovery of those communications. That's textbook law that all practicing counsel know.

We are now in a situation where the plaintiffs have taken the position that conversations they have with experts in hallways, during breaks over lunch, that conferences that they're having where they videotape their experts are work product.

Well, once you put your expert up to testify, that's not a consulting expert and the other side is entitled to discovery on what communications you have with them. The PSC is taking a different position, and we disagree.

And we are going to -- if they tell us, as Mr. Zimmerman is suggesting, that we are not entitled to that discovery or they take the position that the work of

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431



their experts is their work product or that there's a privilege that applies, as I guess they have taken the position in depositions, we will be filing a motion to compel on that.

THE COURT: Okay.

MR. MAGAZINER: Your Honor, just because we have gone to the end of the agenda, before we get to motions I thought I would come back to the question Your Honor asked earlier, because I have received information from Philadelphia in the conference on the Rushton case, which is due to start Monday. The court has said it expects it to be a four week trial.

THE COURT: This tutorial to the court is becoming more complicated than I expected it to be. I thought you all would just meet and have the appropriate exchange of whatever it is that I am supposed to see. That's usually how it's done.

MR. HOEFLICH: We did too, Judge.

THE COURT: In patent cases it's just a basic outline. I don't know where you are going with this. I just don't want it to be -- get too complicated and that I end up having a couple dozen motions dealing with this issue, because it's just easier for me to try the case. I can listen to the testimony at that point. I thought you were just going to put something together quickly and it

E-SERVED 08/12/04 04:29 PM ET Baycol MDL 1431



would be --

MR. ZIMMERMAN: That's precisely what we wanted to do. All we did was we got the experts to tell us what they are going to say so we know what they are going to say, and we are happy to provide what they are going to say to defense counsel. There's no mystery to it. It's just all of a sudden it's been elevated into some you must turn this over kind of stuff. We will talk it through.

THE COURT: Yeah, talk about it. Are we going to move into motions at this time?

MR. ZIMMERMAN: Yes, Your Honor.

THE COURT: All right. Let's take a short recess. Which motion do we want to take up first?

MR. ZIMMERMAN: Well, I suspect the one that's probably the most -- perhaps the jurisdiction over the -- well, the jurisdiction over Medicare liens. Let me think if -- well, I don't know. I don't know that there's any proper way to do it. Maybe the Italian motion because we have counsel here from out of town. Maybe just in the order that we've got it.

THE COURT: But we have counsel from out of town for the Medicare lien too, I believe.

MR. ZIMMERMAN: Oh, I didn't know that. I'm sorry. I thought we just had --

MS. BURDETTE: Yes, Your Honor.