E-SERVED
09/17/04
06:08 PM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

In re: BAYCOL PRODUCTS LITIGATION | MDL No. 1431 (MJD/JGL)

This Document Relates to:

ALL CASES

---

# PSC'S SURREPLY TO BAYER'S MOTION TO QUASH PLAINTIFFS' REQUEST FOR A LETTER ROGATORY PURSUANT TO THE HAGUE CONVENTION

## INTRODUCTION

In their Reply, Defendants insist on imposing non-existent and baseless standards of Italian law. The issue before this Court is whether Plaintiffs' request for a Letter Rogatory is the most appropriate and reasonable course of action for discovery of the Bayer SpA documents. See *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp.2d 469, 474 (D.Del. 2003). Plaintiffs' have both enunciated and met the factors relevant to the Court's international comity analysis, and their request for a Letter Rogatory should be granted.

## ARGUMENTS

### I. PLAINTIFFS' REQUEST FOR A LETTER ROGATORY MEETS THE THRESHOLD OF FACTORS LISTED IN *AEROSPATIALE*.

Bayer attempts to have this Court adopt non-existent factors to support an argument that Plaintiffs have not met the threshold of a showing required for issuance of the Letter Rogatory. In *Aerospatiale*, the Supreme Court listed general factors relevant to this Court's review in determining whether discovery should proceed via the Convention or the Federal Rules of Civil Procedure.

E-SERVED
09/17/04
06:08 PM ET
Baycol MDL 1431

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. S.D. Iowa*, 482 U.S. 522, 544 n. 28 (1987). The factors enumerated by the Court address the following: (1) the importance of the documents to the litigation and the degree of specificity of the request; (2) the origin, source and availability of the documents; and (3) the extent to which the request would affect the competing interests of the U.S. and the foreign state where the documents are located. *Id.*

Here, simply and straightforwardly, Plaintiffs seek discovery of the documents seized in the Italian criminal investigation of Lipobay/Baycol and Defendant Bayer A.G.'s affiliate, Bayer SpA. The Bayer SpA documents directly relate to the same drug and injuries that are at issue in the *Baycol Products* litigation, MDL 1431. The documents are not in the United States and are currently in the possession of the Italian Public Prosecutor's office, who is not a party to the litigation. Denial of the request for a Letter Rogatory would harm the interests of Plaintiffs for a thorough and complete discovery in the *Baycol* litigation.

By granting the request and issuing the Letter Rogatory, this Court would still respect the Italian court's authority as it would still have the opportunity to decide whether to grant, deny or modify Plaintiffs' document request in accordance with Italian law. The Letter Rogatory gives a "participatory role to [Italy] in the evidence-gathering process, enabling it to ensure that [Italy's] sovereign interests are not violated." James Chalmers, *The Hague Evidence Convention and Discovery Inter Parties: Trial Court Decisions Post-Aerospatiale*, 8 TUL. J. INT'L & COMP. L. 189, 214 (2000). Applying the proper factors and analysis in this case, issuing the Letter Rogatory would not harm the interests of the sovereignties involved; would satisfy the elements of comity; and, would be the most effective and efficient procedural device in requesting the information located in Italy.

E-SERVED 09/17/04 06:08 PM ET Baycol MDL 1431

## II. CONTRARY TO DEFENDANTS' ASSERTIONS, THE BURDEN OF SHOWING FOR PLAINTIFFS IS NOT HIGH.

In its Reply, Bayer argues that Plaintiffs must meet additional factors and a higher burden in persuading the Court to issue the Letter Rogatory. Defendants' line of reasoning is baseless, inconsistent with *Aerospatiale* and would severely undermine the availability of the Hague Convention as an option for seeking discovery outside of the United States.

First, Bayer presumes that *Aerospatiale*'s "particularized analysis" creates a greater burden of showing for Plaintiffs. Bayer's Reply at 4. Bayer's emphasis on the "particularized analysis" is misplaced. "Particularity" is not a standard but, rather, a reference as to *how* the review of comity is case-specific. The *Aerospatiale* Court held that the Hague Convention procedures were not exclusive or mandatory for obtaining documents and information located in foreign signatory's territory. 482 U.S. at 522; *see also* 482 U.S. at 544 n. 28. Such a requirement would preclude any sort of comity analysis particular to the situation. *Id.* at 544. "The exact line between reasonableness and unreasonableness in **each** case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." *Id.* at 546 (emphasis added).

