E-SERVED
09/20/04
08:01 PM ET
Baycol MDL 1431

# Exhibit B

E-SERVED
09/20/04
08:01 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

| | | |
|---|---|---|
| In re: Baycol Products Litigation | ) | File No. MDL 1431 (MJD/JGL) |
| | ) | Minneapolis, Minnesota |
| | ) | February 24, 2004 |
| | ) | 10:00 a.m. |

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES

For the Plaintiffs: CHARLES ZIMMERMAN, ESQ.
RICHARD LOCKRIDGE, ESQ.
RONALD GOLDSER, ESQ.
RANDY HOPPER, ESQ.
VICTORIA MANIATIS, ESQ.
KEN SUGGS, ESQ.

For Defendant Bayer: ADAM HOEFLICH, ESQ.
GENE SCHAERR, ESQ.
PETER SIPKINS, ESQ.
SUSAN WEBER, ESQ.
DOUGLAS MARVIN, ESQ.
EUGENE SCHOON, ESQ.

For Defendant GlaxoSmithKline: FRED MAGAZINER, ESQ.

Court Reporter: LORI A. CASE, RMR-CRR
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
(612) 664-5104

Proceedings recorded by mechanical stenography;
transcript produced by computer.

E-SERVED
09/20/04
08:01 PM ET
Baycol MDL 1431



MR. ZIMMERMAN: And I think we did just address that, so we will move on. Would that also apply to F as well?

MR. HOEFLICH: It would apply to F, but it would not apply to G.

MR. ZIMMERMAN: All right. G is a matter of some concern to the PSC. G is -- at the last conference or it may have been at the conference before this we had indicated to the court that we felt it was very important for what we call a science and medicine tutorial, which isn't the best of words, but that's what we have been calling it, a presentation to the court of what the science and medicine is saying on one side and what the science and medicine is saying on another, be provided to the court so we are not talking about this in abstractions and that the court and all parties really understand a little bit about the medicine when we are talking about what Bayer does -- what Baycol does in the system, what a muscle injury is, what it looks like, et cetera, et cetera.

And we have begun to prepare for that and recently we had a conference where the experts were brought together to start preparing for that and we did some videotaping of their presentations to the court, for the court.

Defendants through some -- during depositions saw

E-SERVED 09/20/04 08:01 PM ET Baycol MDL 1431



a document that one of the experts had, which was the instructions on where this was taking place and, you know, where the expert was supposed to be for his -- for this meeting with the other experts and with counsel, and now defendants are making a motion that they want copies of all the videotapes or all of the -- all of the taping that was done at this conference.

We object to that and we want the court to know that this is bubbling up into a concern that's going to be brought before the court probably with some -- for some motion practice. We have yet to respond formally to this request. It just occurred. The conference was just last week in Miami.

But it's not the kind of thing that we expect to be the subject of discovery, when we are preparing something for the court pursuant to a disclosure that we made to the court, I think, about 30 or 60 days ago.

But it is going to become the subject of some disagreement and dispute, whether or not this is the type of thing that has to be exchanged between counsel. We consider it work product. We consider it confidential information. They somehow think it's important for them to review.

And so this issue isn't joined at this point. It's bubbled up into a concern that I wanted to tell the

E-SERVED
09/20/04
08:01 PM ET
Baycol MDL 1431



court about because it's part and parcel of what I told the court last time and I believe the court supported wholeheartedly, which was a presentation of both sides' science so that we could have a better understanding of the mechanisms of injury, if you will, that were brought about by Baycol.

MR. HOEFLICH: Your Honor, when a plaintiff's lawyer has a conversation of any sort with a testifying expert whom they've paid and retained to give testimony at trial, the opposing counsel is entitled to discovery of those communications. That's textbook law that all practicing counsel know.

We are now in a situation where the plaintiffs have taken the position that conversations they have with experts in hallways, during breaks over lunch, that conferences that they're having where they videotape their experts are work product.

Well, once you put your expert up to testify, that's not a consulting expert and the other side is entitled to discovery on what communications you have with them. The PSC is taking a different position, and we disagree.

And we are going to -- if they tell us, as Mr. Zimmerman is suggesting, that we are not entitled to that discovery or they take the position that the work of

E-SERVED 09/20/04 08:01 PM ET Baycol MDL 1431



their experts is their work product or that there's a privilege that applies, as I guess they have taken the position in depositions, we will be filing a motion to compel on that.

THE COURT: Okay.

MR. MAGAZINER: Your Honor, just because we have gone to the end of the agenda, before we get to motions I thought I would come back to the question Your Honor asked earlier, because I have received information from Philadelphia in the conference on the Rushton case, which is due to start Monday. The court has said it expects it to be a four week trial.

THE COURT: This tutorial to the court is becoming more complicated than I expected it to be. I thought you all would just meet and have the appropriate exchange of whatever it is that I am supposed to see. That's usually how it's done.

MR. HOEFLICH: We did too, Judge.

THE COURT: In patent cases it's just a basic outline. I don't know where you are going with this. I just don't want it to be -- get too complicated and that I end up having a couple dozen motions dealing with this issue, because it's just easier for me to try the case. I can listen to the testimony at that point. I thought you were just going to put something together quickly and it

E-SERVED 09/20/04 08:01 PM ET Baycol MDL 1431



would be --

MR. ZIMMERMAN: That's precisely what we wanted to do. All we did was we got the experts to tell us what they are going to say so we know what they are going to say, and we are happy to provide what they are going to say to defense counsel. There's no mystery to it. It's just all of a sudden it's been elevated into some you must turn this over kind of stuff. We will talk it through.

THE COURT: Yeah, talk about it. Are we going to move into motions at this time?

MR. ZIMMERMAN: Yes, Your Honor.

THE COURT: All right. Let's take a short recess. Which motion do we want to take up first?

MR. ZIMMERMAN: Well, I suspect the one that's probably the most -- perhaps the jurisdiction over the -- well, the jurisdiction over Medicare liens. Let me think if -- well, I don't know. I don't know that there's any proper way to do it. Maybe the Italian motion because we have counsel here from out of town. Maybe just in the order that we've got it.

THE COURT: But we have counsel from out of town for the Medicare lien too, I believe.

MR. ZIMMERMAN: Oh, I didn't know that. I'm sorry. I thought we just had –

MS. BURDETTE: Yes, Your Honor.