E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD/JGL)

This Document Relates to:
Certain Weitz & Luxenberg's Plaintiffs

---

# BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF WEITZ & LUXENBERG'S MOTION TO WITHDRAW AS COUNSEL FOR CERTAIN PLAINTIFFS

---

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

TABLE OF CONTENTS: PAGE

I. Introduction and Background.................................................. 1

II. Settlement Negotiations .............................................................. 3

III. PTO 89: MDL Trial Selection Cases .............................................. 4

IV. PTO 114: MDL Narrowing Protocol .............................................. 5

V. Disengagement.... ....................................................................... 7

VI. Argument.......................................................................................... 8

VII. Conclusion ....................................................................................... 11

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

## I. Introduction and Background

1. The within motion is being made pursuant to Minnesota District Court Local Rule of Procedure §83.7, seeking an order permitting Weitz & Luxenberg, P.C. to withdraw as counsel for the plaintiff's named on the annexed Riders, attached hereto respectively as Exhibits "A," "B" and "C."

2. Rule §83.7 states, in pertinent part, "withdrawal without substitution may be granted only by a motion made before the Court, for good cause shown."

3. Further, Minnesota Rules of Professional Conduct § 1.16(b) states, in pertinent part, "a lawyer may withdraw from representing a client if…the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; or…other good cause for withdrawal exists."

4. Pursuant to *Fleming v. Harris*, 39 F.3d 905, 908 (8th Cir. 1994), "the decision to allow counsel to withdraw is left to the discretion of the district court."

5. It is respectfully submitted that the motion should be granted in all respects, as Weitz & Luxenberg, P.C. has the best interests of its clients in mind, and can demonstrate "good cause" for withdrawal and the Court is certainly within its discretion to permit withdrawal based upon "good cause" as follows:

6. Our office spent nearly three years actively litigating thousands of Baycol cases, both in the MDL, and in the Philadelphia Court of Common Pleas including gathering data from clients, preparing Plaintiff Fact Sheets, conducting depositions of plaintiffs, non-party witnesses, treating and prescribing physicians, and experts. We conducted extensive legal and medical research, and participated extensively in the MDL

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

Trial Selection process pursuant to PTO 89. (See Affirmation of PJP dated September 1, 2004 hereinafter "Aff." at para.4.)

7. Upon entry of PTO 89, we had no less that 45 attorneys and staff members working full time on reviewing, processing and handling these cases, including extensive client contact and review of medical records for purposes of evaluating each individual claim for viability for trial. (Aff. at para. 12.)

8. Moreover, through the next months, we attended 64 depositions related to our Baycol MDL trial cases as a means to further evaluate those we thought had potential viability. A total of 26 depositions were taken in Rhabdomyolysis cases and 38 were taken in non-Rhabdomyolysis cases. (Aff. at para. 13.)

9. Over the past year and several months, we prepared and fully worked up several matters for trial, in the MDL, as well as in Pennsylvania, Ohio and New York State Courts and were involved in extensive settlement negotiations with defendants. (Aff. at para. 5.)

10. After long and careful consideration, however, we reached the conclusion that for those clients who did not demonstrate objective indicia of Rhabdomyolysis, the prospects of settling their cases were nil, and we felt it was against their best interests to proceed to trial. (Aff. at para. 7.)

11. We arrived at this conclusion based upon numerous factors.

## II. Settlement Negotiations

12. First, our office has engaged in extensive settlement negotiations with defendants. To our knowledge, defendants have steadfastly refused to settle any case

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

where there is no objective indicia of Rhabdomyolysis, resulting from ingestion of Baycol. Despite the entry of PTO 127, and our proposal of in excess of 100 cases of medically documented muscle injury for settlement, defendants have refused to consider settlement of any cases, other than those designated as "PTO 127 A. Rhabdomyolysis" cases. (Aff. at para. 20.)

13. In fact, our office secured expert reports on behalf of a number of clients documenting causation of confirmed muscle injury, and even in those cases, defendants refused to consider even a nominal settlement. Accordingly, there appears to be no prospect of settling these so-called myalgia cases without costly, lengthy trials. (Aff. at paras. 17-19.)

