E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD/JGL)

This Document Relates to:
Certain Weitz & Luxenberg's Plaintiffs

---

AFFIRMATION OF PAUL J. PENNOCK
IN SUPPORT OF ORDER TO SHOW CAUSE

---

Paul J. Pennock, an attorney duly admitted to practice law before all of the Courts of the State of New York, and federal Courts of the Southern District of New York and Eastern District of New York, affirms all of the following to be true under the penalties of perjury:

1. I am associated with the law firm of Weitz & Luxenberg, P.C. and am department chief of the Pharmaceutical Litigation Department, including Baycol litigation, and as such I am familiar with the facts contained herein.

2. I submit this affirmation in support of Weitz & Luxenberg's Motion To Withdraw as Counsel for Certain Plaintiffs pursuant to Minnesota District Court Local Rule of Procedure § 83.7 to withdraw as counsel.

3. Weitz & Luxenberg, P.C. has elected to make the within motion by Order to Show Cause, as it is seeking a stay of all proceedings pending hearing and determination of the motion so as to avoid any potential prejudice to its clients.

4. Our office spent nearly three years actively litigating thousands of Baycol cases, including gathering data from clients, preparing Plaintiff Fact Sheets, conducting

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

depositions of plaintiffs, non-party witnesses, treating and prescribing physicians, and experts. We conducted extensive legal and medical research, and we participated extensively in the MDL Trial Selection process pursuant to PTO 89.

5. Over the past year, we prepared and fully worked up several matters for trial, and were involved in extensive settlement negotiations with defendants.

6. After long and careful consideration, however, we reached the conclusion that for those clients who did not demonstrate objective indicia of Rhabdomyolysis, the prospects of settling their cases were nil, and we felt it was against their best interests to proceed to trial.

7. Accordingly, in June 2004, we began disengaging in nearly 5000 individual Baycol cases where our clients were not diagnosed with Rhabdomyolysis. We stand by our decision to reject these matters as we feel there is no reasonable prospect for compensation for these clients over and above expenses and fees.

8. Upon advising our clients that while their cases certainly had merit, it was our feeling that they lacked value, we told them they had several options, specifically, they could: 1) agree to dismissal of their claims, 2) secure substitute counsel, or 3) be subject to a motion by our office to withdraw as counsel.

9. The within motion relates to those clients who have indicated they wish to secure substitute counsel but have not yet done so (Exhibit "A"); those who were informed their failure to exercise options "1' or "2" would result in a motion to withdraw (Exhibit "B"); and those who failed to respond to our notification, and to whom follow up letters indicated a failure to respond would result in a motion to withdraw (Exhibit "C").

E-SERVED 09/24/04 03:43 PM ET Baycol MDL 1431

10. As the facts will demonstrate there exists good cause to grant the relief sought – permission to withdraw as counsel along with extensions of time (90 days) for our clients to secure new counsel and/or comply with PTO 114 and 127

11. Pursuant to PTO 89, this Court designated 220 cases as "trial selection" cases, of which Weitz & Luxenberg, P.C. represented approximately 160 clients (only 5 of whom were diagnosed with Rhabdomyolysis).

12. Upon entry of PTO 89, we had no less that 20 attorneys and staff members working full time on reviewing, processing and handling these cases, including extensive client contact and review of medical records for purposes of evaluating each individual claim for viability for trial.

13. Moreover, through the next months, we attended 64 depositions related to our Baycol MDL trial cases as a means to further evaluate those we thought had potential viability. A total of 26 depositions were taken in Rhabdomyolysis cases and 38 were taken in non-Rhabdomyolysis cases.

14. Ultimately, Weitz and Luxenberg, P.C. concluded that none of its non-Rhabdomyolysis trial selection cases could withstand a trial, and each one was eventually dismissed.

15. It should also be noted that the PSC and counsel for the remaining plaintiffs reached the identical conclusion with respect to each of their own non-rhabdomyolysis clients.

16. For over one year, Weitz & Luxenberg, P.C. has been involved in extensive settlement discussions with Shook, Hardy and Bacon on behalf of defendants.

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

We have been told, in no uncertain terms, that non-rhabdomyolysis cases will not now, nor ever, be considered for settlement by Bayer.

17. In addition to the cases pending in the MDL, Weitz & Luxenberg, P.C. had hundreds of cases pending in the Philadelphia Court of Common Pleas. Pursuant to an order entered there in 2003 by the Hon. Norman Ackerman, case-specific expert reports (similar to the requirements of PTO 114) were required to be served. We engaged in the process of securing these reports, and nothing in our experience there suggests that the outcome will be different for our cases pending in the MDL.

18. Securing expert medical reports is done at great expense to individual clients, and one that will never be recouped in cases where the expert is unable to submit a positive report. The client is ultimately responsible for expenses and this risk should not be run in cases with little to no prospect of recovery.

19. It has been our experience that even where our expert can issue a positive report linking causation of myalgia symptoms to Baycol uses, the case may still ultimately fail.

20. Weitz & Luxenberg, P.C. has identified and has discussed with defendants, for settlement purposes, those cases designated by PTO 127 as "1.A." or "Rhabdomyolysis" cases. We initially presented for settlement those claims with document muscle complaints coupled with objective medical evidence, or those claims falling into PTO 127 categories 1.B.(1) and 1.B.(2)., which, as noted above, were flatly rejected for settlement by defendants.

E-SERVED
09/24/04
03:43 PM ET
Baycol MDL 1431

21. We are aware that a total of three Baycol cases have proceeded to trial across the country, each of which has resulted in a defense verdict. Weitz & Luxenberg, P.C. has prepared three cases for trial in state courts, however, we ultimately determined that a trial in a non-rhabdomyolysis case is not in the best interests of our clients.

22. By reason of the foregoing and arguments more fully set forth in the brief filed herewith, it is respectfully submitted that the Plaintiffs' motion should be granted in all respects.

23. No prior application for the relief requested herein has been made for this or any other Court.

**WHEREFORE**, it is respectfully requested that the Court permit Weitz & Luxenberg, P.C. to withdraw as counsel for each of its clients whose cases is currently pending in the MDL where a diagnosis of Rhabdomyolysis has not been made as set forth on the Riders annexed as Exhibits "A," "B," and "C" respectively; that the Court stay all proceedings for a period of ninety (90) days; that plaintiff be granted a period of ninety (90) days to secure new counsel; and that the deadline to comply with the rigors of PTO 114 and PTO 127 be extended for a period of ninety (90) days.

Dated: September 2, 2004
New York, NY

Respectfully Submitted,

Paul J. Pennock, Esq.
**WEITZ & LUXENBERG, P.C.**
Attorneys for Plaintiff(s)
180 Maiden Lane
New York, NY 10038
(212) 558-5904