E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LIABILITY LITIGATION**

MDL No. 1431 (MJD/JGL)

**This Document Relates to:**
***ALL CASES***

**BAYER AG'S MOTION FOR A PROTECTIVE ORDER PRECLUDING DEPOSITIONS OF BAYER AG'S TOP EXECUTIVES**

**INTRODUCTION AND SUMMARY**

Defendant Bayer AG respectfully requests a protective order, pursuant to Fed. R. Civ. P. 26(c)(1), precluding the depositions of Werner Wenning and Dr. Manfred Schneider, Bayer AG's two most senior officers. Those depositions would be unduly burdensome in that these executives, who are German citizens, lack any unique personal knowledge of relevant facts and their testimony would be cumulative of that given by more than 80 other present and former employees of Bayer AG or its subsidiary Bayer Corporation. Bayer is therefore entitled to a protective order under settled precedent such as *Cardenas* v. *Prudential Ins. Co. of Am.*, Nos. Civ. 99-1421, 2003 WL 21293757 (D. Minn. May 16, 2003)—a conclusion buttressed in this case by considerations of international law and comity.

By way of background, as this Court is well aware, Bayer AG developed and manufactured cerivastatin, which was sold in the United States under the name Baycol. Bayer AG, a German corporation, is the parent company of Bayer Corporation, which is headquartered in the United States and which

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

marketed Baycol here. The Bayer Group, of which Bayer AG is also the parent company, is a diversified international business with interests in healthcare, crop science, material science, and specialty chemicals, with approximately 120,000 employees worldwide. In 2001, the Bayer Group had eleven business groups operating in the fields of pharmaceuticals, consumer care, diagnostics, biological products, animal health, crop protection, plastics, specialty chemicals, rubber, polyurethanes, and coatings and colorants.[1]

Werner Wenning is Chairman of Bayer AG's Board of Management (Vorstand), a position comparable to that of chief executive officer of a U.S. corporation. Declaration of Werner Wenning (Dec. 23, 2004) ("Wenning Decl.") ¶ 2 (Exh. A). Dr. Manfred Schneider is Chairman of Bayer AG's Supervisory Board (Aufsichtsrat), a position comparable to that of chairman of the board of directors of a U.S. corporation. *Id.* ¶ 3; Declaration of Dr. Manfred Schneider (Jan. 10, 2005) ("Schneider Decl.") ¶ 2 (Exh. B).[2] In these positions—the top two positions in the company's organizational structure—Mr. Wenning and Dr. Schneider have executive responsibility not only for the pharmaceutical business but for all of the Bayer Group's diverse operations.

---

1 In October 2003, Bayer AG was restructured to become a holding company. At that time the pharmaceutical business along with consumer care, diagnostics, biological products, and animal health businesses were put under the management of Bayer Healthcare AG.

2 During the time Baycol was being marketed in the United States, Dr. Schneider was Chairman of the Board of Management and Mr. Wenning was a member of the Board of Management. Mr. Wenning assumed the position of Chairman, and Dr. Schneider became Chairman of the Supervisory Board, in April 2002. *See* Wenning Decl. ¶¶ 2-3; Schneider Decl. ¶ 2.

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

On June 3, 2004, the Baycol Plaintiffs' Steering Committee (PSC) issued a notice, pursuant to Fed. R. Civ. P. 26, for depositions of Mr. Wenning and Dr. Schneider to be taken in August 2004. The PSC did not proceed with the depositions at that time, but on December 10, 2004, issued new notices for depositions to be taken in February 2005 (Exh. C). The only justification the PSC has offered for these depositions is a desire to explore issues of corporate control, presumably to ensure that any judgment against Bayer Corporation would be funded by Bayer AG if Bayer Corporation were unable to pay.

As demonstrated below, these depositions would be unreasonably burdensome and cumulative because neither Mr. Wenning nor Dr. Schneider has any unique knowledge and all of the information sought is available through less intrusive means. As this Court held in *Cardenas* v. *Prudential Ins. Co. of Am.*, Nos. Civ. 99-1421, Civ. 99-1422, Civ. 99-1736, 2003 WL 21293757 (D. Minn. May 16, 2003), and as demonstrated below in Section I, depositions of senior executives like Mr. Wenning and Dr. Schneider should be denied if "the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." *Id.* at *1. Here, as shown in Section II, Mr. Wenning and Dr. Schneider have no first-hand knowledge of facts relevant to these cases that is not possessed in equal or greater measure by other officers and employees of Bayer AG and Bayer Corporation, many of whom have *already* been deposed at length in this and other Baycol-

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

related litigation. Accordingly, the requested depositions of Mr. Wenning and Dr. Schneider should not be allowed.

