E-SERVED
02/02/05
05:52 PM ET
Baycol MDL 1431

# Exhibit A

02/02/05
05:52 PM ET
Baycol MDL 14

**Weber, Susan A.**

**From:** Charles S. Zimmerman [csz@zimmreed.com]
**Sent:** Wednesday, February 25, 2004 8:35 PM
**To:** rhaydock@arb-forum.com; adam.hoeflich@bartlit-beck.com; fred.magaziner@dechert.com; saweber@Sidley.com; vmaniatis@weitzlux.com; jeangeoppinger@wsbclaw.com; Ronald S. Goldser
**Cc:** lewr@bassford.com; Lockrra@locklaw.com; rshelquist@locklaw.com; Charlotte L. Haught; Charles S. Zimmerman; Robert R. Hopper; HAUER; Sherry L. Brambrink; Tina M. Olson
**Subject:** Re: Revised PTO 102

S M Haydock and counsel:

Being that this is the anniversary of the US winning the gold medal at the 1980 Winter Olympics I must comment that the movie 'Miracle' w/ Kurt Russell playing Herb Brooks is well worth seeing. Herb as you all probably know was the coach at the University of Minnesota and tragically was killed only a few months ago in a traffic accident returning from a golf outing in northern Minnesota. He never got to see the film but did consult on the production along with his friend Lou Nanne. Although Kurt Russell's Minnesota accent leaves something to be desired, the film is a wonderful history of the underdog US Hockey team put together by Herb Brooks and their incredible victory over the powerful undefeated Russian professionals at the winter Olympics of 1980.

Now on to the tasks at hand:

I have a number of important comments with regard to the proposed Order;

1. I object to the need for a Rule 26 [a] [2] case specific expert report and seek some major modifications.

a. The form of the report should be provided as an Exhibit, like all the other forms of dismissal etc. are provided in Exhibits. In this way counsel for claimants can provide a simplified form to the doctors involved. This will take one of the important problems out of the process by letter the doctors know what must be contained in the report to satisfy this order. I am happy to draft this form. We have forms for dismissal and forms for notifying counsel of problems with the disclosures. We surly can aid the process by being specific regarding forms of the report which qualify. This will also help in categorization down the road. Further we want to eliminate any argument about sufficiency of the report and compliance or non compliance with Rule 26.

b. The report must be labeled 'preliminary' and not for trial. This report after all is the minimum requirement and is not the final trial ready case specific report. These reports are being made pursuant

02/02/05
05:52 PM ET
Baycol MDL 1431

to the request and order of the court at a time long before remand and long before they would otherwise be due in the normal context of the rules and long ahead of trial. Said reports are limited in purpose and are not to be constructed as full blow case specific expert report which would be subject to cross examination at deposition in prep for trial or at trial. I do not want to have this requirement for a early report to be a limitation on testimony by the doctor or used as impeachment should, upon further and more rigorous review by the doctor or another doctor at a later date in preparation for actual trial, additional injuries be reported or more detail be provided. If you simply stop and think about the purpose and procedure we are undertaking the burden of this report at this time for a limited purpose of narrowing the field of cases. This process should not and cannot become an procedure that hurts the plaintiff or his medical expert down the road. Certainly we want accurate reporting but we cannot expect perfection when we are simply trying to make a minimum showing at this time on a fast track.

c. Defendants and plaintiffs must have a level playing field and the burden of reports of this nature cannot be taken lightly. The PSC does not want to find, should certain doctors be located to provide mass numbers of reports, that defendants will use this to create credibility problems for the doctors who volunteer to do the work on behalf of claimant on an expedited basis. For example ZR may have 200 clients that upon review meet the threshold of a documented Baycol related injury or damages. We may ask one or two doctors to review the records and provide the reports because they are willing to do so and have an expertise in this area. Should we ask one doctor to review say 100 client because our reports are due within 90 days and we cannot work with 100 different doctors in 90 days to tell them what is required and monitor the process so as to meet the deadline, we may have 100 client files review by one doctor. We do not want to encounter now or in the future a protest of this process and exediatied reporting by the defense. We do not want the fact the one or more doctors provide this service on a expedited basis to attys and clients to in any way form the basis for collateral attack by the defense. The PSC and ZR want to make sure that such a process is NOT subject to attack. We anticipate Bayer and GSK will use this process in the future for a tactical advantage and we want to be sure that cannot happen and will not happen. Without certain protections the PSC vigorously object to the case specific report requirement and will seek argument on this point.

