E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| *In re BAYCOL PRODUCTS LITIGATION* | MDL No. 1431 (MJD/JGL) |
| This Document Relates to: | |
| *ALL CASES* | |
| ***and*** | |
| *Harmon Brody v. Bayer Corp., et al.* | Case No. 02-0158 |
| *Howard Wrigley v. Bayer Corp.* | Case No. 02-0167 |
| *James Haney, et al., v. Bayer Corp., et al.* | Case No. 02-0915 |
| *Thomas Boris, et al., v. Bayer Corp., et al.* | Case No. 02-2137 |
| *Robert Bayerl, et al., v. Bayer Corp., et al.* | Case No. 02-2823 |
| *Armin Gluck, et al., v. Bayer AG, et al.* | Case No. 02-2981 |
| *Caroline Cowart, et al., v. Bayer AG, et al.* | Case No. 02-2983 |
| *Dale Zygiel v. Bayer Corp., et al.* | Case No. 02-3016 |
| *Paul Richardson v. Bayer Corp., et al.* | Case No. 02-3238 |
| *Virginia Boots, et al., v. Bayer AG, et al.* | Case No. 02-3458 |
| *Anne Briner, et al., v. Bayer AG, et al.* | Case No. 02-3863 |
| *Sandy Bombino, et al., v. Bayer AG, et al.* | Case No. 02-3864 |
| *Bob England, et al., v. Bayer AG, et al.* | Case No. 02-3870 |
| *Elaine Bastian v. Bayer AG, et al.* | Case No. 02-3873 |
| *Rita Rowland v. Bayer AG, et al.* | Case No. 02-3876 |
| *Melissa Young v. Bayer AG, et al.* | Case No. 02-3891 |
| *Norma Andersen v. Bayer AG, et al.* | Case No. 02-3895 |
| *Dwight Siu, et al., v. Bayer AG, et al.* | Case No. 02-3897 |
| *Willie Curtis v. Bayer AG, et al.* | Case No. 02-3949 |
| *Duane Herbert v. Bayer AG, et al.* | Case No. 02-3982 |
| *Robert Edwards v. Bayer AG, et al.* | Case No. 02-4011 |
| *Barbara Salley v. Bayer AG, et al.* | Case No. 02-4013 |
| *Mack McGhee v. Bayer AG, et al.* | Case No. 02-4026 |
| *Margarie Wix, et al., v. Bayer Corp., et al.* | Case No. 02-4027 |
| *Chandler Goklaney v. Bayer Corp., et al.* | Case No. 02-4028 |
| *Mary Fields, et al., v. Bayer AG, et al.* | Case No. 02-4030 |
| *Diana Roach v. Bayer AG, et al.* | Case No. 02-4031 |
| *Charles Wolfe v. Bayer AG, et al.* | Case No. 02-4032 |
| *Steven Kordisch, et al., v. Bayer Corp., et al.* | Case No. 02-4034 |
| *Gary Waddey, et al., v. Bayer AG, et al.* | Case No. 02-4035 |
| *Billy W. Hill, Jr., v. Bayer AG, et al.* | Case No. 02-4036 |

