E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

In re BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD/JGL)

This Document Relates to:

ALL CASES

---

# BAYER AND GSK'S RESPONSE TO PTO 138 INQUIRY REGARDING POSSIBLE REMAND OF MDL CASES TO TRANSFEROR COURTS

In Pretrial Order 138, this Court asked the parties to address whether it is "appropriate" to remand to transferor courts all individual cases in this MDL "at this time." Defendants' answer is: ***More can be accomplished in this MDL, so remand now would not be "appropriate."***

Key common issues remain to be addressed by this Court. Most significantly, the Court has yet to hold *Daubert* hearings on generic experts. *Daubert* hearings are a fundamental part of any MDL proceeding, and this Court decided to undertake those hearings in entering Pretrial Order 120.

Moreover, in addition to such "consolidated" proceedings, MDL courts are responsible for "coordinated" proceedings. 28 U.S.C. § 1407(a). Coordinated case-specific discovery has been managed by many MDL Courts, including the *St. Jude, PPA, Rezulin, Diet Drug* and *Bone Screw* courts. *See infra,* Part II.A. Indeed, this Court ordered case-specific discovery to be conducted in this MDL in Pretrial Order 4 and has emphasized that "[t]hese

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

cases are going to be squeaky clean before they go back." Oct. 9, 2003, Tr. at 124 (Ex. A).

Accordingly, this Court should commence case-specific discovery. Defendants continue to believe that the first step in this discovery process should be a narrowing order, to sort cases that warrant deposition discovery from those that do not. On reflection, defendants urge the Court to reinstate the PTO 114 requirement that plaintiffs serve Rule 26 reports. This procedure will create no additional obligation for plaintiffs, who must serve such reports to survive summary judgment,[1] and will save all parties the expense and burden of preparing cases that do not warrant further work.

Regardless of whether the Court employs a narrowing process, the Court should establish a rolling schedule for case-specific discovery in all MDL cases. Allowing defendants to depose witnesses in this MDL will not impose an additional burden upon plaintiffs, because plaintiffs' cases will be subject to discovery upon remand in any event. And conducting this discovery before remand will allow the parties and this Court to identify and address recurring issues before these cases are returned to transferor courts.

In contrast, terminating this MDL prematurely would leave undecided issues that can be addressed on a coordinated basis; spawn *de facto* successor MDLs in this and other districts; load the dockets of transferor courts with cases likely to be dismissed long before trial; and, generally, maximize the burden of this litigation on transferor courts. Rather than

---

1 *See Ronwin v. Bayer*, No. 02-0200, slip. op. at 8 (June 10, 2004) (Ex. B).

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

suggesting remand of cases now, the Court should prepare these cases for trial by continuing to work on consolidated issues in the MDL and by establishing a rolling schedule for coordinated completion of case-specific discovery.

## I. REMAND WOULD BE INAPPROPRIATE BECAUSE OF ONGOING "CORE" PROCEEDINGS.

As a preliminary matter, no suggestion of remand should issue where "common" or "core" proceedings are ongoing in an MDL. *See In re Patenaude*, 210 F.3d 135, 146 (3d Cir. 2000); *see also Hayes v. Bayer*, 02-445, slip. op. at 2 (June 29, 2004) (Ex. C); *Lehmann v. Bayer*, PTO 125 at 3-4. And one of those core proceedings is completion of generic expert discovery and related *Daubert* motion practice.[2]

Those generic expert depositions are almost completed.[3] Now a schedule for briefing and hearing *Daubert* motions should be established. *See* PTO 120 ¶ 8(F). Importantly, this Court should not make *Daubert* rulings in a vacuum. To allow the Court to appreciate the way generic expert testimony would come into play in actual Baycol cases, the parties must be able to discuss those cases in their *Daubert* briefs.

Since it appears unlikely that we will have a trial in the MDL that could serve as a framework for *Daubert* motions, defendants suggest that the

---

[2] *See, e.g., In re Rezulin Prods. Liab. Litig.* (MDL No. 1348), 309 F. Supp. 2d 531, 544-66 (S.D.N.Y. 2004); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.* (MDL No. 1407), 289 F. Supp. 2d 1230, 1237-51 (W.D. Wash. 2003); *In re Orthopedic Bone Screw Prods. Liab. Litig.* (MDL No. 1014), 1998 U.S. Dist. LEXIS 21857, at *17-19 (E.D. Pa. Jan. 12, 1998).

