E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit A

03/11/05
03:59 PM ET
Baycol MDL 14



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

| | | |
|---|---|---|
| In re: Baycol Products Litigation | ) | File No. MDL 1431 (MJD/JGL) |
| | ) | Minneapolis, Minnesota |
| | ) | October 9, 2003 |
| | ) | 9:30 a.m. |

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES

For the Plaintiffs: CHARLES ZIMMERMAN, ESQ.
ELIZABETH CABRASER, ESQ.
RONALD GOLDSER, ESQ.
VICTORIA MANIATIS, ESQ.
RANDY HOPPER, ESQ.
JOHN CLIMACO, ESQ.

For the Defendants: PHILIP BECK, ESQ.
ADAM HOEFLICH, ESQ.
GENE SCHAERR, ESQ.
PETER SIPKINS, ESQ.
FRED MAGAZINER, ESQ.
SUSAN WEBER, ESQ.
DOUGLAS MARVIN, ESQ.
SCOTT SMITH, ESQ.

Court Reporter: LORI A. CASE, RMR-CRR
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
(612) 664-5104

Proceedings recorded by mechanical stenography;
transcript produced by computer.
LORI A. CASE, RMR-CRR (612)664-5104

03/11/05
03:59 PM ET
Baycol MDL 1431



so it's not like the day before, so I can -- so we can have a ruling that hopefully will be used by the other courts throughout the land.

MR. BECK: Thank you, Your Honor.

THE COURT: All right. Mr. Zimmerman, does that help the PSC?

MR. ZIMMERMAN: It does, Your Honor, very much and we appreciate it very much. I just have one question and that has to do with, you want us to meet now with the Special Masters on the things you just ordered?

THE COURT: Yes.

MR. ZIMMERMAN: Do you also want to meet with counsel in chambers with regard to matters that are not before the Court?

THE COURT: Yes, I do. Because we are moving in the right direction now, the way I want us to. I think I have given you my vision. Maybe I should make it a little -- I can talk back in chambers on how I want to triage the rest of the cases. Because we've got thousands of cases. We've got to get those ready.

And my directive is, so you understand where I am coming from, since it's evident that I did not certify a class, these cases have to be ready for -- I have to have them ready when they go back to the trial. And that means we are going to have to do everything that we are doing for

03/11/05
03:59 PM ET
Baycol MDL 1431



trial here before they go back. Because there's no need for the trial court judge to have to go through all this again. Everything is going to be screened here.

And so what's going to happen -- is that the microphone? Anything that's going to happen, all the judge is going to do is go to trial or maybe have another settlement conference to try to see whether or not something can be settled.

But we are going to have the settlement conferences. We are going to do everything here. These cases are going to be squeaky clean before they go back.

MR. ZIMMERMAN: I appreciate that, Your Honor. Thanks for the direction and we will --

THE COURT: So that should alert the PSC and all the lawyers involved with this that they will have to -- they might as well start getting ready doing the things that they have to do to gear up for trial. They are not going to be able to put it off for a year or two years thinking that something is going to happen.

They are going to have to start getting their doctors ready, getting whatever medical information ready, their witnesses ready, be ready for settlement conferences, and then being sent back off to their districts where they came from or the states where they came from.

I am just not going to not do anything with those

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

# Exhibit B

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAYCOL PRODUCTS LITIGATION | MDL No. 1431 (MJD/JGL) |
| This Document Relates To: | |
| Edwin Ronwin v. Bayer Corp. | Case No. 02-0200 |
| Chester T. Hennington, et al. v. Bayer Corp., et al. | Case No. 03-2936 |
| Kevin Hughes v. Bayer Corp., et al. | Case No. 03-5910 |
| Luberta Lawson, et al. v. Bayer Corp., et al. | Case No. 03-5912 |
| James Richardson v. Bayer Corp., et al. | Case No. 02-4823 |
| Donald Randall v. Bayer Corp., et al. | Case No. 02-4827 |
| Mary Bynum, et al. v. Bayer Corp., et al. | Case No. 03-1176 |
| Willard Watts v. Bayer Corp., et al. | Case No. 03-2935 |
| Joseph Holifield v. Bayer Corp., et al. | Case No. 03-4969 |
| Jeffrey Varas v. Bayer Corp., et al. | Case No. 03-4977 |
| Rosa Lee Jackson v. Bayer Corp., et al. | Case No. 03-4989 |
| Azell Green v. Bayer Corp., et al. | Case No. 03-4991 |
| Ruth Hodge v. Bayer Corp., et al. | Case No. 03-5092 |
| Barbara Anderson, et al. v. Bayer Corp., et al. | Case No. 03-5945 |
| Vadie Mae Alexis, et al. v. Bayer Corp., et al. | Case No. 03-6225 |
| Lucretia Lazere et al. v. Bayer Corp., et al. | Case No. 04-1241 |
| Jose Guerra, et al. v. Bayer Corp., et al. | Case No. 04-1242 |
| Muriel Parilla v. Bayer Corp., et al. | Case No. 04-1243 |
| Annie Andrews, et al. v. Bayer Corporation | Case No. 03-4932 |
| Maney Anglin, et al. v. Bayer Corporation | Case No. 03-4942 |
| Judy Baldwin, et al. v. Bayer Corporation | Case No. 03-4930 |
| Dorothy Bennett, et al. v. Bayer Corporation | Case No. 03-4938 |
| Sharon Carter, et al. v. Bayer Corporation | Case No. 02-1361 |
| Curtis Coates, et al. v. Bayer Corporation | Case No. 03-1175 |
| Cindy Dickerson, et al. v. Bayer Corporation | Case No. 03-1173 |
| Alice Dowling et al. v. Bayer Corporation | Case No. 03-4931 |
| Mary Ellis, et al. v. Bayer Corporation | Case No. 03-4933 |

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

| | |
|---|---|
| Sis Grubbs, et al. v. Bayer Corporation | Case No. 03-4934 |
| David Hester, et al. v. Bayer Corporation | Case No. 02-0871 |
| George Jenkins, et al. v. Bayer Corporation | Case No. 03-4943 |
| Kenneth Michael, et al. v. Bayer Corporation | Case No. 03-6415 |
| Mary Richardson, et al. v. Bayer Corporation | Case No. 03-4935 |
| Charles Rogers, et al. v. Bayer Corporation | Case No. 03-4936 |
| Verlean Toles, et al. v. Bayer Corporation | Case No. 03-1174 |
| Clarence Wheeler, et al. v. Bayer Corporation | Case No. 03-4941 |
| Albert Williams, et al. v. Bayer Corporation | Case No. 03-4937 |
| Willie Womack, et al. v. Bayer Corporation | Case No. 03-4939 |
| Jeffery Woods, et al. v. Bayer Corporation | Case No. 03-4940 |
| Hattie Ruth Wright, et al. v. Bayer Corporation | Case No. 02-0870 |
| Toni Andress, et al. v. Bayer Corp., et al. | Case No. 03-5853 |
| Mateo Aolmarez, et al. v. Bayer Corp., et al. | Case No. 03-5396 |
| Leticia Arellano, et al. v. Bayer Corp., et al. | Case No. 04-864 |
| Kathleen Bagnato, et al. v. Bayer Corp., et al. | Case No. 03-5425 |
| Anthony Beam, et al. v. Bayer Corp., et al. | Case No. 03-5078 |
| Laura Beavers, et al. v. Bayer Corp., et al. | Case No. 03-5906 |
| Freda Bledsoe, et al. v. Bayer Corp., et al. | Case No. 03-5864 |
| Beverly Bryant, et al. v. Bayer Corp., et al. | Case No. 04-866 |
| Sigrid Carpenter, et al. v. Bayer Corp., et al. | Case No. 03-5393 |
| Guadalupe Castillo, et al. v. Bayer Corp., et al. | Case No. 03-5414 |
| Gary Chenette, et al. v. Bayer Corp., et al. | Case No. 03-5326 |
| Elfie Clark, et al. v. Bayer Corp., et al. | Case No. 03-5394 |
| Benny Cox, et al. v. Bayer Corp., et al. | Case No. 03-5327 |
| Norma Dean Damron, et al. v. Bayer Corp., et al. | Case No. 04-208 |
| Leo Danforth, et al. v. Bayer Corp., et al. | Case No. 03-5392 |
| Elva Dikes, et al. v. Bayer Corp., et al. | Case No. 03-5391 |
| Jose Espinoza, et al. v. Bayer Corp., et al. | Case No. 03-5421 |
| Carol Etame, et al. v. Bayer Corp., et al. | Case No. 04-0221 |
| Carl Frey, et al. v. Bayer Corp., et al. | Case No. 03-5894 |
| Michael Frisnia, et al. v. Bayer Corp., et al. | Case No. 03-5389 |
| Ramona Garcia, et al. v. Bayer Corp., et al. | Case No. 03-5395 |
| Teresa Galloway, et al. v. Bayer Corp., et al. | Case No. 03-5887 |
| Irene Gosch, et al. v. Bayer Corp., et al. | Case No. 03-5417 |
| David Goss, et al. v. Bayer Corp., et al. | Case No. 04-226 |
| Sidney Gottlieb, et al. v. Bayer Corp., et al. | Case No. 03-5867 |
| Mary Greenhill, et al. v. Bayer Corp., et al. | Case No. 03-5329 |
| Frances Gregg, et al. v. Bayer Corp., et al. | Case No. 04-211 |
| Francine Gunder-Bricq v. Bayer Corp., et al. | Case No. 04-223 |

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

| | |
|---|---|
| Willard Hall, et al. v. Bayer Corp., et al. | Case No. 03-5357 |
| Nancy Hamlin, et al. v. Bayer Corp., et al. | Case No. 03-5355 |
| Dorothy Harris, et al. v. Bayer Corp., et al. | Case No. 03-5067 |
| Laura Hornback, et al. v. Bayer Corp., et al. | Case No. 03-5076 |
| Evelyn Husband, et al. v. Bayer Corp., et al. | Case No. 03-5412 |
| Dorothy Jemmison, et al. v. Bayer Corp., et al. | Case No. 03-5886 |
| Cardell Jones, et al. v. Bayer Corp., et al. | Case No. 03-5905 |
| Henry Jones, et al. v. Bayer Corp., et al. | Case No. 03-5073 |
| Martha Jones, et al. v. Bayer Corp., et al. | Case No. 03-5069 |
| Rosa Jones, et al. v. Bayer Corp., et al. | Case No. 04-227 |
| Rose Jones, et al. v. Bayer Corp., et al. | Case No. 04-210 |
| Virginia Killen, et al. v. Bayer Corp., et al. | Case No. 03-5335 |
| Delores King, et al. v. Bayer Corp., et al. | Case No. 03-5419 |
| Charles Kruse, et al. v. Bayer Corp., et al. | Case No. 03-5390 |
| Sylvia Landrum, et al. v. Bayer Corp., et al. | Case No. 03-5873 |
| Helen Lanier, et al. v. Bayer Corp., et al. | Case No. 03-5885 |
| Mary Lumpkin, et al. v. Bayer Corp., et al. | Case No. 03-5888 |
| William Matthews, et al. v. Bayer Corp., et al. | Case No. 03-5328 |
| Hubert Medlock, et al. v. Bayer Corp., et al. | Case No. 03-5388 |
| Donald Wayne Mills, et al. v. Bayer Corp., et al. | Case No. 03-5890 |
| Samual Moore, et al. v. Bayer Corp., et al. | Case No. 03-5332 |
| Joann Nelson, et al. v. Bayer Corp., et al. | Case No. 03-5415 |
| Sally Nielsen, et al. v. Bayer Corp., et al. | Case No. 03-5897 |
| Alfred Nwokobia, et al. v. Bayer Corp., et al. | Case No. 03-5359 |
| Inez Orta, et al. v. Bayer Corp., et al. | Case No. 04-1296 |
| Dorothy Pampell, et al. v. Bayer Corp., et al. | Case No. 03-5416 |
| Bertha Porter, et al. v. Bayer Corp., et al. | Case No. 03-5325 |
| Geraldine Pulaski, et al. v. Bayer Corp., et al. | Case No. 03-5420 |
| Lisa Ann Renfroe, et al. v. Bayer Corp., et al. | Case No. 03-5072 |
| Maragarita Reyes et al. v. Bayer Corp., et al. | Case No. 03-5418 |
| Joe Rice, et al. v. Bayer Corp., et al. | Case No. 03-5422 |
| Margaret Roberts, et al. v. Bayer Corp., et al. | Case No. 03-5904 |
| Annie Sanders, et al. v. Bayer Corp., et al. | Case No. 03-5863 |
| Thelma Scales, et al. v. Bayer Corp., et al. | Case No. 03-5907 |
| Argatha Scarlato, et al. v. Bayer Corp., et al. | Case No. 03-5865 |
| Joy Shadley, et al. v. Bayer Corp., et al. | Case No. 03-5070 |
| Iris Shepherd, et al. v. Bayer Corp., et al. | Case No. 03-5387 |
| Sheri Simmons, et al. v. Bayer Corp., et al. | Case No. 03-5077 |
| Mary Smith, et al. v. Bayer Corp., et al. | Case No. 03-5386 |
| Doris Spearman, et al. v. Bayer Corp., et al. | Case No. 03-5333 |

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

| | |
|---|---|
| Mary Sprouse, et al. v. Bayer Corp., et al. | Case No. 03-5075 |
| James Tennyson, et al. v. Bayer Corp., et al. | Case No. 04-865 |
| James Tucker, et al. v. Bayer Corp., et al. | Case No. 03-5895 |
| Eduardo Villnueva, et al. v. Bayer Corp., et al. | Case No. 03-5424 |
| William Weekley, et al. v. Bayer Corp., et al. | Case No. 03-5426 |
| Wilma White, et al. v. Bayer Corp., et al. | Case No. 03-5857 |
| Bonard Wilborn, et al. v. Bayer Corp., et al. | Case No. 03-5364 |
| Kenneth Williams, et al. v. Bayer Corp., et al. | Case No. 03-5358 |
| Beverly Willingham, et al. v. Bayer Corp., et al. | Case No. 03-5889 |
| Martha Willingham, et al. v. Bayer Corp., et al. | Case No. 03-5365 |
| Carrie Woliver, et al. v. Bayer Corp., et al. | Case No. 04-0206 |
| Mildred Wright, et al. v. Bayer Corp., et al. | Case No. 03-5896 |

Edwin Ronwin, Plaintiff pro se.

Jonathan W. Cartee, R. Stan Morris and Julie M. Rooksberry, Shelby, Roden & Cartee for and on behalf of Plaintiffs.

James D. Shannon and Renee C. Harrison, Shannon Law Firm, PLLC, for and on behalf of Plaintiffs.

E. Frank Woodson and Melissa Prickett, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

Craig P. Niedenthal and Jon C. Conlin, Cory, Watson, Crowder & Degaris, P.C. for and on behalf of Plaintiffs.

Peter W. Sipkins and Elizabeth S. Wright, Dorsey & Whitney, Philip S. Beck and Adam Hoeflich, Bartlit Beck Herman Palenchar & Scott, Susan A. Weber and James W. Mizgala, Sidley Austin Brown & Wood, Gene C. Shaerr, Sidley Austin Brown & Wood, Richard K. Dandrea, Eckert Seamens Cherin & Mellott, LLC and Douglas R. Marvin, Williams & Connolly, LLP for and on behalf of Bayer Corporation.

Tracy J. Van Steenburgh, Halleland Lewis Nilan Sipkins & Johnson, P.A. and Fred T. Magaziner, Dechert LLP for and on behalf of SmithKline Beecham Corp. d/b/a GlaxoSmithKline.

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

These matters are before the Court upon the Plaintiffs' motions for relief from parts I(A) and I(B) of PTO No. 114, which require that Plaintiffs submit either a case-specific expert report from a medical expert attesting that Baycol caused the plaintiff injury or a letter and supporting documents, followed by a case-specific expert report, that identifies and highlights the medical records, samples or prescriptions that document Baycol use, states the specific injury alleged, and copies of relevant medical, sample or prescription records.

The issue raised in all of Plaintiffs' motions is whether the state law governing their claims requires a case-specific expert report to prove causation in fact. Plaintiffs assert that the Baycol cases are analogous to vehicular accident and other personal injury cases, and that in such cases, expert testimony is not necessary to prove causation where there is an obvious causal relationship between the injury complained of and the alleged act. Plaintiffs argue that general causation is not an issue in these cases, therefore they can establish causation in fact through lay testimony that they ingested Baycol, that they suffered injury subsequent to that ingestion, whether some other event in their lives could have caused such injury and whether Baycol was in fact the case of the injury.

<u>Analysis</u>

The Court has reviewed the case law cited by Plaintiffs in their briefs, and

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

finds that the relevant state law concerning the plaintiff's burden of proof as to causation in personal injury actions is consistent. Generally, to prove a negligence claim, state law requires that the plaintiff prove injury and a causal connection between the claimed injury and the event sued upon. See eg., Morgan v. Compugraphic Corporation, 675 S.W.2d 729, 732 (Tex. 1984); Dennis v. Prisock, 221 So.2d 706, 710 (Miss. 1969); Page v. Cox & Cox, Inc., — So.2d —, 2004 WL 406085, *7 (Ala. Civ. App. 2004); Eannottie v. Carriage Inn of Steubenville, 799 N.E.2d 189, 192 (Ohio Ct. App. 2003); Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991); Simmons v. King, 833 So.2d 1148, 1150 (La. Ct. App. 2002); Parker v. Elco Elevator Corp., 462 S.E.2d 98, 100 (Va. 1995); Hurd v. Windsor Garden Convalescent Hospital, 2002 WL 1558600 (Ca. App. 2 Dist. 2002); Lattanze v. Silverstrini, 448 A.2d 605, 608 (Pa. 1982); Wyoming Medical Center, Inc., 27 P.3d 266, 268-269 (Wyo. 2001); Aspiazu v. Orgera, 535 A.2d 338, 341 (Conn. 1987); M.M.D. v. B.L.G., 467 N.W.2d 645, 646 (Minn. Ct. App. 1991).

