# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-2097

RECEIVED
BY MAIL

SEP 1 2 2005

CLERK US DIST COURT
MINNEAPOLIS MN

Plaintiffs' Baycol Steering
Committee,                                    *
                                              *
                                              *
            Plaintiff,                        *
                                              *
Kenneth B. Moll; Kenneth B.                   *
Moll & Associates, Ltd.,                      *
                                            *
            Appellants,                       *
                                              *
        v.                                    *
                                              *
Bayer Corporation; Bayer AG;                  *
GlaxoSmithKline,                              *
                                              *
            Defendants - Appellees.           *


No. 04-2187

Appeals from the United States
District Court for the
District of Minnesota.

Plaintiffs' Baycol Steering
Committee,                                    *
                                              *
                                              *
            Plaintiff,                        *
                                              *
K. Amy Lemon,                                 *
                                              *
            Appellant,                        *
                                              *

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael Gans

SEP 1 4 2005

U.S. DISTRICT COURT MPLS

v.                                    *
                                      *
Bayer Corporation; Bayer AG;          *
GlaxoSmithKline,                      *
                                      *
          Defendants - Appellees.     *

———————————

Submitted: February 17, 2005
Filed:   August 19, 2005

———————————

Before BYE, HEANEY, and MELLOY, Circuit Judges.

———————————

BYE, Circuit Judge.

　　Kenneth B. Moll, and his firm Kenneth B. Moll & Associates Ltd. (KBM), and K. Amy Lemon, appeal the district court's order imposing sanctions against them for their conduct in the Baycol Multi-District Litigation (MDL).  Pursuant to its inherent power, the district court removed Moll and KBM from the plaintiffs' steering committee (PSC) and imposed a $50,000 sanction against Moll after finding Moll committed perjury, violated two pretrial orders, and violated multiple provisions of the Minnesota Rules of Professional Conduct.  Additionally, the district court sua sponte barred Lemon from the practice of law in the United States District Court for the District of Minnesota after finding she committed perjury and violated provisions of the Minnesota Rules of Professional Conduct.  We affirm the removal of Moll and KBM from the PSC, but vacate the $50,000 sanction imposed against Moll and remand for further proceedings.  We reverse the district court's imposition of sanctions against Lemon.

-2-

## I. Background

The Baycol product liability litigation concerns a medication known as Baycol, which was used to lower cholesterol before it was withdrawn from the market in August 2001. On December 18, 2001, the judicial panel on multidistrict litigation established the Baycol MDL, in which Bayer Corporation, Bayer A.G., and GlaxoSmithKline are defendants. All federal district court Baycol cases were transferred to the District of Minnesota. The PSC is a select group of lawyers charged with coordinating and directing pretrial proceedings on behalf of plaintiffs in the Baycol MDL. The district court appointed Moll and KBM to serve as one of the eighteen members of the PSC and one of the seven attorneys on the PSC's executive committee.

Pre-Trial Order (PTO) 18 directs all filings in the Baycol MDL "shall be filed and served through Verilaw Technologies," a provider of electronic document storage and management services. The order states documents filed through Verilaw "shall not be filed by traditional paper means" and "will not contain visual representations of the filing attorneys' signatures." Instead, PTO 18 provides:

> On word processing files that they submit, attorneys shall, in place of a signature and where the signature would normally appear, place "Original Signature on File with Filing Attorney." A Filing Attorney shall make an original signature available to any registered user upon request. The filer of any document requiring multiple signatures . . . must list thereon all the names of other signatories by means of an "/s/_____" block for each. By submitting such a document, the filer certifies that each of the other signatories has expressly agreed to the form and substance of the document and the filer has their actual authority to submit the document electronically. The filer must maintain any records evidencing this concurrence for subsequent production to the Court if so ordered or for inspection upon request by a party.

-3-

PTO 24 provides confidential documents produced in the Baycol MDL "shall not be disclosed to anyone other than" the court, the parties to the litigation, the parties' counsel, and certain outside experts and consultants. PTO 24 further states "[a]ll parties and their respective counsel . . . shall take all steps reasonably necessary to prevent the disclosure of confidential discovery material other than in accordance with the terms of this Order." The order also states unauthorized disclosure "may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate."

In August 2002, at the PSC's request, Moll, who speaks Italian, scheduled a meeting with Raffaelle Guariniello, an Italian prosecutor, to discuss the criminal investigation of Bayer A.G. managers in Europe and to review related documents. In October 2002, Moll met with Guariniello in Torino, Italy. According to Moll, at this meeting he provided Guariniello with non-privileged documents and he promised to file a motion to intervene, which would allow Guariniello access to privileged documents.

