**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**In re: BAYCOL PRODUCTS LITIGATION** **MDL No. 1431 (MJD)**

**This Document Relates to All Actions** **PTO 142**

---

Richard A. Lockridge, and Robert K. Shelquist, Lockridge Grindal Nauen, PLLP, for and on behalf of Lockridge Grindal Nauen, PLLP.

Kenneth B. Moll, Kenneth B. Moll & Associates, Ltd., and Warren Lupel, for and on behalf of Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd.

Peter W. Sipkins, Dorsey & Whitney LLP; Philip S. Beck, Adam L. Hoeflich, and Tarek Ismail, Barlit Beck Herman Palenchar & Scott; Susan A. Weber, Sidley Austin Brown & Wood; and Gene C. Schaerr, and Frank R. Volpe, Sidley Austin Brown & Wood, for and on behalf of Bayer Corporation.

---

## I. INTRODUCTION

On December 18, 2001, the Judicial Panel on Multidistrict Litigation certified this MDL and transferred the then-existing cases to this Court for consolidated pretrial proceedings. As of April 11, 2005, this MDL was the third largest MDL in the history of the United States, with a total of 14,500 total cases filed. (Tr. April 11, 2005 Status Conf. at 3.) 5229 cases are still open. These cases include the claims of tens of thousands of individual Plaintiffs. Not only are the filings sizable, the monies involved are also considerable. Worldwide, 1.2 billion dollars has been paid out in settlements. In this country, $328,513,412.54 had been paid out to MDL Plaintiffs as of April 11, 2005. (Id. at 4.) The Plaintiff's law

firm of Kenneth B. Moll and Associates has received a substantial amount of this money.

On April 12, 2004, this Court issued Pretrial Order 115 (“PTO 115") on Defendant Bayer’s Motion for Sanctions Arising From the PSC’s Interactions with the Prosecutor in Turin, Italy. The motion was based on the misconduct of Kenneth Moll, a plaintiffs’ steering committee (“PSC”)member. The Court found that Moll committed perjury and violated the Court’s previous orders concerning the electronic filing of documents and the handling of confidential information. The Court also found that an associate in Kenneth Moll’s law firm (“KBM”) had committed perjury. Pursuant to these findings, the Court granted Bayer’s motion in part and ordered the following:

> [1] Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd.[were] removed from the Plaintiffs’ Steering Committee in this case;
>
> [2] Kenneth B. Moll [was] personally sanctioned in the amount of $50,000 . . . .;
>
> [3] Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd. [could] continue to represent individual plaintiffs in this case;
>
> [4] K. Amy Lemon [was] prohibited from practicing law in the United States District Court for the District of Minnesota; and
>
> [5] The Clerk of Court was ordered to send copies of the Order to the Illinois Attorney Registration and Disciplinary Commission . . . and to the United States Attorney for the District of Minnesota.

PTO 115 at 46-47. On June 22, 2004, the Court stayed the order pending appeal to the Eighth Circuit. Moll voluntarily withdrew from the PSC during the pendency of the stay, with the understanding that he would be reinstated to the PSC should he prevail on appeal.

The Eighth Circuit issued its opinion on Moll's and Lemon's appeal on August 19, 2005. The Eighth Circuit affirmed PTO 115 in part, reversed in part, and remanded for further proceedings consistent with the Eighth Circuit's opinion. See Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 810 (8th Cir. 2005). This order will address the remand issues identified by the Eighth Circuit.

## II. DISCUSSION

### A. Kenneth B. Moll and KBM's Representation

The Eighth Circuit affirmed the part of PTO 115 removing Kenneth B. Moll and KBM from the Plaintiff's steering committee in this case. Thus, Kenneth B. Moll and KBM are permanently removed from the PSC.[1]

### B. K. Amy Lemon

The Eighth Circuit reversed the part of PTO 115 prohibiting K. Amy Lemon

[1]Neither Party appealed the part of PTO 115 allowing Kenneth Moll and KBM to continue representing individual clients in this MDL.

from practicing law in the United States District Court for the District of Minnesota. Accordingly, that sanction is lifted.

### C. Monetary Sanction

The Eighth Circuit agreed with this Court that a monetary sanction against Moll is appropriate. However, the Eighth Circuit remanded the case for the Court to explain the basis for the amount of the sanction. Specifically, the Eighth Circuit noted that since Moll was required to pay $50,000 directly to the clerk of court, the sanction was not necessary to compensate Bayer for its expenses incurred as a result of Moll's misconduct. Plaintiffs' Baycol Steering Comm., 419 F.3d at 808. In addition, the Eighth Circuit stated that the Court had not specifically found that the monetary sanction was necessary to deter Moll from repeating his conduct. Id. The Eighth Circuit also noted that other circuits have found that such large monetary sanctions, when ordered paid to the clerk of court and not tailored to compensate for actual court costs, have "characteristics of a criminal penalty" and require the procedural protections of a criminal trial. Id. (citations omitted).

