V-G · 90/05

PROF. AVV. FEDERICO STELLA
ORDINARIO DI DIRITTO PENALE
NELL'UNIVERSITÀ CATTOLICA DEL SACRO CUORE

**Corte d'Appello di Torino**
**Sezione volontaria giurisdizione**

**Memoria nell'interesse di Manfred Schneider, Giovanni Fenu, David Ebsworth e Ernst Weidmann, quali dirigenti di Bayer A.G., in relazione alla richiesta di assistenza giudiziaria formulata dall'U.S. District Court District of Minnesota, nella causa *in re: Baycol Products Litigation*, MDL No. 1431, secondo la Convenzione dell'Aja 18 marzo 1970.**

## 1. Premessa: i procedimenti penali pendenti a Torino.

I sottoscritti avv. prof. Federico Stella e avv. Walther Graf, difensori di Manfred Schneider, avv. prof. Carlo Federico Grosso, difensore di Giovanni Fenu, avv. prof. Giovanni Flora difensore di David Ebsworth, avv. prof. Lucio Monaco e avv. Bernd Schneider, difensori di Ernst Weidmann, nei procedimenti penali n. 22434/01 R.G.N.R, e n. 14707/03 R.G.N.R., pendenti dinanzi la Procura della Repubblica presso il Tribunale di Torino (Procuratore Aggiunto dott. Raffaele Guariniello e Sostituto Procuratore dott.ssa Sara Panelli), rilevano quanto segue.

I procedimenti penali sopra indicati hanno ad oggetto presunti fatti di reato concernenti lo sviluppo, la produzione, la commercializzazione e il successivo ritiro dal commercio di un farmaco anticolesterolo, la cerivastatina, noto con il nome commerciale di Lipobay o Baycol, da parte della multinazionale farmaceutica Bayer A.G. (con sede in Germania, a Leverkusen), società della quale i nostri assistiti erano, all'epoca dei fatti, alti dirigenti.

Entrambi i procedimenti sono, oggi, in fase di indagini preliminari, non avendo il Pubblico Ministero ancora disposto il deposito degli atti ai sensi dell'art. 415 bis c.p.p.. Il contenuto del fascicolo del Pubblico Ministero è, pertanto, ignoto agli indagati ed ai loro difensori.

## 2. La *Multi District Litigation* No 1431 pendente negli Stati Uniti, avanti alla District Court per il Distretto del Minnesota, e la richiesta di cooperazione giudiziaria ai sensi della Convenzione dell'Aja, presentata dalla controparte.

SCANNED
DEC 01 2005
U.S. DISTRICT COURT MPLS

20145 MILANO - VIA ALBERTO DA GIUSSANO, 15 - TEL. 02.481.90.40 - 02.48.01.84.40 - 02.481.90.66 - TELEFAX 024819055
fedstell@tin.it
COD. FISC. STL FRC 35C30 I635G - PART. IVA 02924050152

Allo stesso tempo, negli Stati Uniti, e sempre in relazione alla produzione, alla commercializzazione e al ritiro dal mercato del farmaco cerivastatina, sono state proposte contro la società Bayer A.G. e la sua controllata americana, Bayer Corp., diverse azioni civili, da parte di cittadini che asseriscono di aver subito danni dal farmaco, ovvero dai parenti di questi.

Ad oggi, è pendente a Minneapolis, avanti all'*United States District Court, District of Minnesota*, un procedimento civile denominato "*In re: Baycol Products Liability Litigation, Multi-District Litigation 1431*".

Si tratta di un procedimento "multidistrettuale" che raccoglie all'incirca 10.000 controversie legali concernenti l'utilizzo del farmaco Baycol (altresì noto come Lipobay, Cholstate o Cerivastatin) e i suoi presunti effetti dannosi sulla salute dei pazienti. Tutte queste controversie sono state riunite dinanzi la medesima Corte federale, in ragione della comunanza delle questioni trattate, e si è deciso che la Corte per il distretto del Minnesota fosse competente in ordine alla risoluzione di **tutte** le questioni in tema di *discovery* e le altre vertenze che concernono la **fase preparatoria del giudizio** (il c.d. ***pre –trial*)**.

La fase del giudizio che è dunque attualmente in corso dinanzi la U.S. District Court, District of Minnesota, è la fase **meramente istruttoria** della causa, quella deputata alle attività di ricerca e assunzione delle prove, che nel sistema americano prende il nome di ***pre-trial***.

Nel contesto di questa attività istruttoria, i difensori che agiscono in rappresentanza degli interessi degli attori nella causa civile (riuniti in un comitato che prende il nome di *Plaintiffs' Steering Committee*, o semplicemente PSC) hanno richiesto al giudice della U.S. District Court, District of Minnesota, di inviare alle autorità italiane una richiesta di assistenza giudiziaria, secondo la procedura ammessa dalla Convenzione dell'Aia del 18 marzo 1970 ("*Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters*", all. 1).

Oggetto della richiesta – a nostro parere **del tutto inaccoglibile**, per le molteplici ragioni che svilupperemo qui di seguito – è la "**produzione di documenti da parte del Pubblico Ministero di Torino dott. Raffaele Guariniello**, che egli ha ottenuto attraverso la sua indagine penale sulla Bayer A.G. riguardante il ritiro del Baycol dal mercato mondiale. Le prove di cui si cerca l'acquisizione consistono in approssimativamente 100.000 documenti (o pagine di documenti) ottenuti dal dott. Raffaele Guariniello dagli uffici della Bayer AG di Milano, Italia, nel o intorno al luglio 2002" ("*production of documents from Dr. Raffaele Guariniello, Torino Public Prosecutor, which he obtained through his criminal investigation of Bayer AG relating to the withdrawal of Baycol from the world market. The evidence sought consists of approximately 100,000 documents (or pages of documents) obtained by Dr.*

*Raffaele Guariniello from the offices of Bayer AG Milan, Italy, in or about July 2002"*" richiesta di assistenza giudiziaria, p. 3 dell'originale; trad. nostra, all.1).

