TURIN COURT OF APPEAL

FIRST CIVIL SECTION

In the proceedings V.G. 90/2005

Concerning the rogatory commission in civil proceedings: COMITATO DIRETTIVO DEGLI ATTORI (Order No. 3 of 1/2/2002) / BAYER AG, BAYER CORPORATION, GLAXOSMITHKLINE PLC, SMITHKLINE BEECHAM CORPORATION – coming from the U.S. District Court District of Minnesota and dated 12/07/2005 MDL No. 1431

---

**DECLARATION OF ARTHUR R. MILLER**

1. My name is Arthur R. Miller and I am a licensed attorney in the United States.

2. Since 1971, I have been a Professor of Law at Harvard Law School, Harvard University, Cambridge, Massachusetts. Prior to joining the Harvard faculty, I practiced law in New York, New York and also taught at the University of Minnesota and University of Michigan Law Schools.

3. I have authored and co-authored more than 40 books on United States court procedures, including Wright & Miller, *Federal Practice and Procedure*, the standard work on this subject in the Untied States for judges and lawyers. I have also taught law school courses on civil procedure, complex litigation, intellectual property, and law, information and technology throughout my career.

4. I have served as Commissioner on the United States Commission on New Technological Uses of Copyrighted Works, was a Reporter and Member of the Advisory Committee on Civil Rules of the Judicial Conference of the United States by appointment of the Chief Justice of the United States Supreme Court, and as a Reporter for the American Law Institute's Project on Complex Litigation. In 1961-1962, I was a member of an American delegation that worked with Italian Judges and lawyers on solving problems of international judicial assistance between the two nations.



SCANNED
DEC 01 2005
U.S. DISTRICT COURT MPLS

5. The purpose of my declaration is to clarify the definition, scope and interpretation of "pretrial discovery" in the United States legal system. It is my understanding that this issue is relevant to the United States Plaintiffs' in *In Re Baycol Products Liability Litigation*, Multi-District Litigation 1431, whose Request for production of documents seized by Dr. Raffaele Guariniello, Public Prosecutor in the Court of Torino, Italy, is currently before this Court.

6. The United States Plaintiffs seek production of the documents seized by the Italian Prosecutor in the Italian criminal investigation of Lipobay/Baycol and Defendant Bayer A.G.'s affiliate, Bayer SpA, through a Request for International Judicial Assistance, pursuant to the Hague Convention of March 18, 1970 ("the Hague Convention").

7. Civil proceedings entitled "In Re Baycol Products Liability Litigation, Multi-District Litigation 1431" ("MDL"), have been pending before the United States District Court, District of Minnesota since 2002. The United States litigation concerns allegations of wrong-doing and liability on behalf of Bayer and Bayer A.G. with regard to the drug Baycol, also known as Lipobay or Cerivasıatin.

8. Federal statute and Rules govern the MDL process. Specifically, the purpose of the coordinated and consolidated proceedings in the MDL, pursuant to 28 United States Code § 1407, is "for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions."

9. The role of the MDL also serves to avoid repetitive and duplicative discovery, as well as the entry of inconsistent Orders throughout the various jurisdictions within the United States, by centralizing control and management in a single United States District Court Judge. The scope of the MDL proceedings, including the extent to which discovery is permitted is a matter exclusively within the control of the MDL judge.

Leonardis

10. The MDL process and procedure provides a mechanism by which all related federally-filed cases can be prepared for trial by a single judge, in this case United States District Court Judge Michael J. Davis. In the MDL, each claimant retains his/her own attorney and the materials produced to the MDL court provide the trial exhibits for one or more of the individual cases.

11. It is the MDL Judge's role to facilitate coordinated and consolidated discovery common to the thousands of individual cases filed in or transferred to the MDL. Without the MDL process and authority of the MDL judge, the parties would face highly duplicative discovery and repetitive proceedings. In many, many instances the pretrial discovery process and the management by the MDL judge result in the termination of the litigation without a trial. By issuing the Letters Rogatory Request on behalf of all United States Plaintiffs, United States District Court Judge Michael J. Davis has consolidated the Plaintiffs' request into a single, uniform Request for International Judicial Assistance, pursuant to the Hague Convention. Absent this process, this Court may have been inundated with separate, and potentially inconsistent, Requests for International Judicial Assistance from every judicial district in the United States.

12. The evidence the United States Plaintiffs request concerns documents obtained by Dr. Guariniello from the offices of Bayer A.G./Bayer SpA in Milan, Italy in July 2002, several months after the United States litigation commenced.

13. Pretrial discovery, as it is known in the United States, encompasses virtually all aspects of the litigation leading up to commencement of a jury trial and is completely interrelated with and directly affects the trial itself. United States courts oversee and manage the precise nature and scope of the pretrial discovery to curtail abuses of the system, limit discovery to documents reasonably related to the litigation, and to prevent the "fishing expeditions" this Court seeks to prevent.

