Affinché l'Ecc.ma Corte di Appello di Torino, prima sezione civile, *contraris reiectis*, Voglia:

1. Dare esecuzione, anche per le ragioni di cui sopra, alla richiesta di rogatoria internazionale ai sensi della Convenzione dell'Aja del 1970;
2. Ascoltare in sede camerale, lo scriventi avvocato.

Si deposita affidavit redatto dal Prof. Miller di Harvard, con traduzione giurata.

Roma

Avv. Frank J. Geffers

Frank Geffers

DEPOSITATO nella Cancelleria della Corte d'Appello di Torino, li 28 LUG. 2005

IL CANCELLIERE
IL CANCELLIERE
Dr.ssa Giuseppina LABALESTRA

Torino 27 OTT. 2005
IL CANCELLIERE

SCANNED
DEC 01 2005
U.S. DISTRICT COURT MPLS

**Corte di appello di Torino**

**Sezione volontaria giurisdizione**

**Procedimento v.g. 90/2005**

**Memoria di replica**

**Per**

Comitato direttivo degli attori (ord. istrutt. N. 3 del 01/02/2002), rappresentato e difeso dall'avv. Frank Jorg Geffers, giusta procura del 9 maggio 2005

**Avverso**

Manfred Schneider, Giovanni Fenu, David Ebsworth, Ernst Weidmann, quali dirigenti della Bayer AG

**premessa**

In data 17.02.2005 il Tribunale distrettuale statunitense del Minnesota presentava, in conformità a quanto disposto dalla Convenzione dell'Aja del 18 marzo 1970, istanza di assistenza giudiziaria in relazione al procedimento Baycol Products litigation MDL n. 1431. Avverso la predetta istanza, regolarmente formulata e pervenuta alla commissione rogatoria, i sig. Manfred Schneider, Giovanni Fenu, David Ebsworth ed Ernst Weidmann, in qualità di dirigenti della Bayer AG ed anche in relazione ai procedimenti penali pendenti dinanzi alla Procura della Repubblica presso il Tribunale di Torino (proc. n. 22434/01 e n. 14707/03, Procuratore aggiunto dott. Guariniello e sostituto procuratore dott.ssa Panelli) presentavano memorie, notificate, in data 15.04.05, al comitato degli attori, domiciliato presso lo studio dello scrivente avvocato.

Con l'indicata memoria, i dirigenti della Bayer evidenziavano preliminarmente che l'oggetto dei procedimenti penali su richiamati atteneva a fatti concernenti lo sviluppo, la produzione, la commercializzazione ed il successivo ritiro dal commercio di un farmaco, noto come Lipobay o Baycol, da parte della società multinazionale Bayer AG; precisavano altresì che la Multi District Litigation n. 1431, pendente negli Stati Uniti, è un giudizio correlato alla produzione, commercializzazione ed al ritiro dal mercato del farmaco cerivastatina. Veniva dunque evidenziato che entrambi i procedimenti, in un caso penale nell'altro civile, attenevano alla medesima fattispecie e cioè alla produzione/commercializzazione e

successivo ritiro dal mercato del Baycol nonché all'accertamento degli effetti dannosi sulla salute dei pazienti che ne facevano utilizzo.

Con le indicate memorie, la Bayer si opponeva alla richiesta di assistenza giudiziaria presentata da parte dell'autorità americana deducendo in primo luogo l'inaccoglibilità della richiesta per violazione della riserva di cui all'art. 23 della convenzione dell'Aja e per la non attinenza delle prove richieste alla materia civile e commerciale, deduceva infine l'inaccoglibilità della richiesta per violazione delle regole di segretezza interna.

In data 11 maggio 2005, rilevando la necessità di dover fornire chiarimenti sulla legge americana ed in particolare sul concetto di pre-trial discovery, la scrivente difesa presentava istanza di proroga al fine di poter produrre, unitamente alle presenti memorie, un affidavit, idoneo a fornire una definizione di pre trial discovery in grado di fugare ogni dubbio sulla natura dell'indicato concetto .

In pari data veniva accolta l'istanza formulata e veniva concesso termine di ulteriori 40 giorni per depositare memorie, veniva altresì concesso termine, sino al 31 maggio, per notificare a controparte il summenzionato provvedimento. Successivamente, in data 17 giugno 2005, non essendo ancora pervenuta dagli Stati Uniti l'affidavit richiesto, veniva richiesta una nuova proroga di 40 giorni. In data 20 giugno 2005, la Corte di appello di Tornino emetteva il decreto con il quale concedeva l'ulteriore proroga.

