PROF. AVV. FEDERICO STELLA
ORDINARIO DI DIRITTO PENALE
NELL'UNIVERSITÀ CATTOLICA DEL SACRO CUORE

Il 7-10-05
IL CANCELLIERE

**CORTE D'APPELLO DI TORINO**
**SEZIONE I CIVILE**

**Procedimento V.G. 90/2005**

I sottoscritti avv. prof. Federico Stella, avv. Walther Graf, avv. prof Carlo Federico Grosso, avv. prof. Giovanni Flora, avv. prof. Lucio Monaco, avv. prof. Mario Zanchetti (quale sostituto processuale dell'avv. Bernd Schneider), nell'interesse dei loro assistiti Manfred Schneider, Giovanni Fenu, David Ebsworth ed Ernst Weidmann,

depositano

parere *pro veritate* redatto dal prof. Michele Taruffo, ordinario di Diritto processuale civile presso la Facoltà di Giurisprudenza dell'Università di Pavia, in replica alla memoria depositata da controparte in data 28 luglio 2005.

Sulla base delle osservazioni contenute in siffatto parere e delle argomentazioni svolte nella precedente memoria del 22 febbraio 2005, che qui si richiama integralmente, gli scriventi difensori insistono perché codesta Corte d'Appello voglia respingere, in quanto inammissibile, la richiesta di assistenza giudiziaria formulata dalla Corte distrettuale del Minnesota nella causa in re: Baycol Products Litigation, MDL N. 1431, secondo la Convenzione dell'Aja 18 marzo 1970.

Si tratta, a tutti gli effetti, di **richiesta incompatibile**, perché radicalmente in contrasto con i principi vigenti nel nostro ordinamento, in materia di ammissione delle prove e di esibizione di documenti (tra cui, primo fra tutti, il principio che vieta l'esibizione di atti e documenti di una indagine penale, come tali coperti dal segreto istruttorio) e si tratta, altresì, di richiesta funzionale alla realizzazione della c.d. ***discovery of documents*** (oltretutto così generica da configurare una vera e propria *fishing expedition*) che trova dunque un divieto generale e assoluto nella riserva posta dall'art. 23 della Convenzione dell'Aja 18 marzo 1970.

Con osservanza.
Torino 6 ottobre 2005.

(avv. prof. Federico Stella) (avv. prof. Carlo Federico Grosso)

(avv. prof. Giovanni Flora) (avv. prof. Lucio Monaco)

(avv. prof. Mario Zanchetti) (avv. Walther Graf)

anche a nome e per conto degli altri difensori

SCANNED
DEC 01 2005
U.S. DISTRICT COURT MPLS

20145 MILANO - VIA ALBERTO DA GIUSSANO, 15 - TEL. 02.481.90.40 - 02.48.01.34.40 - 02.481.90.66 - TELEFAX 02.481.90.66
fedstell@tin.it
COD. FISC. STL FRC 35C30 I685G - PART. IVA 02924050152

PROF. MICHELE TARUFFO
ORDINARIO DI DIRITTO PROCESSUALE CIVILE
PRESSO L'UNIVERSITA' DEGLI STUDI DI PAVIA

**Richiestone dagli Avv.Prof. Federico Stella, Avv.Prof. Carlo Federico Grosso, Avv.Prof. Giovanni Flora, Avv. Prof. Lucio Monaco e Avv.Prof. Mario Zanchetti, ho formulato il seguente**

**PARERE PRO VERITATE**

**destinato ad essere prodotto presso la Corte d'Appello di Torino, Sezione Volontaria Giurisdizione, nel procedimento relativo alla richiesta di assistenza giudiziaria formulata dall'U.S. District Court, District of Minnesota, nella causa *in re:Baycol Products Litigation,* MDL 1431, secondo la convenzione dell'Aja 18 marzo 1970.**

I richiedenti mi hanno posto il seguente quesito: se la detta richiesta di assistenza giudiziaria sia ammissibile sulla base della Convenzione dell'Aja del 1970, o se debba invece essere rigettata dal competente organo giudiziario italiano. Essi mi hanno fornito la documentazione a loro disposizione, inclusa una dichiarazione del Prof.Arthur Miller della Università di Harvard. Il presente parere si fonda su un approfondito esame di detta documentazione, nonché della letteratura e della giurisprudenza, italiane e statunitensi, rilevanti per la corretta soluzione del quesito.

Premetto, a chiarimento della mia competenza in materia, di essere dal 1976 professore ordinario di Diritto processuale civile presso la Facoltà di Giurisprudenza dell'Università di Pavia, ove insegno anche Metodi di risoluzione delle controversie, e per vari anni ho insegnato anche Diritto processuale comparato. Come *visiting professor* ho tenuto corsi di diritto processuale comparato e transnazionale presso la Law School dell'Università di Cornell e presso lo Hastings College of the Law dell'Università di California a San Francisco. Nelle stesse materie ho tenuto vari seminari e conferenze negli Stati Uniti (Harvard, Yale, Pennsylvania, Berkeley). Sono membro dell'*American Law Institute,* della *International Association of Procedural Law,* del *Bielefelder Kreis* e di altre associazioni nell'area del diritto processuale, del diritto comparato e della teoria del diritto. Sono membro dell'Accademia Nazionale dei Lincei.

