UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

In re BAYCOL PRODUCTS LITIGATION

MDL No. 1431 (MJD)

This Document Relates to:

ALL CASES

# BAYER AND GSK'S PROPOSAL FOR COMPLETION OF THE WORK OF THIS MDL

Four years ago this month, the Judicial Panel on Multi-District Litigation created this MDL and presented this Court with the challenge of fairly and efficiently managing this litigation. *See* 28 U.S.C. § 1407(a). During the intervening years, 3,019 claims – virtually all of the rhabdomyolysis cases that gave rise to this litigation – have been resolved through the settlement program announced at this Court's federal-state coordination conference. In the meantime, five Baycol cases have been tried to juries, resulting in five defense verdicts, the most recent in November in Amite County, Mississippi.[1]

The time now has come to implement this Court's existing orders in order to wrap-up this litigation by: (a) requiring plaintiffs' counsel to narrow their case inventories by dismissing cases devoid of evidentiary support on injury and causation (PTO 114); (b) completing case-specific discovery to make cases trial-ready prior to remand (PTO 4); (c) requiring generic *Daubert* motions

[1] *Beard v. Bayer AG*, No. 04-CV-0113 (Cir. Ct. Amite County, Miss., Nov. 21, 2005).

to be filed in this MDL (PTO 120); and (d) ordering pre-remand mediation of all cases (PTOs 51, 59, and 64).

## I. This Court Should Exercise Its Authority under § 1407(a) To Coordinate Case-Specific Discovery in this MDL.

This Court has intended to oversee case-specific discovery since the outset of this MDL. PTO 4 §§ F(4) & F(5) (authorizing depositions of plaintiffs and physicians to begin in April and July of 2002). Indeed, this Court has stated:

> [W]e've got thousands of cases. We've got to get those ready.
>
> And my directive is, so you understand where I am coming from, since it's evident that I did not certify a class, these cases have to be ready for -- I have to have them ready when they go back to the trial [court]. And that means we are going to have to do everything that we are doing for trial here before they go back. Because there is no need for the trial court judge to have to go through all this again. Everything is going to be screened here.
>
> . . . . [A]ll the judge is going to do is go to trial or maybe have another settlement conference to try to see whether or not something is going to be settled.

Oct. 9, 2003, Tr. at 123-24 (Ex. A).

Section 1407(a) expressly defines the scope of an MDL court's duties as "coordinated *or* consolidated pretrial proceedings." (Emphasis added.) Under this provision, an MDL court's authority is not limited to litigation of "identical issues on common evidence." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998). Rather, the court's authority to manage "coordinated" proceedings is broadly construed: "a proceeding that relates only to a single individual's case or claim can

nonetheless be coordinated," and MDL proceedings need not be "concluded at the point that only case-specific proceedings remain." *Patenaude*, 210 F. 3d at 143, 145 (denying mandamus petition brought by plaintiffs seeking remand from the long-running MDL managing asbestos litigation).

Other MDL courts responsible for pharmaceutical and medical device litigation have recognized the value of conducting case-specific discovery within the MDL. Deadlines have been established for completion of case-specific discovery in *St. Jude* and in *Rezulin*.[2] Similar deadlines exist in *PPA,* where the Court is issuing remand orders. Plaintiffs cannot, however, seek remand until case-specific fact discovery has been completed.[3] Plaintiffs in the *Bone Screw* MDL were required to complete case-specific discovery and certain expert discovery prior to remand.[4]

Even in the behemoth *Diet Drug* MDL, all case-specific fact discovery and medical expert discovery must be completed before remand.[5] When *Diet Drug* plaintiffs, like the PSC here, argued for a sweeping remand on the ground that only case-specific discovery remained, the *Diet Drug* court

---

[2] *See In re St. Jude Medical Inc. Silzone Heart Valves Prods. Liab. Litig.* (MDL No. 1396), PTO 20 ¶ 1(E) (D. Minn., Sept. 9, 2002) (Ex. B); *Rezulin*, PTO 2 ¶ 2.1 (S.D.N.Y., amended Dec. 13, 2002) (Ex. C), PTO 4 ¶ 3 (Dec. 5, 2000) (Ex. D) and PTO 82 ¶¶ 1 and 2 (Apr. 29, 2002) (Ex. E).

