**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL D. CORBETT

Michael D. Corbett is yet another PSC witness who seeks to opine on issues outside his area of expertise and to offer irrelevant "expert opinion as to the ethical character of [defendants'] actions." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004). Certain of Dr. Corbett's proffered opinions are inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993):

First, Dr. Corbett's opinion that Bayer made certain claims that induced physicians to prescribe Baycol are speculation, wholly lacking in foundation. Dr. Corbett is a toxicologist, not a physician; he has never prescribed Baycol or any other statin; and indeed, has never even spoken to a licensed physician about his or her reasons for prescribing Baycol.

Second, to the extent Dr. Corbett seeks to testify that Bayer made misrepresentations to the Food and Drug Administration ("FDA") concerning Baycol, such testimony is irrelevant and inadmissible because claims of fraud on the FDA are preempted by federal law. *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

Third, Dr. Corbett's criticisms of Bayer's conduct in the development and promotion of Baycol are nothing more than attacks on Bayer scientists for failing to meet his personal ethical standards. Such opinions are neither relevant nor the product of any recognized area of expertise that would assist the jury.

Fourth, Dr. Corbett's opinion that a safer alternative form of Baycol could have been developed by Bayer and would have been approved by the FDA lacks scientific support and is nothing more than an untested hypothesis. Dr. Corbett has conducted no research and can cite no studies to support his novel theory.

## ARGUMENT

### I. DR. CORBETT'S OPINIONS REGARDING THE REASONS TREATING PHYSICIANS PRESCRIBED BAYCOL ARE SPECULATION AND UNFOUNDED.

Dr. Corbett would testify that Bayer made unjustified claims that Baycol was an "ideal statin," that Baycol had "dual metabolic pathways," and that Baycol had "an uncomplicated biopharmaceutical profile." He would further testify that these claims misled the medical community and induced the "community of practicing physicians" to prescribe Baycol. Report of Michael D. Corbett (Ex. A) ¶¶ 31, 32. These opinions are based on rank speculation. Dr. Corbett is not a physician; he has never prescribed Baycol or any other medication. He concedes that he has never seen a study or conducted a survey to determine why physicians prescribed Baycol. Deposition of Michael D. Corbett (Ex. B) at 12:25-13:7. In fact, Dr. Corbett admits that he does not know any physician who prescribed Baycol, much less discussed with a physician his or her reasons for prescribing Baycol. *Id.* at 13:8-18.

Indeed, the only support Dr. Corbett musters for his opinion is isolated literature — published years after Baycol was withdrawn from the market — in which the authors hypothesize that claims regarding Baycol induced doctors to prescribe the medicine. *Id.* at 14:5-11, 14:14-15:11, 15:14-16:2. Dr. Corbett concedes that the opinions of a few journal authors cannot be imputed to the entirety of the medical community. *Id.* at 16:8-10.

More narrowly, Dr. Corbett admits that he has no evidence to support his opinion that Bayer's claim that Baycol was an "ideal statin" induced doctors to prescribe Baycol. Corbett Dep. (Ex. B) at 12:25-13:18, 14:5-9. Dr. Corbett concedes that Bayer's claim that Baycol was an "ideal statin" was only made to the FDA, and that it was never disseminated in medical literature, to practicing physicians, or to the general public. *Id.* at 39:8-41:13; 42:25-43:18; 44:10-17; 45:14-18. Since the alleged claim that Baycol was an "ideal statin" was not disseminated to prescribing physicians, the prescribing physicians could not have been so induced to prescribe the drug.

Dr. Corbett also bases his opinion on Bayer's statements that Baycol, unlike other statins, was less likely to interact with other drugs because it was metabolized in the liver by two metabolic pathways instead of one. Dr. Corbett contends that this claim about Baycol was never proven to make the medicine safer. Regardless, Dr. Corbett concedes that there was a debate in the scientific community as to whether Baycol was a safer medication because of its "dual metabolic pathways," and that this claim was a "reasonable working hypothesis." *Id.* at 59:10-61:9; 8:17-11:8. Ultimately, Dr. Corbett admits that, having neither read nor conducted a survey of prescribing

physicians, he has no way of determining whether Baycol was prescribed by any doctor based on a claim of its "dual metabolic pathways." *Id.* at 61:10-20.

The Court should not elevate this speculation to the level of admissible "expert testimony." Speculation does not meet the requirement of Rule 702 and *Daubert* that expert testimony assist the trier of fact. "Expert testimony that is speculative is not competent proof and contributes 'nothing to a legally sufficient evidentiary basis.'" *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000); *see also Group Health Plan, Inc. v. Philip Morris U.S.A., Inc.*, 344 F.3d 753, 760 (8th Cir. 2003); *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).

## II. DR. CORBETT'S OPINION THAT BAYER FALSELY CLAIMED THAT BAYCOL WAS ALMOST AN "IDEAL STATIN" IS INADMISSIBLE BECAUSE IT IS IRRELEVANT AND OTHERWISE PREEMPTED BY FEDERAL LAW.

