**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

## BAYER AND GSK's MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF RICHARD KAPIT

Certain proposed testimony of plaintiffs' witness, Richard M. Kapit, M.D., is inadmissible for several reasons. First, Dr. Kapit's opinions based on adverse event reports ("AERs") are unreliable and should be excluded. As Dr. Kapit conceded, the Food and Drug Administration ("FDA") has cautioned, and medical and scientific experts agree, that AERs cannot support reliable conclusions about medical causation or about different medicines' relative incidence of harmful side effects. *See* Deposition of Richard M. Kapit (Ex. B) at 236:6-8, 238:11-15, 232:20-23, 233:25-234:2, 245:19-21. Yet Dr. Kapit's conclusion that Baycol had a higher incidence of certain side effects than other statins is based largely on these same AERs. *See* Report of Richard M. Kapit (Ex. A) ¶¶ 72-75, 84, 114, 113-132. Because his testimony is not based on a reliable methodology, it is inadmissible under Rule 702. *See Daubert* v. *Merrell Dow Pharms., Inc*., 509 U.S. 579, 592-93 (1993); *Glastetter* v. *Novartis Pharm. Corp.*, 252 F.3d 986, 988-991 (8th Cir. 2001).

Second, Dr. Kapit's criticisms of Bayer's submissions to the FDA, and of the FDA's determinations about Baycol's safety and efficacy, should be excluded. *See*,

*e.g.*, Kapit Rep. (Ex. A) ¶ 42 (asserting that Bayer should have corrected a supposed "assumption" by FDA reviewers who approved Baycol); *id*. ¶¶ 88-90 (criticizing Bayer's submissions to the FDA regarding laboratory test results); *id*. ¶ 37 (implying that Bayer should not have been allowed to conduct "Phase II" clinical tests on doses of Baycol higher than 0.2 mg); *id*. ¶¶ 95-96 (same). Those opinions are irrelevant and inadmissible because an alleged breach of a company's duties to the FDA cannot form a basis for liability under state law. *See Buckman Co.* v. *Plaintiffs' Legal Committee*, 531 U.S. 341, 350-53 (2001) (holding federal law preempts state law claim that a manufacturer provided false or inadequate disclosures to the FDA). Moreover, Dr. Kapit does not, and could not, claim that Bayer breached any legal obligation under the FDA's regulations. Indeed, he has conceded that Bayer provided all the data that it was legally required to provide to the FDA. *See* Kapit Dep. (Ex. B) at 110:11-16, 117:1-4.

Third, Dr. Kapit should not be allowed to give the jury his views on the ethical implications of Bayer's actions, and about what Bayer supposedly knew at given times and its motivation behind certain business decisions. *See* Kapit Rep. (Ex. A) ¶¶ 20, 30, 42, 64, 68, 104 (stating his views on the supposed "ethical" duties of Bayer and other pharmaceutical companies); *id*. ¶¶ 27, 70, 72(d), 72(g), 73, 85(c), 86 (speculating about what Bayer "knew" or "understood" at given times); *id*. ¶¶ 72(d), 77, 123, 129, 133-34 (speculating about Bayer's motivations in developing and marketing Baycol). Such personal opinions and conjecture have no grounding in any "specialized knowledge" and therefore are inadmissible as expert testimony. Fed. R. Evid. 702. As Judge Kaplan aptly explained in excluding such testimony in the Rezulin MDL, opinions "on the intent,

motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004). Accordingly, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *Id.* at 547. Dr. Kapit's opinions regarding ethics, his suppositions about Bayer's motivations, and his interpretation of the factual record in these cases all are matters within the common sense and experience of the average juror, and an expert witness is neither needed nor permitted to opine on matters within the jury's competence. *United States* v. *French*, 12 F.3d 114, 116 (8th Cir. 1993); *Zimmer* v. *Miller Trucking Co.*, 743 F.2d 601, 604 (8th Cir. 1984).

