**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**BAYER AND GSK's MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF STEPHEN RASKIN**

Dr. Stephen Raskin is essentially a plaintiff's lawyer wearing a cardiologist's lab coat. Dr. Raskin spent roughly 13 hours (a) reviewing documents provided to him by the PSC and (b) churning out an "expert" report that is virtually devoid of scientific and medical opinions. Dr. Raskin offers an 11-page summary of Bayer's alleged misdeeds that reads more like a lawyer's closing argument than an expert report.

Dr. Raskin opines that Bayer misrepresented the risks of Baycol to the medical community. However, this opinion is inadmissible under *Daubert v. Merril Dow Pharm.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, because it is based entirely on inherently unreliable adverse event reporting data, and fails to take into account the relevant facts. *See, e.g., Nelson v. American Home Prods., Corp.*, 92 F. Supp. 2d 954, 969 (W.D. Mo. 2000) (expert testimony based upon spontaneous reporting excluded because an AER "may be sufficient for formulation of a hypothesis that can later be tested and confirmed, but it is not proof of causation in the courtroom or the scientific community").

Dr. Raskin also opines regarding Baycol's labeling, including, for example, his belief that Bayer should have included AER and comparative AER data in its label. Report of Stephen Raskin, M.D. (Ex. A) ¶¶ 14, 15, 17, 23. By his own admission, however, Dr. Raskin is not qualified to render opinions on drug labeling and/or the FDA's regulations. *See* Deposition of Stephen Raskin (Ex. B) at 74:22-25. Thus, his labeling opinions are inadmissible. *See Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1566 (8th Cir. 1991) (excluding experts who had general accounting knowledge but not specific expertise in the areas they were attempting to opine).

Dr. Raskin's "expert" report also addresses matters that are not properly the subject of expert testimony at all. In particular, defendants seek to prevent Dr. Raskin from offering (1) his personal opinions about Bayer's ethical obligations; (2) his speculations regarding Bayer's intentions, attitudes and state of mind; (3) his speculative musings on what other doctors would or would not have done with different information; and (4) his argumentative and slanted summaries of Bayer's internal documents and memoranda. None of these opinions requires any scientific or other technical knowledge and is therefore not properly the subject of expert testimony. *See* Fed. R. Evid. 702.

## ARGUMENT

Dr. Raskin devoted a scant 13.7 hours to preparing his report. Raskin Dep. (Ex. B) at 91:22-92:9. To properly form an opinion, Dr. Raskin would have been required to digest a large body of documents regarding complicated medical issues (including complex factors involving causation, drug interaction, and drug safety). Dr. Raskin was only able to prepare an expert report in less than 14 hours by forgoing an

independent review of the materials. Instead, Dr. Raskin relied solely upon selected information provided by the PSC. *Id.* at 93:2-7. Dr. Raskin never requested any additional information nor did he do any independent research. *Id.* at 95:6-12. Because Dr. Raskin's methodology and proposed testimony have been created for and tailored to the purposes of litigation and do not flow from Dr. Raskin's actual expertise, they do not constitute the "independent scientific review" demanded by *Daubert*. *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001) (listing as one of the *Daubert* factors: "whether the expertise was developed for litigation or naturally flowed from the expert's research"); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317-20 (9th Cir. 1995) (applying the Supreme Court's *Daubert* standard after remand and disqualifying experts because their "research" was created for litigation).

## I. DR. RASKIN'S OPINION REGARDING THE COMPARATIVE SAFETY OF BAYCOL IS INADMISSIBLE.

### A. Dr. Raskin's Opinions Are Inadmissible Because They Are Based Upon Adverse Event Reports.

Dr. Raskin proposes to tell the jury that "Bayer failed to disclose to the medical community important information about the risk of muscle injuries associated with the use of Baycol." Raskin Rep. (Ex. A) ¶ 6. However, Dr. Raskin concedes that this information was only "based upon adverse event reports." *Id*. ¶ 12; *see also id.* ¶ 15 (arguing Bayer should have "provid[ed] its material and important knowledge about *comparative adverse event rates*") (emphasis added); *id.* ¶¶ 21, 25 (utilizing AERs). In fact, Dr. Raskin's entire opinion on the toxicity of Baycol rises and falls on the viability of AER reporting data alone:

Q. The only evidence you have of greater muscle toxicity for Baycol is the spontaneous adverse event data, correct?

A. Yes.

. . . .

