# Exhibit C

Adverse Event Reporting System (AERS)
Office of Postmarketing Drug Risk Assessment
Brief Description with Caveats of System
October 18, 1999

IMPORTANT INFORMATION:

The Adverse Event Reporting System (AERS) in the Office of Postmarketing Drug Risk Assessment (OPDRA), was implemented to take advantage of up-to-date methods for data entry and database design. AERS contains all reports received since November 1, 1997.

BACKGROUND:

The AERS database is a computerized system for storing adverse events reported by health professionals and others. The system contains adverse events detected and reported after marketing of the drug.

AERS relies on health professional to detect new clinical events, to attribute the appearance of the clinical event to the administration of a drug, and to report that clinical event.

The health professional may choose to report the adverse reaction to the FDA or to a drug firm, who must, by law, report to the FDA. Ninety percent of the FDA's reports are received from drug manufacturers. OPDRA receives the remaining ten percent directly from other reporters. (i.e., Health Professionals and consumers).

Data from all reports are entered into AERS and the report images are scanned into an Electronic Filing System (EFS). All reports are retrieved by accessing the Individual Safety Report (ISR) number.

Copies of individual case safety reports, which are summarized in this printout, may be obtained by submitting a separate FOI request. When requests are submitted for copies of report images, the ISR number should be listed in tabular format in ascending order as shown in the following example:

| ISR NUMBER |
|---|
| 3000913-1 |
| 3000917-9 |
| 3001581-5 |

There is a $14.00/Hour search time and a $.50/page charge. Please note that there will be redactions made to all personal identifiers on the report.

CAVEATS:

There are some important things to remember when reviewing or analyzing data from AERS.

1. Reports contain only those reactions voluntarily submitted either directly to the FDA or to the drug manufacturer by consumers and/or members of the health profession and which have been entered into the AERS computerized filing system since November 1,1997.

2. The information contained in the reports has not been scientifically or otherwise verified.

3. For any given report, there is no certainty that the suspected drug caused the reaction. This is because physicians are encouraged to report suspected reactions. The event may have been related to the underlying disease for which the drug was given to concurrent drugs being taken or may have occurred by chance at the same time the suspected drug was taken.

4. Accumulated case reports cannot be used to calculate incidence or estimates of drug risk.

5. Numbers from these data must be carefully interpreted as reporting rates and not occurrence rates. True incidence rates cannot be determined from this database. Comparisons of drugs cannot be made from these data.

Definitions of the FOI Report

| | |
|---|---|
| Date | Date the report was received by the FDA. |
| ISR Number | Unique number for identifying an AERS report. |
| Report Type | The type of ISR received. Expedited (15-day) and periodic reports are from manufacturers; "direct" reports are voluntarily submitted to the FDA by non-manufacturers. |

| Report Type | Description |
|---|---|
| Expedited (15-day) | Mandatory reports received from the manufacturer informing the FDA of adverse events that are both serious and unexpected. By law, these reports must be delivered to the FDA, within 15 calendar days of the initial receipt by the manufacturer. |
| Periodic | These are mandatory reports that do not fall into the expedited category. These reports are delivered quarterly to the FDA. |
| Direct | These reports are from health professionals, private individuals or sources other than manufacturers. |

| | |
|---|---|
| Company Report Number | Manufacturer's unique report identifier. |
| Age | Numeric value of patient's age at event. |
| Gender | The gender of the patient (male, female, unknown, or Not specified). |
| Outcome | The results of the adverse event as. The following events are potential choices. |

| Outcome | DESCRIPTION |
|---|---|
| DE | Death |
| LT | Life-Threatening |
| HO | Hospitalization – Initial or Prolonged |
| DS | Disability |
| CA | Congenital Anomaly |
| RI | Required Intervention to prevent permanent impairment/damage |
| OT | Other |

