**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS M. ZIZIC**

Thomas M. Zizic, M.D. is a rheumatologist specializing in diseases of the bone. As he readily conceded in his deposition, he is not an expert in epidemiology, pharmacology, or toxicology. Prior to forming his opinions in this litigation, Dr. Zizic had not conducted any independent study of statins, let alone cerivastatin, nor has he published or lectured on the subject of statin-induced myopathy.

But now, based on his interpretation of a few medical articles, Dr. Zizic proposes to testify to the theory that Baycol causes persistent or chronic muscle injury even in the absence of elevated CK levels.[1] Another district court recently excluded as speculation the same unproven hypothesis in a case involving Lipitor. *See Leathers v. Pfizer, Inc.*, 2006 WL 708571 (N.D. Ga. Mar. 10, 2006). This Court also should exclude this speculation.

---

[1] CK is an enzyme that becomes elevated when the contents of muscle cells leak out. This can be a normal physiological reaction – *e.g.*, in response to vigorous exercise – or an indication of muscle injury.

In addition, Dr. Zizic climbs aboard the bandwagon of PSC experts asserting that Baycol was the "most toxic" of all of the statins available while it was on the market, and caused adverse events at a higher rate and of a more serious nature. Dr. Zizic's opinion is unreliable because it is based on an inappropriate extrapolation from adverse event reports, and on conjecture regarding the pharmacokinetic properties of Baycol, which Dr. Zizic is unqualified to make.

Because both of Dr. Zizic's opinions lack the necessary indicia of reliability under *Daubert* and its progeny, and under Rule 702 of the Federal Rules of Evidence, this testimony should be excluded.

## ARGUMENT

### I. THE MEDICAL LITERATURE CITED BY DR. ZIZIC FAILS TO SUPPORT, AND IN SOME CASES CONTRADICTS, HIS OPINION THAT BAYCOL CAN CAUSE PERSISTENT OR CHRONIC MUSCLE INJURY.

Dr. Zizic asserts that, "It is clear that some patients with statin-induced muscle disease will continue to have chronic problems despite the discontinuation of the offending agent." Report of Thomas Zizic (Ex. A) ¶ 69; *see also id.* ¶¶ 13, 68, 70-73. Dr. Zizic's opinion is pure conjecture, unsupported by any scientific findings. A causal link between cerivastatin and persistent or chronic muscle injury has *not* been drawn, and causation of persistent or chronic muscle injury by statins is *not* a generally accepted scientific conclusion.

In fact, the United States District Court for the District of Georgia recently encountered and ruled on this very issue. In *Leathers v. Pfizer, Inc.*, __ F.R.D. __, 2006

WL 708571 (N.D. Ga. Mar. 10, 2006), plaintiff's expert, Dr. Mark R. Firth, contended that statins cause "prolonged and even permanent damage" through a "milder form of diffuse muscle ailment" than rhabdomyolysis. *Id.* at *1-3. After careful review of the medical literature, the court disagreed, concluding that "[t]he statin side effect recognized in the medical community is a temporary one that ends when the patient stops taking the drug" and that plaintiff's "attempts to extrapolate this temporary side effect to establish general causation of a much more serious, permanent illness" constituted "'leaping from an accepted scientific premise to an unsupported one.'" *Id.* at *3 (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1314 (11th Cir. 1999)). The Court therefore excluded Dr. Firth's opinions on general causation, ruling that "[r]esearch addressing the relationship between Lipitor (and, more generally, statins) and Plaintiff's alleged injury [prolonged or permanent muscle injury even after discontinuation of use] is still in an immature stage and does not possess the level of reliability required by *Daubert*." *Id.* at *8.

Like Dr. Firth, Dr. Zizic leaps from an accepted scientific premise to an unsupported one, basing his opinion regarding persistent or chronic myopathy on reports that do not provide sound scientific evidence to support his opinion:

- A 2002 report, Paul S. Phillips, *et al.*, "Statin-Associated Myopathy with Normal Creatine Kinase Levels," *Ann. Intern. Med.* 2002;137:581-86 (the "Phillips report") (Ex. D), a study of four patients designed to determine whether patients experiencing muscle symptoms with normal creatine kinase ("CK") levels could distinguish between a statin and a placebo;[2]

[2] Dr. Zizic also relies on a draft manuscript supplied to him by Dr. Phillips which has not

