# EXHIBIT 4

201.119 In vitro diagnostic products.
201.120 Prescription chemicals and other prescription components.
201.122 Drugs for processing, repacking, or manufacturing.
201.125 Drugs for use in teaching, law enforcement, research, and analysis.
201.127 Drugs; expiration of exemptions.
201.128 Meaning of "intended uses".
201.129 Drugs; exemption for radioactive drugs for research use.

Subpart E—Other Exemptions

201.150 Drugs; processing, labeling, or repacking.
201.161 Carbon dioxide and certain other gases.

Subpart F—Labeling Claims for Drugs in Drug Efficacy Study

201.200 Disclosure of drug efficacy study evaluations in labeling and advertising.

Subpart G—Specific Labeling Requirements for Specific Drug Products

201.300 Notice to manufacturers, packers, and distributors of glandular preparations.
201.301 Notice to manufacturers, packers, and distributors of estrogenic hormone preparations.
201.302 Notice to manufacturers, packers, and distributors of drugs for internal use which contain mineral oil.
201.303 Labeling of drug preparations containing significant proportions of wintergreen oil.
201.304 Tannic acid and barium enema preparations.
201.305 Isoproterenol inhalation preparations (pressurized aerosols, nebulizers, powders) for human use; warnings.
201.306 Potassium salt preparations intended for oral ingestion by man.
201.307 Sodium phosphates; package size limitation, warnings, and directions for over-the-counter sale.
201.308 Ipecac syrup; warnings and directions for use for over-the-counter sale.
201.309 Acetophenetidin (phenacetin)-containing preparations; necessary warning statement.
201.310 Phenindione; labeling of drug preparations intended for use by man.
201.311 [Reserved]
201.312 Magnesium sulfate heptahydrate; label declaration on drug products.
201.313 Estradiol labeling.
201.314 Labeling of drug preparations containing salicylates.
201.315 Over-the-counter drugs for minor sore throats; suggested warning.
201.316 Drugs with thyroid hormone activity for human use; required warning.
201.317 Digitalis and related cardiotonic drugs for human use in oral dosage forms; required warning.
201.319 Water-soluble gums, hydrophilic gums, and hydrophilic mucilloids (including, but not limited to agar, alginic acid, calcium polycarbophil, carboxymethylcellulose sodium, carrageenan, chondrus, glucomannan ((B-1,4 linked) polymannose acetate), guar gum, karaya gum, kelp, methylcellulose, plantago seed (psyllium), polycarbophil tragacanth, and xanthan gum) as active ingredients; required warnings and directions.
201.320 Warning statements for drug products containing or manufactured with chlorofluorocarbons or other ozone-depleting substances.
201.322 Over-the-counter drug products containing internal analgesic/antipyretic active ingredients; required alcohol warning.
201.323 Aluminum in large and small volume parenterals used in total parenteral nutrition.

APPENDIX A TO PART 201—EXAMPLES OF GRAPHIC ENHANCEMENTS USED BY FDA

AUTHORITY: 21 U.S.C. 321, 331, 351, 352, 353, 355, 358, 360, 360b, 360gg–360ss, 371, 374, 379e; 42 U.S.C. 216, 241, 262, 264.

SOURCE: 40 FR 13998, Mar. 27, 1975, unless otherwise noted.

EDITORIAL NOTE: Nomenclature changes to part 201 appear at 69 FR 13717, Mar. 24, 2004.

## Subpart A—General Labeling Provisions

### § 201.1 Drugs; name and place of business of manufacturer, packer, or distributor.

(a) A drug or drug product (as defined in § 320.1 of this chapter) in finished package form is misbranded under section 502 (a) and (b)(1) of the act if its label does not bear conspicuously the name and place of business of the manufacturer, packer, or distributor. This paragraph does not apply to any drug or drug product dispensed in accordance with section 503(b)(1) of the act.

