Case 0:01-md-01431-MJD Document 4122-5 Filed 04/17/2006 Page 1 of 11


(2) *Case report forms.* The application is required to contain copies of individual case report forms for each patient who died during a clinical study or who did not complete the study because of an adverse event, whether believed to be drug related or not, including patients receiving reference drugs or placebo. This requirement may be waived by FDA for specific studies if the case report forms are unnecessary for a proper review of the study.

(3) *Additional data.* The applicant shall submit to FDA additional case report forms and tabulations needed to conduct a proper review of the application, as requested by the director of the FDA division responsible for reviewing the application. The applicant's failure to submit information requested by FDA within 30 days after receipt of the request may result in the agency viewing any eventual submission as a major amendment under § 314.60 and extending the review period as necessary. If desired by the applicant, the FDA division director will verify in writing any request for additional data that was made orally.

(4) Applicants are invited to meet with FDA before submitting an application to discuss the presentation and format of supporting information. If the applicant and FDA agree, the applicant may submit tabulations of patient data and case report forms in a form other than hard copy, for example, on microfiche or computer tapes.

(g) *Other.* The following general requirements apply to the submission of information within the summary under paragraph (c) of this section and within the technical sections under paragraph (d) of this section.

(1) The applicant ordinarily is not required to resubmit information previously submitted, but may incorporate the information by reference. A reference to information submitted previously is required to identify the file by name, reference number, volume, and page number in the agency's records where the information can be found. A reference to information submitted to the agency by a person other than the applicant is required to contain a written statement that authorizes the reference and that is signed by the person who submitted the information.

(2) The applicant shall submit an accurate and complete English translation of each part of the application that is not in English. The applicant shall submit a copy of each original literature publication for which an English translation is submitted.

(3) If an applicant who submits a new drug application under section 505(b) of the act obtains a "right of reference or use," as defined under § 314.3(b), to an investigation described in clause (A) of section 505(b)(1) of the act, the applicant shall include in its application a written statement signed by the owner of the data from each such investigation that the applicant may rely on in support of the approval of its application, and provide FDA access to, the underlying raw data that provide the basis for the report of the investigation submitted in its application.

(h) *Patent information.* The application is required to contain the patent information described under § 314.53.

(i) *Patent certification*—(1) *Contents.* A 505(b)(2) application is required to contain the following:

(i) *Patents claiming drug, drug product, or method of use.* (A) Except as provided in paragraph (i)(2) of this section, a certification with respect to each patent issued by the United States Patent and Trademark Office that, in the opinion of the applicant and to the best of its knowledge, claims a drug (the drug product or drug substance that is a component of the drug product) on which investigations that are relied upon by the applicant for approval of its application were conducted or that claims an approved use for such drug and for which information is required to be filed under section 505(b) and (c) of the act and § 314.53. For each such patent, the applicant shall provide the patent number and certify, in its opinion and to the best of its knowledge, one of the following circumstances:

(*1*) That the patent information has not been submitted to FDA. The applicant shall entitle such a certification "Paragraph I Certification";

(*2*) That the patent has expired. The applicant shall entitle such a certification "Paragraph II Certification";

(*3*) The date on which the patent will expire. The applicant shall entitle such a certification "Paragraph III Certification"; or

(*4*) That the patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the drug product for which the application is submitted. The applicant shall entitle such a certification "Paragraph IV Certification". This certification shall be submitted in the following form:

I, (*name of applicant*), certify that Patent No. ______ (*is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of*) (*name of proposed drug product*) for which this application is submitted.

The certification shall be accompanied by a statement that the applicant will comply with the requirements under §314.52(a) with respect to providing a notice to each owner of the patent or their representatives and to the holder of the approved application for the drug product which is claimed by the patent or a use of which is claimed by the patent and with the requirements under §314.52(c) with respect to the content of the notice.

(B) If the drug on which investigations that are relied upon by the applicant were conducted is itself a licensed generic drug of a patented drug first approved under section 505(b) of the act, the appropriate patent certification under this section with respect to each patent that claims the first-approved patented drug or that claims an approved use for such a drug.

(ii) *No relevant patents*. If, in the opinion of the applicant and to the best of its knowledge, there are no patents described in paragraph (i)(1)(i) of this section, a certification in the following form:

In the opinion and to the best knowledge of (*name of applicant*), there are no patents that claim the drug or drugs on which investigations that are relied upon in this application were conducted or that claim a use of such drug or drugs.

