**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re: BAYCOL PRODUCTS LITIGATION<br><br>This Document Relates To:<br><br>All Actions | )<br>)<br>)<br>)<br>)<br>) | MDL No. 1431 (MJD/JGL) |

**MEMORANDUM OF LAW IN SUPPORT OF PSC'S MOTION FOR EMERGENCY PRESERVATION ORDER AND DISCOVERY INTO POTENTIALLY SANCTIONABLE CONDUCT**

## I. INTRODUCTION

During the course of this litigation, the Baycol Plaintiff Steering Committee ("PSC") followed the initial Transfer Order of the Judicial Panel on Multidistrict Litigation ("JPMDL") consolidating cases for pre-discovery purposes and this Court's orders to develop and distribute work product to all persons who agreed to a common benefit assessment order.[1] One such person is a *pro se* litigant, Mr. Terry G. Hayes ("Hayes")[2]. Throughout this litigation, Hayes has received correspondence and information that discloses the PSC's strategy and litigation thought processes, most of which have clearly been marked as confidential, work product, and protected. Defense counsel decided that they would obtain indirectly that to which they had no right to obtain directly by engaging in egregious conduct.

[1] *See, e.g.,* Pretrial Order ("PTO") 2, § I.C. and PTO 25.
[2] *Terry G. Hayes v. Bayer Corp., et al.,* Case Number 02-CV-0045 MJD. The case was transferred to the District of Minnesota as a tag-along action and this Court denied a motion to remand the case back to Kentucky.

Indeed, Defendants intimidated, harassed, and ultimately threatened a *pro se* plaintiff during his deposition until he reluctantly turned over the confidential and privileged documents. Cajoling a comparatively unskilled and uninformed *pro se* litigant to turn over work product created by order of the JPMDL and this Court is simply inexcusable. A written request from the PSC to return the documents has been ignored. Accordingly, the PSC moves this Court for orders: (1) requiring the return of the confidential documents to the PSC; (2) requiring all defense counsel to whom the Hayes transcript and/or confidential documents from Mr. Hayes have been shared to preserve all records relating to the confidential information; (3) allowing reasonable discovery to determine how widely shared the confidential information has been distributed and what steps, if any, were made to return the confidential information; and (4) if sanctionable conduct occurred, beyond the attorney who took the Hayes deposition, granting leave to the PSC to file a motion for sanctions and associated costs.

## II. FACTS

Thousands of claimants in Baycol MDL 1431 are relying on PSC work product to prosecute their claims. Some of these claimants are *pro se* such as Hayes. Mr. Hayes has been an active participant in this litigation since it began several years ago and has endeavored to comply with all applicable Court Orders and has agreed to be assessed for

all common benefit work. Pursuant to Pretrial Order ("PTO") 149, Defendants noticed the deposition of Hayes for May 4, 2006.[3]

On May 4, 2006, Hayes presented to the offices of defense counsel in Kentucky for his deposition.[4] During the course of this deposition, defense counsel proceeded to extensively inquire about various documents contained within Hayes' files. Hayes allowed defense counsel to review various documents and records within his file, but repeatedly expressed concern about producing documents provided by the PSC and vociferously objected to disclosing PSC correspondence and memoranda, much of which was marked as confidential work product. *See*, generally, Ex. 2.

Notwithstanding Hayes' objections, defense counsel threatened Hayes with sanctions and did not notify PSC members and other consolidated plaintiffs who clearly have an interest in maintaining the confidentiality afforded by the work product doctrine. Hayes ultimately allowed defense counsel to review the documents.

The numerous exchanges between Defendants and this *pro se* claimant regarding production of the confidential documents are alarming. The following excerpt, as an example, illustrates the manner in which Defendants persisted (despite Hayes' objections) and even threatened to seek costs <u>personally</u> from the *pro se* claimant if he refused to produce the protected work product:

---

[3] *See* Ex. 1, Shelquist Aff. (Second Amended Notice of Deposition of Plaintiff Terry G. Hayes, dated March 22, 2006).

