# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : MDL No. 1431 (MJD) |
| This Document Relates to: | : |
| *Terry G. Hayes v. Bayer Corp., et al.* | : Case No. 02-CV-00445-MJD |

**SECOND AMENDED NOTICE OF DEPOSITION OF PLAINTIFF TERRY G. HAYES**

YOU ARE HEREBY NOTIFIED that, pursuant to the request of the plaintiff, the deposition of **TERRY G. HAYES** previously scheduled for Saturday, April 29, 2006, **is hereby cancelled and rescheduled** for **Thursday, May 4, 2006, at 9:30 a.m. EST, at the offices of Boehl Stopher & Graves, LLP, 2300 Aegon Center, 400 W. Market Street, Louisville, Kentucky.**

The deposition will be stenographically recorded by a court reporter authorized to administer oaths and will continue day to day, excluding Saturday, Sundays and holidays, until completed. The deposition will be taken for all purposes allowed for under the Federal Rules of Civil Procedure.

You are invited to attend and cross-examine.

DEPOSITION EXHIBIT
9 5-4-06
T. HAYES

Dated: March 22, 2006

BOEHL STOPHER & GRAVES, LLP

By: ______________________

Edward H. Stopher
Darryl S. Lavery
2300 Aegon Center
400 West Market Street
Louisville, KY 40202
(502) 589-5980 / FAX: (502) 561-9400
Email: dlavery@bsg-law.com
***Attorneys for Defendant Bayer Corp.***

**Of Counsel:**

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

**CERTIFICATE OF SERVICE**

Copies of the foregoing were sent on this 22nd day of March, 2006 via electronic mail and U.S mail, postage prepaid, to:

**Plaintiff's Counsel:**
Terry G. Hayes, *Pro Se*
110 Pin Oak Circle
Mt Washington, KY 40047
Email: TERRYHAYESM@aol.com

**Deanna D. Dailey, Esq.**
ddailey@larsonking.com
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

**Court Reporter**
**Coulter Reporting**
101 E. Kentucky Street
Louisville, KY 40203
(502) 582-1627

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re BAYCOL PRODUCTS LITIGATION MDL No. 1431 (MJD)

This Document Relates to:

TERRY G. HAYES V. BAYER CORP., et al. Case No. 02-CV-00445-MJD

DEPOSITION FOR THE DEFENDANT

* * *

DEPONENT: TERRY G. HAYES

DATE: MAY 4, 2006

* * *

SARAH M. PAVEY
COULTER REPORTING, LLC
101 East Kentucky Street
Suite 200
Louisville, Kentucky 40203
(502) 582-1627
FAX: (502) 587-6299

CONTENTS

Examination by Mr. Lavery.................... 5
Reporter's Certificate........................263
EXHIBITS
Exhibit No. 1................................ 32
(Photocopy of Kentucky Personal Identification Card and Social Security card)
Exhibit No. 2................................129
(Medical records)
Exhibit No. 3................................141
(Plaintiff's Fact Sheet)
Exhibit No. 4................................142
(Plaintiff's Fact Sheet)
Exhibit No. 5................................237
(Memo to All Baycol MDL Attorneys from Plaintiff's Liaison Counsel, dated 7-26-02)
Exhibit No. 6................................238
(Letter to Terry Hayes from Ruth Weckman, dated August 24, 2005, with attachments)
Exhibit No. 7................................240
(Facsimile to "Dear Counsel" from Tina M. Olson, dated February 26, 2002, with attachments)
Exhibit No. 8................................252
(Letter to Terry Hayes from Anthony George, Jr., M.D., dated January 25, 2006)
Exhibit No. 9................................252
(Second Amended Notice of Deposition of Plaintiff Terry G. Hayes)
Plaintiff's Exhibit No. 1....................261
(Typed document of doctors' opinion)
Plaintiff's Exhibit No. 2....................261
(Document entitled A Science Perspective on the Baycol Cases, with attachments)
REQUEST
1. Mr. Lavery to witness.....................109
(Copy of police report when automobile was stolen)



APPEARANCES

FOR THE PLAINTIFF:

TERRY G. HAYES, pro se
110 Pin Oak Circle
Mount Washington, Kentucky 40047

FOR THE DEFENDANT:
DARRYL S. LAVERY
MICHAEL HENRY
Boehl, Stopher & Graves, LLP
2300 Aegon Center
400 West Market Street
Louisville, Kentucky 40202



The deposition of TERRY G. HAYES, taken in the offices of Boehl, Stopher & Graves, LLP, 2300 Aegon Center, 400 West Market Street, Louisville, Kentucky, on Thursday, the 4th day of May, 2006, at approximately 9:30 a.m.; said deposition being taken pursuant to Notice for use in accordance with the Federal Rules of Civil Procedure.

* * *

TERRY G. HAYES, after first being duly sworn, was examined and deposed as follows:

MR. LAVERY: Is there something you wanted to say?
THE WITNESS: Yes. Our previous deposition, we're working on a motion to strike it because it's premature. There was an order by the Court not to take it and they were working on it at the time he was taking it. And things in it that I discovered, I called David Hemminger and let him know because I wasn't sure about certain things. I let them know what -- I had corrected it and let them know. There was a telephone call.



MR. LAVERY: Well, we'll have to just brief that issue with the Court at a later point if you have an issue with that deposition.
THE WITNESS: I do because there was a PFO order concerning taking the plaintiff's deposition by the Court till they got through discovery of the defendants.
MR. LAVERY: All right. Well, we can just address that part later. Let's go ahead and begin your deposition now.

EXAMINATION

BY MR. LAVERY:
Q Before I start asking you questions, I want to let you know a few ground rules for the deposition. You may be familiar with some of them because you've already --
A I would like to have the right to object to questions.
Q Sure. The first is, as you see here, we have a court reporter who's going to take down everything that's said in the deposition, all of my questions, all of your answers, so it's important that when you answer my questions that you verbally

*to give me copies of the medical records, what they've paid from 2008 on, like what they paid in medications and all that.*

*Q Okay. You'll send that to us when you get it?*

*A As soon as I get it.*

*Q Okay. So Exhibit 6 will be this Medicare document that has six pages, so we'll copy that and then we'll give that back to you, and that goes in here. You want a sheet to remind you that --*

*A No. I know where it's at. I have it right there.*

*(DEPOSITION EXHIBIT NO. 6 MARKED)*

*Q What else did you say you have?*

*A This other document.*

*Q I'm going to need to see those. A lot of them we already have. I'm not getting any copies of this because I've got all this stuff.*

*A This is just a copy of one of the complaints. I believe the last page is blurred, second-to-the-last page where it has the number one on it, it's not there. It was misprinted on the original.*

*Q All right. I don't need that.*

*A These are just the authorizations that*



*have been signed. I have not had time to fax them back to him.*

*Q Okay. You want me to fax it to him?*

*A Oh, I'll fax it to him. I'll let him know. I'll send him a copy of it.*

*This is just plaintiffs' Steering stuff.*

*Q Let me see that.*

*A You should have that. That's trial information. That's just the committees.*

*Q I don't have a copy of this, so I'm going to --*

*A You'll have to contact them because we're not allowed to give that one out.*

*Q Well, you've already shown me all this stuff. I want a copy of this as the next exhibit, which is going to be Exhibit 7.*

*A I'm going to have to object to that exhibit. These documents -- this document here, you'll have to go through your -- Mr. James Mescalla, and he has to contact Deanna Dailey for a copy of this.*

*Q Well, I don't think that's true. You've said that you relied upon this --*

*A I have relied upon just the people*



*who's doing the work, pulling the paperwork.*

*Q -- for the deposition.*

*A I haven't relied on the deposition.*

*Q This is a letter February 26, 2002 to counsel from Tina Olson, paralegal at Zimmerman Reed. All I really need is --*

*A It's just a copy of plaintiffs' Steering. It's the one that broke down -- when they broke down the committee.*

*Q All right. Well, I need a copy of this for your deposition, and I'll give you the original back.*

*A All right.*

*(DEPOSITION EXHIBIT NO. 7 MARKED)*

*A These are just other things. There's nothing else in here.*

*Q Let me look at them. You showed me that. I don't need that.*

*A That's just the other one.*

*Q I don't need that. What about the other ones?*

*A You looked at this one. That's just --*

*Q I am going to need copies of these.*

*A They're personal -- I didn't rely on*



*any information.*

*Q Okay. But you said you reviewed all this.*

*A I reviewed it, which is perfectly legal, but that's confidential between me and my people. You can't have that.*

*Q You don't have -- in this case you're representing yourself; right?*

*A They're doing discovery.*

*Q Are you representing yourself?*

*A I'm representing myself, but they're doing discovery.*

*Q Do you have an attorney?*

*A I'm my attorney.*

*Q Okay. You haven't retained anybody to be your attorney?*

*A Why are they doing discovery then?*

*Q I'm not here to answer your questions. You have not hired an attorney?*

*A An objection for them documents has been noted.*

*Q Have you hired an attorney?*

*A No, but they're doing discovery. I will be talking to Zimmerman and Reed today.*

