**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

In re BAYCOL PRODUCTS LITIGATION — MDL No. 1431 (MJD)

This Document Relates to:

ALL CASES

---

**BAYER AND GSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF DR. JANET ARROWSMITH-LOWE**

The PSC's sole challenge to a defense expert is not based upon the credentials of that expert, her familiarity with the subject of her testimony, or the bases for her opinions. Rather, the PSC has attacked one specific opinion offered by FDA expert Janet Arrowsmith-Lowe on the ground that the opinion "is simply wrong." PSC Memo at 3.

Specifically, the PSC contends that Bayer violated an FDA regulation requiring pharmaceutical companies to report, among other things, "actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated)." 21 C.F.R. § 314.80(c)(2)(ii). The PSC claims that Bayer violated the regulation because Bayer did not report certain internal documents relating to comparisons of adverse events for different statins. PSC Memo at 4. (These documents were prepared by Bayer employees Kuno Sprenger and Steven Niemcryk and are sometimes referred to as Sprenger and/or Niemcryk memos.)

Dr. Arrowsmith-Lowe opined, based on her eleven years of experience with the FDA, that the Bayer internal documents on which the PSC motion focuses did not constitute "studies" within the meaning of the regulation because they were not derived from data upon which any sound conclusions could be based. Dep. of Janet Arrowsmith-Lowe (PSC Memo, Ex. B) at 187:7-11; 188:3-10, 13-16. This opinion is consistent with FDA statements that AER data have "not been scientifically or otherwise verified" and that "[c]omparisons of drugs cannot be made from these [AER] data." FDA Caveats (Ex. A to Defendants' Motion To Exclude Expert Testimony Based on Adverse Event Reports ("AER Motion")), Ex. A at 2. Nevertheless, the PSC submits, without support, that Bayer's internal comparisons "surely constituted an appropriate scientific study" and that Dr. Arrowsmith-Lowe should be foreclosed from saying otherwise. PSC Memo at 4.

The fact that the PSC disagrees with Dr. Arrowsmith-Lowe does not provide a basis for excluding her opinion on whether Bayer was required to report the comparisons. "[D]isagreement with an expert's conclusions . . . is not a basis for the court to exclude the opinion." *Pioneer Hi-Bred Int'l., Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 140 (N.D. Iowa 2003). Rather, under Rule 702 and *Daubert*, this Court must focus "on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrill-Dow Pharma., Inc.*, 509 U.S. 579, 595 (1991).

Here, the PSC has challenged only Dr. Arrowsmith-Lowe's conclusion – not the underpinnings for that conclusion. If Dr. Arrowsmith-Lowe offers this opinion at trial, plaintiffs will have a full opportunity to cross-examine her. But the PSC's motion to bar her opinion should be denied.

## ARGUMENT

### I. DR. ARROWSMITH-LOWE IS AN UNDISPUTED FDA EXPERT WHOSE TESTIMONY IS RELEVANT AND WILL ASSIST THE TRIER OF FACT.

Bayer has designated Dr. Arrowsmith-Lowe as an expert witness to help juries understand the complexities of FDA regulations and their application to Baycol. The PSC has challenged neither her expertise nor the relevance and usefulness of her testimony.

#### A. The PSC Does Not Challenge Dr. Arrowsmith-Lowe's Credentials as an FDA Expert or the Bases for Her Testimony.

Dr. Arrowsmith-Lowe is a physician who spent more than eleven years working at the FDA in the areas of premarket development, approval, and postmarket monitoring of approved drugs. Her credentials are unchallenged by the PSC. Dr. Arrowsmith-Lowe summarized those credentials in her report as follows:

> I have over 11 years of experience with the United States Food and Drug Administration (FDA). I was a Medical Review Officer in the Division of Blood and Blood Products in the FDA Center for Biologics Evaluation and Research at FDA and in the Division of Antiviral Drug Products in the Center for Drug Evaluation and Research at the FDA. In both of these positions, I was responsible for reviewing premarket NDAs [New Drug Applications]. I served as a Staff Epidemiologist in the Office of Epidemiology and Biostatistics at the FDA. In this position, I monitored the postmarket safety and effectiveness of marketed drugs, and I served as Consultant to the Centers for Drug and Biologics Evaluation and Research on epidemiologic issues and problems. Further, I was Acting Director of the Office of Surveillance and Biometrics in the Center for Devices and Radiological Health at the FDA. I was also an Epidemic Intelligence Service Officer at National Centers for Disease Control (CDC) and Prevention in Atlanta, Georgia. In this position, I participated in CDC and the FDA epidemiologic investigations of problems of national and regional interest.

