**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MARTYN SMITH**

As defendants explained in their opening memorandum, Dr. Smith's primary opinion – that Baycol was the most toxic statin – is inadmissible because he only relies on flawed animal studies, test-tube studies, and studies that compare AER data. The PSC fills its opposition to defendants' motion with rhetoric, but that rhetoric cannot mask the key deficiency to the PSC's position – a lack of legal authority.

In its lengthy opposition, the PSC argues that Dr. Smith's opinion is admissible because he has thirty years of experience as a toxicologist and he used that experience in reviewing the animal and test tub studies upon which he relies. *See* Pls' Response at 5. The fact that Dr. Smith has thirty years of experience may indicate that he is qualified as an "expert," but does not establish that his opinion is admissible.

The PSC's argument boils down to urging this Court to trust Dr. Smith simply because he is an expert. However, "nothing in either *Daubert* or the Federal Rules of Evidence require a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001).

The PSC next argues disingenuously that Dr. Smith's reliance on animal studies and test-tube studies is permissible because he does not extrapolate from that data to humans. However, the only reason that Dr. Smith discusses animal and test-tube data is to support his "major opinion" that Baycol was "at least 10 times more toxic than other commercially available statins." Smith Rep. (Defs' Ex. A) ¶ 6(a). Such an opinion necessarily involves extrapolating from animal data to humans, a practice that has been soundly rejected by courts around the country. *See, e.g., Sorensen v. Shaklee Corp.*, 31 F.3d 638, 646 n.12 (8th Cir. 1994) ("Because of the dose-response differential between animals and humans, however, extrapolating to humans from animal studies is problematic").

The PSC also argues that Dr. Smith's reliance on AER data to form his comparative toxicity opinion is permissible because, according to the PSC, Dr. Smith examined epidemiological studies comparing AER data. However, the only published article that the PSC cites, a letter written by Staffa, is not an epidemiological study. Moreover, as defendants have explained in more detail in their separate AER motion, the FDA, the scientific community and the courts have uniformly rejected comparisons of drug risk or safety based on AER data. *See* Defendants' AER Motion and Reply.

Dr. Smith's other opinions are irrelevant, speculative or otherwise not proper expert testimony. In particular, Dr. Smith's opinions regarding Baycol's dual metabolic pathway and the mechanism of statin-induced myopathy are inadmissible because they are untested hypotheses. *See, e.g., Sorensen v. Shaklee Corp.*, 31 F.3d 638, 649 (8th Cir. 1994). Plaintiffs offer no authority that allows admission of such opinions.

## ARGUMENT

The PSC argues that Dr. Smith's report "as a whole" is admissible. Pls' Response at 4. Plaintiffs apparently believe that the volume of cited materials is what matters, regardless of its reliability, relevance, or whether those materials actually "support" any conclusion the expert reaches. The PSC largely fails to deal with or otherwise ignores the specific problems pointed out by defendants regarding Dr. Smith's opinions. These specific problems are fatal to the admission of Dr. Smith's report and opinions.

### I. DR. SMITH'S OPINION THAT BAYCOL IS THE MOST TOXIC STATIN SHOULD BE EXCLUDED BECAUSE IT RELIES ONLY UPON IMPROPER DATA.

Dr. Smith's opinion that Baycol is the most toxic statin is only based upon (1) data from *in vitro* and animal studies that compare Baycol to other statins; and (2) articles comparing adverse event reporting. As defendants' explained in their opening brief, these data sets cannot properly form the basis of expert opinion. The PSC's arguments to the contrary are unavailing.

#### A. Dr. Smith Extrapolates From Flawed Animal And *In Vitro* Studies To Humans.

The PSC argues that Dr. Smith does not impermissibly rely upon animal and test-tube studies, because he does not extrapolate from that data to human beings. Instead, the PSC maintains that Dr. Smith only discusses animal and test-tube data to evaluate the toxicity of Baycol *in vivo* and *in vitro*. Pls' Response at 13. The PSC's argument is misleading, however. The only purpose of Dr. Smith's opinion about

Baycol's alleged animal or cellular toxicity is to buttress his "major opinion" that Baycol was "at least 10 times more toxic than other commercially available statins." Smith Rep. (Defs' Ex. A[1]) ¶ (a). These "commercially available statins" were prescribed for people – not animals or cells in test tubes. Thus, Dr. Smith's opinion necessarily involves extrapolating from animal data to humans, a practice that courts around the country have found impermissible.

"[E]xtrapolations . . . from high-dosage, single species *in vivo*" and *in vitro* testing to human causation are unreliable and irrelevant because of the exponentially greater levels of drugs used in those studies. *Bourne ex rel. Bourne v. E.I. Dupont de Nemours and Co.*, 189 F. Supp. 2d 482, 496 (S.D.W. Va. 2002) (excluding expert testimony that purported to draw conclusions about the harmfulness of drug in humans from high-dose animal testing and *in vitro* studies); *accord General Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (holding district court did not abuse its discretion in excluding animal studies evidence where mice had "massive doses of PCB's" injected into them, while the plaintiffs' "exposure to PCB's was far less than the exposure in the animal studies"); *Sorensen v. Shaklee Corp.*, 31 F.3d 638, 646 n.12 (8th Cir. 1994) ("Because of the dose-response differential between animals and humans, however, extrapolating to humans from animal studies is problematic").

