**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS M. ZIZIC**

Thomas M. Zizic, M.D. has opined that Baycol causes permanent muscle injury, despite admitting his opinion is not supported in the medical literature and that he has not conducted any independent study or test to fill the gaps. He has also opined that Baycol was the "most toxic" statin on the market, premised on the unreliable ground of adverse event reports ("AERs"). The PSC nevertheless asserts that, because Dr. Zizic is willing to take leaps from his sources to his conclusions, this Court should too. That approach is contrary to *Daubert*'s explicit warning against permitting, as "expert opinion," testimony that is nothing more than the *ipse dixit* of the witness. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) (expert testimony "must be supported by appropriate validation" and "inference or assertion must be derived by the scientific method").

The PSC has not carried its burden of establishing the reliability of Dr. Zizic's opinion that Baycol causes persistent or chronic muscle injury (*see infra*, Part I), or that Baycol was the "most toxic" statin (*see infra*, Part II). Nor can the PSC support such speculation simply by trumpeting Dr. Zizic's credentials as a rheumatologist.

## ARGUMENT

### I. DR. ZIZIC'S OPINION THAT BAYCOL CAUSES PERSISTENT OR CHRONIC MUSCLE INJURY IS PURE SPECULATION.

The PSC contends that the medical literature relied upon by Dr. Zizic supports his conclusion that Baycol causes persistent or chronic muscle injury. But even Dr. Zizic acknowledges that the studies reported in the medical literature do not present data sufficient to form any such opinion:

> Q: So, there's just basically not good data on the rate of recovery versus rate of nonrecovery from statin-induced myopathy? Is that what you're saying?
>
> A: The studies have not been done, that's correct.

Zizic Dep. (Dfs' Ex. B[1]) at 211:3-9; *see also id.* at 128:19-129:23; 130:1 (admitting he knows of no studies showing that statin use can cause permanent or progressive myopathy with normal creatine kinase levels). Moreover, Dr. Zizic concedes that he never conducted any study or testing to supplement the medical literature. *See id.* at 15:7-23; 143:11-22; 230:9-12. Ultimately, Dr. Zizic admits that he is left to speculate from the existing data to draw the conclusions he intends to submit in testimony in this case. *See id.* at 129:13-16 (admitting that his opinion that statin therapy can cause permanent or progressive myopathy with normal creatine kinase levels is speculation). Such speculation is insufficient under *Daubert* and Rule 702. *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (the Court must "separat[e] expert

[1] Exhibit references are to exhibits for Defendants' Memorandum in Support of Their Motion to Exclude Expert Testimony of Thomas M. Zizic ("Dfs' Ex.") or for the PSC's Response ("Pls' Ex.").

opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge").

Arguing that Dr. Zizic's methodology is somehow reliable, the PSC rests on Dr. Zizic's deposition testimony as to how he used the studies he reviewed in crafting his opinions. *See* Pls' Response at 10-15, 18. The PSC argues that reliance on existing literature is a recognized and legitimate methodology for forming expert opinion. *See id*. at 13-14. Defendants do not dispute that general statement, but the PSC has missed the point *by failing to demonstrate how the studies support Dr. Zizic's opinions*.[2]

The fact is that the data upon which Dr. Zizic relied do not support his opinion that Baycol causes persistent or chronic muscle injury, and he concedes as much.[3] Dr. Zizic admits he has leapt from the existing data, some of which are entirely unrelated to Baycol, to the opinions he now proposes to assert without supplementing the gaps in the data with his own independent study or testing. *See* Zizic Dep. (Dfs' Ex. B)

---

[2] The only articles to which Dr. Zizic referred in forming his opinions that the PSC even attempts to demonstrate supports his opinions are the Farmer and Hamilton-Craig articles. Pls' Response at 21 (including a Furberg article which Dr. Zizic never referred to, according to the lists of materials and articles Dr. Zizic considered). According to the PSC, these articles relate to Dr. Zizic's opinion that Baycol was the "most toxic" of the statins, and not to Dr. Zizic's opinion that Baycol caused persistent or chronic muscle injury. Though Dr. Zizic may have referred to them, *none* of these articles is cited in his report for the proposition they now are claimed to support. Furthermore, these articles are premised entirely on AERs, which, as discussed below and in other of defendants' motions, are inherently unreliable data upon which to form conclusions regarding the relative or comparative toxicity of a medication.

