**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF RICHARD KAPIT**

In their opening brief, defendants showed that Dr. Kapit's proposed testimony is inadmissible under *Daubert* and Rule 702. In their Response, plaintiffs concede that a number of aspects of Dr. Kapit's testimony are inadmissible. As to the remaining opinions at issue, plaintiffs' arguments fail.

First, defendants explained that Dr. Kapit's opinions based on adverse event reports ("AERs") are unreliable and inadmissible because AERs cannot support reliable conclusions about medical causation or comparative drug safety. Defs' Br. at 3-6. In response, plaintiffs disavow any intention to offer Dr. Kapit to present AER-based testimony relating to "a causal connection between Baycol and its adverse events," but then assert that he should be allowed to opine about supposed "increased risk[s]" and "dangers of Baycol." *Id*. This cannot save Dr. Kapit's testimony. As shown in Defendants' AER Motion, an expert witness may not offer opinions based on AERs about the alleged propensity of a drug to cause injury or about the relative risks of drugs.

Second, defendants explained, under *Buckman Co. v. Plaintiffs' Legal Committee*, Dr. Kapit's opinion that Bayer should have provided more or different

information to the FDA is inadmissible because it is not relevant to any viable state-law claim. 531 U.S. 341 (2001) (alleged breach of a company's duties of disclosure to the FDA cannot form a basis for liability under state law). *See* Defs' Br. at 6-9. Plaintiffs acknowledge that federal law preempts state-law claims that are premised on allegedly false statements to the FDA, but seek to limit that preemptive effect to claims of injury to the FDA itself. *See* Pls' Response at 4-6. There is no basis for such a limitation. In *Buckman* itself, the plaintiffs did not purport to state claims for injuries to the FDA; rather they, like plaintiffs here, claimed to have suffered personal injuries allegedly caused by improper representations to the FDA. *See* 531 U.S. at 346-47. Thus, Dr. Kapit's testimony about Bayer's allegedly inadequate submissions to FDA is inadmissible because it relates to preempted state-law claims.

Third, defendants explained that Dr. Kapit's opinions about defendants' supposed motivations or intentions, what defendants knew at given times, and defendants' ethical obligations are outside the scope of admissible expert testimony. Defs' Br. at 10-14. Plaintiffs concede that Dr. Kapit's "speculation about motivations of Defendants," his "personal ethical leanings," and his testimony about "ethics and its cognates" are inadmissible. Pls' Response at 9-10. Plaintiffs then try to salvage Dr. Kapit's expert report by replacing the term "unethical" – which they concede is "inappropriate" – with "irresponsible" or "reckless." *Id.* at 12. Dr. Kapit should not be allowed to offer inadmissible testimony about "ethics" by altering the label while offering the same substantive opinions.

Finally, defendants showed that Dr. Kapit's opinions regarding regulatory actions in foreign countries are irrelevant and inadmissible. Defs' Br. at 14-16. Plaintiffs quibble that the cases cited by defendants arose in different procedural contexts or relied upon Rule 403 rather than Rules 401 and 402. These arguments do nothing to undermine the conclusion that testimony about whether "foreign governments took measures to restrict the use of Baycol," Pls' Response at 14, should be excluded because the actions of foreign regulatory agencies are predicated on different legal standards than the domestic law at issue here. Indeed, plaintiffs themselves rely upon a case in which "evidence of European legal standards and requirements" was excluded. *See id.* at 13 (citing *Sherry v. Massey-Ferguson, Inc.*, 1997 WL 480893, at *2 (W.D. Mich. June 5, 1997)).

## ARGUMENT

### I. DR. KAPIT MAY NOT OFFER OPINIONS BASED ON ADVERSE EVENT REPORTS ABOUT ALLEGED HEALTH RISKS OF BAYCOL OR ABOUT COMPARATIVE DRUG SAFETY.

