**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF HARLAND AUSTIN**

The PSC has failed to meet its burden of establishing the admissibility of Dr. Austin's opinions regarding the relative risk of Baycol. *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993). This is unsurprising because, as defendants explained in their opening brief, Dr. Austin turned the scientific method on its head by manipulating the PacifiCare data to reach the conclusion he started out with – that Baycol was worse than the other statins.

In its opposition, the PSC merely restates portions of Dr. Austin's report and baldly asserts that "Dr. Austin did not start with that conclusion. Rather, that is where the data ineluctably led him." Pls' Response at 8. The PSC is mistaken, however. Both Dr. Austin's expert report and deposition testimony confirm that he started out with the "assum[ption]" and "suppos[ition]" that "Baycol was worse than the other statins." *See* Austin Rep. (Defs' Ex. A[1]) ¶ 58; Austin Dep. (Defs' Ex. B) at 262. Based upon this assumption, Dr. Austin massaged and inflated the PacifiCare data to show that the data

[1] Exhibit references are to exhibits for Defendants' Memorandum in Support of Their Motion to Exclude Expert Testimony of Harland Austin ("Defs' Ex.").

"masked" the fact that Baycol was worse than other statins. By starting with the very conclusion he wanted to find, Dr. Austin failed to follow the basic tenets of the scientific method. *See, e.g., Daubert*, 509 U.S. at 593. His opinions are therefore inadmissible. *Sorensen v. Shaklee Corp.*, 31 F.3d 638, 649 (8th Cir. 1994) (excluding expert who "reasoned from an end result in order to hypothesize what needed to be known but was not.")

The PSC also largely ignores the problems associated with Dr. Austin's reliance on AER data to support his opinion about the relative risks of Baycol. The PSC asserts that Dr. Austin's reliance on AERs is "appropriate, valid, and reliable." Pls' Response at 12. However, the PSC never really deals with the inherent limitations of AER data, limitations that Dr. Austin acknowledges. *See* Austin Dep. (Defs' Ex. B) at 34-40; Austin Rep. (Defs' Ex. A) ¶ 19. Due to these inherent infirmities, the FDA and the courts agree that AER data cannot be used to make comparisons between drugs – the very analysis that Dr. Austin purports to do. *See, e.g., McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) (reversing jury verdict because expert testimony was based upon AERs and other unreliable evidence).

## ARGUMENT

### I. DR. AUSTIN'S RE-CALCULATION OF THE PACIFICARE DATA VIOLATES THE SCIENTIFIC METHOD.

Dr. Austin's expert report and deposition testimony make clear that he began his analysis of the PacifiCare study with the conclusion he sought to prove: that Baycol monotherapy was "worse than monotherapy with the other statins." Austin Dep.

(Defs' Ex. B) at 262:2-5. This renders his opinion inadmissible. An expert may not "reaso[n] from an end result," because that type of result-oriented analysis violates the scientific method. *Sorensen*, 31 F.3d at 649; *see also Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 783 (10th Cir. 1999); *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994).

The PSC does not dispute or distinguish the cases cited by defendants. Instead, it asserts that "Dr. Austin did not start with that conclusion. Rather, that is where the data ineluctably led him." Pls' Response at 8. However, the PSC provides no support for this assertion, and there is none. Dr. Austin's deposition testimony and expert report reveal that he did, in fact, begin his re-calculation of PacifiCare with the "assum[ption]" and "supposition" that Baycol monotherapy was worse than with the other statins:

> Q: So when you recalculated the PacifiCare data, you did so upon a supposition that there was a[n] association between Baycol and monotherapy and that it was higher for Baycol than the other statins?
>
> A: In the context that if there were such a situation, that misclassification of exposure would obscure it, yes.

Austin Dep. (Defs' Ex. B) at 263:2-9.

Dr. Austin also "assumes" the very conclusion he sets out to find: he "[a]ssum[es] the RR [relative risk] of myopathy for Baycol users compared with users of other statins is between 2 and 4 . . . ." Austin Rep. (Defs' Ex. A) ¶ 58. He then proceeds to "inflate" the PacifiCare data (thru complicated calculations) to make that data conform to this assumption. Austin Rep. (Defs' Ex. A) ¶ 74; Austin Dep. (Defs' Ex. B) at 260:23-

25 ("So I adjusted the values that started with just the adjustment for failure to do the correct analysis, and I added a little bit more"). This is just the type of conclusion-first approach the Eighth Circuit rejected in *Sorensen*. It should be rejected here as well.

