**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF STEPHEN RASKIN**

In their opening papers, defendants demonstrated that Dr. Stephen Raskin's putative expert testimony was inadmissible because, *inter alia*, (1) his expert report rested almost entirely upon review of adverse event reports ("AERs"); (2) at the time he submitted the report, he had never used AER data to perform safety comparisons of medications; (3) at the time he submitted his report, he was unfamiliar with the FDA's regulations governing AERs and was likewise unfamiliar with the limitations and biases of AER data; (4) despite offering his conclusions about the comparative safety of Baycol based on AER data, Dr. Raskin did not review any data regarding the risks posed by other statins, and, at the very most, his safety "analysis" was entirely based on the risk of rhabdomyolysis rather than complete side effect profiles for the various medications; (5) Dr. Raskin has no experience in drug labeling which would render him fit to offer an opinion on the subject; and (6) under the guise of expert opinion, Dr. Raskin offers legal conclusions and speculative assumptions about Bayer's motives and morals, as well as the affect of Bayer's representations on the medical community.

Plaintiffs do not confront these shortcomings head-on. Plaintiffs instead seek to engage in an extended discourse about Dr. Raskin's medical training and participation on an advisory panel, as well as various articles – not cited in the expert report – that touch on Baycol AERs. *See* Pls' Response at 1-12. None of this information has any bearing on the opinions Dr. Raskin offered in his report in *this case*. As defendants demonstrated in their moving papers, Dr. Raskin's report and deposition testimony make clear that he espoused plaintiffs' desired conclusions, then only after submitting his report did he even arguably begin undertaking the work necessary to support his claims. This belated effort – highlighted by plaintiffs' revisionist opposition – to apply a methodology to Dr. Raskin's conclusory and wildly accusatory claims is insufficient to salvage his putative expert opinion under *Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence.

**ARGUMENT**

In moving to exclude Dr. Raskin, defendants showed his central assertion is that Baycol was comparatively more dangerous than other statins. Defendants further demonstrated that Dr. Raskin was unfit to offer this opinion because it rested entirely on unreliable AERs, and even if such AER data could be deemed reliable (which it cannot), Dr. Raskin repeatedly exhibited a lack of familiarity with the AER data and the facts that purportedly would allow him to reach his conclusion. In response, plaintiffs contend that Dr. Raskin is qualified to offer his conclusions about the increased dangers of Baycol because (1) he is *now* sufficiently familiar with the AER data and the changes-being-

effected process to do so, *see* Pls' Response at 4-5, 8-10, and (2) Dr. Raskin can offer "real-world testimony about his experience prescribing Baycol and other statin therapies." *Id.* at 7.

With respect to the first consideration, plaintiffs' claims regarding Dr. Raskin's expertise are demonstrably false as set forth in defendants' opening brief and reiterated below. When Dr. Raskin authored his expert report – the relevant time period – he exhibited a lack of expertise with AERs, did not have the relevant facts in his possession regarding the instant AERs, and was generally unversed in the FDA labeling process. All of those considerations, however, were vital to the expert opinion Dr. Raskin claimed to form, and his belated initial review of such materials in preparation for his deposition cannot change his deficient methodology or the insufficient factual basis that underlies his putative expert opinion.

Plaintiffs' second argument – based on Dr. Raskin's purported real-world experience – is even more desperate. Dr. Raskin testified that while he was prescribing Baycol, not one of his patients sustained rhabdomyolysis or stopped taking Baycol because of adverse reactions. *See* Raskin Dep. (Reply Ex. A[1]) at 31:2-32:14. Thus, no matter how many times plaintiffs invoke the mantra that Dr. Raskin is a "percipient witness," *e.g.*, Pls' Response at 1, 2, 7, 15, 21, his perceptions cannot assist him in concluding that Baycol was more dangerous than competing statins. By Dr. Raskin's own constructive admissions, his experiences with Baycol do not correspond to the

[1] Exhibit references are to exhibits for Defendants' Memorandum in Support of Their Motion to Exclude Expert Testimony of Stephen Raskin ("Dfs' Ex.") or for the PSC's Response ("Pls' Ex.") or for this brief ("Reply Ex.").

conclusions he has now drawn for the purposes of litigation. *See*, *e.g.*, Raskin Dep. (Reply Ex. A) at 31:8-11, 58:7-20, 60:12-16.

