**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *All Actions* | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE PLAINTIFFS' PUTATIVE EXPERT WITNESSES FROM INVOKING THE TESTIMONY OF OTHER TESTIFYING EXPERTS**

The PSC does not dispute the key points established in defendants' opening brief. In particular, plaintiffs acknowledge:

i. "There is no question that an expert must testify within her area of expertise." Pls' Response at 4.

ii. A testifying expert's opinion must be excluded where it is "solely derivative" of the "unreliable conclusions of another expert." *Id.* at 12.

iii. "The express language of Rule 703 requires the court to assess whether an expert in the same field would 'reasonably rely' on the facts or data" that are not otherwise admissible. *Id.* at 9.

Notwithstanding these acknowledgements, plaintiffs argue that their witnesses should be allowed to parrot testimony developed specifically for this litigation – namely that witnesses with no expertise in epidemiology or analyzing AERs should be allowed to recite Dr. Farquhar's conclusions regarding the comparative toxicity of Baycol as if those

conclusions were established scientific fact.[1] To arrive at this position, the PSC ignores the evidence and turns settled evidentiary law on its head.

As demonstrated below, plaintiffs' own experts have conceded that such testimony extends beyond the scope of their expertise. *See infra*, Part I. Only Dr. Farquhar, even (as he put it) "pretended to do epidemiologically-based biostatistical analyses" of AERs. Farquhar Dep. (Dfs' Ex. A[2]) at 259:7-9; *see id.* at 125:25-126:7. The PSC cannot shore up these ungrounded opinions by pointing to aspects of a witness's report that may not suffer from these defects. *See infra*, Part II. And plaintiffs cannot treat testimony developed specifically for litigation – like Dr. Farquhar's report – as if it were a scientific treatise that other experts may rely upon without violating the hearsay rule. If Dr. Farquhar's testimony is allowed – and it should not be (*see* Dfs' Farquhar Motion and Reply) – that testimony should come from Dr. Farquhar so he can be cross-examined. *See infra*, Part III.

## I. PLAINTIFFS' EXPERTS CANNOT PARROT TESTIMONY THAT EXTENDS BEYOND THEIR EXPERTISE.

Defendants' motion is addressed to the issue of parroted testimony – one testifying expert borrowing the opinions of another testifying expert that he himself is not

---

[1] Although attempts to recite the conclusions of Dr. Farquhar are chiefly at issue in this motion, the same analysis bars attempts by any expert to adopt and recite the opinions of another testifying expert with a different expertise.

[2] Exhibit references are to exhibits for Defendants' Memorandum in Support of Their Motion to Exclude Plaintiffs' Putative Expert Witnesses from Invoking the Testimony of Other Testifying Experts ("Dfs' Ex.") or for the PSC's Response ("Pls' Ex.") or for this brief ("Reply Ex.").

qualified to give. As noted, there is no dispute that "an expert must testify within her area of expertise." Pls' Response at 4; *see* Dfs' Br. at 6-7; *accord* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). Defendants illustrated their argument by pointing to the testimony of five PSC witnesses. The PSC has now abandoned one of them – Dr. Stolley.[3] The PSC does not address the testimony of Drs. Carlson or Smith in its response to this motion (although the PSC does oppose defendants' separate motions to exclude Carlson and Smith). Plaintiffs do attempt, in their response, to support mimicked testimony offered by two other witnesses, Drs. Raskin and Mayer. As discussed below, none of these witnesses may copy Dr. Farquhar's opinions and offer those opinions as their own.[4]

**A. Plaintiffs Have Failed To Demonstrate That Drs. Smith And Carlson Are Qualified To Offer Testimony Regarding AER Data.**

Although plaintiffs make passing reference to the infirmities raised by this motion in their separate responses with respect to Drs. Smith and Carlson, *see* Pls' Resp. to Smith Motion at 5-6; Pls' Resp. to Carlson Motion at 5-6, plaintiffs' efforts fall far short of sustaining their burden. *See, e.g.*, *United States v. Williams*, 95 F.3d 723, 729

[3] Plaintiffs have not opposed motions to exclude the testimony of Drs. Corbett, Schinagl, and Stolley. Plaintiffs dropped another expert – Professor Fiflis – before *Daubert* briefing commenced.

