**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In re BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD/SRN)

This Document Relates to:

*All Actions*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## I. INTRODUCTION

MDL Plaintiffs ("Plaintiffs") respectfully request that the Court certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), its Order granting MDL Defendants' Motions to Exclude Portions of the Expert Testimony of the following experts: Dr. John Farquhar; Dr. Harlan Austin; Dr. R. Samuel Mayer; Dr. Charles Bolt; Dr. Martyn Smith; Dr. Richard Kapit; Dr. Thomas Zizic; Dr. David Richman; Dr. Bruce Carlson and Dr. Stephen Raskin, as well as Defendants' Motion to exclude plaintiffs' expert testimony based on adverse event reports (AERs) and Defendants' motion to exclude plaintiffs' putative experts from invoking the testimony of other testifying experts. On July 9, 2007, the Court issued its initial Memorandum and Order granting all twelve of Defendants' Motions to Exclude Expert Testimony. The Court issued an Amended Memorandum and Order on July 16, 2007 (collectively referred to herein as "*Daubert* Order").

The *Daubert* Order addresses three important legal questions: (1) the standard for scientific data upon which experts may base their opinions; (2) the reliability of compilations and statistical analyses of Adverse Event Reports (AERs) in evaluating comparative toxicity of pharmaceutical products in the same drug class; and (3) the extent to which an expert can rely on studies and scientific literature concerning a single disease process that includes a continuum of injuries. There are substantial grounds for differences of opinion on these controlling questions of law and an immediate appeal from the *Daubert* Order will materially advance the ultimate and uniform termination of the litigation. Absent certification of the *Daubert* Order, and a final determination by the Eighth Circuit Court of Appeals, piecemeal appeals on the issues raised in the *Daubert* Order will likely follow many of the individual trials subsequent to remand. Determination and resolution of the individual appeals may lead to further delay in the ultimate termination of this litigation.

Pursuant to Pretrial Order 156 ("PTO 156"), the parties have submitted to the Court a list of approximately 87 cases which are ready for remand to their various transferor courts. Similar lists of cases ready for remand will follow. Thus, it is appropriate to promptly resolve the appeal of the general causation expert issues raised in the *Daubert* Order before the hundreds of remaining Baycol-injury cases are remanded to their various transferor courts throughout the United States. If the appeal of the *Daubert* issues is not resolved prior to remand, such issues will be appealed piecemeal to various Courts of Appeals, with potentially inconsistent results. In contrast, a final decision by

the Eighth Circuit Court of Appeals on the general causation *Daubert* issues, prior to remand, will promote efficiency and consistency among the Baycol cases. Indeed, efficiency and consistency in the pretrial rulings is a central purpose for which this Multidistrict Litigation was established.

Plaintiffs respectfully request that the Court certify its *Daubert* Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II. ARGUMENT

### A. Legal Standard

An interlocutory decision may be appealed if the District Judge certifies that the Order:

(1) involves a controlling question of law;

(2) as to which there is a substantial ground for difference of opinion; and

(3) an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1292(b). If the Court's original Order does not certify the Order for interlocutory appeal "the District Court may amend its Order either on its own or in response to a party's motion, to include the required permission or statement." Fed. R. App. P. 5(a)(3).

Motions for certification are granted "sparingly and with discrimination." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). However, in a complex litigation, certification of interlocutory appeals should "be more freely granted" because § 1292(b) was intended

for these types of exceptional cases. *See* 16 Wright, et al. Federal Practice and Procedure § 3929 (3d ed. 2005). Certification under § 1292(b) is particularly appropriate when, as here, an Order will significantly affect hundreds of cases and piecemeal appeals pose the threat of inconsistent rulings. *See, e.g., Travelers Prop. & Cas. Corp. v. General Elec. Co.*, 150 F. Supp.2d 360, 368-69 (D. Conn. 2001) ("An immediate appeal is a more efficient use of judicial resources than undertaking numerous trials before the question of the admissibility of expert testimony can be taken up on appeal from a final judgment"); *In re Air Crash Off Long Island, New York on July 17, 1996*, 27 F. Supp.2d 431, 434 (S.D.N.Y. 1998) (in the MDL context, "rather than postponing review until after the individual cases are remanded for trial to district courts throughout the country, 'the better practice is to allow…appeal prior to remand.'").