Second, Defendants claim without support that a higher showing of relevance is required of Plaintiffs. *See* Bayer's Reply at 2 & 11 n. 7. No where does *Aerospatiale* support the purported standards Defendants attempt to impose. In fact, the Court clearly states that although resort to the Convention is not mandatory, it is an option to, and "available whenever," the parties seeking information through the proper channels provided by the Convention. *Aerospatiale*, 482 U.S. at 541; *see also Tulip Computers*, 254 F. Supp.2d at 474 ("That burden [of persuading the court to proceed pursuant to the Hague Convention] is not great.")(citing *Aerospatiale*). The degree of relevance or

E-SERVED 09/17/04 06:08 PM ET Baycol MDL 1431

specificity of the request cannot be so burdensome that Plaintiffs cannot meet the standard. For example, it is nearly "difficult or impossible" for Plaintiffs to predict the information currently within the control of the Italian prosecutor. *Aerospatiale*, 482 U.S. at 546 n. 30. Plaintiffs know that the information relates to the facts of this case. Discovery related to the specifics in the documents is precisely why Plaintiffs have resorted to the Hague Convention procedures. To uphold Defendants' so-called "standards" of relevance and specificity would make the Convention inaccessible to any party seeking information from a foreign signatory state.

Third, contrary to Bayer's assertions, the documents requested are not required to lead to direct use at trial. Plaintiffs certainly are not asking this Court to make such a finding at this time.[1] *See* Bayer's Reply at 2 & 7. Under *Aerospatiale*, the lower court need only determine that a discovery request under the Hague Convention results in "effective" discovery. 482 U.S. at 544. Here, the PSC's request is neither improper or an abuse of discovery. The purpose of the Letter Roagtory is for discovery of information "relevant and probative" to the *Baycol Products* litigation. *Aerospatiale*, 482 U.S. at 546.

"[T]he burden is not great," as the Convention procedures were created to facilitate the gathering of evidence. *Tulip Computers Int'l B.V., v. Dell Computer Corp.*, 254 F. Supp.2d 469, 474 (D. Del. 2003)(citing *Aerospatiale*, 482 U.S. at 541);[2] *see also* PSC's Response at 9. While the

---

[1] Defendants again try to dilute the issue with accusatory assumptions about Plaintiffs. Plaintiffs can easily revise the Letter incorporating language this Court deems appropriate, if necessary.

[2] Without providing any support or analysis, Bayer states that the U.S. District Court of Delaware in *Tulip Computers* was wrong not to do a step-by-step *Aerospatiale* analysis. *See* Bayer's Reply at 10. However, there is nothing to indicate that Court's analysis in *Tulip Computers* fell short of *Aerospatiale*. The District Court considered the facts before it, applied the *Aerospatiale* factors and concluded that application of the Hague Convention procedures was appropriate. 254 F. Supp.2d at 474.

E-SERVED 09/17/04 06:08 PM ET Baycol MDL 1431

Court should factor into its decision "'considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficiency of alternative formats for discovery,'" the imposition of the higher burden proposed by Bayer is not required and would substantially restrict the Convention's availability and purpose. *Tulip Computers*, 254 F.Supp.2d at 474 (quotation omitted).

### III. CONSIDERATION OF THE ARTICLE 23 RESERVATION AND ITALIAN SOVEREIGNTY SUPPORTS ISSUANCE OF A LETTER ROGATORY.

Contrary to Defendants' assertions, the Article 23 Reservation and Italian law should be considered in the analysis of Plaintiffs' request. In this instance, there is clearly no consensus or definitive guidance on the interpretation of Italy's Article 23 Reservation and Italian law. It is precisely because of the questions that arise that Plaintiffs believe the Italian court should be afforded the opportunity to grant, deny or modify the Letter Rogatory. To assume no questions and proclaim certainty from a biased standpoint, as Defendants do, is the type of speculation that Justice Blackmun specifically warned against in his concurrence and dissent in *Aerospatiale*.[3]

As previously explained in the PSC's Response, the relationship between Italian law, the Hague Convention and U.S. discovery procedures is unclear, particularly regarding, the well-recognized tension between the various definitions of "pretrial discovery" and Article 23. *See* PSC's Response at 4-6; *see also* Geffers Supp. Decl. ¶ 2a (attached to Hopper Aff. as Ex. A); Darrell

[3]"All too often . . . courts have simply *assumed* that resort to the Convention would be unproductive and have embarked on speculation about foreign procedures and interpretations." 482 U.S. at 567. Defendants attempt to disparage Justice Blackmun's concurrence and dissent. However, *Aerospatiale* was a 5-4 decision, and his opinion is noteworthy. While the majority held that procedures for discovery requests had to be reviewed on a case-specific basis, they refused to "articulate specific rules to guide this delicate task of adjudication." 482 U.S. at 546. For lower courts, Blackmun's opinion provides a source of guidance that the majority would not confer. *Id.* at 548; *see also Tulip Computers*, 254 F. Supp.2d at 474-75.

E-SERVED 09/17/04 06:08 PM ET Baycol MDL 1431

Prescott & Edwin R. Alley, *Effective Evidence-Taking Under the Hague Convention*, 22 INT'L LAW. 939, 954 (1988). Enforcement of Italy's unqualified Article 23 Reservation may not always operate *verbatim* because otherwise, U.S. litigants could never gather evidence from the fellow Hague Convention signatory.[4] *See* Prescott & Alley, 22 INT'L LAW. at 956 (observing that for U.S. litigants, any discovery done abroad must occur prior to trial. "Once the trial is commenced, there is rarely enough time to pursue Convention procedures before the trial is concluded.").