## III. PTO 89: MDL Trial Selection Cases

14. Second, over the past year, Weitz and Luxenberg, P.C. has gone through the painstaking process of evaluating, via depositions, examining medical records and consulting with experts, its share of approximately 160 of 220 cases designated as MDL Trial Cases pursuant to PTO 89. After extensive and expensive evaluation, dozens of depositions all over the country, and discussions with our clients, it was determined that *none* of the non-Rhabdomyolysis cases (all but 5 of the total selected as trial cases) had a reasonable prospect of settling, or a sustainable verdict value in excess of the expenses they would each require to proceed for, among other things, expert reports, party and treater depositions, and ultimately trials on their merits. It should be noted that the same conclusion was reached by the plaintiffs' lawyers who were responsible for the non-Rhabdomyolysis cases of the remaining 60 – none was ultimately considered worthy of a

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

trial. This conclusion, on a cross-section of all of approximately 200 cases by all attorneys with cases subject to PTO 89, is instructive with respect to the universe of cases as a whole. Specifically, it is unlikely that these cases have any real value over and above expenses. (Aff. at paras. 11, 14 & 15.)

## IV. PTO 114: MDL Narrowing Protocol

15. Third, pursuant to this Court's "narrowing protocol," PTO 114, each of these thousands of claims will require expert evaluation on a case-specific basis. Our experience in the Pennsylvania litigation (where we were required to, and did obtain case-specific expert reports in myalgia cases) was instructive on two fronts. First, as even if the expert reports were positive, defendants did not consider settlement. Second, the factors that went in to the expert's determination (alternate causation, lack of clarity of medical records, other injuries) led us to realize that despite some objective evidence of muscle injury in a client's medical records, a quality expert could not necessarily generate a positive report. Thus, whether negative or positive, the requirement to serve case-specific expert reports is an enormous expense that is unlikely to ever be recouped in any individual case. Since the client is ultimately responsible for expenses, we advised them of this reality and advised them that they should not proceed in the face of it. 2700 clients agreed. (Aff. at paras. 17-19.)

16. A winning trial is one that would result in substantial Plaintiffs' verdict. It is Weitz & Luxenberg's opinion, however, that any a trial victory in these myalgia cases will be a Phyrric Victory in that the limited monetary verdict value would be outstripped by the massive costs. It is not lost on Weitz & Luxenberg, nor taken lightly, that there

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

have been three Baycol trials conducted by competent counsel across this country that have each resulted in Defense verdicts. While Weitz & Luxenberg itself has prepared three cases for trial in three state courts, and was very motivated to conduct same, we can not put our own interests before those of our clients: a trial of non-Rhabdomyolysis cases is not in our clients' interests. (Affs. at para. 21.)

17. The above-stated conclusions were arrived at by countless attorney and paralegal hours, extensive legal and medical research, collection and analysis of medical records, dozens of plaintiff, non-party and physician depositions, and millions of dollars in expenses incurred by Weitz & Luxenberg in litigating all of its cases.

## V. Disengagement

18. Upon making this determination, Weitz & Luxenberg, P.C. has proceeded, since early June 2004, to disengage in nearly 5000 cases we feel will not result in positive settlement value to our plaintiffs. This undertaking related to virtually all of our remaining inventory of cases of plaintiffs whose history and/or medical records do not support a diagnosis of Rhabdomyolysis. The process by which we litigated our cases in the Philadelphia Court of Common Pleas, and through the MDL Trial selection process was instructive in that the Rhabdomyolysis cases were likely the only ones which had value in excess of the expenses that had to be put forth on each. (Aff. at para. 7.)

19. Upon advising our clients that while their cases certainly had merit, it was our feeling that they lacked value, we told them they had several options, specifically, they could: 1) agree to dismissal of their claims, 2) secure substitute counsel, or 3) be subject to a motion by our office to withdraw as counsel. (Aff. at para. 8.)

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

20. This motion relates to those clients who have indicated they wish to secure substitute counsel but have not yet done so (Exhibit "A"); those who were informed their failure to exercise options "1" or "2" would result in a motion to withdraw (Exhibit "B"); and those who failed to respond to our notification, and to whom follow up letters indicated a failure to respond would result in a motion to withdraw (Exhibit "C").[1] (Aff. at para. 9.)

## VI. Argument

21. It is respectfully requested that the Court permit Weitz & Luxenberg, P.C. to withdraw as counsel for each of it's clients whose cases is currently pending in the MDL where a diagnosis of Rhabdomyolysis has not been made; that the Court stay all proceedings for a period of ninety (90) days; that plaintiff be granted a period of ninety (90) days to secure new counsel; and that the deadline to comply with the rigors of PTO 114 and PTO 127 be extended for a period of ninety (90) days.