## ARGUMENT

### I. DEPOSITIONS OF TOP-LEVEL CORPORATE EXECUTIVES ARE IMPROPER UNLESS THE EXECUTIVES ARE SHOWN TO HAVE UNIQUE KNOWLEDGE OF RELEVANT FACTS.

Courts have long noted that depositions of top-level corporate executives in large, multi-national corporations—often called "apex" depositions—pose a distinct risk of abuse that calls for special vigilance. The potential for abuse is obvious: not only are top executives unlikely to have day-to-day familiarity with relevant facts, but the top executives in a large corporation are easily subjected to unwarranted harassment and abuse. *See Mulvey* v. *Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (precluding deposition of Chrysler chairman Lee Iacocca). Accordingly, "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Consolidated Rail Corp.* v. *Primary Indus. Corp.*, Nos. 92 Civ 4927 (PNL), 92 Civ 6313 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (precluding depositions of Conrail's CEO and two vice presidents).

To guard against the risk of burden and harassment that naturally inheres in apex depositions, as this Court recently noted, "courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive *has some unique knowledge* pertinent to the issues in the case." *Cardenas*, 2003 WL 21293757 at *1 (emphasis

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

added) (citing *Salter* v. *Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)). Applying that principle, this Court denied a request to depose top Prudential executives because the plaintiffs had not demonstrated that the executives "possess any information that could not be obtained from lower level employees or other sources, much less that their knowledge of plaintiffs' allegations is 'unique.'" *Id.* at *2.

The rule applied in *Cardenas* is well established in the federal courts. A party requesting an apex deposition bears the burden of establishing that the proposed deponent possesses relevant knowledge that cannot be obtained through less intrusive or burdensome means. *See, e.g., Thomas* v. *IBM*, 48 F.3d 478, 483 (10th Cir. 1995) (affirming an order precluding the deposition of the chairman of IBM's board of directors); *Lewelling* v. *Farmers Ins. Co. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (affirming order precluding deposition of defendant's CEO where there had been no showing that the CEO had knowledge of relevant facts); *Salter*, 593 F. 2d at 651 (precluding deposition of Upjohn's president unless the plaintiff could demonstrate that the information sought was not available from other, lower-level employees of the company). *See also Harris* v. *Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) ("When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition"); *Mulvey*, 106 F.R.D. at 366 (precluding deposition of Chrysler chairman in a products liability case); *Evans* v. *Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Okla. 2003) (precluding deposition of Allstate's president and other officers).

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

And the requirement of *unique* knowledge is applied strictly. *Thomas* is instructive. In that products liability case, the Tenth Circuit affirmed an order precluding the deposition of IBM's chairman *even though* the plaintiff had put forward evidence of the chairman's direct involvement with relevant company hiring policies, because the plaintiff had not demonstrated "that the information she seeks to obtain from [the chairman] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome." 483 F.3d at 483. Similarly in *Baine* v. *General Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991), also a products liability case, the plaintiffs sought to depose a vice president of General Motors, who had written a memo about the very safety feature underlying the lawsuit. In spite of this demonstrated personal knowledge, the court precluded the requested deposition because the plaintiffs had failed to establish that the information sought could not be obtained from other sources, such as interrogatories or depositions of lower-level employees. *See id.* at 335.[3]

---

[3] Equally instructive are those few cases in which apex depositions have been allowed. For example, in *Six West Retail Acquisition, Inc.* v. *Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001), the court allowed the deposition of Sony's chairman after the plaintiff had established that the chairman not only knew of but closely monitored the corporate policy underlying the suit—and had taken several depositions that proved fruitless. *See id.* at 102-04. In *General Star Indemnity Co.* v. *Platinum Indemnity Ltd.*, 210 F.R.D. 80 (S.D.N.Y. 2002), the court allowed the defendant to depose two high-level executives of the plaintiff company upon the defendant's showing that the executives had unique personal knowledge of facts related to company policies underlying the case. *See id.* at 83-84. Likewise, in *Folwell* v. *Hernandez*, 210 F.R.D. 169, 175 (M.D.N.C. 2002), the court allowed the deposition of the CEO of a division of Sara Lee Corporation—but expressly limited the deposition's scope to those topics of which the plaintiff had shown the CEO had "unique personal knowledge." *See id.* at 174-75. In each of these cases, the deposition was allowed only after the

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

## II. UNDER THIS SETTLED STANDARD, PLAINTIFFS CANNOT MEET THEIR BURDEN OF ESTABLISHING A NEED TO DEPOSE MR. WENNING OR DR. SCHNEIDER.