2. The letter and attached records should be an option that satisfy the Order.

The original idea was to simply attach records. Adding a letter signed as a pleading along with the attachment of medical records provides the needed information. There is no need to follow this with a case specific report within 90 days
The PSC submit the time for the case specific report if at all is at

02/02/05
05:52 PM ET
Baycol MDL 14

the time of remand or at or near the time of mediation. If our interest is in seeing what cases satisfy minimum requirement of viability and to categorize cases we accomplish this goal thought the letter and attachment of records. Certainly the argument can be made that a more specific report would be required to prepare a case for trial and a case for mediation. That is the purpose of Rule 26. To require this now is a true burden on the claimant and his counsel which bear little benefit to the claimant. The claimant should have a choice. File the letter with attachments or file a case specific report instead. I see no reason for both. If the claimant files a limited case specific report he should be given priority in the line for remand and mediation. If the claimant choose the letter and attached documents he will not be ready for remand and or mediation until he or she does. The information is still available to us for classification purposes. The burden of a doctors report becomes a choice with a consequence....priority in line for mediation and or remand. The cost of these reports are high probably $500 to 1000 each. If we have 10,000 claims and say 50% are worthy of reports, that means the plaintiffs are expending a total of $5,000,000.00 for reports. The defense gets the information at zero cost to them. These reports can only be viewed as preliminary because they are coming long before trial and are coming without examination of the client but only upon review of the records. These reports must be re done for trial and updated for trial. This is a heavy burden to the plaintiff and a tremendous advantage to the defense . The time and expense of this process in hours of atty and costs to client is extraordinary and must be carefully examined to make sure it is meets our purposes. To tie the report to the mediation process is much more reasonable than to make the report a requirement at this early stage. The option to file the report or provide the letter is a better alternative and in doing so we create a priority list for those that file the report in that they will be mediated or remanded sooner than those that do not. Again in either case we have the needed information that gives the case viability and allows the case to proceed i e the records. If records cannot be located of course the case specific report will be utilized but if the records show the claim it should suffice. Again these reports are only limited and preliminary and will have to be updated and redone in preparation for trial and or mediation. Once again the claimant has another expense and burden imposed upon them and defense get additional information about the claim. In summary the time frame from reports is our objections because if information is what we seek we get it with the medical records and the report should only be required at a time closer to trial or mediation. If the party choose to do the report now than he or she get to have a priority in the line for mediation which is a decision counsel will freely and appropriately make.

3. The extra time for large volume of cases should be available at the 100 claimant level not 500. The language must be amended to be sure

02/02/05
05:52 PM ET
Baycol MDL 14

we mean claimants and not filed cases because we are dealing not with one letter or report per claim not filed case which may contain several individual claims. Remember our discussion about bundling when the Court acknowledge that the banding issues will sort itself out through this program. I am sure that is because each claimant no matter how many claimant to one complaint has a requirements of letter or report filing.

4. Medicare information is probably workable if the information is readily available. If it is not and must be obtained thru medicare offices or the US government than it is wholly unworkable given the difficultly we all know exist in obtaining this information from medicare and its agents.

5. The report requirements is limited to ' attesting that Baycol caused the plaintiff [claimant] to suffer injuries or disease' We expect that language and attestation will be all the doctors need to say to meet the requirement and we do not believe more will be provided. Again the PSC feels that is the prima facia case of viability that is sought at this time. Certainly many doctors and claimant will be providing more but this attestation is the minimum and we do not want to have a problems if this minimum is satisfied down the road. We are going the extra mile now in the interest of narrowing the field of cases but we cannot and must not do this work only to find more is wanted at a later date to satisfy this program.

6. I suggest a form motion for the MOTION contemplated in I C for relief from the requirement in those states where case reports are not required and or medical evidence is unavailable. Ease for all parities is our goal and we have forms for dismissal and forms for defendants to use to get rid of cases. We want the same simplicity to advance cases on behalf of plaintiffs. Because defense has done the drafting to date they have ignored the PSC and plaintiff side of the issue and we seek ease of handling for plaintiffs and their counsel.