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

| | |
|---|---|
| *Carrie Rush v. Bayer AG, et al.* | Case No. 02-4039 |
| *Viola Chavez, et al., v. Bayer AG, et al.* | Case No. 02-4406 |
| *Ed Tucker, et al., v. Bayer AG, et al.* | Case No. 02-4407 |
| *Mildred Calvert v. Bayer AG, et al.* | Case No. 02-4435 |
| *David James v. Bayer AG, et al.* | Case No. 03-3122 |
| *Harry Deffenbaugh v. Bayer AG, et al.* | Case No. 03-3127 |
| *Geneva Jackson v. Bayer Corp., et al.* | Case No. 03-3596 |
| *Jeff Pryor v. Bayer AG, et al.* | Case No. 03-4135 |
| *Harry Taylor v. Bayer AG, et al.* | Case No. 03-4138 |
| *Jack Holloway v. Bayer AG, et al.* | Case No. 03-4145 |
| *Jeff Runyon v. Bayer AG, et al.* | Case No. 03-4146 |
| *Claude Borger v. Bayer AG, et al.* | Case No. 03-4149 |
| *James Ristich v. Bayer AG, et al.* | Case No. 03-4310 |
| *Ray Dawson v. Bayer AG, et al.* | Case No. 03-4449 |
| *Carlos DeLaTrinidad v. Bayer AG, et al.* | Case No. 03-4497 |
| *Walter Gardner v. Bayer AG, et al.* | Case No. 03-5336 |
| *Mary Fowler v. Bayer Corp., et al.* | Case No. 03-5380 |
| *Mary Roden v. Bayer Corp., et al.* | Case No. 03-5402 |
| *Ofilia Torres v. Bayer Corp., et al.* | Case No. 03-5403 |
| *Domingo Garcia v. Bayer Corp., et al.* | Case No. 03-5407 |
| *Esther Hamlin v. Bayer AG, et al.* | Case No. 03-5410 |
| *Thomas Lampa v. Bayer AG, et al.* | Case No. 03-5927 |
| *Marion Peterson v. Bayer AG, et al.* | Case No. 03-5937 |
| *Claude Trutta v. Bayer AG, et al.* | Case No. 03-5960 |
| *Erwin Lucke v. Bayer AG, et al.* | Case No. 03-5978 |
| *Lucinda Martinez v. Bayer AG, et al.* | Case No. 03-5981 |
| *Catherine DeGilarlomo, et al., v. Bayer Corp., et al.* | Case No. 03-6020 |
| *Ray Holden, et al., v. Bayer AG, et al.* | Case No. 04-2873 |
| *Harold Anderson v. Bayer AG, et al.* | Case No. 04-3659 |
| *Ernest Bradley v. Bayer AG, et al.* | Case No. 04-3662 |
| *Billie Christian v. Bayer AG, et al.* | Case No. 04-3664 |
| *Gloria Esposito v. Bayer AG, et al.* | Case No. 04-3669 |
| *Donny Ethridge v. Bayer AG, et al.* | Case No. 04-3670 |
| *Carol Formato v. Bayer AG, et al.* | Case No. 04-3672 |
| *Robert Janovich v. Bayer AG, et al.* | Case No. 04-3678 |
| *Gary Liebl v. Bayer AG, et al.* | Case No. 04-3680 |
| *Jane McDonald v. Bayer AG, et al.* | Case No. 04-3682 |
| *William Quesenberry v. Bayer AG, et al.* | Case No. 04-3686 |
| *Darlene Rasmussen v. Bayer AG, et al.* | Case No. 04-3687 |
| *Louise Shankle v. Bayer AG, et al.* | Case No. 04-3689 |
| *Katherine Sherman v. Bayer AG, et al.* | Case No. 04-3690 |
| *Harry Stich v. Bayer Corp., et al.* | Case No. 04-3692 |
| *Janie Wells v. Bayer Corp., et al.* | Case No. 04-3697 |

E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

| | |
|---|---|
| *Ronald Whitman v. Bayer Corp., et al.* | Case No. 04-3698 |
| *Mildred Woods v. Bayer Corp., et al.* | Case No. 04-3699 |
| *Varnetta Gandy v. Bayer AG, et al.* | Case No. 04-3710 |
| *Henry Isopi v. Bayer AG, et al.* | Case No. 04-3718 |
| *Chris Hadley v. Bayer AG, et al.* | Case No. 04-3727 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO (a) VACATE SPECIAL MASTER'S JANUARY 13 RULING AND (b) ORDER PLAINTIFFS TO COMPLY WITH PTO 131

This motion challenges a ruling of the Special Master that, if allowed to stand, will undercut the narrowing protocols established by this Court. Specifically, the Special Master ruled that certain putative PTO 131 reports are sufficient even though the reports excluded (among other things) certain information that this Court specifically required by the explicit, carefully negotiated language of PTO 131 and/or even though the reports used boilerplate language to evade PTO 131's differential diagnosis requirement.