[3] One GSK witness has not been deposed; GSK and the PSC continue to correspond regarding dates for that deposition.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

Court select a group of cases – drawn from claims that already have been through the narrowing process – and schedule case-specific discovery in those cases on an expedited basis. *Daubert* briefing can follow closely on the completion of this discovery. This approach will allow the Court to conduct *Daubert* hearings and possibly render some rulings this year. Then, as in *PPA* and *Norplant*, the Court may entertain summary judgment motions based on its *Daubert* rulings. *See PPA,* CMO 17C at 3 (W.D. Wash., June 23, 2004) (Ex. D); *Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830-31 (E.D. Tex. 2002).

Of course, *Daubert* is only one of numerous issues that should be addressed in this MDL on a consolidated basis. As the Court is aware, the PSC has again moved for class certification, and defendants have moved to strike the underlying amended complaint (and consequently the class certification motion) pursuant to Rule 15. The PSC's recent filing demonstrates the continuing emergence of issues of general applicability that should be addressed by this Court prior to any remands.[4]

Thus, with work that touches many cases remaining to be done, talk of any remand – much less the wholesale remands proposed by the PSC – is premature.

---

[4] To provide another example: the Court should, in due course, strike class allegations from individual complaints pending in this MDL, as foreclosed by this Court's prior ruling denying certification of the master class action complaint.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

## II. REMAND WOULD BE INAPPROPRIATE BECAUSE THIS COURT SHOULD COORDINATE CASE-SPECIFIC DISCOVERY.

While the Court addresses *Daubert* and other core issues, the Court should establish a schedule for completion of case-specific discovery prior to remand. This Court has intended to oversee this discovery since the outset of this MDL. PTO 4 §§ F(4) & F(5) (authorizing depositions of plaintiffs and physicians to begin in April and July of 2002). Indeed, this Court has stated:

> [W]e've got thousands of cases. We've got to get those ready.
>
> And my directive is, so you understand where I am coming from, since it's evident that I did not certify a class, these cases have to be ready for -- I have to have them ready when they go back to the trial [court]. And that means we are going to have to do everything that we are doing for trial here before they go back. Because there is no need for the trial courts judge to have to go through all this again. Everything is going to be screened here.
>
> . . . . [A]ll the judge is going to do is go to trial or maybe have another settlement conference to try to see whether or not something is going to be settled.

Oct. 9, 2003, Tr. at 123-24 (Ex. A).

This approach is consistent with the practice of other MDLs managing pharmaceutical and medical device litigation. Conducting this discovery prior to remand will allow any additional issues of general interest to emerge in the MDL, where they can be addressed on a consistent and comprehensive basis for all cases. *See In re Diet Drugs Prods. Liab. Litig.*, (MDL No. 1203), 2003 U.S. Dist. LEXIS 18069, at *10 (E.D. Pa. Aug. 25, 2003).

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

### A. This Court Should Exercise Its Authority under § 1407(a) To Coordinate Case-Specific Discovery in this MDL.

The PSC contends that, because (a) common issue discovery on defendants is complete, and (b) defendants have declined to enter into a global settlement, this Court should suggest a sweeping remand of MDL cases to their transferor courts. *See* Feb. 9, 2005, Tr. at 15 (Ex. E). In addition to ignoring *Daubert* and other issues of general applicability, the PSC's argument rests on a cramped reading of the duties of an MDL court.

Section 1407(a) expressly defines the scope of an MDL court's duties as "coordinated *or* consolidated pretrial proceedings." (Emphasis added.) Under this provision, an MDL court's authority is not limited to litigation of "identical issues on common evidence." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998). Rather, the court's authority to manage "coordinated" proceedings is broadly construed: "a proceeding that relates only to a single individual's case or claim can nonetheless be coordinated," and MDL proceedings need not be "concluded at the point that only case-specific proceedings remain." *Patenaude*, 210 F. 3d at 143, 145 (denying mandamus petition brought by plaintiffs seeking remand from the long-running MDL managing asbestos litigation).