A medical expert may be utilized to prove that the event sued upon caused the alleged injury. However, in some cases, state law recognizes that a medical expert may not be necessary to prove causation. "Lay testimony is adequate to prove causation in cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

between the event and the condition." Dawson v. Briggs, 107 S.W.3d 739, 753-754 (Tex. App. 2003). See also, Eannottie, 799 N.E.2d at 192 ("in a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required."); Orman, 803 S.W.2d at 676 ("Except in the most obvious, simple and routine cases, the claimant in a worker's compensation action must establish by expert medical evidence the causal relationship alluded to above between the claimed injury . . . and the employment activity."); Atchison, 391 P.2d at 579 ("The accepted rule is that negligence on the part of the physician or surgeon, by reason of his departure from the proper standard of practice, must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it."); Lattanze, 448 A.2d at 608 (generally plaintiff must prove causation by expert medical testimony except where there is an obvious causal relationship - one where injuries are immediate and direct or the natural and probable result of the alleged negligent act."); Aspiazu, 535 A.3d at 342 (expert testimony not needed if the medical condition is obvious or common in every day life or if evidence creates a probability so strong that a jury can form a reasonable belief without aid of an expert); M.M.D., 467 N.W.2d at 647 (expert testimony necessary where the "question involves obscure and abstruse medical factors such that the ordinary laymen cannot reasonably possess well-founded knowledge of the matter and

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

could only indulge in speculation in making a finding.").

There are two reasons why this Court cannot agree that the Baycol cases before it fall within the exception to the expert testimony requirement. First, the Court notes that Plaintiffs do not cite to a single state law opinion that supports their position that personal injury cases involving pharmaceuticals, toxins or medical devices are analogous to vehicle accidents or other personal injury cases. Second, pursuant to one of the medical experts retained by the Plaintiffs' Steering Committee ("PSC"), the alleged injuries sustained by the plaintiffs that ingested Baycol, including muscle pain and weakness, require a physician to perform a differential diagnosis to determine the origin of such injury. Deposition of Thomas M. Zizic, M.D. at 184. Relevant to the causation inquiry is a particular plaintiff's medical history, and any medications taken at the same time as Baycol to determine whether concomitant illnesses or medications could be the cause of such injuries. Id. at 185. Similarly, another medical expert retained by the PSC testified at his deposition that it is important to investigate alternative causes of injury when making a diagnosis. Deposition of George Kaysen, M.D. at 38-39, 41. The ability to perform a differential diagnosis is clearly beyond the ability or experience of a lay person.

For these reasons, this Court finds that the Baycol cases are not analogous

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

to vehicle accident or other personal injury actions which do not require a differential diagnosis. Rather, this Court joins with those courts that have held personal injury cases involving pharmaceuticals, toxins or medical devices involve complex questions of medical causation beyond the understanding of a lay person. See eg. McClain v. Metabolife Int'l, Inc., 193 F. Supp.2d 1252, 1258 (N.D. Al. 2002)(expert is required to prove causation in this case, as interplay between ephedrine, caffeine and the other ingredients in Metabolife 356, the varying states of pre-existing ill-health of Plaintiffs, and their various ultimate injuries is "complex and technical in nature"); Sanderson v. Int'l Flavors and Fragrances, Inc., 950 F. Supp. 981, 985 (C.D. Cal. 1996)(case involving exposure to aldehydes involved scientific issues beyond the experience of laymen); Blinn v. Smith & Nephew Richards, Inc., 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999)(case involving bone screw required expert testimony to prove defect and causation); Wintz v. Northrop Corporation, 110 F.3d 508, 515 (7th Cir. 1997)(applying Illinois law, case involving in utero exposure to bromide required expert testimony to prove causation); In re: Propulsid Products Liability Litigation, 261 F. Supp.2d 603, 618 (E.D. La. 2003)(summary judgment in favor of defendant appropriate where plaintiff failed to submit admissible expert testimony to prove plaintiff's injuries caused by ingestion of Propulsid); Graham v. American Cyanamid Company, 350 F.3d 496, 507 (6th Cir. 2003)(whether oral polio

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

vaccine caused injury involved technical and scientific issues, expert testimony needed to prove causation); Sayer v. Williams, M.D., 962 P.2d 165, 167 (Wyo. 1998)(expert testimony necessary to prove doctor's negligence caused injury where plaintiff's high blood pressure or Hepatitis C could have caused the symptoms of which plaintiff complained).

The above analysis applies equally to the motion of Plaintiff Edwin Ronwin[1]. The case cited by Plaintiff Ronwin in support of his motion involves injuries resulting from a slip and fall. Wyoming Medical Ctr, 27 P.3d at 267. In Wyoming Medical, the plaintiff slipped and fell in a parking structure, hitting the back of her head, her back and dislocating her knee. Id. at 268. At trial, the plaintiff and her doctor testified that injuries to her back and knee were caused by the slip and fall. Id. On appeal from a verdict in favor of the plaintiff, the defendant argued that the plaintiff needed an expert to prove causation. The Wyoming Supreme Court disagreed, finding that "the testimony of the plaintiff may be sufficient, without the use of experts, to establish the element of causation between an *accident* and the plaintiff's injuries." Id. at 269 (emphasis added). Based on the particular facts in the Wyoming Medical case, the court held that an

[1]Plaintiff Ronwin has also submitted a letter in addition to his motion for relief under PTO No. 114, raising the question of how to file a motion for an extension of time to comply with the discovery deadlines contained in PTO No. 114. Section VII of PTO No. 114 provides that the parties may stipulate to such an extension, or that the plaintiff may move for an extension. If a motion for an extension is filed, such motion will be heard by this Court.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

expert was not needed to prove causation. Id.

Plaintiff Ronwin's Baycol case is not an accident case, nor does it involve facts in which causation is obvious. Rather, his case raises the issue of whether the pharmaceutical, Baycol, caused his particular injuries, which include left arm pain, blurred vision, leg pain, slight caterax in both eyes, and a torn rotator cuff. Exhibit A to Bayer Opposition to Plaintiffs' Motions for Relief from Parts I(A) and I (B) of PTO 114. Contrary to Plaintiff Ronwin's assertions, whether Baycol caused such injuries is beyond the understanding and experience of a lay person, and will require a differential diagnosis. See, Sayer 962 P.2d at 167 (expert testimony necessary where multiple medical conditions could have caused alleged injury).

IT IS HEREBY ORDERED that the above named Plaintiffs' Motion for Relief From Parts I(A) and I(B) are DENIED.

Date: June 10, 2004

/s/ Michael J. Davis
Michael J. Davis
United States District Court

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit C

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LITIGATION** | **MDL No. 1431 (MJD/JGL)**

**O R D E R**

**This Document Also Relates to:**
**Terry G. Hayes v. Bayer** | **Civil No. 02-445**

---

Terry G. Hayes, pro se.

Peter W. Sipkins, Dorsey & Whitney LLP, on behalf of Bayer Corporation and Bayer AG.

---

Before the Court is Plaintiff's Motion to Transfer Case to the Western District of Kentucky for Trial (Doc. Nos. 16 & 20), which the Court interprets as a motion to remand for trial.[1] Bayer opposes the motion.

## I. BACKGROUND

This action was originally filed in the United States District Court for the Western District of Kentucky, and was subsequently transferred into this MDL by the Judicial Panel on Multidistrict Litigation.

Plaintiff does not provide any specific reasons for his request for remand. Plaintiff alludes to "bias" (Pl. Mot. Transfer at 1), the fact that he is willing to

[1]Plaintiff's Motion is actually entitled "Motion to Transfer Back Western District of Kentucky for Trial." (Doc. No. 20.)

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

mediate his case (Pl. Reply at 1-2), and the fact that he never received PTO 89. (Id. at 2).

## II. DISCUSSION

28 U.S.C. § 1407 provides, in pertinent part, the following:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation . . . and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated[.]

28 U. S.C. § 1407(a). Thus, remand at the conclusion of pretrial proceedings is mandatory, whereas remand prior to the conclusion of pretrial proceedings is discretionary with the transferee court. See In re Bridgestone/Firestone, Inc., 128 F. Supp.2d 1196, 1197 (S.D. Ind. 2001) (citation omitted).

The Court finds it inappropriate to transfer this case back to Kentucky for trial because both core discovery and case-specific discovery are still on-going. See In re Patenaude, 210 F.3d 135, 146 (3rd Cir. 2000); In re Baycol Prod. Litig., MDL No. 1431, PTO 125 slip op. at 3-4 (D. Minn. June 29, 2004). Thus, the MDL has not yet fulfilled its purpose to coordinate and consolidate pretrial proceedings. See 28 U.S.C. § 1407(a). The Court further finds that all Parties will benefit from the yet to be completed discovery and, possibly, from future settlement negotiations. See Bridgestone/Firestone, 128 F. Supp.2d at 1197 (stating that propriety of

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

remand is usually based on whether the case will benefit from further coordinated MDL proceedings); Patenaude, 210 F.3d at 145-46 (refusing to find denial of remand inappropriate even when remaining coordinated pretrial proceedings did not affect plaintiffs' cases, and when individual settlement negotiations were on-going).

Moreover, allowing remand when pretrial proceedings are not yet completed would lead to thousands of similar requests. See In re Baycol Prod. Litig., MDL No. 1431, PTO 125 slip op. at 4 (D. Minn. June 29, 2004). As previously stated, "The Court declines to create a situation wherein remand motion practice could overtake this litigation, and threaten 'the just and efficient conduct' of this MDL." Id. at 4-5 (quoting 28 U.S.C. § 1407(a)). Accordingly, Plaintiff's motion is denied.

Regarding Plaintiff's concern that he has not received a copy of PTO 89, the Court instructs Plaintiff that all pretrial orders are available free of charge on the Baycol website, a link to which can be found at www.mnd.uscourts.gov.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Transfer Case to the Western District of Kentucky for Trial [Doc. Nos. 16 & 20] is **DENIED**.

Date: June 29, 2004

s/ Michael J. Davis
MICHAEL J. DAVIS
United States District Court

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit D

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, | MDL NO. 1407 |
| This document relates to all actions. | CASE MANAGEMENT ORDER NO. 17C REMAND OF CASES |

**This case management order replaces and supercedes Case Management Order ("CMO") Nos. 17, 17A and 17B.**

## I. <u>INTRODUCTION</u>

Proceedings in this MDL 1407 began in earnest with the Order re Initial Conference dated November 1, 2001, requiring plaintiffs and defendants to submit proposed committee rosters, and scheduling the initial conference in this MDL for November 16, 2001. Since then: (1) generic fact discovery (including written discovery, document production and review, discovery depositions, and requests for admissions) has been completed or substantially completed as to most MDL defendants for which "common benefit" discovery is being undertaken by the Plaintiffs; (2) a procedure for case-specific

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

fact discovery in each case has been implemented, and discovery pursuant thereto in cases subject to these MDL proceedings has been underway since 2002; (3) Rule 26 disclosures of generic experts have been made, discovery depositions of those experts are complete; and a process has been established to permit the adoption of those experts' opinions in other cases transferred or being transferred to this MDL; (4) trial preservation depositions of several of plaintiffs' and defendants' generic experts are underway or have been taken; (5) and *Daubert* motions have been filed challenging plaintiffs' generic medical experts' opinions as to general causation, briefing, and hearings on said motions have been completed, and the Court has issued its Decision on said motions.

Given the foregoing, the Court is satisfied that this Multi-District Litigation has sufficiently matured, such that, subject to the following procedures and conditions, qualified cases may now be considered by the Court for purposes of issuing a Suggestion of Remand Order to facilitate their remand by the Judicial Panel on Multidistrict Litigation ("JPML") to their transferor courts for further case-specific proceedings and final disposition.

## II. <u>REMAND CRITERIA- RIPENESS</u>

Generic fact discovery of defendants was required to be completed within specific time periods, as set forth in CMO No. 1, subject to certain extensions of time. Discovery as to experts on general causation, and issues of general applicability, was required to be completed by no later than March 10, 2003, with subsequently transferred cases subject to the provisions of CMO No.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

9, providing for the adoption of or designation of experts on issues of general applicability. Case-specific fact discovery of plaintiffs in each case subject to these MDL proceedings was required to be completed within specific time periods depending on when each case was docketed in these proceedings, as set forth in CMO Nos. 6 and 6A.

In any case docketed in this MDL, a case will only be considered ripe for remand if the case is in compliance with CMOs Nos. 1, 6, 6A, 10, 13, 13A, 15, and any additional orders entered by this Court. Specifically, all of the following criteria must have been completed and/or fulfilled before a case will be considered ripe for remand:

· Plaintiff's fact sheet must be substantially complete per CMO Nos. 6 and 6A and all identified deficiencies must be corrected per CMO Nos. 6, 6A and 10;

· Plaintiff must have executed all appropriate authorizations, including new HIPAA-compliant authorizations if requested by defendants, as required by CMO Nos. 6 and 6A;

· Any permitted and timely filed discovery propounded by defendant(s) pursuant to CMO Nos. 6, 6A, or 10 must have been completed with no discovery disputes remaining unresolved;

· The deadline, as the same may have been extended by stipulation or Court order, for case-specific fact discovery must have passed and not be subject to any extensions under CMO Nos. 6, 6A or 10;

· If applicable to the case, plaintiff must have complied with the requirements of CMO No. 15 and any additional orders entered by this Court;

· The deadline for adopting or identifying generic experts per CMO No. 9 must have passed;

· Any summary judgment motion arising from the Court's *Daubert* Order entered June 18, 2003, applicable to the case must have been ruled upon.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

## III. REMAND PROCEDURE

### A. Spreadsheet of Cases Ripe for Remand

On July 1, 2004, liaison counsel for defendants shall provide to the court and to liaison counsel for plaintiffs a spreadsheet listing all cases deemed ripe for remand as of June 1, 2004, using the criteria set forth in Section II of this order. This spreadsheet shall include the following information as to each case: case caption, MDL cause number, transferor court, identity of all defendants, and fact discovery deadline. Defense liaison counsel shall provide this spreadsheet to the court and to liaison counsel for plaintiffs in electronic form.

Counsel shall provide similar spreadsheets on August 2, 2004, September 1, 2004, October 1, 2004, and thereafter as directed by the court. Each of these subsequent spreadsheets shall identify cases that are considered ripe for remand as of the date of the previous spreadsheet, but shall not include any cases that were included on a previous spreadsheet. (For example, the spreadsheet filed on August 2, 2004, will identify those cases that are considered ripe for remand as of July 1, 2004, but not those cases that were included on the July 1, 2004 spreadsheet.)

While it shall be the responsibility of defense liaison counsel to provide the spreadsheets, any party to a case may file a notice of ripeness for remand on the monthly dates specified by the court.

### B. Orders to Show Cause

The court will issue orders to show cause why each case

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

designated as ripe for remand should not be remanded. The orders will set forth the dates by which objections and replies shall be filed, together with noting dates.

**C. Objections and Responses**

Any party to a case may submit an objection to the remand of a particular case as directed in the court's orders to show cause. Objections shall be limited to ten (10) double-spaced pages, and responses shall be limited to five (5) pages. Objections and responses must be served on liaison counsel, as well as counsel of record in the case to be remanded. To the extent possible, service upon liaison counsel should be electronic. There shall be no hearings permitted on any given show cause order except by leave of court.

**D. Eligibility for Remand**

The court has appointed Magistrate Judge Theiler to consider and rule on objections filed pursuant to Section III(c), above. Any case in which a show cause order has issued will be deemed eligible for remand if (a) no written objection is filed by the date specified in the court's order, or (b) upon Magistrate judge Theiler overruling all objections to remand of that case.

A party whose case has been deemed not eligible for remand as a result of a successful objection may resubmit the case on the dates set forth herein, after curing the grounds on which the objection was sustained.

**E. Suggestion of Remand Order**

Following Magistrate Judge Theiler's determination

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

regarding eligibility, the court will issue a Suggestion of Remand Order to be forwarded to the JPML, containing the names of the cases the court views as appropriate for remand. Issuance of a Suggestion of Remand Order triggers the Alternative Dispute Resolution requirements contained in CMO 18B for the cases listed in that order.

**F. Conditional Remand Order from the JPML**

Within seven (7) days of the date that a Conditional Remand Order is filed by the JPML with this transferee court, the parties will submit a joint proposed Final MDL Pretrial Order for the Court's signature. Such order will describe the events that have taken place in MDL 1407 and those items that require further action by the transferor court. A copy of the Final MDL Pretrial Order, along with the case file and materials, will be provided to the transferor court.