The October 2002 meeting included a teleconference with members of the PSC who were in the United States. During the teleconference, the PSC members in the United States were told to "gather as many documents as [they could] or any documents [they] felt were not privileged" for Guariniello to review. Following the teleconference, Ron Goldser sent an email to Guariniello's account and attached two documents: a PowerPoint presentation entitled "Baycol Hot Documents Seminar," and a document entitled "Baycol-MDL 1431 Liability Summary." These documents were created by the PSC and contained portions of Bayer's confidential documents. Moll was copied in the email. In the email, Goldser instructed Guariniello to let Moll review the attached documents for confidentiality before viewing them. Guariniello did not read Goldser's message before opening the attachments, and Moll did not read the email until after Guariniello viewed the documents. Moll viewed the PowerPoint

-4-

attachment with Guariniello. Every page of both documents contained the following: "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER."

On October 21, 2002, after returning from Italy, Moll received an email from Guariniello's assistant, Patrizia Solia, asking Moll if he had any news regarding Guariniello's access to privileged documents. In December 2002, Moll and KBM associate Hal Kleinman exchanged emails with Solia regarding information KBM needed to prepare a motion to intervene. On January 20, 2003, Kleinman sent an email to Solia and Guariniello in which he stated he was working on a final draft of the motion to intervene and requested additional information. Solia responded to Kleinman the same day and thanked Kleinman for "helping us to receive Baycol documents." In January and February 2003, Kleinman and Solia exchanged more emails regarding the motion. In a February 27, 2003, email, Solia asked Kleinman: "How is going your Motion for Permission to provide us copies of Bayer documentation?" After March 5, 2003, however, there is no evidence of communication between Guariniello's office and KBM until June 2003.

Lemon graduated from law school in 2002 and was admitted to the Illinois and Indiana state bars. After working for a medical malpractice firm for less than a year, she joined KBM in Chicago. Lemon started with KBM the last week of May 2003. The first assignment Lemon received from Moll was to prepare the memorandum of law in support of the motion to intervene. Lemon was also asked to prepare the motion for filing including obtaining a declaration from Guariniello in support of the motion. The declarations of Guariniello and Moll had already been prepared by Kleinman who no longer worked at KBM. Lemon was instructed to get the motion and supporting papers to the PSC "law committee" by June 6.

On June 5, at Moll's request, Lemon emailed Guariniello's declaration to Solia. In her email, Lemon asked Guariniello to sign the declaration, fax it to KBM, and send the original by mail. On June 10, Lemon had not heard back from Guariniello's

office so she tried calling Guariniello's office directly, but was unable to speak with anyone. The same day, Lemon emailed a draft of the motion papers to various members of the PSC. She also faxed a copy of the motion papers to Moll, who was out of town. Lemon only received one comment from the PSC "law committee" in response to her draft. On June 11, Mike Nast emailed Lemon and told her the motion looked fine and directed Lemon to work with another member of the PSC, Robert Shelquist of Lockridge Grindal Nauen PLLP (LGN), to coordinate the filing of the motion. As a courtesy, LGN filed on Verilaw documents prepared by other firms in the Baycol MDL.

On the morning of June 12, Lemon, Moll, and Sonia Kinra, another associate of KBM, met to discuss the motion. The discussion focused on the absence of Guariniello's signature. Moll attempted to call Guariniello's office but was unable to speak to anyone. Then Moll directed Lemon to call Shelquist and tell him they were still missing Guariniello's signature. Apparently, June 12 was the filing deadline for consideration of matters at the district court's July 2003 status conference.

The district court found at this point KBM's and LGN's versions of the facts diverge. In her deposition, Lemon testified at Moll's urging she called Shelquist at LGN the morning of June 12 to tell him the Guariniello declaration was not signed and to seek his advice. According to Lemon, sometime after meeting with Moll and before emailing the motion to Shelquist's office at 3:56 p.m., she spoke with Shelquist over the telephone about filing the motion. Lemon testified during the conversation she specifically told Shelquist KBM did not have the signature from Guariniello and she did not know when they would have it. Lemon testified Shelquist told her to insert the "signature on file" notation and send the file anyway. Lemon stated she then inserted the "/s/ signature on file" notations and at 3:56 p.m. emailed the motion papers to Shelquist's assistant for filing. When asked how long the conversation with Shelquist lasted, Lemon stated: "A few minutes. I couldn't tell you. Maybe 10. I don't know."

-6-

In Shelquist's deposition, he disputed Lemon's account of the conversation. He testified he did not speak with Lemon until after 4:00 p.m. on June 12, after Lemon emailed him the final draft of the motion. Shelquist testified that based on this conversation with Lemon he believed KBM had Guariniello's signed declaration in hand. Shelquist insisted he did not order Lemon to file the unsigned declaration. He testified he did not learn Guariniello's declaration was unsigned until July.

Additionally, in his deposition, Shelquist testified it was his "preference to have the signature on file," but, "in a couple of instances, when we were pushing up against a 5:00 p.m. deadline, we emailed the affidavit to Verilaw and then faxed the signature page when it came in." When asked to explain his word choice of "preference," Shelquist stated:

> With regard to MDL filings on both sides, there had been instances where documents have been filed, affidavits, that say "signature on file." I believe there has [sic] been discovery responses served by Defendants that have "signature on file." I don't know if, technically, that's what is supposed to have been done, but nobody has complained or tried to kick out those filings on either side until this motion.