#### 1. Whether the Amount of the Sanction is Appropriate

"The cornerstone of imposing a monetary sanction . . . should be the selection of an amount no greater than sufficient to deter future misconduct by the party." In re Kajawa, 270 F.3d 578, 583 (8th Cir. 2001). A sanction that amounts to three-quarters of an attorney's fees in a case is reasonable if necessary

to deter misconduct. See MHC Invest. Co. v. Racom Corp., 323 F.3d 620, 627-28 (8th Cir. 2003) (affirming a $25,000 Rule 11 sanction, which represented approximately three-quarters of the attorney's fees, for persistently pursuing non-meritorious claims) (citation omitted).

Between November 2002 and October 2003, KBM settled dozens of Baycol MDL cases for millions of dollars. (Ex. A to this Order.)[2] These settlements were subject to the holdback provisions authorized in this case, and a substantial amount of money has been deposited in the Baycol MDL Settlement Fund. The Court has been receiving monthly reports containing the amounts of all settlements and Bayer pay-outs for both MDL and non-MDL cases since early in this litigation. Thus, the Court is privy to what the vast majority of all Plaintiffs and their attorneys have been paid. Even a conservative estimate of twenty-five percent of KBM's total settlements results in enormous fees.

Based on these figures, the Court's $50,000 sanction against Moll has the same economic effect that a parking ticket has on the coffers of most people. The staggering amount of attorneys' fees involved in this litigation requires a large sanction in order to secure Moll's compliance with the Court's orders. Although Moll is no longer on the PSC, the Court has allowed him to continue representing

[2]The MDL settlement records are not for public disclosure. The Court will file Exhibit A under seal.

individual clients in this litigation, and the Court must be assured that Moll will comply with the Court's orders and comport himself with the professionalism required of an attorney admitted to practice in this District. Based on the information before the Court, a $50,000 sanction does not remotely approach three-fourths of the fees Moll will collect from this litigation.[3]

### 2. **<u>Whether Any Part of the Sanction Was Based on the Court's Finding That Moll Committed Perjury</u>**

The Eighth Circuit also stated that it could not determine what part of the $50,000 sanction was specifically based on this Court's finding that Moll committed perjury, a finding that the Eighth Circuit found clearly erroneous. If part of the sanction was based specifically on a finding that Moll perjured himself, that part of the sanction must be subtracted from the total amount.

The Court did not specifically base any part of the sanction on its finding that Moll committed perjury. Rather, the sanction was based on the entire course of Moll's conduct, not the Court's legal conclusions about the conduct: Moll's failure to protect confidential information, even when he knew it was being

---

[3]As a sanction, the Court could have ordered Moll to pay the law firms' costs of litigating this issue. That amount would have dwarfed the sanction the Court actually imposed. Extensive investigation, discovery, briefing and oral argument to this Court certainly generated considerable attorneys' fees.

After it issued PTO 115, the Court became aware of Moll's history of attorney misconduct. This history was not considered by the Court when making its decision.

disseminated; Moll's failure to comply with Court orders; and most egregiously, Moll's attempt to cover-up the fact that he allowed documents to be filed which violated this Court's orders by trying to obtain an after-the-fact signature.

### 3. Whether the Sanction Is Criminal in Nature

The Court does not find the sanction to be criminal or punitive in nature. As the Court noted in PTO 115, Moll's deception has prejudiced the administration of justice in this MDL by, inter alia, occupying such a large amount of the Court's time and resources. See PTO 115 at 41. In this way, the Court was the injured party. In United States v. Dowell, the Seventh Circuit affirmed sanctions that were paid to the clerk of court when the court was injured by an attorney's failure to appear at trial and the sanctions covered the cost of empaneling a jury. 257 F.3d 694, 699 (7th Cir. 2001). The time and resources devoted to this issue are not as easily quantified as the costs of empaneling a jury, and the harm that Moll's actions caused to the administration of justice in this case is even more difficult to measure. The Court notes that it spent many more days and weeks on this issue than it spends empaneling a jury.

As discussed above, this case is the third largest MDL in United States history. Thus, it was imperative that the Court develop procedures that would allow the MDL to progress efficiently. The Court's decision to use the Verilaw electronic filing system was not made lightly, and the system has worked

remarkably well. However, the system is only as good as the veracity of the filings that it facilitates. As of September 1, 2005, the total number of Verilaw filings in this case exceeded 27,200. If the Court and the Parties had to question the integrity of every filing, the MDL would come to a screeching halt. Thus, the Court finds that payment of this sanction to the Court not only coerces compliance with the Court's orders, but also compensates the Court for the time and effort it expended to deal with this matter, a matter which, if treated lightly, would cause lack of confidence in the very system that has helped this MDL run so successfully up to this point. Therefore, the Court finds the sanction necessary and appropriate.

Accordingly, it is **HEREBY ORDERED**:

(1) Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd. are permanently removed from the Plaintiffs' Steering Committee in this case;

(2) Kenneth B. Moll is personally sanctioned in the amount of $50,000 which shall be tendered to the Clerk of Court of the United States District Court for the District of Minnesota within seven (7) days of this Order;

(3) Kenneth B. Moll and Kenneth B. Moll & Associates, Ltd. may continue to represent individual plaintiffs in this case;

(4) K. Amy Lemon may practice law in the United States District Court

for the District of Minnesota;

(5) The stay of PTO 115 [PTO 123] is lifted; and

(6) PTO 115 is amended by this Order.

Dated: October 3, 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court