Di fronte alle riserve presentate, nel procedimento statunitense, dalla Bayer A.G., che chiedeva al giudice di non firmare la richiesta, proprio per i motivi che qui di seguito andiamo a ribadire, il giudice Davis, della Corte Distrettuale del Minnesota, ha emanato una ordinanza, in data 10 novembre 2004 (*Pretrial Order n. 133*, all. 2), con la quale dichiarava:

a) che avrebbe dato adito alla richiesta di assistenza giudiziaria avanzata dagli attori, e

b) che **non poteva pronunciarsi** sulle opposizioni presentate dalla Bayer A.G. perché esse "richiedono l'interpretazione del diritto italiano, che è meglio lasciare all'appropriata autorità giudiziaria italiana" ("*require interpretation of Italian law, which is best left to the appropriate Italian tribunal*", ord., p. 6 dell'originale, trad. nostra, all. 2).

Nel rispetto della decisione del giudice statunitense che ha sottoscritto la richiesta di assistenza giudiziaria, rispettosamente, quindi, chiediamo a codesta Corte di Appello di voler valutare le ragioni esposte qui di seguito e, di conseguenza, di voler dichiarare inammissibile la richiesta.

**3. Inaccoglibilità della richiesta per violazione della riserva di cui all'art. 23 della Convenzione dell'Aia.**

L'Italia, all'atto della ratifica della Convenzione dell'Aja del 18.3.1970, avvenuta con L. 24.10.1975 n. 745, ha formalmente espresso la riserva prevista dall'art. 23 della Convenzione.

L'art. 23 recita: "Ogni Stato contraente può, al momento della firma, della ratifica o dell'adesione, dichiarare di non eseguire le rogatorie che hanno per oggetto una procedura conosciuta negli Stati che applicano la «Common law» sotto il nome di «pre-trial discovery of documents»".

La ragione di questa riserva è che l'Italia, al pari degli altri paesi europei, non conosce l'istituto Americano della "*pre-trial discovery*", sulla base del quale entrambe le parti di un processo civile possono essere obbligate a consegnare all'altra tutti i documenti in loro possesso pertinenti alla vicenda di cui è causa ed anche solo apparentemente pertinenti. Spetta poi al giudice del pre-trial verificare l'oggettiva rilevanza dei documenti, e predisporre l'elenco delle prove che saranno utilizzabili in ogni successivo giudizio (*trial*). Il processo civile italiano, invece, come è noto, è regolato dall'opposto principio per cui ogni parte deve presentare le prove a sostegno della propria domanda direttamente nel corso del giudizio, mentre non è possibile obbligare la controparte al deposito di

siffatte prove (men che meno al deposito di intere classi, o categorie, di documenti).

Fra l'altro, va rimarcato come l'Italia abbia – a differenza di altri paesi – sottoscritto un **riserva assoluta**, rispetto all'art. 23: pertanto il nostro paese non può dare adito a **nessuna** richiesta di assistenza da parte di una autorità giudiziaria quando essa sia finalizzata all'attuazione del procedimento di *pre-trial discovery,* procedimento del tutto sconosciuto al nostro ordinamento e contrastante con le regole che presiedono alla formazione della prova nel processo civile italiano.

Alcuni altri paesi, invece, come il Regno Unito o la Danimarca, hanno sottoscritto una riserva qualificata: accettano, pertanto, richieste da parte di autorità giudiziarie straniere di documenti da utilizzare in una *pre-trial discovery*, purché tale richiesta indichi specificamente a quali documenti si riferisce, e non riguardi una intera classe, o categoria di documenti. La previsione inglese ha l'evidente scopo di evitare le cosiddette "*fishing expeditions*" tipiche della *pre-trial discovery* negli Stati Uniti: con le quali una parte chiede all'altra di comunicarle di quali documenti sia in possesso, relativamente ad un certo oggetto, e di consegnarli tutti; oppure con le quali la parte richiedente indica genericamente masse immense di documenti, la cui possibile rilevanza per la causa è ignota al richiedente stesso, al momento della richiesta (si veda, anche per i riferimenti alla giurisprudenza inglese, SERRAVALLE, *La Convenzione dell'Aja sull'assunzione di prove all'estero*, in *Diritto del commercio internazionale*, 1987, p. 481 ss.). Non vi è il minimo dubbio che la richiesta in questione, riferita come abbiamo visto ad una massa di 100 mila documenti, oggetto di sequestro nel corso di indagini penali in Italia, ha tutte le caratteristiche della "*fishing expedition*": il che la renderebbe inaccoglibile in tutta Europa, non solo in Italia dove comunque la questione è preclusa *ab origine* dalla natura assoluta della riserva *ex* art. 23.

Che la richiesta di assistenza giudiziaria sia funzionale alla realizzazione della procedura di *pre-trial discovery* è evidente persino dal testo della richiesta, dove si dice espressamente che la Multi District Litigation No. 1431 è stata assegnata alla Corte Distrettuale del Minnesota "per coordinare la **discovery** ed altre questioni attinenti al **pretrial**" ("*to coordinate discovery and other pretrial matters*", p. 3 dell'originale, trad. nostra).