14. United States District Court Judge Michael J. Davis issued an initial Pretrial Order on January 16, 2002. Since that time, the Court has issued numerous Pretrial Orders addressing virtually every aspect of the pretrial discovery. The parties have completed virtually all aspects of the common pretrial discovery related to the thousands of United States claimants in the above-referenced MDL matter. Indeed, the United States District Court also has issued orders, categorically referred to as "Pretrial Orders," which provide for alternative dispute resolution, also known as mediation, of individual claims. In the United States legal system, mediation is often used instead of trial by the Court or jury to resolve individual claims.

15. The concept of "pretrial discovery" does not have a uniform meaning among the Hague Convention signatories. Specifically, the meaning of "Pretrial Discovery" differs between the United States and the civil law signatories of the Convention. This distinction has been recognized by the United States Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa*, 482 U.S. 522 (1987).

16. In *Aerospatiale*, the late, highly respected, United States Supreme Court Justice Blackmun addressed the intended meaning of "pretrial discovery." Specifically, Justice Blackmun noted: "the use of the term 'pretrial' seems likely to have been the product of a lack of communication. According to the United States delegates' report, at a meeting of the Special Commission on the Operation of the Evidence Convention held in 1978, delegates from civil-law countries reveal the 'gross misunderstanding' of the meaning of 'pretrial discovery,' thinking that is something used before the *institution* of a suit to search for evidence that would lead to litigation. A report of the United States Delegation, 17 Int'l Legal Materials 1417, 1421 (1978)." *Societe Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa*, 482 U.S. at 563, n. 21.

17. Justice Blackmun also noted that the "emerging view of [the pretrial] exception to discovery is that it applies only to 'requests that lack sufficient specificity or that have not been reviewed for relevancy by the requesting court.'" *Societe Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa,* 482 U.S. at 564-565 (internal citations omitted).

18. Justice Blackmun also recognized that "an Article 23 reservation and, in fact, the Convention in general, require an American court to give closer scrutiny to the evidence requested than is normal in the United States discovery, but this is not inconsistent with recent amendments to the Federal Rules of Civil Procedure that provide for a more active role on the part of the trial judge as a means of limiting discovery abuse." *Societe Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa,* 482 U.S. at 565, n. 23.

19. Decisions rendered by the United States Supreme Court are precedential and binding on all courts in the United States.

20. In the present litigation, Judge Davis has taken a very active role in monitoring the course and scope of the Baycol litigation to prevent discovery abuse. Moreover, with regard to the present request for documents through the Request for International Judicial Assistance, pursuant to the Hague Convention, the federal Court carefully scrutinized the appropriateness and scope of Plaintiffs' request and the importance of those documents to the proper resolution of the already-commenced litigation in the United States.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Arthur R. Miller

Sworn to before me this 18th day of July, 2005.

Notary Public

REBECCA WERTZER
Notary Public, State of New York
No. 01WE6121008
Qualified in New York County
Commission Expires January 3, 2009

5892-1

CORTE DI APPELLO DI TORINO

PRIMA SEZIONE CIVILE

**DICHIARAZIONE DI ARTHUR R. MILLER**

1. Il mio nome è Arthur R. Miller e sono un avvocato statunitense.

2. Dal 1971, sono stato Professore di diritto alla Harvard Law School, Harvard University, Cambridge, Massachusetts. Precedentemente ho esercitato la professione legale a New York, Stato di New York e ho anche insegnato presso la University of Minnesota e presso la University of Michigan Law School.

3. Sono autore e co-autore di più di 40 opere giuridiche sulle procedure giudiziali negli Stati Uniti, compreso Wright & Miller, *Federal Practice and Procedure*, che costituisce l'opera di riferimento in materia per i giudici e gli avvocati statunitensi. Durante la mia carriera, ho altresì tenuto corsi universitari di procedura civile, "complex litigation", proprietà intellettuale, e diritto, information and technology.

4. Sono stato Commissario presso la "United States Commission on New Technological Uses of Copyrighted Works", Relatore e Membro della "Advisory Committee on Civil Rules of the Judicial Conference of the United States Supreme Court", e Relatore per la "American Law Institute's Project on Complex Litigation". Nel 1961-1962, ero membro di una delegazione Americana che ha lavorato con giudici e avvocati italiani per la risoluzione di problemi di assistenza giudiziaria internazionale tra i due Paesi.

5. Lo scopo della mia dichiarazione è quello di chiarificare la definizione, l'oggetto e l'interpretazione del "pretrial discovery" nell'ordinamento giuridico statunitense, in quanto rilevante per l'attore nella causa "*In Re Baycol Products Liability Litigation, Multi-District Litigation1431*", la cui richiesta per l'assunzione di prove documentali acquisite dal Procuratore aggiunto dott. Raffaele Guariniello del Tribunale di Torino, Italia, pende attualmente davanti questa Corte.