Tanto premesso, la scrivente difesa intende, con le presenti memorie, evidenziare l'infondatezza di quanto ex adverso dedotto, precisando quanto segue:

**1. Infondatezza delle avverse deduzioni -erronea interpretazione del concetto di *pre trial discovery* :**

In merito alla presunta inaccoglibilità della richiesta di rogatoria, in base all'art. 23 della convenzione dell'Aja del 1970, controparte evidenziava nelle sue memorie quanto giustamente precisato anche dalla corte distrettuale del Minnesota nell'ordinanza n. 133. Con tale ordinanza, la Corte statunitense riteneva di non poter giudicare in merito alla disposizione dell'art. 23, della più volte citata convenzione, in quanto implicava l'interpretazione del diritto italiano. Orbene è il caso di precisare che se da un lato il giudice statunitense non si è potuto pronunciare su quanto disposto dall'art. 23 della convenzione

giacché richiedeva l'interpretazione del diritto italiano, dall'altro non bisogna dimenticare che per le stesse ragioni il giudice italiano non può decidere in ordine a disposizioni che implicano interpretazione del diritto straniero; in particolare si fa riferimento al concetto di *pre trial discovery*.

Dunque di natura preliminare, rispetto a qualunque ulteriore argomentazione, è dare una corretta interpretazione del concetto di *pre trial discovery*, non potendosi assumere come tale l'indicazione utilizzata da controparte. Questa ultima, infatti, non solo prescinde dalla *ratio* sottesa alla stessa convenzione, vanificandone lo scopo, ma addirittura attraverso la sua interpretazione propone una visione distorta dell'indicato concetto che non trova riscontro alcuno né nella nostra normativa né tanto meno in quella statunitense nella quale il concetto in discorso ha la sua origine ed applicazione.

Controparte, nel fornire la sua ricostruzione del concetto di *pre trial*, parte da un erroneo assunto, basato essenzialmente sulle diverse modalità di assunzione della prova nell'ambito dei Paesi di Common law e di Civil law. L'errato presupposto da cui muove controparte consiste essenzialmente nel considerare il *pre trial* come una fase puramente pre-giudiziale, in cui non vi sarebbe l'intervento del giudice. Non sembra pretestuoso, nell'opinione della scrivente difesa, evidenziare quanto sostenuto da autorevole dottrina, citata peraltro anche da controparte, in merito allo svolgimento del processo negli Stati Uniti, (cfr. Serravalle, "La Convenzione dell'Aja sull'assunzione di prove all'estero", in Diritto del commercio internazionale, 1987). Secondo l'indicata dottrina, nei Paesi di common law " ***il processo è articolato in due fasi: la prima denominata pre trial, [..] finalizzata a consentire alle parti di reperire i mezzi di prova, prendere conoscenza di quelli predisposti dalla controparte e preparare la causa per la discussione***; *la seconda fase, invece denominata Trial, consiste nella presentazione che le parti fanno in tribunale delle proprie argomentazioni, fornendo la propria ricostruzione dei fatti, eventualmente presentando delle prove documentali e soprattutto procedendo direttamente all'interrogatorio dei testi, mentre il giudice ha una mera funzione di supervisione."* Come emerge chiaramente dal testo in discorso **la pre trial è la prima fase del processo e non una fase anteriore allo stesso, dunque non può considerarsi esatta l'affermazione contenuta nelle avverse memorie** laddove si sostiene

che "*ad oggi non è pendente, negli Stati Uniti, alcun giudizio (trial), né alcuno è fissato per il prossimo futuro*". In realtà quello che controparte ritiene come il "processo" costituisce, nella più ampia e corretta visione proposta anche alla luce della dottrina su menzionata, quello che secondo l'ordinamento italiano potrebbe essere definito come "udienza di discussione". Dunque, l'accezione inglese "*pre trial*" non può essere tradotta incautamente come "prima del processo", pena l'assurdo logico di vanificare lo scopo stesso della convenzione.