Ho pubblicato vari volumi, tra cui *Il processo civile "adversary" nell'esperienza americana* (Padova 1979), e –con Geoffrey C.Hazard- *American Civil Procedure. An Introduction* (Yale University Press, 1992), volume che è stato usato in varie università statunitensi ed ha avuto edizioni in Italia, in Cina e in Giappone. Sono anche autore della voce *Diritto processuale civile dei paesi anglosassoni,* del *Digesto,* IV ed. (Torino 1989). Di recente ho pubblicato l'articolo *Rethinking the Standards of Proof* in 51 *American Journal of Comparative Law* 2003, p.659 ss.. Ho inoltre scritto il cap. *Evidence* del vol.XVI (Civil Procedure) della *International Encyclopedia of Comparative Law* (in corso di stampa).

Con Geoffrey C. Hazard ho diretto, per l'*American Law Institute,* un progetto che ha portato alla redazione di *Principles and Rules of Transnational Civil Procedure* (in corso di pubblicazione presso la Cambridge University Press), ossia di norme uniformi per le controversie transnazionali.

************

Il presente parere si articola in quattro punti fondamentali:

1. *Discovery* statunitense e contrarietà ai principi dell'ordinamento processuale italiano.
2. L'art.23 della Convenzione dell'Aja.
3. Analisi degli aspetti rilevanti del caso di specie.

4. Conclusioni.

1. Per quanto attiene all'assunzione di prove richiesta da soggetti stranieri, l'ordinamento italiano si fonda sul principio, ribadito nell'art.69 della legge n.218 del 31 maggio 1995 in materia di diritto internazionale privato, secondo il quale sono ammissibili in Italia attivita' istruttorie non previste dal diritto italiano, purche' esse non contrastino con i principi che vigono nel nostro ordinamento (cfr. Perini, *L'assistenza giudiziaria internazionale in materia probatoria civile,* in *Giur.It.* 2000,II,1767; Campeis-De Pauli, *Rogatorie attive e passive nella nuova disciplina del diritto internazionale privato e processuale (L.31.5.1995, n.218),* in *NGCC* 1998, II, p. 185; *Obtaining Discovery Abroad,* 2nd ed. 2005, p.163). Ne deriva che, di fronte ad una richiesta di acquisizione di prove in Italia, il criterio fondamentale che va applicato e' quello della compatibilita' di tale richiesta con i principi vigenti nell'ordinamento italiano. Occorre dunque chiarire -di fronte ad una richiesta di *discovery* di documenti proveniente dagli Stati Uniti- se il sistema nordamericano della *discovery of documents* sia o non sia compatibile con i principi che governano il sistema italiano. Questa analisi puo' essere utile anche alla fine di valutare un altro aspetto del problema, che attiene all'applicazione dell'art.23 della Convenzione dell'Aja. In base all'art.23 della Convenzione molti paesi, tra cui l'Italia, hanno formulato riserve dichiarando di non essere disponibili ad eseguire richieste di acquisizione di prove che siano disposte nell'ambito della *pre-trial discovery.* Al riguardo il vero problema non è –come spesso si ritiene- se la fase di *pre-trial* del processo statunitense abbia o non abbia carattere "giudiziario" nel senso italiano –o di *civil law*- del termine. La fase di *pretrial,* e dunque di *discovery,* ha luogo dopo la notifica al convenuto dello *statement of claim*, ma questo è l'aspetto meno rilevante del problema. Gli aspetti davvero importanti sono altri, ossia:

1.1. Il sistema processuale federale è incardinato, in base alla Rule 8 delle *Federal Rules of Civil Procedure* del 1938, sul c.d. *notice pleading*, ossia sul principio per cui l'atto introduttivo (l'equivalente del nostro atto di citazione) non deve contenere una indicazione precisa e completa dei fatti su cui si fonda la domanda dell'attore (il *complaint*), poiché la sua funzione non è –come accade invece in tutti i sistemi di *civil law*- quella di definire sin da subito l'oggetto della controversia indicando i fatti costitutivi del diritto che si fa valere, ma è solo quella di una sorta di *denuntiatio litis* con la quale si comunica al convenuto che si instaura una causa contro di lui, indicandone i termini in modo assolutamente generico. La Rule 8 richiede che l'attore indichi solo uno *"short and plain statement of the claim showing that the pleader is entitled to relief"*(ossia una breve e semplice formulazionedella domanda, che dimostri che l'attore ha diritto alla tutela), senza indicare i fatti che fondano la sua domanda. La norma richiede invero una "*very spare allegation*" che non include necessariamente l'indicazione dei fatti, o di tutti I fatti (cfr. James-Hazard-Leubsdorf, *Civil Procedure,* 5° ed., 2001, p.187 s.; Friedenthal-Kane-Miller, *Civil Procedure,* 4° ed., 2005, p.267 ss.). Si suppone invero che i fatti vengano indicati successivamente, nel corso della fase di *pre-trial* e comunque prima che la causa giunga al dibattimento. Questi principi sono da tempo consolidati, oltre che nelle norme, anche nella giurisprudenza delle Corti americane. Per citare un solo autorevole precedente, si può fare riferimento alla *Opinion* che il giudice Black scrisse per la Corte Suprema unanime nella decisione sul caso *Conley et al. v. Gibson et al.* (1957) (355 US 41). Black fa, infatti, riferimento alla regola comune (*"accepted rule"*) secondo la quale un *complaint* non dovrebbe essere dichiarato inammissibile per mancata formulazione della domanda, a meno che appaia evidente oltre ogni dubbio che l'attore non può provare alcun insieme di fatti a sostegno di essa (*"a complaint should not be dismissed for failure to state a claim unless it appers beyond doubt that the plaintiff can prove no set of facts in support of his claim"*) (*ibidem*, 46). Più specificamente, Black nota che le *Federal Rules of Civil Procedure* non richiedono che l'attore indichi in dettaglio i fatti su cui fonda la sua domanda *"do not require a claimant to set out in*

*detail the facts upon which he bases his claim"* (*ibidem*, 47), poiché apunto, come si è visto, ciò che si richiede è solo uno *"short and plain statement"* che metta il convenuto a conoscenza della domanda che viene rivolta contro di lui.

Talvolta accade, nella prassi, che l'attore indichi i fatti, o alcuni fatti, nello *statement of claim*, ma questa è una eventualità che dipende dalla scelta della parte: in ogni caso, il sistema è quello del *notice pleading* ed esso –come si è detto- non richiede alcuna indicazione analitica e completa dei fatti su cui si fonda la domanda.

1.2. L'adozione del *notice pleading* ha un'importanza fondamentale, anche nel presente discorso, per le conseguenze che produce riguardo alla funzione della *discovery* e quindi dei relativi provvedimenti e delle attività che in essa vengono svolte. Infatti la *discovery* non è soltanto, come spesso si crede, una tecnica attraverso la quale le parti vengono a conoscenza in anticipo –rispetto al *trial*- delle prove di cui dispongono le altre parti, ma è anche e soprattutto un repertorio di strumenti che vengono impiegati **per scoprire i fatti** che potranno essere usati per fondare la domanda iniziale, o comunque **per integrare e completare la definizione di tali fatti.** In altri termini, i fatti costitutivi della domanda finiranno con l'essere compiutamente definiti solo alla fine della fase preliminare. Dunque la *discovery* non equivale a ciò che noi definiremmo come un mezzo "istruttorio", ed è piuttosto uno strumento che serve per scoprire se, nelle prove in possesso delle altre parti, vi sono fatti che potrebbero essere invocati a sostegno della domanda iniziale. La *discovery* serve invero a stabilire quali sono le questioni che formano oggetto della controversia (*"to ascertain the issues that actually are in controversy between the parties"* e *"to determine what really is at issue"*: cfr. Friedenthal-Kane-Miller, *op.cit.,* p.398) e puo' essere usata per "disseppellire" fatti che la parte con conosceva (cfr. James-Hazard-Leubsdorf, *op.cit.,* p.188). Non a caso essa e' stata recentemente definita proprio come lo strumento per mezzo del quale le parti *"gain access to the facts that may directly or indirectly support their claims or defenses"*: cfr. *Obtaining Evidence Abroad,* cit., p.1). Al riguardo vale la pena di citare ancora l'opinione di Black nel caso *Conley v. Gibson*, ove si specifica che il sistema del *notice pleading* è reso possibile dalla possibilità di una *discovery* ampia, finalizzata alla scoperta dei fondamenti specifici della domanda e dell'eccezione, e alla definizione più precisa dei fatti e delle questioni da decidere (*"simplified notice pleading is made possible by the liberal opportunity for discovery, and other pretrial procedures, to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues") (ibidem, 48).* Non è dubbio, quindi, che la *discovery* serve a definire progressivamente l'effettiva materia del contendere: la *discovery of documents,* in particolare, viene adoperata nella speranza di scoprire, nei documenti della controparte, elementi direttamente o indirettamente identificatori o integratori dell'azione (così, tra i molti, Trocker, *Il contenzioso transnazionale e il diritto delle prove,* in *Riv.trim.dir.proc.civ.* 1992, p.484,; Taruffo, *Diritto processuale civile dei paesi anglosassoni,* in *Dig.disc.priv., Sez.civ.,* vol. VI, Torino 1990, p.353, e da ultimo Ficarelli, *Esibizione di documenti e discovery,* Torino 2004, p.142 ss.).