[3] *See PPA*, Final Pretrial Order § III (B) (W.D. Wash. Dec. 13, 2004) (Ex. F); *PPA*, CMO 17C at 3 (Ex. G).

[4] *See Bone Screw*, 1997 WL 303239, at *1 (E.D. Pa. Feb. 13, 1997).

[5] *See Diet Drug*s PTO 292 (E.D. Pa., Sept. 24, 1998) (Ex. H) and PTO 417 ¶¶ 6-8 (Jan. 6, 1999) (Ex. I). Plaintiffs are allowed to present only one expert after a remand: an economist, to address damage issues. PTO 417 ¶ 10.

rejected the temptation to clear its docket. *See Diet Drugs*, 2003 U.S. Dist. LEXIS 18069, at *12 (E.D. Pa. Aug. 25, 2003) (denying motion to dissolve the MDL). Instead of dumping tens of thousands of unprepared cases upon transferor courts, the *Diet Drug* court emphasized the experience it had gained with the issues in the litigation and the importance of preserving the MDL so that, when new issues emerged as the first waves of remanded cases were tried, those issues could be addressed on a comprehensive basis for plaintiffs whose cases remained in the MDL. *Id.* at *10. If the Diet Drug court can manage case-specific discovery, this Court surely can, with the help of its special masters.

## II. This Court Should Reinstate PTO 114 Narrowing and Set Cut-offs for Completion of Case-Specific Discovery.

This Court should set a schedule that provides for completion of all case-specific discovery on a rolling basis, so that each case is trial-ready before mediation and remand – an objective to which this Court often has referred. *E.g.,* June 20, 2003, Tr. at 56 (Ex. J) ("How are we going to make sure that the Judges end up with the cases that can be tried so they are not saying why did Davis hold on to this case for two years or three years and not do anything worthwhile for me to try this case when it's remanded back"). The Court should reinstate a narrowing protocol, as a first step in the discovery schedule.

Defendants continue to believe that a threshold narrowing process will help limit the burden and cost of discovery for all parties and the Court by requiring plaintiffs' counsel to take a close look at their cases and to determine

which cases warrant the time and effort that goes into depositions. Earlier this year, the PSC complained that narrowing, which plaintiffs themselves had proposed, creates an unnecessary hoop for plaintiffs to jump through. Feb. 9, 2005, Tr. at 27 (Ex. K). But that issue arises only with respect to PTO 131. Its predecessor, PTO 114, calls for Rule 26 reports, which can be used throughout the litigation, and allows plaintiffs to supplement those reports before experts are deposed. PTO 114 §§ I(E) & I(F). Defendants therefore urge the Court to reinstate the requirement that plaintiffs produce Rule 26 reports (not form reports otherwise unusable in the litigation) to achieve narrowing in a fair and cost-effective manner.

Regardless of its decision on narrowing, the Court should establish rolling schedules for completion of case-specific fact and expert discovery. Cases should be grouped, based on their District of Minnesota docket numbers, and deadlines established for fact discovery, plaintiffs' Rule 26 expert reports, depositions of plaintiffs' experts, defendants' Rule 26 expert reports (if any), and depositions of defendants' experts.[6] The Court should further order that no case will be eligible for remand unless and until this fundamental discovery is completed.

Requiring case-specific discovery to be completed in this MDL will greatly reduce the burden on transferor courts after remand. Currently, 3,837 active cases, involving the claims of 8,736 Baycol users or their representatives, are pending in this Court. The PSC has conceded that some of

---

[6] *See generally* PTO 96 *and* Agreed Order on the Discovery Plan Pursuant to PTO 89 (Nov. 3, 2003) (Ex. L).

those claims "should be legitimately dismissed." Feb. 9, 2005, Tr. at 7 (Ex. K). Indeed, the PTO 89 pilot program demonstrated that, when such claims are subject to discovery, a high percentage of plaintiffs choose to discontinue their lawsuits.[7]

If plaintiffs dismiss their claims at the same rate as the PTO 89 plaintiffs who complained of muscle aches, approximately 83 transferred plaintiffs would have active claims at the conclusion of discovery.[8] Unlike the 8,736 transferred claims now pending, those 83 claims would be "squeaky clean" and trial-ready for remand. Oct. 9, 2003 Tr. at 124 (Ex. A). Plainly, the interests of judicial economy will be better served if cases destined for dismissal during discovery are dismissed prior to remand, to avoid burdening transferor courts.