Dr. Corbett opines that Bayer "made false claims concerning the safety of . . . Baycol" by "claim[ing] that cerivastatin was almost an 'ideal' statin according to accepted criteria." Corbett Rep. (Ex. A) ¶ C.1.A. According to Dr. Corbett, this claim was "false" because Bayer "distorted any reasonable interpretation of the criteria" of an "ideal statin." *Id*. During his deposition, Dr. Corbett explained that he believed Bayer made this "false claim" only to the FDA:

Q. And so, Doctor, the only place – or the only organization that you consider that Bayer made a false claim regarding the ideal – about Baycol being an ideal statin was the FDA; correct?

A. Yes, that's correct.

Q. Okay. And you said you reviewed the labeling, there was nothing about Baycol being an ideal statin in any of Baycol's labing, was there?

A. No.

* * *

Q. So, [if] it wasn't in the labeling, it wasn't in the marketing materials, and it wasn't in the public domain, prescribing physicians … couldn't rely on that when they chose to prescribe Baycol; right?

A. Using of the term "ideal"?

Q. Yeah.

A. That's correct.

Corbett Dep. (Ex. B) at 42:25-43:9; 44:10-17.

Thus, Dr. Corbett's opinion boils down to his belief that Bayer somehow misled the FDA by referring to Baycol as almost an "ideal statin." Under *Buckman Co.* v. *Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), however, even if Dr. Corbett's theory were well-founded, plaintiffs could not pursue a claim that Bayer misled or even committed a "fraud on the FDA." Because Dr. Corbett's opinion is only relevant to a claim that is barred as a matter of law, it is irrelevant and inadmissible. *See* Fed. R. Evid. 401, 402.

*Buckman* rests on two bases, preemption and the inherently speculative nature of the claim about what the FDA would have done if it had received different evidence. The United States Supreme Court held that any state-law claim based upon a theory that a plaintiff's injuries resulted from the defendant's failure to provide different,

more or better data to the FDA are preempted by federal law. *Id*. at 350-51. *See* Kapit Memo at 7-10 (discussing *Buckman* preemption in greater detail).[1]

Opinions as to the adequacy of information submitted to the FDA in support of applications for approval for marketing are also inadmissible because they inevitably lead to speculation. This is because the failure to submit accurate or complete data to the FDA could only be relevant if this failure would have caused the FDA to have acted differently, in a way that would have prevented the alleged injury. But the FDA is a deliberative body that bases its decisions on scientific evidence and has the power to seek more evidence or information before reaching a decision.

In this case, neither Dr. Corbett nor anyone else is capable of reading the mind of the FDA years ago to predict what it would have done if Bayer had not characterized Baycol as nearly the ideal statin. Thus, the opinions are not only preempted but also irrelevant and inadmissible as speculative. *See, e.g., Webster* v. *Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (holding that, under *Buckman*, "what was told to the FDA cannot support a tort claim"; such evidence "would be nothing more than an invitation for the jury to speculate about what . . . the FDA . . . might do if the facts were different").

---

[1] Bayer does not contend that all correspondence between it and the FDA is irrelevant. But what cannot be relevant (or admissible) under *Buckman* is any argument that Bayer's communication with the FDA was not complete or could have included different or "better" information, because the sufficiency of submissions to the FDA is to be judged by the FDA alone, not by juries.

## III. DR. CORBETT'S OPINIONS ABOUT WHETHER BAYER ACTED ETHICALLY ARE INADMISSIBLE UNDER RULE 702.

As set forth in defendants' Motion to Exclude Testimony of Martyn Smith, putative experts may not opine on subjective ethical and moral beliefs because they are not "scientific, technical or other specialized knowledge" contemplated by Rule 702. *See In re Rezulin,* 309 F. Supp. 2d at 544 ("While the defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of the actions simply is not relevant to these lawsuits"); *accord Galdi v. Bayer Corp.*, Pa. Ct. Cmn. Pls., July Term 2002, Case No. 4892, Trial Tr. 3/12/04 at 43:3-6 (Ex. C) (Bernstein, J., stating in a Baycol case that an expert cannot "testify to what is bothersome to him and things like that…. If he does, we will just stop it in its tracks").

Dr. Corbett's report contains several opinions about whether Bayer meets his standard of ethical behavior. For example, Dr. Corbett claims that Bayer's decisions as to certain matters were "strange" or "difficult to comprehend" or "distortions" of scientific evidence. Corbett Rep. (Ex. A) at 26-30. This commentary is in the context of his critique of Bayer's use of the term "ideal statin" in discussions with the FDA. Dr. Corbett concludes that "Bayer scientists chose to modify the original criteria [of an ideal statin]. Instead of being 'completely extracted' by the liver, they decided that 'largely extracted' fell within the criteria of [an ideal statin]." *Id.* ¶ 26. Dr. Corbett's ethical characterizations of the actions of Bayer scientists are inadmissible under Rule 702.