Finally, Dr. Kapit's opinions regarding Baycol sales and regulatory actions in foreign countries, *see* Kapit Rep. (Ex. A) ¶¶ 71, 74, 81, 132, have no bearing on any factual or legal issues in this case. Such testimony should be excluded because it is irrelevant and will not help the jury to understand the facts in issue. Fed. R. Evid. 402, 702.

## ARGUMENT

### I. DR. KAPIT'S OPINIONS ARE BASED ON SCIENTIFICALLY UNRELIABLE METHODOLOGY AND SHOULD BE EXCLUDED.

Dr. Kapit proposes to testify that Baycol is "unusual in its propensity to cause severe adverse reactions in muscle tissue," Kapit Rep. (Ex. A) ¶ 72, and specifically that it is "many times more dangerous to muscle tissue than any other statin" (the class of medicines that includes Baycol), *id.* ¶ 75; *see also id.* ¶ 84 (purporting to compare the propensity of Baycol to cause certain adverse reactions with that of other

statins). These opinions are based on comparisons of adverse event reports submitted by Bayer and other pharmaceutical companies to the FDA. *See id*. ¶ 74 (explaining that Dr. Kapit's conclusions about relative safety are based on AERs); *id*. ¶¶ 113-132 (discussing Baycol-related AERs and drawing comparisons with other statins). Dr. Kapit's opinions based on AERs do not satisfy Rule 702 and the *Daubert* standard.

As defendants explain in their AER Motion, use of AERs as a basis for comparisons between different medicines is scientifically unreliable methodology. AERs are anecdotal reports that pharmaceutical companies receive from various sources — including not only doctors but patients, pharmacists, even sales representatives — which the companies must pass on to the FDA "whether or not considered drug related." *See* 21 C.F.R. § 314.80(c) and (a). As the Eleventh Circuit has explained, AERs constitute "anecdotal information" lacking "medical controls or scientific assessment," and therefore "do not prove causation." *McClain* v. *Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005). Accordingly, the FDA has stated unequivocally that AERs may not be used to make comparisons of the safety of different medicines:

> Accumulated case reports cannot be used to calculate incidence or estimates of drug risk. . . . Numbers from these data must be carefully interpreted as reporting rates and not occurrence rates. True incidence rates cannot be determined from [the AER] database. *Comparisons of drugs cannot be made from these data*.

FDA, Adverse Event Reporting System, Office of Postmarketing Drug Risk Assessment, *Brief Description with Caveats of System* (Oct. 18, 1999) (Ex. D), at 2 (emphasis added).

Indeed, Dr. Kapit has conceded these limitations of AERs: "It is well-recognized that most adverse events that get reported are not related to the drugs that the

patients have taken; rather they are medical events that have occurred coincidentally in close temporal relation to drug ingestion." Kapit Rep. (Ex. A) ¶ 56.

Significantly, Dr. Kapit admitted in his deposition, "it is true that in a large number of reports, there is no — there is probably no relationship between the drug and the adverse event." Kapit Dep. (Ex. B) at 236:6-8 . He further admitted that accumulated AERs "cannot be used to calculate inciden[ce] rates," *id*. at 238:11-15; that "there are incompletenesses and inaccuracies in adverse reaction reports," *id*. at 245:19-21; and that therefore "certainty in regard to specific reports is usually not available," *id*. at 234:1-2.

Accordingly here, as in the Eleventh Circuit's recent *McClain* decision, the testimony of plaintiffs' putative expert fails the *Daubert* test and should be excluded because it is based on "data that lacks the indicia of scientific reliability" and therefore does "not satisfy the foundational requirements of Rule 702." 401 F.3d at 1250 (reversing jury verdict for plaintiff where plaintiff's expert was allowed to testify, based on AERs, about the propensity of a dietary supplement to cause heart attacks and strokes). *See also* Defendants' AER Motion, Part III (collecting cases).