Q. And your conclusion that Baycol had a disparate risk relative to other statins is based only on your retrospective analysis of certain adverse event data, correct?

A. Yes.

Raskin Dep. (Ex. B) at 110:5-8; 218:7-11.

While Dr. Raskin acknowledges that AERs are subject to "potential statistical biases," *id.* at 125:1-3, he admits that he did not account for such biases:

Q: You have not controlled for that [AER] bias in the data you are relying upon in this case, correct?

A: I am not using that variable, correct.

*Id.* 138:7-10

The infirmity of Dr. Raskin's approach is confirmed by the fact that at the time he prepared his report, he did not know that the AER biases existed:

Q: Therefore, you submitted your report in this case without any investigation into the potential biases that could affect the reporting rate of adverse events in the statin class, correct?

A. Correct.

. . . .

Q: [H]ave you read any publication of the FDA containing caveats for the proper use of adverse event data?

A: No, I have not.

*Id.* at 128:7-11; 138:25-139:3.

As explained in depth in the separate memorandum defendants have filed on the use of AER evidence, AERs cannot be used to compare the safety of different medicines. The FDA is unequivocal on this point, *see* FDA Office of Postmarketing Drug Risk Assessment, "Adverse Event Reporting System (AERS): Brief Description with Caveats of System" (Oct. 18, 1999) (Ex. C) at 2, and courts have consistently rejected AERs as evidence of causation or relative risk. *See* Defendants' AER Motion; *see also* Raskin Dep. (Ex. B) at 114:13-19 (admitting that he had never used spontaneous adverse event report data to analyze comparative drug safety until doing so to render this opinion). AER reporting rate data do not provide any scientifically reliable basis for an opinion about comparative safety.

Even after he submitted his report and learned about AERs' biases, Dr. Raskin did nothing more than read a supplemental report by another PSC testifying expert, Dr. John Farquhar. Raskin Dep. (Ex. B) at 127-30 (testifying that he reviewed Dr. Farquhar's response to a report of defendants' epidemiologist, Dr. Brian Strom).[1]

This approach is insufficient to salvage Dr. Raskin's putative expert testimony. As discussed in defendants' Motion To Exclude Plaintiffs' Putative Expert Witnesses From Invoking the Testimony of Other Testifying Experts, an expert who is not qualified in a particular field may not "parrot" the views of experts in that field to support his own conclusion. *See Dura Automotive Sys. of Ind., Inc. v. CTS Corp.*, 285

1 *See* Fed. R. Evid. 26(a)(2)(B) (an expert "report shall contain a *complete* statement of all opinions to be expressed and the basis and reasons therefore.") (emphasis added); *see also Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (noting that deposition testimony cannot cure inadequacies in expert's report).

F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty"); *In re TMI Litigation*, 193 F.3d 613, 714-16 (3d Cir. 1999) (expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert*" and thus exclusion of his opinion was warranted); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (excluding expert testimony because expert had no independent expertise to assess the reliability of the underlying report he premised his opinions upon).

Because Dr. Raskin made no attempts to independently verify the conclusions reached by those other putative experts — nor could he have done so had he tried given the individuals' different areas of purported expertise — his opinion remains wholly unsupported and thus inadmissible.

**B. Dr. Raskin's Opinion Should Be Excluded Because He Did Not Consider All Relevant Facts and Thus His Opinion Can Not Be Supported.**

Because Dr. Raskin did not consider all the facts in forming his opinion – only those he was spoon-fed by the PSC – his opinion regarding the comparative safety of Baycol would be inadmissible even if his "methodology" in the form of reliance on AERs preliminarily qualified him to testify. In no event is Dr. Raskin's comparative risk analysis based on "sufficient facts and data." Fed. R. Evid. 702; *Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 928 (8th Cir. 2005); *see also Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999). Expert testimony that fails to review the relevant

facts is inadmissible. *See, e.g.*, *Nebraska Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (excluding expert testimony who failed to account for all relevant facts); *Weisgram v. Marley Co.*, 169 F.3d 514, 520 (8th Cir. 1999).