| | |
|---|---|
| PT (Preferred Term) | The reported reaction, in medical terminology, describing the event. This is coded using the Medical Dictionary for Regulatory Activities (MedDRA). |
| Report Source | Identifies the initial source of the report. (I.e., Health Professional, Consumer, etc..) |
| Product | Name of drug. |
| Role | S = Suspect<br>C = Concomitant<br>PS = Primary Suspect<br>SS = Secondary Suspect |
| *Suspect Drug | The drug that the initial reporter deemed most likely to be associated with the reactions. |
| Concomitant Drug | A list of any drugs taken at the same time as the suspect medication, but not suspected of causing the adverse event. |
| Manufacturer | The company that manufacturers the drug. |
| Route | Route of administration of the drug. |
| Dose | Quantity of drug administered in a 24-hour period. |
| Units | Modifies the dose with units of measurements (e.g., mg, IU, ml, etc.). |
| Duration | Number of days the drug was used. |

# Exhibit D

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL-TRIAL DIVISION

- - -

| | | |
|---|---|---|
| JOSEPH GALDI, Plaintiff | ) | July Term, 2002 |
| vs. | ) | |
| | ) | NO. 004892 |
| BAYER CORPORATION, et al | ) | |

- - -

MARCH 12, 2004
Morning Session

- - -

Courtroom 246 - City Hall
Philadelphia, PA

- - -

BEFORE HONORABLE MARK I. BERNSTEIN

- - -

REPORTED BY: CATRINA G. MULLER, RPR, CRR

THE COURT: Sounds to me like his personal opinion, not a scientific conclusion.

The motion is granted as to those three phrases, I'm sure there may be some things around those things that he could reasonably testify to. If he impinges on this type of area, will you have to object at trial. But those three comments, specifically, will not be admissible into evidence.

MR. GOLDMAN: Can I direct your attention, Judge, to page 24 of Dr. Furberg's expert report?

THE COURT: Yeah.

MR. GOLDMAN: And in paragraph -- right before subsection (g) which actually --

THE COURT: "Bayer was aware that its safety communication campaign was ineffective but did little about it"?

MR. GOLDMAN: Yes. That, again, is Dr. Furberg testifying about his own personal opinion. He has no expertise in Bayer's state of mind, what Bayer was or was not aware of,

MR. GOLDMAN: Yes.
THE COURT: That's exactly where I stopped. So hold on. Okay.
MR. GOLDMAN: And the objection --
THE COURT: To where? I'm sorry.
MR. GOLDMAN: Page 468 line 5.
THE COURT: Okay.
MR. GOLDMAN: And what Dr. Furberg is doing here is describing the fact that what he's done is review documents, and his view is that there's a pattern of misrepresentation based on these examples of documents he pulled out, and he says the bottom line is the same, I am troubled, troubled by the way Bayer behaved.
THE COURT: Right.
MR. GOLDMAN: And the basis is Dr. Furberg's personal opinion about whether or not he is troubled about Bayer's behavior is not appropriate.
THE COURT: He is not going to testify to that, is he?
MR. LEVENSTEN: No, sir.
THE COURT: So I don't even need

an order. If you want an order, I will do it; but he's not going to testify to what is bothersome to him, and things like that, I don't think. If he does, we will just stop it in its tracks.

MR. GOLDMAN: The next area of testimony, Judge, is testimony relating to FDA regulations and disclosure of facts, as he puts it, to the FDA, specifically --

THE COURT: Yeah, where?

MR. GOLDMAN: On page 11 of his report is where he begins his discussion about what he calls dissemination failures.

THE COURT: Okay.

MR. GOLDMAN: And if you look on page 11, paragraph 21 starts "FDA."

THE COURT: Hold on. All right. How much of this do I have to read?

MR. GOLDMAN: Well, you only have to read a couple of the italicized -- let me point you to the first one, "failure to report the first case of rhabdomyolysis and the drug labeling."

THE COURT: Okay.