- A 2003 abstract, Hildebrand, *et al*., "The Natural Course of Statin-Induced Myopathy," *Arthritis & Rheumatology*. 2003;40:730 (the "Hildebrand abstract") (Ex. E), which provides no substantive evidence to support the opinion that statins, or particularly Baycol, can cause persistent or chronic muscle injury;

- A 2002 editorial, Scott M. Grundy, "Can Statins Cause Chronic Low-Grade Myopathy?," *Ann. Intern. Med.* 2002;137:617 (the "Grundy editorial") (Ex. F), which argues for the study of low-grade myopathy caused by statins, but which in no manner supports a conclusion of persistent or chronic myopathy caused by statins;

- A 2002 review, Robert L. Wortmann, "Lipid-lowering agents and myopathy," *Current Opinion in Rheumatology*. 2002;14:643-47 (the "Wortmann review") (Ex. G), which serves as a clinician's guide to the identification and treatment of myopathies, but which does not provide scientifically reliable evidence that statin use (or Baycol use) as a cause of persistent or chronic myopathy;

- A 2000 survey of case reports, Memduh Ucar, *et al*., "HMG-CoA Reductase Inhibitors and Myotoxicity," *Drug Safety*. 2000;22(6):441-57 (the "Ucar article") (Ex. H), none of which involved the use of Baycol;

- A 1989 letter to the editor of The Lancet, Philip A. Walravens, *et al*., "Lovastatin, Isoprenes, and Myopathy," *Lancet*. 1989;2:1097 (the "Walravens letter") (Ex. I), citing a single case report involving the use of lovastatin, not Baycol; and

- A 2000 article, Zohar Argov, "Drug-induced myopathies," *Curr. Opinion in Neurology*. 2000;13:541 (the "Argov article") (Ex. J) which makes an unsupported claim, without any tie to Baycol use, that muscle injury caused by use of "cholesterol-lowering agents" persisted after discontinuation.

---

been published or peer-reviewed, and which has not been produced to defendants because it was destroyed by Dr. Zizic at Dr. Phillips' request. Supplemental Report of Thomas Zizic (Ex. C) ¶¶ 1-2; Deposition of Thomas Zizic (Ex. B) at 29:6-31:2. Defendants have not been given an opportunity to evaluate this additional study, nor can defendants locate it in the medical literature (because it has not been published), and it is therefore an inappropriate basis for Dr. Zizic's opinions.

None of the reports supports Dr. Zizic's opinion that muscle injury caused by Baycol may persist or become chronic. Indeed, Dr. Zizic concedes that his opinion is without support in the scientific literature.

### A. Dr. Zizic Acknowledges That His Opinions Regarding Persistent or Chronic Muscle Injury Have No Support in Scientific Literature.

Dr. Zizic opines that muscle injury caused by the use of cerivastatin can persist or become chronic after the cessation of use. However, Dr. Zizic concedes that long-term data regarding statin-induced muscle injury is not available:

Q: So, there's just basically not good data on the rate of recovery versus rate of nonrecovery from statin-induced myopathy? Is that what you're saying?

A: ***The studies have not been done, that's correct.***

Zizic Dep. (Ex. B) at 211:3-9 (emphasis added); *see also id.* at 128:19-129:23, 130:1 (admitting that he knows of no scientific evidence showing that statin use can cause "permanent muscle damage or progressive myopathy in patients with normal creatine kinase levels").

Without reported data, and without any independent research to support his persistent or chronic muscle injury opinion, Dr. Zizic admits he is left to speculate on the post-use adverse effects of statins:

Q: But of right now, Doctor, because you don't know the data, you'd be speculating either way [as to whether "prolonged statin therapy leads to permanent muscle damage or progressive myopathy in patients with normal creatine kinase levels"]; right?

A: Correct.

Zizic Dep. (Ex. B) at 129:13-16.

Dr. Zizic, therefore, has taken a hypothesis that statins *may* cause persistent or chronic muscle injury and, without independent study or other validation, has asserted that hypothesis as an affirmed scientific conclusion. Such speculation should not be stamped with the imprimatur of "expert testimony." Expert opinion must be supported in science, and may not be merely the subjective belief of the proffered expert. *Group Health Plan, Inc.*, v. *Philip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003).