(b) As used in this section, and for purposes of section 502 (a) and (b)(1) of the act, the manufacturer of a drug product is the person who performs all of the following operations that are required to produce the product: (1) Mixing, (2) granulating, (3) milling, (4) molding, (5) lyophilizing, (6) tableting,

Case 0:01-md-01431-MJD Document 4122-3 Filed 04/17/2006 Page 3 of 10



(7) encapsulating, (8) coating, (9) sterilizing, and (10) filling sterile, aerosol, or gaseous drugs into dispensing containers.

(c) If no person performs all of the applicable operations listed in paragraph (b) of this section, no person may be represented as manufacturer except as follows:

(1) If the person performs more than one half of the applicable operations listed in paragraph (b) of this section and acknowledges the contribution of other persons who have performed the remaining applicable operations by stating on the product label that "Certain manufacturing operations have been performed by other firms."; or

(2) If the person performs at least one applicable operation listed in paragraph (b) of this section and identifies by appropriate designation all other persons who have performed the remaining applicable operations, e.g., "Made by (Person A), Filled by (Person B), Sterilized by (Person C)"; or

(3) If the person performs at least one applicable operation listed in paragraph (b) of this section and the person is listed along with all other persons who have performed the remaining applicable operations as "joint manufacturers." A list of joint manufacturers shall be qualified by the phrase "Jointly Manufactured By __________," and the names of all of the manufacturers shall be printed together in the same type size and style; or

(4) If the person performs all applicable operations listed in paragraph (b) of this section except for those operations listed in paragraph (d) of this section. For purposes of this paragraph, person, when it identifies a corporation, includes a parent, subsidiary, or affiliate company where the related companies are under common ownership and control.

(d) The Food and Drug Administration finds that it is the common practice in the drug industry to contract out the performance of certain manufacturing operations listed in paragraph (b) of this section. These operations include: (1) Soft-gelatin encapsulating, (2) aerosol filling, (3) sterilizing by irradiation, (4) lyophilizing, and (5) ethylene oxide sterilization.

(e) A person performs an operation listed in paragraph (b) of this section only if the operation is performed, including the performance of the appropriate in-process quality control operations, except laboratory testing of samples taken during processing, as follows:

(1) By individuals, a majority of whom are employees of the person and, throughout the performance of the operation, are subject to the person's direction and control;

(2) On premises that are continuously owned or leased by the person and subject to the person's direction and control; and

(3) On equipment that is continuously owned or leased by the person. As used in this paragraph, person, when it identifies a corporation, includes a parent, subsidiary, or affiliate company where the related companies are under common ownership and control.

(f) The name of the person represented as manufacturer under paragraph (b) or (c) of this section must be the same as either (1) the name of the establishment (as defined in § 207.3(b) of this chapter) under which that person is registered at the time the labeled product is produced or (2) the registered establishment name of a parent, subsidiary, or affiliate company where the related companies are under common ownership and control. In addition, the name shall meet the requirements of paragraph (g) of this section.

(g) The requirement for declaration of the name of the manufacturer, packer, or distributor shall be deemed to be satisfied, in the case of a corporate person, only by the actual corporate name, except that the corporate name may be the name of a parent, subsidiary, or affiliate company where the related companies are under common ownership and control. The corporate name may be preceded or followed by the name of the particular division of the corporation. "Company," "Incorporated," etc., may be abbreviated or omitted and "The" may be omitted. In the case of an individual, partnership or association, the name under which the business is conducted shall be used

(h)(1) Except as provided in this section, no person other than the manufacturer, packer, or distributor may be identified on the label of a drug or drug product.

(2) The appearance on a drug product label of a person's name without qualification is a representation that the named person is the sole manufacturer of the product. That representation is false and misleading, and the drug product is misbranded under section 502(a) of the act, if the person is not the manufacturer of the product in accordance with this section.

(3) If the names of two or more persons appear on the label of a drug or drug product, the label may identify which of the persons is to be contacted for further information about the product.

(4) If a trademark appears on the drug or drug product label or appears as a mark directly on the drug product (e.g., tablet or capsule), the label may identify the holder or licensee of the trademark. The label may also state whether the person identified holds the trademark or is licensee of the trademark.