(iii) *Method of use patent*. (A) If information that is submitted under section 505(b) or (c) of the act and §314.53 is for a method of use patent, and the labeling for the drug product for which the applicant is seeking approval does not include any indications that are covered by the use patent, a statement explaining that the method of use patent does not claim any of the proposed indications.

(B) If the labeling of the drug product for which the applicant is seeking approval includes an indication that, according to the patent information submitted under section 505(b) or (c) of the act and §314.53 or in the opinion of the applicant, is claimed by a use patent, the applicant shall submit an applicable certification under paragraph (i)(1)(i) of this section.

(2) *Method of manufacturing patent*. An applicant is not required to make a certification with respect to any patent that claims only a method of manufacturing the drug product for which the applicant is seeking approval.

(3) *Licensing agreements*. If a 505(b)(2) application is for a drug or method of using a drug claimed by a patent and the applicant has a licensing agreement with the patent owner, the applicant shall submit a certification under paragraph (i)(1)(i)(A)(*4*) of this section ("Paragraph IV Certification") as to that patent and a statement that it has been granted a patent license. If the patent owner consents to an immediate effective date upon approval of the 505(b)(2) application, the application shall contain a written statement from the patent owner that it has a licensing agreement with the applicant and that it consents to an immediate effective date.

(4) *Late submission of patent information*. If a patent described in paragraph (i)(1)(i)(A) of this section is issued and the holder of the approved application for the patented drug does not submit the required information on the patent within 30 days of issuance of the patent, an applicant who submitted a 505(b)(2) application that, before the submission of the patent information, contained an appropriate patent certification is not required to submit an amended certification. An applicant whose 505(b)(2) application is filed after a late submission of patent information or whose 505(b)(2) application was previously filed but did not contain an appropriate patent certification at the time of the patent submission shall submit a certification under paragraph (i)(1)(i) or (i)(1)(ii) of this section or a

statement under paragraph (i)(1)(iii) of this section as to that patent.

(5) *Disputed patent information.* If an applicant disputes the accuracy or relevance of patent information submitted to FDA, the applicant may seek a confirmation of the correctness of the patent information in accordance with the procedures under § 314.53(f). Unless the patent information is withdrawn or changed, the applicant must submit an appropriate certification for each relevant patent.

(6) *Amended certifications.* A certification submitted under paragraphs (i)(1)(i) through (i)(1)(iii) of this section may be amended at any time before the effective date of the approval of the application. An applicant shall submit an amended certification as an amendment to a pending application or by letter to an approved application. If an applicant with a pending application voluntarily makes a patent certification for an untimely filed patent, the applicant may withdraw the patent certification for the untimely filed patent. Once an amendment or letter for the change in certification has been submitted, the application will no longer be considered to be one containing the prior certification.

(i) *After finding of infringement.* An applicant who has submitted a certification under paragraph (i)(1)(i)(A)(*4*) of this section and is sued for patent infringement within 45 days of the receipt of notice sent under § 314.52 shall amend the certification if a final judgment in the action is entered finding the patent to be infringed unless the final judgment also finds the patent to be invalid. In the amended certification, the applicant shall certify under paragraph (i)(1)(i)(A)(*3*) of this section that the patent will expire on a specific date.

(ii) *After removal of a patent from the list.* If a patent is removed from the list, any applicant with a pending application (including a tentatively approved application with a delayed effective date) who has made a certification with respect to such patent shall amend its certification. The applicant shall certify under paragraph (i)(1)(ii) of this section that no patents described in paragraph (i)(1)(i) of this section claim the drug or, if other relevant patents claim the drug, shall amend the certification to refer only to those relevant patents. In the amendment, the applicant shall state the reason for the change in certification (that the patent is or has been removed from the list). A patent that is the subject of a lawsuit under § 314.107(c) shall not be removed from the list until FDA determines either that no delay in effective dates of approval is required under that section as a result of the lawsuit, that the patent has expired, or that any such period of delay in effective dates of approval is ended. An applicant shall submit an amended certification as an amendment to a pending application. Once an amendment for the change has been submitted, the application will no longer be considered to be one containing a certification under paragraph (i)(1)(i)(A)(*4*) of this section.

(iii) *Other amendments.* (A) Except as provided in paragraphs (i)(4) and (i)(6)(iii)(B) of this section, an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate.

(B) An applicant is not required to amend a submitted certification when information on an otherwise applicable patent is submitted after the effective date of approval for the 505(b)(2) application.