[4] This was the <u>second</u> time Defendants deposed Mr. Hayes. *See* Ex. 2., Shelquist Aff. (Hayes Dep. 4:15-5:10); *see also* Ex. 3, Shelquist Aff. (Amended Notice to Take Videotaped Deposition and related correspondence, dated July 9, 2003).

MR. LAVERY: So what's -- state your basis for your objection to producing these. Or if you agree that we can copy these and you go and we give you the originals back.

THE WITNESS: I will -- once I talk to him --

MR. LAVERY: Who's "him"?

THE WITNESS: When I talk to the people in these letters and they say I can give them to you, I will fax you a copy. And you can give her a copy. Agreeable?

MR. LAVERY: Well, I want copies now.

THE WITNESS: I'll make an objection. Until I talk to these people -- you know, I can't do it from here. You know, these are classified documents presented by the plaintiffs' Steering Committee during the discovery. You-all should have these letters. Your-all's people, the Liaison Committee should have these letters. That's the only reason I'm making an objection. Okay? I have been cooperative any other way. Until I talk to these people, I'm not going to give these documents up. I'll be glad to give you anything else you want, but until I talk to these people...

MR. LAVERY: All right. Let me just place an objection to not producing the records and I will file a motion to get the records that I just stated on the record. And the basis is that these records are written to someone other than Mr. Hayes. Mr. Hayes is not an attorney. He's representing himself. These are letters from law firms that are not representing him, have not represented him at any time. He's never retained these attorneys. And these are all records that he said that he reviewed prior to his deposition today to prepare for his deposition, and they are discoverable. *I'm asking for copies of them in the deposition, and Mr. Hayes is going to refuse to give them to me, so I'll file a motion to compel these documents. And if we have to come back to have your deposition again to discuss these documents or if there are any court fees or anything that are incurred by my client to get these documents, then I'll have to ask the Court that my client be awarded those from you for having to file a motion.*

THE WITNESS: If you give me a day, I'll either get back with you and let you know what these people say in these documents

| | |
|---|---|
| | and fax these documents to you directly. You have a direct fax line? |
| MR. LAVERY: | I do. |
| THE WITNESS: | What is that number? |
| MR. LAVERY: | (502) 561-9400. |
| THE WITNESS: | And I'll put attention to you. Okay. |
| MR. LAVERY: | I don't have any other -- |
| THE WITNESS: | You don't have any objection to that, do you? |
| MR. LAVERY: | Well, I have an objection. I want the records now. |
| THE WITNESS: | Well, you know -- |
| MR. LAVERY: | But if you're objecting to giving them to me, then you're objecting to giving them to me, and we'll just have to address that later. |
| THE WITNESS: | You know, as soon as I talk to the people and they say okay supply them to you, I will supply them and fax you a copy, and you can give her -- make notations and give it to her. Is that agreeable? |

Hayes Depo. 248:22-251:16, Ex. 2 (emphasis added).

Equally disturbing is the fact that the vast majority of the confidential documents reviewed and demanded by Defendants were conspicuously labeled as “Confidential,” “Work Product,” “Attorney-Client Privilege,” “Dear Plaintiffs’ Counsel,” “Dear Baycol Attorney,” etc.[5] Even if a *pro se* claimant failed to understand or recognize the confidential and privileged status of such documents, legal counsel for Bayer would not.[6] Indeed, Defendants’ counsel recited the dates, authors, etc. of many such confidential and protected documents into the record.[7]

[5] *See, e.g.,* Ex. 2, 248:4-14.
[6] In contrast, Defendants have successfully shielded thousands of documents from discovery where an attorney merely sat in a business meeting or was an afterthought to a lengthy e-mail string that had no work product nomenclature attached.
[7] *See, e.g.,* Ex. 2 (pages 246:5-248:14).