*Q All right. I want copies of these*

*letters that were attached as part of your file that relates to this litigation because the Plaintiff's Fact Sheet asks --*
*A For any documents?*
*Q Hold on. And I can quote you the information --*
*A Okay. It's not been updated yet.*
*Q The Plaintiff Fact Sheet says at the very end that we want copies of --*
*A All documents.*
*Q Hold on.*
*A Okay. I'm going to start putting these back away.*
*Q You can. Before you do that, there's a couple of other files here. We're going to get a copy. But, anyway, the Plaintiff's Fact Sheet asks for you to display all documents as part of your file relating to this matter.*
*A Will you show that to me, please? These are just subpoenas I'm working on. I'm not ready for that yet.*
*Q Can I see them? I don't necessarily have to make a copy of what's in it, but I just want to see what it is.*
*A I just started on them.*



*Q That's fine. What's the other files?*
*A About me and my personal educational file.*
*Q Let me see. I think I've already seen it.*
*A Yeah. You already have this.*
*Q You can have the educational file back.*
*A You have that.*
*Q And I have that. Okay. Let's see here. Number 9, all documents of any kind related to all the drugs you took at the time you were taking Baycol, medical records.*
*A That's not saying nothing about documents from them.*
*Q All instructions. Okay. So this file, I'm going to make a complete copy of this and you can walk to the copy machine.*
*A I'm not going to walk to it. Show me where that says it in that.*
*Q It does not say specifically what I just mentioned to you before.*
*A You cannot have it until I talk to my people, and then I'll make you a -- I'll fax you a copy.*



*Q Let me ask you, when you say talking to your people --*
*A When I talk to Zimmerman and Reed.*
*Q They're not your attorneys.*
*A They did do discovery.*
*Q Are they your attorneys?*
*A These are discovery documents.*
*Q Are they your attorneys?*
*A They're doing discovery in this case, aren't they?*
*Q My question to you, is Zimmerman Reed your attorney?*
*A Why did they supply me these documents then if they're not doing discovery?*
*Q Have you entered into a contract with --*
*A No, I have not.*
*Q Let me finish. Have you entered into any contract with Zimmerman Reed attorneys?*
*A No.*
*Q Have you retained any attorney at Zimmerman Reed to be your attorney in this case?*
*A No. Why are they doing discovery?*
*Q Let me finish my questions. Have you agreed to pay Zimmerman Reed anything that you may*



*recover in this case?*
*A They get 6 percent of anything.*
*Q Have you agreed to pay them if you obtain settlement in this case?*
*A The plaintiffs' Steering Committee gets 6 percent.*
*Q All right. Have you paid any money into the plaintiffs' Steering Committee?*
*A No, I have not.*
*Q Have you entered into any written agreement that says that if you obtain any settlement or any kind of money from this case that you are going to pay the plaintiffs' Steering Committee any amount of money or any fees?*
*A There was documents they signed. I'd have to pull the documents.*
*Q Did you sign any documents?*
*A I believe I did to them.*
*Q That said you were going to pay something?*
*A Said we pay 6 percent. They get 6 percent of any settlement amount.*
*Q For purposes of the record, I'm going to need to cite what's in those letters here so I can request them later and get an order from the Court to*

*get these if you're not agreeing to produce them now.*
*A Let me talk to them and if they tell me to produce them to you, I will fax you a copy of them.*
*Q Let me say for the record what those documents are so later I know what to request.*
*One is a August 29, 2005 letter from Charles Zimmerman.*
*A They're not in order.*
*Q Another is a September 5, 2002 letter from Charles Zimmerman; a July 21, 2003 letter from Charles Zimmerman; a February 26, 2004 letter from Robert Hopper; a June 2, 2003 letter from Charles Zimmerman; a January 14, 2004 letter from Charles Zimmerman; a February 18, 2005 letter from Jean, last name, G-E-O-P-P-I-N-G-E-R.*
*A That's not a file. That's the biopsy report.*
*Q And September 28, 2005 letter from Charlie -- Charles Zimmerman; a February 10, 2005 letter from Anthony George -- no. What is that right there?*
*A That's... When he did the gallbladder removal, he did a visual of the liver.*
*Q All right. Well, let's keep that*



*because I want to attach a copy of that.*
*A February 10, 2005 letter. I don't know who it's from. It's just one page. A letter from you to Charlie -- Charles Zimmerman.*
*A David has a copy of that.*
*Q This letter, August 7, 2005, is signed by you, Terry G. Hayes, Esquire. You're not a lawyer, are you?*
*A Esquire means other.*
*Q Esquire means other?*
*A Yeah, if you read it in the dictionary.*
*That's when I was in the nursing home.*
*Q Nursing home?*
*A Uh-huh. After I had gallbladder surgery. David was notified by phone because I had no way to send him any other documents. I called him from the nursing home.*
*Q This is a January 25, 2006 letter from Richard Lockridge and Yvonne M. Flaherty, F-L-A-H-E-R-T-Y; this is a letter dated May 5, 2004 from Charles Zimmerman; a January 22, 2004 letter from Charles Zimmerman; a December 1, 2003 letter from Stacy Hauer, H-A-U-E-R; a January 28, 2004 letter from Charles Zimmerman; a February 25, 2005*



*letter from Ronald Goldser, G-O-L-D-S-E-R; a June 2, 2003 letter from --*
*A That's just a copy.*
*Q -- Charles Zimmerman; a July 21, 2003 letter from Charles Zimmerman; and a September 11, 2002 letter from Charles Zimmerman.*
*Now, all of these letters -- maybe not all of them, but the vast majority of them are written to Dear Baycol attorney; to Dear counsel; to Dear plaintiff's counsel; Dear counsel; Dear plaintiff's counsel; plaintiff, slash, plaintiff's counsel; Dear Baycol attorney; Dear Baycol plaintiff, slash, plaintiff's counsel. You're not an attorney; right?*
*A No.*
*Q You never went to law school?*
*A No, I did not.*
*Q And these letters are written from people who are not lawyers representing you; right?*
*A Yes.*
*Q Okay.*
*MR. LAVERY: So what's -- state your basis for your objection to producing these. Or if you agree that we can copy these and you go and we give you the originals back.*



*THE WITNESS: I will -- once I talk to him --*
*MR. LAVERY: Who's "him"?*
*THE WITNESS: When I talk to the people in these letters and they say I can give them to you, I will fax you a copy. And you can give her a copy. Agreeable?*
*MR. LAVERY: Well, I want copies now.*
*THE WITNESS: I'll make an objection. Until I talk to these people -- you know, I can't do it from here. You know, these are classified documents presented by the plaintiffs' Steering Committee during the discovery. You-all should have these letters. Your-all's people, the Liaison Committee should have these letters. That's the only reason I'm making an objection. Okay? I have been cooperative any other way. Until I talk to these people, I'm not going to give these documents up. I'll be glad to give you anything else you want, but until I talk to these people...*
*MR. LAVERY: All right. Let me just place an objection to not producing the records and I will file a motion to get the records that I just stated on the record. And the basis is that these records are written to someone other than Mr. Hayes.*

Mr. Hayes is not an attorney. He's representing himself. These are letters from law firms that are not representing him, have not represented him at any time. He's never retained these attorneys. And these are all records that he said that he reviewed prior to his deposition today to prepare for his deposition, and they are discoverable. I'm asking for copies of them in the deposition, and Mr. Hayes is going to refuse to give them to me, so I'll file a motion to compel these documents. And if we have to come back to have your deposition again to discuss these documents or if there are any court fees or anything that are incurred by my client to get these documents, then I'll have to ask the Court that my client be awarded those from you for having to file a motion.

THE WITNESS: If you give me a day, I'll either get back with you and let you know what these people say in these documents and fax these documents to you directly. You have a direct fax line?

MR. LAVERY: I do.

THE WITNESS: What is that number?

MR. LAVERY: (502) 561-9400.

THE WITNESS: And I'll put attention



to you. Okay.

MR. LAVERY: I don't have any other --

THE WITNESS: You don't have any objection to that, do you?

MR. LAVERY: Well, I have an objection. I want the records now.

THE WITNESS: Well, you know --

MR. LAVERY: But if you're objecting to giving them to me, then you're objecting to giving them to me, and we'll just have to address that later.

THE WITNESS: You know, as soon as I talk to the people and they say okay supply them to you, I will supply them and fax you a copy, and you can give her -- make notations and give it to her. Is that agreeable?

MR. LAVERY: We can handle that later.

Q Let me first say, will you agree that the documents that we just went through that are in this folder that you're not going destroy --

A No, I will not destroy the documents.

Q Okay. And I've stated on the record what the letters were, who they are from, and the dates written, so we'll know --

A I know.



Q Don't destroy any of them.

A I will not destroy documents. It makes -- a crime to destroy documents.

MR. LAVERY: I don't have any other questions. The only thing that we have to do is copy those records that we've already decided --

THE WITNESS: You want a copy --

MR. LAVERY: And I want to attach a copy of the January 26, 2006 -- January 25, 2006 letter from Dr. George as the next exhibit, which is Exhibit 8.

(DEPOSITION EXHIBIT NO. 8 MARKED)

THE WITNESS: As soon as I talk to the people, I'll get back with you.

MR. LAVERY: Yes.

THE WITNESS: So you won't have to file that motion.