Report of Dr. Arrowsmith-Lowe (PSC Memo, Ex. A) at 1. *See also* CV attached to Report. Dr. Arrowsmith-Lowe relied on this substantial experience in forming her opinions in this matter. Arrowsmith-Lowe Rep. (PSC Memo, Ex. A) at 1.

In addition to her own experience, Dr. Arrowsmith-Lowe turned to multiple sources in developing her opinions:

- relevant portions of the Baycol IND;[1]
- relevant portions of the Baycol NDA;[2]
- relevant portions of the supplemental NDA;
- relevant FDA regulations;
- other documents related to the approval and post-approval marketing of Baycol; and
- certain medical articles and texts.

*Id.* at 1. As with her expertise, the PSC does not challenge the sufficiency or completeness of the documents, regulations, articles, and texts that Dr. Arrowsmith-Lowe reviewed in forming her opinions.

During her deposition, the PSC asked Dr. Arrowsmith-Lowe whether Bayer had violated an FDA regulation by not reporting certain internal AER comparisons. *See* Dep. of Arrowsmith-Lowe (PSC Memo, Ex. B) at 185. All the PSC wants to keep out is her ***answer*** to that question.

---

[1] An IND is the application of a pharmaceutical manufacturer by which the manufacturer requests that the FDA permit human testing of a drug.

[2] An NDA is the application of a pharmaceutical manufacturer by which the pharmaceutical manufacturer requests that the FDA permit it to market its drug product in the United States.

Defendants are aware of no authority for the proposition that an undisputed expert whose methods have not been challenged may be foreclosed from answering a question because the questioning attorney does not like the answer the expert gives. Indeed, as demonstrated in Part II, the position taken by the PSC is contrary to law.

**B. The PSC Does Not Dispute that Testimony Regarding Bayer's Compliance with FDA Regulations Is Relevant Testimony that Will Assist the Trier of Fact.**

Not only has the PSC failed to challenge Dr. Arrowsmith-Lowe's credentials or methodology, the PSC has not disputed the relevance of her testimony or its usefulness to the trier of fact – two other grounds on which expert testimony is sometimes excluded.

Dr. Arrowsmith-Lowe's expertise and opinions regarding the FDA regulatory scheme and Bayer's compliance therewith are relevant to this action. Courts routinely hold that compliance with FDA regulations is relevant evidence, even in jurisdictions where compliance with the regulations has not been treated as dispositive. *See, e.g., Erickson v. Baxter Healthcare, Inc.*, 151 F. Supp. 2d 952, 966 (N.D. Ill. 2001) (applying Illinois law, "Evidence of compliance with [FDA] regulations is evidence, but not conclusive, of due care."); *Gurski v. Wyeth-Ayerst Div. of American Home Prods. Corp.*, 953 F. Supp. 412, 417 (D. Mass. 1997) (applying Massachusetts law, finding that compliance with FDA regulations was evidence of a warning's adequacy, though not dispositive); *Foyle By and Through McMillan v. Lederle Labs*, 674 F. Supp. 530, 533 (E.D.N.C. 1987) (applying North Carolina law, "compliance with FDA regulations is evidence of due care but it is not controlling").

Beyond the relevance of the evidence, moreover, Dr. Arrowsmith-Lowe's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue:" the complex regulatory scheme the FDA enforces. Fed. R. Evid. 702. "The rule of evidence applied in determining the appropriateness of opinion 'expert testimony' is whether the subject involved is so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman." *LaPlante v. Radisson Hotel Co.*, 292 F. Supp. 705, 707 (D. Minn. 1968); *see also Baker v. Abo*, 2003 WL 21639151, at *4 (D. Minn. July 2, 2003) (finding expert testimony required where "issues involve questions beyond the ken of ordinary lay witnesses"). Dr. Arrowsmith-Lowe's testimony meets this standard.

FDA regulations are complicated. As the First Circuit noted in *United States v. Articles of Drug Consisting of Following: 5,906 Boxes*, 745 F.2d 105, 107 (1st Cir. 1984), "the Federal Food, Drug and Cosmetics Act . . . provides a statutory structure for the premarketing approval and regulation of drugs that has been described variously as 'somewhat complicated,' 'not straightforward,' and even 'inconsistent' in its judicial interpretation." *See also Cooper Labs, Inc. v. Commissioner, Federal FDA*, 501 F.2d 772, 788 (D.C. Cir. 1974) (Leventhal, J., dissenting) ("it is often not possible to understand, much less apply, the drug law and regulations without the benefit of technical knowledge that is not part of this court's working kit").