[1] Exhibit references are to exhibits for Defendants' Memorandum in Support of Their Motion to Exclude Expert Testimony of Martyn Smith ("Defs Ex.") or for the PSC's Response ("Pls' Ex.") or for this brief ("Reply Ex.").

The cases cited by the PSC do not hold otherwise.[2] *Glastetter v. Novartis Pharmaceuticals Corp.*, 252 F.3d 986, 989 (8th Cir. 2001), actually supports defendants' position. In *Glastetter*, the Eighth Circuit affirmed the exclusion of an expert who based his opinion on animal studies and AER data, because those sources did not rise to the level required by *Daubert*. *Id*. at 989. The PSC points out that the *Glastetter* court did not make a blanket exclusion of animal studies. Opp. at 12 (citing *Glastetter*, 252 F.3d at 991 n.5). However, the court never had to reach that question because it determined that the "animal studies submitted in this case do not present scientifically compelling evidence of causation." *Glastetter*, 252 F.3d at 991 n.5.

Here, as in *Glastetter*, the animal studies relied upon by Dr. Smith "do not present scientifically compelling evidence of causation[,]" because they are admittedly methodologically flawed. *See* Smith Dep. (Defs' Ex. B) at 93:18-21; 100:8-9 (conceding that the studies are flawed because they introduced a chemical that may have confounded the results of the experiment). Thus, Dr. Smith's proposed testimony rests not only on an improper extrapolation of animal studies to people, but on *animal studies that are not*

---

[2] The PSC cites *Marder v. G.D. Searle & Co.*, 630 F. Supp 1087, 1094 (D. Md. 1986), in support of their argument. However, *Marder* does not hold that expert testimony based upon *in vivo* and test tube studies is admissible. Indeed, the *Marder* court directed a verdict in favor of the defendant because the plaintiff "failed to present sufficient evidence of causation." *Id*. at 1095. The PSC also cites *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924 (8th Cir. 2001) to support its position that expert testimony based on animal data is permissible. In *Bonner*, the court permitted a case-specific medical expert to perform a differential diagnosis that relied, in part, on the results of animal studies. However, unlike Dr. Smith, the expert in *Bonner* also relied upon a host of other evidence to support his case-specific causation opinion, including the patient's medical records and the temporal connection between usage of the drug and the alleged injury.

*even reliable evidence as to animals*. Such evidence must be excluded under *Daubert* because plaintiffs have not carried their burden of proving its reliability.

**B. Dr. Smith Impermissibly Relies Upon Articles That Compare Adverse Event Reporting Data.**

The PSC does not dispute that Dr. Smith relies upon AER data to form his opinion on Baycol's toxicity. Instead, the PSC attempts to confuse the issue by arguing that Dr. Smith's opinion is admissible because he relied upon "an epidemiological study" of AERs. Pls' Response at 6. However, the articles that Dr. Smith's report cites for his opinion – the Staffa and Thompson articles – are not epidemiological studies.[3]

Moreover, as defendants have explained more fully in Defendants' AER Motion and Reply, it is impermissible for an expert to rely upon AER data to compare the safety of different drugs. *See* FDA Office of Postmarketing Drug Risk Assessment, "Adverse Event Reporting System (AERS): Brief Description With Caveats of System" (Oct. 18, 1999) (Defs' Ex. F); *see also* Dfs' AER Motion. The primary article that Dr. Smith relies upon for his opinion, by Staffa *et al*., recognizes this very point and notes that rigorous comparisons of drugs using AER data is not recommended. *See* Smith Dep. (Dfs' Ex. B) at 130:15-23.

---

[3] If the PSC is referring to the unpublished reports prepared by Dr. Farquhar for purposes of this litigation, those reports may not be used to support Dr. Smith's testimony for the reasons set forth in Defendants' Motion To Exclude Testimony by Experts Invoking Other Testifying Experts.

## II. DR. SMITH'S OTHER OPINIONS ARE INADMISSIBLE.

### A. Dr. Smith's Untested Hypotheses Regarding Baycol's Dual Metabolic Pathway and the Mechanism of Statin-Induced Myopathy Are Inadmissible.

The PSC concedes that Dr. Smith's "opinion" that Baycol's dual metabolic profile makes drug-drug interactions more likely is merely his untested and unsupported hypothesis. *See* Pls' Response at 17. Similarly, Dr. Smith's opinion that apoptosis plays a role in the mechanism of statin-induced myopathy is an untested theory. As Dr. Smith concedes "the apoptosis theory is still just a theory because there's no direct proof of it in human beings." Smith Dep. (Defs' Ex. B) at 162:9-12.

The PSC does not contest any of this. Instead, it asserts that "*Daubert* does not require a scientific theory to be proven to be admitted into evidence." Pls' Response at 20. The PSC offers no authority for this conclusion, instead arguing that the fact that the exact mechanism for statin-induced "myopathy is not yet known does not affect the admissibility of Dr. Smith's opinion on the topic[.]" *Id*. at 19.