[3] In their Motion to exclude Dr. Zizic's testimony, defendants presented a discussion of each and every study Dr. Zizic identified as supporting his opinion that Baycol caused persistent or chronic muscle injury. In lieu of reiterating that discussion here, Defendants respectfully refer the Court to pages 6-12 of their opening brief.

at 211:3-9 (admitting no studies exist regarding rates of recovery versus nonrecovery); 128:19-129:23, 130:1 (admitting he knows of no studies showing that statin use can cause permanent or progressive myopathy with normal creatine kinase levels); 15:7-23, 143:11-22, 230:9-12 (admitting he has never done any study on statins, nor published or lectured on statin-induced myopathy). This is the sort of *ipse dixit* that Rule 702 does not countenance and that the Supreme Court warned against in *Daubert*.

The PSC attempts to buttress Dr. Zizic's conclusions by referring to medical literature published after Dr. Zizic formed his opinions, and upon which Dr. Zizic never relied. The PSC's argument is improper. First, medical literature that was neither identified in Dr. Zizic's report nor at his deposition as something he reviewed and relied upon cannot now be used by the PSC to defend Dr. Zizic's opinions. Second, none of the new studies raised by the PSC supports Dr. Zizic's speculation of a causal link between Baycol and persistent or chronic muscle injury:

- Paul S. Phillips, et al., *Statin Myotoxicity Is Associated With Changes In the Cardiopulmonary Function*, 177 Atherosclerosis 183-88 (2004) (Pls' Ex. C), was a study to determine the connection between muscle toxicity in past statin patients and lipid oxidation. The Phillips study could not draw any conclusion regarding the effect of past statin use and persistent muscle toxicity, stating only that there was a "possibility" of a connection and that "further evaluation of this hypothesis is warranted." *Id.* at 187.

- K.A. Antons, et al., *Clinical Perspectives Of Statin Induced rhabdomyolysis*, 119 Am. J. Med. 400-09 (2006) (Pls' Ex. D), was a reatment survey

discussing treatment of post-incident rhabdomyolysis patients, and in no manner suggests that statins, or Baycol, can cause persistent or chronic muscle injury.

- K.E. Hanson, et al, *Outcomes in 45 Patients with Statin-Associated Myopathy*, 165 Archives Internal Med. 2671-76 (2005) (Pls' Ex. E), which the PSC claims does not contradict Dr. Zizic's opinion of Baycol-induced persistent or chronic muscle injury, states, "Every patient who discontinued statin therapy experienced rapid resolution of muscle pain, typically within a month after cessation of therapy." *Id*. at 2675. This contradicts Dr. Zizic's conclusion that Baycol can cause persistent or chronic injury.[4]

Even if the new studies supported Dr. Zizic's conclusion that Baycol caused persistent or chronic muscle injury – and they do not – purported confirmation of Dr. Zizic's *conclusion* does not go to the reliability of Dr. Zizic's *methodology*. As the PSC notes, "The chosen criteria [under *Daubert*] evaluate the expert's methodology, and not the expert's conclusions." Pls' Response at 7 (citing *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)).

The same leap the PSC alleges is justified by the existing medical data has been rejected by another federal court *just this year* after that court conducted its own independent review of the available literature. In *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687

[4] The PSC also cites Furberg, et al., *Withdrawal of Cerivastatin from the World Market*, 2 Current Controls Trials in Cardiovascular Medicine, 205-207 (2001) (Pls' Response at 21), for support of Dr. Zizic's opinion that Baycol was the "most toxic" statin. Dr. Zizic never referred to the Furberg article, and therefore it cannot support his methodology. Even if it could, Dr. Furberg's article makes reference only to AERs and "media reports," which are unreliable data upon which to conclude that Baycol was the "most toxic" statin, as discussed below and in other of defendants' motions.