According to his report, Dr. Kapit intends to offer opinions regarding Baycol's alleged "propensity to cause severe adverse reactions in muscle tissue," Kapit Report (Defs' Ex. A[1]) ¶ 72, and comparisons between Baycol's propensity to cause injuries and that of other drugs, *see id*. ¶¶ 75, 84. Dr. Kapit bases those opinions not on the results of clinical or epidemiological studies, (as plaintiffs suggest, Pls' Response

[1] Exhibit references are to exhibits for Defendants' Memorandum in Support of Their Motion to Exclude Expert Testimony of Richard Kapit ("Defs' Ex.") or to this Reply ("Reply Ex.").

at 2), but on adverse event reports ("AERs") submitted by Bayer to the FDA. *See id*. ¶¶ 74, 113-32. Defendants explained that such testimony is inadmissible under Rule 702 and *Daubert* because reliance upon AERs to draw conclusions about causation and safety comparisons between different medicines is fundamentally unreliable as a matter of elementary scientific principles. Defs' Br. at 3-6; *see also* AER Motion and Reply.

As Dr. Kapit himself admitted, "most adverse events that get reported *are not related* to the drugs that the patients have taken," Kapit Report (Defs' Ex. A) ¶ 56 (emphasis added), and AERs "cannot be used to calculate inciden[ce] rates," Kapit Dep. (Defs' Ex. B) at 238; *see also id*. at 236 ("in a large number of [AERs], . . . there is probably no relationship between the drug and the adverse event"). In view of those admissions, plaintiffs now assert that Dr. Kapit does *not* intend to rely on AERs to establish "a causal connection between Baycol and its adverse effects." Pls' Response at 3. Plaintiffs, however, maintain that Dr. Kapit can testify that AERs showed "the dangers of Baycol" and established an "increased risk of rhabdomyolysis from Baycol use" (*i.e.*, increased relative to other statins). *Id*.[2]

Such testimony should not be allowed. As defendants have explained, AERs are anecdotal and unscientific, and cannot establish "the dangers" of a drug or an "increased risk" of one drug relative to another. Indeed, if, as plaintiffs have asserted, Dr. Kapit will not opine that AERs establish a "causal connection between Baycol and its

---

[2] Like plaintiffs' other experts, Dr. Kapit improperly generalizes about comparative muscle toxicity based on rhabdo AERs. Such speculation is improper under *Daubert* and its progeny. *See* AER Reply.

adverse effects," then he likewise cannot testify that AERs established an "increased risk" or "danger" of Baycol compared to other drugs. Conclusions based on AERs about the propensity of a drug to cause injury or about the relative risks of different drugs are inherently unreliable and therefore inadmissible under Rule 702 and *Daubert*. Dr. Kapit's proposed testimony based on AERs should be excluded.

## II. DR. KAPIT'S OPINIONS REGARDING THE ADEQUACY OF BAYER'S SUBMISSIONS TO THE FDA ARE PREEMPTED BY FEDERAL LAW.

Much of Dr. Kapit's proposed testimony consists of criticisms of Bayer's submissions to the FDA. *E.g.*, Kapit Report (Defs' Ex. A) ¶¶ 37, 42, 88-90, 118-19. Defendants showed that such testimony should be excluded because an alleged failure of a company to comply with its obligations to the FDA cannot form a basis for liability under state law; Dr. Kapit's opinions in this vein thus are not relevant to any viable claim in these cases. Defs' Br. at 6-9. In response, plaintiffs mischaracterize *Buckman* and misstate the law in attacking the FDA's view about the preemptive effect of FDA regulations.

### A. Plaintiffs Mischaracterize *Buckman* and Cases Following It.

In *Buckman*, the Supreme Court held that federal law preempts state-law tort claims based on alleged misrepresentations to the FDA. 531 U.S. at 353. Under *Buckman*, as plaintiffs acknowledge, "false statements to the federal government" are beyond the reach of state law. Pls' Response at 4. It follows that Dr. Kapit's opinions regarding allegedly improper or inadequate representations to the FDA cannot be presented to a jury in support of state-law claims.