Plaintiffs' repeated unsupported assurances that Dr. Austin used "accepted and valid methodologies" for his various recalculations related to the PacifiCare study do nothing to meet their burden under *Daubert*. *See, e.g.*, Pls' Response at 3, 6, 9 ("Using accepted methodologies and eminently clear reasoning . . . "; "using accepted and valid methodologies . . . "; "Dr. Austin's corrections for misclassification were logically explained . . . "; "Dr. Austin did not have the same degree of quantitative support for his correction for misclassification of exposure, but he again explained his reasoning . . . ").[2]

Plaintiffs do not discharge their burden with mere assurances, nor with the expert's "eminently clear reasoning" or "explanation" of Dr. Austin's methodology. Rather, they must demonstrate – as they have not done – that the methodology that Dr. Austin employed comports with sound science. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (nothing in the "Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Savage v. Union Pacific RR Co.*, 67 F. Supp. 2d 1021, 1035 (E.D. Ark. 1999)

[2] The PSC spends a great deal of time discussing a scenario in which a "nondifferential misclassification" can mask the apparent relative risk of two hypothetical drugs. But in the PSC's example, the incidence rates of the hypothetical disease are known "in fact" for both of the drugs at issue. Pls' Response at 7. Similarly, the "real relative risk" is known. *Id*. Here, no incidence rates of myopathy (or rhabdomyolysis) are known for Baycol or any of the other statins. Nor is the "real relative risk" known for Baycol as compared with the other statins. Plaintiffs' characterization of Dr. Austin's conclusions regarding his recalculated relative risk as "fact" does not make it "fact" or make his analysis methodologically sound under *Daubert*.

(where expert's conclusion is "nothing more than an 'educated guess' with no scientific data to support it … [t]he opinion fails to meet the requirements of *Daubert* and Fed. R. Evid. 702"); *see also Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (the Court must "separat[e] expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge").

Dr. Austin's opinion is based upon unjustified assumptions and recalculations that do not comport with good scientific method. His testimony regarding the PacifiCare study should therefore be excluded.

**II. DR. AUSTIN'S TESTIMONY ON RELATIVE RISK IS INADMISSIBLE BECAUSE IT IS BASED ON ADVERSE EVENT REPORTING DATA.**

As explained in more detail in Defendants' AER Motion, Dr. Austin's reliance on AER data to support his opinion about the relative risk of Baycol makes his opinion inadmissible. *See, e.g., In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 807 (N.D. Ohio 2004), *aff'd*, 447 F.3d 861 (6th Cir. 2006) (rejecting proportional reporting rate analysis based on AERs as "incomplete and often misleading").

The PSC does not dispute that Dr. Austin relied upon AER data for his opinion on the relative risk of monotherapy Baycol as compared to other statins. Nor does the PSC dispute that Dr. Austin acknowledges that AER data is subject to inherent bias, and that he did nothing to eliminate that bias. As Dr. Austin put it during his deposition, he "didn't do anything specifically [to eliminate bias] because [he] didn't have anything but [the] tabulations" provided to him by plaintiffs' counsel. Austin Dep. (Defs' Ex. B) at 74:13-14.

Instead, the PSC asserts that Dr. Austin's opinions with respect to adverse event data "reflect sound, reliable, and valid science, and they are clearly admissible." Pls' Response at 10. This empty statement is insufficient to demonstrate that Dr. Austin's analysis is based upon sound methodology as required by *Daubert*. *See Doe v. Ortho-Clinical Diagnostics, Inc.*, ___ F. Supp. 2d ___, 2006 WL 1877150, *3 (M.D.N.C. July 6, 2006) ("[A] bold statement of the expert's qualifications, conclusions and assurances of reliability are not enough to meet the *Daubert* standard").

Dr. Austin's calculations of relative reporting rate and proportional reporting rate are not reliable due, among other things, to the unfounded assumptions upon which they are based, including the assumption that rhabdomyolysis reporting rates are comparable across all statins. Austin Rep. (Defs' Ex. A) ¶ 19. The PSC acknowledges that Dr. Austin "did not have data that would have allowed him to address" the validity of this assumption, but argues that he had "other ways to address the concern." Pls' Response at 11. Dr. Austin addressed this concern, according to the PSC, by explaining that "confounding 'is *not likely* an important problem because persons using various cholesterol lowering drugs are *likely to be roughly comparable* with respect to the determinants of myopathies.'" *Id*. at 11 (emphasis added). This statement is not only based on conjecture, but has nothing whatsoever to do with whether users of different statins reported rhabdomyolysis at comparable rates.

As explained more fully in Defendants' AER Motion, reporting rates can be affected by factors including, but not limited to, how long a medication has been on the market and whether a particular adverse event is well-known when that medication came

on the market. Indeed, Dr. Austin himself admits that his "assumption [about the comparability of reporting rates] could be wrong." Austin Dep. (Defs' Ex. B) at 78:11-12.

**CONCLUSION**

For these reasons, and the ones stated in their opening memorandum, defendants respectfully request that this Court exclude Dr. Austin's proposed testimony about the relative risk of monotherapy Baycol based on his analysis of adverse event reports and his re-calculation of the PacifiCare study.

Dated: August 11, 2006

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/

Susan A. Weber
James W. Mizgala
Sherry A. Knutson
Nathan Huey
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/

Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, NW Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*