## I. DR. RASKIN'S OPINION IS PRIMARILY FOUNDED ON UNRELIABLE AND INCOMPLETE AER DATA, WHICH HE IS UNFIT TO ADDRESS.

Defendants' opening brief demonstrated that Dr. Raskin's putative expert opinion regarding Baycol's alleged greater risks than other statins is directly tethered to AER data. *See* Dfs' Mem. at 1, 3-7; *see also* Raskin Rep. (Dfs' Ex. A) ¶¶ 6, 10-17, 21, 26 (discussing and founding opinions on AERs).[2] Apparently realizing that Dr. Raskin is unfit to interpret such data, let alone base his conclusions on it (were it otherwise reliable), plaintiffs now first seek to divorce the bases for Dr. Raskin's conclusions from the AERs. *See* Pls' Response at 1-3, 7, 10.

Plaintiffs' attempt to do so is to no avail. Dr. Raskin's experiences as a practicing cardiologist, his general research background, his participation on a panel concerning Baycol, and his general familiarity with literature on statins are irrelevant to the crux of his expert report: AER interpretation and analysis. *See*, *e.g.*, *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (requiring "specifi[c]" expertise in the area of testimony, and explaining that an expert may be "eminently qualified" to testify about one topic but "sorely lac[k]" the relevant experience to opine about a different one). For example, while plaintiffs complain that defendants make no mention of the peer-reviewed literature with which Dr.

[2] Because Dr. Raskin's report draws from and is centered upon interpretation of AER data, plaintiffs have no basis for asserting that defendants "deceptive[ly]" used selected quotation of Dr. Raskin to make him appear as if he relied on AERs more than he did in preparing his opinion. Pls' Response at 8.

Raskin is familiar, suggesting that such literature somehow makes him fit to offer the expert testimony outlined in his report, *see* Pls' Response at 9-10 (citing Raskin Dep. (Pls' Ex. I) at 15:14-16:3), those complaints are a red herring. Contrary to plaintiffs' implication, whether Dr. Raskin has "background knowledge *not specific to this proceeding* [which] is voluminous," Raskin Dep. (Pls' Ex. I) at 16:2-3 (emphasis added); *see* Pls' Response at 10, has no bearing whatsoever on the Baycol-specific, AER-driven opinions he seeks to offer.[3] And it is those opinions that are deeply flawed in every significant respect.

Specifically, Dr. Raskin makes a bold set of claims about what the AER data purportedly reveals. *See*, *e.g.*, Pls' Response at 8-9 (discussing Dr. Raskin's "elucidation" of the significance of such data). Yet Dr. Raskin makes those claims in a vacuum. For instance, at the time he formed his expert opinion, Dr. Raskin admits that he had no familiarity with the regulatory regime – including the essential detail of whether comparative AER data may be used to support safety claims, *see* 21 C.F.R. § 314.80(k); AER Caveat at 2 – through which any claims regarding Baycol's safety or efficacy were required to pass. *See* Raskin Dep. (Dfs' Ex. B) at 81:25-82:4, 86:12-20, 88:7-90:9, 138:10-139:3 (admitting that until submitting his report, he was unfamiliar with the changes-being-effected process, the FDA regulations governing drug labeling, or

[3] Likewise, plaintiffs' claim that because Dr. Raskin's prior experiences made him require "less time to prepare his report," Pls' Response at 8, is absurd given that Dr. Raskin's report is not founded on his prior experiences. Rather, it is driven by purported analysis of AER data with which he was not previously familiar.

FDA caveats regarding reliance on AERs).[4] Without such knowledge, any claim by Dr. Raskin that Baycol should have disclosed certain AER data is fatuous.