[4] In this respect, this case closely parallels *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993). In *TK-7*, "the expert did not have any expertise on the issue in question, and, therefore, he could not rely on the work of another." This is the case here as well. Plaintiffs' experts do not posses the necessary expertise "on the issue in question," namely, AER data and comparative toxicity of Baycol.

(8th Cir. 1996) ("It is the burden of the party offering the expert testimony to lay a foundation for its admission").

Dr. Smith and Dr. Carlson offer epidemiological testimony that is nothing more than a repetition of Dr. Farquhar's conclusions regarding AER data. Plaintiffs, however, do not dispute that neither Dr. Smith nor Dr. Carlson possesses expertise in epidemiology. *See* Pls' Response to Smith Motion at 5-6 (noting Dr. Smith's qualifications as only a toxicologist); Pls' Response to Carlson Motion at 5-6 (admitting that Dr. Carlson lacks expertise to opine regarding Baycol's alleged higher toxicity and was therefore required to rely on others for such opinions). Moreover, the cases on which plaintiffs rely actually limit experts from testifying beyond the areas of their expertise. As plaintiffs concede, "an expert in one subject may not be qualified to testify beyond that expertise." Pls' Carlson Response at 6 (citing *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1127-28 (D. Minn. 2003)). Accordingly, Drs. Carlson and Smith should be barred from testifying based upon Dr. Farquhar's report.

**B. Dr. Raskin Is Not Qualified To Offer Testimony Regarding AER Data.**

As defendants showed in their opening papers, Dr. Raskin has admitted he is not qualified to offer opinions concerning AER data. *See* Dfs' Br. at 7. Specifically, Dr. Raskin has admitted he has never published or done research using AER data. *See* Raskin Dep. (Dfs' Ex. E) at 113:6-18. Additionally, prior to being retained as an expert witness for the Baycol litigation, he had never compared the safety of two drugs using AER data. *Id.* at 113:15-19.

Plaintiffs all but acknowledge that Dr. Raskin is not qualified. They admit "Dr. Raskin's experience and training [is] as a cardiologist" and "not as a scientist who conducts comparative analysis of AERs." Pls' Response at 6. This undermines a significant amount of Dr. Raskin's report. Indeed, notwithstanding plaintiffs' perplexing comment that Dr. Raskin does not discuss comparative AER-data, *see id.*, numerous paragraphs of his report do just that. *See* Raskin Rep. (Dfs' Ex. I) ¶¶ 6, 10-17, 21, 26.[5] Nor can plaintiffs recast this line of testimony as Dr. Raskin's percipient testimony about the effect of Dr. Farquhar's AER comparison on prescribing doctors. At issue here is expert testimony and AER comparisons beyond the ken of Dr. Raskin.

**C. Dr. Mayer Is Not Qualified To Offer Testimony Regarding AER Data.**

Plaintiffs' arguments for the admissibility of Dr. Mayer's testimony suffer from similar deficiencies. Plaintiffs essentially maintain that because Dr. Mayer's report does not "focus" on AERs, he may offer a few opinions about such data. *See* Pls' Response at 6. For example, Dr. Mayer seeks to opine that Baycol allegedly had a "43

[5] In answer to plaintiffs' erroneous contention that Defendants only "stat[ed] vaguely" that Dr. Raskin is designated to offer AER-based testimony, *compare* Pls' Response at 5 *with* Dfs' Br. at 2, 7, & 10 (citing instances of AER-based testimony in Dr. Raskin's report), a few examples of such testimony serve to correct plaintiffs' mischaracterization of the scope of Dr. Raskin's proposed testimony. Dr. Raskin's report makes it clear that he intends to opine regarding comparative AER data. For instance, Dr. Raskin states that based upon a "[c]omparison of the adverse event reports received by the FDA through March, 1999, demonstrated a markedly higher reporting rate of rhabdomyolysis with Baycol." Raskin Rep. (Dfs' Ex. I) ¶ 10. Dr. Raskin further claims he "[c]ompar[ed] the adverse event reporting rate of Baycol with the rate for Lipitor." *Id*. at ¶ 12. Raskin also raises "[t]he increased adverse event reporting rates for Baycol," *id.* at ¶ 11, "evidence of greater risk demonstrated by reporting rates," *id.* ¶ 12, and "[i]nformation about adverse event reporting rates," *id.* ¶ 14. Thus, it is indisputable that Dr. Raskin seeks to offer expert testimony regarding AER data – an area in which he is admittedly unqualified.