**B. Analysis**

The issues raised in the *Daubert* Order satisfy the three prongs of § 1292(b): (1) they encompass controlling questions of law; (2) there are substantial grounds for differences of opinion; and (3) they may materially advance the ultimate termination of this litigation. *Saunders v. Ace Mortgage Funding, Inc.*, No. 05-1437, 2007 WL 2008677, at *1 (D. Minn. July 6, 2007) (attached as Exhibit A to the Affidavit of Richard A. Lockridge in Support of Plaintiffs' Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)) (hereinafter "Lockridge Aff. Ex. __").

### 1. The *Daubert* Order Concerns Controlling Questions of Law Under 28 U.S.C. § 1292(b) .

Section 1292(b) requires that the subject order involve a "controlling question of law." A controlling question of law is a "question of the meaning of a statutory or constitutional provision, regulation, or *common law doctrine*." *Pagliolo v. Guidant Corp.*, No. 06-943, 2007 WL 1567617, at *1 (D. Minn. May 29, 2007)(emphasis added) quoting *McFarlin v. Conseco Servs*., 381 F.3d 1251, 1258 (11th Cir. 2004) (Lockridge Aff. Ex. B). Although a "controlling question of law" can encompass practical or legal issues, "the Eighth Circuit has noted that a clear case of controlling question of law is one which would result in a reversal of the district court's judgment." *AT&T Communications of the Midwest, Inc. v. Qwest Corp.*, 2007 WL 1994047 at *1 (July 3, 2007), *citing Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (8th Cir. 1974) (Lockridge Aff. Ex. C). A "controlling legal question" need not, however, *guarantee* reversal after final judgment, but simply have the practical effect of determining the outcome of the litigation or "future course of the litigation." *Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991) (emphasis added).

Here, the *Daubert* Order addresses three controlling legal questions: (1) the standard for scientific data upon which experts may base their opinions; (2) the reliability of compilations and statistical analyses of Adverse Event Reports (AERs) in evaluating comparative toxicity of pharmaceutical products in the same drug class; and (3) the extent to which an expert can rely on studies and scientific literature concerning a single disease process that includes a continuum of injuries.

**2. There are substantial grounds for differences of opinion concerning the legal questions presented in the Court's *Daubert* Order.**

Substantial grounds for differences of opinion exist "where the Court identifies 'a sufficient number of conflicting and contradictory opinions.'" *AT&T Communications of the Midwest, Inc. v. Qwest Corp.*, No. 06-3786, 2007 WL 1994047, at *1 (D. Minn. July 3, 2007), quoting *White*, 43 F.3d at 378 (Lockridge Aff. Ex. C). Each of the legal questions described above are widely disputed.

First, the legal standard for determining reliability is unclear here because the standard is flexible and one may incorrectly assume that because "there are better grounds for some alternative conclusion," the expert's methods are unreliable. *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). One court has recognized the significance of this legal question by encouraging an interlocutory appeal, even though it found the expert testimony unreliable. *Travelers Property & Cas. Corp. v. General Electric Co.*, 150 F. Supp. 2d 360, 368-69 (D. Conn. 2001). Another court also excluded expert testimony, but acknowledged "the issue is not free from doubt" and certified the ruling for interlocutory appeal. *In re Aluminum Phosphide Antitrust Litig.*, 893 F. Supp. 1497, 1507 (D. Kan. 1995).

Second, the parties have each cited a string of conflicting case law that demonstrates wide disagreement on the reliability of AERs. Pl. Mem. in Opp. to Def.

Motion to Exclude, Doc. No. 01-4152, at 11-14 (June 21, 2006)[1]. "The reliability of AERS has been addressed in several court opinions as well." *Daubert* Order at 14. Based on this substantial disagreement among the courts, certification of an interlocutory appeal on this legal issue is appropriate. Indeed, certification of this conflicting legal question is particularly appropriate where, as here, the experts did not rely exclusively upon AERs, but also relied upon clinical trial data and epidemiology studies that were consistent with the AER analyses, further demonstrating the reliability of the AER data considered by Plaintiffs' experts.

Third, courts have determined that reliance on analogous disease processes, particularly when set forth in scientific literature or data, is both legally appropriate and reliable. *See, e.g., Smith v. Wyeth-Ayerst Labs. Co*., 278 F. Supp. 2d 684, 704-05 (W.D.N.C. 2003); *Rogers v. Sec'y of Health & Human Servs*., No. 94-0089V, 2000 WL 1337185, at *13-14 (Fed. Cl. Sept. 6, 2000) (Lockridge Aff. Ex. D). Here, consideration and reliance on information and data regarding analogous disease processes is particularly important in light of the continuum of injury caused by Baycol. Even Defendants' experts agree that there is a continuum of injury ranging from myalgia to rhabdomyolysis and the Defendants' scientists and consultants attached legal significance to the data when presenting it to the FDA. *See e.g.*, January 30, 2007 Hearing Tr., references and citations to expert opinions of defense expert Dr. Leslie J. Dorfman.