Bayer insists that Italy's unqualified Article 23 reservation is without question "clear and . . . dispositive." Bayer's Reply at 5. Article 23 and its use of "pre-trial discovery," however, is hardly a model of clarity. The fluidity of Article 23 usually allows for discovery to proceed: "[c]ontrary to the misconception surrounding the purpose of article 23 . . . carefully drafted, specific document requests will, in the case of many contracting states, stand a good chance of execution." Prescott & Alley, 22 INT'L LAW. at 954. Bayer provides no support showing that Italy will prevent execution here.[5]

---

[4]For the Hague Evidence Convention to operate properly, Bayer suggests limiting the Convention to depositions and interrogatories for those signatories with Article 23 reservations. *See* Bayer's Reply at 6 n. 3. Parties in the U.S. seeking documents would therefore have no choice but to proceed under the Federal Rules of Civil Procedure. Bayer also suggests an antagonistic response where the U.S. could withhold documents from other Convention signatory countries refusing to honor document requests from the U.S. Bayer's Reply at 6 n. 3. Here, Italy has yet to have the opportunity to refuse the request, yet Defendants automatically presume coercion as the appropriate measure to gather the information. Such policies would undermine the purpose and effect of the Hague Convention and Italy's interest and right as a sovereignty and run contrary to principles of international comity. *See Aerospatiale*, 482 U.S. at 543 n. 27 (defining comity as the "spirit and cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states").

[5]Bayer continues to cite to the State Department's web-site that posts non-authoritative information on Italy's Article 23 reservation. *See* Bayer's Memorandum in Support of Its Motion to Quash at 5; Bayer's Reply at 6. As Plaintiffs mentioned in their Response, the State Department disclaims any authoritative weight on Italy's Article 23. *See* PSC's Response at 5

E-SERVED 09/17/04 06:08 PM ET Baycol MDL 1431

In addition to the Article 23 Reservation, unresolved questions of Italian law remain. *See* PSC's Response at 6-7. Plaintiffs do not wish to engage in a fruitless debate over Italian law with this honorable Court as the definitive authority on Italian law is the Italian court. Bayer cannot automatically presume a prohibition. Furthermore, possible denial by an Italian court is not an *ipso facto* defense that will bar a party's letter request. *See Aerospatiale*, 482 U.S. at 542 ("We therefore do not believe that an American court should refuse to make use of Convention procedures because of a concern that it may ultimately find it necessary to order the production of evidence that a foreign tribunal permitted a party to withhold.); *see also* PSC's Response at 7 n. 8.

Even assuming *arguendo* that the file cannot be unsealed until the prosecutor formally notifies the investigated persons of the closing of the preliminary investigation, which Plaintiffs dispute, the prohibition is temporal. A year has almost passed since the expiration of the term of Dr. Guariniello's investigation of the Bayer employees, and it may be reasonably presumed that the prosecutor will soon release formal notifications. *See* Geffers Supp. Decl. ¶ 2b. Upon release, the documents would then be available for disclosure and subject to the requests in the Letter Rogatory and the Italian court's review.

**CONCLUSION**

The only issue before the Court is whether the issuance of a Letter Rogatory, would be effective and appropriate. Defendants' baseless arguments, false allegations and incorrect assumptions on Italian law are clearly a tactic to confuse the issue. Considering the circumstances of the case, the request and the claims and interests of the parties concerned, Plaintiffs' resort to the Hague Convention is warranted. *Aerospatiale*, 482 U.S. at 546. For the foregoing reasons, the PSC

---

n.7.

E-SERVED
09/17/04
06:08 PM ET
Baycol MDL 1431

respectfully requests that Plaintiffs' request for a Letter Rogatory pursuant to the Hague Convention be granted and Bayer's Motion to Quash be denied in its entirety.

Dated: September 17, 2004

ZIMMERMAN REED, P.L.L.P.

By: __________________________________________
Charles S. Zimmerman, #120054
Ronald S. Goldser, #35932
Robert R. Hopper, #208760
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Tel: (612) 341-0400

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Richard A. Lockridge, #64117
Robert K. Shelquist, #21310X
Yvonne M. Flaherty, #267600
Sunny H. Kim, #3984622 (NY)
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900

***Co-Lead Counsel for Plaintiffs***

E-SERVED
09/17/04
06:08 PM ET
Baycol MDL 1431

***Plaintiffs' Executive Committee***

Elizabeth J. Cabraser
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
30th Floor, 275 Battery St.
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

Stanley M. Chesley
Waite, Schneider, Bayless & Chesley Co.
1513 Fourth and Vine Tower
One West Fourth Street
Cincinnati, OH 45202
Telephone: (513) 621-0267

John R. Climaco
Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A.
1226 Euclid Avenue
Suite 900
Cleveland, OH 44115-1891
Telephone: (216) 621-8484

Dianne M. Nast
Roda & Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000