22. Plaintiffs recognize that while a motion on so many cases is an unorthodox means by which withdrawal as counsel is sought, it is respectfully submitted that it is the most cost-effective method for all parties involved. It involves identical issues relative to each case, and would surely obviate a tremendous burden on the resources of this Honorable Court as well as all parties involved.

23. Weitz & Luxenberg P.C. has met its burden of establishing "good cause" to withdraw as the rules require.

---

[1] Currently there are approximately 60 clients for whom Weitz & Luxenberg cannot assure received our correspondence & we are endeavoring to locate same.

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

24. There is no dubious motive behind Weitz & Luxenberg's instant motion. There is no claim of inconvenience, nor any desire to be rid of our clients. To the contrary, we want to afford our clients every possible opportunity to make decisions on their cases although they may not comport with our advice and/or secure new counsel should they so desire. If there were any real clues that these cases could yield positive recoveries for our clients, Weitz & Luxenberg would stand to make millions in fees. In the end, though, these cases will either be lost, dismissed or any recovery will be outstripped by expenses or fees or both. That clearly is not something which is in these clients' best interests.

25. Defendants have recently opposed motions to withdraw pending before this Honorable Court by firms other than Weitz & Luxenberg, P.C. Generally, defendants argue that plaintiffs' counsel should not be permitted to withdraw absent "good cause," and they recite examples of fee disputes that fail to meet the good cause standard [*See, e.g. In re Albert*, 277 B.R. 38, 46 (Bankr. S.D.N.Y. 2002) "nonpayment of fees alone is insufficient cause for the withdrawal of counsel; and *Broughten v. Voss*, 634 F.2d 880, 882-83 (5th Cir. 1981)]." Such an argument is irrelevant to the matters subject to the instant motion. In fact, in the cases from which Weitz & Luxenberg, P.C. seeks to withdraw, it stands to forgo tens of thousands of dollars in expenses it will never recoup.

26. From a procedural standpoint, defendants have sought to hold plaintiffs' counsel to the burden of providing a detailed statement of cause to justify the court's grant of the motion. In their previous opposition, defendants have cited two criminal cases that stand for this proposition [*United States v. Wild*, 92 F.3d 304, 307 (5th Cir. 1996); *United States v. Hall*, 35 F.3d 310, 313 (7th Cir. 1994)]. Indeed, as set forth

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

above, Weitz & Luxenberg, P.C. has clearly set forth the reasons it believes good cause exists warranting permission to withdraw. While we will, of course, submit a supplemental affirmation if the Court requires, it is respectfully requested that the Court not demand that Weitz & Luxenberg, P.C. articulate with specificity the relative merits of any particular case, as it could potentially prejudice a plaintiff before the Court as well as alert defendants to confidential information.

27. Lastly, the oppositions filed by defendants in other matters address the concern that should counsel in a mass tort action be permitted to withdraw, the litigation would be awash with *pro se* plaintiffs and cause unnecessary delay, burden and expense to the Court and to defendants. There is no evidence that our clients will flock to the courthouse seeking to represent themselves. Precious few of our clients have indicated *any* desire to proceed *pro se* based upon our initial rejections.

28. As the foregoing demonstrates, Weitz & Luxenberg, P.C. has enumerated good cause for this Court, in its discretion, to permit it to be relieved as counsel for its clients with non-Rhabdomyolysis Baycol cases presently pending in the MDL on the Riders annexed as Exhibits "A," "B," and "C" respectively.

## VII. Conclusion

29. Accordingly, it is respectfully requested that the Court permit Weitz & Luxenberg, P.C. to withdraw as counsel for each of its clients whose cases is currently pending in the MDL that are set forth on the Riders annexed as Exhibits "A," "B," and "C" respectively; that the Court stay all proceedings for a period of ninety (90) days; that plaintiff be granted a period of ninety (90) days to secure new counsel; and that the

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

deadline to comply with the rigors of PTO 114 and PTO 127 be extended for a period of ninety (90) days.

Dated: September 2, 2004
New York, New York

Respectfully Submitted,

Perry Weitz, Esq.
Arthur Luxenberg, Esq.
Robert Gordon, Esq.
Paul Pennock, Esq.
Victoria J. Maniatis, Esq.
Daniel C. Burke, Esq.
**WEITZ & LUXENBERG, P.C.**
Attorneys for Plaintiffs
180 Maiden Lane
New York, NY 10038
(212) 558-5500