Under these settled standards, the requested depositions of Mr. Wenning and Dr. Schneider should not be allowed. Neither of these men possesses "unique knowledge pertinent to the issues in the case." *Cardenas*, 2003 WL 21293757 at *1. Any relevant information that either of them may be able to provide could be—indeed, much or all of it already has been—obtained from other, less burdensome sources. Moreover, given these men's status as German citizens, considerations of international comity provide added reason to deny the plaintiffs' request.

1. Scores of employees of Bayer AG and Bayer Corporation have already been deposed in these proceedings and in numerous other Baycol-related proceedings around the country. These include Bayer AG employees intimately familiar with the development and sale of Baycol, and the relationship between Bayer AG and Bayer Corporation, including:

- the worldwide head of Bayer AG's pharmaceutical division and former head of Bayer's North American pharmaceutical division;[4]
- the former worldwide head of Bayer AG's pharmaceutical division and former head of Bayer's North American pharmaceutical division;[5]
- a former head of pharmaceutical product development for Bayer AG, with wide-ranging responsibilities respecting the development and marketing of new drugs;[6]

---

requesting party had specifically shown that the deponent would make a relevant contribution to discovery that could not be gotten from other available sources.

[4] Dr. Wolfgang Plischke (deposed on April 7-9, 2003).

[5] Dr. David Raymond Ebsworth (deposed on May 19-20, 2003).

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

- a former Global Medical Director of Bayer AG;[7]
- three executives of Bayer AG's Global Drug Safety division;[8]
- one of Bayer AG's Global Integrated Analysis Project Leaders, involved in the compilation and statistical analysis of adverse event reports for Bayer products, including Baycol;[9]
- a former Cerivastatin (Baycol) Project Manager of Bayer AG;[10]
- two high-level scientists in Bayer AG's Institute of Toxicology and Clinical Pharmacology;[11] and
- a former International Clinical Project Manager of Bayer AG, with responsibility for coordinating the clinical testing of Baycol;[12]

These depositions alone (yielding many thousands of transcript pages) occupied 40 days of detailed testimony running the gamut of issues relevant to this litigation: the design, development, safety, marketing, and distribution of Baycol, as well as its ultimate withdrawal from the market.

These employees, moreover, are the Bayer AG employees with the *most* intimate and extensive knowledge of Bayer's pharmaceutical business and of

6 Dr. Frank Murdoch Armstrong (deposed on May 14-16, 2003).

7 Dr. Timothy M. Shannon (deposed on May 7-9, 2003).

8 Dr. Ernst Weidmann, head of Global Drug Safety (deposed on April 2-4 and 6-7, 2003); Dr. Weidmann's deputy, Dr. Hans-Peter Kraemer, head of Systems and Operations (deposed on March 24-26, 2003); and Professor Kuno Sprenger, International Drug Safety Manager (deposed on March 27-29, March 31, and April 1, 2003).

9 Martin Homering (deposed October 7, 2004).

10 Dr. Joachim Ippen (deposed on April 3-5 and 7-8, 2003).

11 Dr. Eckhard von Keutz, the head of Bayer AG's Pharma-Toxicology Institute (deposed on April 1-2, 2003); and Dr. Wolfgang Mueck, Bayer AG's Clinical Pharmacokinetics Project Manager (deposed on March 24-25, 2003, and October 6, 2004).

12 Dr. Reiner Ziegler (deposed on March 2[illegible]-31, 2003).

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

Baycol in particular. Their knowledge stands in sharp contrast to that of Mr. Wenning and Dr. Schneider, whose responsibility involved oversight over the whole of the pharmaceutical and other wide-ranging businesses of Bayer AG.