7. Judge Davis said in open court on Tuesday that the mediation process would be utilized for the cases once narrowed. The Order should reflect the Courts thinking and this directive.

Thank you for consideration of these points and I am happy to discuss and argue at the appropriate time.

BZ

P.S. Herbie Brooks was also a friend of mine and client.

02/02/05
05:52 PM ET
Baycol MDL 143

Charles S Zimmerman
Zimmerman Reed PLLP
csz@zimmreed.com
www.zimmreed.com
800.755.0098

>>> "Haydock, Roger" <rhaydock@arb-forum.com> 2/24/2004 7:42:35 PM >>>

Here is a revised PTO 102. It contains the changes I mentioned to Parts I and III, other needed corrections, and revisions to the exhibits. Please review it and email any comments no later than Noon, central time, Thursday, Feb. 26.

The Court also wants your comments on one additional revision, which appears at the very end of this document (after the exhibits). The Medicare folks need some basic, minimal information from each individual plaintiff to determine a claim. And the Court is interested in reviewing this info. Since we are obtaining info from all the plaintiffs, we could easily obtain this info as well. I drafted revisions to Part I of the PTO which would obtain this information, which proposal is listed in the revision (the one at the end of the document, you know, after the exhibits). Please let me know if you think this is a good, bad, or other idea.

Thank you again for your hard work and continued cooperation. It's possible we may need a conference call to discuss any final issues, so please set aside this Friday, Feb 26, at 11:00 am central time for a possible call. If we need one, I will email you on Thursday.

And I believe today is the anniversary of the US winning the ice hockey gold medal in 1980. It we get an agreement on this proposed PTO, you all get gold medals. Sort, of.

NOTICE: Information in this e-mail or its attachment(s) may be CONFIDENTIAL, legally privileged, or exempt from disclosure under applicable law and is intended ONLY for particular clients, parties, or entities involved in litigation or dealings with the Zimmerman Reed, PLLP law firm. If the reader of this message is NOT the intended recipient, you have received this message in error; be aware that any disclosure, dissemination, copying, distribution, or use of the contents of this e-mail or its attachment(s) is prohibited by law. If you have received this e-mail in error, please notify us by telephone (800-755-0098) and by reply e-mail (info@zimmreed.com) immediately and delete ALL copies of the message and its attachment(s).

E-SERVED
02/02/05
05:52 PM ET
Baycol MDL 1431

# Exhibit B

02/02/05
05:52 PM ET
Baycol MDL 14

**Weber, Susan A.**

| | |
|---|---|
| **From:** | Weber, Susan A. |
| **Sent:** | Thursday, February 26, 2004 11:59 AM |
| **To:** | 'rhaydock@arb-forum.com'; 'ewr@bassford.com'; 'csz@zimmreed.com'; 'rsg@zimmreed.com'; 'vmaniatis@weitxlux.com'; 'jeangeoppinger@wsblaw.com' |
| **Cc:** | 'adam.hoeflich@bartlit-beck.com'; 'fred.magazner@dechert.com'; 'joseph.oconnor@dechert.com' |
| **Subject:** | FW: Response on Proposed Narrowing Order -- w. Weitz response at end |
| **Importance:** | High |

2893009_1.DOC

Special Masters Haydock and Remele and Counsel:

Defendants are dismayed that the PSC, having proposed a narrowing order be entered in this MDL, is now for the second time retreating from a proposed order carefully negotiated by the parties and the Court. Defendants believe that the draft order circulated by Special Master Haydock earlier this week, after two negotiating sessions with the parties, would assist the Court in its effort (a) to eliminate non-meritorious cases from this MDL and (b) to advance the remaining cases toward trial. We therefore request that the proposed order be entered in much the same form as circulated. (We have proposed minor clarifications and procedural tweaks, which appear in redline in the attached document.)