If such a loose interpretation of PTO 131 were to govern future reports, certain plaintiffs could go through the motions of complying with PTO 131 without actually conducting a meaningful review of their cases. Indeed, defendants already have received dozens of additional perfunctory reports from one of the putative experts at issue in this motion. This is not only unfair to defendants and undermines the PTO 131 process, it is unfair to those plaintiffs who are taking their obligations seriously, evaluating their cases, and submitting thoughtfully- prepared PTO 131 reports.

E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

Accordingly, with due respect to the Special Master, defendants request the ruling of January 13 to be vacated and the above-referenced plaintiffs compelled to file complete PTO 131 reports within 30 days of the entry of this Court's order.

## BACKGROUND

The proposed case management order that became PTO 131 emerged from extensive discussions between the Court, plaintiffs, and defendants after problems arose in the implementation of PTO 114. As the Court will recall, PTO 114 required plaintiffs to produce case-specific expert reports that complied with Rule 26. PTO 114 § 1. The PSC, however, promoted use of a two-page, check-off, fill-in-the-blanks form report and argued that such a form met Rule 26 requirements. When defendants challenged the sufficiency of such forms, the Court sent the parties back to the negotiating table.

Following those discussions, this Court entered PTO 131. The order includes a Stipulated Report Form, in response to plaintiffs' concerns. However, that form lays out specific questions and documentation requirements for these expert reports. Most importantly, the Stipulated Report Form requires an expert i) to identify the medical records or other information relied upon, ii) to specify basic information on Baycol use and other medications, and iii) to undertake a differential diagnosis, which is necessary

E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

to an expert opinion on injury and causation. Supporting records must be attached so that these opinions can be tested against the record evidence.

After this Court entered PTO 131, the PSC and defendants reviewed reports previously submitted by 1,649 plaintiffs pursuant to PTO 114 to determine whether any of those reports contained the information required under PTO 131. *See* PTO 131 § 3. Of the 1,649 reports, the PSC and defendants agreed that 49 complied and that 1,516 did not. *See* Email of J. Geoppinger to Special Master Remele of 12/29/04 (Ex. A).

The PSC and defendants disagreed, however, as to whether 84 PTO 114 reports contained sufficient information and/or supporting documentation to meet the requirements of PTO 131. *Id.* Special Master Remele was notified of these 84 reports on December 29, 2004, pursuant to PTO 131 ¶ 3.C, which provides for Special Master review.[1] Of these 84 reports, 74 were by Steven Trobiani, M.D., five were by Thomas M. Zizic, M.D., four were by Michael B. Eckstein, M.D., and one was by Jimmy C. Citty, M.D. Because the deficiencies in these reports fell into patterns, defendants and the PSC submitted samples to Special Master Remele and agreed that his rulings would apply to all

---

[1] "If the parties disagree regarding compliance, the PSC or Bayer may request that Special Master Lewis Remele determine whether compliance has occurred. If Special Master Remele determines that information is missing, he shall notify all parties of the missing information and allow the Plaintiff at least 30 days to provide the additional information." PTO 131 ¶ 3.C

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

substantially similar reports filed to date by those doctors. *See* Ltr. of Special Master Remele to Mizgala and Geoppinger of 1/13/05 (Ex. B).

Shortly thereafter, defendants started receiving reports on the new PTO 131 form. Defendants challenged the sufficiency of certain cookie-cutter reports prepared by Raul Reyes, M.D., on behalf of plaintiffs represented by the Law Offices of Daniel Becnel, Jr. *See* Email of J. Mizgala to Special Master Remele of 1/10/05 (Ex. C). This dispute also was referred to Special Master Remele, again based on five sample reports.

The Special Master concluded, in a letter dated January 13, 2005, that all of the sample reports complied with PTO 131. *See* Ex. B. For the reasons set forth below, defendants move this Court to vacate Special Master Remele's ruling and to order plaintiffs to produce reports that comply with PTO 131.

## STANDARD OF REVIEW

The standard of review of the Special Master's ruling is governed by Fed. R. Civ. P. 53(g), which provides, in pertinent part, that:

> **(3) Fact Findings.** The court must decide de novo all objections to findings of fact made or recommended by a master unless the parties stipulate with the court's consent that:
>
> (A) the master's findings will be reviewed for clear error, or
>
> (B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.
>
> **(4) Legal Conclusions.** The court must decide de novo all objections to conclusions of law made or recommended by a master.