Other MDL courts responsible for pharmaceutical and medical device litigation have recognized the value of conducting case-specific discovery within the MDL. Deadlines have been established for completion of case-

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

specific discovery in *St. Jude* and in *Rezulin*.[5] Similar deadlines exist in *PPA,* where the Court has begun issuing remand orders. Plaintiffs cannot, however, seek remand until case-specific fact discovery has been completed.[6] Plaintiffs in the *Bone Screw* MDL were required to complete case-specific discovery and certain expert discovery prior to remand.[7]

Even in the behemoth *Diet Drug* MDL, all case-specific fact discovery and medical expert discovery must be completed before remand.[8] When *Diet Drug* plaintiffs, like the PSC here, argued for a sweeping remand on the ground that only case-specific discovery remained, the *Diet Drug* court rejected the temptation to clear its docket. *See Diet Drugs*, 2003 U.S. Dist. LEXIS 18069, at *12 (E.D. Pa. Aug. 25, 2003) (denying motion to dissolve the MDL). Instead of dumping tens of thousands of unprepared cases upon transferor courts, the *Diet Drug* court emphasized the experience it had gained with the issues in the litigation and the importance of preserving the MDL so that, when new issues emerged as the first waves of remanded cases were tried, those issues could be addressed on a comprehensive basis for plaintiffs

---

[5] *See In re St. Jude Medical Inc. Silzone Heart Valves Prods. Liab. Litig.* (MDL No. 1396), PTO 20 ¶ 1(E) (D. Minn., Sept. 9, 2002) (Ex. F); *Rezulin*, PTO 2 ¶ 2.1 (S.D.N.Y., amended Dec. 13, 2002) (Ex. G), PTO 4 ¶ 3 (Dec. 5, 2000) (Ex. H) and PTO 82 ¶¶ 1 and 2 (Apr. 29, 2002) (Ex. I).

[6] *See PPA*, Final Pretrial Order § III (B) (W.D. Wash. Dec. 13, 2004) (Ex. J); *PPA*, CMO 17C at 3 (Ex. D).

[7] *See Bone Screw*, 1997 WL 303239, at *1 (E.D. Pa. Feb. 13, 1997).

[8] *See Diet Drugs*, PTO 292 (E.D. Pa., Sept. 24, 1998) (Ex. K) and PTO 417 ¶¶ 6-8 (Jan. 6, 1999) (Ex. L). Plaintiffs are allowed to present only one expert after a remand: an economist, to address damage issues. PTO 417 ¶ 10.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

whose cases remained in the MDL. *Id.* at *10. *If the Diet Drug court can manage case-specific discovery, this Court surely can, with the help of Judge Lebedoff and the Court's special masters.*

B. This Court Should Reinstate PTO 114 Narrowing and Set Cut-offs for Completion of Case-Specific Discovery.

This Court should set a schedule that provides for completion of all case-specific discovery on a rolling basis, so that each case is trial-ready before remand – an objective to which this Court often has referred. *E.g.,* June 20, 2003, Tr. at 56 (Ex. M) ("How are we going to make sure that the Judges end up with the cases that can be tried so they are not saying why did Davis hold on to this case for two years or three years and not do anything worthwhile for me to try this case when it's remanded back"). The Court should reinstate a narrowing protocol, as a first step in the discovery schedule.

Defendants continue to believe that a threshold narrowing process will help limit the burden and cost of discovery for all parties and the Court by requiring plaintiffs' counsel to take a close look at their cases and to determine which cases warrant the time and effort that goes into depositions. The PSC recently has complained that narrowing, which plaintiffs proposed, creates an unnecessary hoop for plaintiffs to jump through. Feb. 9, 2005, Tr. at 27 (Ex. E). But that issue arises only with respect to PTO 131. Its predecessor, PTO 114, called for Rule 26 reports, which can be used throughout litigation, and allowed plaintiffs to supplement those reports before experts were deposed.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

PTO 114 §§ I(E) & I(F).[9] Defendants therefore urge the Court to reinstate the requirement that plaintiffs produce Rule 26 reports (not form reports otherwise unusable in the litigation) to achieve narrowing in a fair and cost-effective manner.

Regardless of its decision on narrowing, the Court should establish rolling schedules for completion of case-specific fact and expert discovery. Cases should be grouped, based on their District of Minnesota docket numbers, and deadlines established for fact discovery, plaintiffs' Rule 26 expert reports, depositions of plaintiffs' experts, defendants' Rule 26 expert reports (if any), and depositions of defendants' experts.[10] The Court should further order that no case will be eligible for remand unless and until this fundamental discovery is completed. Defendants remain ready to work with the PSC and the Court to develop a discovery plan that will achieve these goals.

### C. Conducting Case-Specific Discovery in the MDL Will Advance this Litigation and Ease the Burden on Transferor Courts When Cases Are Remanded.