## IV. CONCLUSION

As the remand process progresses, it may become clear that aspects of this procedure could benefit from modification in order to make improvements or to lessen the burden on any participant in this process. Such participants may include the JPML, the parties, this court, any of the transferor courts, the Special Master Francis McGovern, or Magistrate Judge Theiler. The parties are instructed to confer prior to proposing changes to this procedure.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

DATED this 23rd day of June, 2004.

s/ Barbara Jacobs Rothstein
Barbara Jacobs Rothstein
United States District Court Judge

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit E

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: Baycol Products Litigation | File No. MDL 1431 (MJD/JGL) |
| | Minneapolis, Minnesota<br>February 9, 2005<br>1:00 p.m. |

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
**(EMERGENCY HEARING)**

APPEARANCES

| | |
|---|---|
| For the Plaintiffs: | CHARLES ZIMMERMAN, ESQ.<br>ELIZABETH CABRASER, ESQ.<br>RANDY HOPPER, ESQ.<br>TURNER BRANCH, ESQ.<br>MARGARET BRANCH, ESQ.<br>JEAN GEOPPINGER, ESQ.<br>ROB SHELQUIST, ESQ. |
| For Defendant Bayer: | ADAM HOEFLICH, ESQ.<br>PETER SIPKINS, ESQ.<br>SUSAN WEBER, ESQ.<br>DOUGLAS MARVIN, ESQ. |
| For Defendant GlaxoSmithKline: | FRED MAGAZINER, ESQ. |
| Court Reporter: | LORI A. SIMPSON, RMR-CRR<br>1005 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, Minnesota 55415<br>(612) 664-5104 |

Proceedings recorded by mechanical stenography; transcript produced by computer.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT: Let's call this matter.

THE CLERK: In re: Baycol Products, Number 1431. Please state your appearances for the record.

MR. ZIMMERMAN: Good morning [sic], Your Honor. Bucky -- Charles Zimmerman for the PSC.

THE COURT: Good afternoon.

MR. HOPPER: Good afternoon, Your Honor. Randy Hopper for the PSC.

MS. CABRASER: Good afternoon, Your Honor. Elizabeth Cabraser for the PSC.

MR. BRANCH: Turner Branch for the PSC, Your Honor.

MR. SHELQUIST: Rob Shelquist for the PSC, Your Honor.

MS. BRANCH: Margaret Branch for the PSC.

MS. GEOPPINGER: Jean Geoppinger for the PSC.

MR. HOEFLICH: Good afternoon, Judge. Adam Hoeflich for the Bayer defendants.

MS. WEBER: Good afternoon. Susan Weber for Bayer.

MR. SIPKINS: Good afternoon, Your Honor. Peter Sipkins for Bayer.

MR. MARVIN: Good afternoon, Your Honor. Douglas

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

Marvin for Bayer.

MR. MAGAZINER: Good afternoon, Your Honor. Fred Magaziner for GSK.

THE COURT: Good afternoon to all of you. I do have time limitations. I have a jury coming back. I am in trial.

MR. ZIMMERMAN: How long do we have, Your Honor, approximately?

THE COURT: I want you out of here by 2:00.

MR. ZIMMERMAN: Your Honor, may it please the court. This is our first appearance before the court since the impasse in Miami.

The PSC was disappointed with what came out of Miami because we put a lot of effort into it and we thought the court had obviously put a lot of resources and everyone put a lot of time into trying to get to some better place within this litigation to resolve what's left. We didn't do that.

The time has come, I think, in this litigation, Your Honor, to look at and propose to the court some new alternatives or some alternatives to getting us through the process and getting us to the end.

We did that in our proposed case management proposal. It was called a comprehensive case management proposal, which we put before the court immediately after

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

Miami.

Step one of that process was to look at the data we had, the data that's already in place, the data we shared with each other in Miami and to see what we can do with that data to try and advance the ball. That's our view of the world.

Rather than looking for perfection and getting through the entire categorization process at the cost and expense of what we have already been doing, we thought -- we think we can take the 1,200 cases we have now and take a look at them and see what we can do, employ what mechanisms we can employ to try and see if that will form a template for how to resolve litigation going forward.

In the meantime we submit we should hold 114, 127, and 131 in abeyance to see what we can accomplish with the 1,200 cases that have already been fully vetted by both sides.

If we can do something, great. We really will then accomplish something and we will have a template to go forward with perhaps more pace and more deliberate speed.

And if we can't do something, if it just won't work, nothing we can employ will get us there, then we don't -- we should take another look at the 114, 127, and 131 process to see if it's really going to advance the cause of this MDL.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

I'm not saying it will, I'm not saying it won't, but at least we should look at what we have before we continue the process going forward and that's the gravamen of what we seek. What I really ask the defendants to tell me in their argument today is why that isn't the right thing to do.

Defendants have declared that they want to settle serious injury cases. They have said it in their briefs in these proceedings today. They have said it many times, that we are off this question that we only want to settle rhabdo, but we want to settle serious injury cases. Their previous position was only rhabdo. Now we are on to serious injury.

But we haven't made any progress, Your Honor, in trying to resolve serious injury cases, trying to decide what is a serious injury case, trying to decide what the compensation levels for serious injury cases may be.

The PSC concludes from that that it's hard to rely on that representation being true or that representation being the desire when there's nothing to support it other than coming back to us and saying, We need more information, the information you have is not very good, the information you have is not reliable, the information needs to be supplemented. Even though Special Master Remele says these reports are adequate, they don't feel they're adequate and they want to take that up on appeal.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

We believe that the cases could be and should be resolved, but under the mechanisms that we currently have in place, time is just simply working against us. Recall, Your Honor, the purpose of these orders was to help the court -- and it was a courageous step; everyone says this is a big courageous step that we took -- it was to help the court categorize cases for resolution and/or trial.

There's a lot of ways we've said it. There are four subparagraphs and there's all kinds of language in the order, but the basic bottom line was to categorize cases, understand what we have left in the MDL and come up with mechanisms, ADR, trial, summary jury trial, mediations, discussions, anything at all, to try and get us to resolve those cases that we haven't at this point been able to resolve any of.

We believe, the PSC believes we stepped up, took the hard step and did what we were supposed to do at least through today. The defendants have stepped up and said, Nothing you do, PSC, is enough.

In fact, the serious injury cases that we know about, because this chart was provided to us in Miami, those cases still remain unresolved and there's no movement forward to try and resolve them. In our view, Your Honor, this puts the MDL at a standstill. We're captive in the MDL. The cases are not moving.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

We've got the defendants squeezing the pile down by asking for more and more and more information and never being satisfied with the information that's provided, and you have the plaintiffs being knocked off one after another after another each time they can't comply with some requirement that we've put before them.

Now, some of them should be legitimately dismissed and I'm the first to admit it. I'm the first to admit that we have a system whereby lots of filings get made and they have to be narrowed down to the bulk of what is important.

But it seems to me, Your Honor, before we have the perfection within what's left, we should try and resolve what we know is in there to prove to ourselves that we can get resolution of what's left.

Because if all we're going to do is squeeze this pile down to what is causally related and what meets the test of adequate disclosure and adequate causation and then send it back to the district of its origin, we haven't accomplished a whole heck of a lot.

Because when you go back to the district of origin, all that case specific stuff has to be redone. All that case specific stuff will be done closer to trial in a trial context where the Rule 26 reports that are being filed here will be of no value. Your Honor, I submit the situation is manifestly unfair and really counterproductive

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

to what we were trying to set up before this court.

My belief was we would have a large group of cases for which we could discuss various ways to get us answers as to how to resolve them, and at the end of that process in good faith we would sit down and do just that. The impasse in Miami taught me that we're not there and we're not going to get there with just the data that the 114, 127, and 131 process is going to provide.

We have heard the defendants' rejoinder. It's not good enough. It's not strong enough. We don't buy it. We don't think the categories are right. There's something wrong with everything that we've done. If that's the case, Your Honor, and it's clearly what they've said, why continue? Why not deal with what we have and see if that creates movement?

The PSC has set out a series of ideas, Your Honor, in its case management proposal. We have talked about class trials of issues. We've talked about group trials. We've talked about summary jury trials. We have talked about mediation. We have talked about focus groups. We have talked about class issues being resolved. We've talked about face-to-face settlement negotiations.

Each and every one of those, Your Honor, has been dealt with with the same response, no, no, no, no, no. It's always rejected. Completion of this process beyond where we

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

are today is not going to change that answer in our opinion.

The manual states -- the manual for complex litigation states that these ADR procedures, test cases and et cetera may be scheduled and conducted while holding other cases or claims in abeyance.

Why not do that now? Why not shift gears a little bit, take the 1,200 that we have, see what we can do with them and see if that changes the mix, changes the dynamic, gets the ball rolling?

Defendants have spent a lot of time attacking the plaintiffs' lawyers. Remember those class action lawyers, those lawyers that advertise, all that finger pointing about the integrity of what we do as lawyers.

They've attacked the rulings of Special Master Remele, saying that the reports of Danny Becnel and I forget the name of the doctor were inadequate. They have attacked the credibility of the reports and they have attacked the plaintiffs themselves; these people are malingers, these people are phonies, these people don't have injuries related to Baycol, whatever.

I submit, Your Honor, we've got it all wrong. Bayer made the bad drug. Bayer is the one that lied to the people. Bayer is the one that's paid $1.2 billion and moving forward. Bayer is the one that bears the responsibility. The plaintiffs simply have come forward and

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

made a claim for which they're entitled to make.

We don't know when a claim comes to our office, because of the system that we have in place in American justice, how good that case is. Bayer didn't go out and say, Ladies and gentlemen, if you've got a prescription for Baycol, you should see your lawyer or you should see your doctor. The plaintiffs have to pick up -- have to jump into that abyss and say, Folks, there's a bad product out here called Baycol. It's hurt a lot of people. If you're one of them, you may have a claim. Come forward. And that's what they did.

But in the process the plaintiffs' lawyers get demeaned for that. The plaintiffs' lawyers become the ones that are trying to fill this court with bad cases; and that's not what's happening.

We have 1,200 very good cases that we should start taking a look at and not demeaning the process or the cases that have gone away, because when those people brought those cases to their lawyers they didn't know that much about them and they had to protect the client and protect the statute and file a claim in an ongoing train that was going to leave the station potentially without them.

We've got injured people here, Your Honor, that deserve justice. Bayer cannot stand back and call the kettle black. They hurt the people. They are responsible

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

for compensating the ones that are seriously injured. And other than rhabdo, not one seriously injured person has been compensated.

The process of 114, 127, and 131 has worked well. It has given us 1,200 cases for which we can wrap our arms around and try and resolve. It is a burden. It's inappropriate now, it's not necessary to get through that entire process before we resolve or attempt to resolve the cases we have.

And if we can't resolve them and if the Bayer mantra is the same, we will not pay for anything further, fine. Let the cases go where they need to go for ultimate resolution.

So in conclusion, Your Honor, categorization was a good idea. It will aid the process of resolution, but only if the people want to resolve them. If not, it isn't going to aid in the process of resolution, we need to change it.

ADR was to be utilized to help us get to the end. It hasn't been utilized. It should be utilized. Bayer opposes all kinds of ADR. They like the status quo. Why? Because the process is working for them. The status quo is comfortable. The status quo is a victory. The status quo creates attrition.

We are locked in. We can't go anywhere. We need to be able to go somewhere. And to make us continue the

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

categorization process when there's no reason to believe it's going to get us where we need to get is wrong, Your Honor, and we should be able to let these cases go back to the jurisdictions where they came from to be resolved.

If the categorization will work and will help us resolve cases, I will spend day and night and night and day to try and do that. That's not what's happening, Your Honor.

We need to move, change, and be creative to get this MDL moving again; and that's what I am here to ask the court to do and take another look at the purpose of these PTOs, whether it's getting us where we want to go, and because it isn't to change it.

Thank you.

THE COURT: Let me ask you a question dealing with that last aspect.

Certainly I understand, number one, the categorization process that we put in place in this matter, in this MDL, was remarkable and was serving the purpose of categorizing the cases that were in the MDL and hopefully moving to see whether or not there were any serious cases that the defendants were to be interested in resolving.

The information that is being tendered to the court by plaintiffs is that the process has gotten out of hand and is very expensive; and even if the categorization

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

process is completed and no money is placed on the table, these cases are going to be transferred back to their original jurisdiction and they will have to go through the whole process again and that's double -- a double whammy for the plaintiffs. Is that my understanding of what you are saying?

MR. ZIMMERMAN: Yes. I would add a few things to that, but that's exactly what I am saying, Your Honor.

THE COURT: All right. And if I am adding cost to the plaintiffs in the sense that if I do send these back to -- at some point, at a later point after the categorization process has gone through, those cases still would have to jump through another hurdle back at their jurisdiction dealing with Rule 26s and other expenses and so this MDL and what I have done will have penalized the plaintiffs. Is that what you are saying?

MR. ZIMMERMAN: Yeah. They have to repeat that process in the transferor court because that report that's going to connect the Bayer product, Baycol, to the injury is not the report that's going to be relied on at trial to get that case to a jury. It's going to be too old. It's too summary. It's not based on all the things you would want to do if you were putting your case up for trial.

THE COURT: Then the next aspect of it. Again I commend the defendants for resolving the vast majority of

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

the rhabdomyolysis cases and the death cases for over $1.2 billion. However, if I have heard them correctly, they're not going to pay a penny for anything else, other than rhabdo cases.

MR. ZIMMERMAN: Well --

THE COURT: And if that's the case, going through the briefing schedule of class certification, would you just make a motion to send all these cases back?

MR. ZIMMERMAN: Sure. You have one chance to send them back. I mean, once you start sending them back and you break this thing up, every opportunity for an MDL end game is lost. I mean, we all know that. We're not -- so it's a last resort.

We would like to keep it together to resolve cases, but you're right, Your Honor, if under no circumstances will even serious cases that aren't rhabdo going to be resolved, then why prolong this process, which isn't going to be the ultimate trier of all those facts, it's going to be the transferor court?

Let's get them back there. Maybe that will change Bayer's mind. Maybe they will look at jurisdictions and say, you know, maybe we should resolve these or maybe we will fight them tooth and nail. Right now we are just captive. We can't do anything.

THE COURT: Whether or not they resolve them or go

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

to trial, that would not be my concern. It would be that jurisdiction. But if I have accomplished everything that I can accomplish here, why shouldn't I send them back?

MR. ZIMMERMAN: I think you should, Your Honor. I mean, I think you should and I think -- unfortunately that's the bottom line if you've done everything you can here to get them resolved.

We're not here to prepare those cases for trial, which has somehow become the mantra of the defense, that we have to get through so much more to prepare them for trial. We're not here to prepare them for trial.

We're here to do the common discovery, resolve common issues, do the expert discovery, which we have done, so that the plaintiffs have a general causation blueprint and a trial notebook of the evidence.

And if they don't want to resolve them here, they don't want to enter into that negotiation here, that's their right. We think they're wrong, but that's their right. But it's our responsibility at that point to let those cases go and let the lawyers that have been retained by the clients resolve them and deal with them on a -- in their local federal court.

THE COURT: Thank you.

MR. HOEFLICH: Good afternoon, Your Honor.

THE COURT: Good afternoon.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

MR. HOEFLICH: We disagree and we disagree strongly with Mr. Zimmerman's categorization of what's taken place in this litigation to date.

It's true that in April of 2002 Bayer announced to the court and then spoke at a conference with the court where we said that we wanted to resolve all of the serious injury cases.

It's true that Bayer went out and met not only with the PSC and lawyers working with the PSC, but lawyers throughout the country to resolve every serious injury case, every rhabdomyolysis case that we could find and did so for more than a billion dollars.

However, it's not true that plaintiffs have had no chances in this court or elsewhere to put their aches and pains or what Mr. Zimmerman calls the serious muscle injury cases to the test.

This court had before it the <u>Long</u> case and five subsequent muscle injury or nonrhabdo cases before it and each time the plaintiffs had the opportunity to make their statement, to put that case forth and put Bayer to the test, the plaintiffs dropped the ball and dropped their case.

The court put in place, after significant negotiations between the plaintiffs and defendants and the special masters, Pretrial Order 89. More than 200 cases were prepared for trial, not just by Bayer, but by the

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

plaintiffs. All but two of those cases went away because the plaintiffs dropped them.

The process there was more significant than asking a plaintiff's lawyer to analyze their case and put forward what has become a form report. The plaintiff had every opportunity and the PSC had every opportunity to put forth what they claimed were muscle injury cases and under the examination of not only discovery, but the self examination of a looming trial. In each instance the plaintiffs dropped those cases.

That's not just the story in the MDL. In Philadelphia thousands of cases have come forth not only through the expert report requirement, but up to trial and each time, with the exception of one, an aches and pains or a muscle injury case has come to trial the plaintiff has dropped it. That would include four recent cases that the PSC had set for trial in March and they dropped all of those, Judge.

THE COURT: The difference between the Pennsylvania cases and the MDL cases is that at least they're in their home jurisdictions and under their -- the law of that state those matters could be dismissed without prejudice; whereas, the cases here are being dismissed with prejudice. That's a big difference.

MR. HOEFLICH: That's a fair point to make, Judge.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

The cases in Philadelphia have been dismissed without prejudice. I would note, though --

THE COURT: So the MDL participants are being penalized differently than if they were in their home jurisdiction.