The motion was filed on Verilaw by LGN at 4:15 p.m. on June 12. Moll's declaration included a notation of "/s/ Signature on File." Moll's declaration stated he was "counsel for the purpose" of the motion to intervene. Guariniello's declaration included a notation that the declaration was executed on June 12, 2003, and a notation of "/s/ Signature on File." Neither Moll nor Guariniello had signed their declarations.

Half an hour after the motion was filed, Verilaw sent an email to Moll confirming the motion had been filed. Moll forwarded the email to Lemon with the message: "that was fast." According to Lemon, Moll directed Lemon to send another

email to Guariniello requesting his signature.   Lemon drafted an email to Guariniello's office requesting a signature at approximately 6:19 p.m. on June 12.

Moll testified that he did not learn the motion to intervene was filed until he received the notification from Verilaw, that he was surprised Shelquist had given Lemon permission to file the motion without proper signatures, and that he told Lemon it was wrong to file the motion without having a signed signature page.

However, after learning the motion had been filed, rather than attempting to have the motion withdrawn, Moll and Lemon continued to request Guariniello's signature. On June 16, Solia sent Lemon an email stating Guariniello would not sign his declaration because he had decided to pursue the privileged documents through a rogatory rather than a motion to intervene. On June 20, Lemon sent Guariniello an email stating: "Please know that we have already prepared the motion on your behalf . . . and feel the court will rule in our favor." Lemon discussed the contents of the email with Moll before it was sent.  On the same day, Moll also sent Guariniello an email stating:  "You may sign your affidavit . . . so that we may attach it to the motion."  In the email, Moll informed Guariniello he could pursue the documents both by using a rogatory and by filing the motion to intervene. Guariniello responded that he did not feel comfortable pursuing both options.

In a June 23 letter to Moll and Shelquist's partner, Richard Lockridge, who was also co-lead counsel in the MDL, Susan Weber, counsel for Bayer, requested a signed copy of Guariniello's declaration. In response, Moll called Weber and admitted the PSC did not have a signed copy of Guariniello's declaration, stated Guariniello had decided to pursue discovery through other channels, and stated the motion to intervene would be withdrawn. On June 23, Moll instructed Lemon to email Shelquist to notify him the motion should be withdrawn and to obtain Shelquist's verification that Shelquist had instructed Lemon to file Guariniello's declaration with an electronic signature knowing there was no original signature on file. Lemon sent

Shelquist an email stating the motion should be withdrawn because Guariniello had decided to pursue the privileged documents through a rogatory. Lemon did not ask Shelquist for verification he had instructed Lemon to file the motion without an original signature on file. In her deposition, Lemon stated she did not want to seem rude or difficult in her email to Shelquist. The PSC formally withdrew the motion on June 26.

Bayer conducted discovery into the filing and withdrawal of the motion to intervene. Moll was deposed on September 4, 2003, and was represented by Warren Lupel. Lemon was deposed on September 5. As an employee of KBM, Lemon was also represented at the deposition by Lupel. Lemon did not retain Lupel or pay his fees. On September 6, the day after she was deposed, Lemon quit her job at KBM. Shelquist was deposed on September 29.

Because of the conflict between Lemon's testimony and Shelquist's testimony, Bayer obtained copies of telephone records from both LGN and KBM for June 12, 2003. The telephone records document the following calls were placed between KBM and LGN on June 12:

(1) 1.0 minute call from KBM to LGN at 10:37 a.m.
(2) 2.6 minute call from Shelquist to KBM at 10:48 a.m.
(3) 4.0 minute call from KBM to LGN at 10:57 a.m.
(4) 0.9 minute call from Shelquist's assistant to KBM at 2:30 p.m.
(5) 4.0 minute call from Shelquist's assistant to KBM at 3:10 p.m.
(6) 2.7 minute call from Shelquist's assistant to KBM at 3:18 p.m.
(7) 2.0 minute call from KBM to LGN at 4:50 p.m.
(8) 3.6 minute call from Shelquist to KBM at 4:56 p.m.

On January 14, 2004, Bayer filed a motion for sanctions against Moll and KBM. Bayer did not seek sanctions against Lemon, and Lemon was not served with notice of the motion. The district court sua sponte ordered briefing from LGN.

Shelquist, Lockridge, and Shelquist's assistant Barbara Gilles provided supplemental affidavits explaining the phone calls reflected in the June 12 telephone records. Oral argument on the motion for sanctions was held on February 24, 2004, and the district court heard argument from counsel for LGN, Bayer, and KBM. Lemon did not receive notice of the hearing, was not present at the hearing, and was not represented at the hearing.

On April 12, 2004, the district court issued its order on the motion for sanctions. The court found Moll committed perjury, violated two pretrial orders, and violated multiple provisions of the Minnesota Rules of Professional Conduct. Pursuant to its inherent power, the district court removed Moll and KBM from the PSC and imposed a $50,000 monetary sanction against Moll.