L'ordine del giudice del 10 novembre, sopra citato, con il quale si dà il via alla richiesta, è, appunto, denominato il ***Pretrial*** *Order n. 133.*

Ad oggi **non è pendente**, negli Stati Uniti, **alcun giudizio** (*trial*), né alcuno è fissato per il prossimo futuro. Alcuni giudizi sono stati discussi negli ultimi anni (Haltom vs. Bayer Corp et al. e Hardy vs Bayer Corp. et al.) e si sono risolti a completo favore della Bayer.

La parte attrice del processo americano ha cercato in tutti i modi, proponendo alla firma del giudice la richiesta di cooperazione giudiziaria, di

nascondere la natura di *pre-trial discovery* della procedura attualmente in corso avanti alla Corte Distrettuale del Minnesota: ben consapevole del fatto che questa natura rende, *ab origine*, inaccoglibile la richiesta.

Nella bozza originaria della richiesta, redatta dal *Plaintiffs' Steering Committee* e sottoposta alla firma del giudice, gli attori avevano, infatti, scritto, che le prove ottenute sarebbero state "depositate come prova nel processo" e che "le prove richieste sono necessarie per la prosecuzione di questo procedimento". Sulla ferma opposizione della Bayer, il giudice così disponeva, nella sua ordinanza del 10.11.2004: "Bayer rileva che la formula della Lettera di Richiesta sottoposta a questa Corte dal PSC così recita: «Ogni risposta e/o prova ritornata a questa Corte sarà depositata come prova nel processo. Le prove richieste sono necessarie per la prosecuzione di questo procedimento». Comunque, senza una preventiva valutazione delle prove richieste, questa Corte non può veridicamente asserire che tutte le prove ritornate saranno rilevanti, o ammissibili al processo. La Corte accoglie [l'opposizione] e modificherà la Lettera di richiesta di conseguenza" ("*Bayer points out that the form Letter Request submitted to this Court by the PSC provides «Any responses and/or evidence returned to this court will be submitted as evidence at trial. The requested evidence is necessary for the continuance of these proceedings.» However, without prior vetting of the requested documents, this Court cannot truthfully assert that all returned evidence will be relevant or admissible at trial. The Court agrees, and will amend the Letter Request accordingly*", p. 7 dell'originale, trad. nostra).

Il PSC non ottemperava, tuttavia, alla specifica richiesta del giudice e sottoponeva alla sua firma, l'8 dicembre 2004, un testo della lettera di richiesta contenente ancora la frase «Ogni risposta e/o prova ritornata a questa Corte sarà depositata come prova nel processo. Le prove richieste sono necessarie per la prosecuzione di questo procedimento».

Il giudice, in data 5 gennaio 2005 emanava, pertanto, un ulteriore *Pretrial order*, contrassegnato dal n. 137, con il quale disponeva che la frase sopra citata "sia cancellata e rimpiazzata dalla espressione seguente: «ogni risposta e/o prova ritornata a questa Corte sarà valutata e considerata dalla Corte per l'ammissibilità al processo, secondo le regole applicabili per l'ammissione della prova»" ("*the language «Any responses and/or evidence returned to this court will be submitted as evidence at trial. The requested evidence is necessary for the continuance of these proceedings» will be deleted and replaced by the following language: «Any responses and/or evidence returned to this Court will be reviewed and considered by the Court for admissibility at trial pursuant to applicable rules of evidence»*", p. 1 s. dell'originale, trad. nostra, all. 3).

Ancora una volta, dalle parole del giudice Davis, risulta chiarissimo che proprio di *pretrial discovery* si occupa la Multi District Litigation pendente avanti alla sua Corte: una procedura nella quale le prove raccolte devono essere valutate dal giudice, per decidere **se** saranno o meno rilevanti, o ammissibili, in

un futuro, **eventuale**, processo. Processo che, lo si ricorda, ancora non c'è, avanti a nessuna giurisdizione statunitense.

Con un ultimo tentativo di nascondere la vera natura della richiesta, il PSC ha contravvenuto in parte all'esplicito ordine del giudice, ed ha in un primo tempo formulato la richiesta in questi termini: "Ogni risposta e/o prova ritornata a questa corte sarà valutata e considerata dalla Corte per l'ammissibilità al processo, secondo le regole applicabili per l'ammissione della prova. Le prove richieste sono necessarie per la continuazione di questo procedimento" ("*Any responses and/or evidence returned to this Court will be reviewed and considered by the Court for admissibility at trial pursuant to applicable rules of evidence. The requested evidence is necessary for the continuance of these proceedings",* p. 4 della richiesta, all. 4, trad. nostra).

Il giudice, ovviamente, imponeva di cancellare dal testo della richiesta il riferimento al fatto che "le prove richieste sono necessarie per la continuazione di questo procedimento": frase che contravveniva ai pretrial order n. 133 e n. 137, e che non compare più nella p. 4 della richiesta come definitivamente sottoscritta dal giudice e trasmessa all'Autorità Centrale statunitense per il successivo inoltro al Ministero degli Affari esteri, e quindi alla Corte d'Appello di Torino.

In conclusione, non possiamo che ribadire che la richiesta di assistenza formulata dalla Corte Distrettuale del Minnesota attiene, senza alcun dubbio, ad una procedura di *pretrial discovery*, e non è dato sapere, oggi, se le prove richieste – nella denegata ipotesi in cui l'Autorità italiana decidesse di trasmetterle alla Corte statunitense – avrebbero qualsiasi rilevanza in un eventuale processo (ci permettiamo, fra l'altro, di supporre che non ne avrebbero alcuna, trattandosi di documenti sequestrati presso la consociata italiana Bayer S.p.A., che non è ad alcun titolo parte della *Multi District Litigation* americana, essendo competente solo per la commercializzazione e distribuzione dei farmaci in Italia).