6. L'attore statunitense richiede l'esibizione dei documenti acquisiti dal P.M. italiano nelle indagini concernenti Lipobay/Baycol e di Bayer SpA, società affiliata del convenuto Bayer A.G. attraverso una Richiesta di Assistenza Giudiziaria Internazionale ai sensi della Convenzione dell'Aia del 18 marzo 1970 ("la Convenzione dell'Aja").

7. Il procedimento civile "In Re Baycol Products Liability Litigation, Multi-District Litigation 1431" ("MDL"), pende davanti la Corte Distrettuale degli Stati Uniti, Distretto di Minnesota sin dal 2002. La causa statunitense concerne le imputazioni per fatto illecito e di responsabilità per fatto illecito della Bayer e della Bayer A.G. relativamente al farmaco Baycol, anche conosciuto sotto il nome di Lipobay o Cerivastatin.

8. Il procedimento della "Multi District Litigation"(ovvero cause multi-distrettuali) è disciplinato da leggi e regolamenti federali. Più specificamente, lo scopo dei procedimenti coordinati e consolidati nella MDL, ai sensi del 28 United States Code § 1407, è quello di "facilitare le parti e i testimoni nonché di promuovere la giusta ed efficiente conduzione delle relative azioni".

9. Il ruolo della MDL è anche quello di evitare assunzioni di prova (*discovery*) ripetitive e duplicative nonché l'emissione di ordinanze contradditorie nelle varie giurisdizioni degli Stati Uniti, mediante la concentrazione di queste attività davanti un unico giudice di una Corte distrettuale statunitense. L'oggetto dei procedimenti MDL, incluso l'ambito entro il quale la *discovery* è permessa, costituisce materia riservata esclusivamente al controllo del giudice MDL.

10. Il processo e la procedura della MDL prevedono un meccanismo attraverso il quale tutte le azioni federali correlate possono essere preparate per il giudizio davanti un unico giudice, nel caso di specie il Giudice della Corte Distrettuale Statunitense, Michael J. Davis. Nella MDL, ogni attore mantiene il proprio difensore e i materiali depositati presso la Corte della MDL potranno essere esibiti nell'ambito di uno o più dei singoli procedimenti.

11. Il ruolo del Giudice della MDL consiste nel facilitare la *discovery* coordinata e consolidata, comune alle migliaia di azioni individuali promosse o trasferite alla MDL. Senza la procedura MDL e l'autorità del Giudice della MDL, le parti dovrebbero affrontare dei procedimenti di *discovery* estremamente ripetitivi e duplicativi. In molti casi, la procedura

del *pretrial discovery* nonché la gestione da parte del Giudice della MDL risultano nella conclusione del processo stesso senza arrivare al *"trial"*. Con la Lettera di Richiesta di Assistenza Giudiziaria Internazionale per conto degli Attori statunitensi, il Giudice della Corte Distrettuale, Michael J. Davis, ha consolidato la richiesta degli Attori in un'unica ed uniforme Richiesta di Assistenza Giudiziaria, ai sensi della Convenzione dell'Aja. Senza questa procedura, questa Corte sarebbe potuta essere stata inondata con Richieste di Assistenza Giudiziaria distinte e potenzialmente contraddittorie provenienti da ogni distretto giudiziale degli Stati Uniti.

12. I mezzi di prova richiesti dagli attori statunitensi concernono i documenti ottenuti dal Dott. Guariniello negli uffici della Bayer A.G./Bayer SpA a Milano, Italia, nel luglio 2002, diversi mesi dopo che la causa negli Stati Uniti fosse iniziata.

13. La *Pretrial discovery*, come è noto negli Stati Uniti, ricomprende virtualmente tutti le fasi del processo antecedenti la fase davanti alla giuria, ed è parte integrante di e produce effetti diretti su quest'ultima. Le corti degli Stati Uniti sovrintendono e gestiscono la natura precisa e l'oggetto della *pretrial discovery* al fine di ridurre gli abusi del sistema, di limitare la *discovery* ai documenti ragionevolmente attinenti alla controversia e per prevenire espedienti dilatori che questa Corte intende prevenire.

14. Il Giudice Michael J. Davis della Corte Distrettuale degli Stati Uniti ha emesso una *Pretrial Order* il 16 gennaio 2002. Sin da quel momento, la Corte ha emesso numerose *Pretrial Orders* riguardanti, di fatto, ogni aspetto della *pretrial discovery*. Le parti hanno virtualmente completato tutti gli aspetti della *pretrial discovery* comuni alle migliaia di ricorrenti statunitensi nella sopramenzionata causa multidistrettuale (MDL). Invero, la Corte Distrettuale statunitense ha altresì emesso delle ordinanze, categoricamente definite "Pretrial Orders" che forniscono un strumento alternativo di definizione di una controverisa individuale, anche noto come mediazione. Nell'ordinamento giuridico statunitense, la mediazione viene frequentemente utilizzata, da parte della Corte o della giuria, in luogo del processo per definire le singole controversie.