**2. Erronea interpretazione dell'art. 23 -applicabilità della convenzione dell'Aja:**

Chiarito il concetto di *pre trial discovery*, è necessario, nell'opinione della scrivente difesa, inserire quanto sopra precisato nel più ampio contesto del dettato normativo dell'art. 23 della convezione dell'Aja, proponendo una chiave di lettura combinata che abbia cioè ad oggetto non solo il significato letterale ma quello più ampio dell'ambito nel quale è espresso. Infatti, ed a rigor di logica, se è pur vero che tale norma recita testualmente "*Ogni stato contraente può, al momento della firma, della ratifica o dell'adesione, dichiarare di non eseguire le rogatorie che hanno per oggetto una procedura conosciuta negli Stati che applicano la Common Law sotto il nome di pre trial discovery of documents*" è anche vero che tale dettato normativo non può essere scisso dal contesto nel quale è inserito e da cui per ciò stesso non può prescindere. Con ciò si intende dire che il concetto di *pre trial discovery* e l'art. 23 della convenzione non devono essere visti separatamente, ma devono essere inquadrati ed interpretati nel senso che emerge dal contesto nel quale sono espressi, ossia la cooperazione tra gli Stati per l'assunzione di prove all'estero.

Sebbene quanto sopra riportato può sembrare banale, poiché a tanto ci condurrebbe la logica prima ancora dei criteri di ermeneutica, è bene precisarne comunque l'importanza poiché i maggiori problemi in ordine all'ammissibilità delle rogatorie da parte degli Stati Uniti, in esecuzione della convenzione dell'Aja, si rinvengono proprio in relazione ai rapporti tra *pre trial discovery* ed art. 23 della convenzione. Ancora una volta dunque la dottrina ha avuto modo di evidenziare e chiarire che le difficoltà di dare corso alle richieste di rogatorie da parte degli Stati Uniti nascono dalla erronea e sommaria interpretazione del concetto di *pre*

*trial* che ha indotto alla convinzione che la stessa attenga ad una fase pre processuale e quindi non giudiziaria.

In sintesi ciò che la scrivente difesa intende evidenziare, in conformità a quanto sostenuto da acclarata dottrina, è che la disposizione in esame (art. 23) non intende consentire agli stati firmatari di ignorare automaticamente le richieste di rogatorie concernenti la pre trial discovery, bensì vuole semplicemente consentire agli Stati di rifiutare l'esecuzione di quelle richieste volte a realizzare le così dette *fishing expedition*, cioè quella procedura mediante la quale le parti tentano di acquisire dalla controparte o da terzi la produzione indiscriminata di documenti anche solo marginalmente attinenti alla materia del contendere. In pratica ciò che il dettato dell'art. 23 vuole evitare è semplicemente la ricerca a tappeto di materiale probatorio non definito nella speranza di rinvenire elementi utili per il giudizio. Del resto anche controparte riconosce, nelle sue memorie, che il motivo che ha indotto il Regno Unito a proporre tale riserva era proprio quello di evitare le così dette fishing expedition e non anche quello di stabilire una riserva assoluta nei confronti della pre-trial.

Tale interpretazione può essere ragionevolmente condivisa anche alla luce dei principi di ermeneutica per l'interpretazione dei trattati. Tali principi individuano nei lavori preparatori e nello scopo da raggiungere gli elementi da cui trarre un'interpretazione in grado di rispettare le finalità che l'accordo internazionale intendeva raggiungere. Ratio della convenzione è propriamente quella di facilitare l'esecuzione di rogatorie all'estero superando le difficoltà dei sistemi giuridici nazionali: ritenere dunque che sussista un divieto a priori che consenta agli stati firmatari di rifiutare l'esecuzione di una rogatoria attinente ad un procedimento ampiamente utilizzato nei paesi di common law in generale e negli Stati Uniti in particolare sarebbe oltre modo irragionevole. Che senso avrebbe, infatti, sottoscrivere accordi con gli Stati Uniti, che tra latro sono i promotori dell'accordo stesso, quando poi si esclude automaticamente tale Paese dall'ambito di applicazione della convenzione? In favore dell'interpretazione appena fornita conducono anche i lavori preparatori alla convenzione, da dove emerge in modo incontrovertibile che l'intento del delegato britannico, che propose l'inserimento di tale riserva, era semplicemente quello di evitare le *fishing expedition* e non anche quello di escludere dall'ambito di applicazione della convenzione la pre trial discovery

che costituisce, giova ribadire, la fase istruttoria del processo americano e che per ciò stesso, anche a voler prescindere da quanto sopra argomentato, è fase giudiziaria!