D'altra parte, va considerato che la *discovery* non costituisce neppure uno strumento istruttorio in senso proprio: essa non equivale alla nostra "assunzione" delle prove (che negli Stati Uniti ha luogo nel successivo *trial* e si chiama *presentation of evidence*). Essa si svolge tra le parti (salvo che occorrano provvedimenti del giudice) e serve solo alle parti per scoprire le prove di cui dispone l'altra parte, e per venire a conoscenza dei fatti che servono a fondare le rispettive posizioni in causa. Non a caso di regola il risultato della discovery non viene portato a conoscenza del giudice: il giudice si occupa delle prove solo quando la parte chiede che esse vangano ammesse al trial. A questo punto, tuttavia, non vengono in discussione le prove inammissibili che pure la parte ha scoperto (v. infra, 1.4), e neppure le prove ammissibili che la parte ha scoperto in sede di discovery ma che non ha più interesse a far assumere. In altri termini, il quadro probatorio che viene presentato al giudice prima del trial può essere –e quasi

sempre è- sostanzialmente diverso, ed assai più ridotto, rispetto a quello che la parte ha "scoperto" per mezzo della discovery

1.3. Una ulteriore conseguenza importante riguarda i criteri in base ai quali i provvedimenti di *discovery* possono essere concessi dal giudice. Va detto subito che tali criteri non equivalgono affatto a quelli di **rilevanza della prova** in base ai quali in Italia e negli altri sistemi di *civil law* si ammettono le prove: in questi sistemi perché il giudice possa decidere se una prova è o non e' rilevante occorre che i fatti ai quali essa si riferisce siano previamente indicati in modo analitico, completo e preciso. Tale indicazione manca nel sistema del *notice pleading.* Se, dunque, la *discovery* viene effettuata *prima* che i fatti vengano indicati, poiché serve proprio a scoprirli, è chiaro che il criterio di ammissione non può essere quello della rilevanza rispetto ai fatti da provare. Ecco dunque che il criterio in base al quale il giudice deve ammettere la *discovery* viene formulato in modo diverso ed in termini assolutamente più vaghi e generici: secondo la norma fondamentale in materia, ossia la Rule 26 (b)(1) delle FRCP così come è stata in parte riformulata con un emedamento nel 2000, le parti possono ottenere la *discovery* di ***"any matter, not privileged, that is relevant to the claim or defence"*** (ossia di qualunque cosa sia rilevante per la domanda o l'eccezione), mentre la corte può disporre la *discovery* di ***"any matter relevant to the subject matter involved in the action"*** (ossia di qualunque cosa abbia a che fare con l'oggetto della controversia), Il primo dei due criteri, che riguarda la *discovery* che si svolge tra le parti, sembra in qualche misura più rigoroso del secondo, che riguarda la *discovery* ordinata dal giudice. Bisogna osservare, tuttavia, che, in entrambi i criteri, malgrado l'impiego del termine *"relevant"*, manca ogni riferimento ai fatti della causa (che- come si è detto – non ci sono ancora.): in particolare, il riferimento alla *"subject matter involved in the action",* che vale per il giudice, implica l'applicazione di un criterio estremamente vago ed esteso (non a caso si dice solitamente che la *discovery* è *"extremely broad"*, cfr. Friedenthal-Kane-Miller, op. cit., p. 399 ss; *Obtaining Discovery Abroad*, cit. p. 6, per il quale solo richieste che evidentemente non abbiano nulla a che vedere con la causa vengono rifiutate dal giudice, cfr. Trocker, *op. cit.* p. 486 ss.; Ficarelli, *op. cit.*, p. 141 ss.).

1.4. Un altro aspetto della *discovery* merita di essere segnalato. La stessa Rule 26 (b)(1) specifica che la prova di cui si vuole ottenere la *discovery* non deve necessariamente essere ammissibile al *trial* (nel quale vigono regole più rigorose di rilevanza e di ammissibilità), purchè appaia *reasonably calculated* a portare alla scoperta di una prova ammissibile (cfr. Friedenthal-Kane-Miller, *op.cit.,* p.400 s.). In sostanza, si ammette che una parte venga a conoscenza di prove inammissibili di cui quindi non potrebbe comunque servirsi nel *trial* per la dimostrazione dei fatti, purchè la prova inammissibile di cui si ottiene la conoscenza serva a scoprire se esiste una prova ammissibile. Non occorre altro per mostrare come la *discovery* abbia una chiara **funzione esplorativa** più che una funzione probatoria in senso proprio (cfr.Trocker, *op.cit.,* p.488; Ficarelli, *op.cit.,* p.169 ss., 175 ss..