## III. The Court Should Entertain Generic *Daubert* and Other Motions of General Applicability Once Case-Specific Discovery Has Been Completed in a Substantial Number of Cases.

Once case-specific discovery has been completed in a substantial number of cases, the groundwork will be laid for motion practice on issues of general applicability. Indeed, no suggestion of remand should issue where "common" or "core" proceedings are ongoing in an MDL. *See In re Patenaude*,

---

[7] Of 210 cases in the PTO 89 pilot program, 16 rhabdo cases settled and 2 muscle ache cases remain pending. The other 192 muscle ache cases were discontinued prior to or during discovery. This Court's experience has not been unique. Of the approximately 4,000 Baycol cases filed in state court in Philadelphia, only one active case remains.

[8] Similarly, of the 1,979 plaintiffs with claims filed directly in this District, approximately 19 would remain active through discovery.

210 F.3d 135, 146 (3d Cir. 2000); *see also Hayes v. Bayer*, 02-445, slip. op. at 2 (D. Minn. June 29, 2004) (Ex. M); *Lehmann v. Bayer*, PTO 125 at 3-4. And one of those core proceedings is completion of generic expert discovery and related *Daubert* motion practice.[9]

Those generic expert depositions are almost completed.[10] In due course, a schedule for briefing and hearing *Daubert* motions should be established. *See* PTO 120 ¶ 8(F). Importantly, this Court should not make *Daubert* rulings in a vacuum. To allow the Court to appreciate the way generic expert testimony would come into play in actual Baycol cases, the parties must be able to discuss those cases in their *Daubert* briefs. It is for this reason that case-specific discovery should be completed in a substantial number of cases prior to *Daubert* motion practice. Then, as in *PPA* and *Norplant*, the Court may entertain summary judgment motions based on its *Daubert* rulings. *See PPA,* CMO 17C at 3 (W.D. Wash., June 23, 2004) (Ex. G); *Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830-31 (E.D. Tex. 2002).

In addition, other issues touching multiple plaintiffs in multiple districts should be addressed by this Court. *See In re Long Distance Telecommunication Litig.*, 612 F. Supp. 892, 903 (E.D. Mich. 1985) ("one of the

---

[9] *See, e.g., In re Rezulin Prods. Liab. Litig.* (MDL No. 1348), 309 F. Supp. 2d 531, 544-66 (S.D.N.Y. 2004); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.* (MDL No. 1407), 289 F. Supp. 2d 1230, 1237-51 (W.D. Wash. 2003); *In re Orthopedic Bone Screw Prods. Liab. Litig.* (MDL No. 1014), 1998 U.S. Dist. LEXIS 21857, at *17-19 (E.D. Pa. Jan. 12, 1998).

[10] One GSK witness has not been deposed; GSK and the PSC have discussed dates for the deposition, but it has not been scheduled.

basic purposes of the multidistrict process, and of the JPML's transfer orders . . . is to achieve consistent rulings on the common issues among the transferred cases"). For instance, a case-specific expert report mill may emerge, as with Dr. Raul Reyes, who has to date prepared 507 reports pursuant to PTOs 114 and 131 for plaintiffs in numerous districts in different states. Work also remains conforming pleadings in accordance with this Court's orders, in light of case-specific discovery.[11] Maintaining control over MDL cases will allow this Court to address any new or recurring issues and enter rulings that affect all cases or large groups of cases. *See Diet Drugs*, 2003 U.S. Dist. LEXIS 18069, at *11.