Dr. Corbett's opinions about Bayer's conduct are also rife with value judgments inappropriate for expert testimony. For example, Dr. Corbett finds one Bayer efficacy study comparing Baycol toxicity "ludicrous," and posits that such studies paved the way for Bayer to conduct "false advertising" aiming to "deceive" treating physicians. *Id.* ¶¶ 34, 40. If Bayer's intent or state of mind is relevant at all, it is not a matter of expert testimony. Dr. Corbett cannot read Bayer's mind and questions of motive and intent, if relevant to the case, are not matters about which a lay jury needs expert guidance.

Similarly, Dr. Corbett injects inflammatory commentary in his discussion of Bayer's conduct. For example, Dr. Corbett opines that Bayer "made a serious mistake" in delaying a study of the interaction between gemfibrozil and cerivastatin, and that "Bayer scientists were essentially clueless as to how gemfibrozil might affect the pharmacokinetics of cerivastatin." *Id.* ¶¶ 54, 58. Dr. Corbett opines that a 2002 *in vitro* study regarding the interaction between cerivastatin and gemfibrozil "is one that Bayer scientists *should have conducted* some years earlier" but did not because Bayer had "always ignored" issues regarding the formation of lactone metabolites. *Id.* ¶¶ 62, 63; *see also id.* ¶¶ 34 (contending Bayer "totally ignored" the possibility of Baycol in lactone form), 88 (finding "greater fault in the fact that Bayer scientists essentially ignored this lactone as being a real metabolite of cerivastatin").

Dr. Corbett has strongly-held views about Bayer's competence and behavior as a pharmaceutical company. But Dr. Corbett's opinions are not matters of scientific, technical or other specialized knowledge that will be of assistance to the jury.

Instead, they are subjective and value-laden judgments. If such matters are relevant, which they are not, then they are matters about which jurors are capable of deciding without having an expert tell them what to think. *See, e.g.*, *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (testimony regarding the motives of designers lacked scientific basis, was speculative, and was improper expert testimony); *Rezulin*, 309 F. Supp. 2d at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony"); *Diet Drugs*, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000) ("The question of intent is a classic jury question and not one for the experts). Dr. Corbett's opinions are not the proper domain of expert testimony, and should be excluded.

## IV. DR. CORBETT'S OPINIONS REGARDING A SAFER ALTERNATIVE DESIGN OF BAYCOL ARE NOTHING MORE THAN AN UNTESTED HYPOTHESIS.

Dr. Corbett's opinion that Bayer should have used a different formulation for Baycol should be excluded under Rule 702. Even if Dr. Corbett were qualified to opine on these matters, and he is not, testimony that an alternative lactone formulation of Baycol would have been a safer alternative is inadmissible under Daubert because: 1) his theory is untested (Dr. Corbett fails to support his opinions with any test measuring the safety or efficacy of the alternative form of Baycol); 2) it has not been subject to peer review nor has it been published; and 3) it is not a theory generally accepted in the relevant scientific community.

The FDA approved Baycol based upon a form of the drug known as the free acid form, a chemical designation. It is undisputed that the FDA approved the free

acid form of Baycol as "safe and effective." Letter from Solomon Sobel, M.D. (Office of Drug Evaluation II, FDA) to Bayer (May 24, 1999) (Ex. D).

Although Dr. Corbett concedes that the years of preclinical and clinical testing done on Baycol were mandatory under FDA rule and necessary to prove safety and efficacy, Dr. Corbett is unaware of any such testing having been done on the lactone form and he conducted none of his own. Corbett Dep. (Ex. B) at 67:18-68:6, 68:9; 83:16-22, 83:25-84:15, 84:18-85:23, 86:1-5. Absent such testing, Dr. Corbett cannot support his conclusion that the lactone form of Baycol would have been superior to the form of Baycol that was approved and marketed. The claim that a lactone form of Baycol would have been safer is unsupported by any scientific evidence.

The lack of existing evidence or independent testing alone precludes Dr. Corbett's opinion that this alternative form would have been safer. Numerous federal courts, including the Eighth Circuit and this Court, have held where an expert offers no testing or insufficient testing in support of his or her theory, the expert's opinions are not admissible. *See, e.g., Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (holding the proffered expert "flunked the reliability prong" as he failed to conducting testing on the proposed alternative design or offer evidence of such testing existing); *Wagner v. Hesston Corp.*, 2005 WL 1540135, at *4 (D. Minn. June 30, 2005) (finding that little to no relevant testing regarding a proposed alternative design "weigh[ed] heavily against the admissibility of [the expert's] testimony").[2] Accordingly,

2 *See also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326-27 (5th Cir. 2004); *Brown v. Raymond Corp.*, No. 04-6154, 432 F.3d 640, 647-48 (6th Cir. 2005) (upholding

Dr. Corbett's testimony regarding alternative forms of Baycol should be excluded pursuant to Rule 702 and *Daubert*.

## CONCLUSION

For these reasons, defendants respectfully request that this Court exclude the above-referenced testimony of Michael D. Corbett pursuant to Rule 702 and *Daubert*.

Dated: April 17, 2006

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
James R.M. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

excluding expert due to lack of testing of alternative design theory); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (upholding exclusion of expert witness and explaining, "[i]n alternative design cases, we have consistently recognized the importance of testing the alternative design").

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, N.W. Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*