Application of *Daubert*'s "reliability" factors — whether the witness's theory or methodology can be tested, has been peer reviewed, has a determinable error rate, is subject to scientific controls, and is generally accepted among experts, *see* 509 U.S. at 593-94 — produces the same result. AERs by definition are anecdotal and lack scientific controls. It follows that conclusions about causation based on AERs cannot be tested in a scientific sense, and it makes no sense to speak of an "error rate" for something that is not testable. As noted above, medical causation conclusions based on

AERs are not generally accepted among experts in the field; exactly the contrary is true. And, for these reasons, plaintiffs cannot point to any peer-reviewed publication that concludes AERs may properly be used in the way Dr. Kapit seeks to use them.

In short, Dr. Kapit's use of AERs to reach conclusions about medical causation and to draw comparisons between medicines renders his testimony unreliable and inadmissible. As in *McClain*, Dr. Kapit's testimony based on AERs "lacks the indicia of scientific reliability" and fails "the foundational requirements of Rule 702," 401 F.3d at 1250, 1255, and therefore should be excluded. Fed. R. Evid. 702.

## II. DR. KAPIT'S OPINIONS REGARDING THE ADEQUACY OF BAYER'S SUBMISSIONS TO THE FDA ARE PREEMPTED BY FEDERAL LAW.

Dr. Kapit intends to offer criticisms of Bayer's submissions to the FDA and of the FDA's approval of Baycol. For example, Dr. Kapit intends to testify that Bayer should have shared certain internal data analyses with the FDA, *see* Kapit Rep. (Ex. A) ¶¶ 118-119, even though, as Dr. Kapit admitted, Bayer had no legal obligation to do so. *See* Kapit Dep. (Ex. B) at 173:4–174:6. Similarly, he criticizes Bayer's submissions to the FDA concerning laboratory testing on Baycol, *see* Kapit Rep. (Ex. A) ¶¶ 88-90, though he admits that Bayer "was not remiss in withholding any data." Kapit Dep. (Ex. B) at 191:22-23.[1] Dr. Kapit also has criticisms of the FDA's prescription drug

[1] Dr. Kapit has not been able to point to any evidence — and there is none — that Bayer failed to provide information that the FDA regulations required. *See* Kapit Dep. (Ex. B) at 110:15-16 (admitting that "the occurrence of the [Baycol-related] adverse events were [sic] reported" to the FDA); *id*. at 117:1-4 ("Q. So you're not offering any opinions that Bayer failed to file a particular adverse event or Med Watch with the FDA; is that right? A. That's correct."). Indeed, the evidence is to the contrary. The FDA conducted

approval process. *See*, *e.g.*, *id*. at 126:24–127:22 (criticizing the FDA's process of approving Baycol and other prescription drugs); Kapit Rep. (Ex. A) ¶ 19 (asserting that FDA reviewers are prone to overlook information); *id*. ¶ 42 (speculating that FDA reviewers who approved Baycol made incorrect assumptions about Baycol). *See also id*. ¶ 37 (implying that Bayer should not have been allowed to conduct "Phase II" clinical tests on doses of Baycol higher than 0.2 mg); *id*. ¶¶ 95-96 (same). These opinions are inadmissible because an alleged breach of a company's duties to the FDA cannot form a basis for liability under state law.[2]

In *Buckman Co.* v. *Plaintiffs' Legal Committee,* 531 U.S. 341 (2001), the United States Supreme Court held that any state-law claim based upon a theory that a plaintiff's injuries are the result of the defendant's failure to provide different or better data to the FDA is preempted by federal law. *Id*. at 350-51. Specifically, the Court held that the adequacy of submissions to the FDA can be evaluated by the FDA alone, and may not be considered by juries. For that reason, a state-law claim that a manufacturer had provided deficient information to the FDA while obtaining approval for its product would "inevitably conflict with the FDA's responsibility to police fraud consistently with

---

inspections of both Bayer Corporation and Bayer AG after the voluntary withdrawal of Baycol from the United States market, focusing on Bayer's "compliance with the ADE [adverse drug event] reporting requirements," and "found no deficiencies." FDA Establishment Inspection Report for Bayer AG (Sept. 4-6, 2001) (Ex. E) at 1; *see also* Establishment Inspection Report for Bayer Corporation (April 7-11, 2003) (Ex. F).