Dr. Raskin opines "that Baycol was more dangerous than other statins." Raskin Rep. (Ex. A) ¶¶ 12, 26. Despite this conclusion, however, Dr. Raskin admits that he is "not aware of data showing increase hazard risk" of Baycol in comparison to other statins. Raskin Dep. (Ex. B) at 64:13-14. Although Dr. Raskin's report freely compares Baycol to other statins, during his deposition he could not point to any reliable information that he had reviewed regarding the risks associated with other statins. Rather, at best, Dr. Raskin's report repeatedly relied on inadmissible AER comparisons, and even then he was forced to acknowledge that he did not possess all of the information relevant to making those already dubious comparisons:

> Q. [Y]ou do not know the number of spontaneously reported cases of rhabdomyolysis in the first year of marketing with any other statin?
>
> A. Yes, that is true."

*Id.* at 106:24-107:3; *id.* at 107:17-24 (admitting having no "absolute evidence" regarding Baycol's reported incidence of rhabdomyolysis, but instead relying upon his "impression").

In short, Dr. Raskin has not compiled, let alone studied, any of the data that would be essential to supporting his analysis. As a result, his opinion amounts to little more than guesswork, and it is well-established that expert testimony that is based upon

speculation and conjecture is inadmissible. *See Weisgram*, 169 F.3d at 520 (overruling district court and disqualifying expert under Rule 702, whose testimony had "no reasonable factual basis" and thus was "pure conjecture").

## II. DR. RASKIN'S LABELING OPINIONS ARE INADMISSIBLE BECAUSE HE ADMITS THAT HE IS NOT AN EXPERT IN DRUG LABELING OR FDA REGULATIONS.

Dr. Raskin opines that Bayer should have used AER or other post-marketing surveillance data to change the warnings on the Baycol label, to provide some form of comparison to other statins. *See* Raskin Rep. (Ex. A) ¶¶ 14, 15, 17, 23; *see also* Raskin Dep. (Ex. B) at 109:21-25 ("Q. After the initial label, your only criticism of the Baycol labels was the alleged nondisclosure of spontaneous adverse event data and what inferences you believe can be drawn from that data. A. Yes.")

Dr. Raskin, however, repeatedly admitted that he lacks expertise with respect to FDA regulations and pharmaceutical drug labeling. *See* Raskin Dep. (Ex. B) at 74:22-25 ("I am not an expert in FDA matters, of course.").

> Q: Have you ever participated in a label change of any capacity for a pharmaceutical?
>
> A: No, sir.
>
> Q: . . . . You have no firsthand experience participating in a changes being effected application to the FDA?
>
> A: Not firsthand.
>
> . . . .
>
> Q: . . . . You are not an expert in FDA regulations, correct?
>
> A: That is right.

Q. You are not an expert in what changes a drug company can or cannot make through a changes being effected process, correct?

A: I'm not an expert. I have a general understanding.

Q: And your general understanding began after you were retained to be an expert in this case, correct?

A: Correct.

. . . .

Q: Do you have any expertise to opine as to whether or not the FDA would have approved a change to the Baycol label to list the number of spontaneous events of rhabdomyolysis?

A: No, I don't have any particular knowledge of that.

. . . .

Q: You are not an expert in FDA rules and regs, are you?

A: No, I'm not.

Raskin Dep. (Ex. B) at 82:3-12; 86:9-20; 105:5-10; 138:21-23.

Dr. Raskin's lack of expertise is amply demonstrated by the fact that the FDA prohibits the very comparisons he believes should have been on the label. *See* 21 C.F.R. § 201.57(g)(4) and (c)(3)(v) (2003) (claims comparing safety or effectiveness or frequency, severity, or character of adverse reactions must be based on "adequate and well-controlled studies") *and* 21 C.F.R. § 314.126(e) (2004) (listing examples of those things which fall short of being "adequate and well-controlled studies," including "isolated case reports").