**B. The Phillips Report Does Not Support Dr. Zizic's Opinions.**

The 2002 report by Phillips, *et al.* (a former PSC expert) concerns four patients taking statins. These patients were selected because they self-reported muscle symptoms while receiving statin therapy, even though each had a normal CK level. Dr. Zizic cites the Phillips report, and "personal communication" with Dr. Phillips, in support of his contention that cerivastatin can cause persistent or chronic muscle injury after cessation of use. *See* Zizic Dep. (Ex. B) at 27:20-28:15; Zizic Supp. Rep. (Ex. C) ¶¶ 1-2. The Phillips report, however, contradicts this opinion, because in each of the four patients (including the one who used Baycol), muscle symptoms ended after the statin use was discontinued: "[S]ymptoms and histologic changes occurred only during statin use . . . . [T]he pathologic abnormality reversed upon discontinuation of statin therapy." Phillips PS, *et al*. "Statin-associated myopathy with normal creatine kinase levels," *Ann. of Intern. Med*. 2002;137(7):581-86 (Ex. D) at 582, 583. Substantively, therefore, the Phillips report supports the conclusion that adverse effects of statin therapy cease upon discontinuation, contrary to Dr. Zizic's opinion.

### C. The Hildebrand Abstract Does Not Support Dr. Zizic's Opinions.

Dr. Zizic, citing the Hildebrand abstract, opines, "The persistence of the decreased lipid oxidation for 2 months to 5 years off statins is compatible with the persistence of symptoms in patients with statin-induced myopathy . . . ." Zizic Supp. Rep. (Ex. C) ¶ 2; *see also* Zizic Dep. (Ex. B) at 127:16-128:18 (citing the Hildebrand article for the proposition that statin use can cause permanent or progressive muscle damage). The Hildebrand abstract, however, does not support Dr. Zizic's opinions.

The Hildebrand abstract reports a retrospective study of 30 patients who were taking statins and experienced myopathy or myalgia. The purpose of the study was to define the course and severity of statin-induced myopathy. Five of twenty persons tested did not show elevated CK levels. The study concluded:

> [M]ost subjects with musculoskeletal symptoms attributed to statin therapy experienced resolution of symptoms within six months of therapy cessation. . . . Most patients with elevated CPK, even when greater than 10,000, had complete and rapid recovery with supportive care and statin discontinuation. . . . *[O]ur findings indicate a benign clinical course with discontinuation of the offending statin and supportive care."*

Hildebrand J, *et al.*, "The Natural Course of Stain Induced Myopathy [abstract]," *Arth. & Rheumatology*. 2003;48(9)Suppl:730 (Ex. E) at 3. Dr. Zizic admits that the data in the Hildebrand abstract is incomplete and thus of limited scientific use:

> Q: And so because you don't have the data right now, there's still today no evidence indicating that prolonged statin therapy leads to permanent muscle damage or progressive myopathy in patients with normal creatine kinase levels; right?
>
> A: Not with absolute certainty . . .

* * *

I don't know what the data shows yet.

Q: But of right now, Doctor, because you don't know the data, you'd be speculating either way; right?

A: Correct.

Zizic Dep. (Ex. B) at 128:19-129:2, 129:11-16. Such speculation does not meet the requisite reliability mandated by *Daubert* for admission of expert testimony. The Hildebrand abstract does not present a complete data set or analysis of the data, and Dr. Zizic's citation to the publication is admittedly rank speculation. Even speculating, as Dr. Zizic does, that some of those patients with continued symptoms were included among those with normal CK levels, the Hildebrand abstract does not identify the statins prescribed to the 30 patients. Therefore, the Hildebrand abstract does not support Dr. Zizic's conclusion regarding Baycol.

**D. The Grundy Editorial Does Not Support Dr. Zizic's Opinions.**

Dr. Zizic cites to the Grundy editorial for the proposition that, "These [muscle] symptoms may abate after discontinuation of therapy, only to reappear when statin therapy is restarted." Zizic Rep. (Ex. A) ¶ 68. However, the Grundy editorial states unequivocally: "To date, no evidence indicates that prolonged statin therapy leads to permanent muscle damage or progressive myopathy in patients with normal creatine kinase levels." "Can statins cause low-grade myopathy [Editorial]," *Ann. of Intern. Med.* 2002;137:617 (Ex. F). The editorial suggests only that "a valid argument can be made for a more extensive study of low grade myopathy in patients treated with statins." *Id.* at 617.