(5) If the distributor is named on the label, the name shall be qualified by one of the following phrases: "Manufactured for __________", "Distributed by __________", "Manufactured by __________ for __________", "Manufactured for __________ by __________", "Distributor: __________", "Marketed by __________". The qualifying phrases may be abbreviated.

(6) If the packer is identified on the label, the name shall be qualified by the phrase "Packed by __________" or "Packaged by __________". The qualifying phrases may be abbreviated.

(i) The statement of the place of business shall include the street address, city, State, and ZIP Code. For a foreign manufacturer, the statement of the place of business shall include the street address, city, country, and any applicable mailing code. The street address may be omitted if it is shown in a current city directory or telephone directory. The requirement for inclusion of the ZIP Code shall apply to consumer commodity labels developed or revised after July 1, 1969. In the case of nonconsumer packages, the ZIP Code shall appear either on the label or the labeling (including the invoice).

(j) If a person manufactures, packs, or distributes a drug or drug product at a place other than the person's principal place of business, the label may state the principal place of business in lieu of the actual place where such drug or drug product was manufactured or packed or is to be distributed, unless such statement would be misleading.

(k) Paragraphs (b), (c), (d), (e), and (f) of this section, do not apply to the labeling of drug components.

(l) A drug product is misbranded under section 502(a) of the act if its labeling identifies a person as manufacturer, packer, or distributor, and that identification does not meet the requirements of this section.

(m) This section does not apply to biological drug products that are subject to the requirements of section 351 of the Public Health Service Act, 42 U.S.C. 262.

[45 FR 25775, Apr. 15, 1980; 45 FR 72118, Oct. 31, 1980, as amended at 48 FR 37620, Aug. 19, 1983]

## § 201.2 Drugs and devices; National Drug Code numbers.

The National Drug Code (NDC) number is requested but not required to appear on all drug labels and in all drug labeling, including the label of any prescription drug container furnished to a consumer. If the NDC number is shown on a drug label, it shall be displayed as required in §207.35(b)(3) of this chapter.

[40 FR 52002, Nov. 7, 1975]

## § 201.5 Drugs; adequate directions for use.

*Adequate directions for use* means directions under which the layman can use a drug safely and for the purposes for which it is intended. (Section 201.128 defines "intended use.") Directions for use may be inadequate because, among other reasons, of omission, in whole or in part, or incorrect specification of:

(a) Statements of all conditions, purposes, or uses for which such drug is intended, including conditions, purposes, or uses for which it is prescribed, recommended, or suggested in its oral, written, printed, or graphic advertising, and conditions, purposes, or

B. SECTION 201.66 MODIFIED LABELING FORMAT




## PART 202—PRESCRIPTION DRUG ADVERTISING

AUTHORITY: 21 U.S.C. 321, 331, 352, 355, 360b, 371.

### § 202.1 Prescription-drug advertisements.

(a)(1) The ingredient information required by section 502(n) of the Federal Food, Drug, and Cosmetic Act shall appear together, without any intervening written, printed, or graphic matter, except the proprietary names of ingredients, which may be included with the listing of established names.

(2) The order of listing of ingredients in the advertisement shall be the same as the order of listing of ingredients on the label of the product, and the information presented in the advertisement concerning the quantity of each such ingredient shall be the same as the corresponding information on the label of the product.

(3) The advertisement shall not employ a fanciful proprietary name for the drug or any ingredient in such a manner as to imply that the drug or ingredient has some unique effectiveness or composition, when, in fact, the drug or ingredient is a common substance, the limitations of which are readily recognized when the drug or ingredient is listed by its established name.

(4) The advertisement shall not feature inert or inactive ingredients in a manner that creates an impression of value greater than their true functional role in the formulation.

(5) The advertisement shall not designate a drug or ingredient by a proprietary name that, because of similarity in spelling or pronunciation, may be confused with the proprietary name or the established name of a different drug or ingredient.