(j) *Claimed exclusivity.* A new drug product, upon approval, may be entitled to a period of marketing exclusivity under the provisions of § 314.108. If an applicant believes its drug product is entitled to a period of exclusivity, it shall submit with the new drug application prior to approval the following information:

(1) A statement that the applicant is claiming exclusivity.

(2) A reference to the appropriate paragraph under § 314.108 that supports its claim.

(3) If the applicant claims exclusivity under § 314.108(b)(2), information to show that, to the best of its knowledge or belief, a drug has not previously been approved under section 505(b) of the act containing any active moiety

in the drug for which the applicant is seeking approval.

(4) If the applicant claims exclusivity under § 314.108(b)(4) or (b)(5), the following information to show that the application contains "new clinical investigations" that are "essential to approval of the application or supplement" and were "conducted or sponsored by the applicant:"

(i) *"New clinical investigations."* A certification that to the best of the applicant's knowledge each of the clinical investigations included in the application meets the definition of "new clinical investigation" set forth in § 314.108(a).

(ii) *"Essential to approval."* A list of all published studies or publicly available reports of clinical investigations known to the applicant through a literature search that are relevant to the conditions for which the applicant is seeking approval, a certification that the applicant has thoroughly searched the scientific literature and, to the best of the applicant's knowledge, the list is complete and accurate and, in the applicant's opinion, such published studies or publicly available reports do not provide a sufficient basis for the approval of the conditions for which the applicant is seeking approval without reference to the new clinical investigation(s) in the application, and an explanation as to why the studies or reports are insufficient.

(iii) *"Conducted or sponsored by."* If the applicant was the sponsor named in the Form FDA–1571 for an investigational new drug application (IND) under which the new clinical investigation(s) that is essential to the approval of its application was conducted, identification of the IND by number. If the applicant was not the sponsor of the IND under which the clinical investigation(s) was conducted, a certification that the applicant or its predecessor in interest provided substantial support for the clinical investigation(s) that is essential to the approval of its application, and information supporting the certification. To demonstrate "substantial support," an applicant must either provide a certified statement from a certified public accountant that the applicant provided 50 percent or more of the cost of conducting the study or provide an explanation of why FDA should consider the applicant to have conducted or sponsored the study if the applicant's financial contribution to the study is less than 50 percent or the applicant did not sponsor the investigational new drug. A predecessor in interest is an entity, e.g., a corporation, that the applicant has taken over, merged with, or purchased, or from which the applicant has purchased all rights to the drug. Purchase of nonexclusive rights to a clinical investigation after it is completed is not sufficient to satisfy this definition.

(k) *Financial certification or disclosure statement.* The application shall contain a financial certification or disclosure statement or both as required by part 54 of this chapter.

(l) *Format of an original application.* (1) *Archival copy.* The applicant must submit a complete archival copy of the application that contains the information required under paragraphs (a) through (f) of this section. FDA will maintain the archival copy during the review of the application to permit individual reviewers to refer to information that is not contained in their particular technical sections of the application, to give other agency personnel access to the application for official business, and to maintain in one place a complete copy of the application. Except as required by paragraph (l)(1)(i) of this section, applicants may submit the archival copy on paper or in electronic format provided that electronic submissions are made in accordance with part 11 of this chapter.

(i) *Labeling.* The content of labeling required under § 201.100(d)(3) of this chapter (commonly referred to as the package insert or professional labeling), including all text, tables, and figures, must be submitted to the agency in electronic format as described in paragraph (l)(5) of this section. This requirement is in addition to the requirements of paragraph (e)(2)(ii) of this section that copies of the formatted label and all labeling be submitted. Submissions under this paragraph must be made in accordance with part 11 of this chapter, except for the requirements of § 11.10(a), (c) through (h), and (k), and the corresponding requirements of § 11.30.

**§ 314.65 Withdrawal by the applicant of an unapproved application.**

An applicant may at any time withdraw an application that is not yet approved by notifying the Food and Drug Administration in writing. The agency will consider an applicant's failure to respond within 10 days to an approvable letter under § 314.110 or a not approvable letter under § 314.120 to be a request by the applicant to withdraw the application. A decision to withdraw the application is without prejudice to refiling. The agency will retain the application and will provide a copy to the applicant on request under the fee schedule in § 20.45 of FDA's public information regulations.

[50 FR 7493, Feb. 22, 1985, as amended at 68 FR 25287, May 12, 2003]

**§ 314.70 Supplements and other changes to an approved application.**

(a) *Changes to an approved application.* (1) The applicant notify FDA about each change in each condition established in an approved application beyond the variations already provided for in the application. The notice is required to describe the change fully. Depending on the type of change, the applicant must notify FDA about it in a supplement under paragraph (b) or (c) of this section or by inclusion of the information in the annual report to the application under paragraph (d) of this section.