Defendants knew exactly what they were looking at, demanding copies of, and creating a record about at the deposition. However, Defendants tried to justify unauthorized access to confidential communications, attorney impressions, and thought processes by establishing two facts, namely (1) that Hayes was not an attorney; and (2) that Hayes was not represented by legal counsel (the PSC in particular):

Q: You don't have -- in this case you're representing yourself; right?
A: They're doing discovery.
Q: Are you representing yourself?
A: I'm representing myself, but they're doing discovery.
Q: Do you have an attorney?
A: I'm my attorney.
Q: Okay. You haven't retained anybody to be your attorney?
A: Why are they doing discovery then?
Q: I'm not here to answer your questions. You have not hired an attorney?
A: An objection for them documents has been noted.
Q: Have you hired an attorney?
A: No, but they're doing discovery. I will be talking to Zimmerman and Reed today.

* * *

A: You cannot have it until I talk to my people, and then I'll make you a -- I'll fax you a copy.
Q: Let me ask you, when you say talking to your people --
A: When I talk to Zimmerman and Reed.
Q: They're not your attorneys.
A: They did do discovery.
Q: Are they your attorneys?
A: These are discovery documents.
Q: Are they your attorneys?
A: They're doing discovery in this case, aren't they?
Q: My question to you, is Zimmerman Reed your attorney?
A: Why did they supply me these documents then if they're not doing discovery?
Q: Have you entered into a contract with --

A: No, I have not.
Q: Let me finish. Have you entered into any contract with Zimmerman Reed attorneys?
A: No.
Q: Have you retained any attorney at Zimmerman Reed to be your attorney in this case?
A: No. Why are they doing discovery?
Q: Let me finish my questions. Have you agreed to pay Zimmerman Reed anything that you may recover in this case?
A: They get 6 percent of anything.
Q: Have you agreed to pay them if you obtain settlement in this case?
A: The plaintiffs' Steering Committee gets 6 percent.
Q: All right. Have you paid any money into the plaintiffs' Steering Committee?
A: No, I have not.
Q: Have you entered into any written agreement that says that if you obtain any settlement or any kind of money from this case that you are going to pay the plaintiffs' Steering Committee any amount of money or any fees?
A: There was documents they signed. I'd have to pull the documents.
Q: Did you sign any documents?
A: I believe I did to them.
Q: That said you were going to pay something?
A: Said we pay 6 percent. They get 6 percent of any settlement amount.

* * *

Q: …Now, all of these letters -- maybe not all of them, but the vast majority of them are written to Dear Baycol attorney; to Dear counsel; to Dear plaintiff's counsel; Dear counsel; Dear plaintiff's counsel; plaintiff, slash, plaintiff's counsel; Dear Baycol attorney; Dear Baycol plaintiff, slash, plaintiff's counsel. You're not an attorney; right?
A: No.
Q: You never went to law school?
A: No, I did not.
Q: And these letters are written from people who are not lawyers representing you; right?
A: Yes.

*See* Ex. 2, pp. 241:7-248:20.

Defense counsel also misrepresented the Plaintiff Fact Sheet obligations to Hayes:

Q: All right. I want copies of these letters that were attached as part of your file that relates to this litigation because the Plaintiff's Fact Sheet asks --
A: For any documents?
Q: Hold on. And I can quote you the information --
A: Okay. It's not been updated yet.
Q: The Plaintiff Fact Sheet says at the very end that we want copies of --
A: All documents.
Q: Hold on.
A: Okay. I'm going to start putting these back away.
Q: You can. Before you do that, there's a couple of other files here. We're going to get a copy. But, anyway, the Plaintiff's Fact Sheet asks for you to display all documents as part of your file relating to this matter.
A: Will you show that to me, please? These are just subpoenas I'm working on. I'm not ready for that yet.
Q: Can I see them? I don't necessarily have to make a copy of what's in it, but I just want to see what it is.
A: I just started on them.
Q: That's fine. What's the other files?
A: About me and my personal educational file.
Q: Let me see. I think I've already seen it.
A: Yeah. You already have this.
Q: You can have the educational file back.
A: You have that.
Q: And I have that. Okay. Let's see here. Number 9, all documents of any kind related to all the drugs you took at the time you were taking Baycol, medical records.
A: That's not saying nothing about documents from them.
Q: All instructions. Okay. So this file, I'm going to make a complete copy of this and you can walk to the copy machine.
A: I'm not going to walk to it. Show me where that says it in that.
*Q: It does not say specifically what I just mentioned to you before.*
A: You cannot have it until I talk to my people, and then I'll make you a -- I'll fax you a copy.