MR. LAVERY: Okay.

THE WITNESS: Just one other thing you don't have to file.

MR. LAVERY: Lastly, let me attach a copy of the Second Amended Notice of Deposition of Plaintiff Terry G. Hayes as Exhibit 9.

(DEPOSITION EXHIBIT NO. 9 MARKED)

THE WITNESS: Is this the



authorization form?

MR. LAVERY: Yes.

THE WITNESS: Do you have the plaintiff's Steering fact forms?

MR. LAVERY: These are the ones that I got from my paralegal for you to sign. Can you sign these while you're here?

THE WITNESS: I've already got some signed.

MR. LAVERY: Well, can you sign these?

THE WITNESS: I'll let you have these here.

MR. LAVERY: While you're here?

THE WITNESS: While I'm here.

MR. LAVERY: Okay.

THE WITNESS: And you make sure you fax them to -- what is it, your people in Chicago because that's where they're supposed to go to. He's been waiting for them.

MR. LAVERY: Let me give you -- you can give me those, but I'm probably going to need these too. I'll explain to you what these are. This is a blank authorization that says (reading from document) HIPAA compliant obligation for use and disclosure of individually identifiable health





d4824aca-06f5-458e-8c9e-cf6aaea1a3b6

# EXHIBIT 3

BOEHL STOPHER & GRAVES, LLP
AEGON CENTER
SUITE 2300
400 WEST MARKET STREET
LOUISVILLE, KENTUCKY 40202-3354
(502) 589-5980
FAX (502) 561-9400

LARRY L. JOHNSON
EDWARD H. STOPHER
NOLAN CARTER, JR.
*JEFFERSON K. STREEPEY
WESLEY G. GATLIN
PHILIP J. REVERMAN, JR.
PETER J. GLAUBER
ROBERT E. STOPHER
RAYMOND G. SMITH
WALTER E. HARDING
RONALD L. GREEN
ROBERT M. BROOKS
RICHARD L. WALTER
KIM MARTIN WILKIE
**CHARLES D. WALTER
GUILLERMO A. CARLOS
JAMES B. COOPER
‡JEFFREY L. HANSFORD
‡MATTHEW HUNTER JONES
BAYARD V. COLLIER
RICHARD W. EDWARDS
DAVID T. KLAPHEKE
**DANIEL S. STRATEMEYER
C. TOM ANDERSON

CHARLES E. LOWTHER
GRETCHEN NUNN HULLETT
ROBERT D. BOBROW
*JAMES L. FISCHER JR.
*SCOTT A. DAVIDSON
*ELIZABETH A. SCHOTT
P. KEVIN MOORE
ROD D. PAYNE
EARL L. MARTIN
TODD P. KENNEDY
WHITNI J. CANCE
DAVID W. HEMMINGER
JANICE M. ROGERS
††TIARA B. SILVERBLATT
ANGELA MCNEAL HOYER
DAVID E. CRITTENDEN
DARRYL S. LAVERY
BRADLY E. MOORE
RICHARD D. BISSELL
*FREDERICK W. REINECKE
**DIANA K. DOUGLAS
†JOHN L. GRANNAN
†CURTIS P. MOUTARDIER
NANCY E. ANDERSON
MATTHEW B. GAY

*KY & IN
**KY & IL
‡IN ONLY
††KY, NY & NJ

HERBERT P. BOEHL
(1896-1986)
JAMES M. GRAVES
(1912-1994)
A. J. DEINDOERFER
(1907-1990)
RAYMOND O. HARMON
(1918-1990)
WILLIAM M. NEWMAN, JR.
(1948-1995)

OF COUNSEL
JOSEPH E. STOPHER
GALEN J. WHITE, JR.
W.T. ADKINS

444 WEST SECOND STREET
LEXINGTON, KENTUCKY 40507-1040
(859) 252-6721
FAX (859) 253-1445

410 BROADWAY
PADUCAH, KENTUCKY 42001
(270) 442-4369
FAX (270) 442-4689

137 MAIN STREET - SUITE 200
P.O. BOX 1139
PIKEVILLE, KENTUCKY 41502
(606) 432-9670
FAX (606) 432-9680

ELSBY EAST - SUITE 204
400 PEARL STREET
NEW ALBANY, INDIANA 47150
(812) 948-5053
FAX (812) 948-9233

July 9, 2003

Terry G. Hayes
110 Pinoak Circle
Mount Washington, Kentucky 40047

**RE: <u>Terry G. Hayes, et al. v. Bayer Corporation, et al.</u>**

Dear Mr. Hayes:

Please find enclosed a copy of the Amended Notice to Take Videotaped Deposition. Your deposition is now scheduled for August 22, 2003, beginning at 10:00 a.m. in our office.

Please do not hesitate to call Mr. Hemminger if you have any questions.

Yours very truly,

Amy M. Kempf

Amy M. Kempf
Paralegal to David W. Hemminger

ak

Enclosure

BOEHL STOPHER & GRAVES, LLP
AEGON CENTER
SUITE 2300
400 WEST MARKET STREET
LOUISVILLE, KENTUCKY 40202-3354
(502) 589-5980
FAX (502) 561-9400

LARRY L. JOHNSON
EDWARD H. STOPHER
NOLAN CARTER, JR.
*JEFFERSON K. STREEPEY
WESLEY G. GATLIN
PHILIP J. REVERMAN, JR.
PETER J. GLAUBER
ROBERT E. STOPHER
RAYMOND G. SMITH
WALTER E. HARDING
RONALD L. GREEN
ROBERT M. BROOKS
RICHARD L. WALTER
KIM MARTIN WILKIE
**CHARLES D. WALTER
GUILLERMO A. CARLOS
JAMES B. COOPER
†JEFFREY L. HANSFORD
†MATTHEW HUNTER JONES
BAYARD V. COLLIER
RICHARD W. EDWARDS
DAVID T. KLAPHEKE
**DANIEL S. STRATEMEYER
C. TOM ANDERSON

CHARLES E. LOWTHER
GRETCHEN MUNN FULLETT
ROBERT D. BOBROW
*JAMES L. FISCHER, JR.
*SCOTT A. DAVIDSON
*ELIZABETH A. SCHOTT
P. KEVIN MOORE
ROD D. PAYNE
EARL L. MARTIN
TODD P. KENNEDY
WHITNI J. CAYCE
DAVID W. HEMMINGER
JANICE M. ROGERS
††TIARA B. SILVERBLATT
ANGELA MCNEAL BOYER
DAVID E. CRITTENDEN
DARRYL S. LAVERY
BRADLY E. MOORE
RICHARD D. BISSELL
*FREDERICK W. REINECKE
**DIANA K. DOUGLAS
†JOHN L. GRANNAN
†CURTIS P. MOUTARDIER
NANCY E. ANDERSON
MATTHEW B. GAY

*KY & IN
**KY & IL
†IN ONLY
††KY, NY & NJ

HERBERT F. BOEHL
(1884-1966)
JAMES M. GRAVES
(1912-1994)
A. J. DEINDOERFER
(1907-1990)
RAYMOND O. HARMON
(1918-1990)
WILLIAM M. NEWMAN, JR.
(1949-1995)

OF COUNSEL
JOSEPH E. STOPHER
GALEN J. WHITE, JR.
W.T. ADKINS

444 WEST SECOND STREET
LEXINGTON, KENTUCKY 40507-1040
(859) 252-6721
FAX (859) 253-1445

410 BROADWAY
PADUCAH, KENTUCKY 42001
(270) 442-4369
FAX (270) 442-4689

137 MAIN STREET · SUITE 200
P.O. BOX 1139
PIKEVILLE, KENTUCKY 41502
(606) 432-9670
FAX (606) 432-9880

ELSBY EAST · SUITE 204
400 PEARL STREET
NEW ALBANY, INDIANA 47150
(812) 948-5053
FAX (812) 948-9233

June 18, 2003

Terry G. Hayes
110 Pinoak Circle
Mount Washington, Kentucky 40047

**RE: Terry G. Hayes, et al. v. Bayer Corporation, et al.**

Dear Mr. Hayes:

Please find enclosed a copy of the Notice to ~~Take Videotaped~~ Deposition. Your deposition is now scheduled for October 1, 2003, beginning at 10:00 a.m. in our office.

Please do not hesitate to call Mr. Hemminger if you have any questions.

Yours very truly,

Amy M. Kempf
Paralegal to David W. Hemminger

ak

Enclosure

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | ) | MDL NO. 1431 |
| | ) | |
| | ) | (MJD/JGL) |
| This Document Relates to | ) | |
| *Terry Hayes v. Bayer Corp.* | ) | |
| | ) | Case No: 02-445 |
| | ) | |

**NOTICE TO TAKE VIDEOTAPED DEPOSITION**

Please take notice that the Defendant, by counsel, will on the 1st day of October, 2003, at 10:00 a.m. at BOEHL STOPHER & GRAVES, LLP, Aegon Center, Suite 2300, 400 West Market Street, Louisville, Kentucky 40202, will proceed to take the videotaped deposition of **TERRY HAYES**. Said deposition is to be used for all purposes provided uner the Federal Rules of Civil Procedure.