Accordingly, courts routinely receive testimony regarding the scope and application of FDA regulations. *See, e.g.*, *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 577 (D.C. App. 1996) (permitting experts on FDA regulations to opine on whether defendant

was in compliance with those regulations); *United States v. Prigmore*, 243 F.3d 1, 15 (1st Cir. 2001) (two experts on FDA regulations permitted to share "with the jury their understandings of the crucial Class III medical device regulations"); *Galdi v. Bayer Corp.*, Case No. 04892 (Pa. Ct. Com. Pl. Mar. 10, 2004) (Ex. A) (permitting Dr. Arrowsmith-Lowe to offer the opinions she intends to express in this litigation pursuant to Pennsylvania's rules of evidence); *Haltom v. Bayer Corp.*, No. 02-60165-4 (Nueces County, Tex. Mar. 12, 2003 (a.m.)) Trial Tr. (Ex. B) at 2, 89-91 (Dr. Arrowsmith-Lowe summarizing her testimony regarding Bayer's compliance with FDA requirements and regulations). Dr. Arrowsmith-Lowe's expert testimony concerning the depth, breadth, substance, and application of FDA regulations regarding prescription drugs is proper because she has unchallenged specialized knowledge "beyond the ken" of the average witness or juror.

## II. THE PSC'S DISAGREEMENT WITH DR. ARROWSMITH-LOWE'S OPINION IS NOT A REASON TO EXCLUDE THAT OPINION.

Despite not challenging Dr. Arrowsmith-Lowe's expertise, the breadth or depth of sources to which she referred in forming her opinions, the relevance of her testimony, or that Dr. Arrowsmith-Lowe can assist the trier of fact by testifying, the PSC seeks to exclude a portion of Dr. Arrowsmith-Lowe's testimony on the basis that the PSC simply does not agree with *one* of her conclusions. The PSC's argument should be rejected for two reasons.

First, disagreement with an expert's conclusion is not a basis for excluding evidence under *Daubert.* In determining the admissibility of expert testimony, "the trial

court must focus 'on [the] principles and methodology, not on the conclusions that they generate.'" *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (quoting *Daubert*, 509 U.S. at 595). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001).

Here, the PSC has made no challenge to the principles or methodology used by Dr. Arrowsmith-Lowe. Rather, the PSC argues for the exclusion of Dr. Arrowsmith-Lowe because the PSC believes she is wrong. For example, the PSC proclaims:

- "Incredibly, she also opined that the results of the Sprenger Analyses did not have to be reported to the FDA . . . . This opinion is simply wrong, and she should be precluded from giving any such testimony at trial." PSC Memo at 3.
- "Arrowsmith-Lowe's opinion that the Sprenger Analyses did not have to be reported to the FDA flies in the face of explicit language in the agency's regulations." *Id.*
- "So what possible basis could there be for withholding the results of the [Sprenger] analyses for well over a year? The regulation is clear as a bell that the study should have been reported in the periodic report following initiation, not simply on completion." *Id.* at 4.
- "Of course, once it became apparent from the results of the Sprenger Analyses that Baycol had proportionally more muscle related adverse events than other statins, the obligation to report became only more acute. But Bayer never told the FDA, and Arrowsmith-Lowe's opinion notwithstanding, the company's failure to do so was a violation of the FDA rules." *Id.* at 4.

These statements serve only to express the PSC's belief that Dr. Arrowsmith-Lowe's opinion regarding Bayer's internal comparisons is incorrect. At best, that is a basis for cross-examination and jury argument – not exclusion of an expert opinion.

Second, even if the PSC had challenged the methodology used by Dr. Arrowsmith-Lowe – and the PSC has not – Dr. Arrowsmith-Lowe's opinion that Bayer was not required to provide its internal AER comparisons to the FDA would be properly admitted because it is a reasonable interpretation by an FDA expert regarding the application of FDA regulations, based on FDA policies and the AER comparisons themselves.

The support for the specific opinion at issue appears in Dr. Arrowsmith-Lowe's report, which specifically discusses the limited utility of adverse event reports:

> The FDA's safety surveillance, like that of the manufacturer, encompasses the review and analysis of adverse event reports submitted by drug manufacturers, by health professions, such as physicians, pharmacists and nurses, and by individuals as well as reports published in the scientific literature. . . . In general, individual reports submitted to FDA as part of postmarket safety surveillance cannot be used to determine incidence rates and are unreliable for use in comparing reporting rates among drugs or classes of drugs. Similarly, the comparison of reporting rates calculated from spontaneously reported adverse drug events is not generally accepted by the scientific and medical community as a valid methodology for estimating the relative risks of those events associated with individual drug products.