The PSC's argument has been considered and rejected by the Eighth Circuit. In *Sorensen*, the court excluded an expert's opinion under Daubert because "neither of [the expert's] potential causal mechanisms . . . ha[s] been studied." 31 F.3d at 649. Here, Dr. Smith admits that further study is required and that the apoptosis theory has not been proven in humans. Smith Dep. (Defs' Ex. B) at 58:2-5, 162:9-12.

In short, the lack of scientific research, literature, and general acceptance of Dr. Smith's opinions renders them inadmissible. *See* Fed. R. Evid. 702 (expert testimony is admissible only if "the testimony is based upon sufficient facts or data"); *J.B. Hunt*

*Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered") (quoting *Joiner* at 146); *see also Sorensen*, 31 F.3d at 649 (excluding expert opinion under *Daubert* because "neither of [the expert's] potential causal mechanisms . . . ha[s] been studied."); *Daubert*, 509 U.S. at 593-94; *Turner* v. *Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207-08 (8th Cir. 2000).

**B. Dr. Smith's "Argument" That Bayer Did Not Heed The Concerns Of Its Own Toxicologists Is Inadmissible Because It Is Not Expert Testimony.**

Dr. Smith spends much of his report "put[ting] forward the argument that it was clear that Bayer toxicologists were concerned" about the toxicity of Baycol and they or the company did not follow through on those concerns. Smith Dep. (Defs' Ex. B) at 156:7-9. The PSC contends that this opinion is admissible because "Dr. Smith's conclusions were based on his scientific expertise, not 'layman's speculation.'" Pls' Response at 21. This argument, however, is mistaken.

Dr. Smith is admittedly "put[ting] forward [an] argument," rather than offering an expert opinion. Arguments masquerading as expert opinion are inadmissible. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (finding expert testimony inadmissible when it is based on "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case"). Moreover, the PSC concedes that Dr. Smith's argument is based on simple inferences that laymen

could make. Indeed, the PSC makes a point of noting that Dr. Smith's report merely strings together direct quotes "from the Bayer scientists' report!" Pls' Response at 23.

Judge Bernstein of the Philadelphia Court of Common Pleas rejected similar testimony by a different expert in the *Galdi* Baycol pretrial hearings, because the testimony "sounds like his personal opinion, not a scientific conclusion." *Galdi v. Bayer Corp.*, Pa. Ct. Cmn. Pls., July Term 2002, Case No. 4892, Trial Tr. 3/12/04 at 37:2-4 (Defs' Ex. H). Judge Bernstein recognized that opinions about Bayer's purported motives, knowledge, intent, or state or mind do not rest upon "scientific, technical or other specialized knowledge." Fed. R. Evid. 702; *Rezulin*, 309 F. Supp. 2d at 553. Each of these topics is a "classic jury question and not one for experts." *In re Diet Drugs*, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000).

The PSC attempts to distinguish Dr. Smith's opinions by pointing out that the *Galdi* expert "testified that Bayer was aware of the ineffectiveness of its safety communication campaign but did little to remedy it[.]" Pls' Response at 23 n.13. This does not distinguish *Galdi*, however, because Dr. Smith offers a very similar opinion in his expert report. He claims that Bayer's scientists "were concerned about [Baycol's] narrow safety margin very early on in the development process," but that "[i]t appears that [their] warnings were not appropriately heeded." Smith Report (Dfs' Ex. A) at ¶ 14.

### C. Dr. Smith's Opinion That Bayer Incorrectly Characterized Baycol As An "Ideal Statin" Is Inadmissible Because It Is Only Relevant To A Fraud-On-The-FDA Theory.

In his expert report, Dr. Smith asserts that Bayer incorrectly characterized Baycol as an ideal statin in its New Drug Application to the FDA. Smith Report (Dfs'

Ex. A) ¶¶ 24-28. The PSC argues that this opinion is admissible because it is somehow relevant to Baycol's "toxicological shortcomings." Pls' Response at 24. However, the PSC cites no case that allows evidence of alleged infirmities in "what was told to the FDA" in support of a tort claim.

To the contrary, courts around the country have found such evidence foreclosed by the Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001). *See, e.g., Pauley* v. *Bayer Corp.*, Pa. Ct. Com. Pl. No. 002729, Order on Defendants' Motion *in Limine* No. 6 (Nov. 16, 2004) (Defs. Ex. J) (excluding testimony "that Bayer (a) misled or deceived the FDA, or (b) failed to provide to the FDA any data, studies or other information required by the FDA"); *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (holding that, under *Buckman*, "what was told to the FDA cannot support a tort claim"; such evidence "would be nothing more than an invitation for the jury to speculate about what . . . the FDA . . . might do if the facts were different"); *Bouchard v. American Home Prods. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA"). This Court should do the same.

## CONCLUSION

For these reasons, and the ones contained in its opening memorandum, defendants respectfully request that this Court exclude the testimony by Martyn Smith.

Dated: August 11, 2006

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, NW Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*