(N.D. Ga. 2006), the court considered the same proposition Dr. Zizic now seeks to assert – that the statin at issue caused persistent or chronic muscle injury – and rejected it as unfounded in science. But the court's review of the medical literature in *Leathers* was not limited to the statin at issue in that case, Lipitor. The court held that the proffered expert could not establish *general causation* based on existing medical literature (including literature relaying AERs): "Research addressing the relationship between Lipitor (and, more generally, statins) and Plaintiff's alleged injury [persistent or permanent muscle injury] is still in an immature stage and does not possess the level of reliability required by *Daubert*." *Leathers*, 233 F.R.D. at 695; *see also id.* at 697-98 (holding that the plaintiff "cannot establish general causation" of persistent or permanent muscle injury by statins because the existing studies are not sufficiently reliable). The PSC's attempt to distinguish *Leathers* is without merit:

*First*, the PSC asserts that defendants, unlike those in *Leathers*, have not challenged the tendered expert's credentials. Pls' Response at 15-16. Defendants respectfully refer the Court to Part III of their opening brief and Part III of this reply, explaining, among other things, that Dr. Zizic is a bone – not a muscle – specialist. Even if Dr. Zizic were a muscle disorder specialist, which he is not by his own admission, Dr. Zizic's medical specialty would not permit him to draw a link between Baycol and persistent or chronic muscle injury where that link is unsupported in the medical literature.

*Second*, the PSC asserts that because Baycol, unlike Lipitor at issue in *Leathers*, was removed from the market, the court's consideration of the broad medical

literature related to statins in *Leathers* is somehow inapplicable to this case. The PSC also asserts that because defendants here, unlike in *Leathers*, do not contest that statins may cause some forms of injury, the court's analysis in *Leathers* is inapposite. This is not the case. Simply because defendants recognize that statins may cause some forms of injury does not permit Dr. Zizic to make the unsupported jump here to testify that Baycol causes *persistent or chronic* injury. Furthermore, the court's decision in *Leathers* considered the medical literature related to statins, generally, and concluded that there was no support that would reliably inform the opinion that *statins* can cause persistent or chronic muscle injury. *Leathers*, 233 F.R.D. at 694-95 (finding no reliable link in the medical literature between "Lipitor (and, more generally, statins)" and the opinion that statins cause persistent or permanent muscle injury).

*Third*, the expert in *Leathers* was proffered as a general causation *and* specific causation expert, contrary to the PSC's assertion that general causation was not at issue. *See Leathers*, 233 F.R.D. at 694-95 (implying and rejecting a general causation opinion in the expert's report); *id.* at 697-98 (rejecting general causation opinion in same expert's declaration).

*Fourth*, like the expert in *Leathers*, Dr. Zizic has admitted that his opinion that Baycol causes persistent or chronic muscle injury has no support in existing data. Zizic Dep. (Dfs' Ex. B) at 211:3-9 (stating that no scientific studies have measured the rate of recovery versus nonrecovery from statin-induced myopathy). Further, as defendants have shown, the medical literature upon which Dr. Zizic did rely does not

support his opinions. Dfs' Br. at 6-12.[5]

*Fifth*, Dr. Zizic, like the expert in *Leathers*, admits that he is unaware of any study showing a causal link between Baycol and persistent or chronic muscle injury, and that he has not conducted any study which found as much. Zizic Dep. (Dfs' Ex. B) at 211:3-9 (no external studies); *id.* at 157:15:7-23, 143:11-22, 230:9-12 (no studies of his own). Indeed, the only basis upon which Dr. Zizic pretends to offer such an opinion is his own, unsupported speculation extrapolating from existing data. *See also id.* at 128:19-129:23; 130:1 (admitting he is speculating when opining that statin use can cause permanent or progressive myopathy with normal creatine kinase levels).

The PSC has presented no basis, other than Dr. Zizic's own *ipse dixit*, to veer from the course set in *Leathers*. Like its sister court in Georgia, this Court should exclude Dr. Zizic's testimony that Baycol caused persistent or chronic muscle injury pursuant to *Daubert* and Rule 702.