To avoid this conclusion, plaintiffs distort *Buckman*, arguing that the holding is confined to claims of injury to the FDA itself, and does not apply to alleged torts against patients and others. Pls' Response at 5. That argument ignores the facts in *Buckman*. The FDA was not a party in *Buckman*, and the plaintiffs there did not purport to seek recovery for an injury to the FDA. Rather, the plaintiffs alleged that the defendant company had "made fraudulent representations to the [FDA] in the course of obtaining approval to market" its devices, and that "such representations were at least a 'but for' cause of injuries that plaintiffs sustained from the implantation of these devices: Had the representations not been made, the FDA would not have approved the devices, and plaintiffs would not have been injured." 531 U.S. at 343. Simply put, *Buckman* involved a case where the alleged failure to provide information to the FDA allegedly caused injury to an individual. In light of these facts, plaintiffs' suggestion that *Buckman* does not apply to "state tort claims that arise from injuries to persons other than the federal agency" is demonstrably wrong. Pls' Response at 4.

Nor do *Silkwood v. Kerr -McGee Corp.*, 464 U.S. 238 (1984), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), support plaintiffs' analysis of *Buckman*. Pls' Response at 4-5. In *Buckman*, the Supreme Court explained that *Silkwood* and *Medtronic* were inapposite to the Court's conclusion that federal law preempts state law claims that depend on a showing that a manufacturer's communications with a federal agency caused plaintiffs' injuries. *Buckman*, 531 U.S. at 352 (discussing *Silkwood* and *Medtronic*). Here, Dr. Kapit seeks to testify that defendants are liable because they should have provided different information to the FDA. As in *Buckman*, such claims are

based upon an alleged violation of a duty arising from FDA regulations, and, as in *Buckman*, those fraud-on-the-agency claims are preempted by federal law.[3]

Finally, plaintiffs' efforts to distinguish the cases cited by defendants (*see* Response at 6-7) are unavailing. In *Bouchard v. American Home Prods. Corp.*, 213 F. Supp. 2d 802 (N.D. Ohio 2002), the court excluded, on grounds of preemption, evidence "that the FDA was misled, or that information was intentionally concealed from the FDA." *Id*. at 812. The court explained that federal law preempted claims "that 'but for' fraudulent representations made by the defendants to the FDA, . . . the plaintiffs would not have been injured." *Id*. (citing *Buckman*, 531 U.S. at 343). Similarly, in *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27 (D.D.C. 2003), the court explained that the plaintiffs could not rely on "defendant's alleged failure to report and to investigate adverse incidents to the FDA" because such claims are preempted by federal law, making such evidence irrelevant. *Id*. at 36. Plaintiffs err in asserting that the *Webster* court "never

[3] The other cases cited by plaintiffs are likewise inapposite. The court in *In re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.*, 2004 WL 45503 (D. Minn. Jan. 5, 2004), declined to find preemption under *Buckman* because there was "a fundamental difference in the very source of the cause of action" between claims "based in traditional state tort law," like those in *Medtronic*, and claims based on requirements imposed by federal regulations, like those in *Buckman*. *Id*. at *13. Similarly, in *Kittleson v. Sandoz Pharm. Corp.*, No. 98-2277 (D. Minn. Sep. 20, 2001) (Reply Ex. A), the magistrate judge recommended that claims "based on a duty of care owed directly to the consumer" – as distinguished from "the duty of disclosure to the FDA" – should not be barred. *Id*., slip op. at 7. The court recommended, however, that "any and all of Plaintiffs' claims premised solely on allegations of fraud on the FDA are preempted." *Id*. at 3. And, the relevant holding of *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005), that "*Buckman* is not applicable to" expert testimony "on whether the FDA correctly balanced the benefits and risks of a drug from a regulatory standpoint," *id*. at 595, 587, is beside the point. Defendants have not argued that *Buckman* bars otherwise admissible expert testimony on the federal regulatory process.

suggested that evidence of inadequate submissions to the FDA cannot support a failure-to-warn claim." Pls' Response at 7. The court said exactly that: "what was told to the FDA cannot support a tort claim." 259 F. Supp. 2d at 37.