Dr. Raskin's own admissions about the nature of AER data also implicitly – but resoundingly – show the infirmities of any reliance on such data as the centerpiece of an expert opinion. Despite Dr. Raskin's vociferous claims that Bayer was under a duty to disclose all AER data on its warning labels and that such data would have been central to Dr. Raskin's and other physicians' prescribing choices, Dr. Raskin repeatedly admits that AER data themselves are fundamentally skewed and flawed. *See* Raskin Dep. (Reply Ex. A) at 79:24-80:5 (admitting that AER data has no controls as to side effects); *id.* at 117:1-3 (admitting that he has never submitted an AER report); *id.* at 123:20-125:3 (acknowledging that the AER data upon which he relied only depicts a raw number of incidents reported, not the reporting rate, *i.e.*, the ratio of adverse symptoms to total patients).

Indeed, Dr. Raskin, on the one hand, attempts to use comparative AER data against Bayer, asserting that it demonstrates Baycol was more dangerous than other statins. On the other hand, however, Dr. Raskin admits that while he was the prescribing physician in cases where statins other than Baycol have been associated with his patients' myopathy (and even rhabdomyolsis), he failed to submit a single AER regarding those patients – *i.e.*, Dr. Raskin's own failures to report have skewed the data regarding

[4] Lacking this fundamental knowledge, plaintiffs' claims that Dr. Raskin is qualified to testify as to what information "should have been made available to him as a prescribing physician" through the warning labels are meritless. Pls' Response at 7.

competing statins. Raskin Dep. (Reply Ex. A) at 117:17-118:2.[5] Despite these numerous deficiencies in AER data generally – the cornerstone of his expert opinion – Dr. Raskin admits that before preparing his expert report, he conducted no analysis of whether the biases in the data equally affect all drugs in a given class. *See id.* at 126:13-128:11; *contra* Pls' Response at 10 (claiming Dr. Raskin considered biases in the data, but neglecting to mention his admissions that he attempted to do so only after submitting his expert report). This is the antithesis of reliable expert testimony founded on sufficient facts and data as *Daubert* and Rule 702 require.

Perhaps more egregiously, even if Bayer were permitted to utilize AER data on its labels as Dr. Raskin advocates, Dr. Raskin's opinions as to what Bayer should have revealed suffer a profound disconnect from the factual underpinnings of the data he claims to have reviewed. Pared down to its core, Dr. Raskin's purported expert opinion is that because AER data allegedly revealed a greater risk of muscle injuries (mainly rhabdomyolsis) with Baycol than other statins, Baycol was a more dangerous product. *E.g.*, Raskin Report (Dfs' Ex. A) ¶¶ 6, 10-12, 15-17. At every turn, however, Dr. Raskin failed to familiarize himself with the basic concepts, never mind develop expertise in

[5] Dr. Raskin's report similarly smacks of litigation-driven disingenuity in that he claims "[i]nformation about adverse reporting rates is important to practicing physicians," Raskin Report (Dfs' Ex. A) ¶ 14; *see also* Pls' Response at 11 (claiming Dr. Raskin would use AER information were it disclosed), yet Dr. Raskin admitted during his deposition that he has *never* conducted research in which he compared drugs using AER data and until this litigation had *never* attempted to assess the comparative safety of any drugs by using AERs, Raskin Dep. (Reply Ex. A) at 113:10-18, 115:15-19.

AER analysis,[6] which would allow him to draw such conclusions. Again, despite plaintiffs' accusations that defendants selectively quote Dr. Raskin to make it appear as if he is unfit to serve as an expert, *see* Pls' Response at 10; *see also supra* note 2, Dr. Raskin candidly admits that his AER-driven conclusion that "Baycol was more dangerous," Raskin Dep. (Reply Ex. A) at 62:24, was highly generalized and failed to "consider [] all the potential side effects of statins, not just rhabdo in isolation," *id.* at 64:8-14; *see id.* 65:14-20, 177:10-19; *see also id.* 105:24-106:3, 106:17-24, 123:20-125:3 (acknowledging shortcomings in the specific AER data).