times higher" rate of "catastrophic events . . . than with other medications in its class." Mayer Rep. (Dfs' Ex. H) ¶ 11; *id.* at ¶ 19 (alleging again Baycol caused muscle damage at a rate of "43 times more frequently" than other medication in its class). The basis for this line of testimony is Dr. Farquhar's AER analysis. Yet Dr. Mayer admitted that he lacked expertise in precisely these areas about which he seeks to offer derivative testimony.[6] Accordingly, he should not be permitted to parrot Dr. Farquhar's conclusions.

## II. PLAINTIFFS' UNRELIABLE, LITIGATION-DRIVEN CONCLUSIONS ARE INADMISSIBLE.

Plaintiffs acknowledge that one expert may not simply recite the testimony of another. *See* Pls' Response at 10-11. Plaintiffs, however, seek to distinguish the testimony of their experts by suggesting – without support – that all of their experts' opinions have other independent bases. In truth, plaintiffs' experts' opinions on comparative toxicity cannot stand on their own, but simply repeat, without analysis or independent basis, the opinions of Dr. Farquhar.

Plaintiffs' discussion of the case law only supports defendants' position. For example, *Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176 (8th Cir. 1997), observed that reliance of an expert in part upon improper, inadmissible testimony will not necessarily be fatal, provided the opinion is otherwise reliably grounded. *See id.* at 1182. Here, however, plaintiffs fail to prove the determinative factor under *Arkwright*,

---

[6] Mayer acknowledged he is "not qualified to give statements about comparative safety." Deposition of R. Samuel Mayer (Dfs' Ex. C) at 263:10-22. Further, Dr. Mayer explained his conclusions came from "[t]alking to other experts of ours, specifically Dr. Corbett and Dr. Farquhar, and reading their reports." *Id.* at 259:5-7.

*i.e.*, what independent reliable basis their experts relied upon. This is unsurprising because there is no independent reliable basis for their opinions on comparative statin toxicity; they rely on Dr. Farquhar's AER-based analysis.

Plaintiffs' shortcomings in this regard are confirmed by their own discussion of *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441 (8th Cir. 2001), and *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999). Plaintiffs correctly understand both cases to bar testimony which is "inextricably linked" or is "based on nothing other than the testimony of other experts." Pls' Response at 11 (emphasis in original). As plaintiffs summarize the holding in *TMI*, "the court's decision stands only for the proposition that an expert cannot allow others to do her work for her." *Id.* Thus, "when the opinions of the testifying expert are solely derivative of the underlying expert" such testimony must be excluded. *Id.* at 12. These principles bar their experts' derivative testimony in this case.

For example, as discussed above, Dr. Raskin heavily relies upon the testimony of Dr. Farquhar, *see supra* at Part I.B., while lacking independent bases for these opinions. Rather than discussing and attempting to support Dr. Raskin's derivative opinions challenged here, plaintiffs instead attempt to refocus the court's attention to Dr. Raskin's *other opinions* which are not at issue in this motion. Pls' Response at 6, 12. As also demonstrated above, as well as in defendants' original motion, plaintiffs' assertion is incorrect. *See*, *e.g.*, Dfs' Br. at 3, 8, 10, 11 (providing examples).

Similarly, in their other briefing, plaintiffs do not dispute that Drs. Smith and Carlson rely upon the testimony of Dr. Farquhar. *See* Dfs' Brief at 3 (deposition

testimony of Dr. Smith admitting to his reliance on Dr. Farquhar); Pls' Smith Response at 5-8 (failing to challenge or discuss Dr. Smith's reliance on Dr. Farquhar); Pls' Carlson Response at 5 ("Dr. Carlson has based this opinion, regarding muscle damage caused by Baycol, in part, on the expert testimony of the other PSC experts, including Dr. Farquhar and Dr. Austin").[7] Plaintiffs seek to avoid the consequences of this admission by claiming – without supporting citation – that "it is well settled that experts in a specific litigation can rely on the opinions of the other experts in different subject areas." Pls' Carlson Response at 5. While an expert can rely upon legitimate and reliable scientific evidence, an expert cannot merely regurgitate the contested and untested opinions of other putative testifying experts. Drs. Carlson's and Smith's testimony, which repeats Dr. Farquhar's unreliable testimony, should be excluded.