[1] It is worth noting that Defendants legally challenge the validity of AERs for purposes of these motions yet, in other contexts, attach legal significance to AER data and Defendants' internal analysis of AER data.

However, the Court expressly rejected as a matter of law Dr. Farquhar's reliance on "data and literature which focus on a specific disease, rhabdomyolysis" to extrapolate to muscle injuries earlier in the continuum, such as myalgia and myopathy. *Daubert* Order at 7, 19.

**3. Certification will materially advance the litigation.**

Certification for interlocutory appeal pursuant to 28 U.S.C. 1292(b) must also "materially advance the ultimate termination of the litigation." *White*, 43 F.3d at 378. A single, uniform ruling will allow the use of *de bene esse* depositions of experts without the need to preserve the record on excluded matters before the Court to preserve an appeal in the individual trials. Moreover, a uniform and final ruling will help counsel and their clients evaluate claims to determine if they wish to resolve or dismiss cases short of trial.

In the present case, certification for interlocutory appeal would also be "a more efficient use of judicial resources than undertaking numerous trials before the question of the admissibility of . . . expert testimony can be taken up on appeal from final judgment." *Travelers Property,* 150 F. Supp. 2d at 369. Certifying the controlling legal questions discussed herein encourages the goals of judicial economy and efficiency by preventing a situation where hundreds of cases are remanded to transferor jurisdictions across the United States, with the likelihood of piecemeal appeals on issues raised in the *Daubert* Order. Certification also promotes the policy underlying § 1292(b) appeals by avoiding possibly wasted trial time, additional judicial resources, and litigation expense. *See*

*Saunders v. Ace Mortgage Funding, Inc.*, 2007 WL 2008677, at *3 (certification prior to trial may reduce discovery and trial expenses) (Lockridge Aff. Ex. A).

## III. CONCLUSION

The Court's *Daubert* Order concerns controlling questions of law as to which there are substantial grounds for difference of opinion. An immediate appeal from the *Daubert* Order may also materially advance the ultimate termination of this litigation. For these reasons, Plaintiffs respectfully request that the Court enter an Order pursuant to 28 U.S.C. § 1292(b) certifying for interlocutory appeal the *Daubert* Order.

Dated: August 8, 2007

LOCKRIDGE GRINDAL NAUEN, P.L.L.P.

/s/ Richard A. Lockridge
Richard A. Lockridge
Robert K. Shelquist
Yvonne M. Flaherty
100 Washington Avenue South, Ste. 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

ZIMMERMAN REED, P.L.L.P
Charles Zimmerman
Robert R. Hopper
651 Nicollet Mall
Suite 501
Minneapolis, MN 55401
Telephone: (612) 341-0400

*Plaintiffs' Co-Lead Counsel*

RODA & NAST, P.C.
Dianne M. Nast
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Wendy R. Fleishman
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

ALEXANDER HAWES & AUDET
William Audet
152 N. 3rd Street
Suite 600
San Jose, CA 95112
Telephone: (408) 289-1776

WAITE, SCHNEIDER, BAYLESS &
CHESLEY CO., LPA
Stanley M. Chesley
Central Trust Tower, Suite 1513
One West Fourth Street
Cincinnati, OH 45202
Telephone: (513) 621-0267

BRANCH LAW FIRM
Turner W. Branch
2025 Rio Grande Blvd. N.W.
Albuquerque, NM 87104
Telephone: (505) 243-3500

LAW OFFICES OF DANIEL E. BECNEL,
JR.
Daniel E. Becnel
106 West Seventh St., P.O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186

CLIMACO, LEFKOWITZ, PECA,
WILCOX & GAROFOLI CO., L.P.A.
John R. Climaco
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484

SINGLETON LAW FIRM
W. James Singleton
4050 Linwood Ave.
Shreveport, LA 71108
Telephone: (318) 631-5200

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS, LLP
Paul J. Geller
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: (561) 750-3000

KAPLAN, FOX & KILSHEIMER, LLP
Joel B. Strauss
Laurence D. King
805 3rd Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 687-1980

*Plaintiffs' Steering Committee*