In addition to these Bayer AG depositions, a great many employees of Bayer Corporation, with detailed technical and operational knowledge of every conceivable topic of relevance to this matter, have submitted to depositions in the Baycol litigation—to say nothing of the countless pages of document discovery and interrogatory responses already produced. Altogether, at least 80 employees of Bayer AG and Bayer Corporation have submitted to well over 200 days of depositions in Baycol-related proceedings around the country, in addition to voluminous document discovery and interrogatory responses. It is simply inconceivable that either Mr. Wenning or Dr. Schneider has anything new to add to this discovery cornucopia.

Plaintiffs' counsel in this MDL not only have access to these deposition transcripts, but they have actually deposed each of the Bayer AG and Bayer Corporation witnesses. Indeed, PSC attorneys deposed each witness for extended periods of time, including up to half of the examination time for most witnesses, and all of the examination time for others. Thus, PSC attorneys have had ample opportunity to elicit any information they may have deemed important.

Absent a showing that there remains relevant information not covered by this extremely broad sweep of discovery—*and* somehow known only to Mr.

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

Wenning or Dr. Schneider—plaintiffs cannot establish the unique personal knowledge required to justify depositions of these top-level executives.

2. The PSC's stated reason for seeking to depose Mr. Wenning and Dr. Schneider underscores the fact that these depositions are irrelevant and redundant. Bayer's counsel met and conferred with the PSC several times about these depositions in the summer and fall of 2004 (most recently on October 19, 2004) in an effort to avoid having the Court intervene. In all of these meetings, the only reason the PSC attorneys have given for seeking these depositions is to secure testimony about Bayer AG's control over Bayer Corporation. But in fact the PSC has no legitimate need for such testimony by Mr. Wenning or Dr. Schneider.

First, whether or not Bayer AG "controls" its subsidiary Bayer Corporation is irrelevant to this litigation. For example, there is no legitimate claim that the separate corporate existence of the two corporations should be disregarded in order to prevent a fraud or some other injustice. Indeed, the PSC's own expert on control issues, Mr. Fiflis, expressly disclaimed any such opinion, and admitted that he knew of no evidence of any such fraud or injustice. *See* Deposition of Ted J. Fiflis (Feb. 6, 2004) at 225:23–226:22.

Nor is there any legitimate claim that resolution of the control issue would be necessary to ensure that a successful plaintiff could recover a judgment for her injuries. Mr. Fiflis admitted that, in his exhaustive review of the record, he has found no evidence that Bayer Corporation has been unable to meet its financial obligations in this tort litigation or otherwise. *See id.* at

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

216:14-18, 221:16–222:4; 225:2-17. Nor has there been any attempt by Bayer Corporation to suggest that it is not liable for some act or omission on the grounds that Bayer AG was responsible for it, or vice versa. Indeed, virtually all the plaintiffs in this litigation have sued Bayer AG as well as Bayer Corporation, and Bayer AG has not contested personal jurisdiction. Accordingly, at this juncture at least, there is no need to explore indirect avenues to Bayer AG's resources when that company is itself before the Court.

Second, in any event, Bayer witnesses have already provided ample information on the issue of control. They have, for example, described the reporting relationships among and between individuals in different functions within the businesses, and between Bayer Corporation and Bayer AG. The PSC has made no effort to identify any respect in which this vast body of evidence is inadequate for their purposes of determining the extent to which Bayer AG "controls" Bayer Corporation, or what additional relevant information Bayer AG's top two officers could add on the issue of corporate control.

Finally, even if the issue of corporate control were to become relevant in the future, there is no reason the PSC would need the testimony of Bayer AG's two most senior executives, rather than lower-level employees versed in the issues.

3. Any contention that Mr. Wenning or Dr. Schneider personally bore ultimate responsibility for marketing decisions concerning Baycol, and are uniquely positioned to speak to key marketing issues, is also demonstrably incorrect and should be rejected. As attested in the attached declarations, deci-

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

sions as to the marketing of Baycol in the United States were made within Bayer's Pharmaceutical Business Group. *See* Wenning Decl. ¶ 5 (Exh. A); Schneider Decl. ¶ 4 (Exh. B); Declaration of Wolfgang Plischke (Jan. 10, 2005) ("Plischke Decl.") ¶ 5 (Exh. D). Neither the Board of Management nor Mr. Wenning nor Dr. Schneider individually made those decisions. *See* Wenning Decl. ¶ 5; Schneider Decl. ¶ 4.