In response to the specific comments:

1. Case Specific Expert Reports

After repeatedly stating to defendants and to the Court that the PSC had no intention of establishing an expert mill for the production of case-specific expert reports, the PSC now is proposing to do precisely that. The PSC wants experts to provide boilerplate reports that will not be binding on plaintiffs and that a single expert can produce by the hundreds. Such an approach would defeat the fundamental purpose of the proposed narrowing order: requiring counsel and, if they think appropriate, experts to conduct a careful case-by-case review and winnow out uninvestigated cases that have no hope of proceeding to trial.

a. Use of a boilerplate form not only is unnecessary, but would lead to the production of useless boilerplate reports. Plaintiffs' counsel are well aware of the Rule 26 requirements for preparation of an expert report and do not need a form to walk them through the process. Preparation and use of a form would relieve counsel and their experts from conducting a thoughtful examination of cases and would instead lead to the generation of large amounts of paper containing minimal amounts of information, with little or no narrowing accomplished. The generation of boilerplate expert reports was a problem that emerged in the case of Acuna v. Brown & Root, Inc., 200 F.3d 335, 340 (5th Cir.), cert. denied, 530 U.S. 1229 (2000), where the trial court required case specific expert reports to manage a glut of frivolous filings. Some plaintiffs filed the sort of worthless boilerplate forms now proposed by the PSC. The trial court dismissed those cases for failure to comply with its order, and the Fifth Circuit affirmed.

02/02/05 05:52 PM ET Baycol MDL 1431

Similarly, the PSC's proposal in point 5 that experts be required to attest to injury and disease without further explanation would defeat the twin purposes of requiring plaintiffs to review their cases and to move cases toward trial. Such an approach would turn the expert report requirement into a hollow exercise and is contrary to the express requirements of Rule 26.

b. Plaintiffs should not be allowed to file discovery responses -- here, expert reports -- and not be bound by them, as the PSC proposes. The purpose of this order is to require counsel to examine their cases now -- not to dash off a piece of paper to jump through a procedural hoop, that will not advance discovery or move these cases forward. Plaintiffs are not entitled to put forward one theory of injury and causation now and an entirely different theory several months from now. Such an approach would not only destroy the narrowing effect of the proposed order, it would make any attempt at categorizing and evaluating cases based on such pseudo-expert reports an exercise in futility.

c. The Court is well aware of the problems that have arisen in the Diet Drug Litigation, with certain experts mass producing reports of dubious quality. The PSC in effect asks leave of Court to set up such expert mills, which -- given the limitations proposed above -- would generate reports unlikely to be of value to the litigants or the Court.

2. The PSC proposes that plaintiffs not be required to submit an expert report at all, if they serve a letter and medical records. Throughout negotiations, the Court, the PSC, and defendants have recognized the need for the proposed order to require plaintiffs to focus on the question of whether there is some arguable causal connection between Baycol use and the claimed injury. The original PTO 102 order attempted to achieve this through objective standards; the current proposal would accomplish this through expert reports. If plaintiffs were allowed to serve medical records that do nothing more than point to an alleged injury during Baycol use, this vital element would be lost. Plaintiffs could submit such letters for cases in which a plaintiff complained of leg pain, but in which that leg pain had predated Baycol use for 5 years and was caused by diabetes-related circulatory problems or arthritis (two frequently-recurring scenarios). Plaintiffs have been dismissing such cases under the PTO 89 program, because they recognize that such cases have no prospect of proceeding to trial. But, under the PSC's proposal, such no-merit cases would survive narrowing.

3. Finally, the PSC proposes that the trigger for motions for extensions of time be reduced from 500 cases to 100 plaintiffs. This is inconsistent with the PSC's suggestion on Tuesday that this MDL be concluded in a year. Applying this low threshold would extend the narrowing process (and case categorization, and trial candidate selection) over years rather than months. As the Court is aware, defendants disagree with the concept of any particular provision being made for volume filers. However, if the Court is inclined to create such a provision, the 500 case threshold is a reasonable one.

4. Defendants agree that plaintiffs are unlikely to have some of the Medicare information requested in the proposed order.

5. Addressed above.

02/02/05
05:52 PM ET
Baycol MDL 1431

6. Part IC cannot be addressed by a form motion. The entire predicate of IC is that plaintiffs believe particular states may have anomalous evidentiary requirements on causation. Such arguments will be unique to any given state or individual plaintiff and should be addressed through a motion structured to address those unique issues.

7. Defendants continue to believe that trials of muscle ache cases are a necessary predicate for any mediation process to have utility.