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

Under this rule, *de novo* review applies to review of both the legal conclusions and the factual findings of the Special Master, as the parties did not stipulate otherwise.[2]

**ARGUMENT**

PTO 131 gives Plaintiffs specific directions for compliance – fill out the Stipulated Report Form attached to PTO 131, or provide a report with the same information required by the Stipulated Report Form. *See* PTO 131 ¶ 2. The Stipulated Report Form has 14 sections which, among other things, require the purported expert to provide specific information and to attach certain documents to substantiate that information. The form and content of the report were agreed upon.

There is no room for dispute here: if the expert fails to provide requested information or fails to attach requested supporting documents, the report is deficient. The reports at issue here fail to comply with PTO 131 for one or more of the following reasons, each of which is necessary to identify plaintiffs who cannot prove Baycol-related injury or causation:

---

[2] Fed. R. Civ. P. 53(g)(3) provides that "[a] party may file objections to – or a motion to adopt or modify – the master's order, report, or recommendations no later than 20 days from the time the master's order, report, or recommendations are served, unless the court sets a different time."

E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

- The report fails to state the Baycol doses and time periods the patient used Baycol. *See* Stipulated Report Form ¶ 8.

  ***Identifying the doses and the time periods of use will weed out cases where symptoms are not temporally related to Baycol use, such as when the symptoms first occurred before the first exposure to Baycol or after Baycol was discontinued.***

- The report fails to attach the medical records or other permissible information upon which the expert opinions rely as to 1) doses and dates the plaintiff used Baycol, 2) other medications used contemporaneously with Baycol, or 3) identification of the plaintiff's specific injury or injuries. *See* Stipulated Report Form, ¶¶ 8, 10.[3]

  ***Attaching the medical records or other permissible documentation allows for verification of the facts and identification of gaps in knowledge, errors, and other important information that assist in assessment.***

- The report fails to identify which medications, in addition to Baycol, the patient used when plaintiff was using Baycol. *See* Stipulated Report Form ¶ 9.

  ***Identifying other medications allows for consideration of alternative causes, other possible medical conditions which may have affected the plaintiff, and possible warning or drug interaction issues.***

- The report does not list the specific injury or injuries, with dates of onset and resolution, which were allegedly caused by Baycol. *See* Stipulated Report Form ¶ 10.

  ***Specification of injury and of the time of onset and resolution of the alleged injuries allows for correlation between exposure and onset of symptoms, as well as other factors. For example, as muscle and joints pains are among the most common complaints reported to doctors and have multiple potential causes, this part of the report allows for a quick check of the temporal relationship of symptoms and use of Baycol, thus providing a foundation for the differential diagnosis.***

---

[3] The Stipulated Report Form is silent as to whether documentation is required for Plaintiff's use of medications other than Baycol. This requirement, however, is easily inferred from the Stipulated Report Form's numerous other requirements for documentation, including the requirement that documentation be provided for Plaintiff's use of Baycol. *See* Stipulated Report Form, ¶¶ 6, 7, 8, 10.

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

- The report fails to list the specific bases and reasons for the opinion that Baycol caused the plaintiff to suffer the specific injury or injuries. *See* Stipulated Report Form ¶ 11

  ***Specification of the specific bases and reasons for the opinion that Baycol caused the alleged specific injury or injuries is fundamental to reaching a diagnosis, and it allows defendants to later challenge the reasoning of the expert. If an expert cannot identify reasons why Baycol caused a plaintiff's specific injuries, that expert's opinion is suspect and the plaintiff's case should be weeded out.***

- The report fails to list possible alternative causes of the specific injuries identified in the report and the reasons for excluding those causes. *See* Stipulated Report Form ¶ 12.