Conducting case-specific discovery in this MDL will be convenient for parties and witnesses, fair, and efficient (*see* 28 U.S.C. § 1407(a)) for three general reasons:

---

[9] Thus, reinstatement of PTO 114 would address another of the PSC's recent complaints about the PTO 131 narrowing process – that expert reports are prepared too far ahead of trial to be useful. Feb. 9, 2005, Tr. at 13 (Ex. E).

[10] *See generally* PTO 96 *and* Agreed Order on the Discovery Plan Pursuant to PTO 89 (Nov. 3, 2003) (Ex. N).

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

*1. Prompt discovery start-up.* The PSC recently observed: "We owe responsibilities to our clients and co-counsel to move forward."[11] Defendants agree. This Court can initiate case-specific discovery faster and more efficiently than transferor courts. All that is required here is entry of a scheduling order with rolling discovery cutoffs.[12]

If cases are not subject to case-specific discovery until after remand, those cases will remain dormant while this Court addresses *Daubert* and other remaining core issues and thereafter from the time this Court recommends remand until the JPML acts and case records are returned to the transferor court. Only then, for cases filed where plaintiffs reside, would transferor judges enter discovery orders and begin work on individual cases in earnest. For the thousands of cases filed outside plaintiffs' home districts, briefing of venue motions and additional transfers of files would precede case-specific discovery.

*2. Consistency and experience.* In addition to allowing an earlier start to discovery, maintaining control over MDL cases will allow this Court to address any new or recurring issues – *e.g.*, the ability of certain kinds of case-specific experts to opine on medical causation – and enter rulings that affect all

---

[11] Email from Charles Zimmerman to Roger Haydock (March 5, 2005) (arguing for an early setting of the April status conference) (Ex. O).

[12] *E.g.*, *PPA*, CMO 17C at § II (Ex. D) (allowing remand only after parties had complied with the MDL's prior orders); *see also Diet Drugs*, 2003 U.S. Dist. 18069, at *11 (requiring rolling remand based on the cases' status in the discovery process); *Rezulin*, PTO 82 ¶¶ 1-2 (Ex. I) (requiring case specific discovery prior to remand).

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

cases or large groups of cases. *See Diet Drugs*, 2003 U.S. Dist. LEXIS 18069, at *11.[13]

Further, this Court will be better able to interpret and apply its own orders than transferor judges who are unfamiliar with this litigation and may adopt conflicting interpretations. *Id.* For instance, this Court has entered a series of rulings relating to bundling of plaintiffs (PTOs 31, 61 and 88) into a single complaint, but has not yet applied those rulings to other multi-plaintiff complaints. Case-specific discovery will allow this Court to address at least some of these bundled complaints and potentially avoid returning unwieldy cases to transferor courts. *See generally* July 15, 2003, Tr. at 99-100 (Ex. P) ("The Court quietly, I think, and unwaveringly, has told both sides that we are going to resolve many of the issues, whether or not they go back to the district they came from resolve those issues for those Judges so they can try these cases without having them do the work that I was supposed to do.")

*3. Docket management.* As recently as February, plaintiffs conceded that some of the cases in this MDL "should be legitimately dismissed." Feb. 9, 2005, Tr. at 7 (Ex. E). Indeed, the PTO 89 pilot program demonstrated that, when these cases are subject to discovery, a high

---

[13] *See also In re Long Distance Telecommunication Litig.*, 612 F. Supp. 892, 903 (E.D. Mich. 1985) ("one of the basic purposes of the multidistrict process, and of the JPML's transfer orders . . . is to achieve consistent rulings on the common issues among the transferred cases").

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

percentage of plaintiffs choose to discontinue their lawsuits.[14] This Court's experience has not been unique.[15] If plaintiffs are going to dismiss their cases in response to the scheduling of case-specific discovery, those dismissals should take place prior to transfer, to avoid burdening transferor courts.

Right now, 3,877 transferred and served cases are pending before this Court, asserting mostly muscle ache claims on behalf of 9,624 Baycol users. If plaintiffs dismiss their claims at the same rate as PTO 89 pilot program plaintiffs alleging muscle ache claims, only 100 transferred plaintiffs will have claims pending at the conclusion of fact discovery.[16] Plainly, the interests of judicial economy will be better served if cases destined for dismissal during the discovery process are dismissed before remand.

## III. IMMEDIATE REMAND OF CASES WOULD FRUSTRATE THE PURPOSES OF THIS MDL.

For the first 12 pages, defendants have presented positive reasons why this Court should continue to supervise this MDL. This final section will briefly address the flipside of that proposition: why immediate remand of all MDL cases would be a phenomenally bad idea.