I don't mean to stop you. I have read your papers and I certainly know the position of Bayer, but my question -- and tell me if I am reading you wrong. My understanding is nothing less than a rhabdo case, no cases that are less than a rhabdo case will be settled, they will be tried by Bayer. And so if that's the case, why shouldn't I send these cases back, allowing them to be worked up in their transferor jurisdiction, and be done with this?

Because I have accomplished -- because this is a new way of running an MDL, I think the end game was incorporated in the settlement process. You settled the major, major cases and so what is left are cases that Bayer has looked at, you have done your evaluation, and you feel that plaintiffs are going to have to come forth and make their proof.

And if that's the case, I should not be a filter, a higher filter than how a state court would handle it in their own jurisdiction where these cases originally should be. And so the question is, why should I be the penalizer to the plaintiffs?

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

If that's the case, there is not going to be a, quote, unquote, another end game. I see the dynamic of you have made your end game by settling at premium prices the rhabdo cases and the death cases. That's the end game as far as I am concerned.

MR. HOEFLICH: If --

THE COURT: Let me finish. And there's not going to be the other type of end game that has been in other MDLs where all of a sudden everything comes together and money is paid out, because the strategy that you have laid out that has -- would fall apart if there was some type of money end game here in the MDL. And so if that's the case, these cases should just go back.

MR. HOEFLICH: Judge, I believe that the court articulated a broader approach than that that involved considerations of fairness not only to the plaintiffs, but to the defendants and the judicial system as well.

First I'd note that these cases would not go back to state courts. These cases were brought -- were removed to federal court under the St. Paul Mercury case. Once a case has been brought to federal court, if the allegations placed it there appropriately, it can't be sent back to state court, not by averment or affidavit or any other method. So these are federal court cases.

When the court established the procedures to the

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

MDL, there were two schools of cases and both parties and the court embarked on a two-pronged approach. The first half involved Bayer reaching out and resolving all of the rhabdomyolysis cases, and I believe we have settled more than 2,900 out of approximately 3,000 cases. The second --

THE COURT: And again I compliment you. I compliment your companies on taking a forward approach and getting those cases resolved so those plaintiffs could have their cases resolved in a timely manner, and I compliment you on that.

MR. HOEFLICH: The second prong involved the PSC reaching out for a broad variety of cases. They settled the good ones, but they also reached out a broad net to reach a host of other cases from across the country.

And at the same time that the defendants and the court were resolving, in part through this court's program, the rhabdomyolysis cases, we put forth a system that would give the defendants the opportunity to engage in discovery and other mechanisms to test cases that were in federal court.

And the court articulated a policy early on that it wasn't going to take thousands of cases or ten thousand cases or ten thousand plaintiffs that were brought here and then send them back to district courts throughout the country before the cases were in trial ready shape.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

We are now in a position where the Plaintiffs' Steering Committee has been paid many, many millions of dollars in fees in the rhabdomyolysis cases and it's time to do what we originally agreed to do in March of 2002, take that position -- uncover what is behind those cases.

I have read -- as the court knows, I have looked at the Category B cases. We have more than 11,000 cases which, from what Mr. Zimmerman said earlier, they don't know what the merits are of those. They haven't looked at the files. That's certainly what it sounds like, and we know that from other plaintiffs' lawyers as well.

In fairness not only to the defendants, but to the other courts throughout the country, before these cases leave the MDL the plaintiffs should have to unwrap the binders, look at the documents, and announce whether these are cases that involve what Mr. Zimmerman say they involve, serious muscle injury cases.

When we came before the court in February -- in December and then in February of last year, Mr. Zimmerman said he wanted to separate the wheat from the chaff; and the court embraced that concept not just because that helped Bayer, but because that helped the court and that helped the transferor courts.

These cases shouldn't go back to transferor courts on the hope that one of a host of different procedures can

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

be embraced that would deprive Bayer of its rights. We know from the --

THE COURT: I know of no state that would try to -- has procedures in place that would deprive defendants of their rights.

MR. HOEFLICH: Well, Mr. Zimmerman has said that he would like to send it back to, I believe one of the jurisdictions he mentioned -- well, it doesn't matter which jurisdiction, but he said he would want to propose group trials, other summary jury trials in different jurisdictions.

THE COURT: What other jurisdictions do to handle the cases, that doesn't mean that that's a violation of defendants' rights. It's just like I could have group trials here if I wanted to. They have been in federal court too.

So I'm not sending them to Iran. I am sending them back to the transferor jurisdictions who have policies and procedures and due process for both the plaintiffs and defendants.

MR. HOEFLICH: The burden on that court, Judge, would be enormous. For example, there would be more than 1,100 plaintiffs that would go back to Louisiana and those cases would be completely unvetted.

Now, the court set a process in place more than a

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

year ago, in fact, more than two years ago where the cases would be vetted here and then when they went back the Daubert motions would take place. Under PTO 114 and PTO 131 and PTO 127 the cases would be narrowed, Daubert motions would take place, the cases would be ready for trial.

The way the process would work if the MDL were to end now, the cases would be going back without Daubert motions, without fact discovery, without plaintiffs having even looked at the case to see if they had any merit.

And the district courts, which haven't been set up to handle an MDL, could conceivably have a thousand-plus plaintiffs where they would have to engage in all of those procedures that appropriately were set forth to be done here. We think that's the more appropriate course.

Mr. Zimmerman stood before the court more than a year ago and said that as the leader of the Plaintiffs' Steering Committee he wanted to endeavor and his colleagues wanted to endeavor to separate the sea of aches and pains cases, which by all accounts still exist, from what he believes are the serious muscle injury cases.

PTO 114 is in place to allow the plaintiffs' lawyers to examine their file -- without burdens on all the district courts throughout the country -- to have plaintiffs examine their cases, decide what cases they want to file reports on, to file reports on those cases for the parties,

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

including the defendants, who have spent millions of dollars on categorizing those cases into different categories.

And while there's enormous variations within the categories, it does give us information to work with the special masters to break the cases into categories, to see what the plaintiffs will claim are the serious muscle injury cases, to subject that to Daubert hearings, and then to test the cases to see whether, in fact, the cases have any value.

I think by all accounts the majority of the filed cases don't have value and they are going to go away, and there's no reason that there are districts in 50 different states that should deal with that.

The court set forth an appropriate procedure and we have efficient mechanisms in place. We're not talking about taking several years doing this. The first wave of PTO 131 reports was due on January 28th.

I think of not only we, but think about the plaintiffs who have already submitted these reports, think of the plaintiffs who are in front of the court and made decisions based on the court's prior orders.

I think that this litigation has been set up to allow the narrowing order and the categorization process, as well as the court's other orders, to take their course, to see if there are cases that need to be tested, to have this court look at those cases and apply Daubert rulings to them.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

And then once that process has been done, either engage in discussions here or send cases back to the transferor courts for remand.

I think that mechanism, which was set up by the court, is the appropriate and the efficient way not only for the defendants, but for the courts throughout the country and, in fact, for the plaintiffs' lawyers to handle the remainder of these cases.

THE COURT: Mr. Magaziner.

MR. MAGAZINER: Thank you, Your Honor. I will speak very briefly.

My vision of the end game is a three-part end game. The first part is Bayer settles almost 3,000 cases for $1.2 billion, an unprecedented voluntary program by a defendant in a case like this.

The second part of the end game is through fair requirements that the court has imposed on plaintiffs' lawyers, requirements that courts routinely impose on plaintiffs in individual cases, many, most, almost all of the remaining cases go away because when the plaintiffs' lawyers are required to take a good hard look at the cases, they see most of these cases have no merit and have no value.

And the third part of the end game is the small number of cases that might then be left that Bayer was not

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

willing to settle as rhabdo cases and that plaintiffs still think have merit or value.

That small number, if no resolution can be reached here, get remanded to the district courts in the 50 states where those cases came from and the district courts then put in place whatever procedures they think appropriate to resolve those cases, probably by trial, maybe by summary judgment, whatever.

But there are three parts to this, the settlement of the most serious injury cases; the separation of wheat and chaff in all the other cases; and then the remand of the wheat, if you will, to the district court.

But the remand that I am envisioning is of a very small number of cases which plaintiffs' lawyers still think have merit and value and that Bayer thinks ought not to be compensated, rather than the remand that Mr. Zimmerman is envisioning, which is all of the cases not separated into wheat and chaff, most of which we all know have no value and no merit.

I would hope the court will keep in place the narrowing orders because they have worked so well to date. I am sure Susan or Adam can provide the numbers, but the number of cases that have disappeared from your court's docket as a result of these simple requirements imposed on plaintiffs' lawyers are staggeringly large numbers.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

This MDL is making more progress than any other MDL I have ever heard of in getting rid of cases that have no merit and no value; and it would be a shame, I think, to abandon these tried and true and effective protocols that Your Honor has put in place before they have accomplished all that they can accomplish.

Thank you, Your Honor.

MR. ZIMMERMAN: Your Honor, if you are going to define success by creating barriers to the courthouse and making people jump through hoops and if they can't jump through hoops their cases go away, yeah, you have had success with that. If you define success as $1.2 billion, you can define success --

THE COURT: Let me stop you. The process that we have was a process that you stepped up and put forth to the court, and part of that was to see what was left and also to see if those cases would be settled.

Mr. Magaziner has stood up and it's clear from Bayer's position that even when we get the core cases, they're not interested in settling those cases. So whether or not all these other things, why should I not send these cases back?

MR. ZIMMERMAN: You should. Simple answer, you should. If their position is as stated, that they will not settle them now, they will not settle them later, we are in

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

an exercise in absolute futility and we should send them back now. It's not fair. It's not right. We are holding them hostage and they're not going to change their mind.

If they would change their mind, they could show it with the 1,200 cases that we've got out there right now. Tell us how we can resolve those 1,200 or a piece of those 1,200. But they ain't going to do it, Your Honor.

So getting them from 1,200 to 3,000 or whatever the number is, it is going to be the same answer, let them go now. Let the courts deal with them as they must and let Bayer deal with them wherever they came from. But it's not fair to hold them hostage here, Your Honor.

THE COURT: Okay. I am ready to rule. The court will stay in abeyance Pretrial Orders 114, 127, and 131. One month from today's date I want briefs from both sides --

THE CLERK: March 11th.

THE COURT: -- March 11th, on the reasons why these cases should or should not go back to the transferor court.

MR. ZIMMERMAN: Simultaneous briefs, Your Honor?

THE COURT: Simultaneous.

MR. ZIMMERMAN: On March 11th?

THE COURT: March 11th.

MR. ZIMMERMAN: Thank you, Your Honor.

THE COURT: Thank you.

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

(Court adjourned at 1:45 p.m.)

* * *

I, Lori A. Simpson, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by: ______________________________
Lori A. Simpson, RMR-CRR

Dated: February 14, 2005

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit F

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

IN RE ST. JUDE MEDICAL, INC., :
SILZONE HEART VALVES PRODUCTS :
LIABILITY LITIGATION : MDL DOCKET NO. 1396

**PRETRIAL ORDER NO. 20**

The parties having stipulated thereto, the Court orders:

## I. CASE-SPECIFIC FACT DISCOVERY

**A. Governing Law:** Case-specific fact discovery shall be governed by applicable Federal Rules of Civil Procedure and Local Rules except as otherwise provided herein or in any other Pretrial Order. Nothing in this order shall be construed to modify or amend previously entered orders concerning merits discovery or expert discovery.

**B. Discovery Initiation Date:** For purposes of this Order and for purposes of discovery in MDL 1396, the Court establishes a "case-specific discovery initiation date" ("DID") which is:

1. September 1, 2002 for those civil actions that were originally filed in or transferred to and docketed in the District of Minnesota on or before September 1, 2002;

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

2. the first day of the month following the date that a civil action is filed in or transferred to and docketed in the District of Minnesota to the extent such an event occurs after September 1, 2002.

3. The Court may extend the deadlines established by this Order for good cause shown.

**C. Plaintiff's Initial Disclosures:** Within one (1) month of the entry of this order or one (1) month of the DID, whichever is later, each plaintiff shall deliver to defendants (a) the disclosures required by Fed.R.Civ.P. 26(f), (b) hard copies of all documents identified in the Rule 26(f) disclosure and (c) a completed Plaintiff's Initial Disclosure in the form attached as Exhibit 1 to Pretrial Order No. 2. To the extent such information has been previously provided to defendants pursuant to Pretrial Order No. 2, each plaintiff is obligated to provide all later acquired information and/or documents bearing on all disclosures previously made by such plaintiff to the extent required by Rule 26(e).

**D. Medical Examinations.** Within six (6) months of the DID (i.e., by March 1, 2003 for cases with a DID of September 1, 2002), Defendants may move for orders scheduling medical examinations of plaintiffs pursuant to and in accordance with the requirements of Fed.R.Civ.P. 35, except that a plaintiff shall not be required to travel an unreasonable distance for medical examinations. In the event that a medical examination is to take place requiring plaintiff to travel more than fifty (50) miles, the party requesting the examination shall tender to plaintiff's counsel five (5) calendar days in advance of such examination a sum equal to the

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

reasonable round-trip travel and lodging expenses to be incurred by plaintiff, and one attorney for plaintiff, to attend the examination.

**E. Completion of Case Specific Fact Discovery:** Case specific fact discovery shall be completed within seven (7) months of the DID (i.e., by April 1, 2003 for cases with a DID of September 1, 2002).

**F. Mandatory Mediation:** Within (10) months of the DID (i.e., by July 1, 2003 for cases with a DID of September 1, 2002), the parties shall stipulate to a mediator or establish an order for mediation of the individual cases. If the parties are unable to agree, the court shall appoint a mediator. All such mediations will be held in Minneapolis, Minnesota, unless otherwise agreed to by the parties.

**G. Disclosure of Plaintiff's Experts:** Within eight (8) months of the DID (i.e., by May 1, 2003 for cases with a DID of September 1, 2002), plaintiff shall identify duly-qualified generic and case-specific experts and provide the disclosures required by Fed.R.Civ.P. 26(a)(2)(A).

**H. Disclosure of Defendants' Experts:** Within nine (9) months of the DID (i.e., by June 1, 2003 for cases with a DID of September 1, 2002), defendants shall identify duly-qualified generic and case-specific experts and provide the disclosures required by Fed.R.Civ.P. 26(a)(2)(A).

**I. Disclosure of Supplemental Experts**: Within ten (10) months of the DID, plaintiff shall identify any supplemental experts who will offer expert opinions on topics for which defendants have identified an expert, but for which plaintiff has

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

not yet identified an expert, and provide the disclosures required by Fed.R.Civ.P. 26(a)(2)(A).

**J. Depositions of Generic Experts:** Depositions of the parties' generic experts shall be governed by the terms of Pretrial Order No. 21.

**K. Depositions of Case Specific Experts:** Within forty-five (45) days of the identification of case-specific experts hereunder, the parties may take the deposition of such case-specific experts. It is understood and agreed between the parties that unless otherwise agreed or ordered by the Court, the depositions of plaintiff's experts shall proceed first followed by the depositions of defendants' experts.

## II. REMAND PROCEDURES

### A. Remand Report

In order to monitor the completeness of discovery in cases where all discovery deadlines are expired, within twelve (12) months of the DID (i.e., by September 1, 2003 for cases with a DID of September 1, 2002), the parties are required to complete and submit a joint report to the Court containing information about remaining discovery, if any, and disputes between the parties. The purpose of the report is to facilitate the completion of each parties' pretrial efforts prior to remand. Upon receipt of a Remand Report from the parties, the Court may either order the case remanded to its home jurisdiction or make such orders so as to allow the completion of discovery

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

**B. Record on Remand:** Once the Court has ordered that a particular case be remanded, the parties shall stipulate to this Court the portions of the record that are to be returned to the transferor court. That portion of the record can then be combined with the record that already exists in the transferor court, providing the transferor court with the entire file necessary for the ultimate disposition of the case

**C. Discovery After Remand:** In the event there is a significant delay between the date of remand and the trial date in a particular case, for good cause shown, any party may petition the transferor court for additional case-specific discovery.

IT IS SO ORDERED:

_______________________________
Honorable John R. Tunheim

ENTERED: September 9, 2002

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit G

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

U.S. DISTRICT COURT FILED DEC 13 2000 S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

In re:

REZULIN PRODUCTS LIABILITY LITIGATION (MDL No. 1348)

This Document Relates to: All Cases

-------------------------------x

MASTER FILE

00 Civ. 2843

**AMENDED**
**PRETRIAL ORDER NO. 2**
(Pretrial Schedule)

LEWIS A. KAPLAN, *District Judge.*

**1 Conduct of discovery on behalf of plaintiffs**

All discovery directed against defendants and non-party witnesses on behalf of plaintiffs shall be undertaken by or under the direction of Plaintiffs' Executive Committee ("PEC") on behalf of all plaintiffs with cases in this MDL as well as on behalf of all plaintiffs in state court cases that are coordinated with this MDL or as to which there is an agreement or order to utilize discovery generated herein.

MICROFILM DEC 14 2000 -9:00 AM

**2 Discovery**

**2.1 Completion date**

Unless otherwise ordered, all discovery in these consolidated cases shall be completed on or before January 31, 2002. Although the Court will consider any application for an extension, the parties should assume that no extension will be granted.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431



**2.2 Defendants' document production**

**2.2.1** Warner-Lambert has represented to the Court that it has been collecting and placing relevant documents in a depository, which documents will be made available also in the form of electronic images on CD-ROM, that most of the roughly 3.5 million documents collected from originally targeted custodians will be in the depository by January 2, 2001, and that the detail force documents gathered in its Roanoke warehouse will be made available by February 1, 2001. To the extent, if any, that it has not done so previously, Warner-Lambert shall make these documents available to plaintiffs on a rolling basis.