Although Bayer did not move for sanctions against Lemon, the district court sua sponte imposed sanctions against Lemon. The district court adopted Shelquist's and Gilles's version of the facts, as presented in their affidavits and argued by LGN's attorney at oral argument, and concluded Lemon's deposition testimony was in conflict with the telephone records. The court found Lemon committed perjury when she testified in her deposition that Shelquist instructed her to file the motion to intervene without a signature on file. The court also found Lemon, together with Moll, covered up the fact the motion to intervene was filed without the possession of a signed original of the Guariniello declaration. The court ordered that Lemon be prohibited from the practice of law in the District of Minnesota. Lemon learned of the sanction imposed against her after Lupel mailed a copy of the order to her.

Finally, the district court directed the clerk of the court to send copies of the order to the Illinois Attorney Registration and Disciplinary Commission and the United States Attorney for the District of Minnesota.

## II. Inherent Power

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Id. (quoting Link v. Wabash R., 370 U.S. 626, 630-31 (1962)). The inherent power of the federal courts includes the power to "control admission to its bar and to discipline attorneys who appear before it," but the Supreme Court cautioned "this power 'ought to be exercised with great caution.'" Id. (quoting Ex parte Burr, 22 U.S. (9 Wheat.) 529, 531 (1824)). Because of the potency of inherent powers, "[a] court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction." Harlan v. Lewis, 982 F.2d 1255, 1262 (8th Cir. 1993) (citing Chambers, 501 U.S. at 44-45). Furthermore, in invoking its inherent power, a court "must comply with the mandates of due process." Chambers, 501 U.S. at 50. Thus, before a district court may impose sanctions, the individual must receive notice that sanctions against her are being considered and an opportunity to be heard. In re Clark, 223 F.3d 859, 864 (8th Cir. 2000) (citing Chambers, 501 U.S. at 56-57; Jensen v. Fed. Land Bank of Omaha, 882 F.2d 340, 341 (8th Cir. 1989)).

We review a district court's imposition of sanctions against an attorney under its inherent power for an abuse of discretion. United States v. Gonzalez-Lopez, 403 F.3d 558, 564 (8th Cir. 2005) (citing Chambers, 501 U.S. at 55; Bass v. General Motors Corp., 150 F.3d 842, 851 (8th Cir. 1998)). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496

U.S. 384, 405 (1990); accord Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003).

### III.  Moll & KBM

Moll contends the district court abused its discretion in imposing sanctions against him arguing the district court erred in finding Moll's conduct in connection with the filing of the motion to intervene constituted perjury, violated PTO 18 and the rules of professional conduct, and demonstrated bad faith.  Moll also argues the district court erred in finding his actions in connection with Guariniello viewing confidential documents violated PTO 24 and Rule 3.4(c) and demonstrated bad faith. Even if the district court's findings are upheld, Moll argues the sanctions imposed by the district court are excessive.

In addressing Moll's arguments, we first consider whether the district court clearly erred in finding Moll committed perjury, violated pretrial orders and the rules of professional conduct, and acted in bad faith.  We then examine whether it was an abuse of discretion for the district court to invoke its inherent powers to impose sanctions against Moll and whether the sanctions are appropriate.

### A.  Motion to Intervene

In connection with the filing of the motion to intervene, the district court found Moll committed perjury, violated PTO 18, violated various provisions of the rules of professional conduct, and acted in bad faith.  We hold the district court did not clearly err in finding Moll violated PTO 18 and Rules 3.4(c), 8.4(c), and 8.4(d), and acted in bad faith.  However, we find the district court clearly erred in holding Moll committed perjury and violated Rule 8.4(b) and Rule 3.3(a)(1).

1. Perjury, Rule 8.4(b), Rule 3.3(a)(1)

The district court concluded Moll committed perjury by filing a declaration purportedly on behalf of Guariniello with a signature on file notation and by filing his own declaration with a signature on file notation although Moll knew neither declaration was in fact signed. The district court also found Moll committed perjury by stating in his declaration he was "counsel for the purpose of" Guariniello's motion to intervene, stating the "clear import of the statement was that Moll was Guariniello's attorney." Based on its determination Moll committed perjury, the district court found Moll violated Minnesota Rule of Professional Conduct 8.4(b), which provides: "It is professional misconduct for a lawyer to: . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Minn. R. Prof. Conduct 8.4(b). Additionally, the district court found Moll violated Minnesota Rule 3.3(a)(1), which states: "A lawyer shall not knowingly: . . . make a false statement of fact to a tribunal." Minn. R. Prof. Conduct 3.3(a)(1). According to the district court, "filing a declaration with an electronic signature constituted a false statement" made to the court.