**4. Inaccoglibilità della richiesta, perché le prove richieste non attengono alla materia civile e commerciale, e dunque restano estranee all'ambito applicativo della Convenzione dell'Aja del 18 marzo 1970.**

Come ben noto – e non occorre neppure ricordarlo al Ministero – la Convenzione dell'Aja del 18 marzo 1970 riguarda l' "Assunzione all'estero delle prove in materia civile e commerciale".

Non vi è dubbio che per l'autorità richiedente, ovvero per la District Court del Minnesota, l'oggetto della richiesta siano documenti da acquisire in un procedimento in matria civile e commerciale (la responsabilità da prodotto ha, infatti, tipicamente questa natura per il diritto statunitense).

Ciò non di meno, la richiesta ha ad oggetto specifico la consegna all'Autorità giudiziaria straniera di documenti ottenuti dalla Procura della Repubblica di Torino: che è l'Autorità Giudiziaria Richiesta.

I documenti sono stati ottenuti nel contesto di un **procedimento penale** (il n. 22434/01 R.G.N.R citato sopra), attraverso la **misura coercitiva tipica** del procedimento penale della perquisizione e sequestro. In particolare, si tratta dei documenti rinvenuti nel corso di una perquisizione, disposta ai sensi dell'art. 247 c.p.p., ed eseguita in data 16.7.2002, presso i locali della Bayer S.p.A. (società controllata interamente dalla Bayer A.G.), siti in Milano, viale Certosa 130. Documenti sequestrati dal Procuratore della Repubblica di Torino, dott. Raffaele Guariniello, ai sensi dell'art. 252 c.p.p.

Ad avviso degli scriventi, questi documenti **non possono essere oggetto di una richiesta di assistenza ai sensi della Convenzione dell'Aja**: proprio perché sono oggetto di un procedimento penale, e non di un procedimento civile.

È ben noto che le Autorità Giudiziarie dei paesi dell'Europa continentale rifiutano di ottemperare a richieste di cooperazione giudiziaria, inoltrate ai sensi della Convenzione dell'Aja, aventi ad oggetto – ad esempio - la materia fiscale: che appartiene al diritto civile negli Stati Uniti, ma a quello amministrativo in Italia e negli altri paesi di *civil law*. Il caso in esame oggi è ancora più lampante: perché la richiesta ha ad oggetto addirittura un procedimento **penale**.

Un Procuratore della Repubblica italiano, che sta conducendo indagini nel contesto di un procedimento penale, potrebbe cooperare con Autorità Giudiziarie straniere ma solo nel contesto di una rogatoria attivata seguendo le Convenzioni, o i Trattati, di mutua assistenza in **materia penale** (i quali presuppongono, ovviamente, quanto meno che un procedimento penale sia instaurato in entrambi i paesi, richiedente e richiesto: cosa che non è avvenuto nel caso di specie).

Una diversa conclusione si porrebbe in insanabile contrasto con la decisione del legislatore italiano di porre l'assoluta riserva di cui all'art. 23 della Convenzione.

Le ragioni che stanno alla base di questa decisione le abbiamo già esposte: l'ordinamento italiano non ha voluto consentire l'attuazione tramite gli strumenti della cooperazione giudiziaria di procedure di *pre-trial discovery*, contrarie ai principi che reggono l'acquisizione della prova nel nostro processo civile. Nel processo **penale** italiano, invece, è evidente che lo Stato, attraverso la Procura della Repubblica ha poteri di obbligare la parte – ed anche terze persone - alla consegna immediata di qualsiasi documento, anche utilizzando a tal fine la forza pubblica mediante procedure di perquisizione e sequestro.

Accogliere la richiesta oggi formulata dalla Corte Distrettuale del Minnesota implicherebbe un sostanziale aggiramento della riserva citata:

permettendo agli attori nel procedimento statunitense di realizzare una *pre-trial discovery*, attraverso l'utilizzo improprio degli strumenti coercitivi del processo penale italiano (e violando, nel contempo, come vedremo fra breve, anche le regole proprie di questo procedimento).

Ancor più grave, in questo caso, è il fatto che i documenti in questione non provengono nemmeno dalla società Bayer A.G., convenuta nel processo americano, ma ad una entità giuridica diversa, la Bayer S.p.A., che al procedimento americano è del tutto estranea.

**5. Inaccoglibilità della richiesta per violazione delle regole di segretezza interne che disciplinano gli atti di indagine nel processo penale italiano.**

Un ulteriore – e di per sé dirimente – motivo di inaccoglibilità della richiesta è legato alla specifica disciplina che regola le indagini preliminari nel processo penale. Gli atti richiesti, come abbiamo visto, sono stati sequestrati presso un soggetto terzo (Bayer S.p.A.), che non è parte del procedimento penale, nel contesto di indagini che non riguardano, allo stato, neanche la Bayer A.G., persona giuridica convenuta nel procedimento avanti la District Court del Minnesota, ma solo quattro specifiche persone fisiche: i nostri assistiti, tutti dirigenti o ex dirigenti della casa madre tedesca.

Gli atti sequestrati a seguito della perquisizione, come tutti gli altri atti delle indagini preliminari, sono sottoposti a **segreto istruttorio** interno ai sensi dell'art. 329 co. 1 c.p.p.: "Gli atti di indagine compiuti dal pubblico ministero e dalla polizia giudiziaria sono coperti dal segreto fino a quando l'imputato non ne possa avere conoscenza e, comunque, non oltre la chiusura delle indagini preliminari".