15. Il concetto di *pretrial discovery* non ha un significato uniforme fra i diversi firmatari della Convenzione dell'Aia. Più precisamente, il significato di *pretrial discovery* risulta diverso per gli Stati Uniti rispetto ai Paesi di *civil law* firmatari della Convenzione. Questa

distinzione è stata riconosciuta dalla Corte Suprema degli Stati Uniti nel procedimento "*Société Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa*, 482 U.S. 522 (1987)"

16. Nel procedimento *Aerospatiale*, l'autorevole fu Giudice Blackmum della Corte Suprema si è espresso sul significato sottinteso di *pretrial discovery*. Più specificamente, il Giudice ha rilevato che: "l'impiego del termine 'pretrial' è il risultato di una mancanza di comunicazione. In base ad un rapporto della delegazione statunitense, ad un convegno della Commissione Speciale sul Funzionamento della Convenzione sui mezzi di prova, tenutasi nel 1978, le delegazioni dei Paesi di *civil-law* hanno rivelato un 'manifesto fraintendimento' del significato della 'pretrial discovery', ritenendo che fosse qualcosa che viene utilizzata prima dell'instaurazione del processo per la ricerca di prove che avrebbe portato al dibattimento. A report of the United States Delegation, 17 Legal Materials 1417, 1421 (1978)." *Société Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa*, 482 U.S. at 563, n.21.

17. Il Giudice Blackmun ha anche rilevato che "l'orientamento emergente relativo all'eccezione alla [*pretrial*] *discovery* è che quest'ultima si applica soltanto 'a richieste non siano sufficientemente definite o che non siano state esaminate per loro rilevanza da parte della corte richiedente'". *Société Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa*, 482 U.S. at 564-565 (citazioni interne omesse).

18. Il Giudice Blackmun ha altresì riconosciuto che "una riserva ai sensi dell'articolo 23 e la Convenzione in generale necessitano da parte di una corte americana di un esame maggiormente approfondito rispetto a quello richiesto per la *discovery* negli Stati Uniti, ma ciò non si pone in contrasto con le recenti modifiche delle Norme Federali di Procedura Civile volte ad accrescere il ruolo del Giudice nel limitare gli abusi della *discovery*". *Société Nationale Industrielle Aerospatiale v. United States District Court, S. D. Iowa*, 482 U.S. at 565, n. 23.

19. Occorre notare che le decisioni della Corte Suprema degli Stati Uniti costituiscono precedenti vincolanti per tutte le corti statunitensi.

20. Nella presente causa, il Giudice Davis, al fine prevenire abusi nella ***discovery***, ha assunto un ruolo molto attivo nel monitoraggio dell'iter e dell'oggetto del caso Baycol. Invero, con riguardo alla presente richiesta di documenti tramite la Richiesta di Assistenza Giudiziaria Internazionale, ai sensi della Convenzione dell'Aia, la Corte federale ha minuziosamente esaminato l'opportunità e l'oggetto della richiesta degli attori nonché l'importanza di quei documenti ai fini di una corretta risoluzione della causa iniziata negli Stati Uniti.




Il dichiarante null'altro ha detto.

(firmato) Arthur R. Millier




Giurato davanti a me questo

giorno 15 luglio 2005

(firmato)

Rebecca Wertzer
Notaio Pubblico, Stato di New York
No. 01WE6121008
Abilitato nella Contea di New York
Il mandato scade il 3 gennaio 2009

**TRIBUNALE DI ROMA**

Ufficio Atti Notori - Perizie e Traduzioni

CRONOLOGICO

N. 8652

Roma, 25 LUG. 2005

IL COLLABORATORE

## VERBALE DI GIURAMENTO

Addì 25/07/2005 avanti al sottoscritto Cancelliere è presente il Signor: ECONOMIDES MARCO LORENZO MARIA documento: CARTA D'IDENTITÀ AK 8891593 rilasciato da COMUNE DI ROMA il 15/06/2005 il quale chiede di asseverare con giuramento il suesteso atto. Io Cancelliere, previe ammonizioni di legge, invito il comparente al giuramento, che egli presta ripetendo: "Giuro di avere bene e fedelmente adempiuto all'incarico affidatomi al solo scopo di far conoscere la verità".

Letto, confermato e sottoscritto.

TRIBUNALE ORDINARIO DI ROMA

IL DIRETTORE DI CANCELLERIA
(Anna Paola Tedeschi)