**3. Infondatezza delle avverse deduzioni –erronea interpretazione del caso concreto - *fishing expedition* –coincidenza della causa petendi tra i procedimenti in corso negli Stati Uniti ed in Italia:**

L'infondatezza delle avverse argomentazioni emerge chiaramente ed ancora una volta dall'aver controparte posto alla base del suo ragionamento un presupposto sbagliato! La presente non può essere considerata una *fishing expedition* a tutti gli effetti, infatti, tale procedimento richiede a priori una genericità ed indeterminatezza nella ricerca dei documenti volta a trovare elementi su cui intentare una causa! Sulla base anche di quanto sopra dedotto ed eccepito è già evidente che ancora una volta l'assunto è quello che si verta in una fase pre giudiziaria! Nel caso di specie il comitato degli attori non si trova alla disperata ricerca di documenti che potrebbero essere potenzialmente utili ai fini di un giudizio ancora da promuovere: un giudizio è già stato proposto, è pendente dinanzi alla Corte distrettuale del Minnesota ed è attualmente nella sua fase istruttoria. Per quanto concerne poi la presunta genericità della categoria di documenti, richiesti con la lettera di rogatoria, che a dire di controparte sarebbe l'elemento provante la così detta *fishing expedition* bisogna evidenziare che il comitato degli attori non ha richiesto la produzione documentale di tutto quanto potrebbe essere utile ma ha indicato negli atti acquisiti nel procedimento penale italiano mediante perquisizione e sequestro una categoria specifica di documenti che, secondo la valutazione già formulata dalle autorità italiane, attengono alla produzione, commercializzazione e ritiro dal mercato del Lipobay.

In realtà il problema che generalmente si pone in relazione alle "spedizioni" è quello che la generica indicazione contenuta nella richiesta potrebbe far riferimento a documenti che in concreto non esistano, causando un notevole dispendio per lo Stato richiesto: nel caso di specie ogni dubbio in merito alla esistenza dei documenti richiesti non merita neanche di essere presa in considerazione in quanto acquisita agli atti dell'indicato procedimento. La connessione tra i due giudizi –italiano e americano- è di tutta evidenza, lo chiarisce la stessa controparte nelle sue memorie quando nella parte iniziale delle sue memorie chiarisce quale

sia l'oggetto dei due giudizi (produzione, commercializzazione e successivo ritiro dal mercato del farmaco Lipobay, nonché dei suoi effetti dannosi sulla salute), con l'unica differenza della natura del procedimento in un caso penale nell'altro civile. È palese a tal punto anche l'utilità dei documenti richiesti.

**4. il caso "*Aerospatiale*" – la sentenza del giudice Blackmun:**

A conforto di quanto sopra argomentato, questa difesa ritiene opportuno evidenziare quanto dichiarato dal Giudice Blackmun nel caso Aerospaziale, in ordine all'interpretazione dell'art. 23 della Convenzione, ha statuito che "*l'art. 23 e la Convenzione necessitano da parte di una Corte Americana di un esame maggiormente approfondito rispetto a quello richiesto dalla discovery negli Stati Uniti, tutto ciò risulta tra l'altro in coerenza con le recenti modifiche delle norme federali di procedura civile volte ad accrescere il ruolo del Giudice nel limitare gli abusi della discovery* ". In sostanza attraverso tale sentenza, che costituisce un precedente vincolante negli USA, si è stabilito che le Corti americane devono valutare attentamente il caso concreto prima di poter emettere un provvedimento di richiesta di assistenza giudiziaria ad un altro Paese. In sintesi negare la richiesta di assistenza giudiziaria, bollando il caso di specie come una fishing expeditions, equivarrebbe ad emettere un giudizio su una valutazione preventivamente svolta dalla corte americana.

**5. Procedimento penale - non necessarietà del principio della doppia incriminazione – trasmissibilità degli atti:**

Controparte nelle sue memorie deduce quale ulteriore motivo di inaccoglibilità della richiesta formulata dal comitato degli attori, sulla base della convenzione dell'Aja, la non attinenza dei documenti richiesti all'ambito di applicazione della convenzione dell'Aja. Sul punto si ritiene di dover procedere alle seguenti precisazioni. Nel chiarire che questa difesa ben conosce le annose questioni relative all'interpretazione dell'ambito di applicazione *ratione materiae* della citata convenzione, corre comunque l'obbligo di evidenziare che quello che controparte identifica come un confine netto in realtà non lo è! In primo luogo bisogna rilevare che in sede di lavori preparatori fu respinta l'idea di attribuire allo stato richiesto la competenza esclusiva a qualificare l'oggetto della controversia, in tale sede si

auspicava, infatti, che qualunque contrasto interpretativo dovesse essere risolto in via diplomatica.