1.5. In un contesto come quello ora delineato, le c.d. ***fishing expeditions*** attuate per mezzo della *broad discovery*, che talvolta vengono indicate come una sorta di degenerazione del sistema, in realtà ne costituiscono un aspetto fisiologico (cfr.Ficarelli, *op.cit.,* p.171). Non a caso le "spedizioni di pesca" nell'ambito della documentazione in possesso delle altre parti o di terzi, finalizzate a vedere se nelle reti rimane qualcosa di utile, sono normalmente ammesse e autorizzate dai giudici, che solo nei casi più scandalosi talvolta si servono del potere di limitare l'ambito della *discovery.* Come si è visto, infatti, l'uso "normale" della *discovery* consiste nell'esaminare le prove in possesso delle altre parti –ed in particolare i documenti- alla ricerca di informazioni su fatti che possano poi essere allegati a supporto della domanda. Ovviamente, più ampia è la *discovery*, e più sono i documenti di cui si entra in possesso, più aumenta la possibilità di scoprire qualche fatto che potrebbe essere allegato a fondamento della domanda.

1.6. I caratteri della *discovery* statunitense che si sono ora indicati fanno emergere un contrasto radicale tra la fase di *pre-trial* di quel sistema, e le modalità con cui le prove vengono ammesse in tutti gli ordinamenti di *civil law,* ed in particolare in Italia. Sarà utile accennare brevemente agli aspetti più importanti di questo contrasto, di cui anche la dottrina statunitense ha piena consapevolezza (cfr. ad es. Born, *International Civil Litigation in United States Courts,* 3rd ed., 1996, p.847 s.).

a) Nel nostro ordinamento un principio fondamentale è quello della **esclusione delle iniziative istruttorie con finalità esplorativa,** il che vale in modo particolare per l'ordine di esibizione di documenti (v. per tutti Graziosi, *L'esibizione istruttoria nel processo civile italiano,* Milano 2003, p.164 ss.; Ficarelli, *op.cit.,* p.255 ss.). Questo principio trova fondamento ed estrinsecazione in altre regole, che vale la pena di richiamare.

b) Anzitutto, i sistemi di *civil law*, ed in particolare quello italiano, sono incardinati su un principio che si potrebbe chiamare –con terminologia americana- di *fact pleading*, poiché si richiede che l'attore alleghi nell'atto introduttivo, in modo preciso e tendenzialmente completo, i fatti su cui fonda il diritto che fa valere (art.163 n.4 c.p.c.; ex art.164 comma 4 la citazione è nulla se non contiene l'indicazione dei fatti). Principio fondamentale, dunque, è che le parti debbono identificare sin dall'inizio, ossia sin dagli atti introduttivi, l'oggetto della controversia, il che significa allegare tutti i fatti rilevanti a tale scopo (in argomento v. per tutti Ricci, *L'allegazione dei fatti nel nuovo processo civile,* in *Riv.trim.dir.proc.civ.* 1992, p.835 ss.; e da ultimo Comoglio, *Le prove civili,* II ed., Torino 2004, p. 73 ss.).

c) Tra le funzioni dell'allegazione immediata dei fatti vi è quella di consentire al giudice di stabilire subito e preventivamente se le prove di cui le parti chiedono l'ammissione sono o non sono **rilevanti.** In tutti gli ordinamenti di *civil law,* ed in particolare nel nostro, vige infatti il principio fondamentale per cui debbono essere ammesse solo le prove che siano **rilevanti per la prova dei fatti allegati.** Si tratta di un "principio di rilevanza in senso stretto" per il quale solo le prove che appaiano direttamente utili per l'accertamento dei fatti della causa possono trovare ingresso nel processo (v. per tutti Taruffo, *La prova dei fatti giuridici. Nozioni generali,* Milano 1992, p.331 ss., ed inoltre Trocker, *op.cit.,* p.487 s.; Ficarelli, *op.cit.,* p.257).

d) Al fine di rendere possibile il controllo di rilevanza che il giudice deve effettuare per decidere se ammettere o non ammettere la prova, varie regole prescrivono che la deduzione del singolo mezzo istruttorio si fondi su una indicazione precisa dei fatti che si vogliono dimostrare con quella particolare prova. Così, ad esempio, l'art.244 c.p.c. prescrive che la prova testimoniale sia dedotta con l'indicazione specifica "delle persone da interrogare e dei fatti, formulati in articoli separati, sui quali ciascuna di esse deve essere interrogata". Analogamente, l'istanza di esibizione di un documento deve contenere l'indicazione dei fatti che si vogliono provare per mezzo di quel documento: tale indicazione e' necessaria per consentire al giudice di formulare la valutazione di necessità-indispensabilità dell'ordine (fondata sulla rilevanza probatoria del documento) prevista dagli artt.118 e 210 c.p.c. (cfr. Graziosi, *op.cit.,* p.163; Comoglio, *op.cit.,* p.395 s.).