In contrast, premature remand of these cases would create a number of *de facto* follow-up Baycol MDLs. One would remain in this Courthouse, because 1,330 cases involving 1,979 active plaintiffs from across the country have been filed directly in this District and are not subject to JPML remand procedures. (Only 69 of those plaintiffs reside in Minnesota.) Other quasi-MDLs would result from remands to transferor courts in 42 states.

Specifically, a second *de facto* MDL would arise in the Eastern District of Pennsylvania, where 2,373 cases have been filed by 2,395 plaintiffs. Four multiple-plaintiff cases, if remanded to the Northern District of Mississippi, would create a third quasi-MDL involving 1,478 plaintiffs who

---

[11] For example, this Court has entered a series of rulings relating to the bundling of plaintiffs into a single complaint based in part on the facts of the individual claims (*see* PTOs 31, 61 and 88), but has not yet applied those rulings to other multi-plaintiff complaints.

reside in a dozen states.[12] Remand of *Creel v. Bayer Corp.*, No. 03-4968, to the Southern District of Mississippi would create a mini-MDL of 96 active plaintiffs from eight states. Additional districts with high case counts[13] could join the ranks of the *de facto* Baycol MDLs, making potentially conflicting rulings on *Daubert* and various other issues that this Court can and should be deciding.

Accordingly, as part of the fair and efficient management of the final stages of this litigation (*see* 28 U.S.C. § 1407(a)), this MDL Court should address generic *Daubert* and other recurring issues once sufficient case-specific discovery has been completed to provide a context for these rulings. *See generally* July 15, 2003, Tr. at 99-100 (Ex. N) ("The Court quietly, I think, and unwaveringly, has told both sides that we are going to resolve many of the issues, whether or not they go back to the district they came from resolve those issues for those Judges so they can try these cases without having them do the work that I was supposed to do.")

---

[12] The cases are: *Dickerson v. Bayer Corp.,* No. 03-1173, with 441 active plaintiffs from six states; *Toles v. Bayer Corp.,* No. 03-1174, with 400 active plaintiffs from six states; *Coates, v. Bayer Corp.,* No. 03-1175, with 384 active plaintiffs from six states; and *Michael v. Bayer Corp.,* No. 03-6415, with 255 active plaintiffs from seven states. In fact, more active plaintiffs in these four cases live in Kentucky (371), Louisiana (327), Tennessee (271), and California (243), than reside in Mississippi (242). All four cases were filed by the Langston Law Firm and Beasley Allen Crow Methvin Portis & Miles.

[13] *E.g.*, Eastern District of Texas (more than 400 cases); Southern District of New York (about 150 cases); Western District of Louisiana (about 60 cases); Northern District of Alabama (more than 100 cases).

## IV. Cases Should Be Remanded on a Rolling Basis.

With the completion of case-specific discovery in the first wave of cases and motion practice on issues of general applicability, the Court can begin setting cases for final mediation, pursuant to PTOs 51, 59, and 64. Transferred cases can then be recommended for remand to the JPML on a rolling basis. *See, e.g.*, *Diet Drugs*, 2003 U.S. Dist. 18069, at *11 (requiring rolling remand based on case discovery status). With respect to cases filed in this District by non-Minnesota plaintiffs, the Court can determine whether transfer would be appropriate pursuant to 28 U.S.C. § 1404(a). *See* Bayer and GSK's Motion To Transfer, filed May 23, 2003 (seeking transfer – at the termination of MDL proceedings – of Minnesota filings by non-Minnesota residents).

Thus, cases in the early waves of discovery can be set for trial in appropriate jurisdictions while case-specific discovery continues in this MDL on later-filed cases. Trial judges will receive transferred or remanded cases with all discovery complete and some motions already decided, consistent with this Court's oft-stated plan for managing this MDL.

## CONCLUSION

For all these reasons, this Court should adopt defendants' proposal for completion of the work of this MDL.

Dated: *December 12, 2005*

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN BROWN & WOOD LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*

Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that a true and correct copy of the foregoing Bayer and GSK's Proposal for Completion of the Work of This MDL and exhibits were electronically filed and served on December 12, 2005.

David L. Barlett