[2] Any argument that Dr. Kapit is qualified to offer opinions specifically relating to the labeling of Baycol (or other statins) is foreclosed by Dr. Kapit's admission that he lacks such expertise. *See* Kapit Dep. (August 4, 2004)(Ex. C) at 134:9-12 ("Q. Fair to say that you don't consider yourself an expert in prescription labeling as it relates to statin therapy? A. That's right.").

the Administration's judgment and objectives." *Id.* at 350. The Court added that allowing such state-law claims "would also cause applicants to fear that their disclosures to the FDA, although deemed appropriate by the FDA, will later be judged insufficient in state court. Applicants would then have an incentive to submit a deluge of information that the FDA neither wants nor needs, resulting in additional burdens on the FDA's evaluation of an application." *Id.* at 351. Therefore, the Court held that federal law preempts any state-law claims predicated on allegations that a manufacturer provided false or inadequate disclosures to the FDA. *Id.* at 353.

The FDA itself recently reaffirmed the preemptive force of FDA regulations. In a January 2006 notice in the Federal Register, the agency clarified that its labeling regulations "establish both a 'floor' and a 'ceiling'" and that state requirements that do not parallel the federal standards are preempted. Requirements on Content & Format of Labeling for Human Prescription Drug and Biological Products, Final Rule & Notices, 71 Fed. Reg. 3,922, 3,935-36 (Jan. 24, 2006) (Ex. G). The FDA explained that state-law labeling requirements over and above the federal requirements would hinder the regulatory functions delegated by Congress to the FDA, *id.* at 3,934-35, and made clear that federal preemption applies to exactly the sort of claims brought by plaintiffs in these cases, *id.* at 3,935-36.

Applying these principles, courts have properly precluded plaintiffs from presenting evidence designed to impugn a company's submissions to the FDA. For example, the court in a recent Baycol-related case excluded proposed testimony "that Bayer (a) misled or deceived the FDA, or (b) failed to provide to the FDA any data,

studies or other information required by the FDA." *Pauley* v. *Bayer Corp.*, Pa. Ct. Com. Pl. No. 002729, Order on Defendants' Motion *in Limine* No. 6 (Nov. 16, 2004) (Ex. H). Similarly, in *Bouchard* v. *American Home Prods. Corp.*, 213 F. Supp. 2d 802 (N.D. Ohio 2002), the court relied on *Buckman* in excluding "any evidence or argument that [the defendant] 'misled' the [FDA] . . . or 'violated' the Food, Drug and Cosmetic Act." *Id.* at 811. The court held that "[e]vidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA." *Id*. at 812. *See also Webster* v. *Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (holding that, under *Buckman*, "what was told to the FDA cannot support a tort claim"; such evidence "would be nothing more than an invitation for the jury to speculate about what . . . the FDA . . . might do if the facts were different").

Likewise here, plaintiffs may not assert claims under state tort law based on the alleged inadequacy of information Bayer provided to the FDA, or based on alleged flaws in the FDA's review and approval of Baycol. *Buckman*, 531 U.S. at 353. Consequently, any evidence directed at showing that Bayer's submissions were flawed or inadequate is irrelevant and therefore inadmissible. Fed. R. Evid. 401, 402.[3] Dr. Kapit's proposed testimony in this vein therefore should be excluded.

---

3 Bayer does not contend that all correspondence between it and the FDA is irrelevant. But what cannot be relevant (or admissible) under *Buckman* is any argument that Bayer's communication with the FDA was not complete or could have included different or "better" information, because the sufficiency of submissions to the FDA is to be judged by the FDA alone, not by juries.