In addition, Dr. Raskin's opinions about the Baycol label derive entirely from another expert's report and a review of several federal regulations:

Q: . . . The sum total of your work to prepare an opinion regarding what label changes Bayer could have made to the Baycol label consisted of reading Dr. Kapit's expert report and reviewing the published Code of Federal Regulations, correct?

A: Yes.

Raskin Dep. (Ex. B) at 91:1-7. Yet Dr. Raskin also admits that he did not review these sources until *after* preparing his expert report. *See* Raskin Dep. at 87:7-22; *id.* at 88:24-89:6 ("Q: When you submitted your report in this case, you had neither reviewed the Code of Federal Regulations, nor reviewed Dr. Kapit's expert report, correct? A: That is correct.").

Even if Dr. Raskin had properly familiarized himself with these materials before preparing his report, they are not proper bases for rendering an expert opinion. Dr. Raskin is either (a) improperly parroting another expert's opinions, *see United States v. Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir. 1989); *see also In re TMI Litig.*, 193 F.3d at 714-16; or (b) presenting as opinion what essentially is argument about decisions that are wholly within the province of the FDA. *See* Kapit Motion, Part II (discussing preemption).

Furthermore, the Eighth Circuit has made clear that Rule 702 requires a close fit between the witness's actual expertise and the testimony he proposes to offer. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (court did not abuse its discretion in prohibiting hydrologist from testifying about required standard of care for warehousemen). Dr. Raskin's background as a cardiologist clearly does not constitute sufficient qualification with respect to the

"particular subject matter" of FDA regulations or pharmaceutical drug labeling. *See Garnac*, 932 F.2d at 1566.

Thus, Dr. Raskin should not be permitted to offer opinions about the Baycol label, including: (1) whether Bayer complied with FDA regulations; (2) whether Bayer should have sought, or the FDA should have approved, alterations to the labeling of Baycol; and (3) whether the Baycol label should have reported AER data or provided specific comparisons to other statins.

## III. DR. RASKIN'S PERSONAL OPINIONS ARE INADMISSIBLE UNDER RULE 702.

Dr. Raskin offers a host of personal opinions in his expert report. They generally fall into four categories:

1. He opines that Bayer violated his concept of ethical duties;
2. He characterizes Bayer's motives, intent and state of mind;
3. He speculates about what other physicians knew about Baycol and would have done with additional information; and
4. He offers an argumentative narrative of Baycol's history.

These are not proper subjects of expert opinion testimony. First, these matters do not call upon Dr. Raskin's scientific or technical expertise, but are simply his speculation about what Bayer or other physicians may have known, thought or done. *See* Fed. R. Evid. 702. Second, he does not purport to rely upon a generally-accepted methodology for these opinions, and there is no evidence that one exists. *See id.* Such opinions are thus indistinguishable from arguments lawyers make in closing arguments.

**A. Dr. Raskin's Personal Opinions on Bayer's Ethical Obligations Are Not a Proper Subject of Expert Testimony.**

Throughout his expert report, Dr. Raskin opines that Bayer violated his view of its ethical obligations. In particular, Dr. Raskin intends to tell the jury:

- "Doctors and patients *had a right to know these facts* in order to make informed decisions . . . ." Raskin Rep. (Ex. A) ¶ 12 (emphasis added).

- "Bayer's failure to disclose is *not justified* by the fact that the data is based on adverse event reports; any doubts about the precision of such data pale by comparison to the overwhelming evidence of greater risk" when using Baycol. *Id.*

- "It is *simply wrong* for Bayer to have *misled* the cardiology community by *concealing* the adverse event analysis, and equally *wrong* to recruit cardiologists to further *mislead* other doctors . . . ." *Id.* ¶ 16 (emphasis added); *see also* Raskin Dep. (Ex. B) at 160:12-17 (stating that pharmaceutical companies have "a moral responsibility to let me know and let you know, my patients, about real increase in risk").