**E. The Wortmann Review Does Not Support Dr. Zizic's Opinions.**

Dr. Zizic cites a review by Dr. Robert L. Wortmann for the contention that, "[p]ersistent myopathy has been reported to exist for several months after discontinuation of statins." Zizic Rep. (Ex. A) ¶ 73. The Wortmann article however, specifically cautions against doing what Zizic does – attributing muscle pain to statin use:

> If symptoms persist despite these interventions [of Co-Q10 supplements], a muscle biopsy is probably indicated. The use of a lipid-lowering agent may have unmasked an underlying condition. However, the myopathy might be unrelated to the lipid-lowering drug. The list of conditions and diseases that can cause muscle cramps, weakness, and elevated serum CK levels is lengthy, even in those patients [who had been treated with statins].

Wortmann RL. "Lipid-lowering agents and myopathy," *Current Opinions in Rheumatology*. 2002;14: 643-47 (Ex. G) at 647. Thus, at most, the Wortmann review stands for the hypothesis that the use of a statin ***may*** "unmask" underlying conditions that ***may*** in turn be the cause of persistent muscle injury, but the article certainly does not support the contention for which Dr. Zizic cites it: that statins cause persistent or chronic muscle injury after the cessation of use.

**F. Neither the Ucar Article Nor the Walravens Letter Supports Dr. Zizic's Opinions.**

Dr. Zizic also relies on a review of a small number of case reports presented in two publications for the opinion that statins, and Baycol, can cause persistent or chronic muscle injury. *See* Zizic Rep. (Ex. A) ¶¶ 70, 71 (citing Walravens PA, *et al.* "Lovastatin, isoprenes, and myopathy [letter]," *Lancet*. 1989;2:1097-98 (Ex. I) at 1097-98), and Ucar M, *et al*. "HMG-COA reductase inhibitors and myotoxicity," *Drug Safety*.

2000; 22(6):441-57 (Ex. H) at 441); Zizic Dep. (Ex. B) at 215:3-216:13 (citing the Ucar article). The Walravens letter describes a single case report of possible persistent myopathy after discontinuation of the use of lovastatin. The Ucar article reviews case reports involving HMG-CoA reductase inhibitor-related musculoskeletal system events. With respect to reports regarding persistent or chronic muscle injury after the discontinuation of use, none of the patients were using Baycol. Because the Walravens letter and the Ucar article rely solely on case reports, neither provides scientifically reliable evidence to support Dr. Zizic's opinions, particularly as they relate to Baycol.

It is well-established that isolated case reports are not reliable data upon which to base a scientifically supportable opinion. As the Eighth Circuit and this Court have found, "Case reports are generally not considered reliable evidence of causation." *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 n.5 (8th Cir. 2000); *see also Willert v. Ortho Pharm. Corp.*, 995 F. Supp. 979, 981 (D. Minn. 1998) (same). Indeed, Dr. Zizic admits that isolated, unscientific case reports are fundamentally unsound bases for expert testimony. Zizic Dep. (Ex. B) at 146:14-147:12; 164:9-165:3 (conceding that "[i]solated case reports" are the least reliable data, even less reliable than AERs ***and that case reports cannot be used to establish causation***). Because the Walravens letter and Ucar article are nothing more than a survey of case reports, they are not sound data for the opinions Dr. Zizic extrapolates from them.

### G. The Argov Article Does Not Support Dr. Zizic's Opinions.

Dr. Zizic cites the Argov article in support of his opinion that Baycol can cause persistent or chronic muscle injury. The Argov article is not a study, nor is it a

review of case reports. Rather, the Argov article is a survey of two disorders, one of which Argov labels "cholesterol-lowering agent myopathy." Argov Z. "Drug-induced myopathies," *Current Opinion in Neurology*. 2000;13:541-45 (Ex. J) at 541. In that survey, Argov states, "Withdrawal of the drug usually leads to full recovery. However, I have seen several patients in whom recovery was very slow and incomplete, and who continued to complain of muscle aches long after the drug was stopped." *Id.* at 541-42. The Argov article provides no support or documentation of its claims.