(b)(1) If an advertisement for a prescription drug bears a proprietary name or designation for the drug or any ingredient thereof, the established name, if such there be, corresponding to such proprietary name or designation shall accompany such proprietary name or designation each time it is featured in the advertisement for the drug; but, except as provided below in this subparagraph, the established name need not be used with the proprietary name or designation in the running text of the advertisement. On any page of an advertisement in which the proprietary name or designation is not featured but is used in the running text, the established name shall be used at least once in the running text in association with such proprietary name or designation and in the same type size used in the running text: *Provided, however,* That if the proprietary

name or designation is used in the running text in larger size type, the established name shall be used at least once in association with, and in type at least half as large as the type used for, the most prominent presentation of the proprietary name or designation in such running text. If any advertisement includes a column with running text containing detailed information as to composition, prescribing, side effects, or contraindications and the proprietary name or designation is used in such column but is not featured above or below the column, the established name shall be used at least once in such column of running text in association with such proprietary name or designation and in the same type size used in such column of running text: *Provided, however*, That if the proprietary name or designation is used in such column of running text in larger size type, the established name shall be used at least once in association with, and in type at least half as large as the type used for, the most prominent presentation of the proprietary name or designation in such column of running text. Where the established name is required to accompany or to be used in association with the proprietary name or designation, the established name shall be placed in direct conjunction with the proprietary name or designation, and the relationship between the proprietary name or designation and the established name shall be made clear by use of a phrase such as "brand of" preceding the established name, by brackets surrounding the established name, or by other suitable means.

(2) The established name shall be printed in letters that are at least half as large as the letters comprising the proprietary name or designation with which it is joined, and the established name shall have a prominence commensurate with the prominence with which such proprietary name or designation appears, taking into account all pertinent factors, including typography, layout, contrast, and other printing features.

(c) In the case of a prescription drug containing two or more active ingredients, if the advertisement bears a proprietary name or designation for such mixture and there is no established name corresponding to such proprietary name or designation, the quantitative ingredient information required in the advertisement by section 502(n) of the act shall be placed in direct conjunction with the most prominent display of the proprietary name or designation. The prominence of the quantitative ingredient information shall bear a reasonable relationship to the prominence of the proprietary name.

(d)(1) If the advertisement employs one proprietary name or designation to refer to a combination of active ingredients present in more than one preparation (the individual preparations differing from each other as to quantities of active ingredients and/or the form of the finished preparation) and there is no established name corresponding to such proprietary name or designation, a listing showing the established names of the active ingredients shall be placed in direct conjunction with the most prominent display of such proprietary name or designation. The prominence of this listing of active ingredients shall bear a reasonable relationship to the prominence of the proprietary name and the relationship between such proprietary name or designation, and the listing of active ingredients shall be made clear by use of such phrase as "brand of", preceding the listing of active ingredients.

(2) The advertisement shall prominently display the name of at least one specific dosage form and shall have the quantitative ingredient information required by section 502(n) of the act in direct conjunction with such display. If other dosage forms are listed in the advertisement, the quantitative ingredient information for such dosage forms shall appear in direct conjunction and in equal prominence with the most prominent listing of the names of such dosage forms.

(e) True statement of information in brief summary relating to side effects, contraindications, and effectiveness:

(1) *When required.* All advertisements for any prescription drug ("prescription drug" as used in this section means drugs defined in section 503(b)(1) of the act and §201.105, applicable to drugs for use by man and veterinary

drugs, respectively), except advertisements described in paragraph (e)(2) of this section, shall present a true statement of information in brief summary relating to side effects, contraindications (when used in this section "side effects, contraindications" include side effects, warnings, precautions, and contraindications and include any such information under such headings as cautions, special considerations, important notes, etc.) and effectiveness. Advertisements broadcast through media such as radio, television, or telephone communications systems shall include information relating to the major side effects and contraindications of the advertised drugs in the audio or audio and visual parts of the presentation and unless adequate provision is made for dissemination of the approved or permitted package labeling in connection with the broadcast presentation shall contain a brief summary of all necessary information related to side effects and contraindications.