(2) The holder of an approved application under section 505 of the act must assess the effects of the change before distributing a drug product made with a manufacturing change.

(3) Notwithstanding the requirements of paragraphs (b) and (c) of this section, an applicant must make a change provided for in those paragraphs in accordance with a regulation or guidance that provides for a less burdensome notification of the change (for example, by submission of a supplement that does not require approval prior to distribution of the product or in an annual report).

(4) The applicant must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented in accordance with paragraphs (b) and (c) of this section.

(5) Except for a supplement providing for a change in the labeling, the applicant must include in each supplement and amendment to a supplement providing for a change under paragraph (b) or (c) of this section a statement certifying that a field copy has been provided in accordance with § 314.440(a)(4).

(6) A supplement or annual report must include a list of all changes contained in the supplement or annual report. For supplements, this list must be provided in the cover letter.

(b) *Changes requiring supplement submission and approval prior to distribution of the product made using the change (major changes).* (1) A supplement must be submitted for any change in the drug substance, drug product, production process, quality controls, equipment, or facilities that has a substantial potential to have an adverse effect on the identity, strength, quality, purity, or potency of the drug product as these factors may relate to the safety or effectiveness of the drug product.

(2) These changes include, but are not limited to:

(i) Except those described in paragraphs (c) and (d) of this section, changes in the qualitative or quantitative formulation of the drug product, including inactive ingredients, or in the specifications provided in the approved application;

(ii) Changes requiring completion of studies in accordance with part 320 of this chapter to demonstrate the equivalence of the drug product to the drug product as manufactured without the change or to the reference listed drug;

(iii) Changes that may affect drug substance or drug product sterility assurance, such as changes in drug substance, drug product, or component sterilization method(s) or an addition, deletion, or substitution of steps in an aseptic processing operation;

(iv) Changes in the synthesis or manufacture of the drug substance that may affect the impurity profile and/or the physical, chemical, or biological properties of the drug substance;

(v) The following labeling changes:

(A) Changes in labeling, except those described in paragraphs (c)(6)(iii), (d)(2)(ix), or (d)(2)(x) of this section;

t providing
. the appli-
supplement
ement pro-
ragraph (b)
nent certi-
been pro-
14.440(a)(4).
ual report
anges con-
annual re-
list must
er.
*lement sub-*
*distribution*
*the change*
ment must
ige in the
ct, produc-
ols, equip-
a substan-
erse effect
uality, pu-
product as
the safety
roduct.
out are not

l in para-
s section,
or quan-
drug prod-
edients, or
led in the

npletion of
part 320 of
trate the
uct to the
ed without
ence listed

ffect drug
erility as-
drug sub-
component
n addition,
steps in an

is or man-
ance that
file and/or
biological
nce;
hanges:
cept those
(c)(6)(iii),
ection;



(B) If applicable, any change to a Medication Guide required under part 208 of this chapter, except for changes in the information specified in §208.20(b)(8)(iii) and (b)(8)(iv) of this chapter.

(vi) Changes in a drug product container closure system that controls the drug product delivered to a patient or changes in the type (e.g., glass to high density polyethylene (HDPE), HDPE to polyvinyl chloride, vial to syringe) or composition (e.g., one HDPE resin to another HDPE resin) of a packaging component that may affect the impurity profile of the drug product.

(vii) Changes solely affecting a natural product, a recombinant DNA-derived protein/polypeptide, or a complex or conjugate of a drug substance with a monoclonal antibody for the following:

(A) Changes in the virus or adventitious agent removal or inactivation method(s);

(B) Changes in the source material or cell line; and

(C) Establishment of a new master cell bank or seed.

(viii) Changes to a drug product under an application that is subject to a validity assessment because of significant questions regarding the integrity of the data supporting that application.

(3) The applicant must obtain approval of a supplement from FDA prior to distribution of a drug product made using a change under paragraph (b) of this section. Except for submissions under paragraph (e) of this section, the following information must be contained in the supplement:

(i) A detailed description of the proposed change;

(ii) The drug product(s) involved;

(iii) The manufacturing site(s) or area(s) affected;

(iv) A description of the methods used and studies performed to assess the effects of the change;

(v) The data derived from such studies;

(vi) For a natural product, a recombinant DNA-derived protein/polypeptide, or a complex or conjugate of a drug substance with a monoclonal antibody, relevant validation protocols and a list of relevant standard operating procedures must be provided in addition to the requirements in paragraphs (b)(3)(iv) and (b)(3)(v) of this section; and

(vii) For sterilization process and test methodologies related to sterilization process validation, relevant validation protocols and a list of relevant standard operating procedures must be provided in addition to the requirements in paragraphs (b)(3)(iv) and (b)(3)(v) of this section.