*See* Ex. 2, Hayes Depo, pp. 241:25-243:25 (emphasis added).

Following his deposition, Hayes contacted the PSC to discuss his concerns regarding the deposition and, specifically, the documents reviewed and demanded by Defendants. On May 8, 2006, PSC counsel spoke with Hayes. Hayes indicated that he had just turned over to Defendants the confidential documents they demanded. *See* Affidavit of Yvonne M. Flaherty. Hayes expressed concern and distress over his reluctant submission of such documents but feared he had no alternative but to forward the documents to Defendants or face severe penalty.

Alarmed by Hayes' recitation of events, the PSC undertook a preliminary investigation into the incident. Specifically, the PSC obtained a copy of the Hayes' deposition transcript, deposition exhibits and confidential documents Hayes was forced to turn over to Defendants.

In an effort to further investigate the nature and scope of the problem, the PSC forwarded written notice to local defense counsel, as well as Susan Weber and James Mizgala on May 26, 2006, requesting the return and destruction of the confidential documents and any copies thereof.[8] To date, Defendants have failed to either acknowledge or respond to the PSC's request.

[8] Ex. 4, Shelquist Aff.

## III. ARGUMENT

### A. Co-Lead Counsel's Confidential Communications Regarding Status and Strategies are Protected Work Product

Part of Lead Counsel's duty in MDL litigation is to keep all counsel advised of developments in this litigation. *See* MANUAL FOR COMPLEX LITIGATION, Fourth, §10.22. This duty was recognized and formalized in this MDL through, *inter alia*, PTOs 1 and 3. In fulfilling their court-ordered duties, Lead Counsel have frequently sent correspondence, memoranda, and other information regarding both the status and various plaintiffs' counsel strategies to Baycol attorneys throughout the United States. These communications are protected from disclosure to opposing counsel by the applicable rules and the Attorney Work Product Doctrine and, for the most part, were conspicuously marked as such.

Established in *Hickman v. Taylor*, the Work Product Doctrine recognizes that an attorney must "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" and be free to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Letters prepared by Lead Counsel regarding various aspects of this litigation provide mental impressions and strategy in communication with other Baycol attorneys. These communications are further protected by the Federal Rules of Civil Procedure which state:

> (3) *Trial Preparation: Materials*. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

Fed.R.Civ.P. 26(b)(3) (emphasis added).

Courts have expressly held in complex litigation matters that "communication of information among and between Lead Counsel[,]…Liaison Counsel and counsel in the Individual Actions" is not deemed a waiver of the attorney-client privilege or the attorney work product doctrine. *In re Worldcom, Inc. Securities Litig.*, 2003 WL 21872391 (S.D.N.Y. 2003) (Ex. 5, Shelquist Aff.); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL 1532, 2003 WL 22709626 (D. Me. 2003) (Ex. 6., Shelquist Aff.). The MANUAL FOR COMPLEX LITIGATION also states that communication among the various counsel and their clients should not be treated as waiving the work-product protection or the attorney-client privilege. *See* MANUAL FOR COMPLEX LITIGATION, Fourth § 10.22.

Many federal courts have also recognized that "attorney-client and work product privileges may extend to communications among persons who share a joint legal interest

in the subject matter of the communications." *Draus v. Healthtrust, Inc., et al.*, 172 F.R.D. 384, 391 (S.D.Ind. 1997). *See also United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979); *Anderson v. Torrington Co.*, 120 F.R.D. 82, 86 (N.D.Ind. 1987); *Schachar v. American Academy of Opthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D.Ill. 1985); *Western Fuels Ass'n Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 512 (D.Conn. 1976).

In the present case, Mr. Hayes is a *pro se* litigant. He is acting as his own attorney for the purposes of this litigation. However, this does not change the fundamental nature of the confidential information conveyed in these letters and communications, or the protection afforded such communications. The mere fact that Lead Counsel forwarded, per Court Order, correspondence, memoranda, and other communications outlining various legal impressions and strategies to a *pro se* litigant neither waives the Work Product Doctrine nor does it entitle Defendants to view and retain confidential materials.