BOEHL STOPHER & GRAVES, LLP

Edward H. Stopher
David W. Hemminger
2300 Aegon Center
400 W. Market Street
Louisville, Kentucky 40202
(502) 589-5980
COUNSEL FOR DEFENDANT,
BAYER CORPORATION
(502) 589-5980

Peter W. Sipkins
Elizabeth S. Wright
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Susan A. Weber
SIDLEY AUSTIN BROWN & TODD
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Gene S. Schaerr
SIDLEY AUSTIN BROWN & WOOD
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMANS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

# EXHIBIT 4

LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
ATTORNEYS AT LAW

SUITE 2200
100 WASHINGTON AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55401-2179
TELEPHONE (612) 339-6900
FACSIMILE (612) 339-0981

SUITE 301
660 PENNSYLVANIA AVENUE, S.E.
WASHINGTON, D.C. 20003-4335
TELEPHONE (202) 544-9840
FACSIMILE (202) 544-9850

WWW.LOCKLAW.COM

ROBERT J. SCHMIT
RICHARD A. LOCKRIDGE
CHARLES N. NAUEN*
H. THEODORE GRINDAL
W. JOSEPH BRUCKNER
CHRISTOPHER K. SANDBERG
J. MICHAEL SCHWARTZ
BERT BLACK**
HARRY E. GALLAHER
WILLIAM A. GENGLER
ERIC C. TOSTRUD
ROBERT K. SHELQUIST
HENRI G. MINETTE
GREGG M. FISHBEIN
SUSAN E. ELLINGSTAD
KAREN HANSON RIEBEL
HEIDI M. SILTON

OF COUNSEL
DANIEL A. FARBER***
ELIZABETH A. SNELSON
BRADLEY W. ANDERSON
PATRICIA A. BLOODGOOD*

*ALSO ADMITTED IN WISCONSIN
**ALSO ADMITTED IN TEXAS
***ADMITTED IN WASHINGTON, D.C. ONLY

CHRISTIAN M. SANDE
SARA L. MADSEN
GREGORY J. MYERS
YVONNE M. FLAHERTY
DARLA JO BOGGS
LISA M. POLLARD****
DAVID J. ZOLL
NATHAN D. PROSSER
ELIZABETH R. ODETTE
DAVID W. ASP
R. REID LEBEAU II
CARMEN B. COPHER

****ADMITTED IN NEW YORK ONLY

GOVERNMENT RELATIONS†
DENNIS M. MCGRANN
KATHLEEN K. MICHELETTI
DOUG D. STANG
ALLYSON J. HARTLE
REBECCA K. KLETT
MARA B. HUMPHREY
MATTHEW S. SCHAFER
BRIAN M. WILLIAMS
MEGAN G. HELGE

† NON-ATTORNEY LOBBYISTS

May 26, 2006

**<u>VIA FACSIMILE AND U.S. MAIL</u>**
Darryl S. Lavery, Esq.
Boehl, Stopher & Graves, LLP
2300 Aegon Center
400 W. Market St.
Louisville, KY 40202

Re: In re Baycol MDL 1431-Terry G. Hayes v. Bayer Corp./Case No. 02-CV-00445

Dear Mr. Lavery:

It has recently come to our attention that you have received confidential and privileged documents in the above-referenced matter. These documents were apparently obtained from you at the deposition of pro se claimant, Terry G. Hayes. These documents are confidential and contain privileged attorney-client communications and/or work product protections.

All copies of these documents, as well as all notes or other work product reflecting the contents of such materials shall be immediately returned to the Plaintiff Steering Committee and deleted from any litigation-support or other databases you may have. Pursuant to Pretrial Order 99, no use shall be made of such documents during deposition or at trial, nor shall they be disclosed to anyone who was not previously given access to them.

Your prompt response is expected.

Very truly yours,
LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Richard Lockridge/brg

Richard A. Lockridge

RAL/brg
cc: Susan Weber, Esq. (via facsimile and U.S. Mail)
James Mizgala, Esq. (via facsimile and U.S. Mail)
Charles Zimmerman, Esq. (via facsimile and U.S. Mail)

357503-1

# EXHIBIT 5

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court,S.D. New York.
In re WORLDCOM, INC. SECURITIES LITIGATION
Beatrice and Justin TUTTELMAN as cotrustees of the Beatrice Tuttelman trust on their own behalf and on behalf of all others similarly situated, Plaintiffs,
v.
Bernard J. EBBERS, Scott D. Sullivan, David F. Myers, Buford Yates, Jr., James C. Allen, Judith Areen, Max E. Bobbitt, Francesco Galesi, Stiles A. Kellett, Jr., and John W. Sidgmore, Defendants.
Ina SKY, on behalf of herself and all others similarly situated, Plaintiffs,
v.
Bernard J. EBBERS, Scott D. Sullivan, David F. Myers, Buford Yates, Jr., James C. Allen, Judith Areen, Max E. Bobbitt, Francesco Galesi, Stiles A. Kellett, Jr., John W. Sidgmore and UBS AG. Defendants.
No. 02 Civ.3288 DLC, 03 Civ.1052 DLC, 03 Civ.1897 DLC.

Aug. 8, 2003.

*ORDER*

COTE, J.

***1** Plaintiffs in the above-captioned class actions allege claims arising from the purchase of GOALs notes issued by UBS AG PaineWebber ("PaineWebber") that were linked to the common stock of WorldCom, Inc. ("WorldCom") ("GOALs Actions"). The claims in the GOALs Actions arise from the same nucleus of facts surrounding the collapse of WorldCom as alleged in the *In re WorldCom, Inc. Securities Litigation* (*"Securities Litigation"* ). Plaintiffs in *Tuttelman* moved for consolidation of the GOALs Actions, for appointment as lead plaintiffs in the consolidated action and for approval of their selection of Abbey Gardy, LLP as lead counsel. Having held a conference on July 30, 2003 ("July 30 Conference") to address whether the GOALs Actions should be (1) litigated as a sub-class in the *Securities Litigation* or (2) litigated as a separate class action and consolidated for pretrial purposes, it is hereby,

ORDERED as follows:

I. CONSOLIDATION

1. *Tuttelman* and *Sky* are consolidated for all purposes pursuant to Rule 42(a), Fed.R.Civ.P. They shall be referred to collectively as *In re PaineWebber GOALs Securities Litigation,* Master File No. 03 Civ. 1052(DLC) (*"GOALs Litigation"* ).

2. The *GOALs Litigation* shall be consolidated with the *Securities Litigation* under the Master File No. 02 Civ. 3288 for pretrial purposes only.

3. No action taken hereunder shall have the effect of making any person, firm or corporation a party to any action in which the person or entity has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

II. MASTER DOCKET AND SEPARATE ACTION DOCKETS

4. A Master Docket is hereby established for the consolidated proceedings in the actions consolidated herein and any other actions subsequently consolidated with them either for all purposes or for pretrial purposes (the "Consolidated GOALs Actions"). Entries in said Master Docket shall be applicable to the Consolidated GOALs Actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

5. When a pleading is filed and the caption, pursuant to this Order, shows that it is applicable to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket. No further copies need be filed nor other docket entries made.

6. When a pleading or paper is filed and the caption shows that it is applicable to less than All Actions, the Clerk shall file the original of the paper in the Master File and a copy in the file of each separate action to which it applies and shall note such filing in the Master Docket and in the docket of each such separate action. The party filing such paper shall supply the Clerk with sufficient copies of any paper to permit compliance with this paragraph.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

III. NEWLY FILED OR TRANSFERRED ACTIONS

7. When an action that relates to the same subject matter as the Consolidated GOALs Actions is hereafter filed in or transferred to this Court and assigned to the undersigned, it shall be consolidated with these actions in the same manner as the cases identified in Section I above (provided that any case transferred to this Court solely for pretrial proceedings shall be consolidated only to that extent absent further order of this Court), except as provided below, and the Clerk of Court shall:
***2** a. File a copy of this Order in the separate file for such action; and
b. Make an appropriate entry in the Master Docket.

8. Any defendant who has notice of the filing in or transfer to this Court of a related case shall
a. Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case; and
b. File a notice of service of this Order with the Clerk of Court to be docketed and filed in the Master File.

9. The Court requests the assistance of counsel in calling to the attention of the Clerk the filing or transfer of any case which might properly be consolidated with these actions.

IV. APPLICATION OF THIS ORDER TO SUBSEQUENT CASES

10. This Order shall apply to each action brought alleging claims arising from the purchase or sale of PaineWebber GOALs and assigned to the undersigned which is subsequently filed in or transferred to this Court, and which is assigned to the undersigned unless a party objecting to the consolidation of that action or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk mails a copy of this Order to counsel for that party. The provisions of this Order shall apply to such action pending the Court's ruling on the application.

11. Unless a plaintiff in a subsequently filed or transferred case is permitted by the Court to use a separate complaint, defendants shall not be required to answer, plead or otherwise move with respect to that complaint in any such case. If a plaintiff in any such case is permitted to use a separate complaint, each defendant shall have thirty days from the date the Court grants such permission within which to answer, plead or otherwise move with respect to any such complaint.