Arrowsmith-Lowe Rep. (PSC Memo, Ex. A) at 4-5.

This opinion is consistent with FDA regulations, which state that the existence of an AER "does not necessarily reflect a conclusion . . . that the report or information constitutes an admission that the drug caused or contributed to an adverse effect." 21 C.F.R. § 314.80(k). That is why the FDA has expressly stated that:

- Information contained in AERs "has not been scientifically or otherwise verified."
- Accumulated AERs "cannot be used to calculate incidence or estimates of drug risk."

- "True incidence rates cannot be determined from this [AER] database. Comparisons of drugs cannot be made from these data."

FDA Caveats (AER Motion, Ex. A) at 2. The problems with reliance on AER data are discussed at length in defendants' AER Motion.

Indeed, these limitations on use of adverse event data are expressly stated in memoranda accompanying the Sprenger and Niemcryk comparisons, which plaintiffs contend should have been provided to the FDA. Dr. Sprenger cited and quoted extensively from the FDA Caveat document:

CAVEATS

* * *

2. The information contained in the [adverse event] reports has not been scientifically or otherwise verified as to a cause and effect relationship and cannot be used to estimate the incidence of adverse drug events.

* * *

4. Accumulated case reports cannot be used to calculate incidence or estimates of drug risk.

5. Numbers from these data must be carefully interpreted as reporting rates and not occurrence rates. True incidence rates cannot be determined from this data base. Comparisons of drugs cannot be made from these data.

PSC Memo (Ex. D) at BAYCORP 00034787. Similarly, Dr. Niemcryk included strong qualifying language with his comparison (which was only a draft document), stating that: "none of the point estimates should be considered to be terribly reliable;" "the validity of data in these databases should be questioned although the use of such a database can be used to identify a potential problem;" and "estimates of disproportionate risk cannot

directly be generated from these reporting systems." PSC Memo (Ex. E) at BAYCORP 02040110-111.

Dr. Arrowsmith-Lowe was familiar with the express limitations of the Bayer comparisons, as well as the FDA's position on the utility of adverse event analysis and the regulation that the PSC claims compelled production of the internal Bayer comparisons, 21 C.F.R. § 314.80. *See* Arrowsmith-Lowe Rep. (PSC Memo, Ex. A) at 1, 4-5 and Arrowsmith-Lowe Dep. (PSC Memo, Ex. B) at 57. This knowledge supported her testimony that the comparisons were not "studies" that Bayer was required to submit to the FDA:

> Q. It's your opinion that given what's reasonably expected of pharmaceutical companies in their dealings with the FDA that Bayer had no obligation to provide these analyses to the FDA any time prior to July 24, 2001?
>
> * * *
>
> A. I think that what they were doing was appropriate, but I don't think that there were any real conclusions that could have been drawn from this data, so, I don't believe it falls under 314.80.
>
> Q. And does it fall within what's reasonably expected of drug companies in their dealings with the FDA?
>
> * * *
>
> A. This type of data, no, I don't think that that falls under that type of an obligation.

Arrowsmith-Lowe Dep. (PSC Memo, Ex. B) at 187-88. Given the support for her opinion – based on FDA documents, her FDA experience, and the text of the comparisons themselves – Dr. Arrowsmith-Lowe's testimony is not "fundamentally unsupported" and subject to exclusion under *Daubert*.

The PSC can certainly attempt to challenge Dr. Arrowsmith-Lowe if she offers this testimony at trial, but this Court should not entertain the PSC's argument in pre-trial motion practice. *Daubert*, 509 U.S. at 580 ("Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . is the appropriate means by which evidence based on valid principles may be challenged"). Disagreement with Dr. Arrowsmith-Lowe's opinion is not a basis upon which to bar Dr. Arrowsmith-Lowe from testifying to that opinion. *Pioneer Hi-Bred*, 219 F.R.D. at 140 ("disagreement with an expert's conclusions . . . is not a basis for the court to exclude the opinion"). Dr. Arrowsmith-Lowe's methodology and expertise are unchallenged, and the PSC has not advanced a recognized basis upon which to exclude her testimony.

## CONCLUSION

For these reasons, Defendants Bayer Corporation, Bayer AG and GlaxoSmithKline respectfully request that the Court deny the PSC's Motion to Exclude Testimony of Dr. Janet Arrowsmith-Lowe Regarding Obligation to Report Comparative Adverse Event Reporting Analysis.

Dated: June 23, 2006

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
James R.M. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, N.W. Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*