[5] The PSC goes so far as to suggest that defendants bear the burden of providing evidence that Baycol does not cause persistent or chronic muscle injury. Pls' Response at 15. This is counter to the standard for the admissibility of expert testimony. First, evidence contradicting Dr. Zizic's conclusions is not relevant in evaluating Dr. Zizic's testimony under *Daubert*. Rather, his methodology is at issue. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (setting forth a nonexhaustive list of principles by which courts can measure the reliability of an expert's methodology). Second, the PSC bears the burden of showing that Dr. Zizic's testimony meets the standard set forth in Rule 702 and *Daubert*. *Wagner v. Hesston Corp.*, 450 F.3d 756 (8th Cir. 2006) ("The burden is on the party offering the expert testimony to prove that it is reliable."). Defendants need not provide evidence disproving Dr. Zizic's conclusions to show that the studies upon which Dr. Zizic relied do not support his opinion.

## II. DR. ZIZIC'S OPINION THAT BAYCOL WAS THE "MOST TOXIC" STATIN IS NOT SUPPORTED BY RELIABLE SCIENTIFIC DATA.

Dr. Zizic predicates his testimony that Baycol was the "most toxic" statin on the market entirely on AERs and studies dealing with AERs. Zizic Dep. (Dfs' Ex. B) at 144:5-22 (stating reliance of studies reporting AERs); 152:11-15 (admitting opinions regarding rhabdomyolysis are based entirely on AERs); Zizic Report (Dfs' Ex. A) ¶¶ 17, 46, 63-67 (citing AER data). The PSC contends that, because they are "facts or data," Dr. Zizic's reliance on AERs in forming his opinions was proper. *See* Pls' Response at 19. But again, the PSC misses the point. There is no question that Dr. Zizic has relied on AERs, or that AERs are "facts or data." *The PSC has not shown that AERs are sufficiently reliable data upon which Dr. Zizic may base his opinion.*

AERs are not reliable data upon which to make any judgments regarding the relative or comparative toxicity of pharmaceutical agents. Indeed, the FDA has expressly cautioned against such comparisons. Annual Adverse Drug Experience Report: 1996 (Dfs' Ex. K); Adverse Event Reporting System: Brief Description with Caveats (Dfs' Ex. L). Courts have heeded the FDA's caution. *See, e.g., Doe v. Ortho-Clinical Diagnostics, Inc.*, 2006 WL 1877150 (July 6, 2006); *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791 (N.D. Ohio 2004), *aff'd*, 447 F.3d 861 (6th Cir. 2006); *Leathers*, 233 F.R.D. at 694. The PSC attempts to remedy the unreliability of AER data by asserting, "The AERS data was sufficient to cause the drug to be withdrawn from the market." Pls' Response at 18. The PSC's premise, however, errantly conflates the policy decisions involved in regulating pharmaceuticals with this Court's task. Moreover, reports of

rhabdo in patients coprescribed Baycol with gemfibrozil or improperly started at the highest Baycol dose – the reasons stated by the FDA at the time Bayer withdrew the product – would not support Dr. Zizic's speculations regarding comparative toxicity. *See* AER Motion and Reply.

The PSC suggests that because other researchers have relied on AER data, Dr. Zizic should be able to as well. Pls' Response at 18 (citing Staffa); 21 (citing Farmer, Hamilton-Craig, and Furberg). Defendants already have explained the limitations of these authorities in their moving papers and AER Motion. Indeed, Dr. Staffa, upon whose data Dr. Zizic relies, expressly acknowledges the limitation on AER data: "Rigorous comparisons between drugs that are based on these [AER] data are not recommended, since many factors can affect reporting and an unknown number of cases may not be attributed to the drug or reported to the FDA. Reporting rates are not incidence rates." Staffa, et al., *Cerivastatin and Reports of Fatal Rhabdomyolysis*, 346 N. Engl. J. Med. 539, 540 (Feb. 14, 2002) (Ex. E to Dfs' Smith Motion).