In sum, claims under state law that are premised on allegedly inadequate or incomplete submissions by a drug company to the FDA are preempted under the principles set forth in *Buckman*. Accordingly, evidence offered to show that Bayer's submissions to the FDA were flawed or inadequate is irrelevant and inadmissible. Dr. Kapit therefore should not be allowed to offer his opinions that Bayer should have provided more, different, or "better" information to the FDA in connection with the approval of Baycol.

**B. The FDA's Expert View Supports Defendants' Position.**

Plaintiffs likewise are wrong in their criticism of the FDA's statement that state-law tort claims are preempted to the extent they conflict with FDA regulations. *See* Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, Final Rule & Notices, 71 Fed. Reg. 3922, 3934-36 (Jan. 24, 2006) ("FDA Final Rule," Defs' Ex. G); *see* Defs' Br. at 8. The FDA explained that its regulations "establish both a 'floor' and a 'ceiling'" as to what is required of regulated companies, and thus the regulations preempt state-law requirements (including civil judgments) that purport to exceed or alter what the regulations require. FDA Final Rule, 71 Fed. Reg. at 3935.

None of plaintiffs' responses undermines defendants' showing. Plaintiffs claim there is "significant adverse precedent" contrary to the FDA's position. Pls'

Response at 8, citing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), and *Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002). However, both *Bates* and *Sprietsma* are fully consistent with the FDA's position on preemption. In *Sprietsma*, the federal agency (in contrast with the FDA here) had expressly stated that it "does not view [the governing regulations] as having any pre-emptive effect." *Id*. at 68. In *Bates*, the Supreme Court held that state law requirements were not preempted to the extent they were "equivalent to, and fully consistent with," federal requirements. 544 U.S. at 447; *see id*. at 453 ("a state-law labeling requirement must in fact be equivalent to a requirement under FIFRA in order to survive pre-emption"). The Court remanded the case with instructions to determine whether that criterion was met. *Id*. at 454.

Plaintiffs also assert that the position stated in the January 2006 Federal Register notice "reversed the FDA's longstanding position that state-law tort claims are not preempted by the drug approval process." Pls' Response at 9. However, the agency expressly stated that the position taken in the notice "represents the government's long standing views on preemption." Final Rule (Defs' Ex. G) at 3934. The FDA's statement in a 1979 Federal Register notice that plaintiffs cite presents no conflict at all. There, a commenting party had suggested that allowing drug companies to participate in the labeling process was designed to insulate the companies from state tort liability. 44 Fed. Reg. 37,434, 37,437 (June 26, 1979). The agency simply stated that regulated companies are not immune from otherwise valid state tort actions. *Id*.

Finally, plaintiffs argue that this Court "should not afford the FDA position any deference" because it was articulated in a preamble to a Federal Register notice. Pls'

Response at 9. The Supreme Court has made clear, however, that a federal agency can state its intent to preempt state law "through a variety of means, including regulations, preambles, interpretive statements, and responses to comments," *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 718 (1985), and such statements (provided they are clear and specific) serve as authoritative pronouncements of the agency's position. *Id.*; *cf. Geier v. American Honda Motor Co.*, 529 U.S. 861, 883 (2000) (stating that an agency may express its position on preemption in amicus briefs). As one federal court aptly explained, in adopting the FDA Final Rule, "[t]he FDA has acted within its authority, and this Court must respect its expert judgment" on the preemption issue. *Colacicco* v. *Apotex, Inc.*, 432 F. Supp. 2d 514, 530 (E.D. Pa. 2006).[4]

In short, the FDA has clearly and unequivocally expressed its position that state-law civil actions are preempted to the extent they would impose requirements that exceed or conflict with those set out in the FDA regulations.

## III. DR. KAPIT MAY NOT OFFER OPINIONS ABOUT DEFENDANTS' STATE OF MIND, MOTIVATIONS, OR SUPPOSED ETHICAL OBLIGATIONS.

Plaintiffs concede that Dr. Kapit's opinions about defendants' supposed motivations or intentions are "outside the realm of specialized knowledge required by

[4] Plaintiffs say that several courts have rejected the FDA's position on preemption. Pls' Response at 8-9. But they cite only a single, unpublished decision rejecting a preemption argument. *In re Paxil Litig.*, 2002 WL 31375497 (C.D. Cal. Oct. 18, 2002). And that decision does not help plaintiffs. That decision was issued more than three years before the FDA issued its Final Rule. Moreover, the *Paxil* case concerns prescription drug advertising rules, which are not in issue here. *Id*. at *1.