Similarly demonstrating the infirmities of the methodology and the facts and data which Dr. Raskin employed is that he both asserts that Baycol was more dangerous than other drugs in its class *and admits that he did not know the overall reporting rates of the other drugs upon which his comparison depends*. *See id.* at 65:21-66:13 (admitting that he would like to know the reporting rates of competing medications and that it "would be more relevant to have data regarding all statins"); *id.* at 123:20-125:3 (acknowledging, as noted above, that the AER data do not depict actual incidence rates); *id.* at 202:6-10 (admitting that he did not see comparative reports for Zocor, another statin); *compare* Raskin Report (Dfs' Ex. A) ¶ 12 (claiming "overwhelming evidence of greater risk demonstrated by reporting rates orders of magnitude higher for

---

[6] Plaintiffs' reliance on Dr. Raskin's claim that he had a "'basic understanding of the [spontaneous reporting] system' and some of its limitations," Pls' Response at 10 (quoting Raskin Dep.), is still a far cry from making him an expert on these issues.

Baycol than for other statins").[7] Accordingly, Dr. Raskin's abstract claims that Baycol was more dangerous than other statins are dangerously misleading, neither based on sufficient facts and data nor reliable methodology, and must be excluded.

## II. PLAINTIFFS CANNOT INTRODUCE DR. RASKIN'S TESTIMONY BASED ON HIS PERSONAL EXPERIENCES WITH BAYCOL.

Sensing the shortcomings of Dr. Raskin's substantial reliance on AER data, with which he is as unversed as the data itself is unreliable, Plaintiffs' Response attempts to change the playing field to Dr. Raskin's admissibility as a "percipient witness" (Pls' Response at 1, 2, 7, 15, 21) who prescribed Baycol and served on an advisory panel regarding the drug. This effort is unconvincing because, as discussed above, Dr. Raskin's report repeatedly evidences that his conclusions are drawn from the AER data, not his experiences with Baycol. Second, as set forth below, Dr. Raskin's actual experiences with Baycol stand in stark contrast to the opinions he now seeks to offer and thus provide no reliable basis for such opinions.

Dr. Raskin's testimony regarding his clinical experience provides no basis upon which to found an expert opinion that Baycol was more dangerous than other statins. Rather, as Dr. Raskin testified, his clinical experiences showed Baycol "lowered cholesterol in the majority of patients that [he] treated," Raskin Dep. (Reply Ex. A) at 31:10-11, and offered patients "a good benefit to risk profile," *id.* at 58:19-20. Indeed, Dr. Raskin did not prescribe Baycol to any patients who sustained rhabdomyolysis, nor

---

[7] These showings firmly rebut plaintiffs' baseless claim that defendants' "do not cite which relevant facts are lacking in Dr. Raskin's report." Pls' Response at 11; *see also* Dfs' Br. at 6-8 (demonstrating that Dr. Raskin failed to employ adequate comparative data sets).

did he remove a single patient from Baycol because of side effects. *Id.* at 31:12-16. Nor can plaintiffs claim that Dr. Raskin is testifying based upon his Baycol advisory panel work, when he relies on AER data presented to him by the PSC after he was hired as an expert witness. This is nothing more than a back door attempt to allow reliance on the very AER data that will not otherwise support an expert opinion. *See* Pls' Response at 15 (claiming "risks of Baycol [*i.e.*, what the AERs purportedly showed] were not accurately described in the label"); *id.* at 15-16 (claiming a "gap between corporate knowledge and disclosure to doctors"); *id.* at 18 (same); *id.* at 19 (asserting that rhabdomyolysis rates – from AERs – were not described in the label).[8]

## III. PLAINTIFFS' OPPOSITION CONCEDES THAT MANY OPINIONS OFFERED IN DR. RASKIN'S REPORT ARE INADMISSIBLE.

Finally, defendants' opening papers showed that Dr. Raskin's Report makes myriad representations that could never be cognizable as expert opinions. For example, Dr. Raskin offers mere subjective, unsupported statements of belief regarding