Thus, plaintiffs fail to rebut defendants' showings that the proposed testimony of Drs. Raskin and Myer as well as plaintiffs' other putative experts is inextricably linked to and wholly derivative of Dr. Farquhar's testimony and has no independent bases.

## III. THE SAFE HARBOR OF RULE 703 DOES NOT APPLY HERE.

Plaintiffs do not dispute defendants' showing that Rule 703 permits a qualified expert to rely on inadmissible matters only if they are (i) "facts and data" (ii) of "a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703; Dfs' Br. at 11-12; Pls' Response at 7 & n.4. In applying these standards to their experts'

[7] Plaintiffs' claim that this testimony is only partially predicated on Dr. Farquhar's testimony is wrong. In any event, we address the other supposed bases for their opinions in our separate reply briefs in support of the individual Carlson and Smith motions.

proposed opinions, however, plaintiffs fail to undermine defendants' showing that these requirements are not met. Accordingly, the hearsay testimony plaintiffs seek to offer suffers from all of the infirmities of inadmissible hearsay testimony, including that "the absence of an opportunity to cross-examine the source of the hearsay information renders it unreliable." *TK-7 Corp.*, 993 F.2d at 732-33 (recognizing that the "rationale" for Rule 703, when its requirements are met, is that the second "expert's 'validation, expertly performed and subject to cross-examination'" cures this defect) (quoting Advisory Committee Notes).

**A. Plaintiffs' Experts Do Not Seek To Rely On Mere "Facts And Data."**

Plaintiffs fail to rebut the key distinction between permissible reliance on facts and data and the impermissible total adoption of others experts' opinions, which plaintiffs' experts attempt to do here. *See* Dfs' Br. at 12-13.

Plaintiffs' discussion of the case law does not help their argument. First, plaintiffs quote *Barris v. Bob's Drag Chutes & Safety Equipment, Inc*., 685 F.2d 94 (3d Cir. 1982), which noted that experts may rely on inadmissible "facts, data, and *conclusions* of other experts." *Id.* at 101 n.10 (emphasis added). The only matter at issue there, however, was one expert's attempt to rely on another expert's report regarding the fiber make-up of a seatbelt and this matter was *excluded*. *See id*. Accordingly, a stray reference to "conclusions" in a footnote in this opinion does not save plaintiffs' Defective testimony here.

Second, the *Dura* opinion makes clear that Rule 703 recognizes a distinction between facts and data, on the one hand, and opinions, on the other. *See Dura*

*Automotive Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (distinguishing between an expert's opinion which made use of "data gathere[rs]" versus that which relies upon someone "exercis[ing] professional judgment"). As that Court emphasized, if "the soundness of the underlying expert judgment is in issue," the other expert can not just "parro[t] the opinion of [another] expert." *Id.* That's precisely the situation here, where the soundness of Dr. Farquhar's litigation-driven analysis is subject to intense criticism.

Third, *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005), does not help plaintiffs' argument. *Loeffel* explains that Rule 703 "was not intended to abolish the hearsay rule and to allow a witness under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." 387 F. Supp. 2d at 808 (citing *Dura*, 285 F.3d at 613; *TK-7 Corp.*, 993 F.2d at 731-34; *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)).

This guidance applies directly to the testimony discussed in defendants' motion because plaintiffs' witnesses are never more than "mouthpieces" for Dr. Farquhar. As the *Loeffel* court explained: "Rule 703's relaxation of the usual requirement of firsthand knowledge . . . was premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." 387 F. Supp. 2d at 807. Here, none of the opinions has such a reliable basis in the putative expert's knowledge and experience.

Notwithstanding this distinction, plaintiffs contend that *Loeffel* allows for reasonable reliance of one expert upon the opinions of another. Pls' Response at 14. While *Loeffel* plainly allows for one expert to use data of another, the putative experts here go far beyond what is permissible. These experts did not merely rely upon other experts in forming their own distinct opinions, they repeatedly adopted those opinions as their own without independent analysis. Thus, the question of whether plaintiffs' experts reasonably relied upon other experts is a red herring. Plaintiffs' experts did not rely upon Dr. Farquhar's opinions, they mimicked his testimony even though they lack the knowledge or experience to offer such opinions.