Furthermore, three Bayer employees who *were* at the top levels of management of the Pharmaceutical Business Group during the time that Baycol was being marketed—Dr. Plischke, Dr. David Ebsworth, and Dr. Frank Armstrong—have already been deposed in the Baycol litigation. Plischke Decl. ¶ 6. So have high-ranking Bayer AG employees responsible for toxicology, clinical studies, and drug safety (all of which are within the purview of the Pharmaceutical Business Group, *id.* ¶ 4). *See supra* nn. 4-12 and accompanying text.

Under the case law discussed above, these facts establish that plaintiffs cannot meet their burden of showing of a genuine need for the depositions of Mr. Wenning and Dr. Schneider, for two independent reasons. First, plaintiffs cannot establish that these officials have "some unique knowledge pertinent to the issues in the case." *Cardenas*, 2003 WL 21293757 at *1 (emphasis added) (citing *Salter*, 593 F.2d 649). Second, plaintiffs clearly can "obtain the same information through a less intrusive means"—namely, the depositions of lower-level Bayer officials. *Id.* This, then, is a classic case for prohibiting the deposition of a company's most senior officials.

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

4. There considerations carry special force where, as here, a discovery request is directed to foreign nationals. As the Supreme Court cautioned in a leading case:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. . . . Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.

*Aérospatiale* v. *United States District Court*, 482 U.S. 522, 546 (1987). For all the reasons explained above, the requested depositions of Mr. Wenning and Dr. Schneider are unnecessary and unduly burdensome, and for that reason the notices are improper on their face. The fact that both men are German nationals, living and working in Germany, supplies an addition reason for this Court to exercise "special vigilance" and to bar these abusive depositions.[13]

---

13 A motion similar to this one was denied by Judge Ackerman, without a written opinion, last year in the Philadelphia consolidated Baycol proceedings. *In re Baycol Litig.*, Nov. Term 2001, No. 00001, Sept. 11, 2003, Order (Phila. Comm. Pleas). The plaintiffs, however, chose not to proceed with those depositions. Moreover, in contrast to the substantial of controlling and persuasive federal case law discussed above, there is no reported case law in Pennsylvania governing apex depositions.

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

## CONCLUSION

Bayer AG respectfully requests that this Court enter a protective order precluding plaintiffs from taking the deposition of Werner Wenning or Dr. Manfred Schneider.

January 10, 2005

Respectfully submitted,

Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Gene C. Schaerr
Richard K. Menard
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Susan A. Weber
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Counsel for Bayer AG*

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

# EXHIBIT A

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LIABILITY LITIGATION**

MDL No. 1431 (MJD/JGL)

**This Document Relates to:**
***ALL CASES***

**DECLARATION OF WERNER WENNING**

I, Werner Wenning, declare the following under penalty of perjury:

1. I am a citizen and resident of Germany. I live in Leverkusen.

2. I am currently the Chairman of the Board of Management (Vorstand) of Bayer AG. I have held this position since April 26, 2002. Prior to assuming the chairmanship, I had been a member of the Board of Management since January 1997.

3. Until April 26, 2002, Dr. Manfred Schneider was Chairman of Bayer AG's Board of Management. Dr. Schneider is now Chairman of Bayer AG's Supervisory Board (Aufsichtsrat).

4. The responsibilities of a member (including Chairman) of Bayer's Board of Management do not include direct involvement with clinical or toxicological research. When the drug cerivastatin (known in the United States by the trade name Baycol) was developed and marketed, clinical and toxicological testing of Bayer pharmaceutical products was the responsibility of the institute of toxicology and clinical pharmacology within the Pharmaceutical Business Group. Any knowledge of specific clinical or toxicological issues relating to

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

Baycol that I may have would have been relayed to me by others in the company.

5. The decision to seek regulatory approval to market Baycol in the United States, as well as subsequent decisions relating to the marketing of Baycol in the United States, was likewise made within the Pharmaceutical Business Group, including Bayer AG's U.S. subsidiary, Bayer Corporation.

6. The monitoring of adverse event reports within Bayer AG when Baycol was marketed was the responsibility of the company's Global Drug Safety Organisation within the healthcare business. Any specific knowledge that I may have concerning adverse event reports relating to Baycol would have been relayed to me by others in the Bayer organization.