In addition to incorporating several of the PSC's arguments, Weitz makes the following claims:

1. Weitz argues that the expert report requirement be eliminated as premature (a position inconsistent with Weitz's objections to PTO 102). However, if plaintiffs contemplate concluding this MDL within a year, there is nothing premature about requiring plaintiffs with long-pending cases to produce case-specific expert reports starting several months from now. This work is necessary to move cases toward trial.

2. Weitz argues for extension of due dates in the order (as well as a lower threshold for extension requests). Again, this would extend the supplemental discovery process -- and the duration of this MDL -- unreasonably. The Court has already incorporated a provision in the draft order tailored to the specific concerns of Weitz. That should be sufficient.

3. Weitz objects to several of the procedural provisions of the order, in essense arguing that defendants be precluded from seeking overdue expert discovery until it is even more overdue. Defendants should, however, be allowed to begin the process of prompting tardy counsel right away. The concern about discovery and reminder/warning letters crossing in the mail is more than amply addressed by the significant lag time between mailing of those warning letters and the entry of any order by the Court. Moreover, the final deadlines established in the order (as they are in PTO 81) are based defendants' receipt of discovery, not plaintiffs' mailing date.

4. Weitz proposes that rhabdo cases be singled out before the narrowing process proceeds. This procedure was followed in Philadelphia because the Court there wanted to expedite trial of rhabdo cases. Here, however, the Court and plaintiffs have repeatedly stated their interest in trying muscle ache claims. Delay of the narrowing order for identification of rhabdo cases would, therefore, be counterproductive. If Weitz has additional rhabdo cases that it would like to identify and enter into settlement discussions on those cases, defendants welcome that. It should not interfere wityh or affect the narrowing protocol.

5. Weitz's proposal that defendants be required to waive any forum non conveniens arguments as a predicate to entry of a narrowing order is misguided and self-serving. As the Court is aware, Weitz has filed virtually all of its cases in ED Pa and D. Minn, without regard to the residence of plaintiffs. If defendants were required to waive forum non conveniens arguments, they would be required to waive fundamental rights and potentially to acquiesce to trial of cases without the ability to require presentation of live witnesses. Obviously, defendants can make no such concession. The subject is unrelated to the question of whether uninvestigated cases should be allowed to remain pending in this Court.

02/02/05
05:52 PM ET
Baycol MDL 1431

In sum, defendants believe that the substance of the proposed order should not be modified from the draft circulated this week, and suggest that only minor clarifying amendments be made. If the Court is inclined to entertain the proposals from the PSC and defendants request argument.

Susan
Susan A. Weber
Sidley Austin Brown & Wood LLP
312-853-7820
saweber@sidley.com

-----Original Message-----
From: Charles S. Zimmerman [mailto:csz@zimmreed.com]
Sent: Wednesday, February 25, 2004 8:35 PM
To: rhaydock@arb-forum.com; adam.hoeflich@bartlit-beck.com; fred.magaziner@dechert.com; saweber@Sidley.com; vmaniatis@weitzlux.com; jeangeoppinger@wsbclaw.com; Ronald S. Goldser
Cc: lewr@bassford.com; Lockrra@locklaw.com; rshelquist@locklaw.com; Charlotte L. Haught; Charles S. Zimmerman; Robert R. Hopper; HAUER; Sherry L. Brambrink; Tina M. Olson
Subject: Re: Revised PTO 102

S M Haydock and counsel:

Being that this is the anniversary of the US winning the gold medal at the 1980 Winter Olympics I must comment that the movie 'Miracle' w/ Kurt Russell playing Herb Brooks is well worth seeing. Herb as you all probably know was the coach at the University of Minnesota and tragically was killed only a few months ago in a traffic accident returning from a golf outing in northern Minnesota. He never got to see the film but did consult on the production along with his friend Lou Nanne. Although Kurt Russell's Minnesota accent leaves something to be desired, the film is a wonderful history of the underdog US Hockey team put together by Herb Brooks and their incredible victory over the powerful undefeated Russian professionals at the winter Olympics of 1980.