  ***Requiring that the expert rule out possible alternative causes and the reasons for excluding those causes – the differential diagnosis – allows for identification of the origin of the injury, weeding out cases where the alleged injury was caused by something other than Baycol.***

The Stipulated Report Form was not intended to be an exercise in cutting-and-pasting rote responses – it specifically requires an analysis of the actual facts upon which the expert based his or her opinion. The deficiencies complained of here are not technicalities or near misses. These reports fail to meet the standards of PTO 131 by a mile, as discussed in detail below.

**NONCOMPLIANT PTO 131 REPORTS BY RAUL REYES, M.D.**

The reports by Raul Reyes, M.D., completed on behalf of clients of the Law Offices of Daniel Becnel, presented the paradigm of why form reports undercut PTO 114. Dr. Reyes managed to grind out 378 such reports under PTO 114 before that Order was partially supplanted by PTO 131. Plainly, such an expert report assembly line could not be based on careful examination of plaintiffs' claims.

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

Now, Dr. Reyes is busily generating perfunctory PTO 131 reports. Perhaps most telling is the fact that not one of his reports even discusses possible alternative causes of the alleged specific injuries (where Dr. Reyes even identifies specific injuries), when it is universally recognized that such symptoms are non-specific. Indeed, as this Court has recognized:

> [P]ursuant to one of the medical experts retained by the Plaintiffs' Steering Committee ("PSC"), the alleged injuries sustained by the plaintiffs that ingested Baycol, including muscle pain and weakness, require a physician to perform a differential diagnosis to determine the origin of such injury. Deposition of Thomas M. Zizic, M.D. at 184. Relevant to the causation inquiry is a particular plaintiff's medical history, and any medications taken at the same time as Baycol to determine whether concomitant illnesses or medications could be the cause of such injuries. Id. at 185. Similarly, another medical expert retained by the PSC testified at his deposition that it is important to investigate alternative causes of injury when making a diagnosis. Deposition of George Kaysen, M.D. at 38-39, 41.

Court's Order of June 15, 2004 (Ex. D) at 8. In addition, Dr. Reyes' reports fail for the following case-specific reasons:

**Brian Reynolds, Case No. 04-2873**

- **The report fails to attach medical records or other information as to doses and dates of Baycol use.** Dr. Reyes' report says that Plaintiff Reynolds used ".4 mg/day [of Baycol] in April 2001." Reyes Report on Reynolds (Ex. E) at ¶ 6. No medical or other records are attached which detail Plaintiff Reynolds' use of Baycol. Indeed, the *earliest* record attached is dated August 12, 2002, more than one year after Plaintiff allegedly used Baycol.

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

- **The report fails to provide documentation supporting Plaintiff's use of other medications contemporaneously with Baycol.** The report says that Plaintiff used Flomax contemporaneously with Baycol, in April 2001. *See* Ex. E at ¶¶ 6-7. However, as noted above, the earliest attached medical records are dated August 12, 2002. No records are attached which support the assertion that Plaintiff used Flomax at the same time he was using Baycol.

- **The report fails to list a specific injury or injuries and the actual or approximate dates of the injury or injuries**. The report says that "this patient has suffered injuries or damages related to this patient's ingestion of Baycol," yet fails to name a specific injury or injuries. Ex. E at ¶ 8.

- **The report fails to attach records that Reyes relies on for his opinion as to plaintiff's injuries.** Dr. Reyes opines that "[t]he claim of injury by the patient is reasonably contemporaneous with the patient's ingestion of Baycol." Ex. E at ¶ 9. However, as noted, no medical records are attached that are contemporaneous with plaintiff's alleged use of Baycol in April 2001, and no dates of onset or cessation of symptoms are reported.

- **The report fails to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fails to identify the reasons for ruling out those causes.** The report says that Dr. Reyes has "considered the following possible alternative causes and, as to each, [has] ruled out those alternative causes for the following reasons: No alternative causes found." Ex. E at ¶ 10. As the report lists no alternative causes, the origin of the (unspecified) injury cannot be identified.

**Robert Edwards, Case No. 02-4011**

- **The report fails to attach medical records or other information as to when plaintiff discontinued using Baycol.** Dr. Reyes' report says that plaintiff Edwards used ".4 mg/day [of Baycol] from March 16, 2001 to August 1, 2001." Reyes Report on Edwards (Ex. F) at ¶ 6. No medical or other records are attached which detail when plaintiff discontinued using Baycol. Thus, Dr. Reyes' assertions cannot be verified.