---

[14] Of 210 cases in the PTO 89 pilot program, 16 rhabdo cases settled and 2 muscle ache cases remain pending. The other 192 muscle ache cases were discontinued prior to or during discovery.

[15] Of the more than 4,000 cases filed in state court in Philadelphia, only 31 active cases remain.

[16] Similarly, of the 1,268 cases filed directly in this District, involving 1,892 Baycol users, the claims of only 19 would be expected to survive discovery.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

# Federal Lawsuits by Filing Jurisdiction




As of 3/10/2005

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

The map on the preceding page shows the first post-remand stop for Baycol cases now pending in this Court. As that map demonstrates, remand of these cases would create a number of *de facto* follow-up Baycol MDLs. One would remain in this Courthouse, because 1,268 cases involving 1,892 active plaintiffs from across the country have been filed directly in this District and are not subject to JPML remand procedures. (Only 16 of the plaintiffs in those cases reside in Minnesota).

A second quasi-MDL would arise in the Eastern District of Pennsylvania, where 2,443 cases have been filed by 2,487 plaintiffs. That district, of course, already is managing the *Diet Drug* litigation.

Four multiple-plaintiff cases, if remanded to the Northern District of Mississippi, would create a third *de facto* MDL. These four cases[17] presently have a total of 1,493 plaintiffs who reside in Mississippi and 12 other states – as far afield as California and Puerto Rico. In fact, more active plaintiffs in these four cases live in Kentucky (372), Louisiana (330), Tennessee (274), and California (245), than reside in Mississippi (239).

Similarly, remand of *Creel v. Bayer Corp.*, No. 03-4968, to the Southern District of Mississippi alone would create a mini-MDL of 137 active plaintiffs from eleven states – 95 of them from Mississippi, but others from

---

[17] They are: *Dickerson v. Bayer Corp.,* No. 03-1173, with 445 active plaintiffs from six states; *Toles v. Bayer Corp.,* No. 03-1174, with 403 active plaintiffs from six states; *Coates, v. Bayer Corp.,* No. 03-11753, with 388 active plaintiffs from five states, and *Michael v. Bayer Corp.,* No. 03-6415, with 257 active plaintiffs from seven states. All four cases were filed by the Langston Law Firm and Beasley Allen Crow Methvin Portis & Miles.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

Alabama, Arkansas, Florida, Kentucky, Nevada, New Jersey, New York, South Carolina, Tennessee, and Texas.

Additional districts with high case counts[18] could join the ranks of the *de facto* Baycol MDLs. If this Court remanded cases now, these and dozens of other courts would not only be juggling discovery, but making potentially conflicting rulings on *Daubert* and various other issues that this Court can and should be managing.

The picture becomes even bleaker when the focus shifts from number of cases to number of plaintiffs. 11,516 former Baycol users (or their representatives) have cases pending in federal court, many of those cases filed in venues far from plaintiffs' homes. For instance, if this Court transfers out of this District the cases filed by non-Minnesota residents, *see* 28 U.S.C. § 1404(a), those cases will be dispersed to ***every district in the federal judicial system except for the District of Guam.*** Venue orders from the other mini-MDL districts would have a similar, scattershot effect. The result is the map on the following page, which shows even more courts doing parallel, overlapping, and potentially conflicting work. These problems can be reduced enormously if the Court simply adheres to its plan of remanding cases only when they are ready for trial.

[18] *E.g.*, Eastern District of Texas (more than 400 cases); Southern District of New York (about 160 cases); Western District of Louisiana (about 60 cases); Northern District of Alabama (more than 100 cases).

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

# Federal Court Plaintiffs by Residence




Other: 24 Unknown: 209

As of 3/10/2005

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

## CONCLUSION

For all these reasons, this Court should order *Daubert* briefing in the context of a sample of MDL cases, establish a rolling schedule for completion of case-specific discovery in all pending cases, and continue with its efforts to fully prepare these cases before they are remanded to transferor courts.

*March 11, 2005*

Respectfully submitted,


Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
John M. Rushing
SIDLEY AUSTIN BROWN & WOOD LLP
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*

03/11/05
03:59 PM ET
Baycol MDL 14

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that a true and correct copy of the foregoing Bayer and GSK's Response to PTO 138 Inquiry Regarding Possible Remand of MDL Cases to Transferor Courts was filed and served via Verilaw on March 11, 2005.

[signature]