**2.2.2** The PEC may serve a Rule 34 request on defendants on or before November 17, 2000.

**2.2.3** All documents requested by the PEC on or before November 17, 2000, and all documents that Warner-Lambert has represented it will produce (*see* ¶ 2.2.1) shall be placed in its depository no later than February 1, 2001.

**2.2.4** Warner-Lambert shall provide logs of materials withheld from any document production on privilege, work product or other grounds no later than 45 days after the groups of documents from which the materials were withheld are placed in the depository.

**2.2.5** Subject to compliance with the confidentiality order entered this date, the PEC, at its own expense, may establish and regulate access to its own depository containing copies or images of documents produced by Warner-Lambert.

**2.3 Plaintiffs' depositions of defendants**

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431



2.3.1 Plaintiffs may commence Rule 30(b)(6) depositions relating to the organization of Warner-Lambert and the identification of potential deposition witnesses immediately.

2.3.2 Subject to paragraph 2.3.3 hereof, plaintiffs may commence non-party fact depositions of witnesses believed to have testimony relevant to Warner-Lambert's conduct immediately.

2.3.3 The PEC and defendants promptly shall confer and attempt to agree upon a comprehensive deposition schedule providing for the completion of fact depositions of defendants' present and former employees and agents, and any other persons under defendants' control, by September 30, 2001. Any such schedule shall comply with paragraph 2.1 hereof. If the parties fail to agree upon such a schedule, they shall so report to the Court no later than February 1, 2001, including in their report the reasons for their inability to agree and the extent of any partial agreement.

2.3.4 Plaintiffs' Liaison Counsel ("PLC") shall give at least two weeks' notice of each deposition scheduled in this case that is expected to deal with material common to other Rezulin cases to counsel of record in and judges presiding over Rezulin cases pending in state courts.

**2.4 Interrogatories**

2.4.1 Interrogatories shall be served by the PEC on defendants only if the information sought cannot practically be obtained by a review of documents or through depositions. The limitation on the number of interrogatories provided in the third sentence of Fed. R. Civ. P. 33(a) shall not apply.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431



2.4.2 The PEC immediately may serve initial interrogatories pursuant to S.D.N.Y. Civ. R. 33.3 relating to the identity of witnesses and the location of documents.

2.4.3 The PEC may serve additional interrogatories until August 2, 2001. Within fifteen days after service of such interrogatories, counsel shall meet and confer to resolve any objections defendants may have thereto. Insofar as objections are not interposed, or if revised interrogatories are agreed upon, the defendants shall answer the interrogatories within the time provided by Rule 33 or within twenty days after such conference, whichever is longer, unless the parties otherwise agree or the Court otherwise orders.

2.4.4 Contention interrogatories may not be served absent leave of Court.

**2.5 Fact discovery against plaintiffs**

2.5.1 Fact discovery against plaintiffs shall take place concurrently with the PEC's discovery against defendants.

**2.5.2 Plaintiffs with claims of personal injury**

2.5.2.1 Defendants have provided the PEC with a proposed plaintiff questionnaire, including requests for medical, employment and insurance authorizations and other pertinent documents, to be completed under oath by all plaintiffs. The parties shall agree upon the content of such a questionnaire and the form of authorizations by November 17, 2000, failing which they shall submit their respective positions to the Court by November 21, 2000 for determination. The sworn responses to the questionnaire shall be treated as interrogatory answers. To the extent that any documents or responses are

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431



withheld on the grounds of privilege, plaintiffs shall provide a privilege log.

2.5.2.2 By January 2, 2001 or forty days after a questionnaire is approved by the Court, whichever is later, completed sworn questionnaires with the required documents and duly executed authorizations shall be served on defendants' counsel by each plaintiff in each case included in this MDL that was docketed in this Court on or before the date of this order. Plaintiffs in MDL 1348 cases subsequently docketed in this Court shall be served such materials no later than forty days after the date of such docketing or the date required for cases docketed prior to the date of this order, whichever is later.

2.5.2.3 In the event a plaintiff fails to serve a timely and sufficient response to the questionnaire, including all necessary documents and authorizations, defendants may send a warning letter to the plaintiff's counsel of record (with a copy to the PLC) identifying the deficiencies in that plaintiff's response and warning that the failure to provide all of the required information within thirty days of the date of the letter may result in the dismissal of that plaintiff's action. Any such letter shall be sent by certified mail, return receipt requested.

2.5.2.4 Following receipt of a response to the questionnaire, defendants may seek additional discovery with respect to the claim of the responding plaintiff from that plaintiff and from non-party witnesses by means provided in the Federal Rules of Civil Procedure.

2.5.2.5 In exigent circumstances, the parties may agree and, absent

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431



agreement, any party may apply for leave to conduct an expedited deposition to preserve testimony. The service of any such motion by a plaintiff shall follow or be accompanied by a completed questionnaire and all required authorizations and copies of all medical, employment and/or insurance records in the possession of the moving plaintiff or that may be obtained by that plaintiff through reasonable efforts.

**2.5.3 Class action and other plaintiffs**

**2.5.3.1** The PEC and defendants' counsel will propose to the Court procedures for discovery against plaintiffs who assert class action or other claims, in lieu of or in addition to claims of existing or potential personal injury, on or before December 15, 2000.

**3 Class actions**

**3.1** The PEC shall file a consolidated amended class action complaint no later than December 15, 2000.

**3.2** Defendants may commence discovery of class representatives on January 16, 2001. The PEC shall use its best efforts to expedite completion and service of questionnaires and authorizations by class representatives.

**3.3** The PEC shall serve plaintiffs' motion for class certification and supporting papers on or before January 16, 2001.

**3.4** The parties shall meet and confer about a schedule for class related discovery and briefing and report to the Court no later than January 31, 2001.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431



**4 Experts**

**4.1** The PEC shall provide expert disclosures pursuant to Rule 26 no later than October 30, 2001, whereupon defendants may commence depositions of plaintiffs' experts..

**4.2** Defendants shall provide their expert disclosures within thirty days after receiving PEC's disclosures, whereupon the PEC may commence depositions of defendants' experts.

**4.3** All expert discovery shall be completed on or before January 31, 2002.

**4.4** The parties shall attempt to agree and shall confer with the Court concerning scheduling of motions relating to the admissibility of expert testimony, including the scheduling of motions in limine, *Daubert* submissions and evidentiary hearings, after the expert depositions are completed and on or before December 15, 2001.

**5 Dispositive and Summary Judgment Motions**

Because the parties may not be in a position to make all potential summary judgement motions until after the last decision by this Court with respect to the admissibility of any expert testimony, the last day for summary judgment motions, given the discovery that needs to be completed, shall be on January 31, 2002 or the thirtieth day after the last decision by this Court with respect to the admissibility of any expert testimony.

**6 Final report regarding pretrial proceedings to be completed prior to remand.**

On or before January 31, 2002, the parties shall meet, confer and report to the Court

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431



concerning any other pretrial proceedings, including dispositive motions and/or motions in limine, or any discovery, that remains to be completed in any of the then pending cases, so that this Court can determine whether each is ready for trial and remand to its respective transferor court.

SO ORDERED.

Dated: December 13, 2000

Lewis A. Kaplan
United States District Judge

It is ORDERED that counsel to whom this Order is sent is responsible for faxing a copy to all counsel and retaining verification of such in the case file. Do not fax such verification to Chambers.

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit H

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

U.S. DISTRICT COURT DEC - 5 2000 S.D. N.Y.

~~[PROPOSED ORDER]~~

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x

IN RE:

REZULIN PRODUCTS LIABILITY
LITIGATION (MDL-1348)

This Document Relates To: All Cases

----------------------------------x

MASTER FILE

00 Civ. 2843 (LAK)

**PRETRIAL ORDER NO. 4**
(Plaintiff's Fact Sheet)

Lewis A. Kaplan, *District Judge*.

Pursuant to Paragraph 2.5.2.1 of this Court's Pretrial Order No. 2 (Pretrial Schedule), the Court has been informed that the Plaintiffs' Executive Committee ("PEC") and the defendants have agreed upon the form of plaintiffs' questionnaire, including requests for medical, employment and insurance authorizations and other pertinent documents in the form of the attached Plaintiff's Fact Sheet, and therefore, upon review of the proposed Plaintiff's Fact Sheet, it is hereby

**ORDERED**, as follows:

1. **Adoption of Plaintiff's Fact Sheet.** The attached Plaintiff's Fact Sheet, including requests for medical, employment and insurance authorizations and other pertinent documents, is to be completed under oath by all plaintiffs pursuant to the schedule and procedures previously Ordered in Pretrial Order No. 2 (Pretrial Schedule).

MICROFILM DEC - 6 2000 -9 00 AM

Doc #30198270.WPD

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

2. **Supplementation of Completed Fact Sheet.** The person completing the Fact Sheet shall have the duty and the right to supplement any response to the Fact Sheet if the party learns that any such response is incomplete or incorrect, or if new information responsive to the Fact Sheet becomes known to that party.

3. **Depositions of Plaintiffs.** Subject to further Orders of this Court regarding protocols to be observed in taking depositions, questions at the deposition of a plaintiff shall not seek mere repetition of information provided in that plaintiff's completed Fact Sheet. However, nothing in this Order shall prevent defendants from asking questions directed at confirming, correcting, supplementing, updating, explaining and/or expanding the information provided in a completed Fact Sheet to the extent permitted by the Federal Rules of Civil Procedure.

4. **Specific Objections Pursuant to Applicable State Law.** To the extent that any party contends that a response to any item requested in the Fact Sheet is prohibited by the substantive state law applicable to their case, they must serve a written objection to providing that response, including the legal basis for that objection, at or before service of the completed Fact Sheet.

5. **Privilege Claims.** To the extent that any information, documents or authorizations required to be provided in response to the Fact Sheet are withheld on the grounds of privilege, a privilege log shall be provided of the information, documents or authorizations withheld.

6. **Redaction of Information.** To the extent that any information is redacted from any document for any reason, a redaction log of the redacted information that sets forth the legal basis for the redaction shall be provided to the defendants. Upon request, the attorneys for

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

the defendants may inspect, on an "attorneys' eyes only" basis, such redacted material. If there is a dispute whether any redacted material qualifies for redaction, counsel may move for a ruling, which may require this Court's *in camera* inspection of the redacted material on the issue of whether that information is entitled to redaction.

7. **Validity of Authorizations**. All authorizations to obtain records provided pursuant to this Order, or any other Order of this Court, shall remain valid during the entire time that the action of the plaintiff who provided the authorization is pending in this Court, any transferor Court or any Court to which such action is remanded. No such authorization shall be valid after the action of the plaintiff who provided the authorization is concluded, either by settlement or by entry of final judgement.

8. **Notification of Request for Records.** Whenever defendants request records pursuant to authorizations provided with the Fact Sheet , the principal attorney for that plaintiff, as identified in Item I.A.5 of the completed Fact Sheet, shall be provided with a copy of that request for records.

9. **Copies of Records Received Pursuant to Authorization.** Whenever records are received by defendants in response to a request pursuant to authorizations provided with the Fact Sheet, a copy of those records shall be provided to the principal attorney for that plaintiff as identified in Item I.A.5. of the completed Fact Sheet.

10. **Documents Previously Produced by Defendants.** Nothing in this Order or the Fact Sheet shall be construed as requiring a plaintiff to produce copies of documents produced by the defendants in these MDL proceedings or in other Rezulin litigation, if those documents were rightfully received by that plaintiff or by his or her counsel.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

11. **Admissibility of Information Provided via Fact Sheet.** Neither this Order, nor the completion of a Fact Sheet and the required authorizations, shall prejudice the right of any party to contest the admissibility of any information or documents disclosed.

12. This Order shall apply to all cases docketed in MDL 1348 and will remain in effect in all such cases after remand to transferor courts.

SO ORDERED

Dated: 12/5/00

Lewis A. Kaplan
United States District Judge

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit I

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

RECEIVED APR - 4 2002 ...N'S CHAMB...

U.S. DISTRICT COURT APR 3 0 2002 S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ -x

IN RE:

MASTER FILE

REZULIN PRODUCTS LIABILITY LITIGATION (MDL-1348)

00 Civ. 2843 (LAK)

This Document Relates To: All Cases

DOC # 461

------------------------------------ -x

**STIPULATION AND ~~[PROPOSED]~~ ORDER**

The parties, by their undersigned counsel, have met and conferred as to certain issues pertaining to ongoing discovery and have agreed to this joint application respectfully requesting that this Court enter the following Pretrial Order in this MDL proceeding:

* * * * * *

**PRETRIAL ORDER NO. 82**

Lewis A. Kaplan, *District Judge.*

On November 9, 2000, this Court entered Pretrial Order No. 2 (Pretrial Schedule), which addressed discovery in these MDL proceedings. When that Order was entered there were approximately 310 plaintiffs in 128 cases in this MDL. Pretrial Order No. 2 provided that discovery in all cases was to be completed before January 31, 2002. Paragraph 2.1.

On July 26, 2001 the Court entered Pretrial Order No. 27, which extended the time to complete discovery for an additional six months until July 31, 2002. As of today, Rezulin litigation in federal court involves more than 3800 plaintiffs named in nearly 600 actions. In

MICROFILM APR 30 2002 -12 00 PM

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

addition, new cases continue to be filed and transferred so that it has become impracticable to set a single date for the completion of discovery of the plaintiffs in all cases.

Therefore, in order to provide the parties with a reasonable time to complete discovery including discovery regarding the claims of each of the MDL plaintiffs and in order to provide for timely remand of cases that are trial ready, it is hereby

**ORDERED,** as follows:

1. When a plaintiff has provided discovery in compliance with paragraph 2.5 of Pretrial Order No. 2 and with Pretrial Order No. 4, and complete medical records have been produced to or obtained by defendants, the defendants may proceed with depositions and other discovery in regard to that plaintiff's claims. Such discovery shall be completed within 120 days of commencement of those depositions unless one of the parties obtains an extension from the Court for cause, which may include the fact that an excessive number of plaintiffs are subject to discovery of their claims within a given period.

2. Upon the completion of defendants' discovery, the completion of discovery and disclosure pursuant to other Pretrial Orders in this MDL proceeding, and the disposition of all applicable motions, cases will be considered for suggestion of remand to their transferor court in a manner and pursuant to a schedule to be determined by this Court. If the defendants contend that the transferor court is not the appropriate United States District Court for the trial of a case in which remand has been requested, they may file the appropriate motion, which will be determined by this Court prior to any suggestion of remand of that case.

3. If any plaintiff has not completely complied with the discovery requirements set forth above and in the prior Orders of this Court, his or her case shall not be considered for

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

remand until this Court has determined that the discovery obligations of the plaintiff have been completed and the aforesaid requirements have been met.

4. The Court may consider applications for a suggestion of remand of a case based upon circumstances not specifically addressed in this Order.

5. To the extent that this Pretrial Order conflicts with any procedures or deadlines established by prior Orders of this Court in these MDL proceedings, the procedures and deadlines of this Order shall control, however, to the extent there is no such conflict, the prior Orders of this Court in these MDL proceedings shall remain in effect. This Order shall have no effect on deadlines or procedures established by this Court that are not addressed herein.

6. This Order applies to all cases docketed in MDL 1348.

* * * * *

Respectfully submitted this 4th day of April, 2002:

~~Melvyn I. Weiss~~
Regina LaPolla (RL-9578)
Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P.
One Pennsylvania Place
New York, NY 10019
Telephone: (212) 594-5300

Glenn J. Pogust (GP- 4845)
Kaye Scholer, LLP
425 Park Avenue
New York, New York 10022
Telephone (212) 836-7801

Counsel for the Warner-Lambert Defendants

Charles A. Mathis, Jr.
Mathis, Adams & Tate, P.C.
Herman, Casey & Kitchens, LLP
Suite 1400 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

Telephone: (404) 523-5000

Arnold Levin
Levin, Fishbein, Sedran & Berman
Suite 500, 510 Walnut Street
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500

Ramon Rossi Lopez
Lopez, Hodes, Restaino, Milman,
Skikos & Polos
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660
Telephone: (949) 640-8222

Plaintiffs' Executive Committee

SO ORDERED

Dated: 4/29/02

Copies mailed 04/29/02
Chambers of Judge Kaplan
PMC

Lewis A. Kaplan
United States District Judge

It is ORDERED that counsel to whom this Order is sent is responsible for faxing a copy to all counsel and retaining verification of such in the case file. Do not fax such verification to Chambers.