Moll argues a finding of perjury requires criminal mens rea and the evidence does not demonstrate Moll made misstatements motivated by criminal intent to deceive. According to Moll, the record shows a communication breakdown resulted in the Guariniello declaration being filed without a signature on file. He states he believed Guariniello agreed with the declaration and Lemon believed the signature was en route. Additionally, Moll argues there is no evidence he approved the electronic filing of the motion and declarations with a signature on file notation, noting the version of Guariniello's declaration Lemon faxed to him did not have a signature on file notation. He asserts he only learned the motion had been filed without receipt of Guariniello's signature page after receiving notice the motion had been filed. He also contends he did not commit perjury by representing in his declaration he was counsel for the purpose of the motion to intervene. Moll argues

-13-

the record establishes he had a good faith belief to believe Guariniello wanted Moll to file the motion to intervene on his behalf to access confidential documents. For these same reasons, Moll contends he did not violate Rules 8.4(b) and 3.3(a)(1).

The district court rejected Moll's argument that his prior relationship with Guariniello led him to reasonably believe Guariniello wanted him to act as his attorney and file the motion. The court noted any prior conduct was not important in light of the fact Guariniello did not sign his declaration and did not respond to emails when asked to sign the declaration. The court noted Moll knew Guariniello had not signed his declaration at the time the motion was filed and stated allowing an unsigned declaration to be filed while representing it is signed is willful misconduct. The district court found: "In short, Moll allowed the PSC to file a motion he knew to be improper," noting it is undisputed Moll knew Guariniello had not signed his declaration at the time it was filed. The court stated that "[a]s a member of the Executive Committee, Moll had an obligation to prevent improper filings." Additionally, the court stated it was "unimpressed" with Moll's claim he was surprised the motion was filed without Guariniello's signature. The court stated if Moll believed such a filing was wrong he had an obligation to inform the court immediately, but instead Moll "did nothing but try to obtain Guariniello's after-the-fact signature, and after-the-fact confirmation of Shelquist's approval." The court noted that "[i]nstead of immediately withdrawing the improper filing, or at least questioning Shelquist about the propriety of the filing, Moll let it sit for days, and then attempted only to obtain documentation that would place any potential blame on LGN."

We hold the record fails to support the district court's finding of perjury. "A witness testifying under oath or affirmation violates [the federal perjury statute] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1);

-14-

United States v. Debrow, 346 U.S. 374, 376 (1953); United States v. Norris, 300 U.S. 564, 574, 576 (1937)). The evidence in the record demonstrates Lemon, whether at the direction of Shelquist or on her own initiative or as a result of miscommunication, entered the signature on file notations in the declarations and sent the motion to intervene to LGN for filing on Verilaw. There is no evidence in the record demonstrating Moll instructed or gave Lemon approval to file the motion to intervene with false signature on file notations. The district court's finding of perjury is based on the court's finding that even if Moll did not explicitly instruct Lemon to file the motion, Moll essentially "allowed" the improper filing to occur. However, Moll's failure to prevent the filing of the declarations with false signature on file lines is insufficient to establish Moll committed perjury. Additionally, Moll's failure to take immediate corrective steps after learning of the improper filing does not establish perjury, although it supports the district court's findings Moll violated PTO 18 and Rules 3.4(c) and 8.4(c) and (d), as discussed below.

We also do not believe the record supports the finding Moll committed perjury by stating in his declaration he was counsel for the purposes of filing the motion to intervene. The district court found "[t]he clear import of the statement was that Moll was Guariniello's attorney," and "there can be no other reasonable interpretation of this statement." We hold this finding is clearly erroneous. There is no evidence in the record demonstrating this statement was made with a willful intent to provide false testimony. At the time the declaration was drafted, we believe the record shows Moll was counsel for the purposes of filing the motion to intervene. Although this assertion finds less support at the time the motion to intervene was filed, as discussed above, the record does not show Moll instructed Lemon to file the motion to intervene without obtaining Guariniello's signature.

For the same reasons as stated above, we conclude the record does not support the finding Moll violated Rule 3.3(a)(1) or Rule 8.4(b).

-15-

2.  PTO 18, Rules 3.4(c), 8.4(c), (d)

The district court found Moll violated PTO 18 when he filed the motion to intervene although he knew Guariniello's signature was not on file.  PTO 18 states an attorney who files a document with an electronic signature "shall make an original signature available to any registered [Verilaw] user upon request."  PTO 18 further states "[b]y submitting such a document, the filer certifies that each of the other signatories has expressly agreed to the form and substance of the document and that the filer has their actual authority to submit the document electronically."  In violating PTO 18, the district court found Moll also violated Minnesota Rule 3.4(c), which provides a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."  Minn. R. Prof. Conduct 3.4(c).

Moll argues he did not intentionally violate PTO 18 and Rule 3.4(c) because he believed he had Guariniello's authority to file the motion to intervene and believed Guariniello approved the form and substance of the motion to intervene having received no objection to the draft he sent to his office.  Moll notes LGN was technically the "filer" of the motion.  He also asserts there is no evidence he knew the declaration would be filed without Guariniello's signature.