Gli indagati nel procedimento penale non hanno potuto, fino ad oggi, prendere conoscenza dei documenti sequestrati il 16.7.2004 presso la Bayer S.p.A.: che restano sottoposti a segreto sino a quando il Pubblico Ministero non vorrà procedere al deposito degli atti di indagine ai sensi dell'art. 415 bis c.p.p.

Fino a quel momento, la rivelazione del contenuto degli atti, e peggio ancora la sua trasmissione a terze parti – che è proprio quanto richiesto dall'Autorità giudiziaria statunitense – potrebbe configurare addirittura reato: rivelazione del segreto d'ufficio (art. 326 c.p.) o rivelazione di segreti inerenti a un procedimento penale (art. 379 bis c.p.).

È lecito supporre che proprio per questo motivo il Procuratore Aggiunto di Torino, dott. Raffaele Guariniello, non abbia mai dato seguito alla richiesta di consegna dei documenti in questione, a lui direttamente indirizzata dal PSC il 29 ottobre 2002 (e allegata alla richiesta di assistenza giudiziaria).

Non vale neanche la pena di sottolineare che il Pubblico Ministero non potrebbe consegnare quegli atti neanche ad un Tribunale Civile italiano. La Corte di cassazione (Cass. pen., VI sez., 6.7.1988, Di Crecchio, in Giur. It. 89, c. 163) ha, infatti, ritenuto configurabile tanto l'interesse privato in atti di ufficio (art. 324 c.p., oggi non più vigente) che la rivelazione del segreto d'ufficio (art. 326 c.p.) nel comportamento di un Pubblico Ministero che aveva trasmesso atti coperti da segreto istruttorio ad un giudice civile.

Si permetta di aggiungere, in conclusione, che consentire ai rappresentanti degli attori nel processo americano di avere a loro disposizione carte di cui non possono legittimamente disporre nemmeno gli imputati del processo italiano ed i loro difensori, costituirebbe una evidente violazione del principio di correttezza del procedimento penale, espresso dall'art. 6 della Convenzione Europea dei Diritti dell'Uomo: norma di natura costituzionale, sovraordinata, e alla luce della quale tutte le disposizioni di diritto interno ed internazionale applicabili nel nostro paese devono essere lette.

Con osservanza,

Torino, 22 febbraio 2005

avv. prof. Federico Stella (anche per il codifensore avv. Walther Graf)

avv. prof. Carlo Federico Grosso

avv. prof. Giovanni Flora

per l'avv. prof. Lucio Monaco e l'avv. Bernd Schneider il sostituto processuale, avv. prof. Mario Zanchetti

Depositato nella Cancelleria della Corte di Appello di Torino il 22/02/05

IL CANCELLIERE

Copia conforme all'originale

27 OTT. 2005

IL CANCELLIERE

A-111

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

In re: Baycol Products Litigation MDL No. 1431

This Document Relates to All Actions

_________________________________/

Letter of Request for International Judicial Assistance
Pursuant to the Hague Convention of 18 March 1970 on the Taking
Of Evidence in Civil or Commercial Matters

TO: Ministero Degli Affari Esteri
Direzione Generale Emigrazione
Ufficio IX
00194 Rome, Italy

FROM: The United States District Court
For the District of Minnesota
U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

PERSON TO WHOM THIS REQUEST FOR EVIDENCE IS DIRECTED:

Dr. Raffaele Guariniello
Torino Public Prosecutor
Procura della Repubblica
presso il Tribunale di Torino
C. so vittorio Emmanuelle 130 – Torino Italy

Please return the evidence directly to the attention of the requesting Judge – unless the information provided is not written in English. In that case, please return the evidence and all correspondence to:

Avv. Frank J. Geffers
Via Lisbona 11 · 00198 Roma
Telephone: +39 06 884 1535
Fax: +39 06 884 2094
E-mail: f.geffers@psglaw.com

## I. Names and Address of the parties and their representatives

Plaintiffs

Plaintiffs' Steering Committee, duly designated by the Court pursuant to Pretrial Order No. 3, dated February 1, 2002

Plaintiffs' Lead Counsel

Charles S. Zimmerman
ZIMMERMAN REED P.L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402

Richard A. Lockridge
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Defendants

Bayer AG
Werk Leverkusen
51368 Leverkusen
Germany

Bayer Corporation
100 Bayer Road
Pittsburgh, PA 15205

Lead Counsel for Bayer AG and Bayer Corporation

Philip Beck
Bartlit Beck Herman Palenchar & Scott
54 West Hubbard
Suite 300
Chicago, IL 60610

Glaxosmithkline PLC
Stockley Park West
Uxbridge
Middlesex, UB11 1BT

Smithkline Beecham Corporation
d/b/a Glaxosmithkline
One Franklin Plaza
Philadelphia, PA 19102

Lead Counsel for Glaxosmithkline PLC and Smithkline Beecham d/b/a Glaxosmithkline

Fred T. Magaziner
Hope S. Freiwald
Robert A. Limbacher
DECHERT
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

## II. Summary of the Case

This is a Multidistrict Litigation action which consists of over 10,000 product liability cases currently pending before the United States District Court for the District of Minnesota. These cases involve allegations concerning a medication generically known as Baycol (also known as Lipobay, Cholstat or Cerivastatin). Baycol was commonly prescribed to aid in

lowering cholesterol and triglycerides. It is within a class of drugs referred to as "statins", which are commonly prescribed for high cholesterol and heart disease. The plaintiffs allege that Baycol caused rhabdomyolysis, a disease which results in damage to muscle tissue, kidney failure or other related systemic injuries. Baycol has been linked to over 100 deaths. It was withdrawn from the market in August 2001.