In realtà è bene precisare che la Corte di Giustizia della Comunità Europea, chiamata ad interpretare la nozione di materia "civile e commerciale" ai fini dell'applicazione della Convenzione di Bruxelles sulla competenza giurisdizionale, il riconoscimento e l'esecuzione delle sentenze straniere, ha affermato che "si deve aver riguardo non già al diritto dell'uno o dell'altro degli Stati interessati, bensì da un lato agli obiettivi e al sistema della convenzione e, dall'altro, ai principi generali desumibili dal complesso degli ordinamenti nazionali". È evidente a tal punto che, attraverso tale sistema, si è in grado di evitare l'incertezza cui sarebbe indiscutibilmente legata l'ambito di applicazione della convenzione, giacché dovrebbe mutare in ragione dello Stato nel quale si deve eseguire l'atto istruttorio.

È bene precisare che la migliore dottrina (cfr. Serravalle) ritiene che indipendentemente dalla legge applicabile, la qualificazione della materia deve essere compiuta indipendentemente dalla natura del processo o del tribunale ove il giudizio è pendente, avendo riguardo alla *causa pretendi* ed al *petitum*, in quest'ottica si deve ritenere pertanto ammissibile l'assunzione di prove per un'azione civile anche se proposta nel corso di un procedimento penale.

Al fine di fugare ogni dubbio sulla legittimità della richiesta avanzata dal comitato degli attori, è opportuno precisare che la giurisprudenza ha fornito un'interpretazione liberale dei termini "civile e commericiale"cercando di ricomprendere, al suo interno, quelle aree di difficile caratterizzazione che sono ai margini tra il diritto civile, amministrativo e penale.

In merito poi alle rogatorie penali in senso stretto, bisogna precisare, contrariamente a quanto ex adverso sostenuto, che per dare esecuzione alle stesse non è necessaria la così detta doppia punibilità, nel senso che non sarà necessario che il fatto per cui è chiesta la rogatoria costituisca reato in entrambi i Paesi (richiesto e richiedente).

Al fine di fugare ogni dubbio, sulla legittimità della richiesta formulata dal comitato degli attori, si ritiene doveroso rappresentare alla Ecc.ma Corte adita quanto sostenuto da autorevole dottrina in merito alla rogabilità di atti di un procedimento penale. Secondo tale dottrina "*può essere oggetto di rogatoria anche la trasmissione di atti relativi a*

*procedimenti penali instaurati nello Stato richiesto, quando essi abbiano rilevanza nel procedimento pendente dello Stato richiedente; è stato infatti ritenuto dalla giurisprudenza di legittimità che l'attività di scambio è consentita indipendentemente da una specifica previsione pattizia in quanto ormai assunta a norma consuetudinaria di diritto internazionale valida nell'ambito della cooperazione tra gli Stati* (cfr. cass. 9,7,1983, Nuvoletta, in C.e.d., n. 6393). *In realtà nel nostro ordinamento questo scambio può avvenire sia in attivo che in passivo anche al di fuori di una procedura rogatoriale [...].* Dunque, se sulla base dell'art. 78 disp.att. c.p.p. è possibile per l'Italia acquisire atti di procedimenti stranieri, sulla base del principio di reciprocità l'Italia dovrà consentire di richiedere ed acquisire, senza particolari formalità, atti di un procedimento svolto in Italia. Sembra infine doverosa un'ultima precisazione. La giurisprudenza di legittimità, in ordine all'interrogatorio dell'indagato o imputato ha dichiarato la sua rogabilità sia nella fase "segreta" delle indagini preliminari, sia nella fase pubblica del processo. (cfr. Rogatorie penali e cooperazione giudiziaria internazionale, a cura di Giuseppe la Greca ed. 2003).

Orbene la conclusione è evidente! E', infatti, da ritenersi legittima la richiesta di rogatoria, effettuata dal comitato degli attori, anche alla luce di quanto sinora esposto.

Un'ultima considerazione merita invece l'assunto di controparte in ordine alla richiesta di assistenza giudiziaria formulata direttamente al Procuratore aggiunto di Torino, dott. Raffaele Guariniello. Sulla base di quanto ex adverso sostenuto, il comitato degli attori avrebbe dovuto formulare richiesta di assistenza giudiziaria nell'ambito di un procedimento penale e non agire mediante il dettato della convenzione dell'Aja: ma in realtà il comitato degli attori aveva già formulato una richiesta al procuratore aggiunto, sulla base di un procedimento che ha il suo omologo in Italia nel disposto dell'art. 78 disp.att. c.p.p. Dunque delle due l'una o non vi è possibilità di assistenza a nessun titolo tra Italia e Stati Uniti, con le ovvie conseguenze in sede diplomatica, oppure tale possibilità deve essere ritenuta ammissibile alternativamente sulla base della convenzione dell'Aja o sulla base di una richiesta informale, così come già formulata.

Tanto premesso, si

**Conclude**