Come si vede da questi rapidi cenni, il sistema statunitense della *discovery,* ed in particolare della *discovery of documents,* non è solo diverso ma è radicalmente contrastante con i principi e le regole che disciplinano l'ammissione delle prove, ed in particolare l'esibizione dei documenti, in tutti gli ordinamenti di *civil law* ed in particolare nell'ordinamento italiano . Giova sottolineare che non si tratta di differenze di dettaglio ma di differenze sistematiche e di principio, tali da rendere incompatibile il sistema americano con i sistemi di *civil law.*

2. Le considerazioni che precedono servono anche a comprendere come mai un numero rilevante di ordinamenti di *civil law* abbia reagito negativamente rispetto all'eventualità di dare esecuzione a ordini di *discovery* emanati da corti statunitensi. Per un verso, tale reazione si è estrinsecata nell'emanazione dei c.d. *blocking statutes,* ossia di normative nazionali che vietano di rivelare –anche attraverso la comunicazione o l'esibizione di documenti- notizie che si considerano riservate, soprattutto con riferimento ad aspetti della produzione industriale (sul fenomeno dei *blocking statutes* cfr.Born, *op.cit.,* p.850 ss.; Buxbaum, *Assessing Sovereign Interests In Cross-Border Discovery Disputes: Lessons from* Aerospatiale, in 38 *Texas Int.Law J.* 2003, p.95 ss.; *Obtaining Discovery Abroad,* cit., p.50).

Per altro verso, essa si è manifestata sia con l'introduzione, nell'art.23 della Convenzione dell'Aja del 18 marzo 1970, della riserva per mezzo della quale i paesi firmatari possono dichiarare che non intendono dare attuazione a richieste *"issued for the purpose of obtaining pre-trial discovery of documents as known in Common-Law countries"*, sia con il fatto che molti paesi di *civil law,* tra cui, oltre all'Italia, la Francia, la Germania, la Spagna e il Portogallo, hanno fatto uso di questa riserva dichiarando che non intendono dare attuazione ai *discovery orders* (cfr. Born, *op.cit.,* p.898; *Obtaining Discovery Abroad,* cit., p.30; Ficarelli, Pre-trial discovery *statunitense e controversie transnazionali: una questione rimasta aperta,* in *Riv.dir.civ.* 2000, 511 ss.). In particolare, la riserva formulata dall'Italia all'atto dell'adesione alla Convenzione (ratificata con l.24 ottobre 1980 n.745), è generale ed assoluta, e non ammette eccezione alcuna. In sostanza, qualunque richiesta di *discovery* di documenti proveniente da una corte statunitense non potrebbe essere accolta in Italia. Come hanno affermato autorevoli studiosi della materia, si richiederebbe invano ai nostri giudici di provvedere ad acquisizioni documentali in funzione di fasi procedimentali che precedano la trattazione orale al dibattimento civile (cfr. Campeis-De Pauli, *op.cit.*, p.190; Fumagalli, *Conflitti fra giurisdizioni nell'assunzione di prove civili all'estero,* Padova 1990, p.232). Questa situazione normativa sarebbe di per sé sufficiente a risolvere il problema che qui si considera; tuttavia pare utile aggiungere qualche altra considerazione in ordine all'applicazione della Convenzione dell'Aja nel caso di specie.

2.1. Quanto alle ragioni che portarono all'introduzione dell'art.23 nella Convenzione dell'Aja, è probabilmente vero che l'obbiettivo principale fosse quello di impedire le *fishing expeditions* di avvocati americani nei documenti di imprese e di banche situate in altri paesi, ed è forse vero – come taluno afferma- che in quel momento molti paesi non avevano idee chiare intorno alla natura della fase di *pre-trial* del processo statunitense (cfr. ad es. Born, *op.cit.,* p.899). Tuttavia ciò non rileva ai fini dell'interpretazione della dizione letterale –di per sé chiarissima- dell'art. 23, ove si fa riferimento, come si è visto, alla *discovery of documents* "così come è conosciuta negli ordinamenti di *common law*".

Inoltre, è pur lecito ritenere che la riserva generale ed assoluta formulata dall'Italia sia eccessiva (ed infatti taluni paesi hanno attenuato le loro riserve: v.ad es.Trocker, *op.cit.,* p.500 ss.), ma ciò non toglie che tale riserva rimanga generale ed assoluta. D'altra parte, bisogna anche considerare, come si è detto in precedenza (*sub* 1.5.), che il fenomeno delle *fishing expeditions* che si voleva evitare con la riserva dell'art.23 non è affatto eccezionale, ed è invece assai frequente, ed anzi fisiologico, nella prassi della *discovery of documents* statunitense.

2.2. Sempre a proposito dell'interpretazione dell'art.23 della Convenzione, e della riserva formulata dall'Italia, vale la pena di osservare che il riferimento alla famosa sentenza della Corte Suprema degli Stati Uniti sul caso *Aérospatiale* è del tutto inconferente nel caso di specie. Tale sentenza, infatti, risolse la questione se per un attore americano che abbia bisogno di acquisire prove documentali all'estero sia o non sia obbligatorio servirsi delle procedure disciplinate dalla Convenzione dell'Aja. La Corte Suprema rispose negativamente, configurando il ricorso alla Convenzione come facoltativo, legittimando quindi le corti inferiori ad emanare *discovery orders* secondo il diritto statunitense, ed aprendo la strada ad una prassi che molte corti americane hanno

seguito (cfr. in particolare Nafziger, *Another Look at the Hague Evidence Convention After* Aerospatiale, in 38 *Texas Int.Law J.* 2003, p.110 ss.; Ficarelli, *op.ult.cit.,* p.515 ss.,521 ss.).