## III. DR. KAPIT'S CONJECTURE REGARDING BAYER'S STATE OF MIND AND MOTIVATIONS AND HIS VIEWS ON ETHICS ARE INADMISSIBLE AS EXPERT TESTIMONY.

Much of Dr. Kapit's proposed testimony consists of suppositions about Bayer's state of mind, *see* Kapit Rep. (Ex. A) ¶¶ 27, 70, 72(d), 72(g), 73, 85(c), 86 (speculating about what Bayer "knew" or "understood" at given times), and about the motives underlying certain business decisions, *see id*. ¶¶ 72(d), 77, 123, 129, 133-134 (speculating about Bayer's motivations in developing and marketing Baycol); *id*. ¶ 82(c) (purporting to describe Bayer's "ambitions for Baycol"). *See also id*. ¶¶ 39-41, 92 (speculating that "most drug companies" would not have proceeded to the second phase of the development of Baycol); *id*. ¶ 46 (speculating that certain statements Bayer made to the FDA "likely played a role in the Agency's allowing the clinical investigation program to go forward"); *id*. ¶ 69 (asserting that statements by Bayer "may have given the FDA" certain impressions about Baycol); *id*. ¶ 85(f) ("Stenger's note implies that the sales people were hurting, worried about the safety of Baycol"). Such testimony should be excluded.

Guesswork like this is not grounded in any "specialized knowledge" and cannot "assist the trier of fact" to understand matters in issue. Fed. R. Evid. 702. Again, Dr. Kapit proposes to offer interpretations of the factual record that the jurors are every bit as capable of formulating for themselves. That is not the province of expert testimony. *See J.B. Hunt Transport, Inc.* v. *General Motors Corp.*, 243 F.3d 441, 444-45 (8th Cir. 2001) (affirming exclusion, as "speculation and pure conjecture," of putative

expert testimony based on "impressions" of the physical evidence without grounding in "any reliable methodology or scientific principle").[4]

Judge Kaplan's opinion in the Rezulin MDL illustrates these principles. In support of his exclusion of testimony similar to that proposed by Dr. Kapit, Judge Kaplan explained that opinions "on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." *Rezulin*, 309 F. Supp. 2d at 546. Simply put, "[i]nferences about the intent or motives of parties or others lie outside the bounds of expert testimony." *Id.* at 547. Similarly, speculative testimony like that offered by Dr. Kapit was excluded in the recent *Pauley* case. *See Pauley* v. *Bayer*, Order on Defendants' Motion to Exclude Testimony (Nov. 15, 2004) (Ex. I) (ruling that an expert witness "may not testify to . . . what physicians 'would have done'" if they had received different information). The same result is proper here. Speculation about a party's knowledge, motivations, or state of mind is beyond the scope of expert testimony and should not be allowed. Fed. R. Evid. 702.

Plaintiffs cannot avoid this result by arguing that Dr. Kapit's opinions are based on Bayer's own documents, or that Dr. Kapit is merely telling the objective Baycol

---

4 Such testimony also is inadmissible as lay opinion testimony. A lay witness may express an opinion or inference only if it is "rationally based on the perception of the witness." Fed. R. Evid. 701. This standard "imports into Rule 701 the personal knowledge standard of Rule 602." Wright & Gold, *Federal Practice & Procedure* § 6254 (1997). Dr. Kapit did not personally perceive any of the events related to his inferences about Bayer's decisionmaking process.

"story."[5] To the extent Dr. Kapit intends to offer a mere summary of record materials, that is quintessential fact testimony, not the "specialized knowledge" that defines expert testimony. Fed. R. Evid. 702. On this point too the *Rezulin* opinion is instructive. There, an expert for the plaintiffs sought to offer expert testimony describing the "history" and "background" of Rezulin. 309 F. Supp. 2d at 551. The court flatly rejected the proffer:

> Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. . . . As plaintiffs' Rezulin "historian," therefore, [plaintiff's expert] does no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [defendant's] conduct.