- "[I]t was *misleading* for Bayer to present only this type of data . . . ." Raskin Rep. (Ex. A) ¶ 18 (emphasis added).

- "This [December 15, 1999] letter was *false and misleading*, both in its content and its omissions." *Id.* ¶ 17 (emphasis added).

- "[T]here is *no justification* for *failing to disclose* the higher risk shown by the data in regard to monotherapy." *Id.*

- Bayer did not encourage "an *open and honest* discourse about Baycol's risks . . . ." *Id.* ¶ 18 (emphasis added).

Ethics and morality, however, are not proper subjects for an expert opinion. *See* Fed. R. Evid. 702; *Dibella v. Hopkins*, No. 01 Civ. 11779, 2002 WL 31427362, *4 (S.D.N.Y. Oct. 30, 2002) (testimony on business ethics inadmissible because the dispute was over "what happened" "not over what is ethical"). Subjective, ethical and moral

beliefs are not the type of "scientific, technical or other specialized knowledge" contemplated by Rule 702. *See id.* As the *Rezulin* court explained in another pharmaceutical action:

> The principal issues here are whether the defendants breached their legal duties to the plaintiffs in the manufacturing, labeling and marketing of Rezulin and, if so, whether any such breaches were proximate causes of injury. While the defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of the actions simply is not relevant to these lawsuits.

*In re Rezulin*, 309 F. Supp. 2d at 544; *see also In re Diet Drugs Products Liability Litigation*, 2001 WL 454586, *10 (E.D. Pa. Feb. 1, 2001) (holding that plaintiff could not offer an expert to testify about "how an ethical company would act"). In Philadelphia, Judge Bernstein rejected proposed testimony by an expert about Bayer's ethics in a Baycol action saying that, an expert cannot "testify to what is bothersome to him and things like that. . . . If he does, we will just stop it in its tracks." *Galdi v. Bayer Corp.*, Pa. Ct. Cmn. Pls., July Term 2002, Case No. 4892, Trial Tr. 3/12/04 at 43:3-6 (Ex. D) (applying Pa. R. Evid. 702, which is virtually identical to Fed. R. Evid. 702).

In short, whether Bayer acted in accordance with some amorphous concept of what Dr. Raskin views as "ethical" is irrelevant and inadmissible. *See* Fed. R. Evid. 702.

### B. Dr. Raskin's Opinions Regarding Bayer's Motives, Knowledge, Intent, or State of Mind Are Outside the Scope of His Expertise.

Throughout his report, Dr. Raskin opines on Bayer's motives, knowledge, intent and state of mind, for instance:

- Stating that his opinion is "[b]ased on [a] review of the information *known* to Bayer internally . . . " Raskin Rep. (Ex. A) ¶ 6.
- "*Perhaps in response to the growing reports of rhabdomyolysis in patients taking Baycol*, in February, 1999, Bayer requested information from the FDA . . ." *Id.* ¶ 10 (emphasis added).
- Describing an e-mail as "*indicative of Bayer's attitude* . . ." *Id.* ¶ 21 (emphasis added).
- "Bayer did not tell practicing cardiologists or the medical community *what it knew* about the risks of muscle toxicity associated with Baycol." *Id.* ¶ 26.

Opinions about Bayer's purported motives, knowledge, intent, or state of mind fall outside Dr. Raskin's knowledge or stated expertise, and do not rest upon "scientific, technical or other specialized knowledge . . ." Fed. R. Evid. 702; *Rezulin*, 309 F. Supp. 2d at 545-47, 561-66. Each of these topics is a "classic jury question and not one for the experts." *Diet Drugs*, 2000 WL 876900, *9 (E.D. Pa. June 20, 2000).

Similar to his opinions about ethical principles, these opinions reflect Dr. Raskin's personal beliefs, which are based on his layman's speculations, not his scientific expertise:

Q: You are not here to be an expert on Bayer's attitude, are you, sir? . . .

A: No.

. . . .

Q: You don't purport to be an expert on what Bayer believed about the risk of Baycol at particular points in time, correct? . . .

A: I would say exactly, I do not know their perception.

. . . .