Dr. Zizic's citation to this portion of the Argov article, ostensibly first-hand case reports though without any documentation or additional information, suffers from the same infirmities as his citation to the Walravens letter and the Ucar article. First, to the extent the Argov claims are even case reports (without any information supporting the claims), case reports are inherently unreliable data upon which to draw medical opinions. Second, the Argov article does not identify the "cholesterol-lowering agent" prescribed to those patients Argov saw who purportedly suffered from persistent muscle injury after cessation of use. Accordingly, the Argov article does not provide sound scientific support for Dr. Zizic's opinion that Baycol can cause persistent or chronic muscle injury.

* * *

In sum, Dr. Zizic is unable to cite any research that actually supports his opinion that Baycol can cause persistent or chronic muscle injury, or that such muscle injury can persist or become chronic in the absence of elevated CK levels. Dr. Zizic's opinions are not founded on scientific knowledge or research, but instead rest on unproven extrapolations from unrelated studies that, to the degree they indicate anything,

conclude that patients recover from drug-induced myopathy shortly after use of the drugs stops. The extrapolation in which Dr. Zizic indulges is not scientific knowledge but conjecture that should be excluded as speculation. *See Glastetter* v. *Novartis Pharm. Corp.*, 252 F.3d 986, 989-900 (8th Cir. 2001) (excluding expert opinion inappropriately extrapolated from case studies, medical texts, and other sources, where such studies did not explicitly state that such a causal relationship existed); *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000)) ("Expert testimony that is speculative is not competent proof and contributes 'nothing to a legally sufficient evidentiary basis'").

## II. DR. ZIZIC'S OPINIONS ABOUT THE COMPARATIVE SAFETY OF BAYCOL ARE NOT SUPPORTED BY RELIABLE SCIENTIFIC DATA.

Dr. Zizic intends to testify that cerivastatin, as a matter of comparison, "caused myopathies and rhabdomyolysis in a higher number of patients than any other statin." Zizic Rep. (Ex. A) ¶ 74. In addition to a purportedly higher incidence of adverse events, Dr. Zizic contends that cerivastatin was the statin "most toxic to muscles both in monotherapy and in combination therapy." *Id.* ¶ 12; *see also id.* ¶ 67. Dr. Zizic claims AER data support his opinions. *See* Zizic Dep. (Ex. B) at 144:5-22 (stating reliance on studies reporting AER results); 152:11-15 (admitting that opinions and conclusions regarding rhabdomyolysis are based entirely on adverse event reports); *id.* at 363:23-364:11 (stating that opinions regarding the risk/benefit of cerivastatin are premised primarily on adverse event reports); Zizic Rep. (Ex. A) ¶¶ 17; 46; 63-67 (citing adverse event report data).

As explained in further depth in defendants' AER Motion, extending AER data to make judgments regarding toxicity, relative toxicity, and incidence of toxicity is not a generally accepted technique or practice. The FDA has concluded that AERs "may not be used to calculate instances or estimates of drug risk" or to compare drugs.[3] This is because AERs are uncertified reports of events that do not necessarily relate to the use of any particular drug. *Id.* Indeed, Dr. Zizic acknowledges as much. Zizic Dep. (Ex. B) at 262:16-24, 263:2-7. But Dr. Zizic disregards the FDA's caution and concludes that AERs are legitimate data from which to draw drug safety comparisons. *See id.* at 159:4-10 (stating that one can "absolutely" use AER data for comparative purposes); *id.* at 285:12-286:8 (stating that under certain circumstances AER data may be used for comparison); *id.* at 287:2-5, 287:7-8, 287:11-16 (AERs may be used for comparisons); *id.* at 288:21-289:6 (same). Dr. Zizic's opinion is contrary to the accepted and appropriate limits to the use of AER data. His opinions should therefore be excluded pursuant to Rule 702 and *Daubert*.

---

[3] Annual Adverse Drug Experience Report: 1996, Surveillance and Data Processing Branch, Division of Pharmacovigilance and Epidemiology, Office of Epidemiology and Biostatistics, Center for Drug Evaluation and Research, Food and Drug Administration (Oct. 30, 1997) ("1997 FDA Report") (Ex. K) at 1; FDA Office of Postmarketing Drug Risk Assessment, "Adverse Event Reporting System (AERS): Brief Description with Caveats of System" (Oct. 18, 1999) (Ex. L) at 2. Courts have lined up behind the FDA's assessment. *E.g.*, *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1165 (S.D. Fla. 1996), *aff'd* 158 F.3d 588 (11th Cir. 1998) ("The FDA has confirmed that the [AER] information cannot be used to estimate the incidents of adverse drug reactions, or for comparisons of drug safety"), *cited in* Defendants' AER Motion, Part III (collecting authorities); *see also Leathers*, 2006 WL 708571, at *7 ("As an initial matter, adverse incident reports generally do not, standing alone, render an expert's opinion reliable under *Daubert*.")