(2) *Exempt advertisements*. The following advertisements are exempt from the requirements of paragraph (e)(1) of this section under the conditions specified:

(i) *Reminder advertisements*. Reminder advertisements are those which call attention to the name of the drug product but do not include indications or dosage recommendations for use of the drug product. These reminder advertisements shall contain only the proprietary name of the drug product, if any; the established name of the drug product, if any; the established name of each active ingredient in the drug product; and, optionally, information relating to quantitative ingredient statements, dosage form, quantity of package contents, price, the name and address of the manufacturer, packer, or distributor or other written, printed, or graphic matter containing no representation or suggestion relating to the advertised drug product. If the Commissioner finds that there is evidence of significant incidence of fatalities or serious injury associated with the use of a particular prescription drug, he may withdraw this exemption by so notifying the manufacturer, packer, or distributor of the drug by letter. Reminder advertisements, other than those solely intended to convey price information including, but not limited to, those subject to the requirements of § 200.200 of this chapter, are not permitted for a prescription drug product whose labeling contains a boxed warning relating to a serious hazard associated with the use of the drug product. Reminder advertisements which are intended to provide consumers with information concerning the price charged for a prescription for a drug product are exempt from the requirements of this section if they meet all of the conditions contained in § 200.200 of this chapter. Reminder advertisements, other than those subject to the requirements of § 200.200 of this chapter, are not permitted for a drug for which an announcement has been published pursuant to a review on the labeling claims for the drug by the National Academy of Sciences/National Research Council (NAS/NRC), Drug Efficacy Study Group, and for which no claim has been evaluated as higher than "possibly effective." If the Commissioner finds the circumstances are such that a reminder advertisement may be misleading to prescribers of drugs subject to NAS/NRC evaluation, such advertisements will not be allowed and the manufacturer, packer, or distributor will be notified either in the publication of the conclusions on the effectiveness of the drug or by letter.

(ii) *Advertisements of bulk-sale drugs*. Advertisements of bulk-sale drugs that promote sale of the drug in bulk packages in accordance with the practice of the trade solely to be processed, manufactured, labeled, or repackaged in substantial quantities and that contain no claims for the therapeutic safety or effectiveness of the drug.

(iii) *Advertisements of prescription-compounding drugs*. Advertisements of prescription-compounding drugs that promote sale of a drug for use as a prescription chemical or other compound for use by registered pharmacists in compounding prescriptions if the drug otherwise complies with the conditions for the labeling exemption contained in § 201.120 and the advertisement contains no claims for the therapeutic safety or effectiveness of the drug.

(3) *Scope of information to be included; applicability to the entire advertisement.* (i) The requirement of a true statement of information relating to side effects, contraindications, and effectiveness applies to the entire advertisement. Untrue or misleading information in any part of the advertisement will not be corrected by the inclusion in another distinct part of the advertisement of a brief statement containing true information relating to side effects, contraindications, and effectiveness of the drug. If any part or theme of the advertisement would make the advertisement false or misleading by reason of the omission of appropriate qualification or pertinent information, that part or theme shall include the appropriate qualification or pertinent information, which may be concise if it is supplemented by a prominent reference on each page to the presence and location elsewhere in the advertisement of a more complete discussion of such qualification or information.

(ii) The information relating to effectiveness is not required to include information relating to all purposes for which the drug is intended but may optionally be limited to a true statement of the effectiveness of the drug for the selected purpose(s) for which the drug is recommended or suggested in the advertisement. The information relating to effectiveness shall include specific indications for use of the drug for purposes claimed in the advertisement; for example, when an advertisement contains a broad claim that a drug is an antibacterial agent, the advertisement shall name a type or types of infections and microorganisms for which the drug is effective clinically as specifically as required, approved, or permitted in the drug package labeling.