(4) An applicant may ask FDA to expedite its review of a supplement for public health reasons or if a delay in making the change described in it would impose an extraordinary hardship on the applicant. Such a supplement and its mailing cover should be plainly marked: "Prior Approval Supplement-Expedited Review Requested."

(c) *Changes requiring supplement submission at least 30 days prior to distribution of the drug product made using the change (moderate changes).* (1) A supplement must be submitted for any change in the drug substance, drug product, production process, quality controls, equipment, or facilities that has a moderate potential to have an adverse effect on the identity, strength, quality, purity, or potency of the drug product as these factors may relate to the safety or effectiveness of the drug product. If the supplement provides for a labeling change under paragraph (c)(6)(iii) of this section, 12 copies of the final printed labeling must be included.

(2) These changes include, but are not limited to:

(i) A change in the container closure system that does not affect the quality of the drug product, except those described in paragraphs (b) and (d) of this section; and

(ii) Changes solely affecting a natural protein, a recombinant DNA-derived protein/polypeptide or a complex or conjugate of a drug substance with a monoclonal antibody, including:

(A) An increase or decrease in production scale during finishing steps that involves different equipment; and

(B) Replacement of equipment with that of a different design that does not affect the process methodology or process operating parameters.

(iii) Relaxation of an acceptance criterion or deletion of a test to comply

with an official compendium that is consistent with FDA statutory and regulatory requirements.

(3) A supplement submitted under paragraph (c)(1) of this section is required to give a full explanation of the basis for the change and identify the date on which the change is to be made. The supplement must be labeled "Supplement—Changes Being Effected in 30 Days" or, if applicable under paragraph (c)(6) of this section, "Supplement—Changes Being Effected."

(4) Pending approval of the supplement by FDA, except as provided in paragraph (c)(6) of this section, distribution of the drug product made using the change may begin not less than 30 days after receipt of the supplement by FDA. The information listed in paragraphs (b)(3)(i) through (b)(3)(vii) of this section must be contained in the supplement.

(5) The applicant must not distribute the drug product made using the change if within 30 days following FDA's receipt of the supplement, FDA informs the applicant that either:

(i) The change requires approval prior to distribution of the drug product in accordance with paragraph (b) of this section; or

(ii) Any of the information required under paragraph (c)(4) of this section is missing; the applicant must not distribute the drug product made using the change until the supplement has been amended to provide the missing information.

(6) The agency may designate a category of changes for the purpose of providing that, in the case of a change in such category, the holder of an approved application may commence distribution of the drug product involved upon receipt by the agency of a supplement for the change. These changes include, but are not limited to:

(i) Addition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength, quality, purity, or potency that it purports or is represented to possess;

(ii) A change in the size and/or shape of a container for a nonsterile drug product, except for solid dosage forms, without a change in the labeled amount of drug product or from one container closure system to another;

(iii) Changes in the labeling to accomplish any of the following:

(A) To add or strengthen a contraindication, warning, precaution, or adverse reaction;

(B) To add or strengthen a statement about drug abuse, dependence, psychological effect, or overdosage;

(C) To add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product;

(D) To delete false, misleading, or unsupported indications for use or claims for effectiveness; or

(E) Any labeling change normally requiring a supplement submission and approval prior to distribution of the drug product that FDA specifically requests be submitted under this provision.

(7) If the agency disapproves the supplemental application, it may order the manufacturer to cease distribution of the drug product(s) made with the manufacturing change.

(d) *Changes to be described in an annual report (minor changes).* (1) Changes in the drug substance, drug product, production process, quality controls, equipment, or facilities that have a minimal potential to have an adverse effect on the identity, strength, quality, purity, or potency of the drug product as these factors may relate to the safety or effectiveness of the drug product must be documented by the applicant in the next annual report in accordance with § 314.81(b)(2).

(2) These changes include, but are not limited to:

(i) Any change made to comply with a change to an official compendium, except a change described in paragraph (c)(2)(iii) of this section, that is consistent with FDA statutory and regulatory requirements.