Even if the PSC's obligation to convey key litigation strategies, theories and other pertinent information extends only to licensed legal counsel for Plaintiffs in this litigation,[9] disclosure of such work product to a *pro se* litigant does not waive the work product doctrine. It is well established that the work product privilege is not automatically waived by any disclosure to third persons. Rather, courts generally find a waiver only if the disclosure "substantially increases the opportunity for potential adversaries to obtain the information." *Samuels v. Mitchell*, 155 F.R.D. 195, 200-201

[9] This interpretation of the PSC's obligation to the counsel and litigants in this MDL, however, stands in stark contrast to the heightened duty owed *pro se* litigants.

(N.D. Cal. 1994). *See also* 8 Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE, § 2024 at 367-69; *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 590 (N.D.N.Y. 1989). In the present case, Hayes is not an adversary of the PSC. Indeed, his interests in this litigation are aligned with that of the PSC and, absent coercion by Defendants during the Hayes' deposition, Defendants would not have obtained this information.

Finally, and perhaps most importantly, Defense counsel had an ethical duty, once they became aware of the nature of these documents, to cease the harassment of a vulnerable *pro se* litigant and their demands for production of privileged documents. This flagrant violation of the ethical rules and privileges established by the Federal Rules of Civil Procedure and decades of case law is untenable. Defense counsel is sophisticated and well knows a privileged communication. The vast majority of confidential documents Defendants cajoled from the *pro se* litigant were clearly and boldly labeled as confidential. Instead, counsel is on the record at the deposition as reading from these documents, misrepresenting to the pro se litigant that he is required to produce the documents, threatening that he will file a motion for costs, and implying to Mr. Hayes that his case may be dismissed if he does not immediately produce copies of the documents. Mr. Hayes repeatedly is on record stating his belief that the documents are confidential.

### B. Heightened Duty to Protect *Pro Se* Litigants

The Court has a heightened duty to protect pro se litigants, as they are unskilled in legal matters and prone to errors. *Marks-Foreman v. Reporter Pub. Co.*, 12 F.Supp.2d 1089 (S.D.Cal.1998). "Given the unique status of *pro se* litigants in our court system, it would be inappropriate to automatically apply rules developed in such cases to cases where parties are represented by attorneys presumably schooled in established court procedures." *Johnson v. Pullman, Inc.*, 845 F.2d 911, 914 (11th Cir. 1988). When dealing with pro se litigants, it is unfortunate that certain attorneys exploit their unsophisticated opponents. Accordingly, actions intended to take advantage of a *pro se* litigant, or actions taken to harass or intimidate a *pro se* litigant, are sanctionable. *Wesley v. Vaughn* 2001 WL 793260 (E.D. Pa. 2001). (motions filed to take advantage of an unsophisticated pro se opponent would be subject to sanctions) (Ex. 7, Shelquist Aff.); *see also Loges v. England*, 1996 WL 631399 (Ohio App. 2 Dist. 1996) (effort to take advantage of *pro se* plaintiffs can be sanctioned) (Ex. 8, Shelquist Aff.).

### C. The Court Should Issue An Emergency Order Requiring Preservation of Pertinent Documents and Permit the PSC Limited Discovery on This Issue

The PSC's request for the return of the documents has been ignored. The PSC has no way of knowing the extent to which the transcript and/or the work product has been shared with national defense counsel or local defense counsel. If they have been given access to the PSC's frank assessments of case strength, expert evolutions, and litigation strategy, the defendants privy to the information will enjoy an unwarranted advantage

throughout the remainder of this MDL and the individual trials of MDL cases. In order to rectify this intrusion on the litigation mental impressions and thought processes, the PSC at this time requests:

(1) Requiring the return of the confidential documents to the PSC;

(2) Requiring all defense counsel to whom the Hayes transcript and/or confidential documents from Mr. Hayes have been shared to preserve all records relating to the confidential information;

(3) Allowing reasonable discovery to determine how widely shared the confidential information has been distributed and what steps, if any, were made to return the confidential information; and

(4) If sanctionable conduct occurred, beyond the attorney who took the Hayes deposition, granting leave to the PSC to file a motion for sanctions and associated costs.