V. CAPTIONS

12. Every pleading filed in the Consolidated GOALs Actions, and in any separate action included therein, shall bear the following caption:

13. When a pleading is intended to be applicable to all actions to which this Order applies, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption. When a pleading is intended to apply only to less than all of such actions, the docket number for each individual action to which it is intended to apply and the name of the plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption.

VI. LEAD PLAINTIFF; LEAD PLAINTIFF'S COUNSEL

14. There being no opposition, Beatrice and Justin Tuttelman and Ronald Aubert are hereby appointed Lead Plaintiffs for the Consolidated GOALs Actions.

15. There being no opposition, Abbey Gardy, LLP shall serve as Lead Counsel for all plaintiffs in the Consolidated GOALs Actions ("GOALs Lead Counsel").

16. GOALs Lead Counsel shall have the following responsibilities:
a. Sign any consolidated complaint, motions, briefs, discovery requests, objections, or notices on behalf of all plaintiffs in the Consolidated GOALs Actions or those plaintiffs in the Consolidated GOALs Actions filing the particular papers.
***3** b. Conduct all pretrial proceedings on behalf of plaintiffs in the Consolidated GOALs Actions.
c. Brief and argue motions.
d. Initiate and conduct any discovery that is unique to the Consolidated GOALs Actions.
e. Speak on behalf of plaintiffs in the Consolidated GOALs Actions at any pretrial conference.
f. Employ and consult with experts.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

g. Conduct settlement negotiations with defense counsel on behalf of plaintiffs in the Consolidated GOALs Actions.
h. Call meetings of plaintiffs' counsel.
i. Distribute to all plaintiffs' counsel in the Consolidated GOALs Actions copies of all notices, orders, and decisions of the Court; maintain an up-to-date list of counsel available to all plaintiffs' counsel on request; keep a complete file of all papers and discovery materials filed or generated in the Consolidated GOALs Actions which shall be available to all plaintiffs' counsel in the Consolidated GOALs Actions at reasonable hours.

VII. SCHEDULE

17. As discussed at the July 30 Conference, a consolidated amended complaint for the Consolidated GOALs Actions shall be filed by August 22, 2003.

18. Defendants shall have no obligation to move, answer, or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them. Any defendant named in the Complaint filed in the *Securities Litigation* shall have no obligation to answer or move with respect to the consolidated amended complaint in the *GOALs Litigation* until further Order of this Court.

VIII. COORDINATION

19. As discussed at the July 30 Conference, GOALs Lead Counsel and co-Lead Counsel in the *Securities Litigation* shall coordinate the *GOALs Litigation* with the *Securities Litigation,* including by coordinating discovery matters such as the production of documents and the taking of depositions.

20. Co-Lead Counsel in the *Securities Litigation* shall have the following obligations:
a. Keep GOALs Lead Counsel informed about discovery matters and other issues and proceedings of common interest in the *Securities Litigation* and the Consolidated GOALs Actions.
b. Consult with GOALs Lead Counsel to obtain the views of plaintiffs' counsel in the Consolidated GOALs Actions on proposed document requests, interrogatories, requests for admissions, depositions, and litigation strategy, and incorporate those views wherever it is appropriate to do so.
c. Should counsel in the Consolidated GOALs Actions identify in connection with a deposition being taken by co-Lead Counsel in the *Securities Litigation* any discovery that is unique to the Consolidated GOALs Actions, co-Lead Counsel in the *Securities Litigation* shall devise a process through consultation with GOALs Lead Counsel to permit an attorney from the Consolidated GOALs Actions to participate in the taking of each such deposition.

IX. SERVICE

21. Service by defendants of pleadings and all other papers on GOALs Lead Counsel shall be deemed sufficient service in the Consolidated GOALs Actions.

X. RESTRICTIONS

***4** 22. GOALs Lead Counsel may not contact defense counsel regarding discovery without the consent of co-Lead Counsel in the *Securities Litigation* or, in the absence of such permission, leave of the Court.

23. GOALs Lead Counsel may seek relief from these restrictions and from any of the provisions of this Order by application to the Court upon a showing of good cause. A showing of good cause regarding discovery issues includes a showing that the discovery issue is unique to the Consolidated GOALs Actions.

XI. FUTURE ORDERS

24. All parties are required to check the Court's website on a daily basis in order to obtain notice of any further orders issued by the Court with respect to the *Securities Litigation*. The Court's website is available at < www.nysd.uscourts.gov > through the "CourtWeb" icon. Orders may be found by entering the name "WorldCom" in the "caption search" option. Orders will be listed under the master docket number, No. 02 Civ. 3288.

XII. DISCOVERY

25. All discovery obtained in the Consolidated GOALs Actions may be shared with plaintiffs in the *Securities Litigation*. All discovery obtained by any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

defendant in the Consolidated GOALs Actions may be shared with any other defendant.

XIII. PRIVILEGE

26. Cooperation by and among counsel is essential for the orderly and expeditious resolution of this litigation. Accordingly, the communication of information among and between Lead Counsel in the *Securities Litigation,* Liaison Counsel and counsel in the Individual Actions, and GOALs Lead Counsel, and among and between defendants' counsel shall not be deemed a waiver of the attorney-client privilege or the attorney work product doctrine.

XIV. RIGHT TO BE HEARD BY THE COURT

27. All counsel shall use their best efforts to avoid duplication, inefficiency and inconvenience to the Court, other parties, other counsel and witnesses. Nothing stated herein, however, shall be construed to diminish the right of any party to be heard by the Court on matters that are not susceptible to joint or common action, or as to which there is a genuine disagreement among counsel.

SO ORDERED:

S.D.N.Y.,2003.
In re Worldcom, Inc. Securities Litigation
Not Reported in F.Supp.2d, 2003 WL 21872391 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

. 2005 WL 3775771 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Arthur Andersen LLP, Mark Schoppet, and Melvin Dick in Support Their Motion to Dismiss (Aug. 19, 2005)
. 2004 WL 2973886 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion Concerning Class Representation and Creation of Subclasses (Feb. 24, 2004)
. 2004 WL 2973917 (Trial Pleading) Reply Brief in Support of Certain Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of Their Amended Complaints to Their Original Timely Filed Complaints (Feb. 24, 2004)
. 2004 WL 368780 (Trial Motion, Memorandum and Affidavit) The Worldcom Directors' Opposition to Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of their Amended Complaints to their Original Timely-Filed Complaints (Feb. 17, 2004)
. 2003 WL 23474908 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)
. 2003 WL 23671666 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)
. 2003 WL 23951686 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the Worldcom Directors (Dec. 15, 2003)
. 2003 WL 23474886 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)
. 2003 WL 23671658 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)
. 2003 WL 23671651 (Trial Pleading) Corrected First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fu nd, on Behalf of Purchasers and Acquirers of All Worldcom, Inc. Publicly Traded Securities (Dec. 01, 2003)
. 2003 WL 23474903 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)
. 2003 WL 23671607 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)
. 2003 WL 23474870 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474877 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474879 (Trial Pleading) Answer of Defendant ABN/AMRO Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474880 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

. 2003 WL 23474881 (Trial Pleading) Answer of Defendant BNP Paribas Securities Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474882 (Trial Pleading) Answer to First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Oct. 14, 2003)
. 2003 WL 23474883 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474884 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474885 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474909 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474910 (Trial Pleading) Answer of Defendant J.P. Morgan Chase & Co. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23474911 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671611 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671613 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671616 (Trial Pleading) Answer of Defendant BNP Paribas Securities Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671618 (Trial Pleading) Answer to First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Oct. 14, 2003)
. 2003 WL 23671620 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671623 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671625 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671628 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671632 (Trial Pleading) Answer of Defendant ABN/AMRO Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671637 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671643 (Trial Pleading) Answer of Defendant J.P. Morgan Chase & Co. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)
. 2003 WL 23671646 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

# EXHIBIT 6

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court,D. Maine.
In re NEW MOTOR VEHICLES CANADIAN EXPORT ANTITRUST LITIGATION
No. MDL 1532.

Nov. 17, 2003.

Robert S. Frank, Harvey & Frank, Portland, ME, for Plaintiffs.
William J. Kayatta, Jr., Pierce Atwood, Portland, ME, for Defendants.

FURTHER ORDER CONCERNING COUNSEL'S RESPONSIBILITIES

HORNBY, J.

***1** Plaintiffs' counsel in the Consolidated Actions have agreed upon an organizational structure for the management of those Consolidated Actions. Defendants' counsel have conferred with each other and with plaintiffs' counsel concerning certain matters related to the efficient conduct of this action. The Court, having being advised of the parties' agreement as set forth herein, enters the following Order.

1. *Organization of Plaintiffs' Counsel in the Consolidated Actions*. The organizational structure of plaintiffs' counsel established in this Order shall bind plaintiffs' counsel in the Consolidated Actions, including any additional action subsequently governed by this Order.

A. Plaintiffs' Executive Committee Chair and Vice-Chair.

*(1)* The Chair and Vice-Chair shall be the contact between defendants' counsel and counsel for plaintiffs in the Consolidated Actions. An agreement reached with plaintiffs' Chair and Vice-Chair shall be binding on all other plaintiffs' counsel in the Consolidated Actions.