Moreover, the PSC attempts to bootstrap Dr. Farquhar's "recalculation" of an adverse event report collection onto Dr. Zizic's evaluation of Baycol.[6] The PSC asserts that because Dr. Zizic "reviewed the report [of Dr. Farquhar], spoke with the other experts, and was familiar with their deposition testimony," Dr. Zizic properly used Dr. Farquhar's opinion in forming his conclusion that Baycol was the "most toxic" of the

---

[6] Defendants challenge Dr. Farquhar's "recalculation" of the PacifiCare data, and his opinion more generally. For further discussion of the inadmissibility of Dr. Farquhar's opinion, defendants refer the Court to defendants' Motion to Exclude Expert Testimony of John Farquhar and Reply.

statins. Pls' Response at 20. This is misleading, and at any rate without merit. Dr. Zizic *flatly deferred* to Dr. Farquhar regarding AERs for the purposes of this case. Zizic Dep. (Dfs' Ex. B) at 137:6-15 (admitting that he "defer[s] to Dr. Farquhar on the adverse event analysis in this litigation"). AER data are unreliable, and Dr. Zizic may not simply parrot opinions regarding Baycol AER data formed by another testifying expert. *See* Motion to Exclude Experts Invoking Experts and Reply. Dr. Zizic's opinion that Baycol was the "most toxic" statin is without grounding in reliable scientific data, and should be excluded.

## III. DR. ZIZIC'S CREDENTIALS AS A RHEUMATOLOGIST DO NOT EXCUSE HIS FLAWED METHODOLOGY.

Dr. Zizic is not qualified to opine on the pharmacokinetic or toxicological properties of Baycol, opinions that form the bases for his conclusions that Baycol was the "most toxic" statin and that it caused persistent or chronic muscle injury. He admits he does not have sufficient training in those areas, nor has he ever conducted any study or testing of Baycol. Zizic Dep. (Dfs' Ex. B) at 179:2-180:7 (not a toxicologist or pharmacologist); 137:3-5 (not an epidemiologist); 157:7-23, 143:11-22, 230:9-12 (no studies on statins or Baycol). Specialization is particularly important in the field of medicine. *See, e.g., Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1127-29 (D. Minn. 2005) (toxicologist not qualified to opine on disease etiology); *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996) (applying *Daubert*, neurologist with no experience or study in the head injury treatment at issue not qualified). Dr. Zizic is a bone disease specialist, and though there are muscle disease specialists in the field of

rheumatology, he is not one of them. *See* Zizic Dep. (Dfs' Ex. B) at 14:16-15:6 (stating that his specialty is osteonecrosis and osteoporosis, diseases of the bone); *id.* at 235:12-236:3 (stating that there are muscle disease specialists in rheumatology, and that he is not one of them).

Nevertheless, the PSC attempts to fill the voids in Dr. Zizic's relevant experience and lack of expertise in toxicology and pharmacokinetics by discussing, at length, the highlights of Dr. Zizic's career. Pls' Response at 2-4. The PSC contends that Dr. Zizic's "'on-the-job' training" in analyzing adverse event and clinical trials data lends credibility to his reading of the available medical literature regarding Baycol. *Id*. at 3. The PSC wants this Court to believe that if Dr. Zizic says it's so, then it must be true. This is the sort of *ipse dixit* that is unacceptable under *Daubert*.

Even if Dr. Zizic were qualified to opine on the pharmacokinetic properties of Baycol, his achievements would not change the fact that he is admittedly leaping from the existing medical data to his opinions without any grounding in science. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *General Elec. Corp. v. Joiner*, 522 U.S. 136, 146 (1997). The courtroom is not the place for further "'on-the-job' training," as the PSC puts it. *See Lauzon*, 270 F.3d at 687 (citing as a factor for reliability "whether the expertise was developed for litigation or naturally flowed from the expert's research"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (courts should be wary of

opinions made for litigation that do not derive from the "expert's" independent training or work). The Court should reject the PSC's effort to remedy the defects in Dr. Zizic's methodology by merely presenting his career achievements. The relevant inquiry is whether the studies upon which Dr. Zizic relied support his opinions *in this case*, and they do not. Rule 702 and *Daubert* require more than a lengthy curriculum vitae.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude the testimony of Thomas M. Zizic, M.D. pursuant to *Daubert* and Rule 702.

Dated: August 11, 2006

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
James H.R. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, NW Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*