Federal Rule of Evidence 702" and should be excluded. Pls' Response at 9-10.[5] Likewise, plaintiffs concede that Dr. Kapit's "personal ethical leanings are inappropriate content for expert testimony." *Id*. at 10. Finally, plaintiffs "agree that the Court should preclude Dr. Kapit from using the word 'ethics' and its cognates." *Id*.

Nevertheless, plaintiffs make clear that they intend to introduce Dr. Kapit's opinions about defendants' supposed ethical obligations in the guise of opinions about "the standard of care for pharmaceutical manufacturers." *Id*. That should not be allowed. There is a critical distinction, which plaintiffs attempt to obscure, between opinions about pharmaceutical industry standards and opinions about what is "ethical" more generally. This distinction is well explained in the *Diet Drugs* opinion cited by plaintiffs (Pls' Response at 11). The plaintiffs in the *Diet Drugs* MDL offered an expert witness to testify "regarding breach of ethical duties [to] help the jury determine the standard of care and whether it was breached." *In re Diet Drugs Prods. Liab. Litig.*, 2001 WL 454586, at *8 (E.D. Pa. Feb. 1, 2001). The court excluded the testimony, explaining that "the pertinent issues in this litigation are the obligations of a pharmaceutical company in testing, surveying and labeling medications," and the witness's views on "ethical duties" would shed no light on those issues. *Id*. at *8-9; *see also id*. at *9 (witness's purported expertise in ethics "simply does not qualify him to render opinions concerning the

[5] Though plaintiffs do not expressly address it, the same reasoning applies to Dr. Kapit's opinions about what defendants or others (including FDA officials) may have known at given times (*e.g.*, Kapit Report (Defs' Ex. A) ¶¶ 27, 70, 72, 73, 85, 86), which likewise are "outside the realm of specialized knowledge." Accordingly, plaintiffs' concession should be understood to extend to such opinions as well.

appropriate conduct of pharmaceutical companies in the manufacture and marketing of drugs"). Accordingly, the court admitted expert testimony about the FDA's regulations, but excluded testimony that was not "based on an interpretation of FDA regulations or [the expert's] experience in applying those regulations." *Id*. at *18 (emphasis added).[6]

These principles confirm that the proposed testimony in Dr. Kapit's report should be excluded. *See*, *e.g.*, Kapit Report (Defs' Ex. A) ¶ 14 (stating opinions about drug companies' "ethical obligations as providers of critical components of our health care system"); *id*. ¶ 104 (stating what he thinks "ought to be expected of an ethical pharmaceutical company"); *id*. ¶¶ 96, 98 (criticizing Bayer's "attitude"). Nor can plaintiffs salvage Dr. Kapit's opinions by arguing that "unethical" is merely "a synonym for irresponsible or even reckless." Pls' Response at 11. To say an act is "irresponsible" is no different from saying it is unethical, immoral, etc. – it goes to a layman's conception of right and wrong, not an expert's knowledge of technical and professional standards. As for the phrase "reckless," it is either another improper "cognate" of ethical, or an improper legal conclusion. *See In re Acceptance Ins. Cos. Secs. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) (affirming exclusion of "expert opinions [that were] little more than legal conclusions"); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)

---

[6] A similar distinction is drawn in medical malpractice cases involving expert testimony on the standard of care. *E.g.*, *DeWitt v. Brown*, 669 F.2d 516 (8th Cir. 1982) (cited by plaintiffs, Response at 11). Such cases involve testimony about, for example, the "standards of care applying to orthopedic surgery," *id*. at 522 – not about a doctor's ethical or moral obligations. The other case plaintiffs cite, *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684 (W.D.N.C. 2003) (another Fen-Phen case), likewise confines the expert testimony to objective industry and regulatory standards. *See id*. at 701-02.