8 In these respects, Dr. Raskin's opinion is readily distinguishable from the cases on which plaintiffs rely. *See* Pls' Response at 13-17. Although a physician in *Diet Drugs* sought to testify regarding "the labels' completeness [and] accuracy," nowhere did that doctor seek to testify regarding comparative warnings based on AER data as Dr. Raskin attempts here. *See In re Diet Drugs*, No. MDL 1203, 2000 WL 876900, *11 (E.D. Pa. June 20, 2000). Furthermore, the *Diet Drugs* court implied that any such testimony needed to be based on settled "medical facts and science" in the form of "knowledge," *id.*, as opposed to speculative data like Dr. Raskin seeks to employ. *See also id.* at *12 (noting that relevancy provided an additional limitation). *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254 (5th Cir. 2002), is perhaps even less helpful to Dr. Raskin's putative expertise. There, not only did the physician in question never seek to testify regarding AERs or comparative AER data, but the Fifth Circuit allowed him to opine about the adequacy of the warnings contained in the prescription drug's package insert because he was testifying in his capacity as *plaintiff's treating physician*. *Id.* at 265; *accord* Pls' Response at 16 (acknowledging as much).

Bayer's so-called ethical duties, its motives, knowledge, intent and state of mind, and the knowledge of other prescribing physicians. *See generally* Dfs' Mem. at 11-17; *id.* at 12-15 (enumerating inadmissible claims). Wisely, plaintiffs' response largely does not attempt to support the admissibility of such testimony. *See*, *e.g.*, Pls' Response at 17 (stating Dr. Raskin "does not offer his opinion regarding Bayer's motive, knowledge, intent or state of mind"); *id.* at 18 (stating Dr. Raskin's opinion goes to his "personal experience" in determining that the Baycol label did not "apprise him" – as opposed to other physicians, as his report claims – of Baycol's risks).[9] For the reasons stated in defendants' opening papers, and not contested by plaintiffs, Dr. Raskin's personal opinions not evidencing "scientific, technical or other specialized knowledge" should be excluded. Fed. R. Evid. 702.

**CONCLUSION**

For the foregoing reasons and those stated in their opening Motion and Memorandum in Support thereof, defendants respectfully request that the Court strike Dr. Raskin's report and testimony under *Daubert* and Rule 702.

Dated: August 11, 2006

[9] Although plaintiffs still stand by Dr. Raskin's inadmissible assertion that "Bayer knew far more about Baycol's risk than was disclosed to the medical community," Pls' Response at 18, the predicate for that claim is undermined, as discussed above, by the nature of the federal regulatory regime which authorizes a manufacturer to make only certain "scientifically reliable" disclosures.

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
Frank R. Volpe
Eamon P. Joyce
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine V. Barrad
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, NW Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : MDL No. 1431 (MJD) |
| This Document Relates to: | : |
| *All Actions* | : |

**LR 7.1(c) WORD COUNT COMPLIANCE CERTIFICATE REGARDING DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF STEPHEN RASKIN**

I, Susan A. Weber, certify that Defendants' Reply Memorandum in Support of Their Motion to Exclude Expert Testimony of Stephen Raskin complies with Local Rule 7.1(c).

I further certify that, in preparation of this memorandum, I used Microsoft Office Word 2003, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

I further certify that the above referenced memorandum contains 3,345 words and that the cumulative total of defendants' opening brief and this brief does not exceed 12,000 words.

Dated: August 11, 2006

Susan A. Weber
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

One of the Attorneys for Bayer Corporation and Bayer AG

CERTIFICATE OF SERVICE

I, Lisa M. Modaff, certify that a true and correct copy of the foregoing Defendants' Reply in Support of Their Motion to Exclude Expert Testimony of Stephen Raskin, was electronically filed on August 11, 2006.

Lisa M. Modaff