Likewise, plaintiffs' citation to *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646 (N.D. Ill. 2006), illustrates the correctness of defendants' interpretation of *Loeffel* and *Dura*. Plaintiffs quote *Sulfuric Acid* for the proposition that expert testimony is inadmissible where an "expert did not bring to bear his own expertise on underlying data[, but] . . . was essentially repeating the expert opinions of others." *Id.* at 657 (quoted in Pls' Response at 14 n.8). The *Sulfuric Acid* court continued, "[t]his was precisely the situation that troubled the court in *Dura.* To allow the disclosed experts in *Dura* and *Loeffel* to testify would have made them the 'mouthpiece'" for the other experts and is considered hearsay. *Id.* Just as the *Sulfuric Acid* court explained, however, where experts – like those of plaintiffs here – attempt to serve as the mouthpiece of others, such testimony is inadmissible hearsay.

**B. Plaintiffs' Putative Experts Seek To Rely On Matters That Are Not Of A Type Reasonably Relied On By Experts In Their Field.**

But even setting aside whether matters such as Dr. Farquhar's AER analysis are "facts and data" or opinion, at an irreducible minimum, Rule 703 requires that an expert's reliance on inadmissible matters is limited to matters of a type reasonably relied on in that expert's field. Although plaintiffs acknowledge this requirement, they fail to demonstrate its application here. *See* Pls' Response at 5, 6, 9, 13, 14.

As described above, plaintiffs' experts relied upon the testimony of Dr. Farquhar. Yet, Dr. Farquhar's testimony is riddled with serious flaws, which make another expert's reliance on his opinion unreasonable. Specifically, Dr. Farquhar's testimony was developed solely for the purposes of litigation; it has never undergone peer review nor been published. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand from *Daubert*, 509 U.S. 579) (in determining the reliability of an expert's opinion the court should determine "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for the purposes of testifying"); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001) (same). Dr. Farquhar had never performed such an analysis prior to being retained by plaintiffs' counsel. Thus, it cannot be said Dr. Farquhar's analysis is of a type another expert could reasonably rely upon.

Plaintiffs' cases on this point actually support defendants' position. *See* Pls' Response at 10, 13. For instance, while the Tenth Circuit's decision in *Black v.*

*M&W Gear Co.*, 269 F.3d 1220 (10th Cir. 2001), allowed one expert to rely upon the report of another expert, that reliance occurred in a readily distinguishable setting. *Id.* at 1229. Not only had the underlying report been published and not been created solely for the purposes of litigation, but the opposing party did not challenge its reliability. *Id*. at 1226-27. Thus, the "court [] assume[ed] that the . . . article is 'of a type reasonably relied upon by experts in the particular field.'" *Id.* at 1229 (quoting Fed. R. Evid. 703). Here, by contrast, Dr. Farquhar and his AER opinions have been intensely challenged.

Plaintiffs also point to *Kingsley Associates, Inc. v. Del-Met, Inc.*, 918 F.2d 1277, 1287 (6th Cir. 1990) (citing *Mannino v. Inter. Mfg. Co.*, 650 F.2d 846, 853 (6th Cir. 1981)). But *Kingsley* merely reiterated the rule from *Mannino*, which illustrates that plaintiffs' reliance is misplaced. In *Mannino*, the expert "relied upon studies, his own experience in dynamic testing, his background as a bio-mechanical engineer, and upon literature and information furnished him by plaintiff's attorney." *Kingsley*, at 1287 (quoting *Mannino*, 650 F.2d at 853). This is in no way comparable to the nature of the experts' reliance on Dr. Farquhar's unreliable opinions that he created for the purposes of litigation.

## CONCLUSION

For these reasons, and those stated in our opening motion, defendants respectfully request that the Court exclude testimony by plaintiffs' putative expert witnesses that improperly relies on the testimony of another proposed testifying expert witness.

Dated: August 11, 2006

Respectfully submitted,

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
Rebecca K. Wood
Dan Rabinowitz
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN
SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Joseph D. Piorkowski, Jr.
THE PIORKOWSKI LAW FIRM, PC
910 17th Street, NW Suite 800
Washington, D.C. 20006
(202) 223-5535

*Counsel for Bayer Corporation and Bayer AG*