7. The Board of Management concurred with the recommendation of the management of the Pharmaceutical Business Group, including in particular Dr. David Ebsworth, to withdraw Baycol from the market in the United States and elsewhere.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on December 23, 2004

Werner Wenning

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

# EXHIBIT B

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LIABILITY LITIGATION**

MDL No. 1431 (MJD/JGL)

**This Document Relates to:**
***ALL CASES***

**DECLARATION OF DR. MANFRED SCHNEIDER**

I, Dr. Manfred Schneider, declare the following under penalty of perjury:

1. I am a citizen and resident of Germany. I live in Leverkusen.

2. I am currently the Chairman of the Supervisory Board (Aufsichtsrat) of Bayer AG. I have held this position since April 26, 2002. Previously, I had been a member of Bayer AG's Board of Management (Vorstand) since January 01, 1987 and the Chairman of the Board of Management since April 29, 1992.

3. The responsibilities of a member (including Chairman) of Bayer's Board of Management do not include direct involvement with clinical or toxicological research. When the drug cerivastatin (known in the United States as Baycol) was developed and marketed, clinical and toxicological testing of Bayer pharmaceutical products was the responsibility of the institute of toxicology and clinical pharmacology within the Pharmaceutical Business Group. Any knowledge of specific clinical or toxicological issues with Baycol that I may have would have been relayed to me by others in the company.

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

4. The decisions to seek regulatory approval to market Baycol in the United States, as well as subsequent decisions about the marketing of Baycol in the United States, were made within the Pharmaceutical Business Group, including Bayer AG's U.S. subsidiary, Bayer Corporation.

5. The monitoring of adverse event reports within Bayer AG when Baycol was marketed was the responsibility of the company's Global Drug Safety Organisation within the healthcare business. Any specific knowledge that I may have about Baycol-related adverse event reports would have been relayed to me by others in the Bayer organization.

6. The Board of Management concurred with the recommendation of the management of the Pharmaceutical Business Group, including in particular Dr. David Ebsworth, to withdraw Baycol from the market in the United States and elsewhere.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on January 10, 2005

Manfred Schneider

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

# EXHIBIT C

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

NEBLETT, BEARD & ARSENAULT
Attorneys At Law

A REGISTERED LIMITED LIABILITY PARTNERSHIP, INCLUDING LAW CORPORATIONS

RICHARD J. ARSENAULT *
C. MICHAEL BOLLINGER
DAVID O. WALKER **
PAUL J. TELLARICO
WILLIAM S. NEBLETT***
MICHAEL S. KOCH
WESLEY J. GRALAPP
GARY J. ARSENAULT
EDWARD E. ROBERTS, III
STEVEN M. RACHAL
JOHN R. WHALEY
L. LARAMIE HENRY

ROBERT B. NEBLETT (1991)
RICHARD W. BEARD (1988)

* LAW CORPORATION
ALSO ADMITTED IN
COLORADO, TEXAS
AND WASHINGTON, D.C.
** LAW CORPORATION
ALSO ADMITTED IN TEXAS
***ALSO ADMITTED IN TEXAS

J. PHILLIP TERRELL, JR.
OF COUNSEL

December 10, 2004

**VIA FACSIMILE & ELECTRONIC MAIL**

Philip Beck
Adam L. Hoeflich
Bartlit, Beck, Herman, Palenchar & Scott
54 West Hubbard, Suite 300
Chicago, IL 60610
Liaison Counsel for Bayer

Peter W. Sipkins
Dorsey & Whitney
50 South Sixth Street, Suite 1500
Minneapolis, MN 55401-1498
Liaison Counsel for Bayer

Susan A. Weber
Sidley, Austin, Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Liaison Counsel for Bayer

Douglas Marvin
Williams & Connolly, LLP
725 12th Street, NW
Washington, D.C. 20005

RE: Baycol Litigation MDL No. 1431

Dear Counsel:

We are enclosing a Notice of Video Deposition of Dr. Manfred Schneider and Werner Wenning.

With best regards, I am

Sincerely,

RICHARD J. ARSENAULT

RJA:rlm

Enclosure

2220 Bonaventure Court Post Office Box 1190 Alexandria, Louisiana 71309-1190
Telephone (318) 487-9874 Facsimile (318) 561-2591

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

cc: Transmittal Via Facsimile to Court Ordered Mailing Matrix (Attachment A) Pursuant to Pre-Trial Order No. 4, Section II (B), Also Transmitted Electronically to All Lead and Liaison Counsel Pursuant to Pre Trial Order No. 4, Section II (B)