Now on to the tasks at hand:

I have a number of important comments with regard to the proposed Order;

1. I object to the need for a Rule 26 [a] [2] case specific expert report and seek some major modifications.

   a. The form of the report should be provided as an Exhibit,

02/02/05 05:52 PM ET Baycol MDL 1431

like all the other forms of dismissal etc. are provided in Exhibits. In this way counsel for claimants can provide a simplified form to the doctors involved. This will take one of the important problems out of the process by letter the doctors know what must be contained in the report to satisfy this order. I am happy to draft this form. We have forms for dismissal and forms for notifying counsel of problems with the disclosures. We surly can aid the process by being specific regarding forms of the report which qualify. This will also help in categorization down the road. Further we want to eliminate any argument about sufficiency of the report and compliance or non compliance with Rule 26.

b. The report must be labeled 'preliminary' and not for trial. This report after all is the minimum requirement and is not the final trial ready case specific report. These reports are being made pursuant to the request and order of the court at a time long before remand and long before they would otherwise be due in the normal context of the rules and long ahead of trial. Said reports are limited in purpose and are not to be constructed as full blow case specific expert report which would be subject to cross examination at deposition in prep for trial or at trial. I do not want to have this requirement for a early report to be a limitation on testimony by the doctor or used as impeachment should, upon further and more rigorous review by the doctor or another doctor at a later date in preparation for actual trial, additional injuries be reported or more detail be provided. If you simply stop and think about the purpose and procedure we are undertaking the burden of this report at this time for a limited purpose of narrowing the field of cases. This process should not and cannot become an procedure that hurts the plaintiff or his medical expert down the road. Certainly we want accurate reporting but we cannot expect perfection when we are simply trying to make a minimum showing at this time on a fast track.

c. Defendants and plaintiffs must have a level playing field and the burden of reports of this nature cannot be taken lightly. The PSC does not want to find, should certain doctors be located to provide mass numbers of reports, that defendants will use this to create credibility problems for the doctors who volunteer to do the work on behalf of claimant on an expedited basis. For example ZR may have 200 clients that upon review meet the threshold of a documented Baycol related injury or damages. We may ask one or two doctors to review the records and provide the reports because they are willing to do so and have an expertise in this area. Should we ask one doctor to review say 100 client because our reports are due within 90 days and we cannot work with 100 different doctors in 90 days to tell them what is required and monitor the process so as to meet the deadline, we may have 100 client files review by one doctor. We do not want to encounter now or in the future a protest of this process and exediatied reporting by the defense. We do not want the fact the one or more doctors provide this service on a expedited basis to attys and clients to in any way form the

02/02/05
05:52 PM ET
Baycol MDL 1431

basis for collateral attack by the defense. The PSC and ZR want to make sure that such a process is NOT subject to attack. We anticipate Bayer and GSK will use this process in the future for a tactical advantage and we want to be sure that cannot happen and will not happen. Without certain protections the PSC vigorously object to the case specific report requirement and will seek argument on this point.

2. The letter and attached records should be an option that satisfy the Order.

The original idea was to simply attach records. Adding a letter signed as a pleading along with the attachment of medical records provides the needed information. There is no need to follow this with a case specific report within 90 days
The PSC submit the time for the case specific report if at all is at the time of remand or at or near the time of mediation. If our interest is in seeing what cases satisfy minimum requirement of viability and to categorize cases we accomplish this goal thought the letter and attachment of records. Certainly the argument can be made that a more specific report would be required to prepare a case for trial and a case for mediation. That is the purpose of Rule 26. To require this now is a true burden on the claimant and his counsel which bear little benefit to the claimant. The claimant should have a choice. File the letter with attachments or file a case specific report instead. I see no reason for both. If the claimant files a limited case specific report he should be given priority in the line for remand and mediation. If the claimant choose the letter and attached documents he will not be ready for remand and or mediation until he or she does. The information is still available to us for classification purposes. The burden of a doctors report becomes a choice with a consequence....priority in line for mediation and or remand. The cost of these reports are high probably $500 to 1000 each. If we have 10,000 claims and say 50% are worthy of reports, that means the plaintiffs are expending a total of $5,000,000.00 for reports. The defense gets the information at zero cost to them. These reports can only be viewed as preliminary because they are coming long before trial and are coming without examination of the client but only upon review of the records. These reports must be re done for trial and updated for trial. This is a heavy burden to the plaintiff and a tremendous advantage to the defense . The time and expense of this process in hours of atty and costs to client is extraordinary and must be carefully examined to make sure it is meets our purposes. To tie the report to the mediation process is much more reasonable than to make the report a requirement at this early stage. The option to file the report or provide the letter is a better alternative and in doing so we create a priority list for those that file the report in that they will be mediated or remanded sooner than those that do not. Again in either case we have the needed information that gives the case viability and allows the case to proceed i e the records. If records cannot be located of course the case specific report will be utilized but if the