- **The report fails to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fails to identify the reasons for ruling out those causes.** Reyes opines that plaintiff Edwards has "Severe Cardiac Problems" related to ingesting Baycol. Ex. F at ¶ 8. The report also says that Dr. Reyes has "considered the following possible alternative causes and, as to each, [has] ruled out those

E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

alternative causes for the following reasons: No alternative causes found." Ex. F at ¶ 10. The records attached to the report, however, show that even before plaintiff Edwards started using Baycol he had a history of heart problems, including ischemic cardiomyopathy, coronary artery disease with coronary artery bypass surgery, myocardial infarction, congestive heart failure, and hypertension. *See* pages marked as Exs. F1, F2 and F3. As there is a history of severe cardiac problems *before* Baycol use and no medical literature suggests that Baycol causes cardiac problems, common sense dictates that this report is inadequate.

**Jamie Manda, Case No. 02-0915**

- **The report fails to attach records that Reyes relies on for his opinion as to plaintiff's injuries.** Dr. Reyes opines that plaintiff Manda suffered "Muscle Weakness and Muscle Cramps" related to the use of Baycol. Reyes Report on Manda (Ex. G) at ¶ 8. Dr. Reyes also opines that "[t]he claim of injury by the patient is reasonably contemporaneous with the patient's ingestion of Baycol." Reyes Report on Manda, at ¶ 9. Plaintiff allegedly used Baycol from June 12, 2001, to August 9, 2001. *See* Ex. G at ¶ 6. However, no record is provided that substantiates Dr. Reyes' claim that plaintiff suffered muscle weakness or cramps during this time. In fact, the records first document myalgias (*i.e.*, muscle pain) on September 24, 2001, when plaintiff was on Lipitor, another statin. *See* pages marked as Exs. G1 and G2.

- **The report fails to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fails to identify the reasons for ruling out those causes.** The report says that Dr. Reyes has "considered the following possible alternative causes and, as to each, [has] ruled out those alternative causes for the following reasons: No alternative causes found." Ex. G at ¶ 10. The records attached to the report, however, show that plaintiff used Lipitor, had diabetes, was depressed and used Diovan HTC. *See* pages marked as Exs. G1 and G2. Muscle weakness and cramps are not specific to Baycol but are associated with a number of causes, including depression, Diovan HTC, and Lipitor. The failure of Dr. Reyes even to mention these as potential causes – and rule them out – defies reason and conflicts with the intent of PTO 131.

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

**Lewis Pyle, Case No. 04-2873**

- **The report fails to attach medical records or other information as to doses and dates of Baycol use.** Dr. Reyes' report says that plaintiff used ".4 mg/day [of Baycol] from May 3, 2001 to June 3, 2001." Reyes Report on Pyle (Ex. H) at ¶ 6. The only records attached are illegible pharmacy records, so the dates of use cannot be verified.

- **The report fails to provide documentation supporting plaintiff's use of other medications contemporaneous with Baycol.** The report says that plaintiff used Sucralfate, Ranitidine, Triamt/HCTZ, and Captopril contemporaneously with Baycol. *See* Ex. H at ¶ 7. As noted, the only attached records are illegible, making verification impossible.

- **The report fails to list a specific injury or injuries and the actual or approximate dates of the injury or injuries**. The report merely says that "this patient has suffered injuries or damages related to this patient's ingestion of Baycol." Ex. H at ¶ 7. Such perfunctory conclusions mock PTO 131's authority.

- **The report fails to attach records that Reyes relies on for his opinion as to plaintiff's injuries.** No records are included aside from the illegible pharmacy records, which do not mention any injuries.

- **The report fails to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fails to identify the reasons for ruling out those causes.** The report merely says that Dr. Reyes has "considered the following possible alternative causes and, as to each, [has] ruled out those alternative causes for the following reasons: No alternative causes found." Ex. H at ¶ 10. Given the full medicine chest of drugs used by this plaintiff, one would think that the other drugs would at least be mentioned in a differential diagnosis as a possible alternative cause of the unspecified injuries. Dr. Reyes, however, lists nothing else as a possible cause of the unspecified injuries.