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

U. S. DISTRICT COURT APR 30 2002 S. D. OF N. Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

In re:

REZULIN PRODUCTS LIABILITY LITIGATION

This Document Relates to: All Actions

-----------------------------------------------x

MASTER FILE
00 Civ. 2843 (LAK)
(MDL No. 1348)

460

**STIPULATION OF THE PARTIES AS**
**TO THE CONDUCT OF FUTURE FACT AND EXPERT DISCOVERY**

The parties, by and through undersigned counsel, have met and conferred as to certain issues pertaining to ongoing discovery and have agreed to this joint application for an order to expedite the conclusion of fact and expert discovery in the above referenced proceeding providing as follows:

1. The parties may continue to take depositions pursuant to Pretrial Order No.12, including depositions of corporate representatives and current or former employees of the Warner-Lambert defendants, up to and through the discovery cut-off of July 31, 2002; and

2. Expert disclosure and motions as referenced in paragraphs 4, 5 and 6 of Pretrial Order No. 2 shall commence not less than 30 days after the completion of fact discovery. Therefore, plaintiffs' expert disclosures pursuant to Rule 26 shall be provided no later than August 31, 2002, and all other deadlines set forth in paragraphs 4, 5 and 6 of Pretrial Order No. 2 shall be rescheduled accordingly.

MICROFILM APR 30 2002 -12 02 PM

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

WHEREFORE, the parties respectfully request that the Court enter an order as allowing the parties to conduct fact and expert discovery as outlined above.

Respectfully submitted this 1st of April, 2002:

Melvyn I. Weiss
Regina LaPolla (RL-9578)
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300

Charles A. Mathis, Jr.
Mathis & Adams, PC
Herman, Mathis, Casey, Kitchens & Gerel LLP
Suite 1400 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303
Telephone: (404) 523-5000

Arnold Levin
Levin, Fishbein, Sedran & Berman
Suite 500
510 Walnut Street
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500

Ramon Rossi Lopez
Lopez, Hodes, Restaino, Milman, Skikos, Polos
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660
Telephone: (949) 640-8222

**Plaintiffs' Executive Committee**

Glenn Pogust (GP-4845)
Kaye, Scholer, LLP
425 Park Avenue
New York, NY 10022

**Counsel for Defendants**

SO ORDERED.
Dated: April 29, 2002

Lewis A. Kaplan
United States District Judge

It [illegible] ORDERED that counsel to whom this Order is sent is responsible for faxing a copy to all counsel and retaining verification of such in the case file. Do not fax such verification to Chambers.

Copies mailed 04/29/02
Chambers of Judge Kaplan
PMC

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit J

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION<br><br>This document relates to the actions listed on Attachment A | MDL No. 1407<br><br>FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING EPHEDRA CLAIMS |

**FINAL MDL PRETRIAL ORDER**

This Final MDL Pretrial Order describes the events that have taken place in MDL 1407 and those items that require further action by the transferor court. A copy of this Final MDL Pretrial Order, along with the case file and materials, will be provided to the transferor court.

## I. INTRODUCTION

On August 28, 2001, the Judicial Panel for Multidistrict Litigation ("JPML") designated this Court as the transferee court for all individual, consumer class and other federal cases arising out of the sale or use of over-the-counter cough/cold and appetite suppressant products containing phenylpropanolamine ("PPA") for pre-trial consolidation



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

and coordination. *In re: Phenylpropanolamine ("PPA") Products Liability Litigation,* MDL No. 1407.

The proceedings in this MDL 1407 began in earnest with the Order re: Initial Conference dated November 1, 2001, requiring plaintiffs and defendants to submit proposed committee rosters, and scheduling the initial conference for November 16, 2001. Since then: (1) generic fact discovery has been completed or substantially completed as to most MDL defendants (including written discovery, document production and review, discovery depositions and requests for admissions); (2) a procedure for case-specific fact discovery in each case has been implemented, and discovery has been underway since 2002; (3) Rule 26 disclosures of generic experts have been made, the discovery depositions of those experts have been completed, and a process to permit the adoption of those experts' opinions in other cases transferred or being transferred to this MDL has been adopted; (4) trial preservation depositions of several of plaintiffs' and defendants' generic experts are underway or have been taken; (5) and the Court has resolved *Daubert* motions challenging plaintiffs' expert opinions solely as to general causation.

Given the foregoing, the Court is satisfied that the PPA aspects of this MDL have sufficiently matured and the Court has issued a Suggestion of Remand for the cases listed on Attachment A to facilitate their remand by the JPML to their transferor courts. All case-specific PPA fact discovery is complete, and such discovery cannot be reopened without permission of the transferor court. Although the case-specific PPA fact discovery is complete, there are Ephedra aspects of the case remaining that make it a candidate for transfer to the MDL No. 1598 *In re Ephedra Products Liability Litigation* ("Ephedra MDL No. 1598"). Ephedra MDL No. 1598 was established on April 13, 2004, in the Southern District of New York before Judge Jed S. Rakoff. Given that Ephedra discovery has not been



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

conducted in the PPA MDL, the cases listed on Attachment A would benefit from the coordinated discovery proceedings in the Ephedra MDL No. 1598 that is overseeing coordinated discovery in cases such as these alleging product injuries as a result of Ephedra ingestion. The cases listed on Attachment A involve common questions of fact with actions previously transferred under 28 U.S.C. § 1407 to the Ephedra MDL No. 1598, and consequently, a tag-a-long notice should be filed with the Clerk of the JPML upon remand. If transferred to the Ephedra MDL, the cases listed on Attachment A will once again return to the transferor court when the Ephedra discovery is complete for further case-specific proceedings, including designation and discovery of case-specific experts, independent medical examinations, pre-trial motion practice and final disposition. Below is a more detailed overview of the proceedings in MDL 1407 to date concerning the PPA aspects of the cases listed on Attachment A.

## II. ADMINISTRATION OF CASES

### A. Lead and Liaison Counsel.

By order entered on November 20, 2001, this Court appointed and assigned certain responsibilities to Lead and Liaison Counsel for Plaintiffs and Defendants. (Order Appointing Lead and Liaison Counsel (signed Nov. 19, 2001, entered Nov. 20, 2001). The responsibilities of each are delineated in Memorandum in Support of Proposed Language Ordered by the Court in its November 1, 2001, "Order re: Initial Conference" (Nov. 14, 2001) (hereinafter, "Memo Nov. 14, 2001")).

### B. Committees.

The Court approved and appointed members to various committees designed to manage and advance the litigation, including the Plaintiff's Steering Committee ("PSC"). (Order Appointing Members to Plaintiffs' and Joint Committees (Jan. 17, 2002) (hereafter "Order



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

Jan. 17, 2002")). As part of its duties and responsibilities, the PSC assists all plaintiffs in MDL 1407 by overseeing discovery (including conducting extensive discovery of each defendant), by communicating with plaintiff lawyers, by appearing before this Court, by attending status conferences and by preparing motions and responses regarding case-wide discovery matters. The PSC acts on behalf of or in consultation with Plaintiffs' Lead Counsel in the management of the litigation. (Order Jan. 17, 2002; Plaintiffs' Lead Counsels' Status Report No. 1 (Nov. 30, 2001)); Memo Nov. 14, 2001).

## C. Common Benefit Fund.

In order to provide for costs and attorneys' fees that the PSC (and its appointed subcommittees) may be entitled to receive for providing case-wide services over the last several years, the court provided for sequestration of four (4%) percent of all payments made by defendants in settlements or in satisfaction of judgments of cases transferred to MDL 1407, to be placed in escrow into the common benefit fund (a/k/a MDL 1407 Fee and Cost Trust Account). Similarly, in those state court cases where plaintiffs have agreed to coordinate with and use the MDL 1407 work product, the court provided for sequestration of three (3%) percent of all such payments. (The 4% and 3% payments are referred to collectively herein as "MDL Assessment"). The MDL Assessments are to be deposited by defendants into the common benefit fund and the total dollar amounts of these assessments are confidential. The common benefit fund will provide payment to PSC members and other common benefit attorneys for the PSC's work product to the extent that the court ultimately determines that the service was authorized, necessary and beneficial to plaintiffs. The MDL Assessment requirement applies to all MDL 1407 payments made by defendants to plaintiffs, regardless of whether a plaintiff's case is disposed of while on the MDL 1407 docket or following remand to the transferor court.



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

The Common Benefit fund is governed by Amended CMO 8 (Establishing Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for Common Benefit), CMO 16 (Establishing MDL 1407 Fee and Cost Trust Account and Procedures) and CMO 20 (Establishing Common Benefit Fee Committee, Procedures, and Standards to Determine Compensable Fees and Costs). CMO 16 effectuates CMO 8 and details the procedures for (1) assessing and depositing these funds into the account; (2) protecting the confidentiality of the information submitted to and from the Trustee; (3) insuring the accuracy of the information provided; (4) reporting by the Trustee to Liaison Counsel; and (5) resolving assessment disputes. (CMO 16). CMO 20 establishes the Common Benefit Fee Committee, and sets forth (1) procedures for the review of common benefit fee and cost applications and subsequent responsibilities, and (2) standards for the review of common benefit fees and costs. (CMO 20).

**D. <u>State/Federal Coordination.</u>**

It became evident in the beginning of MDL 1407 that the extensive parallel state and federal PPA litigation, involving many of the same defendants and the same plaintiffs' counsel in both state and federal courts, warranted particular emphasis on coordinated discovery. To this end, the parties in state and federal court have jointly succeeded in reducing costs and expenses to themselves and the court system by coordinating most generic discovery proceedings. For example, depositions of defendant representatives and employees were all cross-noticed and, with few exceptions, witnesses were deposed only once for purposes of all cases in the country. Such was also the case during expert discovery. Finally, the parties' presentation of expert testimony under *Daubert* (*see infra* Part III.C.) was coordinated with many state court judges overseeing state court coordinated



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

proceedings. Overall, serious efforts were made by the parties and this Court to achieve meaningful coordination, which were met with considerable success.

**E. Denial of Class Certification.**

The Court denied class certification in eight nationwide and one Louisiana statewide personal injury actions and in seven economic injury actions. (Order granting Defendants' Motion to Strike Class Allegations and Deny Class Certification (Jan. 5, 2002); Order Extending Court's June 5, 2002 Order Denying Class Certification to Additional Cases (Feb. 24, 2003); Order Denying Plaintiffs' Motion for Class Certification Pursuant to Rule 23(B)(3) for Economic Injury Claims (Sept. 4, 2003); (Order Denying Plaintiffs' Renewed Motion for Class Certification Pursuant to Rule 23(B)(3) for Economic Injury Claims (Feb. 7, 2003); Order Denying Certification of Kentucky Economic Injury Class (Nov. 5, 2003)).

## III. DISCOVERY

This MDL has proceeded in a relatively quick and stream-lined fashion, thanks in large measure to the cooperation of the parties. Shortly after commencing this case in the winter of 2001, the court began issuing Case Management Orders ("CMOs") to govern most case-wide issues, as well as case-specific orders. The Court entered 20 CMOs, as well as supplements to them. Some of the specific CMOs are discussed, *infra*, expanding on their specific subject matter. All CMOs are accessible at the Court's website, (www.wawd.uscourts.gov/ wawd/mdl.nsf/main/page.) The primary orders that governed the pretrial management of the discovery in this litigation are CMO Nos. 1, 2, 3, 6, 6A, 10 and 19.

- CMO 1: established a protocol for generic fact discovery (governing, *inter alia*, written discovery, document production and depositions of defendants' corporate representatives and employees);



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

- CMO 2: set forth a confidentiality order;
- CMO 3: provided a document preservation order; and
- CMO 6, 6A, 10 & 19: established a protocol for case-specific fact discovery (governing, *inter alia*, written discovery (including a Fact Sheet and Records Authorizations, document production and depositions of plaintiffs and case-specific fact witnesses).

**A. Generic Fact Discovery.**

1. **Document Discovery.** Extensive fact discovery was conducted against defendants and was substantially completed against most defendants by mid-2003. In an effort to attain consistency and to avoid undue duplication, the parties negotiated and agreed substantially upon master sets of requests for production and interrogatories ("Master Set of Written Discovery") which are attached to CMO 1. No further general document requests or interrogatories were allowed to be propounded on defendants without leave of Court. To the extent that any defendant had previously produced documents and/or made responses to document requests or interrogatories also contained in the Master Set of Written Discovery prior to January 21, 2002, those productions and/or responses were deemed responsive to the same requests contained in the Master Set of Written Discovery. (CMO 1 Parts V.E., V.F.).

Discovery was also conducted be the parties from Yale University and the various hospitals participating in the Hemorrhagic Stroke Project, from the trade association, the Consumer Healthcare Products Association, and from the U.S. Food and Drug Administration.

The PSC created a document depository located in Minneapolis, Minnesota, where millions of documents produced by defendants were stored, reviewed and digitized for use in



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

discovery and for purposes of creating "trial packages" for all plaintiffs who were interested and who agreed to the set-aside percentage.

2. **Depositions of Common Fact Witnesses.** The basic principles governing the taking of depositions of defendants' non case-specific (generic) fact witnesses were set forth in CMO 1. Cross-notices between state court proceedings and the MDL proceedings were encouraged. (CMO 1 Part V.G.). In the interest of efficiency and federal-state coordination, several defendants cross-noticed the depositions of company witnesses, HSP Investigators and CHPA employees in their respective state court proceedings.

**B. Case-Specific Fact Discovery.**

The basic principles of governing the taking of fact discovery of plaintiffs were set forth in CMO 6 (case-specific fact discovery procedure and plan). Under CMO 6, later modified by CMO 10, cases docketed in the MDL by February 12, 2002, had case-specific discovery cut-off dates of February 28, 2003. Cases docketed after February 28, 2003, were to have case-specific discovery completed within 12 months of the docket date. (CMO 6 Part VI.). As discussed further below, however, due to numerous delays many of these case-specific discovery cut-off dates were extended.

1. **Case-Specific Fact Discovery of Plaintiffs.**

a. **Plaintiff Fact Sheets (PFSs).** Under CMO 6, plaintiffs in every case transferred to MDL 1407 were ordered to complete a plaintiff fact sheet (PFS). (CMO 6 Part II.A.). Plaintiffs were required to complete and serve on defendants' liaison counsel fact sheets. In the event of a plaintiff's failure to serve a completed PFS, defendants' liaison counsel was to send a warning letter to that plaintiff. If, within 30 days of a warning letter, the plaintiff had still failed to serve a completed PFS, defendants were able



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

to seek appropriate relief from the Court if a meet and confer did not otherwise resolve the issue. (CMO 6 Part III.A.).

Under CMO 10, entered seven months after CMO 6, the Court ordered that no case would be considered for remand if any plaintiff had not completely complied with the discovery requirements of its prior orders, including the completion of a PFS. (CMO 10 ¶ 1). Failure to provide complete PFS responses tolled the period for completion of fact discovery, which would not run until one year after defendants' receipt of a completed PFS and its accompanying authorizations. (CMO 10 ¶ 3).

Finally, CMO 19 provides for the issuance of a Show Cause Order why the Court should not dismiss a case for failure to prosecute, based on a plaintiff's failure to timely file a PFS or cure a PFS that is not complete in all respects within fifteen days of notice of deficiencies.

**b.** **Other Written Discovery**. In addition to the PFS, defendants were entitled to propound ten (10) interrogatories and ten (10) requests for production (non-duplicative of any issue raised via PFS) on each plaintiff during the case-specific fact discovery time period. (CMO 6 Parts III.B.-III.C.). Plaintiffs were to serve responses to each type of request within 45 days of service of them. Upon remand, the parties may obtain updated medical records.

**c.** **Depositions**. Defendants were entitled to conduct ten (10) depositions of fact witnesses ("fact witnesses" include plaintiffs' treating physicians) as part of their case-specific discovery. (CMO 6 Part III.D.). Defendants were allowed to take additional depositions upon a showing of good cause. Upon remand, the parties may move the transferor court to take additional depositions including newly identified fact witnesses regarding plaintiff's current medical condition for good cause and necessity. In the event



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

good cause and necessity is shown to update the plaintiff's deposition, shortened time limits may be imposed, depending on the circumstances.

2. **Case-Specific Fact Discovery of Defendants.** Plaintiffs were allowed to propound on defendants no more than ten (10) case-specific interrogatories and ten (10) case-specific document requests. (CMO 6 Part IV.A.-IV.B.). Plaintiffs were also allowed to conduct case-specific depositions of witnesses affiliated with defendants. (CMO 6 Part IV.C.).

**B. Expert Discovery.**

1. **Generally.** Expert discovery was divided into two main categories: generic experts (testifying regarding issues of general applicability, including general causation) and case-specific experts (testifying on behalf of a specific plaintiff). The Court ordered that only generic expert discovery would be conducted in the MDL, leaving case-specific expert discovery for completion upon remand. Under the process established by the MDL Court, experts were disclosed by certain members of the PSC and by defendants. Individual plaintiffs could then adopt those expert disclosures or disclose their own experts. If a plaintiff adopted the experts disclosed by certain members of the PSC with respect to any issues of widespread applicability, that plaintiff may nevertheless later designate different experts to testify at trial on the same issues provided: (1) the later-designated experts rely upon the same or substantially the same evidence, opinions and/or theories relied upon by the PSC expert(s) adopted by that plaintiff; and (2) such opinions, evidence and/or theories have not been previously determined by the MDL to be scientifically unreliable or otherwise inadmissible. Similarly, a defendant may later may later designate expert(s) different from the generic expert(s) disclosed by defendants to testify at trial on the same issues provided that the later-designated expert(s) rely upon the same or



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

substantially the same evidence, opinions and/or theories relied upon by defendants' previously disclosed generic expert(s). Expert-specific challenges, such as to the qualifications or specific causation opinions to the later-designated experts, are preserved. These issues are addressed more specifically in prior MDL Orders, including without limit MDL Order entered September 9, 2002.