We hold the district court did not clearly err in finding Moll knowingly disobeyed his obligation under PTO 18 in violation of Rule 3.4(c).  We conclude it is clear Moll did not have Guariniello's express agreement to the form and substance of the motion and Guariniello's actual authority to file the motion, as required by PTO 18.  We believe the evidence on the record supports the district court's rejection of Moll's claim his prior relationship with Guariniello led him to believe he had Guariniello's permission to file the motion to intervene.  The record shows Moll had not heard from Guariniello in the three months prior to filing the motion, and when Moll's office sent the declaration to Guariniello for his approval, Guariniello

-16-

"'disappeared' and did not respond to emails when asked to sign the declaration." Moreover, Moll testified that on June 12 he instructed Lemon to tell Shelquist Guariniello had not signed the declaration and to seek his advice. Moll also testified that on June 12, after he learned the motion to intervene had been filed, he told Lemon it was wrong to file the declaration without a signature on file. These facts contradict Moll's claim he believed he had Guariniello's permission to file the motion to intervene and that Guariniello approved the form and substance of the motion. We also believe the district court did not clearly err in finding Moll was the "filer" of the motion. Although LGN filed the motion on Verilaw, the district court found LGN performed this function merely as a professional courtesy and Shelquist and Lockridge did not have any control over the documents before filing them. We believe this finding is not clearly erroneous. Additionally, Moll's argument he did not know the motion would be filed without Guariniello's signature does not excuse his failure to withdraw the motion as soon as he learned the motion was filed without Guariniello's signature on file.

Next, the district court held Moll violated paragraphs (c) and (d) of Minnesota Rule 8.4 after finding Moll attempted to cover up the fact the motion to intervene was filed without Guariniello's signature. Paragraphs (c) and (d) provide: "It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice." Minn. R. Prof. Conduct 8.4(c), (d).

Moll admits he tried to obtain an executed signature page from Guariniello after the motion was filed, but argues this demonstrates he understood the importance of possessing a signed original declaration and for a short time labored under the impression Guariniello's signature was en route or that he might still sign the document. When it became clear Guariniello no longer consented to the motion, it was withdrawn shortly thereafter. He argues the record does not show he intentionally misled Bayer or the court, but readily admitted to Bayer's counsel upon

-17-

receiving a formal letter requesting a copy of the signature page that KBM did not possess it.

We hold the district court did not clearly err in finding Moll violated Rule 8.4(c) and 8.4(d). The record supports the district court's finding that Moll engaged in dishonest conduct by attempting to cover up and his actions. The evidence shows Moll knew on June 12 they had not obtained Guariniello's signature. By June 16, Moll learned Guariniello did not plan to sign the declaration. Rather than informing the court and opposing counsel, Moll continued to attempt to change Guariniello's mind. The record shows Moll did not tell Guariniello the motion to intervene had already been filed. Moll did not take any action to withdraw the motion until June 23, which was the same day counsel for Bayer formally requested a copy of the original signature. These facts also support the district court's finding Moll's actions prejudiced the administration of justice in the Baycol MDL "by calling into question the veracity of electronic signatures and the integrity of Moll and Lemon, and by forcing the Court and the parties to focus on this issue, rather than the main issues of th[e] MDL." These facts also support the district court's finding of bad faith.

### B. Confidential Documents

In addition to Moll's conduct relating to the motion to intervene, the district court based its imposition of sanctions against Moll on its finding that Moll violated PTO 24 when he "allowed Guariniello to see the documents containing Bayer's confidential information." The district court held Moll, in violating PTO 24, also violated Rule 3.4(c), which states a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Additionally, the court found Moll's conduct demonstrated bad faith, stating "preventing the dissemination of confidential information . . . by failing to take appropriate precautions to prevent improper release, is sanctionable conduct."

Moll argues any improper disclosure of confidential information was inadvertent. He notes he asked the attorney sending the documents to send only non-privileged information and that he did not send the email to Guariniello. He further points out the email containing confidential information was sent directly to Guariniello's email account, and Guariniello opened the attachment before Moll could review it.

Although Moll may not have been the only attorney responsible for the release of confidential documents to Guariniello, or even the attorney mostly at fault, this does not mean Moll did not engage in sanctionable conduct. The district court's findings are supported by the fact that after Moll knew or should have known the documents sent to Guariniello contained confidential information he did not take any steps to protect them. As the district court found, "[w]hile it may be true that Guariniello opened the attachments before Moll could read the explanatory e-mail, once Moll saw the documents, he should have been alerted to their potential confidential nature." The documents were clearly marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." Rather than attempting to take any action to stop Guariniello from viewing the confidential information by asking Guariniello to stop reviewing the documents or by notifying the court, the record indicates Moll merely sat by Guariniello's side while Guariniello viewed the documents. Moll's inaction is inconsistent with his obligation under PTO 24 to "take all steps reasonably necessary to prevent the disclosure of confidential discovery material." Accordingly, we do not believe the district court clearly erred in finding Moll knowingly violated PTO 24 and Rule 3.4(c).