Plaintiffs allege that Defendants Bayer AG, Bayer Corporation, Glaxosmithkline PLC and Smithkline Beecham d/b/a Glaxosmithkline tested, marketed distributed, promoted and sold Baycol/Lipobay.

The Judicial Panel on Multidistrict Litigation determined that the Baycol cases filed, involved common questions of fact, and that centralization of the Baycol cases was appropriate. All Baycol cases were then ordered to be transferred to the District of Minnesota, and assigned to this Court to coordinate discovery and other pretrial matters. Further, see the U.S. District Court, District of Minnesota's Baycol website at www.mnd.uscourts.gov/Baycol_Mdl.

**III. Requested Evidence**

Plaintiffs seek production of documents from Dr. Raffaele Guariniello, Torino Public Prosecutor, which he obtained through his criminal investigation of Bayer AG relating to the withdrawal of Baycol from the worldwide market. The evidence sought consists of approximately 100,000 documents (or pages of documents) obtained by Dr. Raffaele Guariniello from the offices of Bayer AG, Milan, Italy, in or about July 2002. To the best of Plaintiffs' knowledge, the documents are still in the possession and/or control of Dr. Guariniello.

Attorney Charles S. Zimmerman made an informal request of Dr. Raffaele Guariniello for these documents on October 29, 2002. A copy of Mr. Zimmerman's October 29, 2002, letter

to Dr. Guariniello is attached hereto as Exhibit A.

Plaintiffs have retained Italian counsel who will facilitate in the acquisition of these documents and any arrangements for copying, shipping and handling of the documents, in addition to any other matters which may arise regarding this request. Plaintiff's Italian Counsel is Avv. Frank J. Geffers, Via Lisbona 11 · 00198 Roma; telephone: +39 06 884 1535; fax: +39 06 884 2094; e-mail: f.geffers@psglaw.com.

In addition to this request to Dr. Guariniello, Plaintiffs will be seeking to obtain this information from Defendant Bayer through formal Requests For Production of Documents.

Any responses and/or evidence returned to this court will be reviewed and considered by the Court for admissibility at trial pursuant to applicable rules of evidence. As allowed by the internal laws of Italy, please have all returned evidence verified and/or certified as to completeness and authenticity.

If any portion of this Request is deemed to be unacceptable under the laws of Italy, please disregard that portion and continue to comply with as much of the Request as is legally permissible.

**IV. Reimbursement for Costs**

This court understands that any fees and costs incurred in the execution of this Request are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Evidence Convention.

These fees and costs will be reimbursed by the above-named counsel for the Plaintiff up to $5,000. Avv. Frank J. Geffers, Via Lisbona 11 · 00198 Roma, telephone: +39 06 884 1535;

fax: +39 06 884 2094; e-mail: f.geffers@psglaw.com and Robert R. Hopper, Esq., ZIMMERMAN REED P.L.L.P., telephone: 1.612.341.0400; fax: 612.341.0844; e-mail: rrh@zimmreed.com, should be informed before the costs exceed this amount.

Dated:____________________

______________________________________________
United States District Court Judge Michael J. Davis
District of Minnesota
300 South Fourth Street
Minneapolis, MN 55415

ZIMMERMAN REED
ATTORNEYS AT LAW

October 29, 2002

CHARLES S. ZIMMERMAN
Admitted in Minnesota
csz@zimmreed.com

REPLY TO MINNEAPOLIS

*Via Federal Express*

Dr. Raffaele Guariniello
Torino Public Prosecutor
Procura della Repubblica
presso il Tribunale di Torino
C. so vittorio Emanuelle 130 - Torino
Italy

*RE:* *In re Baycol Products Litigation* - MDL No. 1431

Dear Dr. Guariniello:

As co-lead counsel of MDL No. 1431, *In re Baycol Products Litigation*, I am writing to make a formal request fo you to produce the documents which your office has obtained as a result of your criminal investigation of Bayer AG relating to the withdrawal of Baycol from the worldwide market. On February 1, 2002, myself and Richard Lockridge, of Lockridge Grindal Nauen, P.L.L.P., were appointed by the Honorable Judge Michael Davis, Judge o the United States District Court for the District of Minnesota, as Co-Lead Counsel, as indicated in the attached Pre-trial Order No. 3.

Kenneth B. Moll, of KENNETH B. MOLL & ASSOCIATES, LTD., appointed by Judge Davis to the Plaintiffs' Steering Committee, has informed us of his recent meeting with you in Torino, Italy on October 14-15, 2002 and you generosity and hospitality. He has indicated that your office has managed to gather a significant number of documents from Bayer AG and Bayer Milan through your criminal investigation. We feel that those documents would also b extremely relevant in our legal proceedings in the United States.

At your earliest convenience, please arrange with the undersigned for copies of those documents to be produced. I you have any questions regarding the above, please contact us at any time.

Very truly yours,

ZIMMERMAN REED, P.L.L.P.

Charles S. Zimmerman
CSZ:clk
Enclosure

EXHIBIT
A

cc: Plaintiffs' Steering Committee

A112

E-SERVED 11/10/04 02:52 PM ET Baycol MDL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Baycol Products Litigation | MDL No. 1431

This Document Relates to All Actions | Pretrial Order No. 133

---

Charles S. Zimmerman, Ronald S. Goldser and Robert R. Hopper, Zimmerman Reed, P.L.L.P and Richard A. Lockridge, Robert K. Shelquist, Yvonne M. Flaherty and Sunny H. Kim, Lockridge, Grindal Nauen, P.L.L.P for and on behalf of the Plaintiffs' Steering Committee.