Tutto ciò non interessa peraltro in questa sede, poiché la richiesta di cui qui si discute è stata formulata sulla base della Convenzione dell'Aja, e quindi prescinde completamente dalla problematica affrontata dalla Corte Suprema nel caso *Aèrospatiale* circa l'obbligatorieta' o non obbligatorieta' del ricorso alle procedure previste dalla Convenzione. Inoltre, la decisione sul caso *Aèrospatiale* riguardava una fattispecie diversa da quella che qui si prende in considerazione: in quel caso, infatti, si trattava di una *discovery of documents* richiesta da una parte all'altra parte, mentre in questo caso si tratta di una richiesta di *discovery* emanata da un giudice ed indirizzata ad un soggetto che non è parte in causa. La decisione sul caso *Aèrospatiale* quindi non ha alcuna efficacia di precedente nel caso in esame, nel quale la richiesta è stata espressamente formulata sulla base della Convenzione dell'Aja ed è stata indirizzata ad un terzo, sicché il solo problema che si pone è quello dell'applicazione dell'articolo 23 della Convenzione e della riserva formulata dall'Italia.

In proposito sia lecito aggiungere un'osservazione, forse non essenziale per il merito del problema ma significativa per la sua corretta impostazione: quando il prof.Miller, nella sua dichiarazione, ricorda alcune affermazioni del Giudice Blackmun nel caso *Aèrospatiale,* dimentica di precisare che Blackmun fece queste affermazioni nell'ambito della *opinion* che scrisse, in parte dissentendo dall'opinione della maggioranza, per i 4 giudici della Corte Suprema che erano rimasti in minoranza nella decisione di quel caso (cfr.Born, *op.cit.,* p.909 ss.; Nanda-Pansius, *Litigation of International Disputes in U.S. Courts,* 2003, vol.I, p.349 s.). Il *dictum* di Blackmun non può dunque essere citato come se avesse valore di precedente: le *dissenting opinions* sono talvolta importanti, ma non hanno alcun valore vincolante nell'ambito dello *stare decisis* statunitense. In particolare, alcune corti hanno seguito l'opinione di Blackmun, ma molte altre corti non l'hanno seguita (cfr. Nanda-Pansius, *ibidem*).

3. Sulla base delle considerazioni che precedono è ora opportuno prendere in considerazione alcuni aspetti particolarmente rilevanti del caso di specie, al fine di comprendere correttamente la natura del problema che si tratta di risolvere.

3.1. Anzitutto, pare evidente che qui si tratti della classica *fishing expedition*. La richiesta di esibire circa 100.000 documenti o pagine di documenti non rientra certamente in ciò che noi consideriamo come una "normale" istanza di esibizione ai sensi dell'art.210 c.p.c.. Il numero è di per sé significativo della intenzione "esplorativa" della richiesta, essendo quanto mai improbabile che 100.000 documenti siano tutti necessari e rilevanti per la prova di un fatto.

3.2. La dimostrazione della rilevanza dei documenti di cui si chiede l'esibizione manca del tutto, né del resto sarebbe agevole fornirla per ognuno dei documenti di cui si tratta: in realtà i richiedenti non hanno addotto alcuna ragione idonea a dimostrare perché i documenti di cui chiedono l'esibizione dovrebbero essere considerati rilevanti, dal giudice italiano, per la dimostrazione dei fatti che sono in discussione presso la Corte statunitense. Di conseguenza, il giudice italiano non è in grado di valutare se sussistano o non sussistano i presupposti per emanare un ordine di esibizione. Una situazione di questo genere è normale e ovvia sulla base del criterio fissato dalla Rule 26(b)(1) delle FRCP (*supra, sub* 1.3.), ma è inammissibile sulla base del criterio al quale gli artt.118 e 210 c.p.c. subordinano l'emanazione di un ordine di esibizione (*supra,* 1.6. c) e d).

A ulteriormente sottolineare l'impropriètà di questa richiesta di rogatoria documentale *internazionale*, valga il fatto che essa dovrebbe essere respinta anche se si trattasse di una richiesta di discovery interamente domestica, tra parti processuali statunitensi.. La Rule 34(b) delle FRCP, che disciplina l'istituto della *discovery of documents* tra parti processuali statunitensi, prevede infatti che il richiedente individui il documento o i documenti di cui chiede l'esibizione "*either by*