*Id*. (quotation marks omitted). The same is true here. Plaintiffs cannot use an expert witness to read documents or provide a summary of documents to the jury.

For related reasons, Dr. Kapit should not be allowed to offer his personal views on the ethical obligations of Bayer and other pharmaceutical companies. *E.g.*, Kapit Rep. (Ex. A) ¶ 14 (stating his view of pharmaceutical companies' "ethical obligations as providers of critical components of our health care system"); *id*. ¶ 104 (stating what he thinks "ought to be expected of an ethical pharmaceutical company"); *id*. ¶ 68 (describing what he deems "the standard of practice of ethical pharmaceutical companies"); *id*. ¶ 82(a) (stating that Bayer "had an ethical medical obligation" to present

---

5 Much of Dr. Kapit's proposed testimony merely recites events reflected in Bayer documents. *E.g.*, Kapit Rep. (Ex. A) ¶¶ 71, 72, 74, 80-83, 85. Similarly, many of Dr. Kapit's "opinions" are simply his deductions from record materials. *E.g.*, *id*. ¶ 38 ("based on the documents I reviewed, it appears that Bayer did not confer at that time with the FDA reviewers"); *id*. ¶ 54 (asserting, based on a review of the factual record, that "[i]t does not appear that Bayer ever sought a meeting with the Agency to discuss the safety of Baycol").

certain data "in scientific forums"); *id*. ¶ 96, 98 (accusing Bayer of having the wrong "attitude"); *id*. ¶ 85(h) (accusing Bayer of breaching ethical obligations in the way its sales force promoted Baycol).

These are not expert opinions, but merely Dr. Kapit's personal views on corporate ethics and morality. They do not require any "specialized knowledge" and cannot "assist the trier of fact" to determine any issue presented in these cases. Fed. R. Evid. 702. As the Eighth Circuit has repeatedly instructed, expert testimony is improper if it concerns matters within the common understanding and common sense of the jury.

For example, in *United States* v. *French*, a criminal defendant was not allowed to offer an "expert" witness to tell the jury that witnesses who testify based on a plea deal with the prosecution "are more likely to incriminate the defendant falsely in order to receive [a sentence] reduction." 12 F.3d at 116. The Eighth Circuit affirmed the exclusion of the testimony because "it is clearly within the realm of common sense that certain witnesses would have an incentive to incriminate the defendant in exchange for a lower sentence. Expert testimony is not necessary to draw this conclusion. . . . The jury should be allowed to use its common sense" and did not require "expert" assistance. *Id*. at 117. *See also United States* v. *Clapp*, 46 F.3d 795, 802 (8th Cir. 1995) (in a bank fraud case, affirming exclusion of expert testimony regarding the motivations and biases of parties to a commercial loan transaction, matters "that the jury could have considered on its own"); *Zimmer* v. *Miller Trucking Co.*, 743 F.2d 601, 604 (8th Cir. 1984) (affirming exclusion of putative expert testimony about whether a driver in a highway collision

faced "an emergency or dire necessity," "an issue that the jurors, as laymen, are as capable of answering as" the putative expert).

Likewise here, Dr. Kapit's thoughts about what "an ethical pharmaceutical company" should do are not admissible as expert testimony. Ideas about morality and ethics, even if they were relevant to any matters in issue (they are not), are well within jurors' ordinary experience and common sense and do not require exposition by an expert witness.[6]

## IV. DR. KAPIT'S TESTIMONY REGARDING FOREIGN REGULATORY MATTERS IS IRRELEVANT AND INADMISSIBLE.

Several of Dr. Kapit's opinions have to do with regulatory actions in foreign countries. *See* Kapit Rep. (Ex. A) ¶ 71(c) (stating opinion regarding "concerns" supposedly raised by Canadian regulatory authorities); *id*. ¶ 74(h) (opinion about actions taken by Australian authorities); *id*. ¶¶ 74(i), 81 (opinions regarding British authorities); *id*. ¶ 132 (opinions regarding data presented to Australian, British, European, and Japanese authorities). Such opinions are irrelevant in these cases, which involve medicines taken and injuries allegedly sustained in the United States, and which are governed by U.S. federal and state law.