Q: You are not an expert in how Bayer assessed that data internally, correct? . . .

A: I do not know how they assessed the data internally.

Raskin Dep. (Ex. B) at 214:24-215:02; 216:2-7; 216:23-217:2.

Judge Bernstein rejected similar testimony in the *Galdi* Baycol case. As Judge Bernstein noted, this type of testimony "sounds . . . like his personal opinion, not a scientific conclusion," and thus must be excluded. *Galdi*, Trial Tr. 3/12/04 (Ex. D) at 37:2-4. This Court should likewise exclude Dr. Raskin's testimony on Bayer's motives, knowledge, intent, and/or state of mind under Rule 702.

**C. Dr. Raskin's Personal Opinions and Speculation About What Other Physicians Knew or Would Have Done with Different Information Are Not Admissible.**

Dr. Raskin repeatedly opines about what other physicians did or did not know or would have done with Adverse Event Report ("AER") data for Baycol. He states, for example, that "other physicians were not informed about the key and very material concerns relating to Baycol's efficacy and safety" revealed by post-marketing AER data. Raskin Rep. (Ex. A) ¶ 6; *see also id.* ¶ 12 (stating that "the medical community as a whole" was "never informed" about "very important data" regarding Baycol); ¶ 19 ("Bayer never informed practitioners"); ¶ 21 ("Bayer did not communicate . . . to the medical community"); ¶ 25 ("lack of accurate and complete reporting to physicians"); ¶ 26 ("Bayer did not tell practicing cardiologists or the medical community what it knew").

Dr. Raskin, however, has no way of knowing what "other physicians" or the "medical community" did or did not know or would have done with different information. These opinions are entirely speculative. None is based on the type of

scientific or specialized knowledge required by Rule 702 or remotely grounded in a generally-accepted methodology. Moreover, such a blanket opinion ignores the individual risk assessments physicians make when deciding whether to prescribe Baycol. *See* Raskin Dep. (Ex. B) 231:12-15 ("Q. Doctor, you are not offering any testimony about what any specific doctor should do in any specific case, are you? A. No.").

### D. Several of Dr. Raskin's Opinions Are Nothing More Than an Argumentative Narrative Masquerading as Expertise.

At times, Dr. Raskin's report devolves into thinly disguised advocacy, not expert testimony. By way of example, Dr. Raskin's report recites the following as opinions:

- "Indeed, Bayer's own scientists found the adverse event data strong . . ." *Id.* ¶ 13.
- "Bayer could have and should have provided this information to practitioners years earlier." *Id.* ¶ 14.
- "Bayer warned the sale force not to, 'unduly alarm physicians' by starting their Baycol presentation with the contraindication issue. Rather than encourage an open and honest discourse about Baycol's risks, Bayer urged it sales force to emphasize that, 'Baycol has been shown to be safe and well tolerated.'" *Id.* ¶ 18.
- "Not only did Bayer fail to provide relevant, material information to doctors regarding the relative risks of Baycol, it pushed forward with plans to market even greater doses." *Id.* ¶ 24.
- "Bayer misrepresented the risks as comparable to, or probably, safer than other statins on the market . . ." *Id.* ¶ 26.

In essence, Dr. Raskin seeks to deliver a "closing argument" to the jury regarding selected portions of Baycol's history. His "glosses" on the history of Baycol, however, are "simple inferences drawn from uncomplicated facts that serve only to

buttress plaintiffs' theory of the case[,]" inferences that the jury is equally capable of drawing without his assistance, and that counsel may argue at trial. *Rezulin*, 309 F. Supp. 2d at 551. A narrative of facts that are otherwise admissible is not proper expert testimony. *Id.* Moreover, Dr. Raskin's narrative is not tethered to any "scientific, technical, or other specialized knowledge" as required by Fed. R. Evid. 702. It is therefore inadmissible. *Id*.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude certain of Dr. Raskin's testimony under *Daubert* and Rules 702 and 703.

Dated: April 17, 2006

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Paul J. Zidlicky
Frank R. Volpe
Eamon P. Joyce
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Catherine Valerio Barrad
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, N.W. Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*