## III. DR. ZIZIC IS UNQUALIFIED TO OPINE ON THE PHARMACOKINETIC PROPERTIES OF BAYCOL.

Dr. Zizic intends to testify on the pharmacokinetic properties of Baycol, but he is unqualified to do so. Dr. Zizic's opinion that cerivastatin was the "most toxic" of all statins rests on the summary contention "that cerivastatin has a greater propensity to damage muscles because of the following features: high oral bioavailability, high lipophilicity, high potency, decreased hepatic metabolism and increased systemic bioavailability, steep dose response curve and an extremely narrow therapeutic window." Zizic Rep. (Ex. A) ¶ 34; *see also id.* ¶¶ 22, 23, 27-31 (opining on the pharmacokinetic properties of statins and cerivastatin).

Dr. Zizic is a rheumatologist. *Id.* ¶¶ 1-3; Zizic Dep. (Ex. B) at 13:16-14:3. His practice includes the diagnosis and treatment of diseases affecting bones, joints, muscle and connective tissue. Zizic Dep. (Ex. B) at 37:17-18; 37:21-22; 38:1-39:8. Although rheumatology has no defined division of subspecialties, Dr. Zizic has developed a specialized interest in osteonecrosis and osteoporosis, and the causation of those conditions by steroids. Zizic Rep. (Ex. A) ¶¶ 4-5; Zizic Dep. (Ex. B) at 14:16-15:6.[4] Dr. Zizic is not a toxicologist or a pharmacologist. Zizic Dep. (Ex. B) at 179:2-180:7. He admits to never having conducted any research or any lectures on the pharmacology or toxicology of statins. *Id.* Nor is Dr. Zizic an epidemiologist. Zizic Dep. (Ex. B) at 137:3-5.

---

4 Notably, Dr. Zizic admits that some rheumatologists *do* have specialized expertise in muscle disease. Zizic Dep. (Ex. B) at 235:12-236:3 (stating that one of the sources upon which he relies, Dr. Robert Wortmann, "is a renowned rheumatologist that specializes in muscle disease"). Dr. Zizic, however, is not one of them.

Additionally, Dr. Zizic has had little practical experience with statin-induced myopathy. Though he concedes the condition is nothing new, Dr. Zizic has only treated "a few" patients who experienced statin-induced myopathy in the last ten years. Zizic Dep. (Ex. B) at 51:22-52:10; 54:2-4; 54:6. That is the limit of Dr. Zizic's knowledge and expertise regarding statin-induced myopathy. He has not conducted any independent study of statins, let alone cerivastatin, nor has he published or lectured on the subject of statin-induced myopathy. *Id.* at 15:7-23; 143:11-22; 230:9-12. He has never prescribed cerivastatin, nor has he ever encountered in practice a myopathy induced by Baycol. *Id.* at 67:5-12.

Rule 702 requires that an expert be qualified by "knowledge, skill, experience, training, or education" to express an opinion on a particular issue. The proffered expert must have specific expertise in the particular issue to which he will testify. This is particularly true in the field of medicine. Courts have recognized that "given the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. Such a rule would ignore the modern realities of medical specialization." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996) (applying *Daubert*). This Court has also recognized the importance of specialization to expert testimony on medical causation. *See, e.g., Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1127-29 (D. Minn. 2005) (refusing to permit a toxicologist to opine on the etiology of basal cell carcinoma, noting that an expert in one subject may not be qualified to testify beyond that expertise). Permitting Dr. Zizic, a

rheumatologist, to opine on the pharmacokinetics of cerivastatin would deny the import of specialization in medicine. By his own admission, the topics about which Dr. Zizic intends to opine are not within his expertise, and his testimony should be excluded pursuant to Rule 702 and *Daubert*.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court exclude the above-referenced testimony of Dr. Zizic, pursuant to *Daubert* and Rule 702.

Dated: April 17, 2006

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
James R.M. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, N.W. Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*