(iii) The information relating to side effects and contraindications shall disclose each specific side effect and contraindication (which include side effects, warnings, precautions, and contraindications and include any such information under such headings as cautions, special considerations, important notes, etc.; see paragraph (e)(1) of this section) contained in required, approved, or permitted labeling for the advertised drug dosage form(s): *Provided, however,*

(*a*) The side effects and contraindications disclosed may be limited to those pertinent to the indications for which the drug is recommended or suggested in the advertisement to the extent that such limited disclosure has previously been approved or permitted in drug labeling conforming to the provisions of §§ 201.100 or 201.105; and

(*b*) The use of a single term for a group of side effects and contraindications (for example, "blood dyscrasias" for disclosure of "leukopenia," "agranulocytosis," and "neutropenia") is permitted only to the extent that the use of such a single term in place of disclosure of each specific side effect and contraindication has been previously approved or permitted in drug labeling conforming to the provisions of §§ 201.100 or 201.105.

(4) *Substance of information to be included in brief summary.* (i)(*a*) An advertisement for a prescription drug covered by a new-drug application approved pursuant to section 505 of the act after October 10, 1962 or section 512 of the act after August 1, 1969, or any approved supplement thereto, shall not recommend or suggest any use that is not in the labeling accepted in such approved new-drug application or supplement. The advertisement shall present information from labeling required, approved, or permitted in a new-drug application relating to each specific side effect and contraindication in such labeling that relates to the uses of the advertised drug dosage form(s) or shall otherwise conform to the provisions of paragraph (e)(3)(iii) of this section.

(*b*) If a prescription drug was covered by a new-drug application or a supplement thereto that became effective prior to October 10, 1962, an advertisement may recommend or suggest:

(*1*) Uses contained in the labeling accepted in such new-drug application and any effective, approved, or permitted supplement thereto.

(*2*) Additional uses contained in labeling in commercial use on October 9, 1962, to the extent that such uses did not cause the drug to be an unapproved "new drug" as "new drug" was defined in section 201(p) of the act as then in force, and to the extent that such uses

would be permitted were the drug subject to paragraph (e)(4)(iii) of this section.

(*3*) Additional uses contained in labeling in current commercial use to the extent that such uses do not cause the drug to be an unapproved "new drug" as defined in section 201(p) of the act as amended or a "new animal drug" as defined in section 201(v) of the act as amended.

The advertisement shall present information from labeling required, approved, or permitted in a new-drug application relating to each specific side effect and contraindication in such labeling that relates to the uses of the advertised drug dosage form(s) or shall otherwise conform to the provisions of paragraph (e)(3)(iii) of this section.

(ii) In the case of an advertisement for a prescription drug other than a drug the labeling of which causes it to be an unapproved "new drug" and other than drugs covered by paragraph (e)(4)(i) of this section, an advertisement may recommend and suggest the drug only for those uses contained in the labeling thereof:

(*a*) For which the drug is generally recognized as safe and effective among experts qualified by scientific training and experience to evaluate the safety and effectiveness of such drugs; or

(*b*) For which there exists substantial evidence of safety and effectiveness, consisting of adequate and well-controlled investigations, including clinical investigations (as used in this section "clinical investigations," "clinical experience," and "clinical significance" mean in the case of drugs intended for administration to man, investigations, experience, or significance in humans, and in the case of drugs intended for administration to other animals, investigations, experience, or significance in the specie or species for which the drug is advertised), by experts qualified by scientific training and experience to evaluate the safety and effectiveness of the drug involved, on the basis of which it can fairly and responsibly be concluded by such experts that the drug is safe and effective for such uses; or

(*c*) For which there exists substantial clinical experience (as used in this section this means substantial clinical experience adequately documented in medical literature or by other data (to be supplied to the Food and Drug Administration, if requested)), on the basis of which it can fairly and responsibly be concluded by qualified experts that the drug is safe and effective for such uses; or

(*d*) For which safety is supported under any of the preceding clauses in paragraphs (e)(4)(iii) (*a*), (*b*), and (*c*) of this section and effectiveness is supported under any other of such clauses.

The advertisement shall present information relating to each specific side effect and contraindication that is required, approved, or permitted in the package labeling by §§ 201.100 or 201.105 of this chapter of the drug dosage form(s) or shall otherwise conform to the provisions of paragraph (e)(3)(iii) of this section.