(ii) The deletion or reduction of an ingredient intended to affect only the color of the drug product;

(iii) Replacement of equipment with that of the same design and operating principles except those equipment changes described in paragraph (c) of this section;

(iv) A change in
of a container
number of dosage
solid dosage form
out a change fro
sure system to an

(v) A change
closure system f
product, based
equivalency to
under a protocol
cation or publish
pendium;

(vi) An extens
dating period bas
data on product
from a protocol
cation;

(vii) The additi
ternative analy
provides the san
ance of the ident
purity, or pote
being tested as
dure described in
tion, or deletion
lytical procedure

(viii) The addi
bossing, or engra
to a solid oral d
uct other than a
age form, or a n
isting code impri

(ix) A change
cerning the de
product or in t
how the drug pr
does not involve
strength or dosa

(x) An editor
change in labeli

(3) For change
the applicant is
the annual repo

(i) A stateme
approved applic
the change have

(ii) A full desc
turing and cont
the manufactur
volved;

(iii) The date
mented;

(iv) Data fron
formed to ass
change; and,

(v) For a n
binant DN
polypeptide, co

(iv) A change in the size and/or shape of a container containing the same number of dosage units for a nonsterile solid dosage form drug product, without a change from one container closure system to another;

(v) A change within the container closure system for a nonsterile drug product, based upon a showing of equivalency to the approved system under a protocol approved in the application or published in an official compendium;

(vi) An extension of an expiration dating period based upon full shelf life data on production batches obtained from a protocol approved in the application;

(vii) The addition or revision of an alternative analytical procedure that provides the same or increased assurance of the identity, strength, quality, purity, or potency of the material being tested as the analytical procedure described in the approved application, or deletion of an alternative analytical procedure;

(viii) The addition by embossing, debossing, or engraving of a code imprint to a solid oral dosage form drug product other than a modified release dosage form, or a minor change in an existing code imprint;

(ix) A change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form; and

(x) An editorial or similar minor change in labeling.

(3) For changes under this category, the applicant is required to submit in the annual report:

(i) A statement by the holder of the approved application that the effects of the change have been assessed;

(ii) A full description of the manufacturing and controls changes, including the manufacturing site(s) or area(s) involved;

(iii) The date each change was implemented;

(iv) Data from studies and tests performed to assess the effects of the change; and,

(v) For a natural product, recombinant DNA-derived protein/polypeptide, complex or conjugate of a drug substance with a monoclonal antibody, sterilization process or test methodology related to sterilization process validation, a cross-reference to relevant validation protocols and/or standard operating procedures.

(e) *Protocols.* An applicant may submit one or more protocols describing the specific tests and studies and acceptance criteria to be achieved to demonstrate the lack of adverse effect for specified types of manufacturing changes on the identity, strength, quality, purity, and potency of the drug product as these factors may relate to the safety or effectiveness of the drug product. Any such protocols, if not included in the approved application, or changes to an approved protocol, must be submitted as a supplement requiring approval from FDA prior to distribution of a drug product produced with the manufacturing change. The supplement, if approved, may subsequently justify a reduced reporting category for the particular change because the use of the protocol for that type of change reduces the potential risk of an adverse effect.

(f) *Patent information.* The applicant must comply with the patent information requirements under section 505(c)(2) of the act.

(g) *Claimed exclusivity.* If an applicant claims exclusivity under §314.108 upon approval of a supplement for change to its previously approved drug product, the applicant must include with its supplement the information required under §314.50(j).

[69 FR 18764, Apr. 8, 2004]

## §314.71 Procedures for submission of a supplement to an approved application.

(a) Only the applicant may submit a supplement to an application.

(b) All procedures and actions that apply to an application under §314.50 also apply to supplements, except that the information required in the supplement is limited to that needed to support the change. A supplement is required to contain an archival copy and a review copy that include an application form and appropriate technical sections, samples, and labeling; except that a supplement for a change other

Case 0:01-md-01431-MJD Document 4122-5 Filed 04/17/2006 Page 9 of 11

than a change in labeling is required also to contain a field copy.

(c) All procedures and actions that apply to applications under this part, including actions by applicants and the Food and Drug Administration, also apply to supplements.

[50 FR 7493, Feb. 22, 1985, as amended at 50 FR 21238, May 23, 1985; 58 FR 47352, Sept. 8, 1993; 67 FR 9586, Mar. 4, 2002]

### § 314.72 Change in ownership of an application.

(a) An applicant may transfer ownership of its application. At the time of transfer the new and former owners are required to submit information to the Food and Drug Administration as follows:

(1) The former owner shall submit a letter or other document that states that all rights to the application have been transferred to the new owner.