This Court's authority to issue an emergency document preservation order pending completion of the required discovery is well established. Indeed, this Court issued a similar Order in July 2003 and such orders are routinely entered in this District. *See, e.g., Antioch v. Scrapbook Boarders, Inc.*, 210 F.R.D. 645, 650 (D. Minn. 2002) (granting a motion for preservation of computer files that could be lost or deleted); *In re St. Jude Med., Inc.,* No. MDL 1396, 2002 WL 341019, *1 (D. Minn. March 1, 2002) (pretrial order requiring all parties to preserve evidence) (Ex. 9, Shelquist Aff.). The Court's authority to allow limited discovery for the purpose of determining whether attorneys in

this proceeding have engaged in misconduct has been similarly established. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (the scope of discovery that a district court may order extends to "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be an issue in this case."). *See also United States v. Montrose Chem. Corp. of Cal.,* 980 F. Supp. 1112, 1113 (C.D. Cal. 1997) ("Defendants may conduct discovery reasonably calculated, among other things, to obtain evidence to substantiate their allegations of misconduct by plaintiffs or their experts."). The Court's authority to allow to such discovery, even where production of materials may be from attorneys' files, has also been established. *See Bemis v. United States*, No. 96-1546, 1996 WL 550083, *2 (8th Cir. Sept. 20, 1996) (Shelquist Aff., Ex. 10) ("On remand, the District Court should grant Bemis' request for discovery of his attorney's files.").

## III. <u>CONCLUSION</u>

Defendants intimidated, harassed and eventually threatened a *pro se* litigant regarding the disclosure of confidential PSC work product. When confronted about the incident by the PSC, Defendants failed to respond or return the confidential documents as requested. Defendants' blatant disregard for the *pro se* claimant, the work product doctrine, and applicable ethical rules belies the conscience. Thus, the PSC respectfully requests that its Motion be granted in its entirety.

Dated: June 5, 2006

LOCKRIDGE GRINDAL NAUEN, P.L.L.P.

/s/ Robert K. Shelquist
Richard A. Lockridge
Robert K. Shelquist
Yvonne M. Flaherty
100 Washington Avenue South, Ste. 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

ZIMMERMAN REED, P.L.L.P
Charles Zimmerman
Robert R. Hopper
651 Nicollet Mall
Suite 501
Minneapolis, MN 55401
Telephone: (612) 341-0400

*Plaintiffs' Co-Lead Counsel*

RODA & NAST, P.C.
Dianne M. Nast
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Wendy R. Fleishman
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

ALEXANDER HAWES & AUDET
William Audet
152 N. 3rd Street
Suite 600
San Jose, CA 95112
Telephone: (408) 289-1776

WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., LPA
Stanley M. Chesley
Central Trust Tower, Suite 1513
One West Fourth Street
Cincinnati, OH 45202
Telephone: (513) 621-0267

BRANCH LAW FIRM
Turner W. Branch
2025 Rio Grande Blvd. N.W.
Albuquerque, NM 87104
Telephone: (505) 243-3500

LAW OFFICES OF DANIEL E. BECNEL, JR.
Daniel E. Becnel
106 West Seventh St., P.O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186

CLIMACO, LEFKOWITZ, PECA,
WILCOX & GAROFOLI CO., L.P.A.
John R. Climaco
1226 Euclid Avenue, Suite 900
Cleveland, OH 44115-1891
Telephone: (216) 621-8484

SINGLETON LAW FIRM
W. James Singleton
4050 Linwood Ave.
Shreveport, LA 71108
Telephone: (318) 631-5200

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS, LLP
Paul J. Geller
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: (561) 750-3000

KAPLAN, FOX & KILSHEIMER, LLP
Joel B. Strauss
Laurence D. King
805 3rd Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 687-1980

*Plaintiffs' Steering Committee*