*(2)* Except as the Court's electronic case filing system provides service to everyone, the Chair and the Vice-Chair of the Plaintiffs' Executive Committee are designated as the counsel for plaintiffs in the Consolidated Actions upon whom all notices, orders, pleadings, motions, discovery and memoranda relating to the Consolidated Actions shall be served, and defendants shall effect service of papers on plaintiffs in the Consolidated Actions by serving the Chair and the Vice-Chair. Except as the Court's electronic case filing system provides service to everyone, the Chair and the Vice-Chair shall forward any notices from the Court and report upon any communications to other plaintiffs' counsel as appropriate and shall effect service of papers on other counsel by: (a) overnight mail service; (b) fax machine/telecopier; (c) hand delivery; or (d) electronic service.

*(3)* The Chair and the Vice-Chair shall have sole authority over the following matters on behalf of all plaintiffs: (a) the initiation, response, scheduling, briefing and arguing of all motions; (b) the scope, order and conduct of all discovery proceedings; (c) such work assignments to other plaintiffs' counsel as they may deem appropriate; (d) designation of which attorneys may appear at hearings; (e) the timing and substance of any settlement negotiation with any defendant; and (f) other matters concerning the prosecution of the cases.

*(4)* No motion may be initiated or filed on behalf of any plaintiff except through the Chair and Vice-Chair.

*(5)* The Chair and Vice-Chair shall have sole authority to communicate with defendants' counsel and the Court on behalf of all plaintiffs, unless that authority is expressly delegated to other counsel. Defendants may rely on all agreements made with the Chair and Vice-Chair and such agreements shall be binding to all other plaintiffs' counsel.

B. Liaison Counsel. The law firm of Harvey & Frank, Two City Center, P.O. Box 126, Portland, ME 04112, shall act as liaison counsel for plaintiffs and shall have the following responsibilities:

***2** *(1)* to coordinate activities and tasks performed, under the supervision of the Chair and/or Vice-Chair of the Plaintiffs' Executive Committee, by the Plaintiffs' Executive Committee to facilitate the orderly and efficient prosecution of this litigation;

*(2)* to maintain and distribute to the Court, to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

counsel for the plaintiffs and to counsel for the defendants an up-to-date and comprehensive service list;

*(3)* to speak for plaintiffs and plaintiffs' counsel in the Consolidated Actions, under the supervision of the Chair and/or Vice-Chair of the Plaintiffs' Executive Committee and in consultation with Plaintiffs' Executive Committee, regarding pretrial proceedings, settlement negotiations, trial preparation and trial; and

*(4)* those duties as set forth in the Court's Order of October 7, 2003, appointing liaison counsel and in ¶ 7 of the Court's Order of July 31, 2003, governing practice and procedure in this matter, as well as those duties set forth in any subsequent order or other instruction of the Court.

C. Plaintiffs' Executive Committee. Plaintiffs' Executive Committee shall have the duties and responsibilities directed to them by and under the supervision of the Chair and Vice-Chair of Plaintiffs' Executive Committee to:

*(1)* assist in the coordination of the initiation and conduct of discovery proceedings, including requests for production of documents, written interrogatories, requests for admissions, depositions and/or third-party subpoenas, or any other forms of discovery provided for under the Federal Rules of Civil Procedure;

*(2)* assist with the preparation for trial in these matters as may be required by the Chair and Vice-Chair and in such a manner as to lead to the orderly and efficient prosecution of the Consolidated Actions and to avoid duplicative or unproductive effort;

*(3)* make reasonable contribution of time and funds to prosecute the litigation; and

*(4)* perform such duties as may be necessary and appropriate for proper coordination of pretrial activities as determined by the Chair and/or Vice-Chair or as may be authorized by order of the Court.

*(5)* Remaining plaintiffs' counsel (those not designated as members of the Executive Committee) will have opportunity and responsibility for substantial work in the Consolidated Actions as directed by the Chair, Vice-Chair or Executive Committee.

*(6) Time Records.* The Chair and Vice-Chair shall be responsible for coordinating the activities of plaintiffs and their counsel during pretrial proceedings, and shall monitor the activities of co-counsel to assure that schedules are met and unnecessary expenditure of time and expenses are avoided. All plaintiffs' counsel shall keep contemporaneous time records and shall submit the records monthly to the Vice-Chair, no later than the 15th of every month following the reporting month. All plaintiffs' counsel shall submit periodic summaries of time and expense records to the Vice-Chair. No attorney fee award shall be made for time and expenses unless reports are timely filed with the Vice-Chair. Similarly, no attorney fee award will be made for time or expenses not authorized by the Chair or Vice-Chair or for time and expenses incurred in the review of briefs or other written material unless such review is necessary for the performance of substantive work in the litigation.

***3** 2. *Defendants' Liaison Counsel.* Defendants' liaison counsel shall have the responsibilities set forth in ¶ 7 of the Court's Order of July 31, 2003, governing practice and procedure in this matter, and Order of October 7, 2003, appointing liaison counsel.

3. *Application of this Order to Subsequent Cases.* This Order shall apply to any new case that arises out of the subject matter of the Consolidated Actions and that is filed in this Court, or transferred to this Court, unless a party in such newly-filed or transferred action objects to any provision of this Order within ten (10) days of the date upon which a copy of this Order is served on counsel for such party. Such objection shall be made by filing an application for relief, and relief from this Order shall be granted only if the Court deems it appropriate to grant such application.

4. *Communication Among Counsel and Retention of Rights.* The parties and the Court recognize that cooperation by and among counsel is essential for the orderly and efficient resolution of this litigation. The communication, to the extent provided by applicable law, of information (i) among and between plaintiffs' counsel, and (ii) among and between defendants' counsel shall not be deemed a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

waiver of the attorney-client privilege or the protection afforded attorneys' work product, and shall not be used against any plaintiff by any defendant or against any defendant by any plaintiff. Nothing contained in this Order shall be construed to limit the rights of any party or counsel to assert the attorney-client privilege or the attorney work product doctrine.

In addition, nothing in this Order, including the participation of counsel for defendants, shall be deemed to waive or otherwise affect any argument, defense or right available to defendants, including the right to challenge the Court's jurisdiction over this matter or over any of the listed defendants.

So Ordered.

D.Me.,2003.
In re New Motor Vehicles Canadian Export Antitrust Litigation
Not Reported in F.Supp.2d, 2003 WL 22709626 (D.Me.)

Briefs and Other Related Documents (Back to top)

. 2004 WL 736965 (Appellate Brief) Daimlerchrysler Canada, Inc. and Mercedes-Benz Canada, Inc.'s Joint Motion to Amend Order to Certify for Interlocutory Appellate Review (Mar. 18, 2004)
. 2:03md01532 (Docket) (Jul. 10, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

# EXHIBIT 7

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Ronald B. WESLEY,
v.
Donald T. VAUGHN, et al.
Nos. CIV. A. 99-1228, CIV. A. 99-1229.

July 10, 2001.

*MEMORANDUM ORDER*

KELLY.

*1 Presently before the Court are the Motions for Clarification, to Dismiss and for Summary Judgment filed by the Defendants, Defendants Donald T. Vaughn ("Vaughn"), William D. Conrad ("Conrad"), Tyrone Reddick ("Reddick"), Eric Thompson ("Thompson"), James Yankura ("Yankura"), Robert Cavalari ("Cavalari") and Richard Eldridge ("Eldridge") (collectively referred to as the "Defendants"). In this case, the Plaintiff, Ronald B. Wesley ("Wesley"), sued the Defendants for various violations of federal law. The Defendants recently filed the instant Motions. Wesley, who is currently proceeding pro se,FN1 did not respond to them. For the following reasons, the Motion for Clarification will be granted, while the Motions to Dismiss and for Summary Judgment will be denied.

FN1. Wesley has had at least two court appointed attorneys that have represented him at different stages of this case, but for various reasons became dissatisfied with their legal assistance. Although the Court directed the Clerk of Court on June 5, 2001, to find another attorney to represent Wesley, those efforts have not yet been fruitful.

The Defendants' Motion for Clarification asks the Court to amend its Order of March 22, 2001. Specifically, the Defendants ask the Court to amend its statement that Wesley's "claim under 42 U.S.C. § 1983 for violations of the ADA remain intact." The Defendants correctly note that, while Wesley's ADA claims remain intact, the Court's Order of February 28, 2001 found that Wesley's claims under § 1983 for violations of the ADA did not survive the Defendants' Renewed Motion for Summary Judgment. The Court will therefore amend its Order of March 22, 2001, to correctly reflect its Order of February 28, 2001.

The Defendants' Motions to Dismiss and for Summary Judgment, however, will be denied. These Motions are merely photostatic copies of motions previously filed with and ruled on by this Court. On June 7, 2001, the Defendants filed a Motion to Dismiss, document number 51, which was an exact photostatic reproduction of a motion to dismiss that they filed on August 6, 1999. The Court ruled on that original motion on November 18, 1999. Also on June 7, 2001, the Defendants filed a Motion for Summary Judgment, document number 53, which is an exact reproduction of a motion for summary judgment that the Defendants had filed on April 10, 2000. The Court ruled on that original motion on May 3, 2000. FN2

FN2. Interestingly, the Defendants did not file a copy of their more recent Renewed Motion for Summary Judgment, which they filed on August 1, 2000.