(reversing admission of expert testimony on "the reasonableness of the [defendants'] conduct" because the "testimony was not a fact-based opinion, but a statement of legal conclusion").

## IV. PLAINTIFFS HAVE NOT COUNTERED DEFENDANTS' SHOWING THAT EVIDENCE ABOUT FOREIGN REGULATORY MATTERS IS INADMISSIBLE.

Plaintiffs do not undermine defendants' showing that Dr. Kapit's proposed testimony regarding regulatory actions and decisions in foreign countries is inadmissible because it has no bearing on the claims in these cases, which are governed by domestic law.

First, plaintiffs' efforts to distinguish apposite cases fail utterly. For example, plaintiffs argue that *Harrison v. Wyeth Labs.*, 510 F. Supp. 1 (E.D. Pa. 1980), does not support defendants because the court was addressing the issue of forum non conveniens rather than admissibility. Pls' Response at 12-13. But the ruling in *Harrison* turned on that court's conclusion that the regulatory standards applied by foreign countries were not the same as our own. Thus, the Court explained:

> *Each [country] makes its own determination as to the standards of degree of safety and duty of care*. This balancing of the overall benefits to be derived from a product's use with the risk of harm associated with that use is peculiarly suited to a forum of the country in which the product is to be used. Each country has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits, and which will tip the balance for it one way or the other. *The United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country*.

510 F. Supp. at 4 (emphasis added). Here, plaintiffs seek to do what *Harrison* held is inappropriate: to judge defendants in cases raising claims under domestic law based upon foreign regulatory standards. *Id.* at 5 ("fairness to the defendant mandates that defendant's conduct be judged by the standards of the community affected by its actions"). Foreign governments' actions, under foreign law, based on drug sales and marketing in foreign countries, simply are not within the purview of American courts applying domestic law.

Plaintiffs' effort to distinguish *Deviner v. Electrolux Motor, AB*, 844 F.2d 769 (11th Cir. 1988), is equally unpersuasive. In *Deviner*, the Eleventh Circuit upheld the exclusion of evidence relating to Swedish regulatory requirements, noting that such evidence would tend to confuse the jury. *Id*. at 773. Plaintiffs argue that the court's reliance on Rule 403 rather than Rule 402 signaled by negative implication that the evidence satisfied Rule 402. Pls' Response at 13-14. That illogical leap does not help plaintiffs, because they have no response to *Deviner*'s conclusion that exclusion of evidence of foreign regulatory actions was within the court's discretion because such evidence could have "confused" the jury.

Indeed, the one case on which plaintiffs rely, *Sherry v. Massey-Ferguson, Inc.*, 1997 WL 480893 (W.D. Mich. June 5, 1997), supports defendants' position. The *Sherry* court expressly distinguished between "evidence of European legal standards and requirements (such as the fact that passenger seats were mandatory in Germany but banned in Italy)" – which it concluded was *inadmissible* – and "evidence of foreign tractor design [to prove] the feasibility of alternate tractor designs." *Id*. at *2. Here, Dr.

Kapit does not seek to offer evidence about the feasibility of an alternate design of Baycol, or anything of that sort. Rather, the opinions of Dr. Kapit that defendants ask this Court to exclude have to do with foreign legal and regulatory matters that *Sherry* and other federal cases have held inadmissible.

Finally, plaintiffs argue that evidence of foreign regulatory actions is relevant to show notice. Pls' Response at 14-15. As plaintiffs admit, however, "[n]otice is not dependent on the regulatory actions of any government agency, whether foreign or domestic." *Id*. at 15 n.7. Thus, Dr. Kapit's proposed testimony on foreign regulatory actions should be excluded for the reasons already discussed.

**CONCLUSION**

For these reasons, defendants respectfully request that plaintiffs' expert Richard Kapit be precluded from testifying in this MDL proceeding.

Dated: August 11, 2006

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
Richard H. Menard, Jr.
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, NW Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*