**With Enclosures:**

| | |
|---|---|
| Dale Larson | 651-312-6618 - Plaintiffs' Liaison Counsel |
| Charles S. Zimmerman | 612-341-0844 - Plaintiffs' Co-Lead Counsel |
| Richard Lockridge | 612-339-0981 - Plaintiffs' Co-Lead Counsel |
| Philip Beck | 312-494-4440 - Lead Counsel for the Bayer Defendants |
| Adam Hoeflich | 312-494-4440 - Liaison Counsel for the Bayer Defendants |
| Douglas Marvin | 202-434-5029 - Counsel for Bayer Defendants |
| Lory Barsdate Easton | 312-853-7036 - Counsel for Bayer Defendants |
| Peter W. Sipkins | 612-340-2807 - Counsel for Bayer Defendants |
| Susan A. Weber | 312-853-7036 - Counsel for Bayer Defendants |
| Gene Schaerr | 202-736-8711 - Counsel for Bayer Defendants |
| Richard K. Dandrea | 412-566-6099 - Counsel for Bayer Defendants |
| James Mizgala | 312-853-7036 - Counsel for Bayer Defendants |
| Fred T. Magaziner | 215-994-2222 - Lead/Liaison Counsel for Defendant, GlaxoSmithKline |
| Tracy J. Van Steenburgh | 612-338-7858 - Counsel for GlaxoSmithKline |
| Scott A. Smith | 612-338-7858 - Counsel for GlaxoSmithKline |
| Joseph O' Connor | 215-994-2222 - Counsel for GlaxoSmithKline |
| Thomas Munno | 215-994-2222 - Counsel for GlaxoSmithKline |
| Robert A. Limbacher | 215-994-2222 - Counsel for GlaxoSmithKline |
| William P. Studer | 612-607-7100 - Liaison Counsel for Pfizer, Inc. and Warner-Lambert Company Defendants |
| Gary J. Ruckelshaus | 609-951-0824 - Counsel for PDI, Inc. |
| Kim M. Meaders | 214-922-7101 - Counsel for Pharmacies |
| Andy Edwards | 817-877-2807 - Counsel for Defendant Physicians |

**Without Enclosures:**

| | |
|---|---|
| Elizabeth J. Cabraser | 415-956-1008 - Executive Committee/PSC member |
| Dianne Nast | 717-892-1200 - Executive Committee/PSC member |
| Stanley Chesley | 513-621-0262 - Executive Committee/PSC member |

cc: Via Facsimile to Plaintiffs' Steering Committee Discovery Co-Chairs

**With Enclosures:**

| | |
|---|---|
| John R. Climaco | 216-771-1632 |
| Turner W. Branch | 505-243-3534 |
| Ted Lyon | 972-279-3021 |
| Mark Robinson | 949-720-1292 |
| Daniel E. Becnel, Jr. | 985-536-6445 |

cc: Court Reporter

**With Enclosures:**

| | |
|---|---|
| Lori Langston with Doerner & Goldberg | 973-716-9572 |

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

**IN RE: BAYCOL PRODUCTS LITIGATION** **MDL NO. 1431 (MJD/JGL)**

**THIS DOCUMENT RELATES TO ALL ACTIONS**

**NOTICE OF VIDEO DEPOSITION OF DR. MANFRED SCHNEIDER AND WERNER WENNING**

TO:

Philip Beck
Adam L. Hoeflich
Barlet, Beck, Herman, Palenchar & Scott
54 West Hubbard, Suite 300
Chicago, IL 60610
Liaison Counsel for Bayer

Peter W. Sipkins
Dorsey & Whitney
50 South Sixth Street, Suite 1500
Minneapolis, MN 55401-1498
Liaison Counsel for Bayer

Susan A. Weber
Sidley, Austin, Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Liaison Counsel for Bayer

Douglas Marvin
Williams & Connolly, LLP
725 12th Street, NW
Washington, D.C. 20005

PLEASE TAKE NOTICE that pursuant to Rule 26 of the Federal Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the Plaintiffs' Steering Committee in the MDL, will take the video depositions of the following individuals on the dates, time and location indicated below.

The depositions will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court recognized holidays, until the examination is completed.