02/02/05
05:52 PM ET
Baycol MDL 1431

records show the claim it should suffice. Again these reports are only limited and preliminary and will have to be updated and redone in preparation for trial and or mediation. Once again the claimant has another expense and burden imposed upon them and defense get additional information about the claim. In summary the time frame from reports is our objections because if information is what we seek we get it with the medical records and the report should only be required at a time closer to trial or mediation. If the party choose to do the report now than he or she get to have a priority in the line for mediation which is a decision counsel will freely and appropriately make.

3. The extra time for large volume of cases should be available at the 100 claimant level not 500. The language must be amended to be sure we mean claimants and not filed cases because we are dealing not with one letter or report per claim not filed case which may contain several individual claims. Remember our discussion about bundling when the Court acknowledge that the banding issues will sort itself out through this program. I am sure that is because each claimant no matter how many claimant to one complaint has a requirements of letter or report filing.

4. Medicare information is probably workable if the information is readily available. If it is not and must be obtained thru medicare offices or the US government than it is wholly unworkable given the difficultly we all know exist in obtaining this information from medicare and its agents.

5. The report requirements is limited to ' attesting that Baycol caused the plaintiff [claimant] to suffer injuries or disease' We expect that language and attestation will be all the doctors need to say to meet the requirement and we do not believe more will be provided. Again the PSC feels that is the prima facia case of viability that is sought at this time. Certainly many doctors and claimant will be providing more but this attestation is the minimum and we do not want to have a problems if this minimum is satisfied down the road. We are going the extra mile now in the interest of narrowing the field of cases but we cannot and must not do this work only to find more is wanted at a later date to satisfy this program.

6. I suggest a form motion for the MOTION contemplated in I C for relief from the requirement in those states where case reports are not required and or medical evidence is unavailable. Ease for all parities is our goal and we have forms for dismissal and forms for defendants to use to get rid of cases. We want the same simplicity to advance cases on behalf of plaintiffs. Because defense has done the drafting to date they have ignored the PSC and plaintiff side of the issue and we seek ease of handling for plaintiffs and their counsel.

02/02/05
05:52 PM ET
Baycol MDL 14

7. Judge Davis said in open court on Tuesday that the mediation process would be utilized for the cases once narrowed. The Order should reflect the Courts thinking and this directive.

Thank you for consideration of these points and I am happy to discuss and argue at the appropriate time.

BZ

P.S. Herbie Brooks was also a friend of mine and client.

Charles S Zimmerman
Zimmerman Reed PLLP
csz@zimmreed.com
www.zimmreed.com
800.755.0098

>>> "Haydock, Roger" <rhaydock@arb-forum.com> 2/24/2004 7:42:35 PM >>>

Here is a revised PTO 102. It contains the changes I mentioned to Parts I and III, other needed corrections, and revisions to the exhibits. Please review it and email any comments no later than Noon, central time, Thursday, Feb. 26.

The Court also wants your comments on one additional revision, which appears at the very end of this document (after the exhibits). The Medicare folks need some basic, minimal information from each individual plaintiff to determine a claim. And the Court is interested in reviewing this info. Since we are obtaining info from all the plaintiffs, we could easily obtain this info as well. I drafted revisions to Part I of the PTO which would obtain this information, which proposal is listed in the revision (the one at the end of the document, you know, after the exhibits). Please let me know if you think this is a good, bad, or other idea.

Thank you again for your hard work and continued cooperation. It's possible we may need a conference call to discuss any final issues, so please set aside this Friday, Feb 26, at 11:00 am central time for a possible call. If we need one, I will email you on Thursday.

And I believe today is the anniversary of the US winning the ice hockey gold medal in 1980. It we get an agreement on this proposed PTO, you all get gold medals. Sort, of.