**Leslie Rookstool, Case No. 04-2873**

- **The report fails to list a specific injury or injuries and the actual or approximate dates of the injury or injuries**. The report says that "this patient has suffered injuries or damages related to this patient's ingestion of Baycol." Reyes Report on Rookstool (Ex. I) at ¶ 8. No dates and specific injuries are listed.

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

- **The report fails to attach records that Reyes relies on for his opinion as to plaintiff's injuries.** Dr. Reyes opines that "[t]he claim of injury by the patient is reasonably contemporaneous with the patient's ingestion of Baycol." Ex. I at ¶ 9. The only records attached to this report are pharmacy records and a death certificate, which lists aspiration/pneumonia and chronic obstructive pulmonary disease. Nothing suggests that these conditions were Baycol-related.

- **The report fails to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fails to identify the reasons for ruling out those causes.** As with his other reports, Dr. Reyes has "considered the following possible alternative causes and, as to each, [has] ruled out those alternative causes for the following reasons: No alternative causes found." Ex. I at ¶ 10. The report lists no alternative causes to explain the alleged non-specific injuries. Pneumonia and chronic pulmonary disease may have many causes; it defies common sense for a doctor to say that Baycol was the only factor in his differential diagnosis.

The Court must act now to prevent Dr. Reyes from tendering more deficient reports and undermining the PTO 131 narrowing process. Indeed, in the time since the Special Master ruled that deficiencies in Reyes' reports could be overlooked, the busy doctor has already produced another 44 perfunctory PTO 131 reports, with even less information than those discussed above.

**NONCOMPLIANT PTO 114/131 REPORTS**

Acceptance of Dr. Reyes' reports would threaten the integrity of the PTO 131 process going forward. That process will be similarly undermined if plaintiffs are relieved of the duty to file PTO 131 reports, where their PTO 114 filings did not supply the information and documentation required under the newer order. These PTO 114 reports fail to meet PTO 131 requirements for the following reasons:

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

**Sample Report by Steven Trobiani, M.D., on Behalf of Elaine Bastian, Case No. 02-3873**

- **The report lacks appended medical records.** In response, counsel for plaintiff states that "[m]edical records were provided along with the submission of Ms. Bastian's PFS, again on June 4, 2004 with Ms. Bastian's PTO 114 attorney letter, and again on November 19, 2004 as [a] supplement to Ms. Bastian's PTO 114 report." Memorandum of Deanna Dailey (Ex. J) at 2. As Dr. Trobiani never confirmed that he reviewed the records sent by plaintiff's counsel and that his opinions are based upon the later-sent medical records, there is no way of verifying whether his opinions are based on those medical records. This is contrary to the intent of PTO 131.

- **The report fails to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fails to identify the reasons for ruling out those causes.** The report lists a short narrative in which Dr. Trobiani recites a few limited medical records and says that "[t]here is no other explanation for this injury apparent in the medical records." *See* Trobiani Report on Bastian (Ex. K) at ¶ 6(c). Dr. Trobiani fails to list a single other factor in his differential or reasons for excluding those factors. Counsel for plaintiff argues that "it is clear that Dr. Trobiani has considered alternative causes." *See* Ex. J at 1. However, counsel for plaintiff fails to identify what they now admit the doctor considered. Counsel for plaintiff also argues that Dr. Trobiani "declines to draft reports for those claimants whose injuries may be caused by an alternative explanation." *Id.* at 3. This answer completely misses the mark, as Dr. Trobiani's opinion for other plaintiffs has no bearing whatsoever as to causation in this case.