Numerous general causation experts on behalf of both plaintiffs and defendants testified at their depositions. Discovery as to these experts was to be completed by March 10, 2003, with subsequently transferred cases subject to the provisions of CMO 9 which provides for the adoption of, or designation of experts on issues of general applicability. (Order re: Expert Discovery Schedule (Mar. 22, 2002) and CMO 9). Several general causation experts also testified at the *Daubert* hearing. A copy is attached hereto.

**2.** ***Daubert*.** On April 28 – May 1, 2003, the Court conducted hearings regarding the admissibility of plaintiffs' expert opinions as to general causation pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579 (1993). The Court entered its findings in its Order Granting in Part and Denying in Part MDL Defendants' Motion to Preclude Plaintiffs' Expert Opinions as to General Causation Pursuant to Fed. R. Evid. 702 and 703 and *Daubert*, on June 18, 2003.

**3.** **Case-Specific Expert Discovery.** Upon remand of the cases back to the transferor courts, case-specific expert discovery must be conducted. This will include scheduling of plaintiffs' and defendants' designations of case-specific experts, service of reports by the case-specific experts, depositions of case-specific experts and motion practice relating to those experts. Case-specific experts consist of experts rendering opinions about the medical condition of specific plaintiffs, life-care planners, economists and other case-specific experts rendering non-medical opinions. This discovery may



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

include independent medical examinations of plaintiffs. In contrast to the expert discovery in the MDL relating solely to general causation, case-specific experts will opine among other things on specific causation with regard to individual plaintiffs as well as damages.

## IV. PRODUCT IDENTIFICATION ORDERS

### A. Identification of Defendants and Products Ingested (CMO 13).

There were numerous cases pending in MDL 1407 that assert claims of individuals who allege to have ingested one or more PPA-containing products. Certain cases and/or plaintiffs listed numerous manufacturing defendants but failed to state with specificity which products they allegedly ingested and failed to identify the manufacturers of the products that allegedly caused their injuries. On May 2, 2003, the Court entered CMO 13 which required each plaintiff in a multi-defendant case to file and serve (within 30 days of entry of the order) an affirmation setting forth the PPA product he/she allegedly ingested and the manufacturer of that product. Defendants could then seek dismissals under CMO 13 for the claims of any plaintiffs who failed to identify them in the PFS, if any, and in their affirmations. (CMO 13).

Because of the potentially burdensome and unnecessary filings of numerous pages and documents, the parties submitted a proposed CMO 13A to the Court to streamline the dismissal process and minimize the amount of filings to obtain dismissals. CMO 13A provided the defendants whose products are not identified in a plaintiff's affirmation a mechanism for getting dismissed from the claims made by that plaintiff. (CMO 13A).

### B. Severance of Multiple-Plaintiff Cases (CMO 15).

There were numerous cases pending in MDL 1407 that joined the unrelated claims of numerous plaintiffs who allege to have taken a PPA-containing product. The plaintiffs in these multi-plaintiff cases failed to specify which products they allegedly ingested and failed to identify the manufacturers of the products that allegedly caused their injuries. On



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

May 29, 2003, the Court entered CMO 15, which required each plaintiff in a multi-plaintiff[1] case to file and serve an individual new complaint within 30 days of entry of the order. Under CMO 15, plaintiffs' individual complaints were to provide specific allegations regarding: (1) the products allegedly ingested; (2) the dates on which the products were ingested; (3) the injury alleged; and (4) the dates of injury. (CMO 15).

CMO 15A served as an adjunct to CMO 15 to give the parties a mechanism to resolve "non-compliant" served complaints and dismissal of original multi-plaintiff complaints. CMO 15A allowed defendants to move to dismiss with prejudice the original case as to those plaintiffs who failed to properly file an individual new complaint and as to those plaintiffs who filed an individual new complaint which did not identify a product manufactured by the moving defendant. (CMO 15A).

## V. PROCEDURES FOR REMAND

### A. Discovery to be Conducted Prior to Remand.

The Court entered CMO 17C which details the procedures and conditions before a case will be considered "ripe for remand." (CMO 17C). The Court only considers a case ripe for remand if the discovery permitted by CMOs Nos. 1, 6, 6A, 10, 13, 13A, and 15 ("and any additional orders" entered by the Court) has been completed. All other generic fact and expert discovery permitted by the Court is considered time barred. The remand process is initiated by defendants, on a monthly basis, filing a list of cases they believe have become ripe for remand during the preceding month. A plaintiff may also submit cases believed to be ripe. The Court then issues an Order to Show Cause why the cases listed on the Order should not be suggested for remand, setting dates for responses and

[1] "Multi-plaintiff cases" refer to cases that involve more than one plaintiff who alleges that they ingested a product containing PPA. This term does not refer to plaintiffs with derivative claims.



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

replies. Once the Magistrate Judge has ruled on the objections to remand, the Court issues a Suggestion of Remand Order which is forwarded to the Judicial Panel On Multi-District Litigation. The Suggestion of Remand Order triggers the mediation requirements set forth in CMO 18C. The Court will subsequently designate this Final MDL Pretrial Order, along with any supplements and/or amendments thereto, as the Final Pretrial Order in all cases for which the Panel issues an Order for Remand. (CMO 17C).

**B. Remaining Discovery After Remand.**

Case-specific expert discovery has been deferred pending remand. The transferor court has jurisdiction over setting the case-specific expert discovery schedule, any other case-specific discovery and any other pre-trial matters not addressed by this Court. (*See supra* Part III.C.3.).

**C. MDL Mediation Requirement.**

Within seven (7) days of a case being named on the Court's Suggestion of Remand Order (*See supra* Part V.A.), the parties are to notify the Court whether they intend to mediate the case per CMO 18C in a submission entitled "Election Regarding Alternative Dispute Resolution." If the parties elect to mediate, the mediation is to be scheduled within 30 days and completed within 90 days of the date of the Suggestion of Remand Order. If the parties choose not to mediate, they are required to conduct a meet and confer conference with Special Master Professor Francis McGovern within 21 days of the Court's Preliminary Order. (CMO 18C). This Court appointed Professor McGovern as a Special Master to assist the Court in coordinating case management matters between the MDL litigation and the matters pending in state courts. (Order Jan. 17, 2002). Nothing in CMO 18C prevents the parties from agreeing to mediate these, or any additional cases or groups of cases before or after remand.



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

The parties have agreed upon a number of mediators from the following areas: California, Texas, Louisiana, Alabama, Mississippi, North Carolina, South Carolina, Tennessee, Northeast, Midwest and Northwest. Nothing in CMO 18C prevents the parties from agreeing to a mediator not on that list or agreeing to mediate any additional cases or groups of cases. (CMO 18C).

## VI. SUMMARY OF ACTIVITIES UPON REMAND

The following activities remain to be completed upon remand of the cases from the Ephedra MDL listed on Attachment A and include but are not limited to:

- Case-specific expert designation and discovery;
- Independent medical examinations;
- Obtain updated medical records and, upon a showing of good cause and necessity, updating the plaintiff's deposition, and/or deposing additional or newly identified fact witnesses. In the event good cause and necessity is shown to update the plaintiff's deposition, shortened time limits may be imposed, depending on the circumstances;
- Any pending motions that the parties bring to the attention of the transferor court;
- Pretrial motion practice, including specific causation motions; and
- Final disposition.

## VII. DOCUMENTS TO BE SENT TO TRANSFEROR COURT

The clerk of the transferee court will forward to the transferor court (electronically where feasible) a copy of: (1) this Pretrial Order and attachments; (2) the docket sheet for the particular case being remanded and all documents identified on that docket sheet; and (3) the docket sheet for MDL 1407. The docket sheet for each particular case being remanded will be deemed to include and incorporate all matters on the MDL 1407 docket



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

sheet that refer or pertain to "all cases" or that otherwise refer or pertain to the particular case being remanded.

In the event a party believes that the docket sheet for a particular case being remanded is not correct or complete for any reason, a party to that case may, with notice to all other parties to the action, file with the transferor court a Designation Amending the Record. Upon receiving that Designation, the transferor court will make any needed changes to the docket. If the docket is revised to include additional documents, the parties should provide those documents to the transferor court.

## VIII. CONCLUSION

This MDL Pretrial Order does not expand or modify any prior order of the Court. The Plaintiffs' Steering Committee and defendants have agreed that, upon receipt from the Judicial Panel of a final remand order for a particular case, this Pretrial Order is to be provided to the appropriate transferor court without the necessity of a motion by any party to that case.

DATED at Seattle, Washington this 13th day of December, 2004.

Barbara J. Rothstein

HON. BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE



*Williams, Kastner & Gibbs PLLC*
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

# Exhibit K

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ Fenfluramine/Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | : : : | MDL Docket No. 1203 |

PRETRIAL ORDER NO. 292

This Order will govern Deposition Discovery Scheduling for non-expert witnesses in all cases that are part of this coordinated proceeding.

SCHEDULE FOR NON-EXPERT WITNESS
DEPOSITION DISCOVERY

Depositions for non-expert witnesses in cases having a Discovery Initiation Date ("DID") on or before August 1, 1998, may commence on October 1, 1998, and shall be completed no later than May 1, 1999. Depositions for non-expert witnesses in cases with DIDs after August 1, 1998, may commence ninety (90) days after the DID and shall be completed no later than two hundred and seventy (270) days after the DID. Plaintiffs shall be entitled to conduct twenty (20) simultaneous tracks of depositions. Defendants, collectively, shall also be entitled to conduct twenty (20) simultaneous tracks of depositions unless otherwise ordered. No depositions shall take place on weekends during the period November 25 through November 29, 1998 and December 23, 1998 through January 3, 1999.

PROCEDURE FOR NON-EXPERT WITNESS
DEPOSITION DISCOVERY

1. Fifteen (15) days before the beginning of the first monthly period (10/1/98) and forty-five (45) days before the beginning of each subsequent monthly period allotted for deposition discovery, the Plaintiffs' Management Committee and Defendants' Liaison Counsel shall exchange lists of the persons to be deposed during the next deposition period. Each list shall state the name and affiliation

03/11/05
03:59 PM ET
Baycol MDL 1431

of the witness, an estimate of the numbers of hours or days required for the deposition, and the proposed location of the deposition. Within fourteen (14) days of receipt of the lists, counsel shall meet to confirm a schedule for each deposition period. A copy of this schedule shall be provided to the Court and the Special Discovery Master within five (5) days. By noon each Friday, during the period for depositions, counsel shall confirm the deposition schedule for the following week. The parties shall use their best efforts to cooperate in the scheduling of depositions, and avoid multiple depositions of the same witness. Any dispute shall be brought promptly to the attention of the Court and the Special Discovery Master so as not to interfere with the progress of the non-expert witness deposition discovery schedule.

2. All depositions shall be noticed at least twenty (20) days before the scheduled date for the deposition by notice served on all members of the Plaintiffs' Management Committee and one attorney for each Defendant separately represented. The notice shall contain an estimate of the amount of time which will be required for the completion of the deposition and may include a request for production of documents not previously produced. In addition, if the notice requests that the deponent produce documents in connection with his deposition, such documents (or complete copies thereof) will be produced at the place designated at least ten (10) days prior to the date scheduled for the commencement of the deposition. Once these documents are provided, the parties are encouraged to negotiate stipulations as to the authenticity of such documents so as to expedite the deposition process.

3. The deposition guidelines, previously outlined in Pretrial Order No. 21, will apply to all depositions.

03/11/05
03:59 PM ET
Baycol MDL 1431

4. Pursuant to Fed. R. Civ. P. 29, the parties may, by written stipulation, agree to conduct non-expert case specific depositions at such times and places as may be convenient for the parties. A copy of all such written stipulations shall be provided to the Special Discovery Master. In the absence of a written stipulation, the notice and reporting requirements of paragraph 1 shall apply.

5. Beginning on November 1, 1998, and every two (2) weeks thereafter, Plaintiffs' Management Committee and Defendants' Liaison Counsel shall each submit a joint report advising the Court and the Special Discovery Master of the total number of depositions completed and summarizing the testimony provided.

6. On or before February 1, 1999, or within six (6) months of the DID, Plaintiffs' Management Committee and Defendants' Liaison Counsel shall submit to the Court and the Special Discovery Master a joint report which shall contain the following:

(a) The total number of remaining depositions;

(b) The name and affiliation of each remaining witness;

(c) The estimated number of hours or days required to complete the remaining depositions; and

(d) A schedule for the completion of these depositions within the time limits prescribed by this Order.

03/11/05
03:59 PM ET
Baycol MDL 1431

OTHER DISCOVERY

7. The parties are encouraged to consider other discovery devices permitted in the Federal Rules of Civil Procedure such as Requests for Admissions pursuant to Rule 36 to the extent these devices may eliminate or reduce the need for deposition discovery. The parties, however, may use such additional discovery devices only with prior authorization of the Special Discovery Master.

BY THE COURT:

BECHTLE, J.

Date: Sept. 24, 1998

03/11/05
03:59 PM ET
Baycol MDL 1431

September 10, 1998

[illegible]

$

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit L

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ Fenfluramine/Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | : : : | MDL Docket No. 1203 |

PRETRIAL ORDER NO. 417
(Expert Discovery Schedule)

This Order will govern Expert Discovery in all cases that are part of this coordinated proceeding.

Disclosure and Discovery

Generic Expert Witness

1. On or before March 1, 1999, or six (6) months following the Discovery Initiation Date ("DID") in an individual action, Plaintiffs shall identify each generic expert witness who is reasonably expected to testify for Plaintiffs on issues of general or widespread applicability in this litigation including but not limited to experts who would testify on general causation, i.e., the ability or tendency of the drugs to cause any of the injuries alleged (such witnesses shall be hereafter referred to as "Generic Experts"). In addition, Plaintiffs shall simultaneously provide to Defendants for such Generic Expert, the disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, except that such disclosures need not encompass testimony, if any, which such Generic Expert is expected to offer on issues relating only to liability or damages as to a particular Plaintiff.

2. All discovery depositions of Generic Experts identified pursuant to paragraph 1 above shall be taken no later than May 15, 1999, or eight and one-half months (8½) following the DID in an individual action, whichever is later.

03/11/05
03:59 PM ET
Baycol MDL 1431

3. On or before May 15, 1999, or eight and one-half (8½) months following the DID in an individual action, the Defendants shall identify each Generic Expert who is reasonably expected to testify in response to the expert testimony disclosed pursuant to paragraph 1 of this Order. In addition, Defendants shall simultaneously provide the expert witness disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, except that such disclosures need not encompass testimony, if any, which such Generic Expert is expected to offer on issues relating only to liability or damages as to a particular Plaintiff.

4. All discovery depositions of Generic Experts identified pursuant to paragraph 3 above shall be taken no later than August 1, 1999, or eleven (11) months following the DID in an individual action, whichever is later.

5. Within ten (10) days of receiving the notice of deposition of any person identified as a Generic Expert pursuant to paragraphs 1 and 3 above, the opposing party shall provide a written statement of its intentions with regard to conducting a separate deposition of the witness for purposes of preserving the witness' testimony for use at trial. All objections to any such preservation deposition, or with regard to the manner, method, and procedure proposed for conducting such preservation deposition, shall be brought to the attention of the Special Discovery Master and shall be fully and finally resolved before the discovery deposition of the expert witness involved. As a general rule, depositions for purposes of preserving an expert's testimony for use at trial shall take place not less than ten (10) days after the discovery deposition of the witness.

03/11/05
03:59 PM ET
Baycol MDL 1431

Case Specific Expert Witness Disclosure and Discovery

6. No later than the close of the non-expert witness deposition period allowed for each individual case pursuant to PTO 292, each Plaintiff shall identify each expert witness who is expected to testify for Plaintiff on any issue other than economic damages and, except to the extent such disclosures have already been made, shall make all expert witness disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

7. Within thirty (30) days after the close of the fact witness deposition period allowed for each individual case, each Defendant shall identify each expert witness who is expected to testify for Defendant on any issue other than economic damages and, except to the extent such disclosures have already been made, shall make all expert witness disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

8. After the time for making the disclosures required by paragraph 7, discovery depositions of expert witnesses identified in response to paragraphs 6 and 7 may begin and shall be completed within sixty (60) days after the date by which Defendants are to disclose expert witnesses pursuant to paragraph 7. The period of time for taking such depositions may be extended by the Special Discovery Master for good cause shown.

Supplemental Experts Reports

9. The Court recognizes that there may be limited circumstances where it will be both necessary and appropriate for a party to identify an expert to supplement prior opinions in response to expert opinions disclosed pursuant to this Order. The circumstances under which the parties will be permitted to offer such supplemental opinions and the procedures governing

03/11/05
03:59 PM ET
Baycol MDL 1431

disclosure and discovery of such supplemental opinions will be decided by the Special Discovery Master, subject to approval by the Court.

Case Specific Expert Witnesses on Economic Damages

10. Expert witnesses who are expected to testify only on economic damages issues in particular cases must be identified by a plaintiff and Fed. R. Civ. P. 26(a)(2) disclosures filed in the transferor court and served on each defendant within thirty (30) days of the filing in the transferor Court of the Order of Remand issued by the Judicial Panel for Multi-District Litigation. Within thirty (30) days thereafter, or at such time as the transferor court directs, each defendant shall identify its experts on economic damages, and file and serve its Rule 26(a)(2) disclosures.