### C.  Appropriateness of Sanctions

Moll argues, even if the district court's findings are upheld, the sanctions imposed by the district court are excessive.

In its motion before the district court, Bayer suggested three sanctions: 1) removing Moll from the PSC; 2) disqualifying KBM from further participation in the MDL as counsel for individual plaintiffs and voiding any retention or fee agreements with KBM's individual plaintiffs; and 3) fining KBM $50,000. The district court reviewed Bayer's submissions and concluded the appropriate sanction was 1) to remove Moll and KBM from the PSC, and 2) to impose a monetary sanction against Moll personally in the amount of $50,000. Additionally, the court directed the clerk of the court to send copies of the order to the Illinois Attorney Registration and Disciplinary Commission and the United States Attorney for the District of Minnesota.

We hold the district court acted well within its discretion in ordering Moll's and KBM's removal from the PSC. The district court's explanation for the sanction is reasonable and supported by the facts:

> By allowing a motion to be filed without signatures and by failing to correct the problem in a timely manner, Moll exhibited poor judgment and a profound lack of the appropriate forthrightness and candor necessary from a member of the PSC. Moll deliberately tried to cover-up his actions and mislead the Court and the parties as to the true status of the motion. In addition, Moll failed to exercise due care regarding the handling of confidential documents. This improper handling, and failure to even attempt to correct the problem, demonstrate that Moll is not qualified to perform the duties of a PSC member with the zeal and integrity this Court requires.

Additionally, we do not believe it was an abuse of discretion for the district court to invoke its inherent power to impose a monetary sanction against Moll based on the record in this case. See Harlan, 982 F.2d at 1259. Thus, the only issue is whether the amount of the sanction, $50,000, is appropriate. Moll contends a $50,000 sanction is excessive compared to the $5,000 sanction imposed in Harlan, 982 F.2d at 1257, and the $10,795.85 award of attorney's fees in Greiner v. City of

Champlin, 152 F.3d 787 (8th Cir. 1998).[1]  Bayer argues the $50,000 sanction is not excessive, citing In re Kujawa, a case in which our court affirmed a reduced award of attorney's fees for $66,656.33 assessed by the bankruptcy court, but reversed as excessive the imposition of an additional punitive monetary sanction of $100,000. 270 F.3d 578, 583-84 (8th Cir. 2001).

In Kujawa, the $66,000 award of attorney's fees was remedial—it was paid to the opposing party as compensation for the attorney's fees incurred as a direct result of the unethical behavior. See id. at 582-83. We held the imposition of an additional $100,000 punitive sanction was an abuse of discretion because the amount was "not related concretely to redressing the harm" of the attorney's misconduct and was "not supported by the facts as being necessary to deter" the attorney in the future. Id. at 584. We noted "[t]he cornerstone of imposing a monetary sanction . . . should be the selection of an amount no greater than sufficient to deter future misconduct by the party." Id. at 583. In this case, the $50,000 sanction does not compensate Bayer for fees incurred as a direct result of Moll's conduct because the district court's order directs Moll to pay $50,000 to the clerk of the court. Additionally, the record does not show the $50,000 sanction relates concretely to costs the court directly incurred because of Moll's actions. See, e.g., Lasar v. Ford Motor Co., 399 F.3d 1101, 1111-12 (9th Cir. 2005) (affirming monetary sanction payable to the court for violation of pretrial orders which was "carefully limited" "to an amount 'necessary to reimburse . . . the Court' for the costs related to empaneling the jury"); United States v. Dowell, 257 F.3d 694, 699-700 (7th Cir. 2001) (affirming contempt fine where district court tailored sanction to compensate the court for the actual costs resulting from attorney's refusal to appear at trial). It is also not apparent from the record a $50,000 fine is necessary to deter Moll from repeating the sanctioned conduct. See., e.g., MHC Inv.

---

[1]Our opinion in Greiner does not indicate the amount of the attorney's fees award. Moll obtained the amount from the district court's docket sheet for Greiner, which discloses the amount of the award.

Co. v. Racom Corp., 323 F.3d 620, 628 & n.13 (8th Cir. 2003) (noting district court's explanation that, given the large amounts of money involved, $25,000 was minimum amount it could assess to deter law firms from sanctioned conduct). Furthermore, a $50,000 sanction, which is payable to the clerk of the court and not concretely tailored to compensate the court for actual costs resulting from the misconduct has characteristics of a criminal penalty which other courts have held to require the procedural protections of a criminal trial. See, e.g., Bradley v. Am. Household, Inc., 378 F.3d 373, 378-79 (4th Cir. 2004) (holding $200,000 sanction and $100,000 sanction imposed pursuant to district court's inherent power and Rule 37 were criminal in nature and thus required full protections of criminal contempt proceedings); F.J. Hanshaw Enters. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-39 (9th Cir. 2001) (holding "when a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding" and finding $500,000 sanction was criminal in nature where it was payable to the United States and could not be avoided through future compliance); Mackler Prods., Inc. v. Cohen, 146 F.3d 126, 130 (2d Cir. 1998) (holding $10,000 punitive sanction imposed against an individual under the court's inherent power required full protections of criminal proceeding); Crowe v. Smith, 151 F.3d 217, 227-29 (5th Cir. 1998) (holding $75,000 sanction imposed against individual under court's inherent power was criminal fine requiring standard criminal protections).