Peter W. Sipkins, Dorsey & Whitney, Gene C. Shaerr, Frank R. Volpe and Richard H. Menard, Sidley Austin Brown & Wood LLP, Susan A. Weber, Sidley Austin Brown & Wood LLP, and Philip S. Beck and Adam L. Hoeflich, Bartlit Beck Herman Palenchar & Scott LLP, for and on behalf of Bayer Corporation and Bayer AG.

---

On June 10, 2004, the Plaintiffs' Steering Committee ("PSC") submitted a Letter of Request for Judicial Assistance Pursuant to the Hague Convention ("Letter Request"). By this Letter Request, the PSC seeks to obtain documents from Dr. Raffaele Guariniello, the Italian prosecutor that investigated Bayer beginning in September 2001. Specifically, the PSC seeks approximately 100,000 documents that Dr. Guariniello obtained in July 2002 from Bayer AG, Milan relating to the withdrawal of Baycol from the worldwide market. In their letter accompanying the Letter Requests, the PSC asserts that they have asked Bayer for these documents, but Bayer had not responded. Bayer now moves to quash



SCANNED
NOV 10 2004
U.S. DISTRICT COURT MPLS

E-SERVED 11/10/04 02:52 PM E BAYCOL MDL

Plaintiffs' Letter Request.

Background

The Hague Evidence Convention (hereinafter "Convention") prescribes procedures by which judicial authority in one contracting state may request evidence located in another state. Societe Nationale Industrielle Aerospatiale v. United States District Court for the District of Iowa, 482 U.S. 522, 524 (1987). "The Convention's purpose was to establish a system for obtaining evidence located abroad that would be 'tolerable' to the state executing the request and would produce evidence 'utilizable' in the requesting state." Aerospatiale, at 530 (citing Amram, Explantory Report on the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, in S. Exec. Doc. A., p. 11). In this case, both the United States and Italy are contracting states under the Convention.

As the party seeking to pursue discovery through the Convention, the PSC bears the burden of persuading this Court that proceeding in this manner is necessary and appropriate. Tulip Computers International B.V. v. Dell Computer Corporation, 254 F. Supp. 2d 469, 474 (D. Del. 2003)(citation omitted). "That burden is not great, however, since the 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." Tulip Computers 254 F. Supp. 2d at 474 (citing Aerospatiale, 482 U.S. at 541). Factors the Court may take into consideration in determining

E-SERVED 11/10/04 02:52 PM E Baycol MDL

whether Convention procedures should be used include: 1) the importance of the documents to the litigation; 2) the degree of specificity of the request; 3) whether the information originated in the United States; 4) the availability of alternate means of securing the information; and 5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. Aerospatiale, 482 U.S. at 544, n. 28.

There is no dispute that the proposed Letter Request is a means available under the Convention. The PSC has also demonstrated that the requested documents, purporting to relate to the withdrawal of Baycol from the worldwide market, are relevant and important to this litigation which include claims of strict liability, negligence and misrepresentation against Bayer AG and Bayer Corporation related to the marketing, testing, distribution and sale of Baycol. It also appears that resort to the Convention is the only means available to obtain the requested discovery from Dr. Guariniello, as he is a foreign person that is not a party to this case, and who is not otherwise subject to the jurisdiction of this Court. See eg., Tulip Computers, 254 F. Supp.2d at 474 (citation omitted); The Gap, Inc. v. Stone International Trading, Inc., GAP-MA, 1994 WL 38651, *1 (S.D.N.Y. Feb. 4, 1994)(citing Torreblanca de Aguilar v. Boeing Co., 806 F. Supp. 139, 144 (E.D.Tex. 1992)).

E-SERVED 11/10/04 02:52 PM ET BAYCOL MDL

Bayer nonetheless asks the Court to grant its motion to quash, arguing the Letter Request will not prove effective in light of Italy's Article 23 reservation. Article 23 of the Convention provides that "[a] Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pretrial discovery of documents in Common Law countries." When Italy ratified the Convention, it made the following reservation:

> The Italian Government declares, in accordance with Article 23, that it will not execute Letters of Request issued for the purpose of obtaining pretrial discovery of documents as known in Common Law countries.

Convention n.2c. It appears that the State Department has interpreted Italy's reservation as a complete refusal to execute Letter Requests for pretrial discovery pursuant to the Convention. U.S. Dept. of State, "Judicial Assistance - Italy" available at http://travel.state.gov/law/italy_legal.html. ("The Italian Central Authority has notified the Hague Conference on Private International Law that it will not grant requests for pre-trial discovery of documents.")

The PSC responds that this argument requires an interpretation of Italy's reservation under Article 23, and that the Italian court should be given the opportunity to make this interpretation. Even if interpretation of the Article 23 reservation were ripe for this Court to determine, the PSC argues that the reservation is not the substantial obstacle to discovery that the broad language of

E-SERVED 11/10/04 02:52 PM ET Baycol MDL 1431

Article 23 would suggest - because there is substantial debate over the definition of "pretrial discovery". See, Aerospatiale, at 563-565 (Blackmun, J., concurring in part, dissenting in part)(citing Bernard H. Oxman, The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Evidence Convention, 33 U. Miami L. Rev. 733, 773-74 (1983)(years after ratification, there appears to be a gross misunderstanding as to the definition of pre-trial discovery - that it was discovery used to search for evidence before institution of suit)). In his separate opinion, Justice Blackmun noted that many of the contracting states have modified the declarations made under Article 23, and that the emerging view is that these exceptions to discovery "applies only to 'requests that lack sufficient specificity or that have not been reviewed for relevancy by the requesting court.'" Id. at 565 (quoting Oxman, The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad, at 777).