*indidual item or by category*", e richiede che i documenti in questione siano descritti *"with reasonable particularity"* (cfr. Friedenthal-Kane-Miller, *op.cit.,* p.434 ss.: James-Hazard-Leubsdorf, *op.cit.,* p.297; *Obtaining Discovery Abroad,* cit., p.20). Il carattere estremamente ampio e vago della richiesta, in questo caso non soddisfa neppure lontanamente questo requisito. Il generico riferimento alla "categoria" dei documenti sequestrati dalla Procura di Torino è del tutto insufficiente secondo gli standard di *discovery* vigenti negli Stati Uniti. Il riferimento alla *category* deve riguardare la natura specifica e comune di un insieme di documenti (ad es.: i documenti contabili di una certa impresa in un certo periodo con riferimento ai rapporti con un cliente determinato), ma non può essere formulato semplicemente come "tutti i documenti che giacciono in un certo luogo" o "tutti i documenti che riguardano un certo soggetto". La categoria in questione, dunque, non è stata affatto individuata *with reasonable particularity.*

Si deve inoltre ribadire che la legge italiana è molto più stringente rispetto a quella americana con riferimento al requisito di specificità della richiesta di documenti. I termini con cui è stata formulata la richiesta in esame non solo non soddisfano i requisiti previsti dal diritto statunitense, ma tanto meno soddisfano i requisiti ai quali il diritto italiano subordina l'emanazione di un ordine di esibizione. L'art.94 disp.att.c.p.c. dispone infatti che l'istanza con cui si chiede l'esibizione di un documento contenga "la specifica indicazione del documento" in questione (cfr.Ficarelli, *op.ult.cit.,* p.254; Graziosi, *op.cit.,* p.163, 297). Si noti che nel nostro ordinamento non è ammessa l'individuazione "per categorie": occorre invece l'individuazione specifica del singolo documento, poiché il giudice, per emanare l'ordine, deve valutarne la rilevanza diretta al fine della prova dei fatti allegati (*supra, sub* 1.6. c) e d)). E' chiaro che siffatto requisito manca completamente nella richiesta che qui si considera.

3.3. Infine, si può ancora osservare che la richiesta in esame non può essere accolta sulla base delle regole e dei principi che limitano l'esibizione dei documenti nel diritto processuale italiano. Si tratta infatti di documenti che, essendo stati sequestrati nel corso di indagini preliminari svolte dalla Procura di Torino, sono coperti da segreto istruttorio. Orbene, l'art.210 c.p.c., rinviando all'art. 118, esclude che si possa emanare un ordine di esibizione di documenti coperti dai segreti previsti dagli artt.200-203 c.p.p., tra i quali è evidentemente ricompreso (art.201) il segreto istruttorio (cfr.Graziosi, *op.cit.,* p.153 ss.). Di conseguenza, il giudice italiano non potrebbe mai emanare un ordine di esibizione dei documenti ai quali si riferisce la richiesta in esame. Osservare, come si fa in un passo della memoria dei richiedenti, che ciò non rileva perché prima o poi il segreto verrebbe meno in funzione della prosecuzione del giudizio penale, non serve: i requisiti per l'emanazione dell'ordine di esibizione debbono sussistere nel momento in cui l'ordine viene emanato, dato che il nostro ordinamento non conosce l'ordine di esibizione "ora per allora", ossia un provvedimento emanato senza i requisiti richiesti dalla legge, ma nell'attesa che questi requisiti vengano ad esistenza.

4. Sulla base delle considerazioni che precedono possono essere formulate le seguenti **conclusioni**:

a) La richiesta in oggetto va considerata inammissibile sulla base dell'art.9 della Convenzione dell'Aja, il quale prevede che le richieste di assistenza giudiziaria in materia di prove siano eseguite secondo il diritto del paese nel quale le prove dovrebbero essere acquisite. Sussste anche contrasto con l'art.69 della legge 218/1995. Quanto si e' osservato *supra,* nel punto 1), rende infatti evidente che la richiesta in oggetto non e' compatibile con i principi vigenti nel diritto processuale civile italiano in materia di esibizione di documenti. In particolare, come si e' visto *supra, sub* 3.5., non e' possibile eseguire una richiesta di esibizione di documenti che violi uno dei segreti previsti dal c.p.p..

b) La richiesta in oggetto e' inammissibile sulla base dell'art.23 della Convenzione

dell'Aja, in presenza della riserva generale ed assoluta formulata dall'Italia rispetto all'esecuzione degli ordini di *discovery* emanati da corti statunitensi (v. *supra, sub* 2). Pare evidente, d'altronde, che la richiesta in esame sia finalizzata ad una *fishing expedition*, ossia precisamente a ciò che l'art.23 della Convenzione mira ad evitare.

c) Inoltre, la richiesta in esame manca di vari elementi che sono richiesti dal diritto processuale statunitense per la *discovery of documents* a carico di soggetti terzi (v. *supra, sub* 3.2., 3.3).

Affermo quanto sopra in piena scienza e coscienza.
In fede.

Berkeley (CA), 1 settembre 2005

Michele Taruffo

(Professor Michele Taruffo)

Depositato nella Cancelleria della Corte ... Torino
il 7.10.05
IL CANCELLIERE