The only governmental actions with any relevance to plaintiffs' claims against Bayer are those taken by the FDA, which has exclusive authority to regulate the sale and marketing of prescription drugs in the United States. Evidence concerning

---

6 Dr. Kapit's claim that his experience in the federal government gives him special authority on questions of ethics, Kapit Dep. (Ex. B) at 166:4–168:10, is specious. As Dr. Kapit concedes, "a jury trial means that the jury makes these judgments." *Id*. at 359:3-4.

whether Bayer satisfied the regulatory or legal standards of foreign governments has no bearing on any issues in these cases, and therefore should be excluded. As aptly explained in *Harrison* v. *Wyeth Labs.*, 510 F. Supp. 1 (E.D. Pa. 1980):

> Pennsylvania's interest in the regulation of the conduct of drug manufacturers and the safety of drugs produced and distributed within its borders does not extend so far as to include such regulation of conduct on drugs produced or distributed in foreign countries. Questions as to the safety of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of product safety for drugs sold in other countries. . . .
>
> Each government must weigh the merits of permitting the drug's use and the necessity of requiring a warning. Each makes its own determination as to the standards of degree of safety and duty of care. The balancing of the overall benefits to be derived from a product's use with the risk of harm associated with that use is peculiarly suited to a forum of the country in which the product is to be used. Each country has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits . . . .

*Id.* at 4. This analysis is directly applicable to investigations related to Baycol in other countries.

Similarly, the Eleventh Circuit in *Deviner* v. *Electrolux Motor, AB*, 844 F.2d 769 (11th Cir. 1988), held that evidence of foreign regulatory standards were properly excluded from trial. In that case, the trial court had excluded references to foreign regulatory standards in connection with a product liability case involving a product sold in the United States. *Id*. at 771 n.2. The Eleventh Circuit affirmed that decision, favorably noting the trial court's "desire to avoid confusing the jury with Swedish law," and adding that there was no need to inject another level of complexity

into a case where jurors already had to address issues of state law and "technical questions of fact." *Id*. at 773; *accord Hurt* v. *Coyne Cylinder Co.*, 956 F.2d 1319, 1327 (6th Cir. 1992) (following *Deviner* and holding foreign regulatory standards inadmissible).

The same reasoning has been applied in the Baycol litigation. The judge overseeing consolidated Baycol litigation in Texas precluded the plaintiffs from offering "evidence relating to foreign criminal investigations and foreign regulatory investigations after the withdrawal of Baycol." *In re Texas Second Region Baycol Litigation,* Order on Defendants' Motion to Exclude Evidence (Oct. 28, 2004) (Ex. J) at 1.

Likewise here, evidence relating to foreign governmental proceedings is inadmissible and should be excluded. Dr. Kapit's opinions about the regulatory standards and regulatory proceedings in foreign countries are irrelevant. Those opinions have no bearing on the matters in issue here — whether Bayer was negligent under the law of any jurisdiction in which plaintiffs' claims arose, whether Baycol is defective under state law, and whether plaintiffs' injuries were caused by Baycol — and therefore should be excluded. Fed. R. Evid. 401, 402.[7]

---

[7] Nor may plaintiff introduce inadmissible evidence of foreign regulatory matters by arguing that the evidence is relevant to show "notice" to Bayer of the risks of Baycol. To the extent plaintiff may cite Bayer's "notice" of a foreign government's decision to mount an investigation, based on that government's laws and policies, that "notice," as discussed above, has no relevance to the issues in these cases which are to be decided based on the law of the United States and the applicable state jurisdiction.

## CONCLUSION

For these reasons, Bayer respectfully requests that plaintiffs' expert Richard Kapit be precluded from testifying to the opinions discussed above.

Dated: April 17, 2006

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
Richard H. Menard
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, N.W. Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*