(5) *"True statement" of information.* An advertisement does not satisfy the requirement that it present a "true statement" of information in brief summary relating to side effects, contraindications, and effectiveness if:

(i) It is false or misleading with respect to side effects, contraindications, or effectiveness; or

(ii) It fails to present a fair balance between information relating to side effects and contraindications and information relating to effectiveness of the drug in that the information relating to effectiveness is presented in greater scope, depth, or detail than is required by section 502(n) of the act and this information is not fairly balanced by a presentation of a summary of true information relating to side effects and contraindications of the drug; *Provided, however,* That no advertisement shall be considered to be in violation of this section if the presentation of true information relating to side effects and contraindications is comparable in depth and detail with the claims for effectiveness or safety.

(iii) It fails to reveal facts material in the light of its representations or material with respect to consequences that may result from the use of the drug as recommended or suggested in the advertisement.

(6) *Advertisements that are false, lacking in fair balance, or otherwise misleading.* An advertisement for a prescription drug is false, lacking in fair balance, or otherwise misleading, or otherwise violative of section 502(n) of the act, among other reasons, if it:

(i) Contains a representation or suggestion, not approved or permitted for use in the labeling, that a drug is better, more effective, useful in a broader range of conditions or patients (as used in this section *patients* means humans and in the case of veterinary drugs, other animals), safer, has fewer, or less incidence of, or less serious side effects or contraindications than has been demonstrated by substantial evidence or substantial clinical experience (as described in paragraphs (e)(4)(ii) (*b*) and (*c*) of this section) whether or not such representations are made by comparison with other drugs or treatments, and whether or not such a representation or suggestion is made directly or through use of published or unpublished literature, quotations, or other references.

(ii) Contains a drug comparison that represents or suggests that a drug is safer or more effective than another drug in some particular when it has not been demonstrated to be safer or more effective in such particular by substantial evidence or substantial clinical experience.

(iii) Contains favorable information or opinions about a drug previously regarded as valid but which have been rendered invalid by contrary and more credible recent information, or contains literature references or quotations that are significantly more favorable to the drug than has been demonstrated by substantial evidence or substantial clinical experience.

(iv) Contains a representation or suggestion that a drug is safer than it has been demonstrated to be by substantial evidence or substantial clinical experience, by selective presentation of information from published articles or other references that report no side effects or minimal side effects with the drug or otherwise selects information from any source in a way that makes a drug appear to be safer than has been demonstrated.

(v) Presents information from a study in a way that implies that the study represents larger or more general experience with the drug than it actually does.

(vi) Contains references to literature or studies that misrepresent the effectiveness of a drug by failure to disclose that claimed results may be due to concomitant therapy, or by failure to disclose the credible information available concerning the extent to which claimed results may be due to placebo effect (information concerning placebo effect is not required unless the advertisement promotes the drug for use by man).

(vii) Contains favorable data or conclusions from nonclinical studies of a drug, such as in laboratory animals or in vitro, in a way that suggests they have clinical significance when in fact no such clinical significance has been demonstrated.

(viii) Uses a statement by a recognized authority that is apparently favorable about a drug but fails to refer to concurrent or more recent unfavorable data or statements from the same authority on the same subject or subjects.

(ix) Uses a quote or paraphrase out of context to convey a false or misleading idea.

(x) Uses literature, quotations, or references that purport to support an advertising claim but in fact do not support the claim or have relevance to the claim.

(xi) Uses literature, quotations, or references for the purpose of recommending or suggesting conditions of drug use that are not approved or permitted in the drug package labeling.

(xii) Offers a combination of drugs for the treatment of patients suffering from a condition amenable to treatment by any of the components rather than limiting the indications for use to patients for whom concomitant therapy as provided by the fixed combination drug is indicated, unless such condition is included in the uses permitted under paragraph (e)(4) of this section.

(xiii) Uses a study on normal individuals without disclosing that the subjects were normal, unless the drug is intended for use on normal individuals.