(2) The new owner shall submit an application form signed by the new owner and a letter or other document containing the following:

(i) The new owner's commitment to agreements, promises, and conditions made by the former owner and contained in the application;

(ii) The date that the change in ownership is effective; and

(iii) Either a statement that the new owner has a complete copy of the approved application, including supplements and records that are required to be kept under § 314.81, or a request for a copy of the application from FDA's files. FDA will provide a copy of the application to the new owner under the fee schedule in § 20.45 of FDA's public information regulations.

(b) The new owner shall advise FDA about any change in the conditions in the approved application under § 314.70, except the new owner may advise FDA in the next annual report about a change in the drug product's label or labeling to change the product's brand or the name of its manufacturer, packer, or distributor.

[50 FR 7493, Feb. 22, 1985; 50 FR 14212, Apr. 11, 1985, as amended at 50 FR 21238, May 23, 1985; 67 FR 9586, Mar. 4, 2002; 68 FR 25287, May 12, 2003]

### § 314.80 Postmarketing reporting of adverse drug experiences.

(a) *Definitions*. The following definitions of terms apply to this section:–

*Adverse drug experience*. Any adverse event associated with the use of a drug in humans, whether or not considered drug related, including the following: An adverse event occurring in the course of the use of a drug product in professional practice; an adverse event occurring from drug overdose whether accidental or intentional; an adverse event occurring from drug abuse; an adverse event occurring from drug withdrawal; and any failure of expected pharmacological action.

*Disability*. A substantial disruption of a person's ability to conduct normal life functions.

*Life-threatening adverse drug experience*. Any adverse drug experience that places the patient, in the view of the initial reporter, at *immediate* risk of death from the adverse drug experience as it occurred, i.e., it does not include an adverse drug experience that, had it occurred in a more severe form, might have caused death.

*Serious adverse drug experience*. Any adverse drug experience occurring at any dose that results in any of the following outcomes: Death, a life-threatening adverse drug experience, inpatient hospitalization or prolongation of existing hospitalization, a persistent or significant disability/incapacity, or a congenital anomaly/birth defect. Important medical events that may not result in death, be life-threatening, or require hospitalization may be considered a serious adverse drug experience when, based upon appropriate medical judgment, they may jeopardize the patient or subject and may require medical or surgical intervention to prevent one of the outcomes listed in this definition. Examples of such medical events include allergic bronchospasm requiring intensive treatment in an emergency room or at home, blood dyscrasias or convulsions that do not result in inpatient hospitalization, or the development of drug dependency or drug abuse.

*Unexpected adverse drug experience*. Any adverse drug experience that is not listed in the current labeling for the drug product. This includes events

that may be symptomatically and pathophysiologically related to an event listed in the labeling, but differ from the event because of greater severity or specificity. For example, under this definition, hepatic necrosis would be unexpected (by virtue of greater severity) if the labeling only referred to elevated hepatic enzymes or hepatitis. Similarly, cerebral thromboembolism and cerebral vasculitis would be unexpected (by virtue of greater specificity) if the labeling only listed cerebral vascular accidents. "Unexpected," as used in this definition, refers to an adverse drug experience that has not been previously observed (i.e., included in the labeling) rather than from the perspective of such experience not being anticipated from the pharmacological properties of the pharmaceutical product.

(b) *Review of adverse drug experiences.* Each applicant having an approved application under §314.50 or, in the case of a 505(b)(2) application, an effective approved application, shall promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from commercial marketing experience, postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports in the scientific literature, and unpublished scientific papers. Applicants are not required to resubmit to FDA adverse drug experience reports forwarded to the applicant by FDA; however, applicants must submit all followup information on such reports to FDA. Any person subject to the reporting requirements under paragraph (c) of this section shall also develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA.

(c) *Reporting requirements.* The applicant shall report to FDA adverse drug experience information, as described in this section. The applicant shall submit two copies of each report described in this section to the Central Document Room, 5901–B Ammendale Rd., Beltsville, MD 20705–1266. FDA may waive the requirement for the second copy in appropriate instances.

(1)(i) *Postmarketing 15-day "Alert reports".* The applicant shall report each adverse drug experience that is both serious and unexpected, whether foreign or domestic, as soon as possible but in no case later than 15 calendar days of initial receipt of the information by the applicant.

(ii) *Postmarketing 15-day "Alert reports"—followup.* The applicant shall promptly investigate all adverse drug experiences that are the subject of these postmarketing 15-day Alert reports and shall submit followup reports within 15 calendar days of receipt of new information or as requested by FDA. If additional information is not obtainable, records should be maintained of the unsuccessful steps taken to seek additional information. Postmarketing 15-day Alert reports and followups to them shall be submitted under separate cover.