At best, the Defendants filed these new Motions accidentally. At worst, they filed them in order to take advantage of an unsophisticated pro se opponent and to gain a second bite at the apple in the hopes that the Court did not recognize that these Motions had been filed once before. If such were the case, the Defendants would run afoul of the law of the case doctrine and would subject themselves, and their counsel, to possible sanctions pursuant to Federal Rule of Civil Procedure 11. The Court will, however, give the Defendants the benefit of the doubt in this first instance, and treat these Motions simply as motions for reconsideration.

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(g) of the United States District Court for the Eastern District of Pennsylvania allow parties to file motions for reconsideration or amendment of a judgment. Fed.R.Civ.P. 59(e); E.D. Pa. R. Civ. P. 7.1(g). Courts should grant these motions sparingly, however, reserving them for instances when: (1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there is a need to prevent manifest injustice or correct a clear error of law or fact. *See, e.g., General Instrument Corp. v. Nu-Tek*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

*Electronics,* 3 F.Supp.2d 602, 606 (E.D.Pa.1998), *aff'd,* 197 F.3d 83 (3d Cir.1999); *Environ Prods., Inc. v. Total Containment, Inc.,* 951 F.Supp. 57, 62 n. 1 (E.D.Pa.1996). Mere dissatisfaction with the Court's ruling is not a proper basis for reconsideration. *Burger King Corp. v. New England Hood and Duct Cleaning Co.,* No. 98-3610, 2000 WL 133756 at *2 (E.D.Pa. Feb.4, 2000).

In the instant case, because the new Motions to Dismiss and for Summary Judgment are simply reproductions of earlier motions, they do not identify a change in controlling law, the discovery of new evidence, or the presence of a manifest error of law or fact in the Court's disposition of the originally filed motions. Nor do they present any other reason why the Court should alter its disposition of those earlier motions. Accordingly, they could only have been filed because of the Defendants' dissatisfaction with the Court's previous rulings. These Motions will therefore be denied.FN3

FN3. In the alternative, these Motions could be dismissed because their certificates of service are also photostatic reproductions of the earlier certificates of service, which violates both the Federal and Local Rules of Civil Procedure. *See* Fed.R.Civ.P. 5(d) ("All papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court...."); E.D. Pa. R. Civ. P. 7.1(d) ("Every motion not certified as uncontested shall be accompanied by a written statement as to the date and manner of service of the motion and supporting brief.").

***2** Accordingly, it is ORDERED that:
1. The Defendants' Motion for Clarification (Doc. No. 40) is GRANTED. The third full sentence of the second page of the Court's Order of March 22, 2001, shall be AMENDED to read: "Although many of Wesley's claims did not survive the Defendants' Motion to Dismiss and Motion for Summary Judgment, his claim for injunctive relief under the ADA remains intact."
2. The Defendants' Motion to Dismiss (Doc. No. 51) is DENIED.
3. The Defendants' Motion for Summary Judgment (Doc. No. 53) is DENIED.

E.D.Pa.,2001.

Wesley v. Vaughn
Not Reported in F.Supp.2d, 2001 WL 793260 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

. 2:99cv01229 (Docket) (Mar. 10, 1999)
. 2:99cv01228 (Docket) (Mar. 10, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

# EXHIBIT 8

**C**

Only the Westlaw citation is currently available.
CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Second District, Montgomery County.
Jacqueline M. LOGES, Plaintiff-Appellant,
v.
Teresa ENGLAND, Defendant-Appellee.
No. 15606.

Oct. 25, 1996.

Jacquelyn M. Loges, Pittsburgh, PA.
Steven M. Runge, Franklin, OH.

OPINION

GRADY, J.

*1 Plaintiff Jacqueline M. Loges appeals from an order of the Municipal Court of Miamisburg granting her a judgment of $873.73 against Defendant Teresa England. The judgment was on Loges' claim for unpaid rent and damage committed by England to a residential property that England had rented from Loges. England has not filed a brief.

Loges argues on appeal that the trial court erred when it deducted $600 from the amount of a judgment that its magistrate had recommended. The $600 represents the amount a deposit that England had paid to Loges when the property was rented.

It is undisputed that the unpaid rent that Loges is owed totals $1,020.00. The dispute concerns the additional amount England owes for damage to the property.

Loges testified that the parties agreed that England would pay Loges $445.73 for the damages, an amount which represents the cost of the repairs required less the $600 that England had given Loges as a deposit. No other evidence was presented by either side concerning the amount of the damages owed. The magistrate recommended a judgment for the sum of the unpaid rent, $1,020.00, plus the amount of the liquidated damages, $445.73, a total of $1,465.73.

England filed an objection to the magistrate's decision, claiming that the magistrate failed to credit the $600 deposit that England had paid against the amount she now owed. Loges responded, arguing that the parties had applied the $600 deposit against the amount due for damages to arrive at the net amount due, $445.73. The trial court sustained England's objection and entered a judgment for Loges in the amount of $873.73.

Loges filed a timely notice of appeal. She argues that the trial court erred when it deducted $600 from the amount of damages that the magistrate recommended.

A magistrate is but an arm of the court, and while the magistrate's decision carries a presumption of correctness the trial court is not required to adopt it. In any matter referred to a magistrate pursuant to Civ.R. 53 the court must make its own independent review of the record before it enters a judgment on the claims for relief presented. Division(E)(4)(a) of Civ.R. 53 provides that after that review the court *may* adopt the magistrate's decision as its own order, absent objections filed by one of the parties. If objections are filed, the court must rule on them as a part of its independent review, but it must perform that review nonetheless. The court's review of the record is *de novo;* no standard of review is imposed by Civ.R. 53. Therefore, the power of the court to adopt, reject, or modify the decision of the magistrate or any findings or conclusions that the magistrate enters, in whole or in part, is a plenary power.

Loges has appeared throughout this matter *pro se.* Since her testimony before the magistrate, all of her statements and recitations to the trial court have been in writing. While they obviously were prepared in a careful and thoughtful manner, they fail in some respects to focus the attention of the reader on the precise issues of fact and law to be decided.

*2 The argument that Loges presents on appeal is, in terms with which we are more accustomed, that the judgment of the trial court is against the manifest weight of the evidence. That presents a difficult burden for an appellant because an appellate court cannot reverse the judgment of a trial court on that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

basis if there is some competent, credible evidence supporting the trial court's judgment or whatever part of it is in issue. *C.E. Morris Company v. Foley Construction Co.* (1978), 54 Ohio St.2d 279. This standard rests on a strong presumption that the judgment of the trial court was correct, because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80 . This distinction may have less application when the trial judge has committed those functions to a magistrate, but the presumption that the trial court was correct in its judgment exists, nonetheless.

Applying the foregoing proposition to the record before us, we must find that the judgment of the trial court was against the manifest weight of the evidence. The *only* evidence before the trial court was that the parties had applied the $600 deposit against the cost of the repairs to the premises to agree that the net amount due to Loges by England on that basis is $445.73. Therefore, the judgment that England was yet due a credit of $600 against the combined amount of rent and net liquidated damages is against the manifest weight of the evidence, and it must be reversed.

It appears from the record that the trial court was led to commit this error by the objections to the magistrate's decision filed on England's behalf by her trial counsel, which argued that another $600 credit was due. There was no evidence to support that assertion, and counsel could not have had a good faith belief that there was. It appears to be an effort to take advantage of Loges *pro se* appearance and to mislead a busy and conscientious trial court. On remand, the court may wish to consider whether Civ.R. 11 sanctions should be imposed.

The assignment of error is sustained. The judgment of the trial court will be reversed and the matter will be remanded to the trial court to enter a judgment in favor of Plaintiff-Appellant Jacqueline M. Loges in the amount of $1,465.73, plus interest and costs.

FAIN, J. and YOUNG, J., concur.
Ohio App. 2 Dist.,1996.
Loges v. England
Not Reported in N.E.2d, 1996 WL 631399 (Ohio App. 2 Dist.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

# EXHIBIT 9

**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
In re ST. JUDE MEDICAL, INC., SILZONE HEART VALVES PRODUCTS LIABILITY LITIGATION
No. MDL 1396.

March 1, 2002.

PRETRIAL ORDER NO. 7 PRESERVATION OF DOCUMENTS

TUNHEIM, District J.

A. Brief Background

***1** On August 22, 2001, this Court issued Order No. 1 (Setting Initial Conference) in the Silzone Heart Valves Products Liability Litigation. One of the issues Order No. 1 addresses is preservation of documents and records that contain information potentially relevant to the subject matter of this litigation. This Order provides additional directions for preserving documents to all parties, and it supplements Order No. 1.

B. Scope

Like Order No. 1, this order pertains to the preservation of documents that contain information potentially relevant to the subject matter of this litigation. Including "office suite" type applications, emails, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated if necessary, through detection or computer devices into reasonably usable forms.

This Order pertains only to preservation and nothing in this Order shall be construed to affect the discoverability or admissibility of any document. All objections to discoverability or admissibility are maintained and may be asserted at any time.