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

Deponent: **DR. MANFRED SCHNEIDER**
Date: February 22-23, 2005
Time: 9:00 a.m. to 5:00 p.m.
Location: Triple Ace/World Trade Center
Strawinskylaan 77
Amsterdam
1077 XW

Deponent: **WERNER WENNING**
Date: February 24-25, 2004
Time: 9:00 a.m. to 5:00 p.m.
Location: Triple Ace/World Trade Center
Strawinskylaan 77
Amsterdam
1077 XW

Respectfully submitted

RICHARD J. ARSENAULT
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71309

BY:____________________________
RICHARD J. ARSENAULT (#02563)

PLAINTIFFS' STEERING COMMITTEE:

William M. Audet
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Jose, CA 94104

Don Barrett
Barrett Law Office
404 Court Square North
Post Office Box 987
Lexington, MS 39095

Turner W. Branch
Branch Law Firm
2025 Rio Grande Blvd. NW
Albuquerque, NM 87104

Elizabeth J. Cabraser
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Stanley M. Chesley
Waite, Schneider, Bayless & Chesley Co., LPA
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202

John R. Climaco
Climaco, Lefkowitz, Peca, Wilcox & Garofoli
1228 Euclid Avenue
Suite 900
Cleveland, OH 44115

Walter C. Dumas
Dumas & Associates
P.O. Box 1366
Baton Rouge, LA 70821

Frederic S. Fox
Kaplan, Fox & Kilsheimer, LLP
805 3rd Avenue, 22nd Floor
New York, NY 10022

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

Paul J. Geller
Cauley, Geller, Bowman & Coates, LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431

Don Hildre
Dougherty, Hildre, Dudek & Haklar
2550 Fifth Avenue, Suite 600
San Diego, CA 92103-5624

James R. Dugan, II
Gauthier, Downing, LaBarre, Beiser & Dean
3600 North Hullen Street
Metairie, LA 70002

Daniel E. Becnel, Jr.
Law Offices of Daniel E. Becnel, Jr.
P.O. Drawer H
106 West Seventh Street
Reserve, LA 70084

Will Kemp
Harrison, Kemp & Jones
3800 Howard Hughes Parkway
17th Floor
Las Vegas, NV 89109

Dianne M. Nast
Roda & Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601

W. James Singleton
Singleton Law Firm
4050 Linwood
Shreveport, LA 71108

Kenneth B. Moll
Kenneth B. Moll & Associates, Ltd.
Three First National Plaza
54th Floor
Chicago, IL 60602

**CERTIFICATE OF SERVICE**

I certify that the foregoing has been served electronically on defendants this 10th day of December, 2004.

RICHARD J. ARSENAULT

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

# EXHIBIT D

E-SERVED 01/10/05 05:53 PM ET Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LIABILITY LITIGATION**

MDL No. 1431 (MJD/JGL)

**This Document Relates to:**
***ALL CASES***

**DECLARATION OF WOLFGANG PLISCHKE**

I, Dr. Wolfgang Plischke, declare the following under penalty of perjury:

1. I have been employed by Bayer AG or its subsidiary companies since 1980.

2. I am currently the chairman of the board of management of Bayer HealthCare AG, a subsidiary of Bayer AG. I have been the worldwide head of Bayer AG's Pharmaceutical Business Group since January 2002 when the Pharmaceutical Division was a business group of Bayer AG. Before that time, I was the head of Bayer Corporation's Pharmaceutical Division.

3. From 1996 through September 30, 2003, I was a member of the Management Committee of Bayer AG's Pharmaceutical Business Group.

4. When the drug cerivastatin (known in the United States as Baycol) was developed and marketed, the Pharmaceutical Business Group had the responsibility for toxicological and clinical testing of Baycol and for the monitoring of Baycol-related adverse event reports within Bayer AG.

5. The decisions to seek regulatory approval to market Baycol in the United States, as well as subsequent decisions about the marketing of Baycol

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

in the United States, were made within the Pharmaceutical Business Group, including Bayer AG's U.S. subsidiary, Bayer Corporation.

6. I was deposed in connection with the United States Baycol litigation for three days in April of 2003. I understand that two former Bayer AG employees who were also high-level managers of the Pharmaceutical Business Group during the period that Baycol was marketed in the United States—Dr. David Ebsworth and Dr. Frank Armstrong—have also been deposed in the Baycol litigation.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on January 10, 2005

Wolfgang Plischke

E-SERVED
01/10/05
05:53 PM ET
Baycol MDL 1431

## CERTIFICATE OF SERVICE

I, Derek D. Reid, certify that a true and correct copy was electronically served to counsel of record via Verilaw on January 10, 2005.

/signature on file/