NOTICE: Information in this e-mail or its attachment(s) may be CONFIDENTIAL,

02/02/05
05:52 PM ET
Baycol MDL 14

legally privileged, or exempt from disclosure under applicable law and is intended ONLY for particular clients, parties, or entities involved in litigation or dealings with the Zimmerman Reed, PLLP law firm. If the reader of this message is NOT the intended recipient, you have received this message in error; be aware that any disclosure, dissemination, copying, distribution, or use of the contents of this e-mail or its attachment(s) is prohibited by law. If you have received this e-mail in error, please notify us by telephone (800-755-0098) and by reply e-mail (info@zimmreed.com) immediately and delete ALL copies of the message and its attachment(s).

E-SERVED
02/02/05
05:52 PM ET
Baycol MDL 1431

# Exhibit C

E-SERVED 02/02/05 05:52 PM ET Baycol MDL 1431

**Supplemental Authorities for Section IV.B**

First Circuit: "Courts determine whether a party has met the amount-in-controversy requirement by looking to the circumstances at the time the complaint is filed." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (internal quotation omitted).

Second Circuit: "Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset." *Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999).

Third Circuit: "[I]t was the status of the case as disclosed by plaintiff's state court praecipes that controlled; plaintiff did not file his complaints reducing the amount claimed until after removal." The filing of a pleading reducing the amount claimed could not "oust the district court of jurisdiction." *Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 135 (3d Cir.), *cert. denied*, 426 U.S. 907 (1976); *see New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996) (noting *St. Paul* rule and observing that "the underlying concern of the time of filing rule was the risk that parties would deploy procedural tactics to manipulate federal jurisdiction").

Fourth Circuit: Even though "plaintiffs filed in the federal court a written waiver of their right to recover on the cause of action alleged any amount in excess of" the jurisdictional minimum, "it is perfectly clear that the jurisdiction was not defeated or the removal rendered improper by the [waiver]

E-SERVED
02/02/05
05:52 PM ET
Baycol MDL 1431

subsequently filed" following removal. *Travelers' Protective Ass'n of Am. v. Smith*, 71 F.2d 511, 511-12 (4th Cir. 1934).

Fifth Circuit: "[O]nce the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction"; to the contrary, "if it is facially apparent from the [removal] petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883-84 (5th Cir. 2000); *see Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) (holding that an "[a]mendment to the complaint limiting damages for jurisdictional purposes cannot divest jurisdiction.").

Sixth Circuit: "Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction. Therefore, . . . a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir.), *cert. denied*, 532 U.S. 953 (2000).

Seventh Circuit: A post-removal stipulation reducing the amount in controversy to below the required jurisdictional amount does not deprive a district court of jurisdiction. *See In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 429 (7th

E-SERVED 02/02/05 05:52 PM ET Baycol MDL 1431

Cir. 1997) ("because the stipulation came one month post-removal, [it was] too late for the court to consider").

Eighth Circuit: "It is the situation at the time of removal which is determinative. . . . A subsequent change, such as the plaintiff's post-removal voluntary reduction of his claim to less than the jurisdictional amount, does not defeat federal jurisdiction acquired through removal." *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969).

Ninth Circuit: "[D]iversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction . . . if the amount in controversy subsequently drops below the minimum jurisdictional level." *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 757 (9th Cir.), *opinion amended on denial of rehearing by* 201 F.3d 1186 (9th Cir. 1999).

Tenth Circuit: The court recognized "[t]he error of [an] argument . . . that a party may force remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action. Instead, the propriety of removal is judged on the complaint as it stands at the time of the removal." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) (citing *Pullman v. Jenkins*, 205 U.S. 584, 537 (1939); *see Emland Builders, Inc. v. Shea*, 359 F.2d 927, 928 (10th Cir. 1966) ("It has been repeatedly held that a failure to recover the jurisdictional amount does not defeat jurisdiction.").

Eleventh Circuit: "[E]vents occurring after removal which may reduce the damages recoverable below the amount in controversy requirement

E-SERVED
02/02/05
05:52 PM ET
Baycol MDL 1431

do not oust the district court's jurisdiction. . . . The district court thus erred in relying on the [post-removal] amended complaint to conclude the parties did not meet the amount in controversy requirement." *Poore v. American-Amicable Life Ins. Co.*, 218 F.3d 1287, 1291 (11th Cir. 2000).