**Sample Reports by Thomas M. Zizic, M.D.[4]**

- **The reports lack appended medical records.** Counsel for plaintiffs state that Dr. Zizic "identified the specific pharmacy and medical records he reviewed/relied upon (which were also provided to defendants with the individual Plaintiff Fact Sheets and available with HIPAA authorizations)" and that "Dr. Zizic's reports were supplemented with pharmacy and medical records." Memorandum of Yvonne Flaherty (Ex. Q) at 1-2. Counsel for plaintiffs merely sent counsel for defendants records for these plaintiffs,

---

[4] The sample reports of Thomas M. Zizic, M.D., were completed on behalf of Norma Andersen, Case No. 02-3895 (Ex. L), Caroline Cowart, Case No. 02-2983 (Ex. M), Erwin E. Lucke, Case No. 03-5978 (Ex. N), Kenneth Oestreich, Case No. 02-3863 (Ex. O), and Ann Rogers, Case No. 02-2983 (Ex. P).

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

with no verification from Dr. Zizic as to whether he based his opinions on those records.

- **The reports fail to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fail to identify the reasons for ruling out those causes.** The reports provide a narrative in which medical records are recited. As with Dr. Reyes' reports, Dr. Zizic fails to consider and rule out any other potential cause for injuries in any patient. He concludes that Baycol is always the only possible cause, as he states that "there is no other explanation for this injury apparent in the medical records I reviewed." *See* Exs. L through P at ¶ 7(c). This is a conclusion, not a valid differential diagnosis.

**Sample Reports by Michael B. Eckstein, M.D.**[5]

- **The reports lack appended medical records.** Counsel for plaintiffs state that "medical and pharmacy records in support of the report by Dr. Eckstein were submitted this summer as part of the categorization process." *See* Memoranda of Lisa Gorshe (Ex. V) at ¶ 11. Counsel for plaintiffs sent counsel for defendants records for these plaintiffs. Defendants received no verification from Dr. Eckstein whether he based his opinions on these records.

- **The reports fail to list possible alternative causes of the specific injuries identified by the expert and, as to each specific injury, fail to identify the reasons for ruling out those causes.** The reports provide a narrative in which medical records are recited, and Dr. Eckstein writes "[t]here is no other explanation for this injury apparent in the medical records." *See*, *e.g.*, Eckstein Reports on Kidd and Bayerl, Exs. R and U, at ¶ 8. Dr. Eckstein does not list any possible alternative causes, thus precluding the identification of the origin of the alleged injuries.

---

[5] These reports were completed by Michael B. Eckstein, M.D., on behalf of Delores Kidd, Case No. 02-2137 (Ex. R), Mary Eddy, Case No. 02-2137 (Ex. S), Catherine DeGiralomo, Case No. 03-6020 (Ex. T), and Robert Bayerl, Case No. 02-2823 (Ex. U).

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

**Report by Jimmy C. Citty, M.D., on Behalf of Walter Gardner, Case No. 03-5336**

- **The report lacks appended medical records.** Counsel for plaintiff states that "we have previously provided all medical records considered by our expert." *See* Ltr. from Rountree to Geoppinger of 12/15/04 (Ex. W) at 1. Counsel for plaintiff sent counsel for defendants records for these plaintiffs. Defendants received no verification from Dr. Citty as to *which* of these were considered. Failure to attach the medical records frustrates the purpose of the efficient review of cases, leaving everyone guessing as to which records the expert actually reviewed.

**CONCLUSION**

The reports described above do not comply with the specific requirements set forth in PTO 131. Certain plaintiffs' lawyers should not be allowed to undermine this Court's orders by submitting only a conclusory statement that a plaintiff was injured by Baycol. What will follow from the acceptance of such reports is predictable – more discovery, more money spent and time wasted, and more plaintiffs being dismissed later in the litigation, after they discover that their cases are without merit.

For the foregoing reasons, defendants respectfully request that the Court vacate Special Master Remele's Ruling of January 13, 2005, and enter an order compelling plaintiffs to produce expert reports which comply with PTO 131.

Dated: February 2, 2005

E-SERVED 02/03/05 12:06 AM ET Baycol MDL 1431

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

____/s/signature on file____________
Susan A. Weber
Eugene A. Schoon
James W. Mizgala
Nathan S. Hammons
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Gene C. Schaerr
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

____/s/signature on file_________
Fred T. Magaziner
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline and GlaxoSmithKline plc*

E-SERVED
02/03/05
12:06 AM ET
Baycol MDL 1431

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*