Medical Examinations of Plaintiffs

11. At any time after the DID in an individual action, Defendants may schedule medical examinations of Plaintiff(s), pursuant to and in accordance with Federal Rule of Civil Procedure 35, except that a Plaintiff shall not be required to travel an unreasonable distance for medical examinations. Disputes concerning whether Plaintiff is being asked to travel an unreasonable distance for a medical examination shall be presented to the Special Discovery Master. In the event that a medical examination is to take place requiring Plaintiff to travel more than fifty (50) miles, and if the Special Discovery Master overrules any objection to such travel, the party requesting the examination shall tender to Plaintiff's counsel five (5) calendar days in

03/11/05
03:59 PM ET
Baycol MDL 1431

advance of such examination a sum equal to the reasonable round-trip travel and lodging expenses to be incurred by Plaintiff, and one attorney for Plaintiff, to attend the examination.

BY THE COURT:

BECHTLE, J.

1/6/99

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit M

03/11/05
03:59 PM ET
Baycol MDL 1431



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---------------------------------------------------------

IN RE: BAYCOL PRODUCTS LITIGATION ) MDL No. 1431 MJD
) 9:30 a.m. o'clock
) June 20, 2003
) Minneapolis, MN

---------------------------------------------------------

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS: CHARLES ZIMMERMAN, ESQ.
RICHARD LOCKRIDGE, ESQ.
RICHARD ARSENAULT, ESQ.
ELIZABETH CABRASER, ESQ.
RONALD MESHBESHER, ESQ.
RONALD GOLDSER, ESQ.
RANDY HOPPER, ESQ.
VICTORIA MANIATIS, ESQ.

ON BEHALF OF THE DEFENDANTS: PHILIP BECK, ESQ.
ADAM HOEFLICH, ESQ.
PETER SIPKINS, ESQ.
SUSAN WEBER, ESQ.
FRED MAGAZINER, ESQ.
TRACY VAN STEENBURGH, ESQ.

COURT REPORTER:

BRENDA E. ANDERSON, RPR
300 South 4th Street
Suite 1005
Minneapolis, MN 55415
(612) 664-5104
E-mail - brenda_anderson@mnd.uscourts.gov
09:40:26

03/11/05
03:59 PM ET
Baycol MDL 14



time poking holes in it -- finding ways of which to go 11:04:34
around it, finding experts to counter attack. 11:04:40
We are very sensitive to that. The reason we are 11:04:43
sensitive to that is it's an expensive process. This is 11:04:46
not just you go out and you get an expert to say this is a 11:04:49
bad drug because they didn't do the right thing with the 11:04:52
FDA because. These are very detailed reports based upon 11:04:56
the complete review of a large amount of evidence in the 11:05:02
form of documents and depositions for which experts opine 11:05:06
the questions of appropriateness or lack of appropriateness 11:05:13
in the conduct of the defendants. So, that's the what they 11:05:20
are. 11:05:25
Why? Why we have them is, like I said, to allow 11:05:25
people in the -- who have cases to have something in their 11:05:33
arsenal that they don't have to replicate and pay for. 11:05:36
Also, you have them because it tends to narrow the focus of 11:05:43
the liability to the issues that are joined. Problem here, 11:05:49
which is another reason we're asking for relief, is when we 11:05:54
first started talking expert reports and we set the 11:06:00
deadline of July, we were talking about Rhabdo as the main 11:06:03
question of liability, or at least one of the main 11:06:08
questions of liability and medicine. 11:06:12
THE COURT: Mr. Zimmerman, let me stop you at 11:06:17
this point did tell you that the court is doing an informal 11:06:20
survey when cases go back. This is a major problem that 11:06:27

03/11/05
03:59 PM ET
Baycol MDL 1431



the courts have to deal with when trying cases. So, I 11:06:34
understand that. So, I need your response and your help 11:06:38
and Mr. Beck's help when these cases go back. How are we 11:06:43
going to make sure that the Judges end up with the cases 11:06:49
that can be tried so they are not saying why did Davis hold 11:06:54
on to this case for two years or three years and not do 11:07:00
anything worthwhile for me to try this case when it's 11:07:05
remanded back. I'm on board with that. 11:07:08

MR. ZIMMERMAN: That's my point, Your Honor. 11:07:14

THE COURT: Right. 11:07:15

MR. ZIMMERMAN: I don't want to do expert reports 11:07:17
now, disclose them now and have them be of no benefit when 11:07:19
the case goes back. That makes no sense. It costs a lot 11:07:23
of energy and time and effort for a report in July when 11:07:28
it's going to be a long time or could potentially be a long 11:07:32
time before cases begin to be remanded in mass. 11:07:39

My point I was making about Rhabdo was the issues 11:07:43
could change because the Rhabdo issue may be resolved. 11:07:48
There may not be many Rhabdo or any Rhabdo because we are 11:07:52
seeing that a thousand of them have been resolved in the 11:07:57
past several months since the program of resolving cases 11:08:00
has begun. And we may find that this issue is not for 11:08:05
remanded cases has to do with muscle damage and not 11:08:08
confirmed Rhabdo. 11:08:12

So, prematurely, providing expert opinion of the 11:08:17

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit N

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD/JGL)

This Document Relates to:
ALL ACTIONS

**AGREED ORDER ON THE DISCOVERY PLAN PURSUANT TO PTO 89 FOR RANDOMLY SELECTED CASES**

The Court, with the assistance of the parties, has selected the Program Cases and Eligible Cases as described in PTO 89. The parties have met and conferred together, have jointly met and conferred with Special Master Haydock, and have provided this Court with procedural pretrial information. This order applies to all the randomly selected Program and Eligible cases.

IT IS HEREBY ORDERED:

**A. Depositions of Plaintiffs and Witnesses**

1. Between November 17, 2003 and April 30, 2004, defendants may depose each Eligible Case plaintiff who alleges that he/she used Baycol and each witness identified by a plaintiff. If counsel for a plaintiff elects to memorialize the testimony of a plaintiff or witness after completion of defendants' questioning, defendants may thereafter cross-examine the deponent. Within 14 days of the entry of this Order, plaintiffs' counsel shall produce to defendants all medical records in their possession relating to any Eligible Case plaintiff.

2. Prior to the deposition of a plaintiff, defendants will provide to counsel for plaintiff a copy of any Medwatch report in defendants' possession, custody or control that

NOV 0 4 2003
FILED
RICHARD D SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

specifically mentions plaintiff by name. Defendants will review their internal adverse event database to determine if there are other means to identify plaintiffs who are subject to Medwatch reports. If the PSC identifies any other means of identifying plaintiffs subject to Medwatch reports, they will so advise defendants.

3. Each plaintiff is to identify and disclose all witnesses to defendants by January 20, 2004. Each witness identified by plaintiff may include spouses of alleged Baycol users, whether or not the spouse is a plaintiff, and family members or other third-party non-physicians who may have factual information relevant to the plaintiff's case. In any case in which the alleged Baycol user is incapable of testifying about the circumstances involved in his/her use of Baycol or about the injuries that allegedly resulted therefrom, plaintiff's counsel will identify a spouse, family member, or other person who is the most knowledgeable about the circumstances of the use of Baycol by the injured party.

**B. Depositions of Physicians.**

1. Between November 17, 2003 and May 31, 2004, defendants may depose any physician who (a) prescribed Baycol to a plaintiff (or, in a death case, to plaintiff's decedent) or (b) who treated a plaintiff or decedent. At this stage of the proceedings, Defendant may name a maximum of four such physicians for deposition. The plaintiffs shall begin the deposition followed by the defendants, followed by the plaintiffs if they choose, and concluding with the defendants if they choose. Any party has the right to memorialize any treating physician testimony. If defendants elect not to depose such a physician, plaintiffs may do so.

2. Prior to the deposition of any physician who prescribed Baycol to a plaintiff or decedent, Bayer and GSK will each provide to counsel for plaintiff a verified statement

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

showing (a) the name(s) of all sales representatives employed by it who detailed Baycol to the physician during the period in which he/she prescribed Baycol to said plaintiff or decedent, (b) the dates of all detailing, and (c) the number and types of samples, if any and where such information is available, that were provided by the sales representatives to the prescribing physician during such detailing. Defendants shall provide to plaintiff all documents in the possession of the detail person concerning the detailing of Baycol to such physician for all Minnesota Plaintiff resident cases as soon as they obtain the information and no later than one week before the deposition of that physician. Defendants shall produce any and all agreements or other documents whereby Defendants indemnify, hold harmless or otherwise ensure that such physician, individually or through his medical practice or malpractice insurance company, is free from any liability associated with this litigation

**C. Deposition Protocols**

1. All depositions will be governed by the Federal Rules of Civil Procedure and all existing Pre-trial Orders issued in this MDL.

2. The parties will meet and confer in good faith to schedule the depositions, and will make reasonable efforts to schedule depositions according to the completeness of the production of plaintiff medical records and by geographic region.

3. To the extent that the parties are unable to agree on the schedule for these depositions, Magistrate Judged Lebedoff will establish the dates and cities where each deposition shall occur. To the extent other disputes arise regarding the depositions or discovery of these cases being prepared for trial, Magistrate Judge Lebedoff will resolve those disputes after the parties have unsuccessfully conferred. Except for good cause

E-SERVED 03/11/05 03:59 PM ET Baycol MDL 1431

shown, if a plaintiff fails to appear for his/her scheduled deposition, his/her case will be dismissed with prejudice.

**D. Further Procedures.**

1. For good cause, a plaintiff may provide defendants with the identity of witnesses after January 20 and before February 28, 2004.

2. Discovery by way of interrogatories and requests for production of documents may proceed to completion during the above time periods.

3. Before March 29, 2003, the PSC may determine which, if any, Eligible Cases shall then be voluntarily dismissed, which cases shall be dismissed with prejudice.

4. This Court will subsequently issue a pretrial order regarding generic and case specific expert discovery, the completion of discovery, the submission of applicable motions, a settlement and mediation program, and other matters.

DATED: 11-03 03

MICHAEL J. DAVIS
United States District Court

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit O

03/11/05
03:59 PM ET
Baycol MDL 14

**Weber, Susan A.**

**From:** Charles S. Zimmerman [csz@zimmreed.com]
**Sent:** Saturday, March 05, 2005 8:24 PM
**To:** rhaydock@arb-forum.com; fred.magaziner@dechert.com; saweber@Sidley.com
**Cc:** lewr@bassford.com
**Subject:** RE: Baycol

I frankly feel that the end of April is to long to wait. We owe responsibilities to clients and co counsel to move forward. Our last hearing was not a status and it was early February. I think the last status was December or maybe November. [ I do not have access to the electronic files but that is my best recollection]
I would hope the second week of April would be agreeable.

BZ

Charles S Zimmerman
Zimmerman Reed PLLP
csz@zimmreed.com
www.zimmreed.com
800.755.0098

>>> "Haydock, Roger" <rhaydock@arb-forum.com> 3/5/2005 4:22:31 PM >>>
Susan: You better let me know what other April dates are a major conflict and with whom in case Judge Davis cannot make the 25th.
Thanks.

---

From: Weber, Susan A. [mailto:saweber@Sidley.com]
Sent: Sat 3/5/2005 2:22 PM
To: Haydock, Roger; Charles S. Zimmerman; fred.magaziner@dechert.com
Cc: lewr@bassford.com
Subject: RE: Baycol

The 25th works. We have conflicts on the other dates.

-----Original Message-----
From: Haydock, Roger [mailto:rhaydock@arb-forum.com]
Sent: Saturday, March 05, 2005 12:15 PM
To: Charles S. Zimmerman; saweber@Sidley.com;
fred.magaziner@dechert.com
Cc: lewr@bassford.com
Subject: RE: Baycol

Susan: So far, the only reported dates with no major conflicts are April 11, 12, and 25. Please check wiith your folks to see if those dates work. Thanks. Roger

---

From: Haydock, Roger
Sent: Fri 3/4/2005 2:41 PM
To: Charles S. Zimmerman; saweber@Sidley.com;
fred.magaziner@dechert.com
Cc: lewr@bassford.com
Subject: Baycol

Good day.

03/11/05
03:59 PM ET
Baycol MDL 1431

Judge Davis will be scheduling the next status conference in April. Please email me the April dates with which you and your colleagues have major conflicts. I will forward them to the Judge. Thanks.

Enjoy your weekend. Roger

Sidley Austin Brown & Wood LLP mail server made the following annotations on 03/05/2005, 02:26:38 PM
------------------------------------------------------------------------

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

NOTICE: Information in this e-mail or its attachment(s) may be CONFIDENTIAL, legally privileged, or exempt from disclosure under applicable law and is intended ONLY for particular clients, parties, or entities involved in litigation or dealings with the Zimmerman Reed, PLLP law firm. If the reader of this message is NOT the intended recipient, you have received this message in error; be aware that any disclosure, dissemination, copying, distribution, or use of the contents of this e-mail or its attachment(s) is prohibited by law. If you have received this e-mail in error, please notify us by telephone (800-755-0098) and by reply e-mail (info@zimmreed.com) immediately and delete ALL copies of the message and its attachment(s).

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

# Exhibit P

03/11/05
03:59 PM ET
Baycol MDL 1431



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In Re: Baycol Products Litigation ) MDL 1431
) July 15, 2003
) Minneapolis, MN

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(STATUS CONFERENCE)

APPEARANCES:

ON BEHALF OF THE PLAINTIFF: CHARLES ZIMMERMAN, ESQ.
RICHARD LOCKRIDGE, ESQ.
RONALD MESHBESHER, ESQ.
WENDY FLEISHMAN, ESQ.
TURNER BRANCH, ESQ.
VICTORIA MANIATIS, ESQ.
RONALD GOLDSER, ESQ.
RICHARD ARSENAULT, ESQ.
RANDY HOPPER, ESQ.

ON BEHALF OF THE DEFENDANT: PHILIP BECK, ESQ.
ADAM HOEFLICH, ESQ.
SUSAN WEBER, ESQ.
GENE SCHAERR, ESQ.
FRED MAGAZINER, ESQ.
ELIZABETH WRIGHT, ESQ.
SCOTT SMITH, ESQ.

ON BEHALF OF THE NEW YORK TIMES: MARK ANFINSON, ESQ.

COURT REPORTER:

BRENDA E. ANDERSON, RPR

Suite 1005
Minneapolis, MN 55415
(612) 664-5104
E-mail - brenda_anderson@mnd.uscourts.gov

03/11/05
03:59 PM ET
Baycol MDL 143



So, that's the fundamental difference in our view. We genuinely believe that the end gain they keep talking about is a show trial where they roll the dice and they hit a number they hope we'll give in and have a global settlement of these non-meritorious claims, and we're not going to do that. We want to investigate those claims and prove they are non-meritorious. 14:17:22 14:17:27 14:17:32 14:17:37 14:17:45 14:17:49 14:17:51

THE COURT: Thank you, Mr. Beck. Before we have the individual arguments on these motions, let me give you some general thoughts of the Court. 14:17:57 14:17:57 14:18:02

I think both sides are talking the same language, even though you don't think that you are. We have for the longest period of time talked about resolving some of the issues that would result in an end game, whether or not the end game was a global settlement or cases going back to the jurisdictions where they came from. In trying to do that, I think this MDL has moved as quickly as any other MDL that has been in existence dealing with the magnitude of cases that we have had and the issues that we have had. I commend both sides for that. 14:18:03 14:18:07 14:18:12 14:18:18 14:18:23 14:18:31 14:18:39 14:18:52 14:18:54 14:18:59

The Court quietly, I think, and unwaveringly, has told both sides that we are going to resolve many of the issues, whether or not they go back to the district they came from, resolve those issues for those Judges so they can try these cases without having them do the work that I 14:19:04 14:19:11 14:19:16 14:19:27 14:19:33

03/11/05 03:59 PM ET Baycol MDL 1431



was supposed to do. Or if there is a conclusion of all the 14:19:38 cases, the Court can handle that. 14:19:44

One of the ways that the PSC has told the Court 14:19:50 from the beginning, and I can remember when we had our 14:19:55 first meeting, and this is when they talked about wanting 14:20:00 trials. The Court has tried to accommodate both sides on 14:20:05 that issue and has given them wide range of allowing them 14:20:12 to select cases for the Court to try. 14:20:18

The Court has not gone through the list and 14:20:27 pulled out a case and said we're going to try these five 14:20:34 cases. The Court has relied on both sides to submit 14:20:40 that -- what they feel are important cases to resolve these 14:20:42 issues. That you both stood up and did your dance on. 14:20:50

Neither side, at this point, wants those issues 14:21:00 resolved. Plaintiffs submitted to the Court the Rhabdo 14:21:08 cases. It was clear that Rhabdo cases were going to be 14:21:14 settled because Bayer has gone the extra mile in settling 14:21:22 Rhabdo cases. The fairness of those settlements cannot be 14:21:36 questioned by anyone. 14:21:42

Mr. Beck has been true to his word since June of 14:21:50 last year when I was surprised when he said that he was 14:21:54 going to settle Rhabdo cases, and he has kept that word. 14:21:58 And, Mr. Zimmerman, having seen that was true and that the 14:22:07 settlements were fair, has been an advocate for the 14:22:13 settlement of Rhabdo cases. But we have always known that 14:22:19