In any event, the district court's failure to explain the basis for the amount of the sanction makes it difficult for our court to evaluate whether the sanction is appropriate. We believe the district court in imposing a monetary sanction as large as $50,000 was required to explain the basis for the amount of the sanction. See Vollmer v. Publishers Clearing House, 248 F.3d 698, 711 (7th Cir. 2001) (vacating $50,000 Rule 11 sanction imposed sua sponte against law firm and remanding for more detailed explanation for the district court's imposition of such a significant monetary sanction). Furthermore, we are unable to determine from the record the

extent to which the $50,000 amount was based on the district court's finding of perjury, which we hold is clearly erroneous. Accordingly, we vacate the $50,000 sanction imposed against Moll and remand for proceedings consistent with this opinion.

### IV. Lemon

The district court sua sponte imposed sanctions against Lemon by barring her from the practice of law in the District of Minnesota after determining she committed perjury and violated several rules of professional conduct.

Lemon raises numerous arguments challenging the district court's order barring her from practicing law in the District of Minnesota. We need only address one. We hold the district court abused its discretion by imposing sanctions against Lemon without first providing Lemon with notice the court was considering sanctions against her in violation of Lemon's right to procedural due process . Accordingly, we reverse the district court's imposition of sanctions against Lemon.

The record reflects the first time Lemon was provided with notice that the district court was considering imposing sanctions against her was after Moll's attorney mailed Lemon a copy of the district court's order for sanctions. Lemon resigned from KBM well before Bayer moved for sanctions against Moll and KBM and well before Shelquist's deposition was taken. There is no indication in the record Lemon was contacted and informed of Bayer's motion for sanctions against Moll and KBM or that there was a dispute between her testimony and Shelquist's testimony. Even if Lemon learned of the motion for sanctions, Bayer moved to impose sanctions against Moll and his firm, not Lemon. See Clark, 223 F.3d at 864-65 (stating knowledge that violations of bankruptcy rules are at issue is insufficient notice, "rather, notice must be given that the court is considering imposing sanctions").

-23-

Not only did the district court fail to provide Lemon with notice, which violated Lemon's right to due process, the district court deprived Lemon of an opportunity to respond and then cited the lack of response from Lemon as evidence to support the court's finding Lemon committed perjury. In finding Lemon lied, the district court relied largely on the fact that Lemon did not submit a brief to dispute certain facts or to explain how the telephone records supported her deposition testimony. Of course, without notice that the district court was considering imposing sanctions against her, Lemon did not have any reason to submit such a brief. Additionally, the district court found Lemon testified she obtained Shelquist's permission to file the motion during a ten minute phone conversation with him and found the telephone records did not reflect a ten minute phone call. An examination of the transcript of Lemon's deposition shows, when asked how long the conversation with Shelquist lasted, Lemon testified: "A few minutes. I couldn't tell you. Maybe 10. I don't know." This is a point Lemon could have brought to the district court's attention if she had been provided with proper notice.

## V.  Conclusion

The district court's order removing Moll and KBM from the PSC is affirmed. The $50,000 sanction imposed against Moll is vacated and remanded for proceedings consistent with this opinion. The district court's imposition of sanctions against Lemon is reversed.

-24-

**UNITED STATES COURT OF APPEALS**
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

MICHAEL E. GANS
Clerk of Court

September 8, 2005

RECEIVED
BY MAIL

SEP 1 2 2005

CLERK US DIST COURT
MINNEAPOLIS MN

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN  55415

Re:  04-2097   Kenneth B. Moll vs. Bayer Corporation
Re:  04-2187   K. Amy Lemon vs. Bayer Corporation

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.
(5175-010199)

Sincerely,

*Michael E. Gans*

Michael E. Gans
Clerk of Court

srd

Enclosure
(LETTER FOR INFORMATIONAL PURPOSES ONLY)
------------------------------------------
cc:  Honorable Michael J. Davis
     Charles S. Zimmerman
     Richard Allen Lockridge
     Peter W. Sipkins
     Philip S. Beck
     Adam L. Hoeflich
     Susan A. Weber
     Gene C. Schaerr
     Tracy Joan Van Steenburgh
     Robert A. Limbacher
     Fred T. Magaziner
     Eric John Magnuson
     Patrick D. Robben
     Peter D. Gray

     Warren Lupel
     Deane B. Brown
     John Michael Degnan
     Jesse R. Orman

     District Court/Agency Case Number(s):  01-MD-1431 MJD/JGL