Bayer further argues that the Letter Request at issue here will not prove effective as Italian law would prevent the disclosure of the requested documents. The documents sought were seized by an Italian prosecutor as part of a criminal investigation. Bayer asserts that Italian law provides that such documents must be kept under seal until and unless the prosecutor officially closes the investigation and issues a complaint. Zanchetti Decl. ¶ 5-6 (citing to Article 329 of the Italian

E-SERVED 11/10/04 02:52 PM BAYCOL MDL

Code of Criminal Procedure).

The PSC responds that this Court should not presume that Article 329 automatically operates to nullify the opportunity to present a Letter Request to the Italian authorities. Rather the Letter Request should issue, and the Italian authorities should determine whether Article 329 would prevent the documents from being produced. Further, Article 329 provides that the criminal investigation is secret "until the moment in which the defendant can have knowledge of them, and anyway not beyond the closing of the preliminary investigation." Plaintiffs assert that as the Italian prosecutor seized the documents at issue two years ago, it is likely the preliminary investigation is over. Geffers Decl. ¶ 3.3 Further, as the documents were in Bayer SpA's possession until they were seized, such documents were known to Bayer. Accordingly, the requested documents may not fall within the scope of Art. 329. Geffers Decl. ¶ 3.1.

The Court agrees that whether the Letter Request will be executed in light of Italy's Article 23 reservation, or whether the Letter Request conflicts with Article 329 of the Italian Code of Criminal Procedure, require interpretation of Italian law, which is best left to the appropriate Italian tribunal. See, Tulip Computers at 475 (with respect to Article 23 reservation, the court was satisfied that if requests are too broad under the law of the Netherlands, then the requests will be narrowed by the appropriate authorities in the Netherlands before documents are

E-SERVED 11/10/04 02:52 PM ET Baycol MDL 1431

produced); The GAP, Inc. v. Stone International Trading, Inc. et al., 1994 WL 38651, *2 (S.D.N.Y., Feb. 4, 1994)(foreign tribunal will first determine whether its laws regarding privileges is applicable to discovery request). Such arguments are thus not a basis for quashing the Letter Request at issue here.

Lastly, Bayer points out that the form Letter Request submitted to this Court by the PSC provides "**Any responses and/or evidence returned to this court will be submitted as evidence at trial. The requested evidence is necessary for the continuance of these proceedings.**" However, without prior vetting of the requested documents, this Court cannot truthfully assert that all returned evidence will be relevant or admissible at trial. The Court agrees, and will amend the Letter Request accordingly.

IT IS HEREBY ORDERED that the Bayer's Motion to Quash Plaintiffs' Request for a Letter Rogatory Pursuant to the Hague Convention [Doc. No. ] is DENIED. The Court will issue the Letter Request in the Form Attached hereto.

Date: 11.10.04

Michael J. Davis
United States District Court

AN 3

E-SERVE
01/06/05
12:42 PM E
Baycol MDL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAYCOL PRODUCTS LITIGATION | MDL No. 1431 (MJD) |
| This Document Relates to All Actions | Pretrial Order No. 137 |

---

Robert R. Hopper, Zimmerman Reed P.L.L.P. for and on behalf of the Plaintiffs' Steering Committee.

Peter W. Sipkins, Dorsey & Whitney LLP for and on behalf of Bayer Corporation.

---

This matter is before the Court upon Defendant Bayer Corporation's objections to the Letter Rogatory issued by this Court on December 8, 2004. The parties have submitted letter briefs to the Court concerning said objections, and based on such briefs, the Court hereby rules as follows:

IT IS HEREBY ORDERED that all copies of the Letters Rogatory issued by this Court on December 8, 2004 shall be returned to the Court by the Plaintiffs' Steering Committee. A new, revised Letter Rogatory shall issue with the following revision: the language "Any responses and/or evidence returned to this court will be submitted as evidence at trial. The requested evidence is necessary for the continuance of these proceedings." will be deleted and replaced by the following language: "Any responses and/or evidence returned to this Court will be reviewed

E-SERVE
01/06/05
12:42 PM E
Baycol MDL

and considered by the Court for admissibility at trial pursuant to applicable rules of evidence." The Plaintiffs' Steering Committee shall prepare and submit revised Letters Rogatory to the Court for signature.

Date: January 5, 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court

to Dr. Guariniello is attached hereto as Exhibit A.

Plaintiffs have retained Italian counsel who will facilitate in the acquisition of these documents and any arrangements for copying, shipping and handling of the documents, in addition to any other matters which may arise regarding this request. Plaintiff's Italian Counsel is Avv. Frank J. Geffers, Via Lisbona 11 · 00198 Roma; telephone: +39 06 884 1535; fax: +39 06 884 2094; e-mail: f.geffers@psglaw.com.

In addition to this request to Dr. Guariniello, Plaintiffs will be seeking to obtain this information from Defendant Bayer through formal Requests For Production of Documents.

Any responses and/or evidence returned to this court will be reviewed and considered by the Court for admissibility at trial pursuant to applicable rules of evidence. The requested evidence is necessary for the continuance of these proceedings. As allowed by the internal laws of Italy, please have all returned evidence verified and/or certified as to completeness and authenticity.

If any portion of this Request is deemed to be unacceptable under the laws of Italy, please disregard that portion and continue to comply with as much of the Request as is legally permissible.

**IV. Reimbursement for Costs**

This court understands that any fees and costs incurred in the execution of this Request are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Evidence Convention.

These fees and costs will be reimbursed by the above-named counsel for the Plaintiff up to $5,000. Avv. Frank J. Geffers, Via Lisbona 11 · 00198 Roma, telephone: +39 06 884 1535;