(iii) *Submission of reports.* The requirements of paragraphs (c)(1)(i) and (c)(1)(ii) of this section, concerning the submission of postmarketing 15-day Alert reports, shall also apply to any person other than the applicant (nonapplicant) whose name appears on the label of an approved drug product as a manufacturer, packer, or distributor. To avoid unnecessary duplication in the submission to FDA of reports required by paragraphs (c)(1)(i) and (c)(1)(ii) of this section, obligations of a nonapplicant may be met by submission of all reports of serious adverse drug experiences to the applicant. If a nonapplicant elects to submit adverse drug experience reports to the applicant rather than to FDA, the nonapplicant shall submit each report to the applicant within 5 calendar days of receipt of the report by the nonapplicant, and the applicant shall then comply with the requirements of this section. Under this circumstance, the nonapplicant shall maintain a record of this action which shall include:

(A) A copy of each adverse drug experience report;

(B) The date the report was received by the nonapplicant;

(C) The date the report was submitted to the applicant; and

(D) The name and address of the applicant.

(iv) *Report identification.* Each report submitted under this paragraph shall bear prominent identification as to its contents, i.e., "15-day Alert report," or "15-day Alert report-followup."

(2) *Periodic adverse drug experience reports.* (i) The applicant shall report each adverse drug experience not reported under paragraph (c)(1)(i) of this section at quarterly intervals, for 3 years from the date of approval of the application, and then at annual intervals. The applicant shall submit each quarterly report within 30 days of the close of the quarter (the first quarter beginning on the date of approval of the application) and each annual report within 60 days of the anniversary date of approval of the application. Upon written notice, FDA may extend or reestablish the requirement that an applicant submit quarterly reports, or require that the applicant submit reports under this section at different times than those stated. For example, the agency may reestablish a quarterly reporting requirement following the approval of a major supplement. Followup information to adverse drug experiences submitted in a periodic report may be submitted in the next periodic report.

(ii) Each periodic report is required to contain: (*a*) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval (all 15-day Alert reports being appropriately referenced by the applicant's patient identification number, adverse reaction term(s), and date of submission to FDA); (*b*) a FDA Form 3500A (Adverse Reaction Report) for each adverse drug experience not reported under paragraph (c)(1)(i) of this section (with an index consisting of a line listing of the applicant's patient identification number and adverse reaction term(s)); and (*c*) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

(iii) Periodic reporting, except for information regarding 15-day Alert reports, does not apply to adverse drug experience information obtained from postmarketing studies (whether or not conducted under an investigational new drug application), from reports in the scientific literature, and from foreign marketing experience.

(d) *Scientific literature.* (1) A 15-day Alert report based on information from the scientific literature is required to be accompanied by a copy of the published article. The 15-day reporting requirements in paragraph (c)(1)(i) of this section (i.e., serious, unexpected adverse drug experiences) apply only to reports found in scientific and medical journals either as case reports or as the result of a formal clinical trial.

(2) As with all reports submitted under paragraph (c)(1)(i) of this section, reports based on the scientific literature shall be submitted on FDA Form 3500A or comparable format as prescribed by paragraph (f) of this section. In cases where the applicant believes that preparing the FDA Form 3500A constitutes an undue hardship, the applicant may arrange with the Division of Pharmacovigilance and Epidemiology for an acceptable alternative reporting format.

(e) *Postmarketing studies.* (1) An applicant is not required to submit a 15-day Alert report under paragraph (c) of this section for an adverse drug experience obtained from a postmarketing study (whether or not conducted under an investigational new drug application) unless the applicant concludes that there is a reasonable possibility that the drug caused the adverse experience.

(2) The applicant shall separate and clearly mark reports of adverse drug experiences that occur during a postmarketing study as being distinct from those experiences that are being reported spontaneously to the applicant.

(f) *Reporting FDA Form 3500A.* (1) Except as provided in paragraph (f)(3) of this section, the applicant shall complete FDA Form 3500A for each report of an adverse drug experience (foreign events may be submitted either on an FDA Form 3500A or, if preferred, on a CIOMS I form).

(2) Each completed FDA Form 3500A should refer only to an individual patient or a single attached publication.

(3) Instead of using FDA Form 3500A, an applicant may use a computer-generated FDA Form 3500A or other alternative format (e.g., a computer-generated tape or tabular listing) provided