C. Preservation Obligations

1. Preservation of St. Jude Medical's Newly Created Documents

The obligation to preserve documents (including but not limited to electronic data and e-mail) created subsequent to the effective date of this Order ("newly created documents") extends only to documents that relate to any of the following subjects:

a) The regulatory status of Silzone(R) coated heart valves;
b) The collection and/or reporting of adverse events occurring in patients who have received Silzone(R) coated heart valves;
c) Clinical studies involving patients who received Silzone(R) coated heart valves; and
d) Claims or litigation relating to Silzone heart valve or Silzone prosthetic products.

The duty to preserve newly created documents shall not extend to (a) documents that have been generated during the course of any litigation concerning Silzone(R) which are protected by the attorney client privilege or work product doctrine, including, but not limited to, briefs, motions, legal or factual memoranda, notes, correspondence or other similar materials; (b) draft documents and interim versions of documents if those documents would not have been preserved in the ordinary course of business, except for those documents which contain handwritten notes by persons other than the author; and (c) multiple identical copies of a document, including photocopies and electronically-stored data so long as the original document, or an identical copy, remain in a party's possession, custody or control.

2. Backups of Electronic Data

a. While this litigation is pending, the parties shall preserve electronic documents in their possession, custody or control that contain information potentially relevant to the subject matter of this litigation. Each party is obligated to notify its agents and third party document repositories, who may have such information in their possession, of this Order.

***2** b. Pretrial Order No. 1 is hereby modified to prohibit the routine erasure of computerized information potentially relevant to the subject matter of this litigation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

c. The full and complete back-up of any server or other computer on a periodic basis (e.g.monthly) shall relieve the party of any obligation to maintain any interim back-ups of the same server or other computer.

IT IS SO ORDERED:

D.Minn.,2002.
In re St. Jude Medical, Inc.
Not Reported in F.Supp.2d, 2002 WL 341019 (D.Minn.)

Briefs and Other Related Documents (Back to top)

. 2006 WL 211707 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Renewed Motion to Certify Consumer Protection Class (Jan. 10, 2006)
. 2004 WL 1837104 (Trial Filing) Transcript of the stenographic notes of the proceedings in the above-entitled matter, as taken by and before Linda M. Hoffmann, a Certified Shorthand Reporter and Notary Public, held at the office of Reed Smith, LLP, 599 Lexington Avenue, New York, N ew York, on Friday, May 14, 2004, commencing at 9:00 in the forenoon (May. 14, 2004)
. 2004 WL 884534 (Trial Motion, Memorandum and Affidavit) St. Jude Medical's Opposition to Plaintiffs' Proposed Class Notice and Request for Stay of Issuance of Notice (Apr. 12, 2004)
. 2004 WL 884537 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to St. Jude Medical's Application for Order Certifying Order Re Preemption for Interlocutory Appeal (Apr. 12, 2004)
. 2004 WL 884536 (Trial Motion, Memorandum and Affidavit) St. Jude Medical's Application for Order Certifying Order Re Preemption for Interlocutory Appeal (Mar. 31, 2004)
. 2004 WL 884535 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion to Decertify (Mar. 29, 2004)
. 2004 WL 305806 (Trial Deposition and Discovery) Joint Status Conference Report (Feb. 12, 2004)
. 2004 WL 764656 (Trial Filing) Joint Status Conference Report (Jan. 01, 2004)
. 2003 WL 23469883 (Trial Motion, Memorandum and Affidavit) St. Jude Medical's Motion to Decertify Plaintiffs' Consumer Fraud Class (Mar. 09, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10

NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA8 Rule 28A, FI CTA8 IOP and FI CTA8 APP. I for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Eighth Circuit.
Douglas BEMIS, Appellant,
v.
UNITED STATES of America, Appellee.
No. 96-1546.

Submitted Sept. 20, 1996.
Filed: September 30, 1996

Appeal from the United States District Court for the Western District of Missouri.
AFFIRMED IN PART, REVERSED IN PART.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

PER CURIAM.
***1** Douglas Bemis appeals from the District Court's FN1 denial of his 28 U.S.C. § 2255 (1994) motion without an evidentiary hearing. We affirm as to most of Bemis's claims, but remand for an evidentiary hearing on Bemis's claim that his sentencing counsel had a conflict of interest.

FN1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

In November 1989, Bemis pleaded guilty to conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (1994), and to laundering money, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i), (a)(1)(B)(i), and (a)(1)(B)(ii) (1994). The District Court FN2 sentenced him to two concurrent terms of 168 months imprisonment. On direct appeal, we affirmed. *United States v. Bemis*, No. 90-1458, slip op. (unpublished per curiam).

FN2. The Honorable William R. Collinson, late a United States District Judge for the Western District of Missouri.

In June 1995, Bemis filed the instant section 2255 motion, which the District Court summarily denied. We will affirm the District Court only if, upon *de novo* review, we are persuaded that " 'the motion and the files and records of the case conclusively show that [Bemis] is entitled to no relief.' " *See Holloway v. United States*, 960 F.2d 1348, 1351 (8th Cir.1992) (quoting 28 U.S.C. § 2255). We address each of Bemis's claims in turn.

First, Bemis contends that his convictions together with civil forfeitures of his property violated the Double Jeopardy Clause's prohibition against multiple punishments for the same offense. We conclude, however, that this claim is foreclosed by *United States v. Ursery*, 116 S.Ct. 2135, 2147-49 (1996), and *United States v. One 1970 36.9' Columbia Sailing Boat*, 91 F.3d 1053, 1056-57 (8th Cir.1996).

Second, Bemis argues that his attorney was constitutionally ineffective, because he incorrectly advised Bemis regarding Bemis's likely Guidelines sentence and failed to move to withdraw Bemis's guilty plea after learning that the presentence report recommended a higher Guidelines sentence. It is unnecessary to reach a decision as to his attorney's competency because we conclude that Bemis failed to establish prejudice. A challenge to a guilty plea on the grounds of ineffective assistance of counsel requires a showing of reasonable probability that, but for counsel's errors, an individual would not have pleaded guilty and instead would have insisted on going to trial. *See Schone v. Purkett*, 15 F.3d 785, 789 (8th Cir.1994). There was no such showing based on Bemis's contentions because the District Court told Bemis during his plea hearing that the sentencing recommendation in the plea agreement was not binding, that the statutory maximum sentence for his offenses was twenty years, and that the Guidelines would be used to determine his sentence. *Cf. United States v. Burney*, 75 F.3d 442, 444-45 (8th Cir.1996) (defendant's misunderstanding of application of Guidelines to his sentencing does not constitute a fair and just reason for withdrawing a guilty plea, even where such misunderstanding is based on an erroneous estimation by defense counsel, so long as defendant was told the range of potential punishment and that the Guidelines would be applied to determine his sentence). Additionally, both the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

plea agreement and the prosecutor's comments at the plea hearing informed Bemis that his Guidelines sentence could be affected by the results of the presentence investigation. *Cf. United States v. Ludwig,* 972 F.2d 948, 950-51 (8th Cir.1992) (fact that sentence recommended in presentence report substantially exceeded both prosecutor's and defense counsel's calculations of likely sentence at time of plea agreement did not warrant withdrawal of plea where plea agreement was specific in its terms and promised no certain sentencing range).

***2** Third, Bemis contends that his attorney developed a conflict of interest when he accepted illegal drug proceeds as payment for Bemis's legal fees. The government argues that this claim fails because there is no evidence that Bemis's attorney was ever criminally investigated for accepting the proceeds. *See Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980) (to establish ineffective assistance of counsel claim, defendant must show actual conflict of interest that adversely affected his attorney's performance). However, Bemis offered evidence that an informant gave the government a statement describing how the informant retrieved the drug proceeds for Bemis's attorney and that Bemis's attorney was aware of the informant's statement to the government. We believe this evidence at least raises the possibility that, as Bemis contends, his attorney encouraged him to plead guilty to avoid government inquiry about the source of the fees, *see* 21 U.S.C. § 881(a)(6) (1994) (forfeiture of drug proceeds); *United States v. Bowie,* 892 F.2d 1494, 1500 (10th Cir.1990) (counsel's performance is adversely affected by actual conflict of interest if defendant's interests are inherently in conflict with counsel's personal interests), and we do not believe the affidavit of Bemis's attorney was sufficient to negate this possibility. Consequently, we remand this claim for an evidentiary hearing. *See Bowie,* 892 F.2d at 1500-02 (10th Cir.1990) (when district court fails to conduct inquiry into possible conflicts, court of appeals should remand for evidentiary hearing if it can discern from the record the possibility of actual conflict with adverse effects). On remand, the District Court should grant Bemis's request for discovery of his attorney's files.

Bemis also argues that the District Court impermissibly "participated" in plea discussions; that his attorney, the prosecutor, the probation officer, and the District Court "promised" him a seventy-eight-month sentence; that the District Court denied him the opportunity to reply to the government's response; and that the District Court should not have accepted the government's out-of-time response. These arguments are without merit.

Accordingly, we reverse as to Bemis's claim that his attorney had a conflict of interest, and remand for an evidentiary hearing. As to Bemis's remaining claims, we affirm the District Court's denial of section 2255 relief.

C.A.8 (Mo.),1996.
Bemis v. U.S.
97 F.3d 1456, 1996 WL 550083 (C.A.8 (Mo.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.